**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO, and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>BARILLA AMERICA, INC.<br><br>    Defendant. | Case No.: 4:22-cv-03460-DMR<br>Complaint Filed: June 11, 2022<br>FAC Filed: July 20, 2022<br>*Assigned to Hon. Donna M. Ryu*<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1.  Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br>2.  Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)<br>3.  Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)<br>4.  Breach of Warranty<br>5.  Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

COMPLAINT ...................................................................................................................1

I.     INTRODUCTION ....................................................................................................1

II.    JURISDICTION .......................................................................................................8

III.   VENUE .....................................................................................................................8

IV.    PARTIES ..................................................................................................................8

      A.     Plaintiffs .........................................................................................................8

      B.     Defendant .....................................................................................................11

V.     FACTUAL ALLEGATIONS .................................................................................11

      A.     Consumer Demand for Authentic Italian-Made Pastas ...............................11

      B.     Defendant's Brand Strategy and Long-Standing Marketing Campaign ......15

      C.     Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representation into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products ..........22

      D.     The Products are Substantially Similar.........................................................27

      E.     No Adequate Remedy at Law .......................................................................28

VI.    CLASS ACTION ALLEGATIONS ........................................................................31

VII.   CAUSES OF ACTION ...........................................................................................35

COUNT ONE .................................................................................................................35

              "Unfair" Prong ...........................................................................................37

              "Fraudulent" Prong .....................................................................................39

              "Unlawful" Prong .......................................................................................40

COUNT TWO .................................................................................................................41

COUNT THREE ..............................................................................................................43

COUNT FOUR ................................................................................................................47

COUNT FIVE ..................................................................................................................48

VIII.  PRAYER FOR RELIEF .........................................................................................50

DEMAND FOR JURY TRIAL.............................................................................................52

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**COMPLAINT**

1.      Plaintiffs Matthew Sinatro and Jessica Prost ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), bring this class action complaint against Defendant Barilla America, Inc. ("**Defendant**"), and alleges the following based upon investigation, information, and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.     INTRODUCTION

2.      **Synopsis.** In an effort to increase profits and to obtain an unfair competitive advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels certain of its Barilla® brand pastas as "**ITALY'S #1 BRAND OF PASTA**®," deliberately leading reasonable consumers, including Plaintiffs, to believe that the Products are made in Italy (hereinafter, "**Italian Origin Representation**" or "**Challenged Representation**"). Defendant reinforces the Challenged Representation on the Products by replicating Italy's national flag's green, white, and red colors surrounding the Challenged Representation, further perpetuating the notion that the Products are authentic pastas from Italy. Fair and accurate depictions of the Products' front packaging, from each of the five product lines (*Classic Blue Box*, *Collezione Artisanal*, *Gluten Free*, *Veggie*, and *Whole Wheat*), are depicted below with the Challenged Representation circled in red.

(1) Barilla® *Classic Blue Box Pasta* (Angel Hair) (**Exhibit 1-1**):



*See also* Barilla® *Classic Blue Box* Pasta Front Packaging, **Exhibit 1-1 to 1-34**.

(2) Barilla® *Collezione Artisanal Pasta* (Bucatini) (**Exhibit 1-35**):



*See also* Barilla® *Collezione Artisanal Pasta* Front Packaging, **Exhibit 1-35 to 1-40**.

(3) Barilla® *Gluten Free* Pasta (Elbows) (**Exhibit 1-41**):



*See also* Barilla® *Gluten Free* Pasta Front Packaging, **Exhibit 1-41 to 1-45**.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

(4) Barilla® *Veggie* Pasta (Rotini) (**Exhibit 1-46**):



*See also* Barilla® *Veggie* Pasta Front Packaging, **Exhibit 1-46 to 1-47**.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

(5) Barilla® *Whole Grain* Pasta (Elbows) (**Exhibit 1-48**):



*See also* Barilla® *Whole Grain* Pasta Front Packaging, **Exhibit 1-48 to 1-54**.

3. **The Deception of the Challenged Representation.** The Challenged Representation has misled reasonable consumers, including Plaintiffs, into believing that the Products are made in Italy. However, contrary to this labeling, the Products are not made in Italy, the Products' ingredients are not from Italy, and the Products are not manufactured in Italy. Rather, the Products are made and manufactured in Iowa and New York, with ingredients (such as the main ingredient, durum wheat) sourced in countries other than Italy.[1] Through falsely, misleadingly, and deceptively labeling the Products, Defendant sought to take advantage of consumers' desire for authentic Italian pasta, while cutting costs and reaping the financial benefits of manufacturing the Products in the United States of America. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

4. **The Products.** The Products at issue are Barilla® brand pastas sold to consumers in the United States that contain the Challenged Representation on the front labels and/or packaging, regardless of the Product's size or variations—such as flavor, type of pasta, or type of packaging (collectively referred to herein and throughout this complaint as the "**Products**"), which include, but are not necessarily limited to, the following product lines (*Classic Blue Box*, *Collezione Artisanal*, *Gluten Free*, *Vegie*, and *Whole Grain*) and pastas:

    a.    (1) Barilla® *Classic Blue Box* Pastas, including

        1.    Angel Hair,

        2.    Campanelle,

        3.    Cellentani,

        4.    Ditalini,

        5.    Elbows,

        6.    Farfalle,

---

[1] *See* **Exhibit 3f** [FAQ—Company Related (Q3)] ("Barilla Pasta that is sold in the United States is made in our plants in Ames, IA and Avon, NY. . . . Barilla purchases its wheat from around the world"); YOUTUBE, Barilla US, *Barilla | Meet the Team: Greg, Wheat-Sourcing Expert (60s)*, https://www.youtube.com/watch?v=BK1zN2iz0dw (accessed 6/10/2022) (link to video on Barilla Group's Barilla Brand Webpage at https://www.barillagroup.com/en/brands/barilla/ (accessed 6/10/2022) (describing the North American company's careful selection of durum wheat)).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

7.     Fettuccine,

8.     Fideo Cut Spaghetti,

9.     Gemelli,

10.    Jumbo Shells,

11.    Large Shells,

12.    Linguine,

13.    Linguine Fini,

14.    Manicotti,

15.    Medium Shells,

16.    Mezzi Rigatoni,

17.    Mini Farfalle,

18.    Mini Penne,

19.    Mini Wheels,

20.    Mostaccioli,

21.    Orzo,

22.    Pastina,

23.    Penne,

24.    Pipette,

25.    Rigatoni,

26.    Rotini,

27.    Spaghetti,

28.    Spaghetti Rigati,

29.    Thick Spaghetti,

30.    Thin Spaghetti,

31.    Tri-Color Penne,

32.    Tri-Color Rotini,

33.    Wavy Lasagne, and

34.    Ziti

1    (*see* **Exhibit 1-1 to 1-34** [Product Images for Barilla® *Classic Blue Box*]);

2                    b.        (2) Barilla® *Collezione Artisanal* Pastas, including

3                                35.        Bucatini,

4                                36.        Casarecce,

5                                37.        Orecchiette,

6                                38.        Penne,

7                                39.        Rigatoni, and

8                                40.        Spaghetti

9    (*see* **Exhibit 1-35 to 1-40** [Product Images for Barilla® *Collezione Artisanal*]);

10                   c.        (3) Barilla® *Gluten Free* Pastas, including

11                               41.        Elbows,

12                               42.        Fettuccine,

13                               43.        Penne,

14                               44.        Rotini, and

15                               45.        Spaghetti

16    (*see* **Exhibit 1-41 to 1-45** [Product Images for Barilla® *Gluten Free*]);

17                   d.        (4) Barilla® *Veggie* Pastas, including

18                               46.        Rotini, and

19                               47.        Spaghetti

20    (*see* **Exhibit 1-46 to 1-47** [Product Images for Barilla® *Veggie*]); and

21                   e.        (5) Barilla® *Whole Grain* Pastas, including

22                               48.        Elbows,

23                               49.        Lasagne,

24                               50.        Linguine,

25                               51.        Penne,

26                               52.        Rotini,

27                               53.        Spaghetti, and

28                               54.        Thin Spaghetti

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1  (*see* **Exhibit 1-48 to 1-54** [Product Images for Barilla® *Whole Grain*]).

