1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    MATTHEW SINATRO, et al.,                Case No.  22-cv-03460-DMR

8                    Plaintiffs,
                                            **ORDER ON MOTION TO DISMISS**
9           v.                              **FIRST AMENDED COMPLAINT**

10   BARILLA AMERICA, INC.,                 Re: Dkt. No. 15

11                   Defendant.

12          Plaintiffs Matthew Sinatro and Jessica Prost filed this putative class action against

13   Defendant Barilla America, Inc. ("Barilla") alleging false, misleading, and deceptive marketing

14   practices with respect to the labeling of certain of its Barilla-brand pastas.  Barilla moves pursuant

15   to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the amended complaint.

16   [Docket No. 15.]  This motion is appropriate for determination without oral argument.  Civ. L.R.

17   7-1(b).  For the following reasons, the motion is granted in part and denied in part.

18   **I.      BACKGROUND**

19          Plaintiffs make the following allegations in the amended complaint, all of which are taken

20   as true for purposes of the motion to dismiss.[1]  Barilla is a corporation headquartered in Illinois.  It

21   originated as a bread and pasta shop in Parma, Italy in the nineteenth century.  [Docket No. 11

22   (First Am. Compl, "FAC") ¶¶ 11, 14.]

23          At issue in the FAC is the labeling of certain Barilla-brand pastas as "ITALY'S #1

24   BRAND OF PASTA®."  *See* FAC ¶ 2.  Plaintiffs allege that "authentic Italian products, including

25   pastas, hold a certain prestige and [are] generally viewed as a higher quality product," and that

26   _____

27   [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
28   (per curiam) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

"the general 'Italianness' of a product influences consumers['] overall evaluation of a product." *Id*. at ¶ 12 (citation omitted).  According to Plaintiffs, "consumers willingly pay more for Italian sounding and/or looking products."  *Id*. (citation omitted).  Further, they allege, "Italian pasta is one of the best and most sought after products in the global market," and "Italian durum wheat is among some of the 'best varieties[']" of wheat.  *Id*. at ¶ 13.  However, Italy's production of durum wheat does not meet worldwide demand.  Accordingly, Plaintiffs allege, many companies, including Barilla, "have scrambled to manufacture, market, and sell purportedly authentic 'Italian-made' pastas, using durum wheat that is not sourced in Italy, in an effort to gain market share and increase sales."  *Id*.

Plaintiffs allege that "[i]n an effort to increase profits and to obtain an unfair competitive advantage . . . [Barilla] falsely and misleadingly labels certain of its Barilla® brand pastas as 'ITALY'S #1 BRAND OF PASTA®,' deliberately leading reasonable consumers, including Plaintiffs, to believe that the Products are made in Italy" from ingredients "sourced in Italy."  *Id*. at ¶¶ 2, 22 (emphasis removed) (the "Challenged Representation").  They further allege that Barilla reinforces this representation about the origin of the products by replicating the green, white, and red colors of Italy's flag surrounding the representation, "further perpetuating the notion that the Products are authentic pastas from Italy."  *Id*. at ¶ 2.  According to Plaintiffs, "contrary to this labeling, the Products are not made in Italy" and are not manufactured from ingredients from Italy.  *Id*. at ¶ 3.  Rather, the products are manufactured in Barilla's plants in Iowa and New York using ingredients sourced from countries other than Italy.  *Id*. at ¶¶ 3, 14, 25.  The FAC includes examples of the packaging and labeling of several types of Barilla-brand pastas.  *Id*. at ¶ 2; Ex. 1. The front of the packaging of each product contains Barilla's red and white brand logo, the name of the product, and the Challenged Representation.

According to Plaintiffs, Barilla "deliberately designed and executed a decades long marketing campaign to identify the Barilla® brand, company, and Products at issue in this case, as authentic, genuine Italian pastas—made from ingredients sources [sic] in Italy (like durum wheat), and manufactured in Italy."  FAC ¶ 16.  This campaign included websites, a Barilla Historical Archive, a Barilla Pasta Museum, and Barilla Academy, which Plaintiffs allege were "all designed

1   to promote the brand and company's Italian identity" and "convince consumers that Barilla®

2   brand pastas . . . come from Italian ingredients, [are] processed and manufactured in Italian

3   factories, and then exported for sale to various countries," including the United States.  *Id*.

4         Plaintiffs further allege that "[n]othing on the Products' labeling or packaging would lead

5   reasonable consumers to believe that the Challenged Representation—that the Products are made

6   in Italy, their ingredients are sourced in Italy, and the finished Products are manufactured in

7   Italy—is not true."  *Id*. at ¶ 22.  Specifically, Plaintiffs allege that there is no "clear, unambiguous,

8   and conspicuously displayed statement, reasonably proximate to the Challenged Representation,

9   that reasonable consumers are likely to notice, read, and understand to mean that . . . the

10  Challenged Representation is indeed false as the Products' ingredients are not sourced in Italy and

11  the Products themselves are not assembled or manufactured in Italy."  *Id*.

12        Plaintiff Sinatro purchased a box of the Classic Barilla Blue Box Pasta (Angel Hair) for

13  approximately $2.00 at a grocery store in San Francisco, California in the winter of 2021.  FAC ¶

14  8.  The Challenged Representation on the label led him to believe "that the Product was made in

15  Italy—to wit, the Products' ingredients are from Italy and the Products are manufactured in Italy."

16  *Id*.  Sinatro did not review the side or back panels of the product and did not notice any statements

17  on the packaging that contradicted the Challenged Representation or otherwise indicated that the

18  pasta was not made or manufactured in Italy and/or that its ingredients were not from Italy.

19  Plaintiffs allege that Sinatro "would not have purchased the Product, or would not have overpaid a

20  premium for the Product's purported Italian origin, had he known that the Challenged

21  Representation was false."  *Id*.  Further, they allege that Sinatro "is not personally familiar with

22  the location from which the Products' ingredients are sourced or the location where the Products

23  are manufactured as he does not possess any personal knowledge regarding where the Products are

24  made," and therefore "has no way of determining whether the Challenged Representation on the

25  Products is true."  *Id*.

26        Plaintiff Prost purchased two boxes of the Classic Barilla Blue Box Pasta (Spaghetti) for

27  approximately $2.00 per box at a grocery store in Los Angeles, California in the fall of 2021.  *Id*.

