**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, Individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>      Defendant. | Case No. 4:22-cv-03460-DMR<br>Action Filed: June 11, 2022<br>FAC Filed: July 20, 2022<br><br>*Assigned to Hon. Donna M. Ryu for all purposes*<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**<br><br><u>Hearing Information:</u><br>Date:   February 8, 2024<br>Time:   1:00 p.m.<br>Courtroom: 4 |

# REDACTED—PUBLICLY FILED

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ................................................................................................1

II.   COMMON FACTS AND EVIDENCE SUPPORTING CLASS CERTIFICATION.............1

      A.    The Class Products................................................................................1

      B.    Defendants Uniformly and Prominently Labeled the Products with the Italian Origin
            Representations Throughout the Class Period ............................................2

      C.    Defendant's Launched a Massive Marketing Campaign to Convince Consumers that
            the Products are Authentic Italian-Made Pastas .........................................2

      D.    Defendant's Marketing Strategy Is Designed to Take Advantage of Consumers'
            Desire for Authentic Italian-Made Pastas ................................................5

      E.    The Italian Origin Representation Is False Because the Products are Not Made in
            Italy or from Ingredients Sourced There.................................................7

      F.    Dr. Dennis's Consumer Perception Study Confirms the Italian Origin Representation
            Leads Reasonable Consumers to Believe that the Products Only Used Italian
            Ingredients ........................................................................................7

III.  LEGAL STANDARD ...........................................................................................9

IV.   THE REQUIREMENTS OF RULE 23(A) ARE READILY MET.................................10

      A.    The Class Is Adequately Defined ..........................................................10

      B.    Numerosity.........................................................................................11

      C.    Commonality.......................................................................................11

      D.    Typicality ...........................................................................................14

      E.    Adequacy ...........................................................................................16

V.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED .................................18

      A.    Predominance......................................................................................18

            1.    Class Claims Will Be Resolved Through Objective Standards and Common
                  Evidence that Apply Class-Wide ..................................................19

                  a.    California's Consumer Protection Laws .................................19

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b.      Breach of Warranty....................................................................22

c.      Unjust Enrichment ....................................................................23

2.      The Price Premium Survey Is Capable of Measuring Class-wide Damages
and Is Consistent with the Class's Theory of Liability...................................23

B.      Superiority...............................................................................................25

VI.   CONCLUSION...............................................................................................25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)..........................................10

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455, 133 S. Ct. 1184, L. Ed. 2d 308 (2013)..........................................10, 20

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-cv-01196-WHO,
  2014 WL 1024182, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014).........................22

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ...............................................................14

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ....................................................... *passim*

*Bailey v. Rite Aid Corp.*,
  338 F.R.D. 390 (N.D. Cal. 2021)............................................................24

*Bradach v. Pharmavite, LLC*,
  735 F. App'x. 251 (9th Cir. 2018) ..........................................................20

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................9, 10

*Broomfield v. Craft Brew All., Inc.*,
  No. 17-cv-01027-BLF,
  2018 WL 4952519, 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ......12, 13, 15, 22

*Bruno v. Quten Rsch. Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ...........................................................16

*Castro v. Paragon Indus., Inc.*,
  No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, 2020 U.S. Dist. LEXIS 73765
  (E.D. Cal. Apr. 24, 2020)..................................................................18

*Clevenger v. Welch Foods Inc.*,
  342 F.R.D. 446 (C.D. Cal. 2022) ...........................................................16

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006) ..............................................................23

*Ehret v. Uber Techs., Inc.*,
  148 F.Supp.3d 884 (N.D. Cal. 2015) ........................................................14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 1974)..........................................10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................9, 16

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) ..........................................................18

*Escobar v. Just Born, Inc.*,
   No. 17-CV-01826 TJH,
   2019 WL 261936, 2019 U.S. Dist. LEXIS 115743 (C.D Cal. Mar. 25, 2019) ..........................17

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK (MRWx),
   2014 WL 1410264, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) .....................10, 19

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018)......................................................................................13, 24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)..................................................14

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ......................................................................................14

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..........................................................13, 14, 20, 23, 24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................12, 15, 16, 18

*Harris v. Palm Springs Alpine Estates., Inc.*,
   329 F.2d 909 (9th Cir. 1964) ......................................................................................10, 11

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011),
   *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012)................................................................16

*Hawkins v. Kroger Co.*,
   337 F.R.D. 518 (S.D. Cal. 2020) ......................................................................................19

*Hilsley v. Ocean Spray Cranberries Inc.*,
   No. 17cv2335-GPC(MDD),
   2018 WL 6300479, 2018 U.S. Dist LEXIS 202679 (S.D. Cal Nov. 29, 2018)......................13

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ......................................................................................20

*Hunt v. Check Recovery Systems, Inc.*,
   241 F.R.D. 505 (N.D. Cal. 2007)......................................................................................10

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ......................................................................................14, 22

*In re NJoy, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..........................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ......................................................................................16

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................23

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010) ...........................................................................11

*Johns v. Bayer Corp.*,
   280 F.R.D. 551, 557 (S.D. Cal. 2012) .............................................................16, 22

*Jordan v. L.A. County.*,
   669 F.2d 1311 (9th Cir. 1982) ................................................................................12

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...........................................................................11

*Krommenhock v. Post Foods, LLC.*,
   334 F.R.D. 552 (N.D. Cal. 2020) ...........................................................................24

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR,
   2016 WL 3844334, 2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016).....................21, 22

*Kutzman v. Derrel's Mini Storage, Inc.*,
   No. 1:18-cv-00755-AWI-JLT, 2020 WL 406768, 2018 U.S. Dist. LEXIS 13314
   (E.D. Cal. Jan. 24, 2020).........................................................................................18

*Kwikset v. Superior Court*,
   51 Cal. 4th 310 (2011) ............................................................................................21

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ................................................................................23

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ......................................................................11, 16

*Lovette v. Zale Del., Inc.*,
   No. 3:18-cv-0727-L-RBB,
   2019 WL 2492503, 2019 U.S. Dist. LEXIS 100305 (S.D. Cal. June 13, 2019).........................19

*Lytle v. Nutramax Lab'ys, Inc.*,
   No. ED CV 19-0835 FMO (SPx),
   2022 WL 1600047, 2022 U.S. Dist. LEXIS 95559 (C.D. Cal. May 6, 2022) ...................13, 23

*Martin v. Monsanto Co.*,
   No. ED CV 16-2168-JFW (SPx),
   2017 WL 1115167, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017)............16, 19, 22

*Martinelli v. Johnson & Johnson*,
   No. 2:15-cv-01733-MCE-DB,
   2019 WL 1429653, 2019 U.S. Dist. LEXIS 54601 (E.D. Cal. Mar. 29, 2019).........................24

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*McMorrow v. Mondelez Int'l, Inc.*,
No. 17-cv-2327 BAS-JLB,
2021 WL 859137, 2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ...............................23

*Milan v. Clif Bar & Co.*,
340 F.R.D. 591 (N.D. Cal. 2021).........................................................................................20, 23

*Miller v. Fuhu Inc.*,
No. 2:14-cv-06119-CAS-AS,
2015 WL 7776794, 2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1, 2015) ..........................20

*Mullins v. Premier Nutrition*,
No. 13-cv-01271-RS,
2016 WL 1535057, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) ..........................20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ....................................................................................................12

*Park v. Cytodyne Techs., Inc.*,
No. GIC 768364,
2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) .............................................................19

