1 | **FOLEY & LARDNER LLP**
Erik K. Swanholt (SBN 198042)
2 | *eswanholt@foley.com*
Laura Moedano (SBN 334156)
3 | *lmoedano@foley.com*
555 South Flower Street, Suite 3300
4 | Los Angeles, CA 90071
Tel: (213) 972-4614; Fax: (213) 972-4757

5 | Kelsey C. Boehm (pro hac vice)
*kboehm@foley.com*
6 | 1400 16th Street, Suite 200
Denver, CO 80202
7 | Tel: (720) 437-2013; Fax: (720) 437-2000

8 | *Attorneys for Defendant Barilla America, Inc.*

9

10

11

12

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>　　　　Defendant. | Case No.: 4:22-cv-03460-DMR<br>Case Filed: June 11, 2022<br>FAC Filed: July 20, 2022<br><br>*Assigned to Hon. Donna M. Ryu*<br><br>**DEFENDANT BARILLA AMERICA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Information:<br>Date: March 14, 2023<br>Time: 1:00 p.m.<br>Courtroom: 4 |

*(left vertical margin text:)* United States District Court — Northern District of California

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................... 1

    A.    The Location of Manufacture and Ingredient Origin Are Accurately Identified on
Barilla's Products and on Barilla's Website ................................................................ 3

        1.    Not All Products Contained the Challenged Representation. ........................................ 3

    B.    There Is No Uniform Interpretation of the Challenged Representation and Plaintiffs'
Proposed Interpretation Is Not Even the Most Common Interpretation. ..................... 5

    C.    Plaintiffs Fail to Establish that Consumers Pay a Price Premium for Barilla Products As a
Result of the Challenged Representation. ..................................................................... 5

    D.    Named Plaintiffs' Testimony ......................................................................................... 6

    E.    Plaintiffs' Cherry-Picked Documents Regarding Barilla's Marketing ........................ 7

III.  LEGAL STANDARD .......................................................................................................... 9

IV.   ARGUMENT ....................................................................................................................... 9

    A.    The Class is Not Adequately Defined. ......................................................................... 9

    B.    Plaintiffs Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement ..................... 11

        1.    Individualized Issues Predominate Because There Is No Common Evidence That
Barilla's Challenged Representation Has a Common or Uniform Meaning and Deceived
Reasonable Consumers. .............................................................................................. 11

        2.    Plaintiffs Have No Common Evidence That The Challenged Representation Was
Material to Reasonable Consumers. ........................................................................... 14

        3.    Common Factual Issues Do Not Predominate And The Class Is Inappropriately
Defined. ....................................................................................................................... 18

    C.    Plaintiffs' Express Breach of Warranty and Unjust Enrichment Claims Require
Individualized Inquiries .............................................................................................. 19

    D.    Plaintiffs' Proposed Damages Model Does Not Satisfy *Comcast.* ........................... 20

    E.    A Class Action Is Not A Superior Method of Adjudication ........................................ 24

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

ii

1

F.   Plaintiffs Fail to Meet Rule 23(a)'s Typicality and Adequacy Requirement........................ 24

2

V.   CONCLUSION ......................................................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

iii

# TABLE OF AUTHORITIES

Page(s)

Cases

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) ................................................................. 17, 18, 21

*Apple, Inc. v. Samsung Elecs. Co.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ................................................... 22, 23

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ............................................................. 22

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................... 19

*Ault v. J.M. Smucker Co.*,
  310 F.R.D. 59 (S.D.N.Y. 2015).............................................................................. 10

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014)................................................................................ 19

*Bohn v. Pharmavite, LLC*,
  2013 WL 4517895 (C.D. Cal. Aug. 7, 2013) ........................................................ 25

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017)................................................................................ 24

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................................. 9

*Cartwright v. Viking Indus., Inc.*,
  2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ...................................................... 20

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................... 21

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .......................................................................................... passim

*Daubert v. Merrell Dow Pharmacueticals, Inc.*,
  509 U.S. 579 (1992) ............................................................................................... 20

*Doyle v. Chrysler Grp., LLC.*,
  663 Fed. App'x 576 (9th Cir. 2016) ................................................................. 20, 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011).................................................................................. 24

*Fagan v. Neutrogena Corp.*,
  2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) ..................................................... 21

*Famular v. Whirlpool Corp.*,
  2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ...................................................... 21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y. 2016)........................................................................... 19

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
  2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ...................................................... 25

*Hardy v. Ole Mexican Foods, Inc.*,
  2023 WL 3577867 (2d Cir. May 22, 2023)............................................................ 15

*Hawkins v. Kroger Co.*,
  337 F.R.D. 518 (S.D. Cal. 2020)........................................................................... 10

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

iv

*Hughes v. The Ester C Co.*,
   317 F.R.D. 333 (E.D.N.Y. 2016) ............................................................................. 21

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   2017 WL 2559615 (C.D. Cal. June 7, 2017).................................................... 13, 17

*In re Clorox Consumer Litig.*,
   301 F.R.D. 436 (N.D. Cal. 2014) ............................................................................. 11

*In re KIND LLC "Healthy & All Natural" Litig.*,
   627 F. Supp. 3d 269 (S.D.N.Y. 2022) ...................................................................... 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015)..................................................................... 18

*In re POM Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. March 25, 2014) ...................................................... 21

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,
   2019 WL 2521958 (D.N.J. June 18, 2019) .............................................................. 18

*In re Vioxx Class Cases*,
   180 Cal.App.4th 116, 103 Cal.Rptr.3d 83 (2009) .................................................. 14

*Vaquero v. Ashley Furn. Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016)................................................................................... 20

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) .................................................. passim

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
   178 Cal. App. 4th 830 (2009)................................................................................... 19

*Khasin v. R. C. Bigelow, Inc.*,
   2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) ........................................................ 10

*Knowles v. Arris Int'l PLC*,
   2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ........................................................ 10

*Kosta v. Del Monte Foods, Inc.*,
   308 F.R.D. 217 (N.D. Cal. 2015) ...................................................................... 10, 11

*Kumar v. Salov*,
   2016 WL 3844334 (N.D. Cal. 2016) ....................................................................... 16

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310, (2011)...................................................................................... 14, 16

*La Barbera v. Ole Mexican Foods Inc.*,
   2023 WL 4162348 (C.D. Cal. May 18, 2023)......................................................... 15

*Lara v. First Nat. Ins. Co. of Am.*,
   25 F.4th 1134 (9th Cir. 2022)................................................................................... 18

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023).................................................................................. 13

*McMorrow v. Mondelez International, Inc.*,
   2020 WL 1157191 (S.D. Cal. 2020) ....................................................................... 12

*Minkler v. Kramer Lab'ys, Inc.*,
   2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ......................................................... 24

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc*,
   2016 WL 5920345 (C.D. Cal. June 23, 2016)................................................... 11, 18

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ............................................................................. 11

*Robles v. GOJO Indus., Inc.*,
   2023 WL 4946601 (9th Cir. Aug. 3, 2023).............................................................. 14

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

v

*Steinberg v. Icelandic Provisions, Inc.*,
   2022 WL 220641 (N.D. Cal. Jan. 25, 2022) .................................................................. 15
*Steinberg v. Icelandic Provisions, Inc.*,
   2023 WL 3918257 (9th Cir. June 9, 2023) .................................................................. 13
*Todd v. Tempur-Sealy International, Inc.*,
   2016 WL 5746364 (N.D. Cal. 2016).................................................................. 15, 19
*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018).................................................... 11, 14, 16
*Vizcarra v. Unilever United States, Inc.*,
   339 F.R.D. 530 (N.D. Cal. 2021) .................................................................. 20
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................. 9
*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .................................................................. 14
*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .................................................. 21

Rules

Fed. R. Civ. P. 23(b)(3).................................................................. 9, 11, 24

## I.   INTRODUCTION

This is one of more than five look-alike product mislabeling cases filed by class counsel on behalf of named Plaintiffs Jessica Prost and Matthew Sinatro ("Plaintiffs").[1] In this lawsuit, these atypical frequent-filer Plaintiffs allege that the true and trademarked statement "ITALY'S #1 BRAND OF PASTA" (the "Challenged Representation") that appears on only certain of Defendant Barilla America, Inc.'s ("Barilla") products' packaging, can only be read to mean that the pasta is made in Italy with ingredients sourced from Italy. Notwithstanding the facts that the Challenged Representation is *literally true,* the front of the package does not say "Made in Italy,"  and that at worst the Challenged Representation is ambiguous and clarified by a statement on the side of the packaging that states exactly where the pasta is made, Plaintiffs seek to certify a class that includes five different Barilla product lines, 54 products, and 88 distinct product labels from June 11, 2018 to present (the "Class Period") (only 54 of which labels include the Challenged Representation).

