**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>Defendant. | Case No. 4:22-cv-03460-DMR<br>Action Filed: June 11, 2022<br>FAC Filed: July 20, 2022<br><br>*Assigned to Hon. Donna M. Ryu*<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**<br><br><u>Hearing Information:</u><br>Date:          March 14, 2024<br>Time:         1:00 p.m.<br>Courtroom:  4 (videoconference only)<br><br>MTE Cantor Hrg:     3/14/2024 |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I.   ARGUMENT ...................................................................................................... 1

   A.   The Class is Adequately Defined ............................................................. 1

   B.   Plaintiffs Have Satisfied the Predominance Requirement ........................ 3

      1.   Reasonable Consumer Perception .................................................. 4

      2.   Materiality ..................................................................................... 8

      3.   Plaintiffs' Damages Model ........................................................... 12

   C.   Plaintiffs Have Satisfied the Typicality Requirement ............................. 15

II.   CONCLUSION ................................................................................................ 16

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page No.**

*Algarin v. Maybelline, Ltd. Liab. Co.*,
   300 F.R.D. 444 (S.D. Cal. 2014) ...........................................................................12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................4

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...............................................................................................5, 8

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846-LHK
   2014 WL 976898, 2014 U.S. Dist. LEXIS 29721 (N.D. Cal. Mar. 6, 2014)..............15

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................12

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10-4387 PJH
   2014 WL 60097, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ...................12

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021)............................................................................11

*Banks v. R.C. Bigelow, Inc.*,
   No. 20-cv-06208 DDP (RAOx),
   2023 WL 4932894, 2023 U.S. Dist. LEXIS 135167 (C.D. Cal. July 31, 2023)...........6

*Benson v. Newell Brands, Inc.*,
   No. 19 C 6836,
   2021 WL 5321510, 2021 U.S. Dist. LEXIS 220986 (N.D. Ill. Nov. 16, 2021) ............6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017). ............................................................................1, 3

*Briseno v. ConAgra Foods, Inc.*,
   674 F. App'x 654 (9th Cir. 2017) .............................................................................3

*Broomfield v. Craft Brew All., Inc.*,
   No. 17-cv-01027-BLF,
   2018 WL 4952519, 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ..........6

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ............................................................................16

*Brown v. Hain Celestial Grp., Inc.*,
   No. C 11-03082 LB,
   2014 WL 6483216, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014) ..........3

*Castro v. Paragon Indus., Inc.*,
   No. 1:19-cv-00755-DAD-SKO
   2020 WL 1984240, 2020 U.S. Dist. LEXIS 73765 (E.D. Cal. Apr. 27, 2020) .............3

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) ...................................................................................9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..................................................................................................12

*Davidson v. Apple, Inc.*,
    No. 16-CV-04942-LHK
    2018 WL 2325426, 2018 U.S. Dist. LEXIS 137707 (N.D. Cal. May 8, 2018). ......................14

*Doyle v. Chrysler Grp., LLC*,
    663 F. App'x 576 (9th Cir. 2016) ..........................................................................12

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ..................................................................................................4

*Fagan v. Neutrogena Corp.*,
    5:13-cv-01316-SVW-OP
    2017 WL 11418358, 2017 U.S. Dist. LEXIS 223437 (C.D. Cal. Oct. 24, 2017) ....................12

*Famular v. Whirlpool Corp.*,
    16 CV 944 (VB)
    2019 WL 1254882, 2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 19, 2019) ......................12

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) .................................................................5, 6, 7, 10, 14

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983-GHK (MRWx),
    2014 WL 1410264, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ..........................2

*Gunaratna v. Dennis Gross Cosmetology, LLC*,
    No. CV 20-2311-MWF (GJSx),
    2023 WL 2628620, 2023 U.S. Dist. LEXIS 44771 (C.D. Cal. Mar. 15, 2023) ......................13

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
    No. C 15-00567 WHA,
    2015 WL 4881073, 2015 U.S. Dist. LEXIS 108217 (N.D. Cal. Aug. 14, 2015) ....................16

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......................................................4, 9, 12, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................................4

*Harris v. Palm Springs Alpine Ests., Inc.*,
    329 F.2d 909 (9th Cir. 1964) ..................................................................................4

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ..................................................................................8

*Holloway v. Full Spectrum Lending*,
    2007 WL 7698843, 2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) ......................16

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Hughes v. The Ester C Co.*,
    317 F.R.D. 333 (E.D.N.Y. 2016) ........................................................................13

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) .......................................................................13

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................5

*In re Dial Complete Marketing and Sales Practices Litigation*,
    320 F.R.D. 326 (D.N.H. 2017) ..........................................................................14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) .................................................................5

*In re Kind LLC "Healthy & All Natural" Litig.*,
    627 F. Supp. 3d 269 (S.D.N.Y. 2022) ..................................................................6

*In re Lenovo Adware Litigation*,
    No. 15-md-02624-RMW
    2016 WL 6277245, 2016 U.S. Dist. LEXIS 149958 (N.D. Cal. Oct. 27, 2016) ........................14

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*,
    422 F. Supp. 3d 194 (D.D.C. 2019) .....................................................................9

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ...........................................................14, 15

*In re POM Wonderful LLC*,
    No. ML 10-02199 DDP (RZx)
    2014 WL 1225184, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014).........................12

*In re Scotts EZ Seed Litig.*,
    No. 12 CV 4727 (VB),
    2017 WL 3396433, 2017 U.S. Dist. LEXIS 125621 (S.D.N.Y. Aug. 8, 2017) .........................6

*In re Tobacco II Cases*,
    46 Cal. 4th 298 P.3d 20 (2009) ........................................................................11

*Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.*,
    19 F.3d 125 (3d Cir. 1994)...............................................................................5

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB,
    2014 WL 2702726, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014)..................1, 2, 12

*Kesler v. Ikea U.S., Inc.*,
    No. SACV 07-00568-JVS (RNBx),
    2008 WL 413268, 2008 U.S. Dist. LEXIS 97555 (C.D. Cal. Feb. 4, 2008) ...........................16

*Kosta v. Del Monte Foods, Inc.*,
    308 F.R.D. 217 (N.D. Cal. 2015)........................................................................1, 2

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020)........................................................................13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Kumar v. Salov N. Am. Corp.*,
  No. 14-CV-2411- YGR
  2016 WL 3844334, 2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016)................................11

