**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MATTHEW SINATRO and JESSICA PROST, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BARILLA AMERICA, INC.,

Defendant.

Case No. 4:22-cv-03460-DMR
Action Filed: June 11, 2022
FAC Filed: July 20, 2022

*Assigned to Hon. Donna M. Ryu*

**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S CLASS CERTIFICATION EXPERT ROBIN CANTOR**

Hearing Information:
Date: March 14, 2024
Time: 1:00 p.m.
Courtroom: 4 (videoconference only)

MCC Hrg: 3/14/2024

# REDACTED—PUBLICLY FILED

**PLEASE TAKE NOTICE** that, on **March 14, 2024 at 1:00 p.m**, in the above-entitled Court, before The Honorable Magistrate Judge Donna M. Ryu, in Courtroom 4 of the Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Matthew Sinatro and Jessica Prost ("Plaintiffs") will and hereby do move the Court for an order excluding Defendant Barilla America, Inc.'s ("Defendant") expert witness Robin Cantor, PhD. This motion is based on this Notice, the attached Memorandum of Points and Authorities, all papers on file in this matter, and such further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........................................................ 1
II. LEGAL STANDARD ........................................................ 2
III. ARGUMENT ........................................................ 4
A. Dr. Cantor is Not Qualified as a Survey Expert and Therefore Cannot Design or Implement Her Own Unique and Unreliable Survey Methodologies ........................................................ 4
1. Dr. Cantor Is Not a Survey Expert ........................................................ 5
2. Dr. Cantor's Modified Perception Surveys Lack Reliability ........................................................ 7
B. Dr. Cantor's Difference-in-Difference Damages Model Is Fatally Flawed ........................................................ 11
IV. CONCLUSION ........................................................ 15

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## TABLE OF AUTHORITIES

**Cases** **Page No.**


*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. May 12, 2014) ....................12

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
No. 11-CV-01846-LHK,
2013 WL 5955666, 2013 U.S. Dist. LEXIS 160188 (N.D. Cal. Nov. 6, 2013) ....................3, 6

*Bailey v. Rite Aid Corp.*,
338 F.R.D. 390 (N.D. Cal. 2021)....................9

*Beard v. United States Postal Serv.*,
No. 17-cv-03218-JCS,
2019 WL 257978, 2019 U.S. Dist. LEXIS 9383 (N.D. Cal. Jan. 18, 2019)....................3

*Benson v. Newell Brands, Inc.*,
No. 19-c-6836,
2021 WL 5321510, 2021 U.S. Dist. LEXIS 220986 (N.D. Ill. Nov. 16, 2021) ....................8

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*,
178 F.3d 1035 (8th Cir. 1999) ....................13

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001) ....................4

*Cooper v. Brown*,
510 F. 3d 870 (9th Cir. 2007) ....................3

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021)....................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................2, 3, 4

*De Lacour v. Colgate-Palmolive Co. and Tom's of Maine Inc.*,
338 F.R.D. 324 (S.D.N.Y. 2021) ....................8

*Diviero v. Uniroyal Goodrich Tire Co.*,
114 F.3d 851 (9th Cir. 1997) ....................3

*Dzielak v Whirlpool*,
No. 2:12-0089 (KM) (JBC),
2017 WL 1034197, 2017 U.S. Dist. LEXIS 39232 (D. N.J. Mar. 17, 2017) ....................8

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ....................8

*Elliott v. Google, Inc.*,
860 F.3d 1151 (9th Cir. 2017) ....................4

*Famular v. Whirlpool Corp.*,
No. 16-cv-944 (VB),
2019 WL 1254882, 2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 19, 2019)....................8

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018)....8

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020)....3, 4

*Gunaratna v. Dennis Gross Cosmetology, LLC*,
No. CV 20-2311-MWF (GJSx),
2023 WL 2628620, 2023 U.S. Dist. LEXIS 44771 (C.D. Cal. Mar. 15, 2023)....5

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013)....9

*In re Aluminum Phosphine Antitrust Litig.*,
893 F. Supp. 1497 (D. Kan. 1995)....13

*In re POM Wonderful LLC*,
No. 10-2199,
2014 WL 1225184, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014)....12

*In Re Scotts EZ Seed Litigation*,
No. 12-cv-4727 (VB),
2017 WL 3396433, 2017 U.S. Dist. LEXIS 125621 (S.D.N.Y. Aug. 8, 2017)....8

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)....9

*In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Prods. Liability Litig.*,
424 F. Supp. 3d 781 (N.D. Cal. 2020)....3

*Jones v. ConAgra Foods, Inc.*,
No. C 12-01633 CRB,
2014 WL 2702726, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014)....14

*Keith v. Volpe*,
858 F.2d 467 (9th Cir. 1988)....4

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011)....9

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996)....4

*Maeda v. Kennedy Endeavors, Inc.*,
No. 18-00459-JAO-WRP,
2021 WL 2582574, 2021 U.S. Dist. LEXIS 117433 (D. Haw. June 23, 2021)....8