2  5.  **Primary Dual Objectives.** Plaintiffs bring this action individually and on behalf of

3  those similarly situated to represent a National Class and a California Subclass of consumers who

4  purchased the Products (defined *infra*) for dual primary objectives. Plaintiffs seek, on Plaintiffs'

5  individual behalf and on behalf of the Class, a monetary recovery of the price premium consumers

6  overpaid for the Products that comport with the Challenged Representation, as consistent with

7  permissible law (including, for example, damages, restitution, disgorgement, and any applicable

8  penalties/punitive damages solely to the extent that those causes of action permit). More

9  importantly, Plaintiffs seek injunctive relief to stop Defendant's unlawful marketing of the Products

10  as originating from Italy to avoid or mitigate the risk of the deceiving the public into believing that

11  the Products conform to the Challenged Representation, by requiring Defendant to change its

12  unlawful advertising and/or labeling practices, for the benefit of consumers, including Plaintiffs and

13  the Class.

## II.   JURISDICTION

15  6.  This Court has original jurisdiction over this action pursuant to the Class Action

16  Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more

17  members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and

18  minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims

19  pursuant to 28 U.S.C. § 1367.

## III.   VENUE

21  7.  Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

22  the events and omissions giving rise to Plaintiffs' claims occurred in this District. In addition, one

23  or more Plaintiffs purchased the unlawful Products in this District, and Defendant has marketed,

24  advertised, and sold the Products within this District using the Challenged Representation.

## IV.   PARTIES

26  A.  **Plaintiffs**

27  8.  **Plaintiff Matthew Sinatro.** The following is alleged based upon Plaintiff Sinatro's

28  personal knowledge: (1) Plaintiff Sinatro is a resident of San Francisco, California. (2) Plaintiff

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Sinatro purchased a box of the Classic Barilla Blue Box Pasta (Angel Hair) (the "**Sinatro Purchased Product**") for approximately $2.00 at a grocery store in or around the City of San Francisco, State of California, in or around the winter of 2021 (*see*, **Exhibit 1-1** [Exemplar Product Image]). (3) In making the purchase, the Challenged Representation on the Product's label led Plaintiff Sinatro to believe that the Product was made in Italy—to wit, the Products' ingredients are from Italy and the Products are manufactured in Italy. (4) In making the purchase, Plaintiff Sinatro did not review the side or back panels of the Product's labeling or packaging, and he did not notice any statements on the Product's labeling or packaging that contradicted the Challenged Representation or otherwise indicated that the Product was not made in Italy, its ingredients were not from Italy, and/or it was not manufactured in Italy. (5) At the time of purchase, Plaintiff Sinatro did not know that the aforementioned Challenged Representation was false—i.e., that the Product was not made in Italy (to wit, the Product's ingredients are not from Italy and the Product is not manufactured in Italy). (6) Plaintiff Sinatro would not have purchased the Product, or would not have overpaid a premium for the Product's purported Italian origin, had he known that the Challenged Representation was false. (7) Plaintiff Sinatro continues to see the Products available for purchase and desires to purchase the Sinatro Purchased Product again if the Challenged Representation was in fact true—i.e., the Product was made in Italy (to wit, the Product's ingredients are from Italy and the Product is manufactured in Italy). (8) Plaintiff Sinatro is not personally familiar with the location from which the Products' ingredients are sourced or the location where the Products are manufactured as he does not possess any personal knowledge regarding where the Products are made; and, therefore, Plaintiff Sinatro has no way of determining whether the Challenged Representation on the Products is true. (9) Plaintiff Sinatro is, and continues to be, unable to rely on the truth of the Challenged Representation on the Products' labels.

9.    **Plaintiff Jessica Prost.** The following is alleged based upon Plaintiff Prost's personal knowledge: (1) Plaintiff Prost is a resident of Los Angeles, California. (2) Plaintiff Prost purchased two boxes of the Classic Barilla Blue Box Pasta (Spaghetti) (the "**Prost Purchased Products**") for approximately $2.00 per box at a grocery store in or around the City of Los Angeles, State of California, in or around the fall of 2021 (*see*, **Exhibit 1-28** [Exemplar Product Image]). (3) In

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

making the purchase, the Challenged Representation on the Product's label led Plaintiff Prost to believe that the Product was made in Italy—to wit, the Products' ingredients are from Italy and the Products are manufactured in Italy. (4) In making the purchase, Plaintiff Prost did not review the side or back panels of the Product's labeling or packaging, and she did not notice any statements on the Product's labeling or packaging that contradicted the Challenged Representation or otherwise indicated that the Product was not made in Italy, its ingredients were not from Italy, and/or it was not manufactured in Italy. (5) At the time of purchase, Plaintiff Prost did not know that the aforementioned Challenged Representation was false—i.e., that the Product was not made in Italy (to wit, the Product's ingredients are not from Italy and the Product is not manufactured in Italy). (6) Plaintiff Prost would not have purchased the Product, or would not have overpaid a premium for the Product's purported Italian origin, had she known that the Challenged Representation was false. (7) Plaintiff Prost continues to see the Products available for purchase and desires to purchase the Prost Purchased Product again if the Challenged Representation was in fact true—i.e., the Product was made in Italy (to wit, the Product's ingredients are from Italy and the Product is manufactured in Italy). (8) Plaintiff Prost is not personally familiar with the location from which the Products' ingredients are sourced or the location where the Products are manufactured as she does not possess any personal knowledge regarding where the Products are made; and, therefore, Plaintiff Prost has no way of determining whether the Challenged Representation on the Products is true. (9) Plaintiff Prost is, and continues to be, unable to rely on the truth of the Challenged Representation on the Products' labels.

10.     **Plaintiffs' Future Harm.** Plaintiffs would continue to purchase the Products in the future, as Defendant continues to advertise and warrant them, if the Products lived up to and conformed with the Challenged Representation. Further, Plaintiffs are average consumers who are not sophisticated in, for example, where ingredients are sourced or the location where different products are made, similar to and including the Products. Indeed, Plaintiffs do not have any personal knowledge of the sourcing of ingredients or manufacture of the Products. Since Plaintiffs would like to purchase the Products again to obtain the benefits of the Challenged Representation that Defendants continues to use—despite the fact that the Products were once

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

marred by false advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representation on their labels, packaging, and Defendant's advertisements, including Defendant's websites and social media platforms. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and in the future deprived of the ability to rely on the Challenged Representations to purchase the Products.