28  at ¶ 9.  The Challenged Representation on the label led Prost to believe "that the Product was

made in Italy—to wit, the Products' ingredients are from Italy and the Products are manufactured in Italy." *Id.* When she made the purchase, Prost did not review the side or back panels of the product and did not notice any statements on the packaging that contradicted the Challenged Representation or otherwise indicated that the pasta was not made or manufactured in Italy and/or that its ingredients were not from Italy. Plaintiffs allege that Prost "would not have purchased the Product, or would not have overpaid a premium for the Product's purported Italian origin, had she known that the Challenged Representation was false." *Id.* Prost "is not personally familiar with the location from which the Products' ingredients are sourced or the location where the Products are manufactured as she does not possess any personal knowledge regarding where the Products are made," and therefore "has no way of determining whether the Challenged Representation on the Products is true." *Id.*

Based on these allegations, Plaintiffs assert the following claims for relief: 1) violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq.; 2) violation of the False Advertising Law ("FAL), California Business & Professions Code section 17500 et seq.; 3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et seq.; 4) breach of warranty; and 5) unjust enrichment/restitution.

In addition to the particular products Sinatro and Prost purchased (the "purchased products"), Plaintiffs' claims also challenge the packaging for 52 additional Barilla-brand pastas across several sub-brands: Classic Blue Box, Collezione Artisanal, Gluten Free, Veggie, and Whole Grain. FAC ¶ 4. According to Plaintiffs, these additional products also contain the Challenged Representation on the front labels of the packaging. *Id.*

Plaintiffs seek to represent a nationwide class of allegedly similarly situated persons, defined as:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale[.]

FAC ¶ 31. They also seek to represent the following California subclass:

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged

1   Representation on the Products' front packaging, for purposes other
    than resale[.]

2   *Id*.  Plaintiffs bring claims one through three on behalf of themselves and the California subclass.

3   They bring claims four and five on behalf of themselves, the nationwide class, and the California

4   subclass.

5       Barilla now moves to dismiss the FAC.

6   **II.    LEGAL STANDARDS**

7       Barilla moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1)

8   and 12(b)(6).

9       **A.    Rule 12(b)(1)**

10      The question of standing is "an essential and unchanging part of the case-or-controversy

11  requirement of Article III [of the U.S. Constitution]."  *Lujan v. Defenders of Wildlife,* 504 U.S.

12  555, 560 (1992).  Because standing is a jurisdictional issue, it is properly addressed under a Rule

13  12(b)(1) motion.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  A court will

14  dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so

15  insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise

16  completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a*

17  *Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P.

18  12(b)(1).  To satisfy Article III's standing requirements, a plaintiff must show "(1) it has suffered

19  an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural

20  or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3)

21  it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

22  decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81

23  (2000).

24      "Where standing is raised in connection with a motion to dismiss, the court is to accept as

25  true all material allegations of the complaint, and . . . construe the complaint in favor of the

26  complaining party."  *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 597 (9th Cir.

27  2020) (quotations omitted).

28

United States District Court
Northern District of California

**B.      Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**III.      REQUEST FOR JUDICIAL NOTICE**

Barilla submitted a request for judicial notice along with its motion to dismiss. [Docket

Nos. 15-8 (Request for Judicial Notice, "RJN"); 15-1 (Swanholt Decl., Aug. 19, 2022) Exs. A-F.]

It asks the court to take judicial notice of six exhibits, including what it contends are true and

correct copies of front and side-nutrition labels for Barilla-brand pastas as well as documents

related to Barilla's trademark, "Italy's #1 Brand of Pasta."[2]

### A.  Legal Standard

A district court generally may not consider any material beyond the pleadings in ruling on

a Rule 12(b)(6) motion.  *Branch*, 14 F.3d at 453.  If "matters outside the pleading are presented to

and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary

judgment.  *See* Fed. R. Civ. P. 12(d).  "A court may, however, consider certain materials—

documents attached to the complaint, documents incorporated by reference in the complaint, or

matters of judicial notice—without converting the motion to dismiss into a motion for summary

judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "Both of these procedures

permit district courts to consider materials outside a complaint, but each does so for different

reasons and in different ways."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

2018).  The Ninth Circuit has cautioned courts about the appropriate use of judicial notice and the

incorporation by reference doctrine when ruling on Rule 12(b)(6) motions:

> The overuse and improper application of judicial notice and the

---

[2] Barilla's RJN consisted of a three-page brief that it filed in addition to its 16-page motion to dismiss.  Plaintiffs filed a six-page opposition to the RJN, in addition to their 26-page opposition to the motion to dismiss (which violates Local Rule 7-3(a), which provides that any opposition to a motion may not exceed 25 pages of text).  Additionally, Barilla filed a three-page reply to Plaintiffs' opposition to the RJN (Docket No. 26-1) in addition to its 14-page reply.  These submissions resulted in the parties' submissions going beyond the page limits for the opposition and reply briefs.  The court will consider Barilla's separately-filed RJN and Plaintiffs' separately-filed opposition thereto, but in future motions the parties must include any argument supporting or opposing requests for judicial notice within the main briefs and within the allotted page limits.

The court also notes that Civil Local Rule 3-4(c)(2) states that text "must be double-spaced with no more than 28 lines per page, except for the identification of counsel, title of the case, footnotes, and quotations," and that text must be "in a standard, proportionally spaced font."  In addition to being oversized, Plaintiffs' opposition brief contains lengthy single-spaced blocks of texts and/or footnotes on many pages that appear designed to overcome Civil Local Rule 3-4(c)(2)'s requirement for double spacing.  Additionally, Plaintiffs' brief appears to violate the requirement that font be "proportionally spaced" by decreasing the spacing between letters and characters.  Future failure to comply with the Local Rules may result in sanctions or the court's striking of the offending submission.

United States District Court
Northern District of California

> incorporation-by-reference doctrine . . . can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. . . . If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief. Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine.

*Id.* (internal citations omitted).

Federal Rule of Evidence 201 governs judicial notice. Under Rule 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id.* at 999 (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, it may not take judicial notice of disputed facts stated in public records. *Lee*, 250 F.3d at 690. "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. If a court takes judicial notice of a document, it must identify the specific fact or facts it is noticing from the document. *Id.*

In contrast, the incorporation by reference doctrine is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. This is to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions that weaken—or doom—their claims." *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (quoting *Ritchie*, 342 F.3d at 907). However, if a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* Further, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.* (quoting *Coto Settlement*

8

*v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).  The Ninth Circuit has instructed that "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim."  *Id*. Thus, "while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6) . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id*.; *see also id*. at 1014 ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.").