*Prescod v. Celsius Holdings, Inc.*,
No. 19STCV09321,
2021 WL 5234499, 2021 Cal. Super. LEXIS 8246 (Aug. 2, 2021)  ........................................17

*Prescott v. Reckitt Benckiser LLC*,
No. 20-cv-02101-BLF,
2022 WL 3018145, 2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022)..................13, 23

*Rodman v. Safeway, Inc.*,
No. 11-cv-03003-JST,
2014 WL 988992, 2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 10, 2014)...........................22

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) .........................................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) .........................................................9

*Smith v. Keurig Green Mountain, Inc.*,
No. 18-cv-06690-HSG,
2020 WL 5630051, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) .................21, 23

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) .........................................................................................25

*Testone v. Barlean's Organic Oils, LLC*,
No. 19-CV-169 JLS (BGS),
2021 WL 4438391, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021)............12, 21, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed 2d 124 (2016) .........................................................18

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

PLAINTIFFS' MEMO OF POINTS & AUTHORITIES ISO OF MOTION FOR CLASS CERTIFICATION

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................12, 13, 15

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................19

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011)...........................................................................10

*Young v. Neurobrands, LLC*,
   No. 18-CV-05907-JSW,
   2020 WL 11762212, 2019 U.S. Dist. LEXIS 67905 (N.D. Cal. Oct. 15, 2020) .................12, 16

*Zakaria v. Gerber Prods. Co.*,
   755 Fed. App'x 623, 624 (9th Cir. 2018) ...............................................................24

*Zakaria v. Gerber*,
   No. LA CV15-00200 JAK (Ex),
   2016 WL 6662723, 2016 U.S. Dist. LEXIS 184861 (N.D. Cal. Mar. 23, 2016).................14, 25

**Federal Statutes**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

15 U.S.C. § 1125 .................................................................................................21

**State Statutes**

Cal. Bus. & Prof. Code §§17200, *et seq.* .....................................................................1

Cal. Bus. & Prof. Code §§17500, *et seq.* .....................................................................1

Cal. Civ. Code §§1750, *et seq.*.................................................................................1

Cal. Comm. Code § 2313 .........................................................................................22

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.   __INTRODUCTION__

Barilla America, Inc. ("**Defendant**") uniformly labels Barilla® brand pastas as "ITALY'S #1 BRAND OF PASTA®" and surrounds this declaration of origin with depictions of the Italian flag ("**Italian Origin Representation**" or "**Challenged Representation**"). Reasonable consumers therefore purchase the products believing they will get authentic Italian pasta. The truth is the pasta is made with ingredients sourced outside of Italy, at factories in the United States. Consumers thus pay a premium for an authentic product they do not receive. Equally problematic, Defendant's origin fraud disadvantages companies that make their pastas in Italy with Italian ingredients, or that do not misrepresent their products as such. Both harms are emblematic of why California categorically prohibits advertising that misrepresents the geographic origin of products. Accordingly, Mattew Sinatro and Jessica Prost ("**Plaintiffs**") assert five causes of action for violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("**UCL**")), False Advertising Law (Cal. Bus. & Prof. Code § 17500 ("**FAL**")) and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.* ("**CLRA**")); breach of warranty; and unjust enrichment.

Since the Court denied Defendant's motion to dismiss last Fall, the parties have been engaged in discovery, adducing evidence that confirms the suitability of Plaintiffs' claims for class treatment. Plaintiffs therefore move to certify a class of California consumers, under Fed. R. Civ. P. 23(a) and 23(b)(3), appoint Plaintiffs as Class Representatives, and appoint their counsel as Class Counsel.

## II.   __COMMON FACTS AND EVIDENCE SUPPORTING CLASS CERTIFICATION__

### A.   __The Class Products__

Defendant's origin fraud permeates all of the following lines of Barilla® brand dried pastas at issue: (1) Classic Blue Box Pastas; (2) Collezione Artisanal Pastas; (3) Gluten Free Pastas; (4) Barilla Veggie Pastas; and (5) Whole Grain Pastas (collectively, the "**Products**"). *See* **Ex. 5** [Def.'s Supp. RFA Resp.] at No. 14 (admitting that *all* Barilla brand pastas with the Italian Origin Representation are identified in paragraph 4 of the First Amended Complaint).[1]

---

[1] **Ex. 1** [Def. Supp. ROG Resp.] at Nos. 1-2 (identifying all Products and Italian Origin labels); *see also* FAC, ECF 11, at ¶ 4a, Ex. 1-1 – 1-34; **Ex. 2** [Labels] at pp. 1-9 and Nos. 1-1 to 1-34 (identifying 34 "**Classic Blue Box Pastas**" and their labels); *see also* FAC, ECF 11, at ¶ 4b, Ex. 1-35 – 1-40; **Ex. 2** [Labels] at pp. 1-9 and Nos. 1-35 to 1-40 (identifying 6 "**Collezione Artisanal Pastas**" and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### B.   Defendants Uniformly and Prominently Labeled the Products with the Italian Origin Representations Throughout the Class Period

Throughout the Class Period,[2] Defendant uniformly labeled the Products with the prominent Italian Origin Representation, "ITALY'S #1 BRAND OF PASTA." *See* **Ex. 1** [Def. Supp. ROG Resp.] at ROG No. 1, 2 (identifying all labels for each Product used during the Class Period); **Ex. 2** [Labels] (compiling all non-duplicative labels for each Product with the Italian Origin Representation); **Ex. 5** [Def. Supp. RFA Resp.] at Nos. 18-20. The Challenged Representation identifies the Products as "ITALY'S …PASTA," which literally means the Products belong to, or come, from Italy. **Ex. 2** [Labels]. Defendant even lauds the Products' superiority as the "#1 BRAND" in Italy. *Id.* To grab the attention of consumers, Defendant put the Italian Origin Representation on the Products' front-facing, primary display panel. *Id.* Defendant uses all capital letters and a sharp white font to contrast with the Products' otherwise vast blue background. *Id.* The false declaration of origin further stands out because the packaging contains scant competing imagery and information about the Products, largely limited to the brand name (Barilla®); identity of the product line (e.g., Classic Blue Box), type of pasta (e.g., spaghetti), and a few claims about the Products' attributes (e.g., net weight). *Id.* Defendant also surrounds the Italian Origin Representation with an artistic recreation of Italy's national flag, to further draw attention to it and convince consumers the US-made Products are instead authentically Italian. *Id.*

### C.   Defendant's Launched a Massive Marketing Campaign to Convince Consumers that the Products are Authentic Italian-Made Pastas

Defendant has deliberately cultivated and perpetuated the label's false notion that the Products are made in Italy, from Italian ingredients, through its decades-long monolithic advertising campaign that identifies the Barilla brand, company, and Products as authentic Italian pastas on an international scale, and in commercial and non-commercial spaces. Defendant's marketing campaign has inextricably tethered the Products to their purported Italian origin.