Plaintiffs' motion fails because they do not and cannot satisfy the rigorous requirements of Rule 23 and their motion for class certification ("Motion") should be denied accordingly.

First, the class is inadequately defined and not ascertainable. Beginning in 2020, long before this lawsuit was filed, many of the Products underwent an update to their Visual Identity. This makeover included no longer using the Challenged Representation, and has resulted in a scenario in which the packaging for 34 of the labels on the Products at-issue during the Class Period contained different representations at different times. Plaintiffs fail to address this critical fact and offer no way of objectively determining who was exposed to the Challenged Representation and who (if anyone) was injured by it. If the class definition includes putative members that did not see the Challenged Representation because it was not on the packaging, yet purchased the Products anyway, then those putative class members were not injured. These issues are fatal to Plaintiffs' Motion.

Second, Plaintiffs fail to meet Rule 23(b)(3) requirements because a multitude of individual issues overwhelm any purportedly commonality. Notably, individualized issues predominate because the Challenged Representation is not susceptible to a common, uniform interpretation;

---

[1] Three on behalf of Ms. Prost and four on behalf of Mr. Sinatro (they overlap here).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

4882-8063-3477.8

indeed the Challenged Representation is literally true and says nothing expressly about the pasta being made in Italy. Similarly, Plaintiffs have not established that the Challenged Representation on Barilla's packaging is material to any reasonable consumer. The "survey" conducted by one of Plaintiffs' "experts" and relied upon by the other does not evaluate materiality at all but instead improperly assumes it. Which is why these sham studies by the same author – containing nearly identical opinions based upon nearly identically flawed surveys and analyses – have been repeatedly rejected and excluded in prior matters. Plaintiffs do not come close to meeting their burden to demonstrate that materiality, among other things, can be established with common proof..

Third, Plaintiffs' proposed damages model contains a host of flaws, including that it is entirely unconnected to Plaintiffs' theory of liability and fails to isolate price premium associated with the purportedly misleading statement. Moreover, Plaintiffs' proposed conjoint model is neither an economically valid nor acceptable damages methodology because it fails to consider supply factors influencing pricing or the fact that retailers set the prices for the Products, not Barilla, and that those prices are influenced by factors outside of Barilla's control. These flaws, too, led to the exclusion of their mirror opinions in prior matters. In contrast to Plaintiffs' flawed methodologies, analysis of real-world sales data by Barilla's expert demonstrates that there is no price premium associated with the Challenged Representation in part because the price associated with the Products did not change (and in some instances increased) after the Products with the updated Visual Identity (and without the Challenged Representation) hit the shelves.

The burden here is Plaintiffs' to meet and they do not and cannot meet it. Consumers buy pasta for a host of reasons, including price, taste and shape; and many consumers, including the class representatives in this case, are brand agnostic picking different brands on each visit to the store depending on their taste, pocketbook or recipe that day. Finding commonality, typicality, predominance or cohesiveness required by Rule 23 in this setting is challenging under any circumstances but impossible here where the Challenged Representation was only present on some of the products purportedly at issue, and is literally true and at worst ambiguous subject to the clarifying language on the side of the packaging. There is no certifiable class here. Plaintiffs fail to meet their burden by a wide mark. Plaintiffs' Motion should be denied accordingly.

II.    **FACTUAL BACKGROUND**

    A.    **The Location of Manufacture and Ingredient Origin Are Accurately Identified on Barilla's Products and on Barilla's Website.**

Plaintiffs assert claims relating to 54 different Barilla pasta products (the "Products") that they allege contain the following representation: "ITALY'S #1 BRAND OF PASTA®." (Dkt. 54-2 at 1.) Plaintiffs' proposed Class Period is defined as "June 11, 2018 to present." (Dkt. 54-2, at 2, n. 2.) Plaintiffs assert that the Challenged Representation leads consumers to believe that "the Products are authentic Italian pastas made in Italy from ingredients sourced there." (Dkt. 54-2, at 19.) Plaintiffs allege that this is false because the Products are not made in Italy or from ingredients sourced in Italy. (Dkt. 54-2 at p. 7.) This ignores the evidence. The Products at-issue were made in the United States, Italy, and Canada, with ingredients sourced from the United States, Italy, Canada, and Mexico. (Dkt. 52-7 at p. 23-25.) <u>And, all of the Products</u> at-issue include an accurate country-of-origin statement. (Declaration of Jennifer Ping, hereafter "Ping Decl." ¶ 5.) For example, all Products made in the United States contain the following statement: "MADE IN THE U.S.A. WITH U.S.A. AND IMPORTED INGREDIENTS." (*Id.*) Moreover, Barilla's website specifically and prominently discloses that Barilla pasta sold in the United States "is made in our plants in Ames, IA and Avon, NY, with a few exceptions[.]" (Dkt. 11-3 at p. 15.)

    **1.  Not All Products Contained the Challenged Representation.**

In 2020, long before this lawsuit was filed, Barilla began the process of changing the overall look of its Products' packaging (the "Visual Identity"). (Dkt. 52-7 at p. 15.) Barilla redesigned the Visual Identity and as part of that process did not include the Challenged Representation on the Product labels. (Dkt. 54-5 at p. 10; Ping Decl. ¶ 6.) This change to the Visual Identity was made in October 2020 (Dkt. 54-5 at p. 10) and implemented in 2022 for 34 of the 54 Products at-issue. (Dkt. 52-7 at pp. 14-16.) Barilla estimates that the updated Product labels started becoming available to consumers in October 2022 with 80% of the new Visual Identity Products available for sale to consumers at retailers by February 2023. (Dkt. 52-7 at p. 16.) The below pictures show the pre-October 2022 Visual Identity compared to the post-October 2022 Visual Identity:

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

3

**Old Visual Identity:**



**New Visual Identity:**



(Ping Decl. ¶ 7.) Therefore, consumers' potential exposure to the Challenged Representation varied during the Class Period depending on the date, the Product, and the location of purchase as different retailers obtained and sold the Products at different rates.[2]

Plaintiffs ignore this fact and wrongly assert that all of the Products contained the Challenged Representation throughout the Class Period. (Dkt. 54-2 at 2.) In doing so, Plaintiffs selectively and inaccurately cite Barilla's discovery responses. *Id.* For example, Plaintiffs refer to Barilla's response to Interrogatories 1 and 2 but only attach exemplary "labels for each Product with the Italian Origin Representation" and fail to attach the labels identified in Barilla's interrogatory responses to the interrogatories that do not contain the Challenged Representation. *Id.* In addition, Plaintiffs only cite to Barilla's responses to Requests for Admission relating to the product lines that have not yet removed the Challenged Representation, ignoring the Request for Admission denials that all Products displayed the Challenged Representation. (*Id.* (citing Ex. 5 RFA Resp. Nos. 18-20); *but see* RFA Resp. Nos. 15-16 (denying that "every PRODUCT" and "every BLUE BOX PASTA" displayed the Challenged

---

[2] Named Plaintiffs Prost and Sinatro agree that the refreshed Visual Identity resolves their purported confusion (if any) about the origin of the Products. (Declaration of Kelsey Boehm, hereafter "Boehm Decl." **Exhibit A**., Prost Dep. Tr. 74:17-76:25; **Exhibit B**, Sinatro Dep. Tr. 39:18-25.)

1  Representation on the label)). This is no small oversight when the Blue Box product line accounts for
2  **34** of the Products at-issue. *See* Dkt. 52-7 at pp. 12-14.