*Kutzman v. Derrel's Mini Storage, Inc.*,
  No. 1:18-cv-00755-AWI-JLT,
  2020 WL 406768, 2020 U.S. Dist. LEXIS 13314 (E.D. Cal. Jan. 24, 2020) ..............................3

*Lambert v. Nutraceutical Corp.*,
  No. CV 13-05942-AB (Ex),
  2020 WL 12012559, 2020 U.S. Dist. LEXIS 6391 (C.D. Cal. Jan. 8, 2020) ........................8

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014)................................12

*Lytle v. Nutramax Lab'ys, Inc.*,
  No. ED CV 19-0835 FMO (SPx),
  2022 WL 1600047, 2022 U.S. Dist. LEXIS 95559 (C.D. Cal. May 6, 2022) ...................5, 7, 11

*McMorrow v. Mondelez Int'l, Inc.*,
  No. 17-cv-2327-BAS-JLB,
  2021 WL 859137, 2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ..............................13

*McCrary v. Elations Co., LLC*,
  No. EDCV 13–00242 JGB (Opx)
  2014 WL 1779243, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ................................1

*Melgar v. Zicam LLC*,
  No. 2:14-cv-00160-MCE-AC,
  2016 WL 1267870, 2016 U.S. Dist. LEXIS 43990 (N.D. Cal. Mar. 31, 2016)........................16

*Minkler v. Kramer Labs., Inc.*,
  No. CV 12-9421-JFW FFMX,
  2013 WL 3185552, 2013 U.S. Dist. LEXIS 90651 (C.D. Cal. Mar. 1, 2013)............................16

*Montera v. Premier Nutrition Corp.*,
  No. 16-cv-06980-RS
  2022 WL 1225031, 2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022) ........................6, 7

*Oshana v. Coca–Cola Co.*,
  2005 WL 1661999 (N.D. Ill. Jul. 13, 2005)................................5

*Pettit v. Procter & Gamble Co.*,
  No. 15-cv-02150-RS,
  2017 WL 3310692, 2017 U.S. Dist. LEXIS 122668 (N.D. Cal. Aug. 3, 2017) .............5, 6, 7, 13

*Prescott v. Reckitt Benckiser LLC*,
  No. 20-cv-02101-BLF
  2022 WL 3018145, 2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022)........................3

*Procter & Gamble Co. v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008)................................5, 12

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012)................................15

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Schneider v. Chipotle Mexican Grill, Inc.*,
  328 F.R.D. 520 (N.D. Cal. 2018) ................................................................4

*Smith v. Keurig Green Mountain, Inc.*,
  No. 18-cv-06690-HSG
  2020 WL 5630051, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) .................11, 15

*Sonner v. Schwabe N. Am. Inc.*,
  5:15-cv-01358 VAP (SPx)
  2019 WL 4266808, 2019 U.S. Dist. LEXIS 117623 (C.D. Cal. July 2, 2019).............................4

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .....................................................................11

*Testone v. Barlean's Organic Oils, LLC*,
  No. 19-CV-169 JLS (BGS),
  2021 WL 4438391, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021)........................9

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016).....................................................................................3

*Vizcarra v. Unilever United States, Inc.*,
  No. 4:20-CV-02777 YGR,
  2023 WL 2364736, 2023 U.S. Dist. LEXIS 38208 (N.D. Cal. Feb. 24, 2023) ......................6, 7

*Vizcarra v. Unilever United States*,
  339 F.R.D. 530 (N.D. Cal. 2021)...................................................................12

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK
  2014 WL 7148923, 2014 U.S. Dist. LEXIS 173789 (N.D. Cal. Dec. 15, 2014).......................12

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .........................................................................4

*Yokoyama v. Midland National Life Insurance Co.*,
  594 F.3d 1087, 1089 (9th Cir. 2010) ...............................................................4

*Zeisel v. Diamond Foods, Inc.*,
  No. C 10–01192 JSW
  2011 WL 2221113, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011).............................1

**<u>Statutes</u>**

Fed. R. Civ. P. 23 ......................................................................................3, 6

Cal. Civ. Code 1770(a)(4)...........................................................................11

15 U.S.C. § 1125(a) .................................................................................11

**<u>Regulations</u>**

16 C.F.R. § 323. ........................................................................................6

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.   **ARGUMENT**

### A.   **The Class is Adequately Defined**

Defendant argues the class is unascertainable because it began removing the Challenged Representation from all of the labels for one of five product lines, the Classic Blue Box Products, between approximately October 2022 and February 2023. Opp. at 3, 9 (primarily relying on *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015) and *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13, 2014)). Defendant is not only wrong on the law and facts, but even if *Kosta* and *Jones* were still good law, they would nonetheless be inapposite.

Simply put, no ascertainability requirement exists under Ninth Circuit law. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (rejecting the defendant's argument that "there would be no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members" in false advertising case). Indeed, each case upon which Defendant relies to challenge the Class definition was decided prior to *Briseno*, which explicitly held Rule 23 does not require an administratively feasible way to identify class members. 844 F.3d at 1133.

Defendant nonetheless complains that Plaintiffs' motion relies on cases that do not involve label changes during the Class Period. Opp. at 10-11. However, courts have rejected this argument even when evaluating whether a class is ascertainable. *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *9 (C.D. Cal. Jan. 13, 2014) ("The fact that the allegedly false representation was not on every available product during the class period [did] not defeat ascertainability.").[1] Even if *Kosta* and *Jones* remained good law, they are wholly inapposite here. Each of the Products in the Collezione Artisanal, Gluten Free, Whole Grain, and Veggie product lines had a single label throughout the Class Period that bore the Challenged Representation.[2] The only label change that

---

[1] *See also, e.g., Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *6 (N.D. Cal. June 7, 2011) (finding the proposed class, defined by persons who bought specific nut products "which bore labels bearing the Structure Function Claim and Banner" during the class period, "includes objective characteristics that would permit a consumer to identify themselves as a member of the proposed class," despite the defendant's sale of numerous additional nut products)

[2] *See* P. Ex. 1 [Def. Supp. Resp.] at ROG No. 2-3 (identifying each label for the 54 Products that bears the Challenged Representation by bates numbers and identifying only one label change that solely involved Classic Blue Box Products); P. Ex. 2 [Labels] (compiling all labels for the 54 Products that bear the Challenged Representation that Defendant identified by bates numbers).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    occurred during the Class Period was limited to the Classic Blue Box product line, which entailed

2    the removal of the Challenged Representation initiated between a discrete period of time.[3] Thus, a

3    single change across one product line over a finite period bears no resemblance to the complex,

4    multi-faceted variations in products, labels, and formulations over extended and inconsistent time

5    frames in *Kosta*, 308 F.R.D. at 227-228, 229 and *Jones*, 2014 WL 2702726, at *1-3, 8-10, 11-12.