*Martinelli v. Johnson & Johnson and McNeil Nutritionals*,
No. 2:15-cv-01733-MCE-DB,
2019 WL 1429653, 2019 U.S. Dist. LEXIS 54601 (E.D. Cal. Mar. 29, 2019)....8

*McCrary v. Elations Co. LLC*,
No. EDCV-13-0242-JGB (SPx),
2014 WL 12589137, 2014 U.S. Dist. LEXIS 200660 (C.D. Cal. Dec. 2, 2014)....14

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*McMorrow, et al. v. Mondelez International Inc.*,
No. 17-cv-2326-BAS-JLB,
2021 WL 859137, 2021 U.S. Dist. LEXIS 42885 (S.D. Cal Mar. 8, 2021) ....8

*Montera v. Premier Nutrition Corp.*,
No. 16-cv-06980-RS,
2022 WL 1225031, 2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022) ....8

*Navarro v. Procter & Gamble Co.*,
No. 1:17-cv-406,
2021 WL 868586, 2021 U.S. Dist. LEXIS 43140 (N.D. Ohio Mar. 8, 2021) ....7

*Nelson v. Matrixx Initiatives*,
No. C 09-02904 WHA,
2012 WL 3627399, 2012 U.S. Dist. LEXIS 118300 (N.D. Cal. Aug. 21, 2012) ....5

*Novoa v. GEO Grp., Inc.*,
No. EDCV 17-2514 JGB (SHKx),
2020 WL 8514832, 2020 U.S. Dist. LEXIS 250098 (C.D. Cal. Dec. 18, 2020) ....3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ....4

*Pettit v. Procter & Gamble Co.*,
No. 15-cv-02150-RS,
2017 WL 3310692, 2017 U.S. Dist. LEXIS 122668 (N.D. Cal. Aug. 3, 2017) ....8

*Price [Miles] v. Philip Morris*,
219 Ill. 2d 182 (Ill. 2005) ....8

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ....9

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) ....14

*Sharpe v. A&W Concentrate Co.*,
No. 19-cv-768 (BMC),
2021 WL 3721392, 2021 U.S. Dist. LEXIS 160177 (E.D.N.Y. July 23, 2021) ....8

*Smith v. Keurig Green Mountain, Inc.*,
No. 18-CV-06690-HSG,
2020 WL 5630051, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) ....14

*Snyder v. Bank of Am., N.A.*,
No. 15-cv-04228-KAW,
2020 WL 6462400, U.S. Dist. LEXIS 206437 (N.D. Cal. Nov. 3, 2020) ....5, 6

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ....4

*State of New York v. United Parcel Service, Inc.*,
No. 15-cv-1136 (KBF),
2016 WL 4735368, 2016 U.S. Dist. LEXIS 123115 (S.D.N.Y. Sept. 10, 2016) ....6

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ........ 9

*Stein v. Pac. Bell*,
No. C00-2915 SI,
2007 WL 831750, 2007 U.S. Dist. LEXIS 19193 (N.D. Cal. Mar. 19, 2007) ........ 13

*Testone v. Barlean's Organic Oils, LLC*,
No. 19-cv-169-JLS (BGS),
2021 WL 4438391, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021) ........ 8

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ........ 3

*Vizcarra v. Unilever United States*,
339 F.R.D. 530 (2021) ........ 10

*Werdebaugh v. Blue Diamond Growers*,
2014 WL 7148923, 2014 U.S. Dist. LEXIS 173789 (N.D. Cal. Dec. 15, 2014)
339 F.R.D. 530 (2021) ........ 14

*Willis v. Colgate Palmolive*,
No. 2:19-cv-08542-JGB-RAO,
Order Granting-in-Part Defendant's Motions to Exclude, Denying Defendant's Motions to Exclude, Granting Plaintiff's Motion for Class Certification, and Granting Plaintiff's and Defendant's Applications to Seal,
Dkt. No. 105 (C.D. Cal. Jan. 5, 2023) ........ 8

*Zill, et al. v. Sprint Spectrum et al.*,
No. RG03114147,
Order Granting Plaintiffs' Motion for Class Certification
(Cal. Super. Ct. Alameda County May 25, 2006) ........ 8

**Federal Statutes**

Fed. R. Evid. 702 ........ 1, 2, 3, 4

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Barilla America, Inc.'s expert economist, Dr. Robin Cantor, Ph.D., repeatedly runs afoul of Fed. R. Evid. 702 by rendering unqualified, unreliable, unsupported, and irrelevant opinions. Dr. Cantor took the perception survey that Plaintiffs Matthew Sinatro and Jessica Prost's survey expert, Dr. J. Michael Dennis, PhD., designed and radically modified it, as well as designed her very own materiality study. Additionally, Dr. Cantor used a Difference-in-Difference ("DiD") damages model to compare pricing for two "comparable" products to opine that the Products' price did not change as a result of the use of the Challenged Representation.

**Cantor's Perception Survey:** Relevant here, in Dr. Cantor's perception survey, she created three key survey questions.