### B. **Defendant**

11. **Defendant Barilla America, Inc. ("Defendant" or "BAI")** is a corporation headquartered and/or maintaining a principal place of business in the State of Illinois. Defendant was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California as approximately ten percent (10%) of its United States sales come from California consumers who purchase the Products in California. Defendant is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the copyrighted Challenged Representation to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

## V. **FACTUAL ALLEGATIONS**

### A. **Consumer Demand for Authentic Italian-Made Pastas**

12. **Background – Italian Products.** Generally, Country of Origin claims have "a considerable influence on [consumers regarding] the quality perception of a product."[2] Relevant

---

[2] Flavia Bonaiuto, et. al., *Italian Food? Sounds Good! Made in Italy and Italian Sounding Effects on Food Products' Assessment by Consumers*, Front. Psychol. (Mar. 3, 2021),

here, authentic Italian products, including pastas, hold a certain prestige and generally viewed as a higher quality product.[3] Products "Made in Italy" are "based on creativity [and] matched with quality and design."[4] Indeed, the "Made in Italy" claim has evolved into a brand that distinguishes Italian products from other products, specifically in fashion, food, furniture, and mechanical engineering.[5] "Italian-Made" branding is often associated with superior quality, extreme attention to detail, elegance, and a long established tradition in manufacturing.[6] Notably, the general "Italianness" of a product influences consumers overall evaluation of a product.[7] Consumers seek out products that look or sound like they are from Italy because Italian products have a better reputation, and, as such, consumers willingly pay more for Italian sounding and/or looking products.[8] Thus, Manufacturers use "Italian Sounding" descriptors—e.g., Italian-sounding names, images, shapes, and places of production typically associated with Italy—and use "[c]olors evoking the Italian flag and images of famous Italian landscapes or monuments—e.g., the gulf of Naples, the tower of Pisa—reproduced on the label and packaging" to mislead consumers into believing that products are manufactured and/or made in Italy.[9] This is done to exploit a product's purported Italian origin to drive sales and increase the perceived monetary value of the product, reaping the benefits of selling a premium product without incurring the costs to make it.[10]

13.    **Background—Italian Pasta.** "The food industry is the second most important sector of [the] Italian economy" and Italy is the 10th greatest exporter of food worldwide.[11] Pasta is and

---

https://www.frontiersin.org/articles/10.3389/fpsyg.2021.581492/full#B62 (accessed June 10, 2022); Warren J. Bilkey and Erik Nes, *Country-of-origin effects on product evaluations*, J. Int. Business Studies 8, 89–99 (1962) doi: 10.1057/palgrave.jibs.8490539 (accessed June 10, 2022).
[3]  *See* MADE IN ITALY, *Made in Italy*, https://madeinitaly.org/en/made-in-italy/made-in-italy.php (accessed June 10, 2022).
[4]  *Id.*
[5]  *Id.*
[6]  Id.
[7]  Flavia Bonaiuto, et. al., *Italian Food? Sounds Good! Made in Italy and Italian Sounding Effects on Food Products' Assessment by Consumers*, Front. Psychol. (Mar. 3, 2021), https://www.frontiersin.org/articles/10.3389/fpsyg.2021.581492/full#B62 (accessed June 10, 2022).
[8]  *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

has been an integral part of Italian culture since the thirteenth and fourteenth centuries.[12] Today, Italy produces 3.5 million tons of pasta per year, making the country the world's top pasta producer.[13] Pursuant to Italian standards and law, dry "made in Italy" pasta is generally made from the drawing, rolling, and drying of dough prepared exclusively with durum wheat or semolina and water.[14] Indeed, Italian pasta is one of the best and most sought after products in the global market.[15] Italian durum wheat is among some of the "best varieties and characterized by an elevated protein content, an high gluten quality, a golden yellow color and a low content of ashes. **Exhibit 4e** [Barilla Group We Use Only Webpage]. However, Italy's production of local durum wheat cannot meet worldwide demands and in the past fifteen years, production of Italian durum wheat far exceeds the export of pastas.[16] Since the demand for Italian durum wheat is exponentially high, it is sold at premium.[17] Thus, in response to consumers' desire for authentic Italian pastas, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly authentic 'Italian-made' pastas, using durum wheat that is not sourced in Italy, in an effort to gain market share and increase sales.

14.     **Defendant's History and Origin of United States Barilla® Brand Products.** Defendant started as a bread and pasta shop in 1877 in Parma, Italy. **Exhibit 4c** [Barilla Group History of the Company Webpages]. In 1999, the first of Defendant's United States plants opened in Ames, Iowa, and in 2008 Defendant opened a second plant in Avon, New York. *Id.* All Barilla® brand Products that are sold in the United States, with the exception of the Barilla® Tortellini and the Barilla® Oven Ready Lasagna (not at issue in this case), are made in United States plants, and not in Italy. **Exhibit 3f** [FAQ—Company Related (Q3)]. Ingredients for Barilla® pastas are not all

---

[12]  Timothy Santonastaso, *A Brief History of Pasta*, Italics Magazine (May 29, 2020), https://italicsmag.com/2020/05/29/a-brief-history-of-pasta/ (accessed June 8, 2022).

[13]  INT'L PASTA ORGANISATION, *World Consumption Boom Since the Lockdown Started 1 Consumer Out of 4 Ate More, 25% Export Increase in 6 Months* (Oct. 16, 2020), https://internationalpasta.org/news/pasta-world-consumption-boom-since-the-lockdown-started-1-consumer-out-of-4-ate-more-25-export-increase-in-6-months/ (accessed June 8, 2022).

[14]  *See* MADE IN ITALY, *Pasta Made in Italy*, http://pasta.madeinitaly.org/ (accessed June 9, 2022).

[15]  Luca Fazio, *The pasta is 'made in Italy.' The wheat isn't,* il manifesto (Nov. 24, 2017), https://global.ilmanifesto.it/the-pasta-is-made-in-italy-the-wheat-isnt/ (accessed June 10, 2022).

[16]  *Id.*

[17]  *Id.*

sourced in Italy. *Id.* Therefore, the overwhelming majority of Barilla® pastas sold in the United States, including all of the Products at issue here, are not of made in Italy—be it the sourcing of ingredients (like durum wheat) or the manufacturing of the Products, despite Defendant's labeling and advertising of the Products with the Challenged Representation. Defendant admits that it uses wheat from around the world and does not exclusively use the preeminent Italian durum wheat, despite its commitment in 2019 to use Italian durum wheat for certain classic pasta formats so long as they are sold in Italy and not the United States. **Exhibit 4e** [Barilla Group We Use Only Webpage].

15.    **FTC Guidelines.** Manufacturers and marketers use country of origin claims to help distinguish their products over other products, knowing consumers rely on the accuracy of those claims in making their purchasing decisions. Thus, accurate label representations as to the source of the products are extremely important. The United States Federal Trade Commission ("**FTC**") created standards regarding the "Made in USA" claim to help companies avoid making misleading and deceptive claims.[18]   If a product is advertised as "Made in USA," then "all or virtually all" of the product must be made in the United States.[19] Specifically, the FTC stated:

> In connection with promoting or offering for sale any good or service, . . . it is an unfair or deceptive act or practice . . . to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2. Here, Defendant disregarded FTC guidelines governing "Made in USA" claims, analogous to the Challenged Representation in this case, opting to manufacture the Products outside of Italy, using ingredients that are not sourced from Italy (such as the main ingredient wheat durum), certainly failing to satisfy the "all or virtually all" standard that requires both the Products' ingredients and manufacture to originate from the claimed country of origin.