### B.   Exhibits A and B

According to Barilla's RJN, Exhibit A contains "true and correct copies of images of the front and side-nutrition labels" for the two products Plaintiffs allegedly purchased, Classic Barilla Blue Box Pasta (Angel Hair) and Classic Barilla Blue Box Pasta (Spaghetti).  Swanholt Decl. ¶ 3, Ex. A; *see* FAC ¶¶ 8, 9.  Counsel states that these images were "taken from a website Plaintiffs used to attach product images to their FAC," foodservicedirect.com.  Swanholt Decl. ¶ 3.

Barilla contends that Exhibit B contains "true and correct copies of the front and side-nutrition labels" for four other products: Barilla Whole Grain Pasta (Penne); Barilla Veggie Pasta (Spaghetti); Barilla Gluten Free Pasta (Penne); and Barilla Collezione Artisanal Pasta (Penne).  *Id*. at ¶ 4, Ex. B.  According to counsel, these copies were "taken from a similar grocery store website as used by Plaintiffs to attach product images to their FAC," fredmeyer.com.  Swanholt Decl. ¶ 4.

Exhibit A consists of two pages of what appear to be multiple screenshots of product images that have been cut and pasted into a standalone document.  The images are identified by typed captions and links to webpages.  Several of the product images contain type that is illegible, and two of the images are labeled, "Side—Nutrition Label—Close Screenshot."  Similarly, Exhibit B consists of four pages of what appear to be screenshots of product images that have been cut and pasted into a standalone document with typed captions and webpages.  As with Exhibit B, multiple images are labeled "Side—Nutrition Label Close Screenshot."  Many of the images contain type that is illegible.

Barilla argues that Exhibits A and B are judicially noticeable under Federal Rule of

United States District Court
Northern District of California

Evidence 201(b)(2) because they "consist of information available on publicly available websites." RJN 3.  It notes that the documents "contain images concerning products specifically alleged to be purchased by Plaintiffs and/or referenced in the FAC."  *Id*.  According to Barilla, Plaintiffs attached images of the front labels of the products at issue as Exhibit 1 to the FAC, and "Exhibits A and B merely provide the complete picture."  *Id*.

Plaintiffs oppose the request to take judicial notice of Exhibits A and B.  They agree that the court may take judicial notice of websites when the authenticity of the websites is not in dispute.  Opp'n to RJN 3 (citing *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed.")).  However, they dispute the authenticity of the Exhibits, noting that they are not true and accurate copies of webpages.  Instead, Plaintiffs argue that Exhibits A and B consist of "altered, zoomed-in versions of the webpages" that in many instances are barely legible.  They object based on Federal Rules of Evidence 1001-1003, which govern the admissibility of duplicates of an original writing or photograph.  *Id*. at 4-5.

The court declines to take judicial notice of Exhibits A and B.  Rather than asking the court to take judicial notice of Barilla's actual product labels or of complete copies of webpages depicting the labels, Barilla submitted exhibits that contain images purportedly cut and pasted from third party websites, accompanied by typed captions that do not appear to have been part of the original webpages.  *Compare Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *2 (N.D. Cal. May 31, 2019) (in product labeling case, taking judicial notice of the actual packaging for the product the plaintiff purchased); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845 n.1 (N.D. Cal. 2018) (same).  Defense counsel does not explain how Exhibits A and B were created, stating only that his associate "accessed the foregoing website[s] and downloaded the product labels on August 18, 2022."  *Id*. at ¶¶ 3, 4.  He does not explain how the images were selected, how the "close screenshots" were created, who added the captions and other type, or otherwise describe the creation of the exhibits.  In sum, Exhibits A and B lack foundation.  *See* Fed. R. Evid. 901(a) ("[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what

United States District Court
Northern District of California

1  the proponent claims it is.").  Given the lack of foundation of Exhibits A and B and Plaintiffs'

2  authenticity objection, judicial notice is not appropriate.

3      Barilla also appears to ask the court to consider Exhibits A and B pursuant to the

4  incorporation by reference doctrine.  RJN 3-4.  This is inappropriate given the parties' dispute

5  about the authenticity of the exhibits and the images therein.  *See Coto Settlement*, 593 F.3d at

6  1038 (incorporation by reference may be used where the complaint necessarily relies upon a

7  document or the contents of the document are alleged in a complaint, the document's authenticity

8  is not in question and there are no disputed issues as to the document's relevance.").

9      **C.    Exhibits C-F**

10     Exhibits C through F "contain excerpts of the file history for the "Italy's #1 Brand of

11  Pasta" trademark.  RJN 4.  Barilla argues that these materials "come[ ] directly from the United

12  States Patent and Trademark register and [are] judicially noticeable."  *Id*. (citing *Stone Brewing*

13  *Co., LLC v. MillerCoors LLC*, 445 F. Supp. 3d 1113, 1127 (S.D. Cal. 2020) (in trademark

14  infringement case, noting that courts may "take judicial notice of 'records and reports of

15  administrative bodies,' file histories, and application materials" and granting unopposed request

16  for judicial notice of United States Patent Trademark Office documents)).  Barilla does not explain

17  the significance or relevance of these materials in its RJN or how they bear on Plaintiffs' claims

18  for false, misleading, and deceptive marketing practices.  Accordingly, the court denies the request

19  to take judicial notice of Exhibits C through F as moot.

20  **IV.    DISCUSSION**

21     Barilla argues that the FAC fails to state a claim under Rule 12(b)(6).  It also asserts that

22  Plaintiffs lack Article III standing to pursue their claims.  As Article III standing is a jurisdictional

23  issue, the court must first address that argument before reaching the merits of any 12(b)(6)

24  challenges to the sufficiency of pleading.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

25  94-95 (1998).

26     **A.  Standing**

27         **1.    Economic Injury**

28     Barilla argues that Plaintiffs lack Article III standing because they do not allege a plausible

11

economic injury.  Mot. 17.