---

their labels); *see also* FAC, ECF 11, at ¶ 4c, Ex. 1-41 – 1-45; **Ex. 2** [Labels] at pp. 1-9 and Nos. 1-41 to 1-45 (identifying 5 "**Gluten Free Pastas**" and their labels); *see also* FAC, ECF 11, at ¶ 4d, Ex. 1-46 – 1-47; **Ex. 2** [Labels] at pp. 1-9 and Nos. 1-46 to 1-47 (identifying 2 "**Veggie Pastas**" and their labels); *see also* FAC, ECF 11, at ¶ 4e, Ex. 1-48 – 1-52; **Ex. 2** [Labels] at pp. 1-9 and Nos. 1-48 to 1-52 (identifying 7 "**Whole Grain Pastas**" and their labels).
[2] The "**Class Period**" is defined as June 11, 2018, through the present. *See* FAC, ECF 11, ¶ 31.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant repeatedly emphasizes its Italian heritage, throughout its digital marketing campaign, including: describing itself as "an Italian family-owned food company" (FAC, ECF 11, ¶ 18a., Ex. 3a); chronologizing the company's history from birth to present day, repeatedly noting its first pasta shop in Italy, the construction of multiple factories and a wheat transportation system in Italy, and each of its company's leaders' Italian birth (*id*. ¶¶ 19b. (1), (3)-(4), 19c., Ex. 4d); identifying its headquarters or location in Italy on social media (*id*. ¶ 20a); and announcing its acquisition or launch of multiple Italian food brands over time (*id*. ¶ 19b. (3), Ex. 4c). Defendant features a video depicting the company's origins, including a reenactment of the company's founder in the fields of Italy harvesting wheat ingredients and examining grains; the beginnings of the first pasta shop and factory opening in Italy; and the attention to detail in the handcraftsmanship of making the pasta itself, to explain the company's modern-day return to its beginnings in the wheat fields of Italy and how the company's past, grounded in Italy, is also its future. *Id.* ¶ 19e.[3] Defendant admits that "[t]he history of Barilla has intertwined for more than a century with that of the city and, more generally, with the history of the Italian economy and culture," tethering the entire Barilla® brand and company's identity to the country of Italy. FAC, ECF 11, ¶ 19f. (1), Ex. 5b.

Defendant consistently uses imagery, music, language, and other means to associate its company, brand, and Products with Italy including, for example: using Italian language to identify its artisanal collection as "Collezione Artisanal" (*id*. ¶ 18c.; Ex. 1-34 – 1-40, Ex. 3c); emphasizing that the quality of its Products derives from its "Italian culture" (*id*. ¶ 19a. (1), Ex. 4b); featuring a musician singing the theme song from an iconic Italian film, set to recognizable Italian folk melodies, to harness the notoriety of the award-winning movie and its soundtrack to further associate the brand with Italy (*id*. ¶ 19a. (2), Ex. 3b[4]); hosting a Spotify playlist overwhelmingly comprised of Italian music (FAC, ECF 11, ¶ 19a. (4), Ex. 4b[5]); and using Italian media personalities,

---

[3]  *See* YOUTUBE, Barilla Group, *Barilla – The Dream*, at https://www.youtube.com/watch?v=oSp29neAjNk&t=45s (accessed 8/16/2023).

[4]  *Compare* YOUTUBE, Noa (Achionoam Nini), *Noa (Achionoam Nini) – Beautiful that way (La vita e bella) (The Official videoclip)*, https://www.youtube.com/watch?v=-OyXpzd6WBk (accessed 8/16/2023); *with* YOUTUBE, Barilla US, *Barilla | No Words | Make Barilla Pasta as a Sign of Love*, at https://www.youtube.com/watch?v=laJO_KyPP38&t=7s (accessed 8/16/2023).

[5]  *See* SPOTIFY, Barilla Italia, *Public Playlists*, at https://open.spotify.com/user/w2p1oq867ns7jele6g3lw66fk (accessed 8/16/2023).

advertisements on "Italian TV," and famous Italian directors and cartoonists to advertise Barilla®
brand Products (FAC, ECF 11, ¶ 19b. (3), Ex. 4c).

        To further tie the US-made Products to Italy, Defendant maintains an online Barilla Historical
Archive, which it calls "Archivio Storico Barilla," cataloguing over 60,000 documents showing the
history, economic activity, and marketing of Barilla brand products over decades. *Id.* ¶ 19f. (1), Ex.
5b. Its marketing repeatedly uses iconic Italian imagery and pop culture references to promote the
company, brand, and its products as uniquely Italian. *Id.* The Italian Ministry of Cultural Heritage
and Activities, on November 30, 1999, declared the company's archive "of considerable historical
interest" as it "witnessed the development of the food industry in Parma and the evolution of
customs in Italy.' *Id.* ¶ 19f. (5) (quoting Ex. 5h [Archivio Storico Barilla—Declaration]). The
company admits, however, it uses this archive not only to safeguard historical documents, but also
to market the Barilla® brand and company as belonging to Italy. *Id.* ¶ 19f. (1), Ex. 5b (stating the
archive, containing thousands of promotional materials readily identifiable as Italian, "is also
involved in the cultural promotion of Barilla."); *see also id.* ¶ 19f. (2), 5c (explaining its mission to
"promote[] and enhance[] . . . the cultural evolution of the enterprise and the historic memory of the
Company generations, documenting the social development of Italy"; and the deliberate
"disseminat[ion of] its knowledge" on an "international" level).

        Similarly, Defendant inaugurated its "Pasta Museum," located in Italy, to promote its pastas
as made from authentic Italian durum wheat coveted by consumers, manufactured using processes
that evolved throughout Italy, and a food staple deeply rooted in Italy. *Id.* ¶ 19f. (3), Ex. 5d, Ex. 5f.
Likewise, Defendant inaugurated the Barilla Academy, which it calls "Academia Barilla," declaring
it an "international center for [the] promotion, tutelage and development of the art of Italian
Gastronomy." *Id.* ¶ 19f. (4), Ex. 6. Defendant uses Academia Barilla to "strengthen the awareness
of the deep roots of the Italian gastronomic tradition." *Id.* ¶ 19f. (4) (quoting Ex. 6, further describing
its "mission of discovering and disseminating the Italian gastronomic and cultural heritage,"
including the promotion of Italian pastas).

        Defendant acknowledges its infamy as an Italian company that makes Italian products,
boasting that Barilla is a "recognized worldwide as a symbol of Italian know-how." FAC, ECF 11,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

¶ 18a., Ex. 3a. Defendant brags that Italians recognize the Barilla brand merely from its signature box, proclaiming: "Italians know the familiar Blue Box means quality . . . . That's why Barilla has been an Italian favorite for over 140 years, and continues to be the #1 pasta in Italy today." *Id.* ¶ 18b., Ex. 3b. To be sure, Defendant has successfully positioned Barilla to be a "████████████████████████████████████████████████████████████████████████████████████████████████████████." **Ex. 3** [New Positioning Blue Box], at BAI-CA_360.

Defendant was not wrong about its success in selling its Italian infamy. According to Defendant's qualitative consumer research, ████████████████████████████████████████████████████ **Ex. 3** [New Positioning Blue Box, BAI-CA_357-378] at BAI-CA_367, 369 (emphasis added). Similarly, in a separate quantitative consumer study ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Weir Decl. at 20 (citing **Ex. 4** [Kantar 2021 Study] at 340-342, 343-347) (emphasis added). ████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at ¶ 21 (citing **Ex. 4** [Kantar 2021 Study] at BAI-CA_340-342, 343-347).[6] While the strategy works to Barilla's advantage, the problem for consumers (and competitors) is the Products are not made in Italy, like other brands of pasta. Instead, the Products are made at factories in the United States with core ingredients sourced outside of Italy.