3      **B.**    **There Is No Uniform Interpretation of the Challenged Representation and**
4          **Plaintiffs' Proposed Interpretation Is Not Even the Most Common Interpretation.**

5      Plaintiffs and their experts conflate "Italy's #1 Brand of Pasta" with advertising that
6  misrepresents the geographic origin of products (the "Sourcing Interpretation") as if the packaging is
7  expressly false (it is not) and there is no other possible interpretation of the Challenged Representation.
8  However, there is a more plausible interpretation: that "Italy's #1 Brand of Pasta" is a claim about
9  market share or selling performance of the *brand* (the "Selling Interpretation"). (Cantor Rep. pp. 13-
10  18.) The Barilla brand has the largest share of pasta sales in Italy making the statement *literally* true.
11  (*See id.* p. 13.) Plaintiffs' survey expert only offered the Sourcing Interpretation to survey participants
12  (making the survey unreliable, as discussed below) and still only yielded 57% of consumers that
13  believed the Sourcing Interpretation. In contrast, Barilla's expert conducted a survey offering both the
14  Sourcing Interpretation and Selling Interpretation as options for the Challenged Representation.
15  (Cantor Rep. p. 14.) In that survey, 86.4% of participants believed the Selling Interpretation compared
16  to only 36.8% who believed the Sourcing Interpretation. (*Id.* at 17.) Disaggregating the results from
17  that survey indicate that approximately 58% of the respondents believe the Selling Interpretation solely
18  compared to only 8.4% of the respondents who believe the Sourcing Interpretation solely meaning
19  very few consumers are actually confused about the origin of the Products. (*Id.*)

20      **C.**    **Plaintiffs Fail to Establish that Consumers Pay a Price Premium for Barilla**
21          **Products as a Result of the Challenged Representation.**

22      Plaintiffs base their theory of economic injury on a purported "price premium paid by
23  consumers." (Dkt. 54-2 pp. 23-25.) But Plaintiffs fail to establish that the Challenged Representation
24  (and the Sourcing Interpretation specifically) is important to consumers and results in any price
25  premium paid by consumers. Numerous factors influence pasta product purchasing and Plaintiffs'
26  experts fail to consider *at all* any other possible reasons for consumer's selection of a pasta brand.
27  (Cantor Rep. p. 18.) Barilla's expert, on the other hand, conducted a survey of consumers inquiring
28  as to what factors were important in their selection of pasta brands. (*Id.* at 20.) The survey

1   respondents were required to assign weight (by points) to the factors that they considered important.

2   Quality, value, and taste were selected by a majority of respondents compared to only 12% of

3   respondents who assigned at least 1 point to the "Made in Italy" factor. (*Id.*) The minor importance

4   of the Made in Italy factor is underscored by the lack of average points assigned to it. Specifically,

5   on average respondents allocated only 2.2% of points to Made in Italy while respondents allocated

6   *more than 97% of points to other factors*. (*Id.*) Plaintiffs' failure to investigate the importance of

7   various factors included in their proposed conjoint analysis clearly biased their conjoint results

8   making their study scientifically unreliable. (*Id.* at 27.)

9        In contrast to Plaintiffs' flawed hypothetical methodology for calculating price premium,

10   Barilla's expert considered real world sales data for the Products bearing the Challenged

11   Representation compared to sales data for the *same* Products that do not contain the Challenged

12   Representation that went to market during the Class Period. (*Id.* at 32-33.) That analysis

13   demonstrates that there is no price premium associated with the Challenged Representation. (*Id.*)

14   Indeed, the price of Barilla's Blue Box Product line actually *increased* after the Challenged

15   Representation was removed from the Product packaging. (*Id.* ¶ 73.)

16        Moreover, Barilla sells its Products to retailers and distributors, who in turn, set their own

17   prices and sell the Products to end consumers and retailers. (Dkt. 52-7 at 19.) As such, retailers—

18   not Barilla—set the final retail prices consumers pay for the Products. Plaintiffs have not presented

19   any evidence of a price premium associated with Barilla's Products, much less a price premium

20   based on Barilla's labeling or packaging. This too is fatal to their Motion.

21        **D.    Named Plaintiffs' Testimony.**

22        Both Plaintiffs, who are part of numerous "false advertising class actions" and who are self-

23   appointed crusaders out to protect the consuming public from deception, testified about their claims

24   and reasoning for purchasing Barilla's Products, which vary, and are not consistent with Plaintiffs'

25   theory of liability. Contrary to their experts' study that only considered a single factor, both Plaintiffs

26   agree that many factors influence their decisions to purchase pasta, including: pasta shape (*e.g.*

27   spaghetti), price, presentation, and ingredients. (Prost Dep. Tr. 16:10-20; Sinatro Dep. Tr. 16:6-16,

28   18:7-9.) Neither Plaintiff claims to exclusively purchase Italian pasta products. (Prost Dep. Tr.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

6

71:22-24; Sinatro Dep. Tr. 43:24-44:2.) Moreover, both Plaintiffs concede that Barilla's products do not literally say "made in Italy" or "made from ingredients solely sourced from Italy." (Prost Dep. Tr. 32:14-33:4; Sinatro Dep. Tr. 37:13-15.) In addition, Plaintiff Prost concedes that the Challenged Representation is open to multiple interpretations and Plaintiff Sinatro concedes that "made in Italy" is his own "interpretation." (Prost Dep. Tr. 33:10-14; Sinatro Dep. Tr. 37:2-6.).)

### E.    Plaintiffs' Cherry-Picked Documents Regarding Barilla's Marketing.

In their Motion, Plaintiffs cherry-pick and misconstrue information on Barilla's website and two internal documents to argue that Barilla has a marketing strategy designed to take advantage of consumers' desire for authentic Italian-Made pastas. *See* Dkt. 54-2 at pp. 5-6. This is wrong. In fact, the fictional portrayal of Barilla that Plaintiffs present is cobbled together from snippets of Barilla's website and internal documents taken out of context to create a misleading impression. (Dkt. 52-4 at 6 (citing Dkt. 11, Ex. 4b and 4f.)) This strained effort to fabricate a story to support their bid for class certification demonstrates that there is no "long-standing marketing campaign" to mislead consumers. In fact, Plaintiffs offer no evidence in support of their conclusory assertion that the campaign was persuasive or even widely received by consumers as evidenced by the fact that neither Prost or Sinatro saw *any* advertisements from Barilla and never visited Barilla's website. (Prost Dep. Tr. 69:5-13, 71:25-72:1; Sinatro Dep. Tr. 44:3-9). Plaintiffs' unsupported, incomplete and lawyer-driven version of the story must not be given any credit.

For example, Plaintiffs argue that Barilla's website[3] boasts use of Italian wheat, but the website plainly states that the use of Italian wheat is in products "destined to the Italian market." (Dkt. 54-2 at p. 6; Dkt. 11-4.) Moreover, review of the prominently displayed website materials shows that Barilla specifically discloses that Barilla pasta sold in the United States "is made in our plants in Ames, IA and Avon, NY, with a few exceptions" and that Barilla's Italy product packaging states "Product of Italy." (Dkt. 11-3 at p. 15.) In addition, on the "We use only quality wheats" webpage inaccurately and incompletely described by Plaintiffs, Barilla discloses that it "work[s] with local farmers" and that "[a]ll of the durum wheat we purchase, irrespective of its origin,

---

[3] The Products cannot be purchased on Barilla's website. (Ping Decl. ¶ 4.)

1    undergoes a careful selection and strict controls carried out by the company[.]" (Dkt. 11-4 at p. 34.)

2    Therefore, no fair reading of Barilla's website would conclude that Barilla falsely represents to

3    consumers that its Products are made only in Italy and only with Italian wheat as it specifically and

4    prominently discloses that the U.S. products are primarily made in the United States and that it

5    works with local farmers to obtain its wheat. *See id.*

6          Plaintiffs also argue that data shows that "Italianity" is the third top driver when asked to

7    evaluate Barilla brand pasta as meaningful and different. (Dkt. 54-2 at p. 6-7.) However, closer

8    review of the Barilla data cited by Plaintiffs demonstrates that only 16% and 14% of consumers

9    think that Italianity is most important to making the Barilla *brand* meaningful and different

10   respectively compared to the other 84-86% of consumers that consider other factors more important.

11   (Dkt. 54-6 at p. 14.) In other words, only a small fraction of consumers consider Italianity as a

12   driving factor behind Barilla's *brand* but this says nothing about why consumers decide to *purchase*

13   Barilla pasta. *See id.* at 1 ("Barilla **Brand** Health Tracking" presentation) (emphasis added), *id.* p.

14   12 ("How are brands perceived on key drivers?") However, a review of survey data specifically

15   inquiring as to consumer preferences when *purchasing* pasta demonstrates that other factors, such

16   as price, taste, and quality are most important. (Cantor Rep. p. 5.). *Purchase* factors that Prost and

17   Sinatro agree are key. (Prost Dep. Tr. 16:10-20; Sinatro Dep. Tr. 16:6-16, 18:7-9.)

18         Beyond that, Plaintiffs emphasize the company's current and historical ties to Italy. *See, e.g.*

19   Dkt. 54-2 at p. 3 (referring to Barilla as "an Italian family-owned food company"); *id.* (referring to

20   Barilla's first pasta shop and headquarters in Italy); *id.* at p. 4 (referring to Barilla's online Historical

21   Archive and Pasta Museum located in Italy). Barilla's accurate description of its connection to Italy

22   (among other countries)[4] is in no way misleading, particularly in light of the record evidence that

23   Barilla plainly discloses on the Products, its website, and in its marketing materials, accurate country

24   of origin information. In addition, Plaintiffs admit that they never read a Barilla advertisement,

25   visited Barilla's website or were even aware of the Historical Archive or Pasta Museum and thus

26

27   ───────────────
     [4] *See, e.g.,* Dkt. 11-4 at p. 2-3 (Barilla Group website noting that it is a world leader in pasta including
28   with its "Turkish pasta brand," "leading pasta brand in Greece," "leading Mexican brands," and
     Canadian, French, and Swedish brands).