6        Defendant's claim that the Class "includes putative members who lack standing" because

7    certain Products omitted the Challenged Representation is defied by the Class definition. Opp. at 9;

8    *see also id.* at 18-19 (reiterating the same false premise to argue "individualized inquires to

9    determine whether the class members were exposed to the [Challenged Representation] would be

10   required because not all Products in the purported Class Period contained the Challenged

11   Representation"). Defendant's challenges to the Class definition, and relatedly to predominance, are

12   easily dispatched. Plaintiffs define the Class as: "All residents of California who, within four years

13   prior to the filing of the Complaint, purchased the Products, ***containing the Challenged***

14   ***Representation on the Products' front packaging***, for purposes other than resale." MCC at 10

15   (emphasis added).[4] Thus, all members of the Class were exposed to the Challenged Representation

16   as the Class Products, by definition, all bore the Challenged Representation. It is for this reason that

17   Defendant cannot manufacture individualized inquiries into whether each member of the Class was

18   exposed to the Challenged Representation to defeat predominance.

19       Lastly, at this stage, Plaintiffs need only demonstrate that the Class is adequately defined with

20   objective criteria that can be applied generally to determine each class member's eligibility. *See*,

21   *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014). Here, the Class

22   is clearly and objectively defined to encompass: (1) all residents of California, (2) who purchased,

23   for non-resale purposes, one or more of the Products, (3) which bear the Challenged Representation,

24   (4) between June 11, 2018 and present. This definition is neither ambiguous nor unworkable as it

---

[3] *Id.*; *see also* P. Ex. 1 [Def. Supp. Resp.] at ROG No. 2 ("Barilla estimates that the New Visual Identity PRODUCTS started becoming available to consumers in October 2022 and that 80% of the New Visual Identity products were available for sale to consumers at retailers by February 2023").

[4] It is for this reason that Defendant incorrectly contends that "Plaintiffs selectively and inaccurately cite [Defendant's] discovery responses" to suggest that Plaintiffs' Exhibit 2, compiling all labels for the Products, is incomplete. Opp. at 3. Exhibit 2 contains all labels for the Products at issue—those bearing the Challenged Representation—and is consistent with the Class definition.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

sets out precise and objective criteria that readily permits Class members to self-identify. *See Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at *1, 9 (N.D. Cal. July 14, 2022) (finding "the class definitions . . . rely on objective criteria – purchase of Woolite laundry detergent with a label bearing the [challenged claims] during the during the relevant class period," even though the challenged claims did not appear on all of the products).[5]

**B.    Plaintiffs Have Satisfied the Predominance Requirement**

Defendant's arguments against the predominance requirement largely dispute the merits of Plaintiffs' claims, rather than their capacity to be resolved through class-wide evidence. Opp. at 11–18. But whether Defendant finds Plaintiffs' evidence persuasive is simply not relevant. Defendant "may advance those arguments at the merits stages of this litigation, but they do not bear on predominance." *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017) (affirming class certification in false advertising case where plaintiffs alleged the cooking oil's "100% Natural" labels misled consumers into believing the products do not contain GMOs).

What matters at this juncture is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quotations omitted). "[C]ourts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citing cases) (citations omitted). And "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

---

[5] Defendant suggests that class litigation is not superior because of the "practical difficulty of identifying class members and distributing damages," without any legal or factual argument other than a passing reference to its "ascertainability" argument. Opp. at 24. The Ninth Circuit has rejected this argument. *Briseno*, 844 F.3d at 1126, 1133. Further, courts find class member submission of self-identifying affidavits sufficient in false advertising cases involving low-cost consumer goods. *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *10 (N.D. Cal. Nov. 18, 2014).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Indeed, in mislabeling cases like this one, courts in the Ninth Circuit routinely find that "common issues predominate when plaintiffs are exposed to a common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 539-40 (N.D. Cal. 2018) (quotations omitted).[6] Moreover, "because deception and materiality under the FAL, CLRA, and UCL are objective questions, they are ideal for class certification because they will not require the court to investigate class members' individual interaction with the challenged products." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (cleaned up); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997) (finding any doubt as to the propriety of certification should be resolved in favor of certification); *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).

### 1. Reasonable Consumer Perception

Defendant asserts that "deception is not susceptible to class-wide proof when consumers have differing understandings of the challenged statement." Opp. at 11. But when courts evaluate predominance, the inquiry "begins . . . with the elements of the underlying cause[s] of action," which Defendant plainly ignores. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Under the UCL, CLRA, and FAL, an advertisement is judged according to an objective test—the reasonable consumer standard—that requires plaintiffs to prove consumers "are *likely to be deceived*" by the representation. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (emphasis added). "The advertising need not be actually false, as long as it is misleading or has a capacity, likelihood or tendency to deceive or confuse the public." *Id*. (quotations omitted). "[T]he reasonable consumer standard requires a probability that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted; emphasis added).