- **Unchallenged:** "Version 1" asks consumers whether the Challenged Representation conveys that the Products "ingredients are sourced from Italy" (the "Sourcing Interpretation"). Cantor Rept., ECF 62-2, at ¶ 37, Ex. A, p. 23. In response, **49.2%** of the 200 consumers she sampled indicated they understood the Challenged Representation to communicate the Sourcing Interpretation. *Id.* at ¶ 38, Ex. 5 (noting a confidence interval of **42.0% to 56.4%**).

- **Challenged:** "Version 2" asks consumers whether the Challenged Representation conveys that the "brand is the largest selling pasta in Italy" (the "Selling Interpretation"). *Id.* at ¶ 37, Ex. 3.

- **Challenged:** "Version 3" asks consumers, simultaneously, whether the Challenged Representation conveys "Meaning A" or "Meaning B," which were the Sourcing and Selling Interpretations. *Id.* at ¶ 37, Ex. 4. In response, **36.8%** of the 400 consumers she sampled indicated they understood the Challenged Representation to communicate the Sourcing Interpretation. *Id.* at ¶ 38, Ex. 5 (noting a confidence interval of **31.8% to 41.8%**).

To be clear, because Dr. Cantor's Version 1 perception question is identical to Dr. Dennis's perception question and survey design, Plaintiffs do not seek its exclusion. That is because she merely replicated his survey, demonstrating results that are statistically indistinguishable from Dr. Dennis's perception survey, which found a 57.0% deception rate. *See* Dennis Rept., ECF 52-2, ¶ 37.

Rather, Plaintiffs seek the exclusion of Dr. Cantor's Version 2 and Version 3 perception questions because they are not identical to Dr. Dennis's survey design. As such, neither Defendant nor Dr. Cantor can satisfy Rule 702 because Dr. Cantor is not a survey expert, and Version 3 is

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

unreliable and fails to comport with generally accepted principles in the field of survey research.

**Cantor's Materiality Survey:** Dr. Cantor's materiality survey, like Version 3 of her perception study, was concocted entirely on her own. In it, she asked two key questions. First, she asked a purchase driver question: "Which of the following reasons are *most important* to you when deciding which pasta brand to buy?" Cantor Rept., ECF 62-2, ¶ 42, Ex. 9 (providing 12 different response options and 1 "Other" option to enter text in response) (emphasis added). Next, she asked respondents to rank all reasons selected by allocating 100 percentage points. *Id.* at ¶ 43, Ex. 10. In response to the purchase driver question, 12.2% of consumers identified "Made in Italy" as a "most important" reason that influences their decision to buy a particular brand of pasta. *Id.* at ¶ 44, Ex. 11. Plaintiffs seek the exclusion of Dr. Cantor's materiality study, in its entirety, because she is not a survey expert, the survey is unreliable, and she failed to follow generally accepted principles in the field of survey research.

**Cantor's DiD Model:** Lastly, Dr. Cantor's DiD damages model looked at the difference in pricing between two "comparable" products, the Classic Blue Box pastas (without the Challenged Representation) and Whole Grain (with the Challenged Representation) pastas, between October 2022 or February 2023, and July 2023. Cantor Rept., ECF 62-2, ¶ 73, Ex. 19. Based on her analysis, she opined that there is no change in pricing stemming from the addition or removal of the Challenged Representation. *Id.* at ¶ 74. However, Dr. Cantor's comparison of the pricing for two "comparable" products to isolate any meaningful difference before and after the removal of the Challenged Representation for the Classic Blue Box pastas is notoriously unreliable because it fails to adequately control for confounding factors that influence price. Rather than rely on any actual data to rule out those confounding factors, she opted for heroic assumptions based on nothing more than her extraordinary and unsupported speculation. Accordingly, Plaintiffs seek the exclusion of Dr. Cantor's opinions related to and founded upon her DiD model.

## II. LEGAL STANDARD

Courts do not give experts free license to testify to their unqualified and irrelevant thoughts or unreliable and unsupported opinions. Courts serve as quintessential gatekeepers to ensure that an expert's testimony is both relevant and reliable under Fed. R. Evid. 702. *See Daubert v. Merrell*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020). Rule 702 requires that: (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Experts must be qualified. "As an initial matter, the court must determine if a witness has the required expertise, whether it be 'knowledge, skill, experience, training, or education' under Rule 702(a)." *Novoa v. GEO Grp., Inc.*, 2020 WL 8514832, at *1 (C.D. Cal. Dec. 18, 2020). While a lack of "particularized expertise generally goes to the weight of the testimony, not its admissibility" (*In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Prods. Liability Litig.*, 424 F. Supp. 3d 781, 789 (N.D. Cal. 2020)), witnesses "may not make expert conclusions about areas outside their expertise" (*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5955666, at *2 (N.D. Cal. Nov. 6, 2013)).