---

[18] *See* Federal Trade Commission, *Complying with the MADE IN USA STANDARD*, https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf. (accessed 6/9/2022); *see also generally* 16 C.F.R. § 323.2—Made in USA Labeling; 62 FR 63756-01, 1997 WL 737641.

[19] *Id.*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**B.** **Defendant's Brand Strategy and Long-Standing Marketing Campaign**

16. **Brand Strategy/Marketing Campaign.** Defendant deliberately designed and executed a decades long marketing campaign to identify the Barilla® brand, company, and Products at issue in this case, as authentic, genuine Italian pastas—made from ingredients sources in Italy (like durum wheat), and manufactured in Italy. Not only does Defendant label the Products' packaging with the Challenged Representation—Italy's #1 Brand of Pasta, but Defendant has also heavily advertised Barilla® brand pastas as Italian for the past century. Defendant maintains several Barilla websites, a recognized Barilla Historical Archive, Barilla Pasta Museum, and Barilla Academy—all designed to promote the brand and company's Italian identity to convince consumers that Barilla® brand pastas, like the Products, come from Italian ingredients, processed and manufactured in Italian factories, and then exported for sale to various countries, including, in particular, the United States.

17. **Challenged Representations on Products' Labels.** Defendant falsely and misleadingly labels the Products with the Challenged Representation: "ITALY'S #1 BRAND OF PASTA," surrounded by an artistic recreation of the Italian flag, as depicted below.



The Challenged Representation on the Products' packaging is conspicuous. It is prominently placed on each Product's primary display panel of the front label or packaging. The front primary display panel contains scant imagery and information about the Products, largely limited to the brand name (Barilla®); identity of the product line (e.g., Classic Blue Box), type of pasta (e.g., spaghetti), and a few claims about the Products' attributes (e.g., net weight). To draw the consumers' attention, the Challenged Representation is written in all capital letters; clear, legible, and highly visible white font; surrounded by an artistic recreation of the Italian flag; all of which starkly contrasts with the packaging's vast dark blue background. The Challenged Representation is also surrounded by Italian flags (including colors, depicted left to right, green, white, and red) to emphasize that the Product is made in Italy. Indeed, Defendant copyrighted the Challenged Representation, with the Italian flags depicted on its left and right. The net-effect or net-impression on consumers is that the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Products are made in Italy—including the harvesting of ingredients from Italy and the manufacture of the pastas in Italy. *See* **Exhibit 1** [Product Images].

18.   **Barilla Website.** Defendant emphasizes the Italian-made Products' purported attribute in its advertising of the Products as part of its long-standing marketing campaign and brand strategy to identify "Barilla®" pastas as Italy-made. Not only have Defendants labeled more than fifty of its Products, including its decade's old Classic Blue Box Products, with the Challenged Representation, but Defendant engaged in a marketing campaign, initiated long before and continuing throughout the Class Period, that likewise emphasizes Barrilla®'s Italian origin. Defendant's marketing campaign and brand strategy are evidenced by its www.barilla.com website. For example:

   a.   **Home.** On the homepage of its official website, Defendant describes itself as "an Italian family-owned food company" that is a "world leader in the markets of pasta and ready-to-use sauces in continental Europe, bakery products in Italy and crispbread in Scandinavia, the Barilla Group is recognized worldwide as a symbol of Italian know-how." **Exhibit 3a** [Home Webpage] (emphasis added)

   b.   **Classic Blue Box.** At the top of the Classic Blue Box product line webpage, Defendant brags that *Italians* recognize the Barilla® brand Products merely their signature dark blue box packaging and that *Italians* have favored the Products for more than one hundred years, writing: "***Italians*** know the familiar Blue Box means quality, perfectly al dente pasta every time. That's why Barilla has been an ***Italian favorite for over 140 years***, and continues to be the ***#1 pasta in Italy today***." *See* **Exhibit 3b** [Classic Blue Box Webpage] (emphasis added).

   c.   **Collezione Artisanal.** Similarly, at the top of the Collezione Artisanal product line webpage, Defendant emphasizes the *Italian* manufacturing process for the Products, writing: "Barilla® Collezione features six artisanal pasta shapes and our signature tortellini. Collezione is crafted using ***traditional Italian*** bronze plates for a homemade "al dente" texture that perfectly holds sauces every time." *See* **Exhibit 3c** [Collezione Artisanal Webpage] (emphasis added). Indeed, Defendant used the Italian word for "Collection" to name its artisanal "Collezione" product line.

   d.   **Whole Green.** Likewise, at the top of the Whole Green product line webpage, Defendant admits that, by brand-identity alone, consumers  expect Barilla® brand pastas to be *Italian-made*, writing: "Our Whole Grain pasta provides the same great taste, 'al dente' texture, and quality you have come to expect from ***Barilla, Italy's #1 brand pasta***." **Exhibit 3d** [Whole Grain Webpage] (emphasis added).

19.   **Barilla Group's Website, Barilla Historic Archive, Museum, and Academy.** The Barilla Group owns and controls, through various subsidiaries like Defendant, several brands of

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

pasta that are identified by particular countries of origin, such as the Italian-made pasta brands Barilla®, Voiello®, and Pasta Evangelists®. **Exhibit 4a** [Barilla Group Brands Webpage]. The Barilla Group maintains a website, www.barillagroup.com/en, that markets the Barilla® brand and company as undeniably Italian, dedicated to the manufacturing, marketing and selling of Italian-made pastas. Its website furthers Defendant's long-standing marketing campaign and brand strategy to expound Barrilla®'s Italian origin and cement the Barrilla® brand and company's identity as providing Italian-made pastas. For example:

a. **Barilla Brand Webpage.** The Barilla Group maintains a webpage dedicated to the Barilla.

(1) **Blue-Box Identity.** On the dedicated Barilla® brand webpage, the company utilizes the Barilla® classic blue box design, including its content, color scheme and layout, to headline the webpage, reinforcing the brand's Italian-made identity, and emphasizing that the quality of Barilla® pastas derives from its "Italian culture." **Exhibit 4b** [Barilla Group Barilla Brand Webpage] ("Offering quality is one of the biggest signs of affection, especially in the Italian culture. . . . This attitude represents Barilla's brand point of view.").

(2) **Iconic Italian Film and Music.** Directly below the headline, the Barilla Group posts a video that depicts families enjoying Barilla® pasta and features the artist Noa (Achinoam Nini) singing "Beautiful That Way," a vocal version of the theme song from Roberto Benigni's Oscar-winning, 1997 Italian film "Life is Beautiful," set to easily-recognizable Italian folk melodies written by Italy's foremost film composer Nicola Piovani. *Id.* (title card stating, in all capitals: "Barilla presents What Can You Say Without Words?"); *see also* YOUTUBE, Noa (Achionoam Nini), *Noa (Achionoam Nini) – Beautiful that way (La vita e bella) (The Official videoclip)*, https://www.youtube.com/watch?v=-OyXpzd6WBk (accessed 6/10/2022). The same video is posted on Defendant's Barilla® website to promote the Products. *See, e.g.*, **Exhibit 3b** [Classic Blue Box Webpage] (also available at YOUTUBE, Barilla US, *Barilla | No Words | Make Barilla Pasta as a Sign of Love*, at https://www.youtube.com/watch?v=laJO_KyPP38&t=7s (accessed 6/10/2022)). In this way, Defendant harnessed the notoriety of an iconic Italian movie, with an award-winning soundtrack, and easily recognizable Italian folk music melodies, to advertise Barilla® brand pastas and strengthen the association between the Products and their purported Italian origin.