Federal courts are courts of limited jurisdiction.  Under Article III of the United States Constitution, federal courts are limited to deciding "cases" and "controversies."  *See Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009).  Article III standing "is a necessary component of subject matter jurisdiction."  *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  Article III standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560).  While a concrete injury need not be tangible, "it must actually exist"; that is, it must be "real, and not abstract."  *Id*. at 340 (quotation marks and citation omitted).  "No concrete harm, no standing."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

According to Barilla, Plaintiffs "do not plead any viable theory of overpayment or price premium" due to the Challenged Representation "because they do not plausibly allege they would have purchased a cheaper alternative, or that the Purchased Products' market value would have been less" had the products not displayed the Challenged Representation.  Mot. 18.  In support, Barilla cites *McGee v. S-L Snacks National*, 982 F.3d 700, 706 (9th Cir. 2020).  *See* Mot. 17-18.  *McGee* is inapposite since it addressed standing in a case where the plaintiff did not allege that the defendant's labeling was misleading.  *McGee*, 982 F.3d at 705-08.  The Ninth Circuit held that "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value," or "by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product."  *Id*. at 705-06.  However, the plaintiff in *McGee* had not alleged that the defendant made "any representations about [the product's] safety" or "false representations—or actionable non-disclosures—about [the product]," nor had she plausibly alleged that she had suffered physical injuries or had a substantial risk of disease as a result of consuming the product.

12

United States District Court
Northern District of California

*Id.* at 706-10.  The Ninth Circuit concluded that the plaintiff had not plausibly alleged any economic injury.  *Id.*

Unlike the plaintiff in *McGee*, Plaintiffs here expressly allege that they "would not have purchased the Product[s], or would not have overpaid a premium for the Product[s'] purported Italian origin, had [they] known that the Challenged Representation was false" and the products were actually made in the United States, using ingredients from countries other than Italy.  FAC ¶¶ 8, 9.  A "quintessential injury-in-fact" can occur when a plaintiff alleges that they "spent money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  That is precisely what Plaintiffs allege here.  Their allegations are sufficient to establish an economic injury for purposes of constitutional standing.[3]  *See, e.g.,* *Barnes v. Nat. Organics, Inc.*, No. EDCV22314JGBPLAX, 2022 WL 4283779, at *4 (C.D. Cal. Sept. 13, 2022) (holding that allegation that "the inclusion, or risk of inclusion, of Heavy Metals was not disclosed on [vitamins'] the label, and if it had been, she would not have paid for the [vitamins]" was sufficient to support standing); *Zeiger*, 304 F. Supp. 3d at 846 (holding that allegations that plaintiffs would not have purchased dog food if the presence of lead, arsenic, and BPA in the product had been disclosed were sufficient to establish economic injury).[4]

## 2.     Risk of Future Harm

Plaintiffs seek injunctive relief in connection with their UCL, FAL, CLRA, and breach of warranty claims.  Barilla argues that Plaintiffs lack standing to seek injunctive relief because they

---

[3] Plaintiffs' allegations are also sufficient to establish standing under the California statutes at issue.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action.").

[4] Barilla also cites *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018).  In that case, the plaintiff in a putative class action alleged that the use of the defendant's product, baby powder, could lead to an increased risk of ovarian cancer.  *Id.* at 281.  The Third Circuit affirmed the dismissal of the action for failure to sufficiently allege an economic injury for purposes of Article III standing.  The case is distinguishable because the plaintiff did not plead that she "failed to receive the economic benefit of her bargain" and instead argued that "she [was] not required to offer any economic theory of injury at the pleading stage."  *Id.* at 281, 287.  Here, Plaintiffs have offered a theory of injury that the Ninth Circuit recognizes: that they would not have purchased Barilla's products, or would not have overpaid a premium for those products, had they known the true origin of the products.

1    "cannot plausibly allege they will be misled by the Products in the future" now that they know that

2    they are made in the United States.  Mot. 18-19.

3           "A plaintiff must demonstrate constitutional standing separately for each form of relief

4    sought."  *Davidson*, 889 F.3d at 967 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*

5    *Inc.*, 528 U.S. 167, 185 (2000)).  A plaintiff seeking injunctive relief must demonstrate a "real or

6    immediate threat that they will be wronged again—a likelihood of substantial and immediate

7    irreparable injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted).

8    "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or

9    'hypothetical.'"  *Id*. at 102 (citations omitted).  "A plaintiff threatened with future injury has

10   standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the

11   harm will occur.'"  *In re Zappos.com, Inc*., 888 F.3d 1020, 1024 (9th Cir. 2018) (quotation marks

12   omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*

13   *v. Amnesty Int'l*, 568 U.S. 398, 409, 414 n.5 (2013))).

14          Barilla argues that Plaintiffs are not threatened with any future injury since they "cannot be

15   deceived by the allegedly misleading labeling after the first encounter with the Purchased

16   Products." Mot. 19.  Barilla notes Plaintiffs' allegations that they are "not personally familiar"

17   with where Barilla manufactures the products or sources the products' ingredients and therefore

18   have "no way of determining whether the Challenged Representation on the Products is true," and

19   that Plaintiffs are "unable to rely on the truth of the Challenged Representation on the Products'

20   labels."  *Id.*; *see* FAC ¶¶ 8, 9.  However, Barilla argues that these allegations "def[y] credulity"

21   since Plaintiffs are now "clearly on notice" that the products are made in the United States.  Mot.

22   19.  In response, Plaintiffs argue that their allegations are sufficient to confer standing to pursue

23   injunctive relief under *Davidson*.  Opp'n 12-13.

24          In *Davidson*, the plaintiff brought FAL, CLRA, UCL, and fraud claims against the

25   manufacturer of pre-moistened wipes.  The manufacturer labeled and marketed the wipes as

26   "flushable," meaning "suitable for being flushed [down a toilet]," and the plaintiff paid a premium

27   for the "flushable" wipes, as compared to non-flushable wipes.  998 F.3d at 961, 964.  The

28   plaintiff later learned that the products were not truly "flushable."  *Id*. at 962.  The district court

14

dismissed the injunctive relief claim, finding that the plaintiff lacked standing because she had no intention of purchasing the same product in the future and therefore had no risk of future injury. *Id*. at 963, 967.

The Ninth Circuit reversed, finding that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id*. at 967.  The court recognized that its decision resolved a district court split regarding the extent to which "a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief," resolving the split "in favor of plaintiffs seeking injunctive relief."  *Id*. at 967-69.  *Davidson* held that plaintiffs have standing to pursue injunctive relief in at least two circumstances:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.  In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id*. at 969-70 (citations omitted).  The plaintiff in *Davidson* alleged that she continued to desire to purchase wipes suitable for disposal in a toilet, would purchase "truly flushable wipes" manufactured by the defendant if it were possible, and was continually presented with the defendant's flushable wipes packaging, but had "no way of determining whether the representation 'flushable' [was] in fact true."  *Id*. at 970-71.  The Ninth Circuit found these allegations sufficient for standing purposes:

> We therefore hold that Davidson's allegation that she has no way of determining whether the representation "flushable" is in fact true when she regularly visits stores . . . where Defendants' "flushable" wipes are sold constitutes a threatened injury [that is] certainly impending, thereby establishing Article III standing to assert a claim for injunctive relief.