D.   **Defendant's Marketing Strategy Is Designed to Take Advantage of Consumers' Desire for Authentic Italian-Made Pastas**

As evidenced by Defendant's long-standing marketing campaign, Defendant invested considerable resources into building its brand image in the United States as an Italian company that makes and sells Italian pastas. Defendant did so because it wanted to take advantage of consumer demand for authentic Italian pastas, made from Italian ingredients. Defendant itself claims that Italian ingredients make superior pastas, and published consumer research, Defendant's own

─────────────

[6] Citations, internal quotations, and footnotes omitted throughout unless otherwise expressly stated.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumer study, and other evidence demonstrates that the Products' false origin drives sales.

First, reflecting the importance to consumers of ingredients sourced in Italy, Defendant extols the superior quality of Italian durum wheat or semolina and boasts about its commitment to using only Italian wheat for pastas sold in Italy. FAC, ECF 11, ¶ 19a. (3), Ex. 4b. Defendant's "Barilla Quality Manifesto" declares that the "precious ingredient" in pasta comes from "the highest quality durum wheat," which creates the "perfect semolina blend" and provides "an authentic full taste," so that families can enjoy Defendant's "flavorful and genuine pasta." *Id*. ¶ 19d., Ex. 4b. That is why, according to Defendant's dedicated "We use only quality wheats" webpage, Barilla brand pastas are purportedly made from the "best quality durum wheat in the world," and Defendant emphasizes its "commit[ment] to . . . purchas[e] . . . Italian durum" and manufacture "classic pasta formats . . . us[ing] 100% Italian wheats," but only for Products sold in Italy. *Id*. ¶ 19d, Ex. 4f. Thus, when it comes to pasta and according to Defendant, quality Italian ingredients, such as wheat, are preferable to the non-Italian ingredients that permeate the Products in the United States.

Second, Defendant used the Italian Origin Representation and brand strategy to capitalize on the recognized value consumers place on country of origin claims, especially for foods that are uniquely associated with a particular locale as pasta is to Italy. As Plaintiffs' expert Colin Weir explains, "the economic literature suggests that consumers do in fact pay a premium for country of origin claims." Weir Decl. ¶ 13. For example, Mr. Weir notes one study deriving price premia of 38% and 58% for a United States country of origin claim. *Id.* at ¶ 14. With respect to Defendant's false declaration of Italian origin, Mr. Weir discusses studies examining consumers' perceived value of pastas' Italian origin and Italian allure, which found "pasta products made in Italy were more favorable to consumers than pasta products not made in Italy." *Id.* ¶¶ 15-16. The researcher concluded that "consistently across the three studies, the extent to which food is perceived to be Italian increases consumers' [willingness to pay] for that product." *Id.* ¶ 16.

Finally, Defendant is "█████████████████████████████████████████████████████████████████████████████ ." Weir Decl. ¶ 20 (citing **Ex. 4** [Kantar 2021 Study]). According to Defendant's commissioned quantitative consumer research ███████████████████████████████████████████████████████████████

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

██████████████████████████████ *Id.* (citing **Ex. 4** [Kantar 2021 Study] at BAI-CA_320-322). Thus, Defendant's own consumer research shows the Products' purported Italian origin drives sales.

### E.   The Italian Origin Representation Is False Because the Products are Not Made in Italy or from Ingredients Sourced There

Defendant admits on its website that Barilla brand pastas sold in the United States, with the exception of its tortellini and oven-ready lasagna (which are not at issue), are made not in Italy but in factories in Iowa and New York. FAC, ECF 11, ¶¶ 3, 14, Ex. 3f. To the extent that Defendant sells an Italian-made Barilla pasta in the United States, its packaging would clearly state "Product of Italy." *Id.* Ex. 3f. But none of the packaging at issue in this case contains a "Product of Italy" or similar statement. **Ex. 2** [Labels]. Rather, each only acknowledges the Products are "Made in the U.S.A. with U.S.A. . . . Ingredients" with an inconspicuous and fine print statement on the side label, far below the nutritional facts. *Id.* This stands in contrast to the prominent Italian Origin Representation uniformly depicted on all the Products, in all caps, on the front label. *Id.*

Despite the Italian Origin Representation, Defendant has admitted in discovery that, with the exception of Gluten Free Pastas, "each and every [Product] sold in [the United States] during the [Class Period] contained wheat that was grown outside of Italy." **Ex. 5** [Def. Am. RFA Resp.] at No. 21-26. Defendant further admits that "each and every [Product] . . . contained one or more ingredients that were sourced outside of Italy." *Id.* at No. 27-32. And aside from an infinitesimal fraction of Defendant's overall sales, Defendant admits that "each stage of the [manufacturing] process," "from the sourcing of raw materials through . . . packaging," "did not occur in Italy." *Id.* at No. 57-62.[7] This common evidence demonstrates the falsity of the Challenged Representation.

### F.   Dr. Dennis's Consumer Perception Study Confirms the Italian Origin Representation Leads Reasonable Consumers to Believe that the Products Only Used Italian Ingredients

Consumer survey evidence demonstrates that the Italian Origin Representation leads reasonable consumers to believe that the Products were made in Italy—with ingredients solely

---

[7] (█████████████████████████████████████████████████████████████████████ , in **Ex. 6**; *but see* **Ex. 11** [U.S. Sales Data]; Bruce Decl. at ¶ 6 (███████████████████████████████████████████████████████████████████████████████).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

sourced there. Plaintiffs' expert, J. Michael Dennis, Ph.D., designed and conducted a consumer perception study to determine whether, and to what extent, the Challenged Representation causes reasonable consumers to believe the Products contain ingredients sourced exclusively from Italy. Dennis Decl. ¶¶ 20, 21, 27. Dr. Dennis is a well-recognized survey and marketing research expert with more than 25 years of experience in designing and conducting consumer surveys. *Id.* ¶¶ 3-15, Attachment A [CV]. He has designed and conducted numerous consumer perception surveys that have been accepted by courts across the country in product mislabeling cases. *Id.* ¶¶ 4-6, Att. A.

Here, Dr. Dennis employed an industry-standard survey methodology that is regularly used, well-established, and recognized in published and peer-reviewed market research literature. *Id.* ¶¶ 33. First, he created a sampling plan designed to survey consumers whose responses would be generalizable to the proposed class. *Id*. Second, he designed the survey based on his research into Defendant's use of the Challenged Representations. *Id*. Third, he tested the survey using focus groups and pretesting with consumers. *Id*. Fourth, he retained a survey vendor to program and execute the survey, as well as to administer the survey to respondents within the targeted sample. *Id*. Fifth, he reviewed the survey data to assess its quality. *Id*. Finally, he analyzed the data and summarized it in a declaration and expert report. *Id.*

Dr. Dennis's survey assessed respondents' understanding of the Product's packaging, specifically instructing respondents "it is . . . important that you base your answers <u>only</u> on the packaging that we show you," and assuring respondents that the "Don't know/ not sure" response was acceptable. *Id.* ¶¶ 64-67, 69-70. To mimic how a consumer may view product packaging, respondents were shown all sides of the Barilla Classic Blue Box Spaghetti Product box. *Id.* ¶¶ 68.

To ensure the accuracy of the survey results, Dr. Dennis used a number of screening survey questions and quality-control checks to identify appropriate survey respondents from a universe of nearly 900 potential respondents. *Id.* ¶¶ 46-48, 57. And, Dr. Dennis followed best practices:

> In designing the . . . questions for my survey, I used best practices that are customary in the survey research industry. I used neutral, even-handed, unbiased, non-alarmist language. I provided non-leading survey question wording. I provided balanced and complete survey response options. I established a neutral, non-judgmental context to encourage honest answers from the respondents (*e.g.*, "We will show you ways that people might or might not understand the meaning of statements on the packaging"). I followed these and other best practices to obtain reliable responses.