1    could not have been misled or influenced by them. (Prost Dep. Tr. 69:5-13, 71:25-72:1, 72:20-73:4;

2    Sinatro Dep. Tr. 23:8-12.)

3    **III.    LEGAL STANDARD**

4           "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf

5    of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting

6    *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). "To come within the exception, a party seeking

7    to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting

8    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). <u>Rule 23 "does not set forth a mere pleading</u>

9    <u>standard."</u> *Wal-Mart*, 564 U.S. at 350 (emphasis added). "Rather, a party must not only 'be prepared

10   to prove that there are in fact sufficiently numerous parties, common questions of law or fact,'

11   typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" and "<u>must</u>

12   <u>also satisfy through evidentiary proof</u> at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S.

13   at 33 (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis added). Plaintiffs' claims are put to a "rigorous

14   analysis." *Wal-Mart*, 564 U.S. at 351.

15          The party seeking class certification bears the burden of demonstrating by a preponderance of

16   the evidence that all four requirements of Rules 23(a) and at least one of the three requirements under

17   Rule 23(b) are met. *Id.* at 350 ("A party seeking class certification must affirmatively demonstrate his

18   compliance with the Rule—that is, he must be prepared to *prove* that there are in fact sufficiently

19   numerous parties, common questions of law or fact, etc."). Here, Plaintiffs invoke Rule 23(b)(3),

20   which requires plaintiffs to prove that "questions of law or fact common to class members predominate

21   over any questions affecting only individual members, and … a class action is superior to other

22   available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

23   Plaintiffs do not and cannot make the requisite showings.

24   **IV.    ARGUMENT**

25          **A.    The Class is Not Adequately Defined.**

26          As a preliminary matter, Plaintiffs' proposed class definition is inadequate, unworkable and

27   necessarily includes putative members who lack standing. This is no mere technical deficiency, but

28   instead a failure to prove that class certification is or can be appropriate. On the one hand, Plaintiffs

1  assert that the "'Class' is well-defined as: 'All residents of California[5] who, within four years prior to

2  the filing of this Complaint, purchased the Products, containing the Challenged Representation on the

3  Products' front packaging, for purposes other than resale.'" (Dkt. 54-2 at p. 10 (citing Dkt. 11 ¶ 31.))

4  This would suggest that the class period runs from June 11, 2018 through the filing of the complaint,

5  June 11, 2022. (Dkt. 1.) However, Plaintiffs separately assert that the "'Class Period' is defined as

6  June 11, 2018, through the present."[6] (Dkt. 54-2 at p. 2, n. 2.) This difference is important: Barilla

7  refreshed its Visual Identity on 34 of the 54 Product labels at issue starting in 2020 with those Products

8  hitting shelves in 2022 and the updated packaging did not include the Challenged Representation. *See*

9  *supra* Section II.A.2. Plaintiffs ignore this and assert that "[t]hroughout the Class Period, Defendant

10 uniformly labeled the Products with the prominent Italian Origin Representation, 'ITALY'S #1

11 BRAND OF PASTA.'" (Dkt. 54-2 at p. 2.) This is flat wrong.

12        The Northern District of California has denied class certification in at least two other food

13 branding cases when label changes during the class period made it impossible to determine by

14 "objective" means who (if anyone) was injured by exposure to purported misrepresentations. *Kosta v.*

15 *Del Monte Foods, Inc.*, 308 F.R.D. 217, 227-229 (N.D. Cal. 2015) (denying certification when "only

16 certain products within the accused product lines actually had the allegedly misleading labeling and

17 packaging"); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *11 (N.D. Cal. June 13, 2014)

18 (denying certification when product labels changed over the course of the class period opining that "it

19 is hard to image that [class members] would be able to determine which particular Hunt's products

20 they purchased…and whether those products bore the challenged label statements.")[7] There was no

---

[5] While Plaintiffs' Complaint also asserted a nationwide class, Plaintiffs abandoned that definition and now move only for certification of a California class. For this reason, Plaintiffs' asserted nationwide class should be dismissed. *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *17 (N.D. Cal. Aug. 20, 2019) (plaintiff abandoned claim that was not part of class certification motion); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 527 (S.D. Cal. 2020) (holding that the class definition stated in the motion for class certification controls over definition in complaint)

[6] This is consistent with the Class Period definition used in Plaintiffs' discovery requests. *See* Boehm Decl. **Exhibit D** at p. 8 (defining "CAL CLASS PERIOD" to "mean and refer to the period of time starting four (4) years prior to the filing of this ACTION through present (June 11, 2018 to present)."

[7] *See also Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *5 (N.D. Cal. Mar. 29, 2016) (noting that there remain "other serious class certification issues" such as "whether potential class members are readily identifiable" when defendant removed statement from labels during the class period); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 65 (S.D.N.Y. 2015) (plaintiff did not demonstrate that the class was ascertainable when only certain of the products bore the representation on the product

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

10

1   label change in the cases relied on by Plaintiffs (*see* Dkt. 54-2 at pp. 10-11) and therefore, they do not

2   support certification of Plaintiffs' proposed class in this case.[8]

3          **B.**       **Plaintiffs Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement.**

4          To obtain class certification, Plaintiffs must offer "classwide proof to show that a 'reasonable

5   consumer' would find the challenged statements deceptive and material to their purchasing decision."

6   *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015); *see also Townsend v. Monster*

7   *Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018) (denying class certification absent

8   "evidence subject to common proof that the [challenged] statement was . . . likely to deceive a

9   reasonable consumer"). Even for those putative class members who were exposed to the Challenged

10  Representation, many were not, individual questions of reliance and causation abound.

11         **1.**   **Individualized Issues Predominate Because There Is No Common**

12                  **Evidence That Barilla's Challenged Representation Has a Common or**

13                  **Uniform Meaning and Deceived Reasonable Consumers.**

14         This issue is fatal to Plaintiffs' Motion. As many courts have held, deception is not susceptible

15  to class-wide proof when consumers have differing understandings of the challenged statement. *See*

16  *Jones*, 2014 WL 2702726, at *14 (holding that "even if the challenged statements were facially

17  uniform," certification is improper when "consumers' understanding of those representations would

18  not be"); *see also Townsend*, 303 F. Supp. 3d at 1045 (denying class certification where "Plaintiffs do

19  not establish that the [Hydrates Like a Sports Drink] statement has a common meaning"); *Pierce-*

20  *Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *7 (C.D. Cal. June 23, 2016) (holding

21  that even assuming each class member may have been exposed to representation, plaintiff will not be

22  able to demonstrate with common proof "that each member had the same understanding of the product

23  _____

24  label); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 689 (S.D. Fla. 2014) (same); *In re Clorox
    Consumer Litig.*, 301 F.R.D. 436, 442 (N.D. Cal. 2014) (denying class certification when there was
    no administratively feasible method for ascertaining members of the classes).

25  [8] In addition, because Plaintiffs' claims are based entirely on the premise that putative class members
    purchased these Products and paid a premium price because the Challenged Representation caused

26  them to believe the Products were made in Italy, any putative class definition that includes members
    who purchased the Products without being exposed to, reading or being persuaded by the Challenged

27  Representation were not injured by their purchase and therefore lack standing. As such, by
    definition, the class cannot be certified. *TransUnion LLC v. Ramirez*, 141 C. Ct. 2190, 2208 (2021)

28  ("every class member must have Article III standing in order to recover individual damages.")

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

11

1    labeling").

2        Here, Plaintiffs' sole support for their claim that consumers have a common understanding of

3    the "Italy's #1 Brand of Pasta" statement is based on a flawed survey conducted by Plaintiffs' expert,

4    Dr. Dennis. (Dkt. 54-2 at p. 9.) In Dr. Dennis's only survey question on the subject, he provided a

5    single interpretation of the statement consistent with Plaintiffs' theory of the case; this is not the basis

6    of a competent study. (Dkt. 52-2 at p. 22.) Dr. Dennis could have asked survey respondents additional

7    questions to gauge their understanding of "Italy's #1 Brand of Pasta" but chose not to do so. Dr.