Contrary to Defendant's argument, the law does not require proof of a singular and uniform

---

[6] *See also*, *e.g.*, *Sonner v. Schwabe N. Am. Inc.*, 2019 WL 4266808, at *7 (C.D. Cal. July 2, 2019) (declaring, "[w]hen analyzing false advertising claims . . . courts routinely find that common questions predominate," and citing cases, including *Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010))

understanding of the Challenged Representation for it to be deceptive. Rather, proof of "likely" deception for only a "significant portion" of consumers is enough. *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) (granting class certification, ruling plaintiffs "ha[ve] no burden to establish that there is a uniform understanding among putative class members as to the meaning of" the Challenged Representation, "or that all or nearly all of [the class members] shared any specific belief.").[7] Indeed, courts have found survey evidence that reveals as little as a 20% deception rate satisfies this burden. *See*, *e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("[defendant's] internal documents show that [defendant] thought the "Made From Real Ginger" claim *was* material," citing the defendant's survey where 25% of respondents believed the product was made with real ginger.).[8]

Here, Dr. Dennis's consumer survey far surpasses the 20% threshold, concluding the Challenged Representation leads reasonable consumers to believe the Products are sourced with only Italian ingredients. Dennis Rept., ECF No. 52-2, ¶¶ 36-37 (finding a 57.0% net deception rate); *see also* Dennis Rebuttal Rept. ¶ 8 (noting Defendant's expert, Dr. Cantor, replicated Dennis's survey and found a statistically similar deception rate of 49.2%). Nothing more is required at this stage because the sole focus at class certification is on the predominance of common questions, not the answers to those questions. *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 499 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

---

[7] *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 995 (N.D. Cal. 2022) (granting class certification, ruling "plaintiffs do not have the 'burden to establish that there is a uniform understanding among putative class members as to the meaning of [the challenged advertisements], or that all or nearly all of them shared any specific belief.'"); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *15 (C.D. Cal. May 6, 2022) (granting class certification, finding "defendants 'point to no controlling authority showing that a plaintiff must establish at the class certification stage that consumers have a uniform interpretation of the term that gives rise to the alleged deception,' and 'courts . . . routinely hold to the contrary,'") (cleaned up)

[8] *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1019 (C.D. Cal. 2015) ("Courts, moreover, have found a representation material when significantly smaller percentages of consumers than those reflected in the surveys here viewed it in that light," citing *Oshana v. Coca–Cola Co.*, 2005 WL 1661999, at *9 (N.D. Ill. Jul. 13, 2005) (24% of consumers); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 345 (S.D.N.Y. 2008) ("Cases have held that 20% constitutes a substantial percentage of consumers" who "are taking away the message that the plaintiff contends the advertising is conveying."); *Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 134, n.14 (3d Cir. 1994) (citing Lanham Act cases finding "deception rates" of 20% or more to be sufficient).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1    Although Defendant does not move to exclude Dr. Dennis's survey, Defendant nonetheless

2 points to a *single* inapposite case, *In re KIND LLC "Healthy & All Natural" Litig.* ("*In re KIND*"),

3 627 F. Supp. 3d 269 (S.D.N.Y. 2022), to argue, without evidence, that Dr. Dennis's survey in this

4 case is of the type that courts have "consistently . . . rejected." Opp. at 12. A single, errant, and non-

5 binding out of Circuit case, however, does not outweigh the legion of cases that have accepted Dr.

6 Dennis's similar consumer perception surveys. *See*, *e.g.*, *Banks v. R.C. Bigelow, Inc.*, 2023 WL

7 4932894 (C.D. Cal. July 31, 2023); *Vizcarra v. Unilever United States, Inc.*, 2023 WL 2364736

8 (N.D. Cal. Feb. 24, 2023); *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031 (N.D. Cal. Apr.

9 26, 2022); *Benson v. Newell Brands, Inc.*, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021); *Fitzhenry-

10 Russell*, 326 F.R.D. 592; *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519 (N.D. Cal. Sept.

11 25, 2018); *In re Scotts EZ Seed Litig.*, 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017); *Pettit*, 2017 WL

12 3310692; *see also* Dennis Rept., ECF No. 52-2, ¶ 6 (listing numerous additional cases).

13    Moreover, *In re KIND* is inapposite. Central to that court's outlier decision was its

14 determination that no objective definition of "All Natural" exists because the FDA has not provided

15 a regulatory definition and the plaintiffs' understanding of the claim considerably varied. 627 F.

16 Supp. 3d at 284. Here, however, Plaintiffs' false origin theory aligns with the FTC's standard

17 regarding United States origin claims, which requires "all or virtually all" of the product's

18 ingredients to be made and sourced in the United States. 16 C.F.R. § 323.2. Additionally, both

19 Plaintiffs interpreted the Challenged Representation to mean that the Products are made in Italy,

20 from ingredients sourced in Italy. Prost Decl., ECF 52-4, ¶ 5; Sinatro Decl., ECF 52-5, ¶ 5.[9]

21    Moreover, the *In re KIND* court determined that Dr. Dennis's survey should have used an

22 opened-ended question format to facilitate every possible understanding of "All Natural." 627 F.

23 Supp. 3d at 288. "Natural," however, is a particularly capricious claim, unlike the "ITALY'S . . .

24 PASTA" claim that literally means the Products belong to Italy. *See Lytle*, 2022 WL 1600047, at

25 *15, 18. However, Dr. Dennis explains in his report why an open-ended question is not a reliable

26 method for measuring consumers' perceptions. Consistent with well-respected and repeatedly cited

---

[9] Defendant contends that Plaintiff Prost "agreed that the Challenged Representation is subject to
multiple interpretations. (Prost Dep. Tr. 33:5-14)." Opp. at 13. However, the testimony cited does
not support this contention and, regardless, a lay person's speculation is irrelevant.

treatises on the admissibility of survey evidence, Dr. Dennis concluded that an open-ended question is unsuitable to quantitatively measure consumers' perceptions. *Id*. ¶¶ 60-62, n. 14-17 (discussing biases, methodological flaws, and the limited information to be learned from open-ended questions). In addition, Dr. Dennis's surveys that use closed-ended questions to directly ask whether consumers understand the challenged advertising claim in a manner consistent with the plaintiffs' liability theory are routinely approved by courts in this District, notwithstanding an opponent's bias and leading objections. *See, e.g.*, *Vizcarra*, 2023 WL 2364736; *Montera*, 2022 WL 1225031; *Fitzhenry-Russell*, 326 F.R.D. 592; *Broomfield*, 2018 WL 4952519; *Pettit*, 2017 WL 3310692.