Expert testimony must be relevant. "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F. 3d 870, 942 (9th Cir. 2007) (citing *Daubert*, 509 U.S. at 591-92). To assist the trier of fact, there must be "a valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591-92. In other words, the expert testimony must "logically advance[] a material aspect of the proposing party's case." *Beard v. United States Postal Serv.*, 2019 WL 257978, at *2 (N.D. Cal. Jan. 18, 2019) (quotations and citations omitted).

Expert testimony must be reliable. Rule 702 also "demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citing *Daubert*, 509 U.S. at 590). As a "prerequisite" to making a reliability determination, the district court must "assure that the methods are adequately explained." *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (citations omitted). "Scientific evidence is reliable if the principles and methodology used by an expert are grounded in the methods of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

science." *Grodzitsky*, 957 F.3d at 984. In evaluating an expert's testimony under Rule 702, courts may consider: "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Id.* at 985.

In ruling on Plaintiffs' motion for class certification, the Court must consider the admissibility and weight of expert evidence under Rule 702. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022), *cert. denied* 143 S. Ct. 424 (2022). The party offering the proposed expert testimony carries the burden to prove, by a preponderance of the evidence, that the testimony satisfies Rule 702. *Daubert*, 509 U.S. at 592, n.10; *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## III. ARGUMENT

### A. Dr. Cantor is Not Qualified as a Survey Expert and Therefore Cannot Design or Implement Her Own Unique and Unreliable Survey Methodologies

This court should exclude Dr. Cantor's Version 2 and 3 perception survey and materiality survey in their entirety because she is not a survey expert, and she cannot opine that her radically altered surveys were reliably designed according to generally accepted principles. Surveys must be designed and conducted by a qualified expert. *Elliott v. Google, Inc.*, 860 F.3d 1151, 1160 (9th Cir. 2017) ("[T]he district court properly excluded two of Elliott's consumer surveys because they . . . . were designed and conducted by Elliott's counsel, who is not qualified to design or interpret surveys."). Moreover, surveys are admissible if, and only if, they are relevant, conducted according to accepted principles, and set upon a proper foundation for admissibility. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997). The proponent bears the burden of showing "that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner." *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). As set forth below, Defendant and Dr. Cantor simply cannot meet their burden.

/ / /

/ / /

### 1. *Dr. Cantor Is Not a Survey Expert*

Dr. Cantor lacks the requisite background, education, training, and experience to design surveys. Dr. Cantor readily admits that she is not a survey expert:

[redacted]

Ex. 13 [Cantor Dep.] at 69:4-25; 70:4-11.

Dr. Cantor's expertise in economics, however, does not qualify her as an expert in consumer surveys. "Courts regularly find that an expert's qualifications in one field do not automatically translate to qualification to opine in a separate field, even if those fields are related in some general sense." *Gunaratna v. Dennis Gross Cosmetology, LLC*, 2023 WL 2628620 at *9-10 (C.D. Cal. Mar. 15, 2023) (excluding dermatologist from opining on the presence of collagen and equivalency among collagen, reasoning "there is a difference between utilizing an expert in a certain field to opine on a ***sub***-specialization in that field, and utilizing an expert in one specialization (i.e., dermatology) to opine on ***an entirely different*** specialization (i.e., chemistry)."). Indeed, courts have found there is a stark contrast between being an economics expert and a consumer survey expert. *Id.* at *21 (excluding defendant's economist expert for failing to show how he was qualified in consumer survey research).[1]

[1] Courts in the Ninth Circuit exclude an expert's testimony where they stray outside their specialty, despite some tangential relevance. *See*, *e.g.*, *Nelson v. Matrixx Initiatives*, 2012 WL 3627399, at *11 (N.D. Cal. Aug. 21, 2012), *aff'd sub nom. Nelson v. Matrixx Initiatives, Inc.*, 592 F. App'x 591 (9th Cir. 2015) ("Hwang is an otolaryngologist, and diagnoses ear, nose, and throat conditions. He has no specialized epidemiological or toxicological training or credentials. [ ] He has performed no independent scientific research on the issue of Zicam's ability to produce smell loss. He has never studied zinc gluconate, the active ingredient in Zicam or Zicam itself."); *Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 WL 6462400, at *4, 2020 U.S. Dist. LEXIS 206437 (N.D. Cal. Nov. 3, 2020) (excluding witness from giving opinions about the loan modification offers' compliance with NMS, even though the witness had "experience representing, developing, and selling real estate, as well as preparing residential loans," because the witness lacked "the qualifications and experience required to be an expert on the NMS, loan servicing, origination of loans, or credit reporting," notwithstanding their "review[ of] NMS and government reports" and "communicat[ions] with government or bank officials").

Moreover, Dr. Cantor's testimony illustrates that her experience with surveys is limited to using survey data (Ex. 13 [Cantor Dep.] at 70:4-11), or a handful of occasions in which she partnered with colleagues who designed a survey:

[redacted]

Ex. 13 [Cantor Dep.] at 78:25-79:10.