(3) **Barilla Quality Manifesto.** Beneath the video, the Barilla Group touts Defendant's "Barilla Quality Manifesto," describing the importance of harvesting Defendant's "precious ingredient," "the highest quality durum wheat," to create the "perfect semonila blend," through constant improvement of Defendant's method to transform durum wheat into pasta, to provide "an ***authentic*** full taste," so that families can enjoy Defendant's "flavorful and ***genuine*** pasta" at home. **Exhibit 4b**

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

[Barilla Group Barilla Brand Webpage] (emphasis added). In this way, Barilla® brand pastas are marketed as authentic and genuine Italian made pastas derived from Italian durum wheat. *Id.*

(4)   **Spotify Playlist.** Defendant utilizes music sharing platforms, like Spotify, to further associate the Barilla® brand's identify with Italy. Approximately three-quarters of the way down Barilla Group's Barilla® brand webpage, the Barilla Group provides a link to its Spotify "Barilla Italia" playlist, which overwhelmingly contains Italian music. **Exhibit 4b** [Barilla Group Barilla Brand Webpage] (posting link to SPOTIFY, Barilla Italia, *Public Playlists*, at https://open.spotify.com/ user/w2p1oq867ns7jele6g3lw66fk?si= 38858347f5444303&nd=1 (accessed 6/10/2022)).

b.   **History.** The Barilla Group chronologizes the company's history, since its founding in 1877, on several webpages demarcated by the tenure of each male family members' era in leadership. **Exhibit 4c** [Barilla Group History Webpage]. In doing so, the company heavily ties its identity to Italy. For example:

(1)   **1877-1912.** During Peitro Barilla, Sr.'s era from 1877 to 1912, the company describes the modest beginnings of Barilla® brand pasta in opening a pasta shop in 1877, emphasizing its location in Parma, Italy. *Id.*

(2)   **1912-1947.** During Gualtiero and Riccardo Barilla's era from 1912 to 1947, the company launched a line of Barilla® brand pasta in 1937, described as "the ideal dietary food for a critical period in Italy." *Id.*

(3)   **1947-1993.** During Gianni and Pietro Barilla's era from 1947 to 1993, the company notes the construction of various factories, emphasizing their location in Italy, including the bakery factory in Rubbiano, Parma, Italy, in 1965, and the "largest pasta production plant" in Pedrignano, Parma, Italy, in 1969, as well as the launch of several other Italian-named product lines for Barilla's sister-pastas, like Voiello in 1973, and Mulino Bianco in 1975. *Id.* The company describes how, in 1965 to 1970, it used an Italian media personality, Mina, to make several clips advertising Barilla® brand pasta on "Italian TV," and, similarly, in 1979, it used "famous" Italian-named directors and cartoonists to advertise Barilla® brand pasta. *Id.* The company also touts the acquisition of another brand called Novara in 1992, emphasizing its Northern Italy affiliation. *Id.*

(4)   **1993-Today (at least 6/10/2022).** During Guido, Luca, and Paolo Barilla's era from 1993 to at least 2022, the company boasts about the 2004 inauguration of Academia Barilla, "***an international project devoted to safeguarding, developing, and promoting the regional Italian gastronomic culture as a unique World Heritage.***" *Id.* (emphasis added). The company further emphasizes, in 2012, the opening of its first "Pasta Sauces Plant"; in 2015, the arrival of its first

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

wheat transport train; and in 2020, its acquisition of the Muggia pasta plant, each time emphasizing their locations in Italy. *Id.*

c.   **Family Company Webpage.** The Barilla Group lists its Chairman, Deputy Chairmen, and Chief Executive Officer on its "Family Company" webpage, expressly identifying each of the current company leaders being Italian born. **Exhibit 4d** [Barilla Group Family Company Webpage] (expressly identifying each of the "heads of [its] family" as Italian born, including Chairman Guido Barilla, Vice-Chairmen Luca Barilla and Paolo Barilla, and Chief Executive Officer Claudio Colzani).

d.   **We Use Only Quality Wheat Webpage.** The Barilla Group boasts on its "We Use Only Quality Wheats" webpage that the Barilla® brand pastas are made from the "best quality durum wheat in the world," emphasizing its "commit[ment] to . . . purchas[e] . . . *Italian* durum" and manufacture "classic pasta formats destined to the *Italian* market . . . us[ing] *100% Italian wheats*," **Exhibit 4e** [Barilla Group We Use Only Webpage] (explaining the uniqueness and value Italian durum wheat provides, noting it is "selected among the best varieties and characterized by an elevated protein content, a[] high gluten quality, a golden yellow color and a low content of ashes.").

e.   **Historical Archive.** The Barilla Group provides a Historical Archive to let consumers "[d]iscover the heart of [its] company" through the marketing of Barilla® brand pastas, calling its past its future. **Exhibit 4f** [Barilla Group Historical Archive Webpage]. Immediately below this headline, a video is posted depicting: a reenactment of the company's founder in the fields of Italy harvesting wheat and examining grains; the humble beginnings of the first Barilla® pasta shop opened in Italy and the first Barilla® pasta factory in Italy and the craftsmanship of making pasta; imagery of families enjoying Barilla® brand products throughout modern history; and a return to the company founder's beginnings on the wheat fields of Italy, explaining how the company's past, grounded in Italy and Italian culture, is its future. *Id.* (video also available at YOUTUBE, Barilla Group, *Barilla – The Dream*, at https://www.youtube.com/watch?v=oSp29neAjNk&t=45s (accessed 6/10/2022); and ARCHIVIO STORICO BARILLA, Home Page, https://www.archiviostoricobarilla.com/en/ (accessed 6/10/2022) (Video "Dream").

f.   **Archivio Storico Barilla.** The Barilla Group provides a link on its Historical Archive webpage to its website, www.ArchivioStoricoBarilla.com/en/, which catalogues over 60,000 documents showing the history, economic activity, and marketing strategy of iconic Barilla® brands, including posters, promotional items, television and cinema commercials, developed in collaboration with several famous Italian directors. **Exhibit 4e** [Barilla Group Historical Archive Webpage]; *see also* **Exhibit 5g** [Archivio Storico Barilla—Archive Holds Webpage] (categorizing extensive content); **Exhibit 5h** [Archivio Storico Barilla—Declaration] (acknowledging the archive is maintained by a Barilla Group subsidiary aimed at preserving and disseminating documentation of Barilla's heritage).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