*Id*. at 972 (citation and internal quotation marks omitted).

15

United States District Court
Northern District of California

1   Here, Plaintiffs contend that they have sufficiently alleged an imminent or actual threat of

2   future harm from being deceived by the Challenged Representation, pointing to their allegations

3   that they continue to see the products available for purchase and desire to purchase them again if

4   the "Challenged Representation was in fact true," that is, if the products were made or

5   manufactured in Italy using ingredients from Italy.  Opp'n 13-14 (citing FAC ¶¶ 8, 9).

6   Plaintiffs' reliance on *Davidson* is misplaced.  In *Davidson*, the Ninth Court concluded that

7   the plaintiff "face[d] the similar injury of being unable to rely on [the defendant's] representations

8   of its product in deciding whether or not she should purchase the product in the future" absent

9   injunctive relief.  998 F.3d at 971-72.  Unlike the plaintiff in *Davidson*, Plaintiffs cannot

10  reasonably claim that they will be deceived by the challenged representation now that they know

11  where the products are manufactured.  This case is different from those challenging

12  representations about product formulations or characteristics like "natural" and "naturally derived"

13  or "flushable," where the plaintiffs alleged that they could not rely on the defendant's

14  representations in the future.  *See, e.g., Shank v. Presidio Brands, Inc*., No. 17-CV-00232-DMR,

15  2018 WL 1948830, at *3-5 (N.D. Cal. Apr. 25, 2018) (allegations that plaintiff would like to

16  purchase challenged products in the future if they were reformulated to no longer contain

17  unnatural, synthetic, or non-naturally derived ingredients, but would be hesitant to rely on the

18  labels in the future because he had no way of knowing whether the reformulation actually would

19  not contain such ingredients were sufficient to confer standing to seek injunctive relief "because

20  [plaintiff] alleges that he will not be able to trust [defendant's] claims about" the products);

21  *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021) (holding that

22  plaintiffs established Article III standing for injunctive relief based on theory of misleading "non-

23  GMO" marketing statements; "[u]nlike the other alleged forms of deception, Plaintiffs cannot

24  check the undisputed serving size, net weight, nutrition facts, or ingredient list on the products to

25  determine if the at-issue ingredients are genetically modified."); *Davidson*, 998 F.3d at 970-71

26  (plaintiff "has no way of determining whether the representation 'flushable' is in fact true when

27  she regularly visits stores.").

28  In contrast, Plaintiffs cannot plausibly allege that they remain unaware that the products

are manufactured in the United States from ingredients that are not from Italy or that they reasonably would be misled if they encounter the Challenged Representation in the future.  In a similar vein, Plaintiffs allege that they remain interested in purchasing the products if the Challenged Representation are true—that is, if Barilla starts producing the pasta products in Italy instead of the United States.  This allegation holds no water because it is implausible to expect such facts to come to pass.  Accordingly, Plaintiffs have not established a "real and immediate threat of repeated injury" sufficient to establish Article III standing to assert their claim for injunctive relief.  *See Lyons*, 461 U.S. at 102.  Their claim for injunctive relief is accordingly dismissed.

### 3.    Causation

Barilla next argues that Plaintiffs cannot establish Article III standing because they have not alleged causation; i.e., that Barilla's use of the Challenged Representation caused any injury. Mot. 19.

In order to establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted).  Here, Plaintiffs allege that they would not have purchased the products, or that they "would not have overpaid a premium" for the products' "purported Italian origin," had they known that the Challenged Representation on the products' labels was false.  FAC ¶¶ 8, 9.  Put another way, Plaintiffs allege that the Challenged Representation caused them to purchase the products and/or pay a premium for the products.  *See id*. at ¶ 28 ("based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.").

Barilla argues that these allegations are insufficient because "the FAC does not identify any basis for [the allegation that Plaintiffs paid a premium], or any cheaper surrogate products on the market."  Mot. 20.  However, the sole case it cites in support, *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019), held that "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury" under New York law.  The court in *Naimi* observed that

1    "[u]nder New York law, a plaintiff's allegation that she would not have purchased a product but

2    for a deceptive act, standing alone, is not a cognizable injury because it conflates the deceptive act

3    with the injury."  *Id*.  The court did not analyze the sufficiency of the allegation under either Ninth

4    Circuit or California law.  Barilla offers no authority supporting its position that Plaintiffs must do

5    more than allege that they purchased the products and/or paid a premium for the products due to

6    the Challenged Representation to establish causation.  The court concludes that the FAC

7    adequately alleges causation for purposes of Article III.

8                    **4.    Standing to Allege a Nationwide Class**

9          Next, Barilla argues that Plaintiffs lack standing to represent a nationwide class of

10   individuals who purchased its products, and that "any claims relating to putative class members

11   outside of California must be dismissed."  Mot. 20 (citing *Mazza v. American Honda Motor Co*.,

12   666 F.3d 581 (9th Cir. 2012)).

13         In *Mazza*, the plaintiffs brought a putative class action on behalf of car owners and lessees,

14   and the district court certified a nationwide class of consumers pursuing claims under California

15   consumer protection statutes.  666 F.3d at 585.  The Ninth Circuit vacated the class certification

16   order, holding that the district court erroneously concluded that California law applied to the entire

17   nationwide class.  *Id*.  The court performed an extensive choice-of-law analysis comparing how

18   various states' consumer protection laws applied to the facts of the plaintiffs' claims, *see id*. at

19   589-94, and concluded that "[u]nder the facts and circumstances of [the] case," California's

20   choice-of-law rules dictated that "each class member's consumer protection claim should be

21   governed by the consumer protection laws of the jurisdiction in which the transaction took place."

22   *Id*. at 594.