*Id.* ¶ 59. Dr. Dennis was also careful to disguise his research objectives from survey participants to ensure they were not biased in answering the survey questions. *Id.* ¶¶ 49-50, 59.

Following the screening questions, the survey proceeded with three consumer perception questions—two of which were distractor and control questions designed to disguise the research objectives, as well as to identify unreliable respondents. *Id.* ¶ 72. The relevant consumer perception question sought to measure consumers' understanding of the Challenged Representations and provided respondents with a "Don't know/not sure" response option, consistent with best practices. *Id.* ¶ 69. In addition, the order of the consumer perception questions, and the responses, were randomized. *Id.* at Att. C [Survey Questionnaire] at p. 19.

The results of Dr. Dennis's consumer perception survey meaningfully support Plaintiff's theory of liability. Of the nearly 600 interviews conducted, the majority—***57%***—believed the Italian Origin Representation communicated that the Products' ingredients are solely sourced from Italy. *Id.* ¶ 37. Accordingly, Dr. Dennis concluded that "the reasonable consumer was led by the Defendant's Challenged Representation into believing that the Products were made with ingredients sourced solely from Italy." *Id.* ¶ 27. Dr. Dennis's survey results provide common evidence demonstrating consumer deception and the suitability of Plaintiffs' claims for class resolution. The results are also consistent with this Court's earlier holding that "a reasonable inference that the [P]roducts were made in Italy from Italian ingredients" may be drawn from the Products' labels and Defendant's marketing campaign, such that "a significant portion of the general consuming public of targeted consumers, acting reasonably in the circumstances, could be misled by the Challenged Representation." *See* Order on MTD, ECF 30, at 22.

## III.   LEGAL STANDARD

Under Fed. R. Civ. P. 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). These are the only criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 (9th Cir. 2017).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1   "In determining the propriety of a class action[,] the question is not whether the plaintiff or plaintiffs

2   have stated a cause of action or will prevail on the merits, but rather whether the requirements of

3   Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "Rule 23 grants courts

4   no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may

5   be considered to the extent—but only to the extent—that they are relevant to determining whether

6   the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans &*

7   *Trust Funds*, 568 U.S. 455, 465-66 (2013).

8       Consumer protection claims are ideal for class certification and any doubt as to the propriety

9   of certification is resolved in favor of certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

10  624-25 (1997); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964); *Hunt*

11  *v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) ("[C]lass action

12  certifications to enforce compliance with consumer protection laws are desirable.").

13  **IV.   THE REQUIREMENTS OF RULE 23(A) ARE READILY MET**

14      **A.   The Class Is Adequately Defined**

15      While no express ascertainability requirement exists under Ninth Circuit law, a class must

16  still be adequately defined. *Briseno*, 844 F.3d at 1124, n.4; *Wolph v. Acer Am. Corp.*, 272 F.R.D.

17  477, 482 (N.D. Cal. 2011) ("The class definition must be sufficiently definite so that it is

18  administratively feasible to determine whether a particular person is a class member."). A class is

19  adequately defined where objective criteria can be applied to determine eligibility as a class

20  member. *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014).

21  Here, the "**Class**" is well-defined as: "All residents of California who, within four years prior to the

22  filing of this Complaint, purchased the Products, containing the Challenged Representation on the

23  Products' front packaging, for purposes other than resale." FAC, ECF 11, ¶ 31.

24      The Class is objectively and sufficiently definite. It "identifies purchasers of Defendant's

25  products that included the material misrepresentations. Because the alleged misrepresentations

26  appeared on the actual packages of the products purchased, there is no concern that the class includes

27  individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493,

28  500 (S.D. Cal. 2013); *Forcellati*, 2014 WL 1410264, at *5 ("Here, Plaintiffs have precisely defined

their class based on an objective criterion: purchase of Defendants' . . . products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement.").

Moreover, "[t]here is no requirement that 'the identity of the class members . . . be known at the time of certification.'" *Astiana*, 291 F.R.D. at 500. So long as the class definition is sufficiently definite to identify putative members, as it is here, any "challenges entailed in the administration of this class are not so burdensome as to defeat certification." *Id.*; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010) ("The fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) ("Few people retain receipts for low-priced goods . . . Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed.").

### B.   Numerosity

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913-14. "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris*, 329 F.2d at 913-14. While there is no set numerical cutoff to determine numerosity, courts have consistently held that joinder is impracticable where the class is composed of more than 40 persons. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough."). Here, the evidence demonstrates numerosity: ███████████ of Products were sold in California during the Class Period. Bruce Decl. at ¶ 7; **Ex. 10** [Def's Cal. Sales Data, BAI-CA_209]; **Ex. 1** [Def's Supp. ROG Resp.] at Nos. 4-5 (identifying California sales data for the Products in BAI-CA_209); *see also* Weir Decl. at ¶ 67 (identifying ████████ million Products sold at retail).

### C.   Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this factor is construed liberally and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

permissively. *Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir. 1982); *see also Young v. Neurobrands, LLC*, 2020 WL 11762212, at *3 (N.D. Cal. Oct. 15, 2020). The class's "claims must depend upon a common contention . . . [and] . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Further, as the Ninth Circuit has explained, "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. at 338. Instead, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359.

In false advertising cases, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Astiana*, 291 F.R.D. at 502. In fact, "it is an error of law for a court to inquire into the motives of each individual class member at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021). And "[i]n determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is **capable** of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) ("[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue.") (emphasis added).

Importantly, "[i]n misbranding and false advertising cases, courts routinely find that commonality has been satisfied based on the question of whether the label would be deceptive to a reasonable consumer." *Young*, 2020 WL 11762212, at *4. For example, in *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018), the Court certified a class of purchasers misled as to a product's geographic origin, explaining "[n]umerous courts have

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer." *See also Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *4 (N.D. Cal. July 14, 2022) (commonality exists where, as here, all consumers exposed to the same false claim); *Hilsley v. Ocean Spray Cranberries Inc.*, 2018 WL 6300479, at *4 (S.D. Cal Nov. 29, 2018) (collecting cases).

Here, Plaintiffs identified numerous common questions in the First Amended Complaint. *See* FAC, ECF 11, ¶ 35 (listing common questions). These questions satisfy commonality. In fact, one common question—whether the Italian Origin Representation is false, misleading, or deceptive—will itself resolve "in one stroke" an issue central to the validity of each Class Member's claim: whether the Products were falsely and unlawfully labeled under California's consumer protection laws. *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607–08 (N.D. Cal. 2018) ("Plaintiffs argue that the common question is: 'was Defendant's 'Made From Real Ginger' label likely to deceive reasonable consumers?' In other consumer fraud cases in this district, courts have found similar common questions to be sufficient to satisfy commonality."); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 359 ("'[e]ven a single [common] question' will do.").