8    Dennis's survey is unreliable and this type of survey evidence regarding the meaning of a

9    representation has consistently been rejected. In *In re KIND LLC "Healthy & All Natural" Litig.*, the

10    court held a nearly identical survey provided by the same Dr. Dennis was inadmissible[9] and thus,

11    "plaintiffs have not proffered a theory as to how a reasonable consumer would understand the 'All

12    Natural' claim on the KIND products." 627 F. Supp. 3d at 292 ("Dr. Dennis' survey is inadmissible

13    because it is biased and leads the consumer to select the answer preferred by plaintiffs"). With respect

14    to the survey specifically, the court observed that "[a]ll plaintiffs have done here is show that

15    consumers, when provided with the definition of 'All Natural' that plaintiffs' counsel constructed for

16    this litigation, will click a check box saying that they agree to it. But this is not evidence that the 'All

17    Natural' label would deceive a 'significant portion of the general consuming public or of targeted

18    consumers, acting reasonably in the circumstances." *Id.* at 290-291 (internal citations omitted) ("Dr.

19    Dennis asks only about one potential definition of "All Natural" – the definition plaintiffs selected for

20    this case – and only allows survey participants to select from finite choices agreeing, disagreeing or

21    not having an expectation about this definition. This limited inquiry is insufficient to determine in any

22    meaningful sense how reasonable consumers understand the "All Natural" claim, or to test plaintiffs'

23    theory.") Dr. Dennis's survey in this case suffers from the same fatal flaws.

24        Moreover, the fact that Barilla's expert's survey tested an alternative meaning that was

25

26       [9] Barilla reserves the right to further challenge the admissibility of Dr. Dennis's opinions and his
27    qualifications as a survey expert. *See, e.g., McMorrow v. Mondelez International, Inc.*, 2020 WL
       1157191 (S.D. Cal. 2020) (granting motion to exclude testimony of Dr. Michael Dennis and Colin
28    Weir); *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 292 (S.D.N.Y. 2022)
       (granting motion to disqualify opinion of Dr. Dennis).

incompatible and inconsistent with the Sourcing Interpretation that Plaintiffs purport to associate with the Challenged Representation and yielded far more respondents adopting the alternative meaning (that the brand is the largest selling pasta in Italy) is dispositive. Specifically, more than 80% of survey participants in Barilla's expert's study responded that the Challenged Representation meant that Barilla is the largest selling pasta brand in Italy compared to the 57% of survey participants who selected Plaintiffs' definition. (Cantor Rep. p. 17.)[10] This underscores that there is no commonly understood definition of "Italy's #1 Brand of Pasta" among reasonable consumers, or even among plaintiffs. Indeed, Plaintiff Prost agreed that the Challenged Representation is subject to multiple interpretations. (Prost Dep. Tr. 33:5-14.) Plaintiff Sinatro conceded that his varying interpretations of the Challenged Representation were just that: his "perception" or "how [he] took" it. (Sinatro Dep. Tr. 37:16-20; 46:2-9.) The evidence highlights that the meaning of the Challenged Representation is not subject to class-wide proof. *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) (denying class certification when there was dispute as to the meaning of the representation – "It is enough to say that Plaintiffs have offered no evidence that any one definition of energy prevails among all consumers."). The need for an individualized inquiry into consumers' understanding of the Challenged Representation precludes a finding a predominance. *See id.* Accordingly, the class cannot be certified.[11]

---

[10] Disaggregating the results from that survey indicate that approximately 58% of the respondents believe the Selling Interpretation (the brand is the largest selling pasta in Italy) solely compared to only 8.4% of the respondents who believe the Sourcing Interpretation (the product's ingredients are sourced from Italy) solely. (*Id.* at 17.)

[11] Moreover, this evidence underscores the conclusion that, at worst, the Challenged Statement is ambiguous and as such a reasonable consumer would consult the rest of the packaging to clarify that ambiguity; doing so here would indisputably clarify any such ambiguity as the side of the packaging clearly states where the product is made. Even at the pleading stage, this is dispositive. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) (holding that unless a product's front label is "*unambiguously* deceptive," the court "*must* consider what additional information other than the front label was available to consumers of the [] products" in deciding whether a reasonable consumer would be misled by the product packaging and dismissing complaint based "Nature Fusion" statement because no reasonable consumer would think the product was completely or substantially natural in light of the back labels' disclosure of synthetic ingredients); *Steinberg v. Icelandic Provisions, Inc.*, 2023 WL 3918257, at *1 (9th Cir. June 9, 2023) (holding that the "complaint fails to allege that the product's front label would deceive a reasonable consumer to believe that the product is manufactured in Iceland, because the front label's 'ambiguity is

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

13

1

2

**2.   Plaintiffs Have No Common Evidence That the Challenged Representation Was Material to Reasonable Consumers.**

3

4

5

6

7

8

9

10

11

For CLRA, FAL, and UCL claims, "[a] misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Townsend*, 303 F. Supp. 3d at 1043 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332, (2011)). "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) (citing *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 103 Cal.Rptr.3d 83, 95 (2009)). Plaintiffs fail to carry their burden of demonstrating that the Challenged Representation justifies a presumption of reliance,[12] which is fatal to their claims under Rule 23(b)(3).

12

13

14

15

16

17

18

19

20

21

22

First, Plaintiffs argue that materiality can be inferred through Barilla's purported "massive marketing campaign for the purpose of convincing consumers that Barilla Products are of Italian origin." (Dkt. 54-2 p. 20.) However, as noted *supra* Section II.E, the very same documents identified by Plaintiffs (1) were not ever seen by Prost or Sinatro and (2) *specifically and prominently disclose that with few exceptions, its products sold in the United States are manufactured in the United States*. (Dkt. 11-3 p. 15.) Moreover, in that "marketing campaign," Barilla states that it works with "local farmers" in "all of the geographies in which [it] produce[s] pasta" and that use of Italian wheats is only for the "pasta formats destined to the Italian market[.]" (Dkt. 11-4 p. 34.) Only purposeful reading and feigned ignorance would miss these disclosures. Based on their false and willfully blind reading, Plaintiffs assert the unsupported conclusion that "[h]ad the Products' origin been immaterial to consumers, Defendant would not have invested in this decades-long marketing

23

24

25

26

27

resolved by reference to the back label,' which accurately states that the product is manufactured in New York."); *Robles v. GOJO Indus., Inc.*, 2023 WL 4946601, at *1 (9th Cir. Aug. 3, 2023) (affirming dismissal of complaint, holding that, as a matter of law, a reasonable consumer would not be misled to believe that the hand sanitizer kills 99.99% of all germs or all known germs because the front label claim is followed by an asterisk directing consumers to the back label that in turn clarifies that the product "Kills 99.99% of most common germs that may cause illness.")

28

[12] Plaintiffs agree that reliance can only be presumed if the purported misrepresentations were material. *See* Dkt. 54-2 p. 19.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

14

1   campaign." (Dkt. 54-2 p. 20.) To the extent there was an investment (something Plaintiffs fail to

2   identify evidence of), it was in a campaign to accurately disclose that most products sold in the

3   United States were made in the United States. This falls far short of demonstrating that the

4   Challenged Representation (Italy's #1 Brand of Pasta), and Plaintiffs' proposed interpretation of it

5   (the product is made in Italy and its ingredients are sourced from Italy), was material to consumers

6   such that reliance can be presumed.[13] In fact, Barilla's change to its Visual Identity suggests that the

7   Challenged Representation was *not* material to consumers' purchasing decisions as the price of

8   Barilla's Products remained consistent (or increased) even though the Challenged Representation

9   was not on the updated Visual Identity. *See* Cantor Rep. pp. 6, 32-33.

10       In addition, the "evidence put forth falls far short of demonstrating the 'extensive' and

11   'longstanding' marketing campaigns needed to justify class certification." *Todd v. Tempur-Sealy*

12   *International, Inc.*, 2016 WL 5746364, at *8 (N.D. Cal. 2016). Here, Plaintiffs argue that materiality

13   can be inferred based on Barilla's widespread marketing campaign. (Dkt. 52-4 at p. 20.) This fails

14   for two primary reasons. First, Plaintiffs fail to identify any legal authority holding that *materiality*

15   can be inferred through a widespread marketing campaign.[14] And second, even if the law supported

16   Plaintiffs' theory (it does not), Plaintiffs fail to offer any evidence in support of their conclusory

17   assertions that Barilla's campaign was "pervasive and widespread." In fact, the named Plaintiffs in

18   this case testified that they have never seen a Barilla advertisement, never visited Barilla's website,

19   and have never heard of Barilla's Pasta Museum or Academia Barilla. (Prost Dep. Tr. 69:5-13,

20   71:25-72:1, 72:20-73:4; Sinatro Dep. Tr. 23:8-12.)