That is because, as here, Dr. Dennis's survey is meticulously designed to minimize bias and avoid leading questions. For instance, the survey's instructions are framed: "We will show you some possible ways that people *might or might not* understand the meaning of the packaging. We want you to tell us whether you think the packaging *does communicate* that meaning or whether you think the packaging *does not communicate* that meaning." Dennis Rept. ¶ 67 (emphasis added). This framing does not suggest or imply any particular answer; rather, it maintains complete impartiality. The key perception question underscores this neutrality: "*Do you or do you not* believe that the statements communicate the following meaning?" Dennis Rept., Ex. C, at p. 20 (emphasis added). The question deliberately avoids influencing the respondent's answer, thereby ensuring that respondents independently assess the Challenged Representation on the packaging, free from any presuppositions or suggestions from the survey itself. Overall, the survey's design reliably elicits an unguided and genuine answers that are directly relevant to the core issue in this case.[10]

To support its argument that the Challenged Representation is subject to multiple interpretations, Defendant offers a single alternative definition derived from an unreliable survey designed and conducted by Defendant's *economist* who lacks any qualifications in designing surveys. *See* MTE Cantor at 4-11. Setting aside the fact that Dr. Cantor's *modified* survey runs afoul of Fed. R. Evid. 702 and therefore should be disregarded, Defendant's alternative definition—that

---

[10] Indeed, Defendant's criticisms of Dr. Dennis's survey's direct, close-ended perception question ring hollow. Defendant's unqualified economist, Dr. Robin Cantor, in part replicated Dr. Dennis's design to test one interpretation and then test two interpretations simultaneously. Dennis Rebuttal Rept. ¶ 8. She found statistically indistinguishable lower and upper-bound deception rates: 42.0% when viewing one interpretation and 41.8% when viewing two interpretations simultaneously. *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"the brand is the largest selling pasta in Italy"—is not "incompatible" or "inconsistent" with Plaintiffs' interpretation—that the Products are made from ingredients sourced in Italy. Opp at 13. Rather, Defendant's interpretation compliments Plaintiffs' interpretation. Even if Dr. Cantor's modified survey results were admissible, that some consumers perceived the Challenged Representation to mean the Products sold well in Italy does not contradict Dr. Dennis's findings. As Dr. Dennis concludes, "[c]onsumers, logically, can perceive a connection between the brand's popularity in Italy and the local, within-country sourcing of ingredients. These are complementary perceptions about the Challenged Representation, not evidence of consumers having two different sets of beliefs about the Challenged Representations." Dennis Rebut Rept. ¶ 6 c). Notably, when Dr. Cantor did not deviate from Dr. Dennis's design, her findings were statistically similar to Dr. Dennis's findings. *Id.* ¶ 8 (comparing Cantor's and Dennis's deception rates, 49.2% and 57.0%, respectively, which further corroborates the reliability of Dr. Dennis's results).

### 2.   Materiality

Defendant next argues that Plaintiffs lack common evidence to demonstrate that the Challenged Representation is material to reasonable consumers. Opp. at 14-18. A representation is material "if a reasonable consumer would attach importance to it *or* if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citations and quotations omitted) (emphasis added). Here, Plaintiffs have demonstrated materiality under *both* prongs of the *Hinojos* materiality requirements.

As an initial matter, Plaintiffs are not required to *prove* materiality at the class certification stage. *See, e.g.*, *Lambert v. Nutraceutical Corp.*, 2020 WL 12012559, at *9 (C.D. Cal. Jan. 8, 2020) (finding that California courts have explicitly rejected the view that extrinsic evidence of materiality is required). That is because the question of materiality "is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable [person]." *Amgen Inc.*, 568 U.S. at 467. Such an objective question can be proved through evidence common to the class. *Id.*; *see also* *Broomfield*, 2018 WL 4952519, at *11 (finding "materiality evidence" is not required at the class-certification stage because "the question at this stage is not whether Plaintiffs have successfully

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

proven materiality, but rather whether the materiality inquiry is a common question susceptible to common proof . . . . Because materiality is an objective question based on the reasonable consumer, it is common to the class and 'ideal for certification.'") (citations and quotations omitted); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 251 (D.D.C. 2019) ("In light of the objective standard for materiality under California law, extrinsic evidence of materiality is not required.").[11]

In any event, Plaintiffs have presented more than enough evidence to demonstrate that the Challenged Representation is material to the reasonable consumer. MCC at 2-7, 20-22 (discussing Defendant's decades-long and pervasive marketing campaign to identify the brand, company, and Products as authentically Italian, Defendant's internal brand strategy documents and consumer research demonstrating the Products' Italianity is one of the top three sales drivers, published market research demonstrating the importance of country-of-origin claims and consumers' willingness to pay for Italian pastas, regulatory bans on deceptive country-of-origin claims).

To contest the relevance of Defendant's monolithic marketing campaign, Defendant argues that Plaintiffs did not personally rely on it in deciding to buy the Products. Opp. 14-15. That is beside the point. Defendant invested in a massive, decades-long marketing campaign that not only includes 60,000 characteristically Italian media ads, but also includes building and operating a museum and academy, and maintaining a historical archive, among other things, to promote the company, brand, and Products as authentically Italian. MCC at 3-4. The magnitude and pervasiveness of Defendant's advertising campaign reveals Defendant's intention to inextricably tether the Products to their purported Italian origin to drive sales. The Challenged Representation was not some one-off, short-lived, fleeting, or incidental labeling attribute wholly divorced from

---

[11] *See also*, *e.g.*, *Hadley*, 324 F. Supp. 3d at 1115 ("California courts have explicitly reject[ed] [the] view that a plaintiff must produce extrinsic evidence . . . to prevail on a claim that the public is likely to be misled by a representation under the FAL, CLRA, or UCL."); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 681-82 (2006) (rejecting "that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation."); *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *14 (S.D. Cal. Sept 28, 2021) (rejecting requirement that "Plaintiffs must put forth evidence of materiality and likelihood of deception for the Court to certify the Classes" in a mislabeling case and finding "more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage").

Defendant's overall brand strategy. Swanholt Decl., Ex. C, ECF 15-4 (Barilla Trademark application indicating the Challenged Representation has been used "exclusive[ly] and continuous[ly] . . . since January 2005"). Indeed, Defendant extols Italian durum wheat or semolina as superior and preferable to the non-Italian ingredients that permeate pastas sold in the United States. MCC at 6. And no company invests in such a concerted and widespread effort to portray itself as a maker of genuine Italian pastas, if that company does not know, or has reason to know, that consumers want to buy Italian pastas. Nor does it trademark a worthless labeling claim.