But Dr. Cantor's mere use of survey data to perform economic analyses does not qualify her to design and conduct a consumer survey any more than her partnering with colleagues who designed a survey. For example, in *State of New York v. United Parcel Service, Inc.*, 2016 WL 4735368 at *8 (S.D.N.Y. Sept. 10, 2016), the court excluded an expert economist's consumer survey because he was unqualified. The court found that, although the expert held a Ph.D. in economics and his professional career "involved a number of cases where data was obtained through the use of a survey" (*id.* at *4), he never personally designed a consumer survey before, never received training in survey design methods, and had no experience in survey design more generally (*id.* at *8). Similarly, Dr. Cantor's Ph.D. in economics, use of survey data, and sheer lack of experience in personally designing a survey make her unqualified to design and conduct her Version 2 and 3 consumer perception survey and materiality survey. A review of her curriculum vitae also reveals a complete dearth of any training or education designing surveys, and any publications or presentations regarding the design or methodology of surveys. Cantor Report, ECF 62-2, Attachment 1.

Indeed, Dr. Cantor should be precluded from criticizing the methodology of Dr. Dennis's perception and conjoint surveys. Experts are prohibited from commenting on the reliability of another expert's opinion if they lack expertise in that expert's field. *Apple, Inc.*, Ltd., 2013 WL 5955666, at *2 ("[E]xperts may not make expert conclusions about areas outside their expertise"); *see also Snyder*, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) (excluding expert with expertise



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

in a related area but not the area at issue); *Navarro v. Procter & Gamble Co.*, No. 1:17-cv-406, 2021 WL 868586 at *23-24 (N.D. Ohio Mar. 8, 2021) ("[I]f the second expert lacks expertise in the first expert's field, she has no basis for opining on *the correctness of* the first expert's opinion."). Dr. Cantor has no basis to comment on Dr. Dennis's methodology, and thus, any such commentary in her report or testimony should be excluded.

***2. Dr. Cantor's Modified Perception Surveys Lack Reliability***

Dr. Cantor has not, and cannot, attest to the reliability of her modified perception survey questions Version 2 and 3, or her materiality survey. That is because she has no background, education, training, or experience in the field of survey research. Indeed, her report is devoid of any statements attesting to the reliability of her surveys or whether they are designed in accordance with generally accepted principles in the field of survey research. *See generally* Cantor Rept., ECF 62-2.

While Dr. Cantor replicated Dr. Dennis's design for her Version 1 consumer perception question, she changed the language of her Version 2 question, and then radically altered the format of her Version 3 question. While Dr. Cantor admits that she modified Dr. Dennis's perception survey (Ex. 13 [Cantor Dep.] at 95:17-23), she simply did not concern herself with whether they were reliably designed in accordance with generally accepted principles in the field of survey research. *Id.* at 96:19-97:8 ("[redacted]").

Dr. Dennis, on the other hand, took grave issue with Dr. Cantor's modifications as he, in fact, is a survey expert. Dr. Dennis has extensive experience, spanning over 25 years, involving the design and execution of hundreds of statistical surveys, and the authorship of more than 60 articles, conference and seminar papers, and book chapters. Dennis Rept., ECF 52-2, ¶¶ 3-14. He is a well-respected survey expert and frequent speaker at renowned institutes for experts in his field, including the American Association for Public Opinion Research ("AAPOR") and the American Statistical Association. *Id.* He is currently the Senior Vice President for the National Opinion Research Center, an affiliate of the University of Chicago, which has conducted survey research for governmental, foundational, and academic clients for more than 75 years, and is responsible for some of the most prestigious survey projects in the United States. *Id.* To be sure, numerous courts have accepted Dr.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Dennis's consumer surveys, including, but certainly not limited to:

- *Fitzhenry-Russell v. Dr. Pepper Snapple Group*, 326 F.R.D. 592, 599-601 (N.D. Cal. 2018);
- *De Lacour v. Colgate-Palmolive Co. and Tom's of Maine Inc.*, 338 F.R.D. 324, 345 (S.D.N.Y. 2021);
- *Martinelli v. Johnson & Johnson and McNeil Nutritionals*, 2019 WL 1429653 at *3-4 (E.D. Cal. Mar. 29, 2019);
- *McMorrow, et al. v. Mondelez International Inc.*, 2021 WL 859137 at *15. (S.D. Cal Mar. 8, 2021);
- *Price [Miles] v. Philip Morris*, 219 Ill. 2d 182 (Ill. 2005);
- *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014);
- *In Re Scotts EZ Seed Litigation*, 2017 WL 3396433 at *8-10 (S.D.N.Y. Aug. 8, 2017);
- *Dzielak v Whirlpool*, 2017 WL 1034197 at *16-18 (D. N.J. Mar. 17, 2017);
- *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *4-5 (N.D. Cal. Apr. 26, 2022);
- *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *17 (S.D. Cal. Sept. 28, 2021);
- *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017);
- *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at *9 (E.D.N.Y. July 23, 2021);
- *Maeda v. Kennedy Endeavors, Inc.*, 2021 WL 2582574, at *6 (D. Haw. June 23, 2021);
- *Benson v. Newell Brands, Inc.*, 2021 WL 5321510, at *6 (N.D. Ill. Nov. 16, 2021);
- *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *10, n.6 (S.D.N.Y. Mar. 19, 2019);
- *Willis v. Colgate Palmolive*, Case No. 2:19-cv-08542-JGB-RAO, Order Granting-in-Part Defendant's Motions to Exclude, Denying Defendant's Motions to Exclude, Granting Plaintiff's Motion for Class Certification, and Granting Plaintiff's and Defendant's Applications to Seal, Dkt. No. 105 (C.D. Cal. Jan. 5, 2023); and
- *Zill, et al. v. Sprint Spectrum et al.*, No. RG03114147, Order Granting Plaintiffs' Motion for Class Certification (Cal. Super. Ct. Alameda County May 25, 2006).