(1)     **Story of the Archive.** The company describes its linked archive as "a symbolic project," launched in 1987, to get "back [to] the memory of the past; preserv[e] with the most correct criteria [its] materials and [] documentation; giving them value to make them become again part of the Company's culture and of the wider social reality." **Exhibit 5b** [Archivio Storico Barilla—Story of Archive Webpage]. In doing so, the company acknowledges, "***[t]he history of Barilla has intertwined for more than a century with that of the city and, more generally, with the history of the Italian economy and culture***," inextricably tethering the entire Barilla® brand and company identity to the country and culture of Italy. *Id.* A mere perusal of the archive undeniably identifies Barilla® as Italian. Indeed, the company admits that the archive does not simply safeguard historical documents, but it is used to market the Barilla® brand and company as belonging to Italy, stating the archive, containing thousands of promotional materials readily identifiable as Italian, "is also involved in the cultural promotion of Barilla." *Id.*

(2)     **Mission.** The company further explains its mission in creating the Barilla Historical Archive to "promote[] and enhance[] . . . the cultural evolution of the enterprise and the historic memory of the Company generations, documenting the social development of Italy"; deliberately "disseminat[ing] its knowledge" on an "international" level; and "promoting the presence of Barilla" on platforms and in spaces far exceeding those traditionally occupied by a food manufacturer selling its products. **Exhibit 5c** [Archivio Storico Barilla—Mission Webpage]. In this way, the company deliberately establishes its identity and the Barilla® brand as an Italian company, making Italian pastas, in Italy, on an international scale that reaches far beyond mere commercial marketing spaces into educational spaces and historical archives. *Id.*

(3)     **Pasta Museum.** On May 10, 2014, the Barilla Group inaugurated a Barilla® brand pasta museum, located in Giarolo, Collecchio, Italy. **Exhibit 5d** [Archivio Storico Barilla—Education]. In its description of the museum, the company emphasizes its Barilla® pastas are made from durum wheat found in Sicily, Liguria, Bologna, and Naples, Italy. **Exhibit 5f** [Archivio Storico Barilla—Pasta Museum]. The museum has several sections dedicated to the wheat that makes Barilla® pastas; the evolution of the grinding and dry pasta manufacturing processes; and the historical marketing and advertising of its pastas. *Id.*

(4)     **Academy Barilla.** In May 2004, the Barilla Group inaugurated an "international center for promotion, tutelage and development of the art of Italian Gastronomy." **Exhibit 5d** [Archivio Storico Barilla—Education] (emphasis added). On Barilla Group's Education webpage, it provides a link to the academy. *Id.*; *see also* **Exhibit 6** [Academia Barilla—The Academy]. The company describes the Barilla

Academy's "mission of discovering and disseminating the Italian gastronomic and cultural heritage," "to strengthen the awareness of the deep roots of the Italian gastronomic tradition." *Id.* Thus, the Barilla Academy's main purpose is to tether pastas, like Barilla® brand pastas, among other foods, to Italy. *Id.*

(5) **Declaration.** Indeed, the Ministry of Cultural Heritage and Activities, on November 30, 1999, declared the company's archive "of considerable historical interest" as it "witnessed the development of the food industry in Parma and the evolution of customs in Italy." **Exhibit 5h** [Archivio Storico Barilla—Declaration]. The archive solidifies, on an international and historic scale, the undeniable, century's old, and deliberately marketed identity of Barilla® brand pastas as authentic, genuine Italian-made pastas. *Id.*

20. **Social Media Representations.** Defendant continuously uses deceptive labeling and marketing techniques to falsely portray its Products as made in Italy, taking advantage of social media platforms like Twitter and Instagram. For example:

a. **Twitter Screenshot**. Barilla's official Twitter biography, depicted below, is written in the Italian language, "Barilla, nata nel 1877, rappresenta oggi la pasta n1 in Italia e nel mondo," to reinforce the brand and company's Italian identity. *See* Twitter, @Barilla, at https://twitter.com/Barilla (accessed 6/9/2022) (translated to English: born in 1877, today it represents the no. 1 pasta in Italy and in the world). Barilla uses its Twitter account to emphasize its geographic location in "Parma, Italy" (where the Barilla Group's headquarters are located). *Id.*



FIRST AMENDED CLASS ACTION COMPLAINT

b.   **Instagram Screenshot.** Similarly, Defendant's Instagram account for Barilla®, for example, features a video about the origins of Carbonara, an Italian pasta dish, narrated in the Italian language, and depicting iconic imagery strongly associated with Italy to reinforce the Barilla® brand image and corporate identity as a credible manufacturer of authentic Italian pastas.



C.   <u>**Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representation into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products**</u>

21.   **Reasonable Consumer's Perception.** The Challenged Representation, combined with Defendant's pervasive marketing campaign and brand strategy, lead reasonable consumers, like Plaintiffs, into believing that the Products conform to the Challenged Representation— meaning, consumers are led to believe that the Products are made in Italy, i.e., their ingredients are sourced in Italy and the finished Products are manufactured in Italy.

22.     **No Clear and Conspicuous Disclaimers Dispel the Deception.** Nothing on the Products' labeling or packaging would lead reasonable consumers to believe that the Challenged Representation—that the Products are made in Italy, their ingredients are sourced in Italy, and the finished Products are manufactured in Italy—is not true. That is because the Products' labeling and packaging do not contain a clear, unambiguous, and conspicuously displayed statement, reasonably proximate to the Challenged Representation, that reasonable consumers are likely to notice, read, and understand to mean that, contrary to the prominent, clear, and unambiguous front-label Challenged Representation, reinforced and emphasized by a massive, long-standing marketing campaign and brand strategy described herein, that the Challenged Representation is indeed false as the Products' ingredients are not sourced in Italy and the Products themselves are not assembled or manufactured in Italy. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at a consumer product's side or back labels before they buy it..[20]  Thus, the very placement of

---

[20] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A4&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul. 20, 2022) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

qualifying statements or contradictory disclaimers on back or side panels, by their very placement, are not sufficiently conspicuous to presume that a reasonable consumer would have even noticed it, let alone understood it to qualify or contradict prominently placed front-panel representations, like the Challenged Representations.

23.     **Materiality.** The Challenged Representation is material to reasonable consumers, including Plaintiffs, in deciding to buy the Products—meaning that the Italian-made Products-attribute is important to consumers and motivates them to buy the Products.

24.     **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representation in deciding to purchase the Products.

25.     **Falsity.** The Challenged Representation is false and deceptive because the Products are not made in Italy—meaning the ingredients are not sourced in Italy and/or the finished Products are not manufactured in Italy. Indeed, Defendant admits that Products sold in the United States are made in the United States, not Italy. **Exhibit 3f** [FAQ—Company Related (Q3)] ("Barilla Pasta that is sold in the United States is made in our plants in Ames, IA and Avon, NY. . . . Barilla purchases its wheat from around the world").

26.     **Consumers Lack Knowledge of Falsity.** The Class, including Plaintiffs, who purchased the Products, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representation is false, misleading, deceptive, and unlawful—that is because the Class, including Plaintiffs, do not work for Defendant and have no personal knowledge of the Country in which the Products are made—be it where the ingredients are sourced or the finished Products are manufactured.