23         Here, Plaintiffs' UCL, FAL, and CLRA are brought on behalf of the California subclass

24   only.  *See* FAC 35, 41, 43.  Only the breach of warranty and unjust enrichment/restitution claims

25   are brought on behalf of the nationwide class.  Barilla does not address those claims, nor does it

26   perform a choice of law analysis or otherwise develop its argument in any detail.  In any event, the

27   Ninth Circuit in *Mazza* declined to set a strict rule against certifying nationwide consumer classes

28   under California law, instead noting that its holding was based on "the facts and circumstances of

[that] case" and declining to express a "view whether on remand it would be correct . . . to certify a class with members more broadly [than only California residents] but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." 666 F.3d at 594.  Under these circumstances, the court concludes that it is premature to dismiss the nationwide class allegations at the pleading stage and finds that the issue is more properly addressed at the class certification stage.  Accordingly, the court denies Barilla's motion to dismiss the nationwide class claims.

### 5.    Standing to Challenge Products Plaintiffs Did Not Purchase

Barilla argues that Plaintiffs lack standing to pursue claims to the extent that they include products they did not personally purchase.  It notes that Sinatro allegedly bought one box of Classic Barilla Blue Box Pasta (Angel Hair) and Prost allegedly purchased two boxes of Classic Barilla Blue Box Pasta (Spaghetti), but their claims seek to encompass an additional 52 products that they did not purchase.  Mot. 20-21.

The majority of courts that have considered the question "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (observing that the "critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased.").  For example, in *Dreyer's*, the court found that the plaintiffs had alleged sufficient similarity between the purchased and unpurchased products at issue in the lawsuit:

> Plaintiffs are challenging the same kind of food products (*i.e.,* ice cream) as well as the same labels for all of the products—*i.e.,* "All Natural Flavors" for the Dreyer's/Edy's products and "All Natural Ice Cream" for the Haagen–Dazs products.  That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors.  Indeed, many of the ingredients are the same—*i.e.,* 21 out of 59 ice creams contain propylene glycol monostearate; 43 out of 59 contain potassium carbonate; and all 59 appear to contain glycerin, mono and diglycerides, tetrasodium pyrophosphate, and xanthan gum.

United States District Court
Northern District of California

1   2012 WL 2990766, at *13.

2          Barilla appears to agree that the "substantial similarity" approach applies in this case.  *See*

3   Mot. 20.  The court concludes that Plaintiffs have sufficiently pleaded the requisite level of

4   similarity.  As in *Dreyer's*, Plaintiffs challenge "the same basic mislabeling practice" across the

5   Barilla products named in the FAC, including those that they purchased and those that they did

6   not.  Specifically, Plaintiffs challenge Barilla's use of the Challenged Representation on the front

7   of the packaging of each of the challenged products.  *See* FAC ¶ 4, Ex. 1.  They allege that all of

8   the products at issue are sold under the same brand name, Barilla, and are dry pastas that are made

9   from largely the same ingredients or types of ingredients, "milled in the same or similar manner,

10  and manufactured into the finished Products in the same or similar manner."  Plaintiffs further

11  allege that the Challenged Representation appears prominently and conspicuously "on the primary

12  display panel of the front label and/or packaging," along with the colors of Italy's national flag.

13  *Id*. at ¶ 29(b)-(d), (f), (g).  The court finds that Plaintiffs have pleaded that all of the challenged

14  products are sufficiently similar for them to proceed with their claims.  *See, e.g., Bush v. Rust-*

15  *Oleum Corp.*, No. 20-CV-03268-LB, 2021 WL 24842, at *6 (N.D. Cal. Jan. 4, 2021) ("the

16  plaintiff has standing to contest the 13 products that he did not purchase because the front-label

17  representations about 'non-toxic' and 'earth friendly' are substantially similarl[ ].").

18         **B.      Sufficiency of the FAC**

19         Barilla argues that Plaintiffs' claims are deficient in several ways.  First, it argues that the

20  products' packaging is not materially deceptive to a reasonable consumer.  It also argues that

21  Plaintiffs have not stated a claim for breach of warranty; that Plaintiffs' claims are grounded in

22  fraud and do not satisfy Rule 9(b)'s heightened pleading standard; that Plaintiffs' claims are

23  preempted by federal trademark law; and that Plaintiffs have an adequate remedy at law and

24  therefore cannot recover in equity.

25                **1.      Reasonable Consumer Standard**

26         Barilla argues that Plaintiffs' UCL, FAL, and CLRA claims must be dismissed because

27  they have not plausibly alleged that the Challenged Representation would mislead a reasonable

28  consumer.  Mot. 13.

United States District Court
Northern District of California

False advertising claims under the CLRA, FAL, and the fraudulent prong of the UCL are governed by the reasonable consumer standard. *Williams v. Gerber Prods. Co*, 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (courts must evaluate whether a label is misleading "from the vantage of a reasonable consumer" (quotation omitted)). Under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived. *Id*. (citation omitted). "This requires more than a mere possibility that [a defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (quotation omitted). "[T]he primary evidence in a false advertising case is the advertising itself." *Williams*, 552 F.3d at 938 (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). The question of whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss. *Williams*, 552 F.3d at 938. Dismissal is appropriate where it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. at 939.

According to Barilla, the statement, "ITALY'S #1 BRAND OF PASTA" is its registered trademark, and "its utility is to exclusively identify Barilla (not Italy) as the source of the product." Mot. 14. It contends that Plaintiffs' allegations that the Challenged Representation would lead reasonable consumers to believe that Barilla's pastas were manufactured in Italy are "implausible," citing *Hodges v. King's Hawaiian Bakery W., Inc.*, No. 21-CV-04541-PJH, 2021 WL 5178826, at *6 (N.D. Cal. Nov. 8, 2021), in which the court held that "[t]he mere use of a geographic reference, including a reference to the company's historical origin, does not convey a representation about a product's current origin." Barilla contends that it is not misleading to invoke the company's Italian roots "through generalized representations of the brand as a whole." Mot. 14.