Notably, the common legal questions will be resolved by application of the same facts because Plaintiffs and Class members, by definition, all purchased Products bearing the same Challenged Representation. *Broomfield*, 2018 WL 4952519, at *16 (certifying a class because the marketing and packaging of Kona Beer, which led reasonable consumers to believe it was made in Hawaii, involved the same common course of conduct and class members were exposed to the same misrepresentations); *Astiana*, 291 F.R.D. at 501 ("Here, Plaintiffs have identified several legal and factual issues common to the putative class's claims, including whether the use of the term 'Nothing Artificial' to advertise food products that contain the allegedly synthetic ingredients violates the UCL, FAL, CLRA, or Defendant's own warranties. By definition, all Class members were exposed to such representations and purchased Kashi products, creating a 'common core of salient facts.'"); *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (finding commonality where all class members were exposed to the challenged labeling); *Lytle v. Nutramax Lab'ys, Inc.*,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2022 WL 1600047, at *14 (C.D. Cal. May 6, 2022) (same); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012), *on reconsideration*, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ("Because [the product] was packaged and sold uniformly across the nation, resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each class member's claims. . . . Defendants' argument that commonality is not satisfied because class members may have purchased [the product] for a variety of reasons is unpersuasive.").

Further, "courts have repeatedly recognized that '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'" *Hadley*, 324 F. Supp. 3d at 1099 (citing *Zakaria v. Gerber*, 2016 WL 6662723, at *8, (N.D. Cal. Mar. 23, 2016), and finding certification appropriate even where the defendant asserted certain members would not have seen the challenged statement); *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 895 (N.D. Cal. 2015) ("[I]n numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold."); *In re NJoy, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015) ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality."); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014) ("Because all class members were exposed to the statement and purchased [the challenged] products, there is a common core of salient facts."). Commonality is satisfied.

### D.    Typicality

Commonalty also supports typicality here. In fact, typicality and commonality are often considered together because they "tend to merge" and "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982). The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). "[T]he claims of the class representatives [are] typical of those of the class, and [typicality is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th

Cir. 2001), *abrogated on other grounds*; *accord Broomfield*, 2018 WL 4952519, at * 6 ("In the instant case, Plaintiffs' claims and those of the proposed class members arise out of [Defendant's] allegedly false representations on its packaging that Kona Beers are brewed in Hawaii. Plaintiffs have demonstrated that their claims are representative of the claims of the class.").

Like commonality, "the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive' with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020, *overruled on other grounds by Wal-Mart*, 564 U.S. at 338. For example, typicality is established where the class was injured through an alleged common practice. *Id*. A plaintiff need only show that the defendant made a misrepresentation or engaged in an unfair practice that was typical across the class, and that plaintiff and class members were injured. *Astiana*, 291 F.R.D. at 502 ("Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff").

Here, typicality is satisfied because Plaintiffs and the Class all purchased Products bearing the same material and deceptive Italian Origin Representation, resulting in the same economic injury. **Ex. 1** [Def. Supp. ROG Resp.] at ROG No. 1, 2 (identifying all labels for each Product used during the Class Period); **Ex. 2** [Labels] (indexing and compiling all Italian Origin labels, each displaying the Challenged Representation). Plaintiffs have verified, under oath, that they purchased the Products because they read and relied on the Italian Origin Representation on the front labels, which led them to believe that the Products "were genuine or authentic Italian pasta(s)—i.e., that the pasta(s) were made in Italy, from ingredients sourced in Italy." Sinatro Decl. ¶ 5; Prost Decl. ¶ 5; **Ex. 7** [Sinatro ROG Resp.] at ROG No. 1, 3; **Ex. 8** [Prost ROG Resp.] at ROG No. 1, 3. They affirmed that the Italian Origin Representation was important to them in deciding to buy the Products. Sinatro Decl. ¶ 5; Prost Decl. ¶ 5; **Ex. 7** [Sinatro ROG Resp.] at ROG No. 3; **Ex. 8** [Prost ROG Resp.] at ROG No. 3. Plaintiffs also confirmed that they would not have bought the Products, had they known that the Italian Origin Representation was false. *Id*. Finally, Plaintiffs allege the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

same economic harm and injury as absent Class members based on a label statement that is materially uniform across all of the Products. FAC, ECF 11, ¶ 28.

For all of these reasons, typicality is satisfied. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements."); *Young*, 2020 WL 11762212, at *5 ("Although Plaintiffs may not have purchased all the challenged Products, they allege the same harm as absent class members based on Defendants' labeling of the Products as having "natural flavors" and "no artificial colors or flavors" when the Products in fact contained the allegedly artificial flavor, malic acid. This is sufficient for typicality."); *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (a plaintiff's individualized experience with the product is irrelevant); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 456 (C.D. Cal. 2022) (holding that "the typicality requirement [wa]s satisfied" in a false labeling case because "Plaintiffs and the proposed class members suffered the same injury—namely, they overpaid [for the product] . . . ."); *Martin v. Monsanto Co.*, 2017 WL 1115167, at *4 (C.D. Cal. Mar. 24, 2017); *Lilly*, 308 F.R.D. at 240.

## E.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for determining legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). As to the latter, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Both criteria favor certification in this case.

First, the evidence demonstrates that Plaintiffs' "interest[] in proving [Defendant's] alleged misrepresentation align with those of other class members." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Each potential class member

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

has the same issue: an allegedly false representation on CATBC packaging and damages in the form of the purchase price or consequent property damage."); *Astiana*, 291 F.R.D. at 503 ("Plaintiff Larsen and the class were exposed to the same alleged misrepresentation on [the] product labels, and she testified that she would have either paid less or purchased other products had she not been deceived. Plaintiff Larsen's interests are therefore coextensive with the proposed class."). Plaintiffs bought the Products in reliance on the Italian Origin Representation to their detriment. FAC, ECF 11, ¶ 28; Sinatro Decl. ¶ 5; Prost Decl. ¶ 5; **Ex. 7** [Sinatro ROG Resp.] at ROG No. 3; **Ex. 8** [Prost ROG Resp.] at ROG No. 3. They have no interest that conflicts with the Class's interest in honest and transparent labels on the Products, and they have not been promised any special treatment. Sinatro Decl. ¶ 4; Prost Decl. ¶ 4.  Plaintiffs have also agreed to hold the Class's interest paramount to their own, and to seek the best possible result for the Class. *Id.*

Second, Plaintiffs and their counsel have advocated vigorously on behalf of the Class and will continue to do so. Bruce Decl. ¶¶ 3-4. Plaintiffs have stepped forward to challenge Defendant's conduct and have participated actively in this litigation. *Id.* ¶ 3. They have expended considerable time supervising this litigation and participating in its investigation, exposing themselves to the risks of litigation without any guarantee of compensation. *Id.*; Sinatro Decl. ¶ 3; Prost Decl. ¶ 3. Plaintiffs also retained counsel, Clarkson Law Firm, who are experienced in prosecuting consumer class actions, including class actions based on mislabeled products. Bruce Decl. ¶ 4. The resumes of Plaintiffs' counsel set forth a representative sampling of appointments and complex prosecutions over many years. **Ex. 9 [Clarkson Resume]**; *see also*, *e.g.*, *Escobar v. Just Born, Inc.*, 2019 WL 261936, *2 (C.D Cal. Mar. 25, 2019) (Hon. Terry Hatter appointing Clarkson as class counsel); *Prescod v. Celsius Holdings, Inc.*, 2021 WL 5234499, *25 (Cal. Super. Ct. Aug. 2, 2021) (Hon. Kenneth Freeman appointing Clarkson as class counsel and finding Clarkson has "significant experience in litigating class actions in false and deceptive advertising class actions").