21       Plaintiffs also claim that because courts have found false statement of origin to be material,

22

23   [13] By Plaintiffs' rationale, any reference to a product's or brand's origin could be deemed deceptive
as all marketing requires "investment." But that is not the law. *See Steinberg v. Icelandic Provisions,*
*Inc.,* 2022 WL 220641, at *6 (N.D. Cal. Jan. 25, 2022) (Icelandic Provision product label would not
24   mislead a reasonable consumer to believe the product is made in Iceland); *Hardy v. Ole Mexican*
*Foods, Inc.*, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) (no reasonable consumer would
25   construe product branding such as graphics resembling Mexico flag, Spanish words, and the phrase
"A Taste of Mexico" to be an affirmative representation that the products were manufactured in
26   Mexico); *La Barbera v. Ole Mexican Foods Inc*., 2023 WL 4162348, at *12 (C.D. Cal. May 18,
2023) (same).
27   [14] Barilla recognizes that there is case law allowing an inference of *exposure* to a representation
based on widespread marketing, but not that *materiality* of a representation (and in turn reliance)
28   can be inferred based on widespread marketing. This is a bridge too far.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

15

1    that supports a presumption of materiality here. (Dkt. 54-2 p. 21.) Plaintiffs misstate the law. The

2    cases Plaintiffs cite concern *explicit* statements of origin on the product packaging, not the

3    (unreasonable) inference Plaintiffs make from elements on the front of the packages at issue here.

4    *See Kumar v. Salov*, 2016 WL 3844334, at *24-25 (N.D. Cal. 2016) ("Imported from Italy"); *see*

5    *also Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 332 (2011) ("Made in the U.S.A.").

6           Next, Plaintiffs argue that Barilla's "consumer survey demonstrates that the Italianity of the

7    Products is one of the top three sales drivers." (Dkt. 54-2 p. 20.) But Barilla's survey says nothing

8    about "sales drivers" and instead relates to the "Brand Health" as the document plainly states. (Dkt.

9    54-6 p. 1.) In the context of the *brand* being "meaningful" and "different," only 16% and 14% of

10   participants in the online interview considered "Italianity" as a top driver, while other attributes

11   (such as "Premiumness," "Innovation," "Value," "Trusted Choice," "Advertising," and

12   "Closeness") were considered top drivers for brand health by the remaining 84% and 86% of

13   participants. (*Id.* at p. 14.) Therefore, at most, this survey demonstrates that a small subset of

14   consumers consider Italianity as making the *brand* meaningful or different, but says <u>nothing</u> about

15   whether the *Challenged Representation* was material to consumers' *purchasing* decision as required

16   for Plaintiffs' claims. *See, e.g., Townsend*, 303 F. Supp. 3d at 1024 ("To be relevant to this action,

17   the words [the survey] is evaluating must in fact be the words on Defendants' labels.").

18          Plaintiffs next assert that "consumers attach real monetary value to country of origin claims

19   generally (more than 50% of its price), but also that they favor pastas from Italy specifically—and

20   are willing to pay more for them." (Dkt. 54-2 at 20 (citing Weir Decl. ¶¶ 12-22.)) Again, Plaintiffs

21   have it wrong. The 50% reference is to a survey of Colorado consumers regarding preference for

22   "U.S. Certified Beef." (Dkt. 52-3, Weir Decl. ¶ 14.) This survey has no bearing on the materiality

23   of the Challenged Representation in this case both because there is no showing that consumers view

24   all food product origins the same way (let alone beef and pasta) but also because it says nothing of

25   why consumers actually buy food products (let alone pasta products). The only study cited by

26   Plaintiffs relating to United States' consumers' preference for Italian products is referred to in

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

16

1    paragraph 16 of the Weir report. (*Id.* ¶ 16.[15]) This study, however, does not demonstrate the

2    materiality of the Challenged Representation (if any). At best, it merely indicates that some

3    consumers prefer Italian pasta and olive oil. That is it. The survey says *nothing* about whether the

4    Challenged Representation on the Barilla Product packaging was material to the reasonable

5    consumer. **Indeed, Plaintiffs submit absolutely *no* evidence evaluating the materiality of the**

6    **Challenged Representation specifically.** "Absent a consumer survey or other market research to

7    indicate how consumers reacted to the [challenged] statements, and how they valued these

8    statements compared to other attributes of the product and the [relevant] market generally, Plaintiffs

9    have not offered sufficient evidence of materiality across the class." *In re 5-Hour Energy Mktg. &*

10    *Sales Pracs. Litig.*, 2017 WL 2559615, at *8 (internal citation omitted). This failure is fatal.

11        By contrast, Barilla's experts conducted a broad survey to determine what factors consumers

12    consider important in purchasing pasta and evaluated real world market data following the change

13    to the Visual Identity where the Challenged Representation was no longer on the Products. The

14    results of the survey demonstrated that even if consumers adopted Plaintiffs' proposed interpretation

15    of the Challenged Representation, it would not be material in their purchasing decision. Indeed, on

16    average, respondents allocated only 2.2% of points to Made in Italy while respondents allocated

17    *more than 97% of points to other factors*, such as price and quality. (Cantor Rep. at 20.) Moreover,

18    analysis of real world sales data demonstrates that the Challenged Representation is not material

19    because there was no change in demand for the Products when the Challenged Representation was

20    no longer part of the Visual Identity and in fact, the price of the Products actually increased after

21    the Visual Identity change. (*Id.* at 32-33.) In sum, Plaintiffs have not come close to meeting their

22    burden of adducing class-wide evidence showing that the Challenged Representation was material

23    to purchase intent. That failure, plus Barilla's own showing that the "varying factors that influence

24    purchasing decision[s]," illustrates that materiality is not subject to common proof here. *Algarin v.*

25    *Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014). Therefore, Plaintiffs' Motion fails. *Id.*;

26

27    _____

[15] While this paragraph references three studies, review of the materials cited demonstrates that one of the studies is of Chinese consumers and a second is of European Union Consumers, *see* Boehm

28    Decl. Ex. C. This has no bearing on the instant analysis regarding California consumers.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

17

1    *Pierce-Nunes*, 2016 WL 5920345, at *8 (plaintiffs failed to demonstrate that representation was

2    material to purchasing decision and susceptible of classwide proof in light of defendants' evidence

3    that consumers purchase the products based on a variety of factors).

4              **3. Common Factual Issues Do Not Predominate And The Class Is**

5              **Inappropriately Defined.**

6              As discussed *supra* Section IV.A, Plaintiffs' Class Period is defined to continue through the

7    present. This class definition includes consumers that were not exposed to the Challenged

8    Representation at all and thus could not have been misled or injured by it and thus lack standing.

9    *See Lara v. First Nat. Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (declining to certify class

10   when proof of injuries "will be individualized" observing that "if there's no injury, then the...unfair

11   trade practices claims must fail.") *In re NJOY, Inc. Consumer Class Action Litig*., 120 F. Supp. 3d

12   1050, 1093-94 (C.D. Cal. 2015) (declining to certify class that would include claims arising before

13   the allegedly misleading advertisements ran). Moreover, Plaintiffs' proposed class cannot be

14   certified because there is no "uniform labeling statement" during the proposed class period. (Ping

15   Decl. ¶¶ 5-8; *see also* Dkt. 52-7 pp.12-16.) Accordingly, individualized inquiries to determine

16   whether class members were exposed to the "Italy's #1 Brand of Pasta" label statement would be

17   required because not all Products in the purported Class Period contained the Challenged

18   Representation. For example, Spaghetti, the highest selling Product at-issue (*see* Dkt. 54-8, 54-9),

19   had the "Italy's #1 Brand of Pasta" label statement on it until July 15, 2022 when the new Visual

20   Identity was released to printers for use in making the product packaging. (Dkt. 52-7 p. 15.) Because

21   the Product labels changed, certifying a class for the Class Period that includes more than a year of

22   continued sales of the Products with the updated Visual Identity, across all such Products, would be

23   improper as it would require individual inquiries to determine whether class members were exposed

24   to the Challenged Representation. *See Jones,* 2014 WL 2702726, at *16-17 (denying certification

25   observing that "individual questions threaten to predominate" because "individualized purchasing

26   inquiries will be required to determine…which kind of PAM products they bought, when they

27   bought them, and what label they bore"); *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.,*

28   2019 WL 2521958, at *10 (D.N.J. June 18, 2019) (variations in product labels defeat predominance

1   because an individualized inquiry is required to determine what combinations of the labels were

2   visible to consumers); *Goldemberg v. Johnson & Johnson Consumer Cos*., 317 F.R.D. 374, 389

3   (S.D.N.Y. 2016) (individualized proof would be required for products that had label change

4   requiring exclusion of those products from the class definition)[16]

5          Indeed, extending the class through the time period sought by Plaintiffs would also require

6   consumers to remember—years after the fact—micro-details about which Barilla Product was

7   purchased and when. Courts routinely reject that proposition.[17] *Jones*, 2014 WL 2702726, at *10,

8   *16 (declining to certify a class where there were "literally dozens of varieties with different can

9   sizes, ingredients, and labeling over time and some Hunt's cans included the challenged language,

10  while others included no such language at all," making self-identification unfeasible).