To be sure, Defendant's brand strategy documents and marketing research further demonstrate Defendant not only knew that the Challenged Representation drives sales, but that it is in fact material to consumers. Defendant's documents show it knew that it has successfully positioned itself as a long-standing maker of *authentic* and *genuine* Italian pastas. P. Ex. 3 [New Positioning Blue Box], at BAI-CA_360. They also show that Defendant knew that convincing consumers that the Products are Italian is *what works*. *Id.* at BAI-CA_367, 369. Indeed, Plaintiffs' expert reviewed Defendant's commissioned consumer research and found it revealed that the Products' "Italianity" was the third top-driver for differentiating the brand. Weir Rept., ECF 54-3, ¶ 20. That alone is enough to demonstrate materiality. *See Fitzhenry-Russell*, 326 F.R.D. at 614 ("Clearly, if a *quarter* of Canada Dry consumers were listing the ginger claim as a *top five* reason why they bought the product, the claim is material.") (emphasis added). Defendant's attempt to dispute Plaintiffs' expert's interpretation of the study is a dispute over the merits, not over whether materiality can be proven through common evidence. Moreover, Plaintiffs' expert also found that Defendant's marketing research is entirely consistent with peer-reviewed publications demonstrating consumers pay a premium for country-of-origin claims and pastas' that are Italian-made. Weir Rept., ECF 54-3, ¶¶ 14-16. It is for these reasons that he concluded: "Clearly, Defendant appears to understand that the Representation constitutes a product attribute that will differentiate its Products from competitors' products, allowing Defendant to charge a premium for these attributes and derive higher revenues and profits therefrom." *Id.* ¶ 22. Defendant cannot, now, argue that it never knew or had reason to know that consumers want authentic Italian pastas, or that using the Challenged Representation as part of its brand strategy, which boasts the Products are "ITALY'S

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   #1 BRAND OF PASTA," would be important to consumers in deciding to buy the Products.

2       In addition, Defendant completely ignores that Plaintiffs' proposed conjoint analysis presents

3   common evidence of materiality. Dennis Rept., ECF 52-2, ¶¶ 29-31; Weir Rept., ECF 54-3, ¶¶ 23-

4   24. Courts recognize that, if consumers are willing to pay a premium for a product attribute, then

5   those attributes are clearly material. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403-04 (N.D. Cal.

6   2021) (finding materiality can be demonstrated by the "conjoint analysis proposed by Gaskin and

7   Weir, which is capable . . . of reliably calculating the value (or 'premium') that consumers paid as

8   a result of the 'rapid release' statement"); *Lytle*, 2022 WL 1600047, at *14 (same).

9       Defendant also ignores that the "California Supreme Court has found that statutory

10  recognition of materiality is highly persuasive." *Smith v. Keurig Green Mountain, Inc.*, 2020 WL

11  5630051, at *6 (N.D. Cal. Sept. 21, 2020); *see also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334,

12  at *24 (N.D. Cal. July 15, 2016). And, here, California and Congress have categorically banned false

13  origin advertising. *See* Cal. Civ. Code 1770(a)(4) (making "deceptive representations or designations

14  of geographic origin in connection with goods" unlawful); Lanham Act, 15 U.S.C. § 1125(a) (making

15  false designations of origin in packaging or advertising unlawful).

16      Lastly, Defendant's resort to its unqualified economist's unreliable materiality survey is

17  unavailing. First, Dr. Cantor is not qualified as a survey expert and she designed an unreliable survey,

18  as discussed in Plaintiffs' motion to exclude. MTE Cantor at 4-7, 9-11. Second, even if her survey is

19  admissible, Defendant cannot then deny that materiality is susceptible to class-wide proof in the form

20  of a consumer survey. Third, Defendant misleadingly represents the results of her survey. Twelve

21  percent, not 2.2%, of consumers in her survey identified "Made in Italy" as one of the "*most* important"

22  reasons influencing their decision to buy pastas. But under the law, materiality only requires a reasonable

23  consumer to "attach importance to its existence or nonexistence" in deciding to buy the product. *Stearns*

24  *v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). It is not necessary that the representation is

25  the "sole or even the predominant or decisive factor influencing [their] conduct." *In re Tobacco II Cases*,

26  46 Cal. 4th 298, 326 (2009). Yet, when asked about the "*most* important" reasons, a higher threshold

27  than the law requires, 12.2% of consumers identified pastas' Italian-made attribute. As noted above,

28  courts have found deception rates as low as 20% satisfy predominance. *See*, *e.g.*, *Procter & Gamble*

1    *Co.*, 574 F. Supp. 2d at 345 (20%).[12]

2        ### 3. *Plaintiffs' Damages Model*

3        Defendant contends that Plaintiffs' price premium damages model derived from Dr. Dennis

4    and Mr. Weir's proposed choice-based conjoint analysis does not satisfy *Comcast Corp. v. Behrend*,

5    569 U.S. 27 (2013), primarily relying on inapposite cases that, in many instances, undermine

6    Defendant's position.[13] Defendant resorts to a litany of inapposite cases because conjoint analyses

7    are routinely accepted by courts to isolate the price premium solely attributable to false advertising

8    claims. *See* MCC at 23-24 (citing cases); Dennis Rept., ECF 52-2, ¶ 93, n.24 (citing cases in which