*See also* Dennis Rept., ECF 52-2, ¶ 6, Ex. A, pp. 2-3 (listing cases); Dennis Rebut Rept. at ¶ 45 (same).

Of note, Dr. Cantor's Version 3 perception question simultaneously asks about two interpretations in one question. Dr. Dennis deems this modification a "radical alteration of [his] key consumer perception question." Dennis Rebuttal Rept. at ¶ 21. He emphasizes that the survey question is not designed according to generally accepted principles in the field of survey research:

> Dr. Cantor's question construction is irregular and not supported by authoritative survey literature or any survey research textbooks with which I am familiar. . . . I have conducted or reviewed thousands of online surveys in my career, and I have never seen this question format of collecting two responses about different attitudes in the form of one question. Critically, Dr. Cantor's survey question violates basic principles in survey research by mashing together two measurements about separate issues into one survey question. The survey question construction prevents an unbiased and unprimed measurement of either perception statement because it requires the simultaneous consideration of two different meanings.
>
> . . . .
>
> Stated differently, the question format Dr. Cantor used in Version 3 is a format that is not generally accepted in the field of marketing science or survey research.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Dennis Rebut. Rept. at ¶¶ 22, 28. He goes on to explain certain "fundamental design error[s]" that create confusion, bias and priming of respondents to create a compare-and-contrast exercise that suggests there is only one correct meaning. *Id.* at ¶¶ 23-26 (further noting a lack of any qualitative testing necessary to ensure the question was reliably designed.). Each of these fundamental design flaws are the result of Dr. Cantor's sheer lack of experience. They operate to skew results and artificially deflate the deception rate for the Challenged Representation's Sourcing Interpretation in favor of its Selling Interpretation. In a word, Dr. Cantor's Version 3 perception survey is unreliable.

Dr. Cantor's materiality survey fares no better. Dr. Cantor uses a primitive two-question battery: a purchase driver question (inquiring into consumers "most important" reasons), followed by a constant-sum question (asking respondents to rank their section reasons by allocating 100 points amongst them). The latter constant-sum question hinges on the first purchase driver question, such that the latter suffers from all of the methodological flaws in the first. *Id.* at ¶ 32. Although Dr. Cantor designed this survey to evaluate the Challenged Representations materiality, as Dr. Dennis notes, she failed to do so.

Under the law, "[a] misrepresentation is judged to be 'material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 494 (N.D. Cal. 2021) (Ryu, J.) (quotations and citations omitted); *accord Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). To be clear, a misrepresentation need not be the "only cause, or even the ***predominant or decisive*** factor influencing [their] conduct." *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 529-530 (N.D. Cal. 2012) (emphasis added); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 403 (N.D. Cal. 2021) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 332 (2011)).

As Dr. Dennis explains, "Dr. Cantor's question fails in its basic survey question construction." Dennis Rebuttal Rept. ¶ 31. "[T]he survey is inherently confusing to respondents. The question asks respondents to select "reasons" – a concept meaning more than one – that are "most important" – a concept implying singularity and uniqueness. The juxtaposition of concepts

meaning "more than one" and "one" is jarring and perplexing to respondents, in my expert opinion. Because Dr. Cantor failed to do any qualitative research regarding her questionnaire, she does not have any evidence that the respondents understood her survey question in the way that she intended." *Id.* (further noting the lack of any qualitative research necessary to support the questions reliability notwithstanding its facial inconsistency). Put plainly, when Dr. Cantor asked for the "most important" reason, it suggests respondents may only select one reason. In turn, that artificially reduces the number of respondents who would, consistent with the law, identify all reasons with which they attach importance. Thus, Dr. Dennis concluded that, "if Dr. Cantor intended to measure materiality, her survey failed to do so. Her survey question simply cannot reliably determine whether the 'Made in Italy' feature is important to consumers in deciding whether to buy the Products, or otherwise influenced consumer purchase decisions, because Dr. Cantor's survey expressly asked respondents about the singular "most important" reason or "most important" reasons (depending on how respondents understood the question)." *Id.* at ¶ 32. It is for this reason that she cannot say whether the deception rates resulted from a genuine disregard for the "Made in Italy" attribute, or whether they resulted from the flaw in her survey design.