27.     **Defendant' Knowledge.** Defendant knew, or should have known, that the Challenged Representation was false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiffs and the Class. Defendant intentionally and deliberately used the Challenged Representation, alongside its massive marketing campaign and brand strategy, to cause Plaintiffs and similarly situated consumers to buy the Products believing that the Challenged representation is true.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

a. **Knowledge of Falsity.** Defendant manufactured the Products, selecting its ingredients (like wheat durum) from countries other than Italy, and manufacturing the Products in factories outside of Italy, even though Defendant marketed its Products as made in Italy. **Exhibit 3f** [FAQ— Company Related (Q3)] ("Barilla Pasta that is sold in the United States is made in our plants in Ames, IA and Avon, NY. . . . Barilla purchases its wheat from around the world"); YOUTUBE, Barilla US, *Barilla | Meet the Team: Greg, Wheat-Sourcing Expert (60s)*, https://www.youtube.com/watch?v=BK1zN2iz0dw (accessed 6/10/2022) (link to video on Barilla Group's Barilla Brand Webpage at https://www.barillagroup.com/en/brands/barilla/ (accessed 6/10/2022) (describing the North American company's careful selection of durum wheat).

b. **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representation would lead reasonable consumers into believing that the Products are made in Italy—meaning that the ingredients all come from Italy and the finished Products are manufactured in Italy. Not only has Defendant utilized a long-standing brand strategy to identify the Products as Italian-made—executed through a decades-long marketing campaign described *supra*, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representation, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products are made in Italy. Thus, Defendant either knew the Challenged Representation is misleading before it marketed the Products to the Class, including Plaintiffs, or Defendant would have known that it is deceptive had it complied with its statutory obligations.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

c.     **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations materiality to consumers. First, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels or packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representation on the Products' labels and packaging demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation. Second, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representation on countless Products, advertisements, and throughout Defendant's marketing campaign spanning decades, evidences Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d.     **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representation's inclusion on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representation to sell the Products. However, despite Defendant's knowledge of the Challenged Representation's falsity, and Defendant's knowledge that consumers reasonably rely on the representation in deciding to buy the Products—Italian-Made—Defendant deliberately chose to market the Products with the Challenged Representation thereby misleading

1   consumers into buying or overpaying for the Products. Thus, Defendant knew,

2   or should have known, at all relevant times, that the Challenged

3   Representation misleads reasonable consumers, such as Plaintiffs, into buying

4   the Products to attain the product-attributes that Defendant falsely advertised

5   and warranted.

6      28.   **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the

7   Products, or would not have overpaid a price premium for the Products, if they had known that the

8   Challenged Representations were false and, therefore, the Products do not have the attribute

9   claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's

10  material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased

11  the Products to their detriment.

12     **D.    The Products are Substantially Similar**

13     29.   As described herein, Plaintiffs purchased the Sinatro and Prost Purchased Products

14  (collectively, the "**Purchased Products**"). The additional Products (collectively, the

15  "**Unpurchased Products**") are substantially similar to the Purchased Products.

16     a.    **Defendant.** All Products are manufactured, sold, marketed, advertised,

17        labeled, and packaged by Defendant.

18     b.    **Brand.** All Products are sold under the same brand name: Barilla®.

19     c.    **Purpose.** All Products are dry pastas intended for human consumption.

20     d.    **Ingredients.** All Products are made from largely the same ingredients or types

21        of ingredients, predominantly made from durum wheat, milled in the same or

22        similar manner, and manufactured into the finished Products in the same or

23        similar manner. *See* **Exhibit 2** [Ingredient Disclosures].

24     e.    **Marketing Demographics.** All Products are marketed directly to consumers

25        for personal consumption. In particular, the Products are manufactured as food

26        to feed families.

27     f.    **Challenged Misrepresentation.** All Products contain the same Challenged

28        Representation ("ITALY'S #1 BRAND OF PASTA") conspicuously and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

prominently placed on the primary display panel of the front label and/or packaging. In addition, Defendant reinforces the Challenged Representation on each Product by displaying images of the Italian flag surrounding the Challenged Representation. Indeed, Defendant copyrighted the Challenged Representation with the Italian flag imagery.

g.   **Packaging.** All Products are packaged in similar packaging—using a dark blue background, and similar color schemes for written content. The Products largely share in common the same marketing claims written on the box, including brand identity (Barilla®), pasta type (e.g., spaghetti), and a few product features (e.g., net weight).

h.   **Misleading Effect.**  The misleading effect of the Challenged Representation on consumers is the same for all Products—consumers over-pay a premium for Italian-made Products, but receive Products that are not Italian-made.

**E.   No Adequate Remedy at Law**

30.   **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.   **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

b.   **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representation, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.   **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    Challenged Representation. Injunctive relief is necessary to prevent Defendant

2    from continuing to engage in the unfair, fraudulent, and/or unlawful conduct

3    described herein and to prevent future harm—none of which can be achieved

4    through available legal remedies (such as monetary damages to compensate

5    past harm). Further, injunctive relief, in the form of affirmative disclosures is

6    necessary to dispel the public misperception about the Products that has

7    resulted from years of Defendant's unfair, fraudulent, and unlawful marketing

8    efforts.  Such disclosures would include, but are not limited to, publicly

9    disseminated statements that the Products Challenged Representation is not

10    true and providing accurate information about the Products' true nature; and/or

11    requiring prominent qualifications and/or disclaimers on the Products' front

12    label concerning the Products' true nature.  An injunction requiring

13    affirmative disclosures to dispel the public's misperception, and prevent the

14    ongoing deception and repeat purchases based thereon, is also not available

15    through a legal remedy (such as monetary damages). In addition, Plaintiffs are

16    *currently* unable to accurately quantify the damages caused by Defendant's

17    future harm, because discovery and Plaintiffs' investigation have not yet

18    completed, rendering injunctive relief all the more necessary. For example,

19    because the court has not yet certified any class, the following remains

20    unknown: the scope of the class, the identities of its members, their respective

21    purchasing practices, prices of past/future Product sales, and quantities of

22    past/future Product sales.

23    d.    **Public Injunction.** Further, because a "public injunction" is available under

24    the UCL, damages will not adequately "benefit the general public" in a manner

25    equivalent to an injunction.

26    e.    **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and

27    CLRA are claims asserted on behalf of Plaintiffs and the California Subclass

28    against Defendant, while breach of warranty and unjust enrichment/restitution

are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

      f.    **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

    31.    **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale ("**Nationwide Class**"); and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

32.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

33.     **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

34.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

35.     **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant's conduct of advertising and selling the Products Italian made when they are not constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.     Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.     Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.     Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

f.  Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.  Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.  Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.  How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.  Whether Defendant's conduct constitutes breach of warranty;

n.  Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.  Whether Defendant was unjustly enriched by their unlawful conduct.

36.  **Typicality**:  Plaintiffs' claims are typical of the claims of the Class Members they seeks to represent because Plaintiffs, like the Class Members, purchased Defendant's misleading and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

37.  **Adequacy**: Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

38.  **Superiority and Substantial Benefit:** A class action is superior to other methods for

the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

39.   **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

40.   **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## VII.   CAUSES OF ACTION

### COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

### (*On Behalf of the California Subclass*)

42.     **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

43.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs and a California Subclass who purchased the Products within the applicable statute of limitations.

44.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

45.     **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Italian Origin Representation—despite the fact the Products are made in the USA. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

46.     **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products are not made or manufactured in Italy. Defendant knew and knows that the Products are not truly made or manufactured in Italy, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products are authentic Italian pastas.

47.     **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are made in Italy.