Barilla's argument is not persuasive. As Plaintiffs note, Barilla asks the court to assume that consumers would solely perceive the Challenged Representation to mean that the products at

issue are part of the Barilla brand, and not that they are made in Italy from Italian ingredients.  In other words, Barilla asks the court to decide as a matter of law that the Challenged Representation can mean only one thing.  However, Plaintiffs have alleged that the Challenged Representation appears with the colors of the Italian flag, and that this imagery further reinforces the notion that the products "are authentic pastas from Italy."  *See* FAC ¶ 2.  The Challenged Representation is also part of the products' packaging in the context of an alleged marketing campaign that emphasizes the company's Italian identity, including a website "that markets the Barilla® brand and company as undeniably Italian, dedicated to the manufacturing, marketing, and selling of Italian-made pastas."  *See id*. at ¶¶ 16, 18-20.  Viewed in this context, the FAC plausibly alleges that the Challenged Representation supports a reasonable inference that the products were made in Italy from Italian ingredients, and "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the Challenged Representation.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *see, e.g., de Dios Rodriguez v. Ole Mexican Foods Inc.*, No. EDCV202324JGBSPX, 2021 WL 1731604, at *3-5 (C.D. Cal. Apr. 22, 2021) (denying motion to dismiss UCL, FAL, and CLRA claims based on allegation that representations on product's labels were likely to lead reasonable consumers to mistakenly believe that they were made in Mexico, including "(a) the phrase 'El Sabor de Mexico!' or 'A Taste of Mexico!'; (b) a Mexican flag on the front and center of the packaging; (c) the brand name 'La Banderita' (or "the flag"); (d) a circular logo with the Mexican flag and the word 'Authentic'; and (e) Spanish words and phrases, such as 'Sabrosísimas' or 'Tortillas de Maiz.'").

The primary case Barilla relies on is distinguishable.  In *Hodges*, the court dismissed a putative class action at the pleading stage that challenged the labels on King's Hawaiian's Original Hawaiian Sweet Rolls Product.  The plaintiffs alleged that "the phrase 'EST. 1950 HILO, HAWAII' inside a three-point crown evocative of a pineapple's crown on the front of the Product's packaging convey[ed] the impression that the sweet rolls are currently made in Hawaii." 2021 WL 5178826, at *1.  They also noted the company's use of the term "mainland" and "Aloha" in connection with its description of the company shipping policy on its website as well

United States District Court
Northern District of California

1  as "the King's Hawaiian Macy's Thanksgiving Day Parade float," named "The Aloha Spirit." *Id.*

2  at *2.  The court held that the plaintiffs had failed to show that members of the public were likely

3  to be deceived by the packaging and marketing, concluding that "defendant's reference on its label

4  to its Hawaiian founding does not lead a reasonable consumer to believe that the Product is still

5  made in Hawaii." *Id*. at *6.  Unlike the Challenged Representation at issue in this case, the labels

6  at issue in *Hodges* did not explicitly connect their origin to the present day.  Nor did the labels

7  exist against the backdrop of a long-standing marketing strategy expressly connected to a

8  particular geographic location.

9       Barilla also argues that no reasonable consumer could be deceived by the Challenged

10  Representation since all 54 products at issue "are conspicuously marked 'Made in the USA' with

11  the location of Barilla's headquarters in Illinois."  Mot. 15.  Setting aside the fact that this

12  argument rests on materials outside the FAC that are not properly before the court, this argument

13  is unavailing, as the Ninth Circuit has held that reasonable consumers should not be "expected to

14  look beyond misleading representations on the front of the box to discover the truth . . . in small

15  print on the side of the box."  *Williams*, 552 F.3d at 939; *see also Balser v. Hain Celestial Grp.,*

16  *Inc*., 640 Fed. Appx. 694, 696 (9th Cir. 2016) ("an ingredient list does not correct, as a matter of

17  law, misrepresentations on the product's label.  Rather, the likely impact of such a list on a

18  reasonable consumer is a factual issue, not determinable on the pleadings.").

19              **2.**       **Breach of Warranty Claim**

20       Barilla moves to dismiss the breach of warranty claim, arguing that "product labels 'do not

21  constitute warranties against a product defect.'"  Mot. 16 (quoting *Astiana*, 2012 WL 2990766, at

22  *9).  However, Plaintiffs do not allege any product defects in this case; rather, they allege that

23  Barilla's product labeling is misleading.  Moreover, the cited case, *Astiana*, analyzed breach of

24  warranty claims under the Magnuson Moss Warranty Act, which is not at issue in this case.

25       Barilla also argues that "[c]ourts have consistently found . . . that product labels that were,

26  at most, product descriptions were not actionable warranties."  Mot. 16 (citing *Campen v. Frito-*

27  *Lay N. Am., Inc*., No. 12-1586 SC, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)).

28  However, the issue in *Campen* was whether the plaintiffs had adequately stated claims under the

1    Magnuson Moss Warranty Act and California's Song–Beverly Consumer Warranty Act.  Plaintiffs

2    do not bring claims under those statutes.  Instead, they bring a claim for common law breach of

3    warranty.  FAC ¶¶ 107-109.  Barilla's motion does not address the sufficiency of Plaintiff's

4    common law warranty claim.  Accordingly, its motion to dismiss the breach of warranty claim is

5    denied.

6             **3.      Rule 9(b)**

7             In order to recover under fraud-based claims, a "party must state with particularity the

8    circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Davidson*, 873 F.3d at 1110

9    ("[b]ecause [the plaintiff's] common law fraud, CLRA, FAL, and UCL causes of action are all

10   grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and

11   12(b)(6), as well as the heightened pleading requirements of Rule 9(b)."); *In re Clorox Consumer*

12   *Litig.*, 894 F. Supp. 2d 1224, 1234 (N.D. Cal. 2012) (analyzing UCL, CLRA, and FAL claims

13   under Rule 9(b) standard).  Allegations of fraud must be stated with "specificity including an

14   account of the 'time, place, and specific content of the false representations as well as the

15   identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th

16   Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also*

17   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must

18   include "the who, what, when, where, and how" of the misconduct charged).  "To allege fraud

19   with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the

20   transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it

21   is false."  *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original).

22   To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of

23   the particular misconduct that is alleged to constitute the fraud so that they can defend against the

24   claim.  *Bly-McGee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001).  Sinatro does not dispute that

25   Rule 9(b) applies to his claims.

26            The central allegation in this case is that Barilla's packaging contains the statement

27   "ITALY'S #1 BRAND OF PASTA" that leads reasonable consumers to believe that Barilla's

28   products are made and/or manufactured in Italy using ingredients from Italy, and that this

United States District Court
Northern District of California

1    representation is false because the products are actually made in the United States using

2    ingredients that are not from Italy.  Plaintiffs further allege that Barilla knew or should have

3    known that the Challenged Representation was false and misleading, and that it "intentionally and

4    deliberately used the Challenged Representation, alongside its massive marketing campaign and

5    brand strategy," to cause Plaintiffs and other consumers to buy the products believing that the

6    products were made in Italy using Italian ingredients.  *See* FAC ¶¶ 16-17, 25, 27.