In the course of this litigation, Plaintiffs have vigorously protected the interests of the Class, defeating Defendant's motion to dismiss this action. *See* MTD Ord., ECF 30. They have also effectively gathered the class-wide proof necessary to certify this class action, including an extensive pre-litigation investigation and analysis of Defendant's decades long advertising

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

campaign; serving comprehensive written discovery on Defendant and resolving disputes through extensive meet and confers; analyzing Defendant's extensive discovery responses and document production; subpoenaing records from third parties to further strengthen Plaintiffs' position while efficiently resolving disputes favorably and without need for court intervention; investing time and other resources in seeking to resolve the claims through formal and informal settlement proceedings; retaining and consulting with leading consumer and damages experts; and otherwise managing the litigation day-to-day with skill and diligence. Bruce Decl. ¶ 3.

## V.     THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

Under Rule 23(b)(3), "[a] class action may be maintained if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### A.     Predominance

Predominance tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016). And "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022. Evaluating predominance "begins . . . with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "[C]ourts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020). When a defendant's uniform policies are challenged, predominance typically exists. *See Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 24, 2020) (citing cases). Thus, "[i]n cases alleging misrepresentation, common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 539-40 (N.D. Cal. 2018).

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

### 1. Class Claims Will Be Resolved Through Objective Standards and Common Evidence that Apply Class-Wide

#### a. California's Consumer Protection Laws

"[T]he false advertising standard under the UCL, FAL and CLRA is the same." *Lovette v. Zale Del., Inc.*, 2019 WL 2492503, at *2 (S.D. Cal. June 13, 2019); *see also Forcellati*, 2014 WL 1410264, at *9 ("For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable."). Each prohibits "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The inquiry depends not on how individual consumers subjectively understand the advertising, but is instead determined objectively "by the effect it would have on the reasonable consumer." *Martin*, 2017 WL 1115167, at *6; *see also Hawkins v. Kroger Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("California consumer protection laws take an objective approach of the reasonable consumer[.]").

Therefore, relief under the UCL and FAL is available without individualized proof of deception, reliance, and injury. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). Similarly, while a plaintiff must prove actual reliance under the CLRA, "reliance may be presumed as to the entire Class if [Defendant's] misrepresentations were material." *Martin*, 2017 WL 1115167, at *6; *see also In re Tobacco II*, 46 Cal. 4th at 327. ("[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."). Here, Plaintiffs attest that they read and relied on the Italian Origin Representation, and understood it to mean the Products are authentic Italian pastas made in Italy from ingredients sourced there. Sinatro Decl. ¶ 5; Prost Decl. ¶ 5; **Ex. 7** [Sinatro ROG Resp.] at ROG No. 1, 3; **Ex. 8** [Prost ROG Resp.] at ROG No. 1, 3. Plaintiffs further attest that the Italian Origin Representation was important to them in deciding to buy the Products, and had they known the truth, they would not have purchased the Products. *Id.*

"Materiality is part of the 'reasonable consumer' standard applied under the California unfair competition and false advertising statutes." *Park v. Cytodyne Techs., Inc.*, 2003 WL 21283814, at *2 (Cal. Super. Ct. May 30, 2003). "A representation is material . . . if a reasonable consumer would attach importance to it *or* if the maker of the representation knows or has reason to know that its

recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). Critically here, materiality is subject to common proof because it is "judged according to an objective standard and so '[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all [consumers] composing the class.'" *Mullins v. Premier Nutrition*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (quoting *Amgen*, 568 U.S. at 459). As a result of this objective test, Plaintiffs' "claims under the UCL, FAL, and CLRA [are] ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Bradach v. Pharmavite, LLC*, 735 F. App'x. 251, 254-55 (9th Cir. 2018); *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015) ("Since materiality, like the reasonable consumer test, concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation.").

While Plaintiffs do not need to prove materiality at certification (*see Hadley*, 324 F. Supp. 3d at 1115) there can be no reasonable dispute the Italian Origin Representation is material to consumers. *See also Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) ("Questions of materiality and reliance also do not defeat predominance."). The evidence examined above reflects that Defendant launched a massive marketing campaign for the purpose of convincing consumers that the Barilla Products are of Italian origin. *See*, *supra*, § II., C. The campaign was so pervasive and widespread it even invaded non-commercial spaces, and it successfully taught consumers to identify the Products as Italian-made Products, sourced from Italian ingredients. *Id*. Had the Products' origin been immaterial to consumers, Defendant would not have invested in this decades-long marketing campaign. *Id.* Defendant's own consumer survey demonstrates that the Italianity of the Products is one of the top three sales drivers. *See*, *supra*, § II., D. This is consistent with several studies showing not only that consumers attach real monetary value to country of origin claims generally (more than 50% of its price), but also that they favor pastas from Italy specifically—and are willing to pay more for them. *Id.*; *see also* Weir Decl. at ¶¶ 12-22 (explaining how product attributes, such as the Challenged Representation, allow consumers to differentiate

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

between otherwise similar products, with the goal of increasing sales and profits). Indeed, Defendant prominently and uniformly displayed the Italian Origin Representation on the front packaging of each Product. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 892 (Cal. 2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."); *see*, *supra*, § II, B.

Moreover, the materiality of the Italian Origin Representation is reflected in the law itself, as the California legislature and Congress have categorically and specifically prohibited advertising that misrepresents the geographic origin of a product. *See* Cal. Civ. Code 1770(a)(4) (categorizing "deceptive representations or designations of geographic origin in connection with goods" as unlawful); Lanham Act, 15 U.S.C. § 1125(a) (making false designations of origin in packaging or advertising unlawful); *Testone*, 2021 WL 4438391, at *13 ("the existence of . . . regulations prohibiting certain of the challenged statements on the Products' labels evidence materiality"); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *24 (N.D. Cal. July 15, 2016) ("regulations indicate that the information regulated is material to consumers' purchases."); *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020) ("The California Supreme Court has found that statutory recognition of materiality is highly persuasive."). Because such "statutory recognition of materiality is highly persuasive," and false origin claims, like the Challenged Representation, is specifically banned by California and Federal law, the Court should find it material.

As such, it comes as no surprise that Courts have found false statements of origin to be material misrepresentations, without further need for proof from each individual consumer. *See*, *e.g.*, *Kumar*, 2016 WL 3844334, at *24-25 (finding olive oil "Imported from Italy" labeling claims material); *Kwikset Corp.*, 246 P.3d 877, 892 (finding "Made in the U.S.A." claims material). For consumers, "processes and places of origin matter" play a significant role in the authenticity and economic differences between products. *Kwikset Corp.*, 246 P.3d at 890 (reasoning differences in geographic locations impact a consumer's willingness to pay, despite the indistinguishable taste).

Additionally, because each Class Member was exposed to the Italian Origin Representation,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1   "the predominating common issues include whether [Defendant] misrepresented" the Products as

2   authentic Italian pastas—meaning, pastas made in Italy from ingredients sourced in Italy, "and

3   whether the misrepresentations were likely to deceive a reasonable consumer." *Johns*, 280 F.R.D.

4   at 557. The answer to these objective questions will apply to the Class equally, such that their claims

5   will rise or fall together. *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *9 (N.D. Cal. Mar. 10,

6   2014) ("The scope and proper interpretation of the objective words of the parties' agreement is a

7   common question that applies commonly to all members of the class, is an issue whose resolution

8   will drive resolution of the litigation, and will predominate over any individualized issues.").