11         **C.     Plaintiffs' Express Breach of Warranty and Unjust Enrichment Claims Require**

12                 **Individualized Inquiries.**

13         Plaintiffs' express breach of warranty and unjust enrichment claims fail for the same reasons

14  as their consumer protection claims: there is no common or uniform meaning ascribed to the

15  Challenged Representation and Plaintiffs fail to demonstrate that the Challenged Representation is

16  material. *See supra* Section IV.B; *Astiana v. Kashi Co.,* 291 F.R.D. 493, 508-509 (S.D. Cal. 2013)

17  (denying class certification of breach of warranty and unjust enrichment claims because plaintiffs

18  "fail[ed] to sufficiently show that 'All Natural has any kind of uniform definition among class

19  members, [or] that a sufficient portion of class members would have relied to their detriment on the

20  representation.''); *see also Todd,* 2016 WL 5746364, at *12 (denying certification of unjust enrichment

21  claims based on the same conduct as consumer protection claims because common issues do not

22

23  [16] *See also Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009) (holding
    that individual issues predominated because there was no uniform business practice giving rise to
    plaintiff's UCL claim); *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1068-69 (9th Cir. 2014),

24  *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) (denying class
    certification where not all of the members of the plaintiff's proposed class were "exposed to the

25  same misrepresentations or deceptions").

26  [17] For good reason. The Plaintiffs here have extremely limited memories regarding their pasta
    purchases. For example, Plaintiff Sinatro cannot recall the type of pasta he purchased from Barilla
    (or the price, which other brands were available or even the city he was in when he made the

27  purchase) and has no recollection whatsoever about any pasta purchase that he has made in the last
    five years other than the single Barilla pasta purchase alleged in the FAC. (Sinatro Dep. Tr. 10:7-

28  18, 13:6-15:17; Prost Dep. Tr. 16:4-9, 55:8-11, 61:3-62:5.)

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

19

1   predominate); *Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887, at \*13 (E.D. Cal. Sept. 14, 2009)

2   (holding that common issues predominated for unjust enrichment claim for the same reasons discussed

3   with respect to plaintiffs' CLRA and UCL claims).

4           **D.      Plaintiffs' Proposed Damages Model Does Not Satisfy *Comcast*.**

5           In *Comcast*, the Supreme Court explained that to satisfy the Rule 23(b)(3) predominance

6   requirement, damages must be "capable of measurement on a classwide basis." 133 S. Ct. at 1433.

7   The *Comcast* standard is distinct from the standard for admissibility under Rule 702 and *Daubert v.*

8   *Merrell Dow Pharmacueticals, Inc.*, 509 U.S. 579 (1992). While "shaky but admissible evidence" may

9   be acceptable under *Daubert* (*id.* at 596), Rule 23 requires a "rigorous analysis" of a plaintiff's

10  proposed damages model. *Comcast*, 569 U.S. at 35. Moreover, a plaintiff's proposed damages model

11  in class actions must "be consistent with its liability case" and "measure only those damages

12  attributable to that theory." *Id.* (internal quotations omitted). When a plaintiff alleges that he paid a

13  price premium associated with a specific representation, s/he must offer a damages model that isolates

14  the price premium associated with the challenged representation and theory of liability. *Vizcarra v.*

15  *Unilever United States, Inc.*, 339 F.R.D. 530, 554 (N.D. Cal. 2021) (holding that Dennis's failure to

16  isolate price premium associated with the challenged representation "alone warrants denying

17  certification of the proposed Rule 23(b)(3) class on the basis that the proposed method for calculating

18  damages does not fit [plaintiff's] theory of liability and therefore is inconsistent with *Comcast*.")

19  Although the need to perform individual damages calculations alone will not necessarily preclude

20  class certification, *see Vaquero v. Ashley Furn. Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016),

21  Plaintiffs must still be able to prove on a classwide basis that they have in fact been harmed as a result

22  of the defendant's conduct. *See Doyle v. Chrysler Grp., LLC.*, 663 Fed. App'x 576, 579 (9th Cir.

23  2016). Plaintiffs' proposed damages model fails to meet any of these requirements.

24          Here, Plaintiffs propose to measure the "price premium" attributable to the Challenged

25  Representation using a conjoint analysis proposed by their "expert" witnesses Dennis and Weir. But

26  Plaintiffs' application of conjoint analysis here is fatally defective. *See* Cantor Rep. at pp. 4-5, 24-30.

27  First, Plaintiffs' damages methodology fails to isolate price premium associated with the purportedly

28  misleading statement. *See id.* "Courts routinely reject price premium methodologies under *Comcast*

1     when the proposed methodologies do not attempt to isolate the premium due only to the allegedly

2     misleading marketing statement." *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at \*11 (S.D.N.Y.

3     Mar. 19, 2019) (collecting cases); *Jones*, 2014 WL 2702726, \*19-20 (rejecting damages model that

4     "assume[d] that the entire price difference between" the challenged product and the benchmark was

5     "attributable to the alleged misstatements"); *Doyle,* 663 F. App'x at 579 (reversing certification where

6     plaintiff's model did not measure damages "solely attributable to the theory of liability"); *Algarin*, 300

7     F.R.D. at 460 (price differences could result from "higher quality of ingredients…selection of

8     [flavors]…, or …costs expended in the research and development of the products"); *Werdebaugh v.*

9     *Blue Diamond Growers*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) (damages model "ran afoul of

10    *Comcast*" because it did not account for premium purchasers pay at certain retailers); *In re POM*

11    *Wonderful LLC,* 2014 WL 1225184, at \*4 (C.D. Cal. March 25, 2014) ("[W]here, as here, consumers

12    buy a product for myriad reasons, damages resulting from the alleged misrepresentations will not

13    possibly be uniform or amendable to class proof.")

14         *In re ConAgra Foods, Inc.* is particularly instructive because it recognized a similar defect in

15    Colin Weir's nearly identical model. 302 F.R.D. 537 (C.D. Cal. 2014). In that case, plaintiffs

16    challenged defendant's advertisement of oils as "natural" but the term had "many implications" not

17    all of which were alleged to be false. *Id.* at 547, 578. Citing *Comcast*, the court found that "Weir must

18    be able to isolate the price premium with *misleading* customers." *Id.* at 579 (emphasis added). Because

19    Weir "intend[ed]…to calculate the price premium attributable to use of the term '100% Natural' and

20    all of the meanings consumers ascribe to it" –deceptive or not—his model did "not suffice under

21    *Comcast*." *Id.*[18] Here too, the proposed conjoint model fails to consider the fact that 80% of consumers

22    interpret the Challenged Representation accurately to mean that the Barilla brand is the largest selling

23    pasta brand in Italy. Plaintiffs' experts proffer no methodology to distinguish between the varying

---

[18] Weir made the same error in *Fagan v. Neutrogena Corp.*, 2017 WL 11418358, at \*3 (C.D. Cal. Oct. 24, 2017) (Weir's methodology failed to satisfy *Comcast* because it only measured premium associated with the label claim and was "incapable of distinguishing between the value of [several possible] interpretations" including premium attributable to the "literally truthful message conveyed by the claims."); *see also Hughes v. The Ester C Co.*, 317 F.R.D. 333, 355-56 (E.D.N.Y. 2016) (rejecting Weir's damages methodology as "meaningless" because consumers will interpret representation differently based on surrounding context and it did not measure damages "based on each class members' precise definition" of the representation).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case. No. 4:22-cv-03460-DMR

21

interpretations or to isolate respondents who are willing to pay for the Challenged Representation but only believe the Sourcing Interpretation that provides the basis for Plaintiffs' claims. (Cantor Rep. p. 26.) This is fatal. To the extent there are consumers who ascribe value to the Challenged Representation based on the more common and accurate interpretation (the Selling Interpretation), the model proposed by Weir would improperly include them as part of his price premium calculation even though that interpretation has no connection to Plaintiffs' theory of liability.

Moreover, Plaintiffs' proposed conjoint model is not economically valid or an acceptable damages methodology because it fails to consider supply factors influencing the pricing in the markets for the Products. (*Id.* at 4, 28-30.) A price premium is equal to the "difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *13 (N.D. Cal. Jan. 7, 2014). Thus, to satisfy *Comcast* and "measure only" the price premium resulting from Barilla's use of the Challenged Representation (569 U.S. at 35), Plaintiffs must propose a damages model that isolates the difference between (a) what consumers *actually* paid for the allegedly misleading products during the class period (*i.e.,* the market price in the factual world), and (b) what consumers *would have paid* for Barilla's Products had there not been a misleading representation[19] (*i.e.,* the market price in the counterfactual world). In other words, Plaintiffs' conjoint analysis must be able to calculate the market price (also known as the "equilibrium price") that the Barilla Products would have commanded in a hypothetical world where those Products bore a label that does not mislead consumers.