9    Dr. Dennis's conjoint analyses have been accepted); Dennis Rebuttal ¶¶ 43-45 (same); Weir Rept.,

10

11   ─────────────────

     [12] Defendant summarily argues Plaintiffs' breach of warranty and unjust enrichment claims cannot
12   satisfy the predominance requirement because the Challenged Representation lacks a uniform
     meaning and common proof of materiality. Opp. at 19-20. Both claims satisfy the predominance
13   requirement for the same reasons that Plaintiffs' UCL, CLRA, and FAL claims satisfy this
     requirement. *See Broomfield*, 2018 WL 4952519, at *21 (finding plaintiffs' unjust enrichment claim
14   met the predominance requirement "for the same reasons" as their CLRA, UCL, and FAL claims);
     *see also Hadley*, 324 F. Supp. 3d at 1121 (finding predominance satisfied as to plaintiffs' breach of
15   warranty claim for same reasons as their CLRA, UCL, and FAL claims). Common issues
     predominate for these claims because both "claims are based on common contentions of deceptive
16   conduct by Defendant in marketing its products"—specifically, Defendant's uniform use of the
     Challenged Representation on all Class Products. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 510
17   (S.D. Cal. 2013); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014) (finding
     predominance satisfied for plaintiffs' breach of warranty claim based on defendants' deceptive
18   labeling of their products as "All Natural").
     [13] For example, Defendant cites *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11-12
19   (S.D.N.Y. Mar. 19, 2019), wherein the court certified a false labeling case. It held Mr. Weir's "price
     premium damages models match plaintiff's theory of liability and satisfy Comcast," finding his
20   conjoint analysis is "based on sound and accepted methodologies" and "seek[s] to isolate the alleged
     damage that stemmed directly from defendant's alleged misrepresentations." *Id.* Defendant also
21   cites several inapposite cases in which the plaintiffs offered no damages model or expert evidence
     to calculate a price premium (*see Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir.
22   2016); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *9 (N.D. Cal. Jan. 7, 2014)),
     or they relied on a methodology (hedonic regression) not at issue in this case (*see Werdebaugh v.
23   Blue Diamond Growers*, 2014 WL 7148923, at *9 (N.D. Cal. Dec. 15, 2014); *Fagan v. Neutrogena
     Corp.*, 2017 WL 11418358, at *3 (C.D. Cal. Oct. 24, 2017)). Indeed, Defendant cites several cases
24   that rejected the very same damages model Defendant's damages expert offers to prove no price
     premium exists because the comparison of the prices for different products, with and without the
25   challenged claim, cannot control for confounding variables. *See* MTE Cantor at 11-14; *In re POM
     Wonderful LLC*, 2014 WL 1225184, at *4 (C.D. Cal. Mar. 25, 2014); *Jones*, 2014 WL 2702726, at
26   *19-20; *Algarin v. Maybelline, Ltd. Liab. Co.*, 300 F.R.D. 444, 460 (S.D. Cal. 2014). Defendant
     also cites *Vizcarra v. Unilever United States*, 339 F.R.D. 530, 553-54 (N.D. Cal. 2021), wherein the
27   Court rejected Dr. Dennis's proposed conjoint survey. However, in that case, the plaintiffs
     conceded, and Dr. Dennis admitted, that the survey would determine the price premium attributable
28   to the "source of vanilla," not the actual vanilla representation on the products' packaging. Unlike
     *Vizcarra*, here, Dr. Dennis proposes testing the actual Challenged Representation. Dennis Rept.,
     ECF 52-2, ¶¶ 109, 126-127, 130-133.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1    ECF 54-3, ¶ 26, n.20 (citing cases).

2        Defendant argues that because "ITALY'S #1 BRAND OF PASTA" may not be misleading

3    to some consumers, a conjoint analysis that derives the price premium solely attributable to that

4    claim does not match Plaintiffs' theory of liability. Opp. at 21-22 (citing *In re ConAgra Foods, Inc.*,

5    302 F.R.D. 537, 547, 578-579 (C.D. Cal. 2014) and *Hughes v. The Ester C Co.*, 317 F.R.D. 333,

6    355-56 (E.D.N.Y. 2016)). Defendant's argument is flawed for several reasons. First, it, again,

7    assumes that the law requires a single uniform interpretation of the Challenged Representation. It

8    does not. *See, e.g., Pettit*, 2017 WL 3310692, at *3. For this reason, several courts have rejected

9    Defendant's argument. *See, e.g., Gunaratna v. Dennis Gross Cosmetology, LLC*, 2023 WL

10   2628620, at *19 (C.D. Cal. Mar. 15, 2023) (rejecting Defendant's arguments to exclude conjoint

11   analysis "to the extent they are premised on the idea that there is not a uniform understanding of

12   'collagen'"); *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *15 (S.D. Cal. Mar. 8, 2021)

13   ("[T]he [p]laintiffs' damages model need not isolate and test the various possible interpretations of

14   the term 'nutritious' " but may "assume[ ] that [the plaintiff's theory of liability] is true";

15   *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020) (noting that the plaintiffs'

16   damages model "assume[d]" that that the challenged statements were false or misleading to

17   reasonable consumers, "which is an appropriate starting point for a damages model").

18       Second, nearly all labeling claims are subject to multiple interpretations such that adoption of

19   Defendant's logic would undermine all false advertising consumer class actions. Indeed, "ITALY'S

20   #1 BRAND OF PASTA" is a far car from the capricious "Natural" claim in *ConAgra Foods* or the

21   indefinable "Better" claim in *Hughes*. To the extent that Defendant argues that the Challenged

22   Representation truthfully means that the Products sell-well in Italy, that is entirely consistent with

23   Plaintiffs' interpretation. Further, Defendant's competing interpretation amounts to a dispute over

24   the merits of Plaintiffs' damages calculation, not whether damages are subject to class-wide proof.

25       Third, as Defendant's expert Dr. Cantor admits, a product's labelling claim impacts the market

26   price of the product. Weir Rebuttal ¶ 8 (quoting Ex. 13 [Cantor Dep.] at 217:15-22). The correct

27   measure of damages is the difference between the price consumers paid for the Products with the

28   Challenged Representation and the price paid without it, which is exactly what Dr. Dennis and Mr.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    Weir's proposed damages model calculates. *Id.* ¶ 10 (quoting Cantor Dep. at 219:20–221:3). And,

2    regardless of any competing interpretations or preferences, the price premium applies to all class

3    members equally—*i.e.*, every purchaser who bought the Products overpaid for them because all of

4    them bore the Challenged Representation. *Id.* ¶ 13 (quoting Cantor Dep. at 240:12-17).