Additionally, Dr. Dennis noted several more fundamental flaws that make Dr. Cantor's purchase drive question unreliable. *Id.* at ¶¶ 33-35. Those include the failure to use the actual Challenged Representation, instead of "Made in Italy" (*see Vizcarra v. Unilever United States*, 339 F.R.D. 530, 553-554 (2021) (precluding survey testing "source of vanilla" instead of the actual challenged labeling claim)); laundry list of available responses that results in the under-selection of less salient responses and over-selection of more salient responses (finding 12 close-ended responses and one option to write in a response overly lengthy "by any measure"); and the "primitive, outdated" nature of this technique "devoid of marketplace realism." *Id.* For all of those reasons, Dr. Dennis concluded that Dr. Cantor's "purchase driver survey question is unreliable and fails to conform to generally accepted principles governing the design of surveys." *Id.* at ¶ 36.

Dr. Dennis also concluded that Dr. Cantor's constant-sum question that asked respondents to rank or allocate points to the selected reasons, likewise, is unreliable and fails to comport with generally accepted principles in the field of survey research. *Id.* at ¶ 40. In doing so, he noted that

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

such questions are "cognitively challenging" and characteristically result in the overemphasis on one or two attributes that favor more salient options over the less salient options. *Id.* at ¶ 38. It is for these reasons that Dr. Cantor's materiality study unreliably skews results in favor of a few most salient purchase drivers, like price, quality, and taste (Cantor Rept., ECF 62-3, at ¶ 45, Ex. 12), which is only compounded by the problems stemming from the first question. As before, Dr. Cantor cannot say whether the number of points allocated to the "Made in Italy" attribute reflects a genuine disregard, or whether it results from the flaw in her survey design.

### B. <u>Dr. Cantor's Difference-in-Difference Damages Model Is Fatally Flawed</u>

The Court should exclude Dr. Cantor's Difference-in-Difference damages model as it is deeply flawed and unreliable. It compares prices for the Whole Grain pastas (with the Challenged Representation) with prices for the Classic Blue Box pastas (without the Representation), before and after the removal of the Challenged Representation from the Classic Blue Box product line (beginning October 2022 to February 2023, through July 2023). Cantor Rept. at ¶¶ 68-74. Dr. Cantor uses the DiD model in an attempt to show that the removal of the Challenged Representation had no impact on sales or price of the Products. *Id.* Before-and-after and product-comparison analyses, such as this, present a myriad of problems because it is "virtually impossible" to rule out the impact of confounding variables. Weir Rebuttal Rept. at ¶ 70. Dr. Cantor's DiD model is so flawed that it should be excluded as unreliable and unsupported, or, in the very least, accorded little to no weight.

First, the crux of a difference-in-differences regression model is that the products being compared must be sufficiently similar, such that none of their variations could have an impact on supply or demand. Weir Rebuttal Rept. at ¶ 72. "Indeed, the results of a difference-in-difference analysis become more unreliable for every degree that the products used in that analysis are not comparable." Weir Rebuttal Rept. at ¶ 82. Yet, the only analysis that Dr. Cantor appears to have done is limited to reviewing their pricing patterns. Cantor Rept., ECF 62-2, ¶ 71. Similar pricing patterns, alone, are inadequate. Weir Rebuttal Rept. at ¶¶ 83-84 ("It is not hard to imagine a box of pasta that would have a similar historic price trend with a carton of rice. . . . The very fact that Barilla produces two different product lines, with drastically different levels of demand, selling for different prices, comprised of different ingredients, produced with different manufacturing costs, is evidence

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

enough that these products are not comparable for difference-in-difference."). These factors do not render the two products wholly dissimilar, but the factors need to be accounted for in the DiD model to produce a reliable result—Dr. Cantor simply failed to do that. Weir Rebut. Rept. at ¶ 91.

Indeed, courts in false advertising cases have repeatedly rejected the determination of a price premium through the comparison of prices for class products and "comparable" products because it is virtually impossible to find comparable products that are virtually the same. *In re POM Wonderful LLC*, 2014 WL 1225184, *5, n.7 (C.D. Cal. Mar. 25, 2014) (excluding damages model that averages price differences for class products without any analysis of the factors causing price fluctuations); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460 (S.D. Cal. 2014) (rejecting comparison of pricing for class and comparable products absent the use of products that are "exactly the same" except for the challenged claim to "control and neutralize all other product differences," which it found is "nearly impossible as no two products are completely identical," finding a multitude of confounding factors can influence price, such as varying quality of ingredients, colors, and costs expended in the research and development of the products).

Second, Dr. Cantor's testimony confirms that she did not engage in a thorough analysis of whether the DiD model adequately accounts for important variables; instead, she just *assumes* that they would not impact price. *See* Weir Rebuttal Rept. at ¶ 74 ("the product [Dr. Cantor] uses as a comparison are decidedly non-comparable for purposes of a difference-in-differences analysis. And [Dr. Cantor] would not know this, because she did not perform any due diligence . . . . She simply assumed it to be true without any analysis or consideration of evidence to support that assumption.").