48. **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's False Advertising Claims—namely Plaintiffs and the California Subclass lost the purchase price for the Products they bought from the Defendant.

49. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

50. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

51. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

52. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiffs and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

53. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

54.    **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiffs and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### "Unfair" Prong

55.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal.

App. 4th 1394, 1403 (2006).

56.     **Injury.** Defendant's action of mislabeling the Products with the Challenged Representation does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

57.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

58.     **No Utility.** Here, Defendant's conduct of labeling the Products with the Italian Origin Representation when the Products are not made or manufactured in Italy has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

59.     **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

60.     **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

61.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Italian Origin Representation.

62.     **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and

continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

63. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Italian Origin Representation.

64. **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiffs and the California Subclass paid for Products that ae not authentic Italian pastas. Plaintiffs and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiffs seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>**"Fraudulent" Prong**</u>

65. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

66. **Fraudulent & Material Challenged Representations.** Defendant used the Italian Origin Representation with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Challenged Representation is false and Defendant knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

67. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

68. **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representation to their detriment in that they purchased the Products.

69. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Italian Origin Representation.

70.     **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

71.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Italian Origin Representation.

72.     **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products.  Specifically, Plaintiffs and the California Subclass paid for products that they believed were made in Italy, when, in fact, the Products are made or manufactured in the United States. Plaintiffs and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "Unlawful" Prong

73.     **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

74.     **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

75.     **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business &

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

76.     **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

77.     **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Italian Origin Representation.

78.     **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

79.     **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

80.     **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Products are truly authentic Italian pastas. Accordingly, Plaintiffs seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

81.     **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

82.     **California Subclass.** Plaintiffs bring this claim individually and on behalf of the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    California Subclass who purchased the Products within the applicable statute of limitations.

2    83.    **FAL Standard.**    The False Advertising Law, codified at Cal. Bus. & Prof. Code

3    section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

4    84.    **False & Material Challenged Representations Disseminated to Public.** Defendant

5    violated section 17500 when it advertised and marketed the Products through the unfair, deceptive,

6    untrue, and misleading Italian Origin Representation disseminated to the public through the

7    Products' labeling, packaging and advertising.   These representations were false because the

8    Products do not conform to them.   The representations were material because they are likely to

9    mislead a reasonable consumer into purchasing the Products.

10    85.    **Knowledge.** In making and disseminating the representations alleged herein,

11    Defendant knew or should have known that the representations were untrue or misleading, and acted

12    in violation of § 17500.

13    86.    **Intent to sell.** Defendant's Challenged Representation was specifically designed to

14    induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Products.

15    87.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in

16    violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount

17    of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have

18    suffered and continue to suffer economic losses and other damages including, but not limited to, the

19    amounts paid for the Products, and any interest that would have accrued on those monies, in an

20    amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL

21    in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the

22    California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct

23    to prevent ongoing and future harm that will result.

24    88.    **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described

25    herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive

26    damages as permitted by law.   Defendant's misconduct is malicious as Defendant acted with the

27    intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact,

28    receiving.   Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

89. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

90. **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

91. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

92. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

93. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

94. **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

95. **Transactions.** The purchase of the Products by Plaintiffs and members of the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

96.    **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representation:

a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b.    Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c.    Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

97.    **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

98.    **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Products.

99.    **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury.  Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

100.    **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representation in deciding to purchase the Products.   The Challenged Representation was a substantial factor. The Challenged Representation was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

101.    **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

section 1782, more than thirty days prior to the filing of this complaint, on or about November 20, 2021, Plaintiffs' counsel, acting on behalf of Plaintiff Prost and all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Barilla America, Inc.at its headquarters and principal place of business (885 Sunset Ridge Road, Northbrook, IL 60062) and its registered agent for service of process (CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833), which were delivered to those addresses on or about December 6, 2021 and December 3, 2021, respectively. *See* **Exhibit 7** [First Pre-Lit Demand Letter]. Further, on June 11, 2022, concurrent with the filing of the operative complaint, Plaintiffs' counsel, on behalf of Plaintiffs Sinatro, Plaintiff Prost, and all members of the Class, mailed a second Demand Letter with an enclosed copy of the Class Action Complaint, filed on June 11, 2022 (ECF 1), via U.S. certified mail, return receipt requested, addressed to Defendant Barilla America, Inc. at its headquarters and principal place of business (885 Sunset Ridge Road, Northbrook, IL 60062), which was delivered on June 16, 2022, and its registered agent for service of process (CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833), which was delivered on June 16, 2022, but since then held at the post office pursuant to the addressee's request. *See* **Exhibit 8** [Second Pre-Lit Demand Letter]. Plaintiffs' counsel also sent a courtesy copy of the First and Second Demand Letter, with the enclosed complaint, all other pleadings and written pre-litigation communications to Defendant's counsel of record on June 27, 2022.

102. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies.

103. **Injunction.** Given that Defendant's conduct violated California Civil Code section

1780, Plaintiffs and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiffs and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products' with the Challenged Representation.

104.   **Punitive Damages**. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiffs seek an award of punitive damages against Defendant.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**COUNT FOUR**

**Breach of Warranty**

***(On Behalf of the Nationwide Class and California Subclass)***

105.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

106.   **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

107.   **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

108.   **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant---to wit, that the Products, among other things, conform to the Challenged Representations.

109.   **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and their qualities.

110.   **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

111. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## **COUNT FIVE**

### **Unjust Enrichment/Restitution**

#### (*On Behalf of the Nationwide Class and California Subclass*)

112. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

113. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1   within the applicable statute of limitations.

2        114.   **Plaintiffs/Class Conferred a Benefit.** By purchasing the Products, Plaintiffs and

3   members of the Class conferred a benefit on Defendant in the form of the purchase price of the

4   Products.

5        115.   **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such

6   benefit and Defendant appreciated the benefit because, were consumers not to purchase the

7   Products, Defendant would not generate revenue from the sales of the Products.

8        116.   **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance

9   and retention of the benefit is inequitable and unjust because the benefit was obtained by

10   Defendant's fraudulent, misleading, and deceptive representations and omissions.

11        117.   **Causation/Damages.**  As a direct and proximate result of Defendant's unjust

12   enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price

13   they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue

14   to suffer economic losses and other damages including, but not limited to, the amounts paid for the

15   Products, and any interest that would have accrued on those monies, in an amount to be proven at

16   trial. Accordingly, Plaintiffs seeks a monetary award for unjust enrichment in damages, restitution,

17   and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as

18   well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that

19   will result.

20        118.   **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action

21   for unjust enrichment on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and

22   unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct

23   warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious

24   as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they

25   were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs

26   and consumers as Defendant was aware of the probable dangerous consequences of its conduct and

27   deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is

28   oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## VIII. <u>PRAYER FOR RELIEF</u>

119. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Dated: July 20, 2022                    Respectfully submitted,

                                        **CLARKSON LAW FIRM, P.C.**
                                        By:

                                         */s/ Katherine A. Bruce*
                                        RYAN J. CLARKSON
                                        KATHERINE A. BRUCE
                                        KELSEY J. ELLING

                                        *Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: July 20, 2022

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**
By:

 */s/ Katherine A. Bruce*

RYAN J. CLARKSON
KATHERINE A. BRUCE
KELSEY J. ELLING

*Attorneys for Plaintiffs*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265