7         Barilla argues that the FAC does not satisfy the requirements of Rule 9(b) since Plaintiffs

8    "only offer cursory allegations that 'Defendant knew, or should have known, that the [Challenged

9    Representation] was false, misleading, deceptive, and unlawful," without any "specific allegations

10   supporting those legal conclusions."  Mot. 22.  According to Barilla, the purpose of its trademark

11   "ITALY'S #1 BRAND OF PASTA" "is to exclusively identify Barilla to consumers as the entity

12   that made the products."  *Id.*  This is a variation on the argument, discussed above, that the

13   Challenged Representation can have only one meaning—the one offered by Barilla.  However,

14   Barilla's argument goes to the merits of whether Plaintiffs ultimately will be able to prove that the

15   representations made in the packaging and marketing of the products were false or misleading.

16   Such issues are not appropriate for resolution on a motion to dismiss.  *See Williams*, 552 F.3d at

17   938-39.  While Barilla does not otherwise specify any other alleged deficiencies in the FAC with

18   respect to Rule 9(b)'s heightened pleading requirements, it also argues that Plaintiffs cannot plead

19   that they were "defrauded" by labels on products they never saw or purchased.  Mot. 22.  As

20   discussed above, Plaintiffs have sufficiently pleaded that all of the challenged products are

21   sufficiently similar for them to proceed with their claims.

22                        **4.     Preemption**

23        Barilla next argues that Plaintiffs' claims attack use of its registered trademark "ITALY'S

24   #1 BRAND OF PASTA."  It contends that its mark is incontestable under the Lanham Act and

25   that Plaintiffs' suit is "an end-run to attempt to cancel the Registered Trademark and must be

26   dismissed under the doctrine of federal preemption."  Mot. 23.  Barilla offers no authority for this

27   argument and minimal analysis.  The court cannot analyze an argument that counsel fails to

28   develop.  Accordingly, the motion to dismiss the FAC on the basis of preemption is denied.

United States District Court
Northern District of California

United States District Court
Northern District of California

5.      **Plaintiffs' Claims for Equitable Relief**

Finally, Barilla argues that Plaintiffs have affirmatively made requests for damages in connection with the first four claims for relief.  Plaintiffs also seek equitable relief, including restitution and disgorgement.  *See* Prayer for Relief, FAC ¶ 119.  Barilla moves to dismiss Plaintiffs' claims for equitable relief on the ground that they cannot show a lack of an adequate remedy at law under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020).  Mot. 23-24.

The plaintiff in *Sonner* brought a putative class action against a company that marketed and sold a dietary supplement and requested damages and equitable restitution claims for false or misleading advertising under the UCL and CLRA.  On the eve of trial, the plaintiff amended the complaint to drop her damages claim, choosing to proceed with only state law equitable claims for restitution and equitable relief.  971 F.3d at 837-38.  The court then dismissed the claim for restitution on the ground that an adequate remedy at law—damages—was available and denied the plaintiff's request to amend the complaint to reallege the damages claim.  *Id.* at 838.  The Ninth Circuit affirmed the dismissal, holding that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL and CLRA.  Accordingly, it held, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Id.* at 844.  *See IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5-6 (N.D. Cal. Nov. 6, 2020) (dismissing requests for restitution and disgorgement with prejudice based on the plaintiff's failure to show that it lacks an adequate legal remedy for past harm).

Plaintiffs argue that *Sonner* does not preclude claims for injunctive relief since monetary damages for past harm do not provide an adequate legal remedy for the future harm that only injunctive relief can remedy.  Opp'n 25 (citing *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (noting that "California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages" and denying motion to dismiss claim for injunctive relief)).  As discussed above, Plaintiffs lack Article III standing to seek injunctive relief.

United States District Court
Northern District of California

As to the claims for restitution and disgorgement, Plaintiffs argue that Barilla's argument is premature and that the court should allow the claims to go forward because they are pled in the alternative.  Opp'n 26.  Moreover, the FAC alleges that "no adequate remedy at law exists" in light of varying statutes of limitation, since the limitations period for UCL claims is four years, which is one year longer than the statutes of limitation for the FAL and CLRA.  FAC ¶ 30(a).  Therefore, Plaintiffs allege, putative class members who purchased products more than three years prior to the filing of the complaint will be barred from recovery if they are not permitted to obtain equitable relief under the UCL.  *Id*.  The FAC further alleges that the limitations periods for breach of warranty and unjust enrichment/restitution claims vary between two and six years.  *Id*.

Courts in the Ninth Circuit have split on the issue of "how exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage." *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (collecting cases).  Some courts reject the proposition that plaintiffs are "not required to make a binding election of remedies at" an early stage of litigation, holding that "this is not an election of remedies issue.  The question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all."  *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020) (dismissing claims for equitable relief for failure to allege that plaintiffs lack an adequate remedy at law).  Others hold that "*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."  *Jeong*, 2022 WL 174236, at *27; *see Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL 344966, at *9 (N.D. Cal. Feb. 4, 2022) (finding that "*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action" and that Rule 8 permits pleading "relief in the alternative or different types of relief" and holding that "[t]he issue of Plaintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage").  This court agrees with the reasoning of courts holding that *Sonner* does not impose strict requirements at the pleading stage, *see Jeong*, 2022 WL 174236, at *27, because plaintiffs "may allege claims in the alternative

1    at the pleading stage," and because in this case, Plaintiffs explain that statutes of limitation may

2    preclude damages for certain periods of time, and equitable relief would be the only available

3    remedy for certain timespans. *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114

4    (N.D. Cal. 2020) ("The equitable remedies afforded by the UCL and CLRA are expressly stated to

5    be in addition to other available remedies at law."). At any rate, the court may reassess the issue

6    of available remedies at a later stage of the case. Barilla's motion to deny Plaintiffs' claims for

7    equitable relief is denied.

8    **V.    CONCLUSION**

9         For the foregoing reasons, Barilla's motion to dismiss is granted in part and denied in part.

10   Plaintiffs' claim for injunctive relief is dismissed with leave to amend. Any second amended

11   complaint must be filed within 14 days of the date of this order. The court will hold an initial

12   case management conference on November 2, 2022 at 1:30 p.m. via Zoom. The parties should file

13   an updated CMC statement by October 26, 2022 *only if* there are new material developments

14   beyond what is contained in Docket No. 28.



16        **IT IS SO ORDERED.**

17   Dated: October 17, 2022

     _____
     Donna M. Ryu
     United States Magistrate Judge

United States District Court
Northern District of California