9       Not only does Dr. Dennis's survey show that the Italian Origin Representation leads a

10  reasonable consumer to believe that the Products are solely made from Italian ingredients, but

11  Defendant's admissions and the Products' labels themselves explicitly confirm that each and every

12  Product purchased by the proposed Class was neither manufactured in Italy, nor made solely from

13  Italian ingredients. *See*, *supra*, § II., E-F. (summarizing common evidence of Defendants' strategy

14  to foster and exploit consumers' desire for authentic Italian pastas, and how—based even on

15  Defendant's own websites and admissions, the Products fail to conform). Thus, the core issues

16  here—consumer perception, materiality, and falsity—may all be proved or disproved though class-

17  wide evidence, satisfying predominance. *Broomfield*, 2018 WL 4952519, at *10-12; *Kumar*, 2016

18  WL 3844334, at * 7-9. Simply put, "[t]he label is either illegal or it is not." *Ang v. Bimbo Bakeries

19  USA, Inc.*, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also*, *e.g.*, *Broomfield*, 2018 WL

20  4952519, at *10-12 (finding predominance and certifying the class in a deceptive labeling case).

21                          *b.  Breach of Warranty*

22      Plaintiffs also seek certification of their warranty claims, which require showing that "(1) the

23  seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the

24  statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra

25  Foods*, 90 F. Supp. at 984; *see also* Cal. Comm. Code § 2313(1)(a)-(b). Because each Class Member

26  was exposed to the misleading message that the Products are made in Italy, "[w]hether such []

27  statement[s] constitute[] an express warranty, [and] whether that warranty was breached. . . are

28  issues subject to common and generalized proof." *Martin*, 2017 WL 1115167, at *7 (certifying

1   warranty claims in false labeling case). And "[b]ecause reliance is not an element of express

2   warranty claims under California law, common questions predominate and class action treatment is

3   appropriate." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (certifying class for

4   breach of express warranty under California law); *see also Hadley*, 324 F. Supp. 3d at 1117-18.

5                                    *c.   Unjust Enrichment*

6        Like the warranty claims, Plaintiffs' unjust enrichment claim satisfies predominance. That is

7   because unjust enrichment (or quasi contract) claims "require common proof of the defendant's

8   conduct and raise the same legal issues for all class members." *Astiana*, 291 F.R.D. at 505 (citing

9   cases); *see also Smith*, 2020 WL 5630051, at *5 ("[T]he Court finds the inquiry presented here—

10  whether Keurig was unjustly enriched by the proposed class members' purchase of the Products

11  given its allegedly false representations regarding recyclability—raises the same legal issues as to

12  all class members. Accordingly, predominance is also met for the unjust enrichment claim.").

13          **2.     The Price Premium Survey Is Capable of Measuring Class-wide Damages
                     and Is Consistent with the Class's Theory of Liability**
14

15       The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants

16  asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th

17  663, 694 (2006); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3).

18  "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving."

19  *Lambert v. Nutraceutical Corp.,* 870 F.3d 1170, 1183 (9th Cir. 2017), *reversed on other grounds*.

20  The only requirement is that "some reasonable basis of computation of damages be used, and the

21  damages may be computed even if the result reached is an approximation.'" *Id.*

22       In false labeling class actions, "[i]t is well-established that the price premium attributable to

23  an alleged misrepresentation on product labeling or packaging is a valid measure of damages[.]"

24  *Hadley*, 324 F. Supp. 3d at 1104; *accord Prescott*, 2022 WL 3018145, at *10. To isolate the price

25  premium, conjoint analysis is widely accepted as a reliable method. *Hadley*, 324 F. Supp. 3d at 1107;

26  *Lytle*, 2022 WL 1600047, at *17 ("Conjoint surveys, like the one proposed by plaintiffs' expert, are

27  a well-established method for measuring class-wide damages in CLRA mislabeling cases."); *Milan*,

28  340 F.R.D. at 601; *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *14 (S.D. Cal. Mar. 8,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2021); *Testone*, 2021 WL 4438391, at *16; *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 411 (N.D. Cal.

2021); *Krommenhock v. Post Foods, LLC.*, 334 F.R.D. 552, 576 (N.D. Cal. 2020).

The Ninth Circuit has confirmed that "plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately," so long as those methods "reflect supply-side considerations and marketplace realities that would affect product pricing." *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 624 (9th Cir. 2018). In mislabeling cases, like this, courts have

> found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*Hadley*, 324 F. Supp. 3d at 1105; *see also Fitzhenry-Russell*, 326 F.R.D. at 606 (proposed conjoint analysis "calculated the price premium consumers paid for the [challenged] claim," because the conjoint survey (1) "used actual market-clearing prices"; and "(2) took into account the fixed quantity of supply of [the product]").

In line with these legal requirements, Plaintiffs' survey expert here, Dr. Dennis, has designed and will conduct a conjoint analysis to isolate and quantify the market price premium associated with the Italian Origin Representation, which can then be used to calculate the amount of restitution and damages owed to the Class. *See* Dennis Decl. ¶¶ 88, 101-129 (explaining nature of conjoint surveys, summarizing the steps he will follow to implement the conjoint survey and analysis, and obtaining an appropriate sample of respondents). Dr. Dennis also identifies the product attributes that will be included in the survey (brand, label claims, and price), and the reasons for selecting these attributes. *Id.* ¶¶ 98, 100, 111, 112, 114, 119, 121, 129. In addition to following accepted conjoint survey design principles (*id.* ¶¶ 90, 92-95), Dr. Dennis will account for supply-side factors both in the survey and in his market simulation (*id.* ¶¶ 107, 132). Because Dr. Dennis's survey incorporates real market prices and uses the same quantity of products in his market simulation as were sold in the real world (i.e., holding quantity fixed), his survey properly accounts for supply-side factors. *See Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 28, 2019) (declining to strike testimony of Dr. Dennis and Mr. Weir where "the conjoint analysis . . .

factored supply-side data into its design"). Once the conjoint analysis reveals the price premia attributable to the Italian Origin Representation, those premia "can then be multiplied by the number of units purchased by each class member to determine both total and individual damages." *Zakaria*, 2016 WL 6662723, at *16; *see also* Weir Decl. ¶¶ 41-47, 68, 69. Thus, Plaintiffs damages model is consistent with the Class's theory of liability and is capable of measuring class-wide damages in accordance with the law, further demonstrating predominance.

**B.    Superiority**

Whether "a class action is superior . . . for fairly and efficiently adjudicating the controversy" depends on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Here, because the Products are relatively inexpensive, Class members have no interest in controlling individual actions, which is itself enough to satisfy superiority. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. at 486 (Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'"). In addition, Plaintiffs are unaware of any other Californians who have filed related litigation. Bruce Decl. ¶ 5. Plaintiff Sinatro is a resident of this District, and Defendant purposely availed itself of the benefits of conducting business in this District, making it a preferable location. FAC, ECF 11, ¶¶ 7-8. Finally, this case focuses on Defendant's labeling practices, minimizing manageability concerns, which in any event cannot scuttle class certification where, as here, "no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Superiority is satisfied.

**VI.   CONCLUSION**

For the foregoing reasons, the Court should certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2      Dated: August 30, 2023                          **CLARKSON LAW FIRM, P.C.**

3                                                      By: */s/ Katherine A. Bruce*
                                                           Ryan J. Clarkson
4                                                          Katherine A. Bruce
                                                           Kelsey J. Elling
5                                                          *Attorneys for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28