Here, Plaintiffs' proposed conjoint analysis is flawed because they ignore the intersection of supply and demand in their analysis of price premium. (Cantor Rep. p. 5.) Basic economic principles dictate that "the ultimate price of a product is a combination of market demand and supply." *Apple, Inc. v. Samsung Elecs. Co.* 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014). Because Plaintiffs' experts improperly ignore the intersection of demand and supply in their analysis of the price premium,

---

[19] Plaintiffs' proposed conjoint survey simply removes the Challenged Representation from the choices offered to respondents entirely, which does not isolate the impact of those misled by the Challenged Representation as opposed to those that believe the Selling Interpretation. (Cantor Rep. p. 28.)

1    they propose no methodology to investigate the marginal consumers purchasing the Products. (Cantor

2    Rep. p. 5.) This is important: the marginal consumer is reflected at the intersection of supply and

3    demand and in turn sets the price of the product in the marketplace. (*Id.*) Mr. Weir recognizes that the

4    Products are sold under highly competitive conditions. (*Id.*) Under such conditions, the marginal

5    consumers would have the lowest valuation of the Products' attributes, are generally price sensitive,

6    and might purchase only on the basis of the price as these consumers view other products as near-

7    perfect substitutes. (*Id.*) Under these circumstances, the price premium for the Challenged

8    Representation would be essentially zero. (*Id.*) Mr. Weir failed to address the marginal consumers and

9    accordingly, has not ruled out that there is no market price premium for the Challenged Representation

10   and no financial loss to consumers purchasing the Products. (*Id.* at 29.) And, again, because retailers

11   set the price for the Products, not Barilla, and those prices fluctuate for many reasons outside of

12   Barilla's control, Weir's failure to consider this group is fatal to his opinion and Plaintiffs' Motion.

13        Moreover, the proposed conjoint methodology is not reliable with respect to demand changes

14   because of the large number of permutations of Product options (*e.g.,* shapes, ingredients, recipe uses,

15   or other features that might be important to consumers at the point of sale) and their implications on

16   the proposed conjoint survey. (*Id.* at 5, 28-30.) Due to the large number of Product options, survey

17   results from individual respondents are typically not reliable for demand changes. (*Id.*) As a result, the

18   proposed conjoint software estimates an average shift in demand, but Plaintiffs' experts have proposed

19   no methodology to test whether or not the model of damages change embedded in the conjoint

20   approach is reliable for the economic conditions of the Products' markets. (*Id.*) Overall, Plaintiffs' fail

21   to offer any evidence of price premium and their proposed methodology for calculating price premium

22   suffers from fatal deficiencies. Plaintiffs' failure to offer a suitable methodology for proving damages

23   on a classwide basis requires denial of Plaintiffs' Motion.

24        In fact, *Plaintiffs fail to offer any evidence of price premium by analysis of actual sales data.*

25   Instead, Plaintiffs' experts *hypothesize* that prices for the Products would be lower if the Products'

26   labels did not contain the Challenged Representation and thus offer *no* evidence of common impact.

27   However, contrary to Plaintiffs' proposed theory of damages, *real world sales information*

28   *demonstrate that there is no price premium associated with the Challenged Representation*. The new

1   Visual Identity Products (that did not include the Challenged Representation) hit the market in October

2   2022, but there has been no decrease in price associated with those Products. (Cantor Rep. pp. 6, 31.)

3   In fact, in many instances and for a variety of reasons, the price of those Products has increased. (*Id.*

4   at 32-33.) Even if Plaintiffs proposed a suitable methodology for calculating price premium damages,

5   real world sales data already demonstrates that there is no price premium associated with the

6   Challenged Representation and Plaintiffs' Motion should be denied accordingly.

7   **E.    A Class Action Is Not a Superior Method of Adjudication.**

8   Rule 23(b)(3) requires the Court to find that class litigation is superior to other methods of

9   adjudication. In doing so, courts must consider "the likely difficulties in managing a class action."

10   Fed. R. Civ. P. 23(b)(3)(D). The Ninth Circuit has made clear that courts should consider

11   "ascertainability" issues under Rule 23's superiority requirement. *Briseno v. ConAgra Foods, Inc*.,

12   844 F.3d 1121, 1127-28 (9th Cir. 2017). Class litigation is not superior here because of the practical

13   difficulty of identifying class members and distributing damages. *See supra* Sections I.V.A, E.

14   **F.    Plaintiffs Fail to Meet Rule 23(a)'s Typicality and Adequacy Requirement.**

15   Plaintiffs must show that their claims or defenses are "typical of the claims and defenses of

16   the class." Fed. R. Civ. 23(a)(3). The test for typicality "is whether other members have the same or

17   similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

18   and whether other class members have been injured by the same course of conduct." *Ellis v. Costco*

19   *Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). This requirement merges with the adequacy

20   requirement of Rule 23(a) and a failure to meet it requires denial of the motion.

21   Plaintiffs' claims are atypical because they both assert that they read and relied on the

22   Challenged Representation in purchasing Barilla products, but failed to review the other information

23   contained on the Products stating that the Products were made in the U.S. In its defense, Barilla will

24   argue, among other things, that many putative class members (i) did not notice or read the

25   Challenged Representation, and/or (ii) reviewed the portion of the Products' packaging plainly

26   disclosing that the Products' country-of-origin. Plaintiffs are not in the same position as absent class

27   members who may not have noticed the Challenged Representation or reviewed the country-of-

28   origin information and thus were not mislead by the Challenged Representation. *See, e.g., Minkler*

1  *v. Kramer Lab'ys, Inc.,* 2013 WL 3185552, at *4 (C.D. Cal. Mar. 1, 2013) (finding plaintiff was not

2  typical, in part, because "Plaintiff admits in making his purchase decision he ignored every aspect

3  of the [product] packaging except for the images that he claims are deceptive.").

4     Moreover, Plaintiffs Prost and Sinatro are not typical consumers, but instead frequent filer

5  class action plaintiffs that have filed numerous deceptive labeling cases,[20] wholly and purposefully

6  ignoring clarifying information contained on various consumer products. *See, e.g., Prost v.*

7  *Herbivore Botanicals, LLC*, Case No. 21STCV44276 (Los Angeles Super. Ct.); *Sinatro v. Dr.*

8  *Harold Katz, LLC,* Case No. 21-cv8533 (N.D. Cal.); *Sinatro and Prost v. Mrs. Gooch's Natural*

9  *Food Markets, Inc. et al,* Case No. 22cv3603 (N.D. Cal.); *Sinatro v. Welch Foods, Inc.*, Case No.

10  22cv7028 (N.D. Cal.). This type of individual "is not a typical consumer but is a self-appointed

11  inspector general roving the aisles of our super markets." *Guttmann v. Nissin Foods (U.S.A.) Co.,*

12  *Inc.*, 2015 WL 4881073, at *3 (N.D. Cal. Aug. 14, 2015) (dismissing class action complaint).

13  Plaintiffs' apparent and purposeful refusal to inspect the products that they purchase despite their

14  concerns (or here, purported preference for Italian pasta) is fatal to their claims. *Id.*

15     Similarly, Plaintiffs' strained interpretation of the Challenged Representation makes them

16  atypical. Plaintiffs represent only the 8.4% of survey respondents that solely believe the Sourcing

17  Interpretation of the Challenged Representation. (Cantor Rep. p. 17.)

18  **V.     CONCLUSION**

19     This Court should deny Plaintiffs' motion for class certification.

20

21  DATED: November 30, 2023          /s/ Kelsey C. Boehm
                                      **FOLEY & LARDNER LLP**
22                                    Erik K. Swanholt, Esq.
                                      Kelsey C. Boehm, Esq.
23                                    Laura Moedano, Esq.
                                      *Attorneys for Defendant*

24

25  [20] Plaintiff Prost's relationship with Clarkson Law Firm also makes her an inadequate representative.
A personal relationship between the named Plaintiff and class counsel "warrants scrutiny because
26  [it] poses 'the danger of champerty,' especially when the attorney's fees 'will vastly exceed what
any of the class members will receive.'" *Bohn v. Pharmavite, LLC*, 2013 WL 4517895, at *3 (C.D.
27  Cal. Aug. 7, 2013). Plaintiff Prost is the named Plaintiff on numerous class action complaints filed
by Clarkson Law Firm and testified that she knows someone that works at Clarkson Law Firm and
28  contacted Clarkson about this case as a result of that relationship. (Prost Dep. Tr. 79:3-18).