5         Next, Defendant argues that Dr. Dennis and Mr. Weir's conjoint analysis fails to account for

6    supply-side factors. Opp. at 22-23. That is wrong. As the court in *Hadley* cogently explained, courts

7    have found "that conjoint analyses can adequately account for supply-side factors—and can

8    therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the

9    prices used in the surveys underlying the analyses reflect the actual market prices that prevailed

10   during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect

11   the actual quantities of products sold during the class period."[14]

12        Consistent with *Hadley*, *Dial*, *MyFord*, *Fitzhenry-Russell*, and *Lenovo*, Plaintiffs' experts

13   properly controlled for supply-side factors. They used "data on actual sales of the Products in the

14   real-world marketplace during the relevant time period," which "'bakes in' the impact of myriad

15   supply factors as they existed throughout the class period," and they used quantities that reflect the

16   actual quantities sold during the class period. Weir Rebuttal ¶¶ 22-22, 27-28, 38, 40 (further noting

17   Dr. Cantor does not dispute whether the prices used in Dr. Dennis's conjoint survey accurately

18   reflect the market, or that the prices reflect the historic supply conditions); Dennis Rebuttal ¶¶ 43-

19   45. Indeed, supply conditions in the real and but-for worlds, wherein Products sold with and without

20   the Challenged Representation, would not be meaningfully different because it does not cost more

21   to not use the Challenged Representation on the Products' labels. Weir Rebuttal ¶¶ 37, 47-48 (further

22   noting that Dr. Cantor concedes as much, and that Dr. Cantor merely speculates about any change

23   in supply). Thus, it is reasonable to use real-world pricing, which reflects supply-side factors, in the

---

[14] 324 F. Supp. 3d at 1105-1106 (citing in *In re Dial Complete Marketing and Sales Practices Litigation*, 320 F.R.D. 326 (D.N.H. 2017); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969-71 (N.D. Cal. 2018); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *22 (N.D. Cal. May 8, 2018); *Fitzhenry-Russell*, 326 F.R.D. 592; *In re Lenovo Adware Litigation*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)).

but-for world without the Challenged Representation. *Id.* ¶ 49.[15] [16]

Lastly, Defendant argues that, because Dr. Cantor's unreliable product comparison damages model showed no difference in pricing between Classic Blue Box pastas and Whole Grain pastas (MTE Cantor at 11-14), Plaintiffs' conjoint analysis must necessarily fail to prove a price premium. Opp. at 23-24. Not only is this a dispute over the merits—and not class certification—but courts have squarely rejected Defendant's argument. *See*, *e.g.*, *Smith*, 2020 WL 5630051, at *9 (rejecting the defendant's argument that, "because there is no price difference between the Products and non-recyclable K-Cups, Plaintiff's damages proposals are entirely conjectural," reasoning that "[t]he fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium") (citations and quotations omitted).

### C. **Plaintiffs Have Satisfied the Typicality Requirement**

Defendant contends that Plaintiffs are atypical of the Class, arguing Plaintiffs' interpretation of the Challenged Representation is "strained," notwithstanding the fact that 57.0% consumers in Dr. Dennis's survey share their views; and Defendant intends to argue that "many putative class members" did not notice the Challenged Representation and, instead, noticed the back-label disclaimer. Opp. at 24-25. But perception and materiality are judged under the objective reasonable consumer standard. That means, Defendant has the same arguments as to all consumers, including Plaintiffs. *See*, *e.g.*, *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 539 (N.D. Cal. Nov. 27, 2012) (finding typicality satisfied, finding "[e]ven if it were true that putative class members relied to greater or lesser extents on defendants' [challenged] representation, as noted above, the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular

---

[15] It is for this reason that *Apple, Inc. v. Samsung Elecs. Co.* 2014 WL 976898 (N.D. Cal. Mar. 6, 2014) is inapposite. In that case, the court rejected the plaintiff's conjoint analysis because its expert did not use any real-world pricing data and, thus, he admitted his survey merely measured market demand, utterly failing to account for supply side factors. *Id.* at *11-13.

[16] Defendant also argues that Plaintiffs' proposed conjoint analysis is "not reliable . . . because of the large number of permutations of Product options," citing Dr. Cantor's report at paragraphs 5 and 28-30. Opp. at 23. But Dr. Cantor's report makes no such argument. Even if it did, Defendant's argument is incomprehensible and non-sensical. Not only is dried pasta one of the simplest processed food products on the market, but conjoint analyses have been successfully used to evaluate far more complex products like automobiles. *See*, *e.g.*, *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d at 969-71.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

state of mind.").[17] There is nothing unique about Defendant's "defenses."

Next, Defendant argues Plaintiffs are atypical or inadequate because they have filed other cases. Opp. at 25. However, courts have found a repeat "plaintiff is not a basis for finding that a plaintiff is atypical" or inadequate. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (citing *Holloway v. Full Spectrum Lending*, 2007 WL 7698843 (C.D. Cal. June 26, 2007) ("repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions")).[18] [19]

## II.    **CONCLUSION**

For the foregoing reasons, this Court should certify this action as a class, appoint Plaintiffs as the Class Representatives, and appoint Plaintiffs' counsel as Class Counsel.

Dated: February 8, 2024                              **CLARKSON LAW FIRM, P.C.**

By: */s/ Katherine A. Bruce*
        Ryan J. Clarkson
        Katherine A. Bruce
        Alan Gudino

---

[17] Defendant relies on a single inapposite case, *Minkler v. Kramer Labs., Inc.*, 2013 WL 3185552 (C.D. Cal. Mar. 1, 2013), to argue otherwise. Opp. 24-25. However, that plaintiff "fail[ed] to offer *any* evidence supporting either commonality or typicality." *Id.* at *9 (emphasis added). It then comes as no surprise that the court quickly dispatched his case.

[18] Defendant relies on a single inapposite case, *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015), in which the court granted a motion to dismiss, finding the plaintiff knew the challenged labeling claims were false.

[19] In a footnote, Defendant insinuates that Plaintiff Prost has a conflict of interest because she has a "personal relationship" with "class counsel." Opp. at 25, n. 20 (citing Def. Ex. A [Prost Dep.], ECF 61-4, at 79:3-18 (testifying she "knew of someone that worked" at Clarkson Law Firm, though she was not a "friend," and only an "acquaintance"). Courts repeatedly have found plaintiffs adequate class representatives, despite long-lasting and close personal relationships far beyond that of a mere "acquaintance." *See*, *e.g.*, *Kesler v. Ikea U.S., Inc.*, 2008 WL 413268, at *9 (C.D. Cal. Feb. 4, 2008); *Melgar v. Zicam LLC*, 2016 WL 1267870, at *4 (N.D. Cal. Mar. 31, 2016) ("[A]s to the 'close relationship' between Plaintiff and one of the attorneys representing her, such a relationship could arguably enhance the quality of the representation that class counsel provides (and best further the interest of the class)").