Dr. Cantor fatally ignores the importance of variables such as Defendant and competitor advertising when assessing whether the products are sufficiently similar for a DiD Model. Weir Rebuttal Rept. at ¶¶ 75-77. Indeed, Dr. Cantor also admits that the DiD Model does not include controls for advertising spend. Ex. 13 [Cantor Dep.] at 276:1-3 (Q: "[redacted]"); Weir Rebuttal Rept. at ¶ 75. For these variables, not only did Dr. Cantor not factor them into the DiD Model, but she did not even review the relevant data. Ex. 13 [Cantor Dep.] at 282:18-24 (Q: "[redacted]

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

[redacted]"); Weir Rebuttal Rept. at ¶ 77.

Dr. Cantor never considered integral variables for difference-in-differences regression models; instead she relied on heroic assumptions:

[redacted]

Ex. 13 [Cantor Dep.] at 279:6-25.

Dr. Cantor disingenuously claims her use of "fixed effects" accounts for all variables. They do not. A fixed effect, by definition, "does not vary" and can only "capture the effects of that unvarying element." Weir Rebuttal Rept. at ¶ 97 (e.g., the pasta format, over time, for spaghetti will not vary and therefore can be controlled by a fixed effect). "For example, Cantor uses a collection of yearly fixed effect variables . . . [this] might control for annual effects, but because of the 'fixed' nature of the control, it does not control for variations that might occur across other time periods, such as months." Weir Rebuttal Rept. at ¶ 98. "[I]f the competition is not specific to the product, or as noted above, the competitive behavior changes over time, the fixed effect controls are no longer able to prevent her difference-in-difference model from being confounded." Weir Rebuttal Rept. at ¶ 102. Thus, Dr. Cantor's use of fixed effects as a cure-all for the DiD model's shortcomings is completely inappropriate.

These variables need to be accounted for in a difference-in-differences regression, but there is no evidence Dr. Cantor did so. Assumptions such as these are grounds for rejecting Dr. Cantor's DiD model. Courts consistently reject regression models when experts fail to account for necessary variables and make lofty, baseless assumptions. *Stein v. Pac. Bell*, No. C00-2915 SI, 2007 WL 831750, at *12 (N.D. Cal. Mar. 19, 2007) (citing *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040-41 (8th Cir. 1999) (rejecting damages model for not considering "all

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

independent variables that could affect the conclusion"); *In re Aluminum Phosphine Antitrust Litig.*, 893 F. Supp. 1497, 1504 (D. Kan. 1995) (finding regression model was flawed because it made impermissible assumptions with no fact basis).

Indeed, courts in false advertising cases have repeatedly rejected the determination of a price premium through the comparison of prices for class products and "comparable" products, or "before and after" analyses, because they frequently fail to control for confounding variables that influence pricing. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, *20 (N.D. Cal. June 13, 2014) (rejecting comparison of prices between class products and comparable product, finding the approach "deeply flawed," even though the expert claimed to control for confounding factors that may affect sales, because: the expert failed to provide a clearly defined list of variables; failed to determine whether the data related to any or all of the proposed control variables actually exists; and failed to determine or show how he determined what competing and complementary products he used); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, *9, 12 (N.D. Cal. Dec. 15, 2014) (rejecting before and after regression analysis, which compared differences in sales of products before and after the use of the challenged advertising claim, because, among other things, the model failed to control for the impact of advertising on price)

Third, Dr. Cantor's DiD model is also wholly irrelevant or otherwise should be accorded little to no weight. Her model does not calculate damages for harm to the class—as Dr. Cantor readily admits. Ex. 13 [Cantor Dep.] 275:9-25 (Q: "[redacted]."). But courts have consistently held that the absence of a price change following the addition or removal of a challenged labeling claim simply does not refute the existence of a price premium. *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018). "The fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium." *Id.* (citing *McCrary v. Elations Co. LLC*, 2014

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) ("A price premium may exist even though, at some point," the product "was sold at the same price" with and without the alleged misrepresentation)); *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *9 (N.D. Cal. Sept. 21, 2020) (rejecting defendant's argument that, "because there is no price difference between the Products and non-recyclable K-Cups, Plaintiff's damages proposals are entirely conjectural.").

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion and exclude Dr. Cantor's unqualified, irrelevant, unsupported, and unreliable opinions, including her: (1) Perception Survey Questions Version 2 and Version 3; (2) Materiality Survey; (3) criticisms of the methodology of Dr. Dennis's perception and conjoint surveys; and (4) Difference-in-Difference Model.

Dated: February 8, 2024

**CLARKSON LAW FIRM, P.C.**

By: */s/ Katherine A. Bruce*
Ryan J. Clarkson
Katherine A. Bruce
Alan Gudino

*Attorneys for Plaintiffs*