**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MATTHEW SINATRO and JESSICA PROST, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BARILLA AMERICA, INC.,

Defendant.

Case No. 4:22-cv-03460-DMR
Action Filed: June 11, 2022
FAC Filed: July 20, 2022

*Assigned to Hon. Donna M. Ryu*

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENDANT'S CLASS CERTIFICATION EXPERT ROBIN CANTOR**

Hearing Information:
Date: May 9, 2024
Time: 1:00 p.m.
Courtroom: 4 (videoconference only)

MCC Hrg: 5/09/2024

**REDACTED—PUBLICLY FILED**



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Dr. Cantor is Wholly Unqualified to Serve as a Survey Expert .......... 1

1. Defendant Mischaracterizes Dr. Cantor's "Expertise" in Survey Research in Direct Contradiction to Her Testimony .......... 2

2. Case Law Supports Dr. Cantor's Disqualification .......... 5

B. Dr. Cantor's Survey is Unreliable and Does Not Follow Generally Accepted Principles that Govern Survey Research .......... 6

1. Perception Survey .......... 7

2. Materiality Survey .......... 8

C. Dr. Cantor's DiD Model is Unreliable and Irrelevant .......... 11

III. CONCLUSION .......... 15

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**TABLE OF AUTHORITIES**


**Cases** **Page No.**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) ....1

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035 (8th Cir. 1999) ....13, 14

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) ....

*Estes Park Taffy Co., LLC v. Original Taffy Shop, Inc.*, No. 15-CV-01697-CBS, 2017 WL 2472149 (D. Colo. June 8, 2017)....5

*Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979 (9th Cir. 2020) ....1, 6

*Gunaratna v. Dennis Gross Cosmetology, LLC*, No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)....1, 5

*In re Aluminum Phosphine Antitrust Litig.*, 893 F. Supp. 1497 (D. Kan. 1995)....13, 14

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594 (9th Cir. 1996) ....1

*Morales v. Unilever U.S. Inc.*, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014)....12

*Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2020 WL 8514832 (C.D. Cal. Dec. 18, 2020) ....1

*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)....10

*Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520 (N.D. Cal. 2018)....15

*Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ....15

*Snyder v. Bank of Am., N.A.*, No. 15-cv-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ....1

*Stein v. Pac. Bell*, No. C00-2915 SI, 2007 WL 831750 (N.D. Cal. Mar. 19, 2007)....13, 14

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ....................14, 15

*United States v. H & R Block, Inc.*,
831 F. Supp. 2d 27 (D.D.C. 2011) ....................5

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ....................7

*Vizcarra v. Unilever United States*,
339 F.R.D. 530 (N.D. Cal. 2021) ....................9

*Young v. Cree Inc.*,
No. 4:17-CV-06252-YGR,
2021 WL 292549 (N.D. Cal. Jan. 28, 2021) ....................6

**Federal Statutes**

Fed. R. Evid. 702 ....................1,3, 5, 6

**Other Authorities**

Alexander Buoye et al.,
*WAR: What Else is it Good for? A Comparison of Maximum Difference Scaling, Adaptive Choice-Based Conjoint, Constant Sum Scaling and Wallet Allocation Rule Utilities*,
4 J. Creating Value 61 (2018) ....................10

Bryan K. Orne,
*Getting Started with Conjoint Analysis* (2d ed. 2010) ....................10

Mario Callegaro, et al.,
*Web Survey Methodology* (2015) ....................10



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## I. INTRODUCTION

Defendant Barilla America, Inc.'s opposition to Plaintiffs' motion to exclude certain of Dr. Cantor's opinions rings hollow, is unpersuasive, and has a common theme of skirting Defendant's obligation to satisfy Fed. R. Evid. 702. Defendant is the proponent of Dr. Cantor's expert opinions and, therefore, Defendant carries the burden of proving that she is not only qualified to render them, but that they are relevant, and follow generally accepted, reliable scientific principles. Defendant fails to make such a showing. In fact, Defendant repeatedly fails to even attempt to make such a showing in attempting to shift its burden to Plaintiffs to prove that she is not qualified and that her opinions are not relevant or reliable. Defendant simply fails at every turn to prove that Dr. Cantor meets the demands of Rule 702. Accordingly, the Court should grant Plaintiffs' motion to exclude Dr. Cantor's opinions or, alternatively, disregard them as having little to no weight.

## II. ARGUMENT

"It is the proponent of the expert who has the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Defendant does not meet this burden. Defendant fails to illustrate to the Court that Dr. Cantor is qualified to serve as a survey expert and that she followed reliable scientific principles in rendering her opinions. Defendant's shortcomings warrant exclusion under Rule 702. *See Novoa v. GEO Grp., Inc.*, 2020 WL 8514832, at *1 (C.D. Cal. Dec. 18, 2020); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2013 WL 5955666, at *2, (N.D. Cal. Nov. 6, 2013) ("[E]xperts may not make expert conclusions about areas outside their expertise"); *see also Snyder v. Bank of Am., N.A.*, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) (excluding expert with expertise in a related area but not the area at issue); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984-85 (9th Cir. 2020).

### A. Dr. Cantor is Wholly Unqualified to Serve as a Survey Expert

Defendant makes thinly veiled attempts to masquerade Dr. Cantor's expertise in economics as expertise in survey methodology. But "[c]ourts regularly find that an expert's qualifications in one field do not automatically translate to qualification to opine in a separate field, even if those fields are related in some general sense." *Gunaratna v. Dennis Gross Cosmetology, LLC*, 2023 WL 2628620 at *9-10 (C.D. Cal. Mar. 15, 2023). Defendant shows a connection between economics

and survey methodology in a "general sense," but Defendant does not and cannot show that Dr. Cantor's experience in economics creates expertise in survey methodology. Defendant's Opp. Mot. to Exclude Robin Cantor ("Opp. MTE Cantor"), ECF 71, at 9-12.

**1. Defendant Mischaracterizes Dr. Cantor's "Expertise" in Survey Research in Direct Contradiction to Her Testimony**

Defendant lists out Dr. Cantor's purported qualifications to serve as a survey expert in its Opposition. Opp. MTE Cantor, ECF 71, at 9-12. As set forth below, Defendant's bullet points are incredibly misleading. *First*, Dr. Cantor not only admits survey research and economics are two different disciplines that only overlap to the extent that economists use survey-generated data, but she also admits that she, herself, is not a survey expert. *Second*, Dr. Cantor also does not have the educational background or training; nor has she taught students on how to conduct survey research with only an extremely narrow and limited exception irrelevant to consumer perception and materiality surveys like those at issue here. *Third*, Dr. Cantor has not actually peer-reviewed or published any articles about survey research. *Fourth*, Dr. Cantor has only participated in the design of a grand total of five consumer surveys in her lifetime and the only purported perception or materiality survey that she designed was done nearly half a century ago, in another country on a different continent, and it had nothing to do with how a consumer interprets marketing claims or whether they motivate purchases. *Fifth*, Dr. Cantor's litigation experience is limited to evaluating survey data from the perspective of an economist. It does not involve designing and implementing surveys.

Dr. Cantor, herself, recognizes that survey research and economics are separate disciplines that only overlap to the extent that economists input survey generated data into their analysis. Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 82:3-9. And, critically, she admitted that she does not "consider [herself] an expert in survey research." *Id.* at 69:4-25 ([redacted]); *id.*at 70:4-11 ([redacted]).



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Dr. Cantor admits that she lacks education and training in survey research. She has not done any coursework in survey research or the design of survey questionnaires. Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 77:13-24 ([redacted]"). She could not even name any of the accredited universities that grant Ph.D. degrees in survey research. *Id.* at 100:4-13. although Defendant and Dr. Cantor suggest that she taught graduate students at John Hopkins University how to design surveys, that experience was limited to teaching an economics course that provided information on one specific type of survey methodology (contingent valuation) and, as she admits, she "[redacted]" Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 80:17-81:9.

Although Defendant claims Dr. Cantor has reviewed "hundreds" of surveys for the National Science Foundation, she admits that her review was limited to sending proposed surveys to survey research experts for peer review and to provide her with the feedback she needed to decide whether to recommend funding the proposed research. Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 77:24-78:24, 101:8-21. Although Defendant claims that Dr. Cantor has published articles in peer-reviewed journals about survey research, Dr. Cantor admits that she has "[redacted]" Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 100:14-24. Nor has she published in Public Opinion Quarterly, the leading journal in the field of survey research. *Id.* at 101:1-7.

Although Defendant suggests that Dr. Cantor has designed and implemented or conducted an unspecified number of "surveys" throughout the course of career, she admits that she, personally, has only participated in the design of approximately five consumer surveys in her lifetime, and that she worked with other people to design them. Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 78:25-79:10. None of those five surveys were admitted in any Court of law under the criteria laid out in Fed. R. Evid. 702 or some similar state evidence code. *Id.* at 79:18-80:3. None of those five surveys were published in a peer-reviewed journal. *Id.* at 80:4-16. Indeed, there was only occasion where she *merely contributed* to designing a *consumer* "perception" or "materiality" survey. *Id.* at 82:10-



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

86:13. But upon further examination, the survey did not involve consumer perceptions (e.g., how consumers interpret advertisements), or materiality (e.g., purchase intentions). *Id.* She and her colleagues did not design it within the last quarter-century; rather, they designed it nearly half a century ago. *Id.* And, it did not even involve United States consumers. *Id.* It involved Madagascar consumers and how their fuel wood performed. *Id.*

Defendant similarly vaguely suggests that Dr. Cantor has "a number of times," or "from time to time," and "not [] infrequently," "been in the position of doing expert work." *Id.* 9-11. Such word-choice and lack of clear and concrete examples of Dr. Cantor's experience is revealing. Indeed, Defendant vaguely suggests that courts have "accepted" Dr. Cantor's opinions in only eight instances, highlighting a few cases that Defendant and Dr. Cantor seemingly believe should impress this Court with her survey research expertise. Opp. MTE Cantor, ECF 71, at 9-11 (citing *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, M.D. Fla. No. 8:11-cv-00775-SCB-TBM ("*Ameritox*"); *Papasan v. Dometic Corporation*, S.D. Fla. 1:16-cv-22482-RNS ("*Papasan*"); *State of Florida v. Georgia*, Ga. Sup. Ct. 142 ("*State of Florida*"); and *Tyson Foods, Inc. v. Bouaphakeo et al.*, No. 14-1146 ("*Tyson*").

These cases, however, do not illustrate Dr. Cantor's experience as a survey expert. Instead, these cases offer more proof that Dr. Cantor is an economist who can only evaluate a survey's data from the standpoint of an economist. In Dr. Cantor's *Ameritox* report, she states that she was engaged "as an economics expert to investigate what, if any, damages might be due to Ameritox in this action." *Ameritox*, Cantor Decl., 12/30/2013, Dkt. No. 316-1, at ¶ 3. Dr. Cantor similarly characterized herself as an economist (with no mention of expertise in surveys), in *Papasan*, where Dr. Cantor did not perform or design any consumer survey and simply evaluated the plaintiff's expert's damages model "[b]ased on [her] training and experience as an economist." *Papasan*, Cantor Rept., 3/20/2019, Dkt. No. 352-7, at ¶ 16. Defendant also readily admits that, in *Tyson*, she and several colleagues submitted an *amicus curiae* brief about statistical data; she did not design, field, and analyze any surveys. Opp. MTE Cantor, ECF 71, at 10. And, in *State of Florida*, Dr. Cantor's opinions merely applied her environmental economics expertise to another expert's survey designed to assess community valuation of natural resources and conservation. *State of Florida*,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Cantor Rept., 10/26/2016, at ¶¶ 1-3. But criticizing a survey, from an economics perspective, about the apportionment of water rights between states has no bearing on properly designing consumer surveys regarding inexpensive everyday household goods or foods. *Id.* at ¶¶ 3-7.

**2. Case Law Supports Dr. Cantor's Disqualification**

Defendant suggests that courts find an expert's credentials as an economist, alone, qualify them to design and implement surveys. Opp. MTE Cantor, ECF 71, at 11. That is wrong. For example, Defendant misrepresents *United States v. H & R Block, Inc.*, 831 F. Supp. 2d 27, 32 (D.D.C. 2011). In *H & R Block*, the court held that the economist could properly rely on a survey for her expert report, but the crucial difference is that the economist did *not* design the survey and instead relied on a market research firm specializing in surveys to conduct the survey. *Id.* at 30-32. Similarly, Defendant misleads this Court by citing *Estes Park Taffy Co., LLC v. Original Taffy Shop, Inc.*, No. 15-CV-01697-CBS, 2017 WL 2472149, at *2 n.3 (D. Colo. June 8, 2017) for the same proposition. But the parties in *Estes Park Taffy*, "stipulated that [the expert] is qualified to offer expert opinions in the areas of marketing and survey research." *Id.* at *2, n.3. *H & R Block* and *Estes Park Taffy* do not stand for the proposition that an economist categorically is qualified to design and conduct surveys.

Defendant also makes a puzzling argument to distinguish *Gunaratna v. Dennis Gross Cosmetology*, 2023 WL 2628620 at *9-10 (C.D. Cal. Mar. 15, 2023). In the body of its brief, Defendant chooses to focus on a less applicable aspect of the opinion (a dermatologist attempting to serve as a chemistry expert) and hides from the fact that the Court excluded the economist from rendering opinions as a survey expert due to their lack of qualifications. *Id.* Defendant feebly argues in a footnote that, unlike the economist in *Gunaratna*, Dr. Cantor has "demonstrated expertise regarding consumer behavior, survey methodology, and conjoint analysis." Opp. MTE Cantor, ECF 71, at 12, n.3. Similarly, Defendant argues that *State of New York v. United Parcel Service, Inc.*, 2016 WL 4735368, at *8 (S.D.N.Y. Sept. 10, 2016) does not apply because Dr. Cantor has such vast expertise in the field of survey research. As detailed above, however, Dr. Cantor's background, education, training, and experience fall far short of the requirements under Fed. R. Evid. 702.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant's listed qualifications for Dr. Cantor can be summarized as an economist that merely uses survey data or evaluates survey data from the standpoint of an economist. But an "expert's qualifications in one discipline do not make him qualified in a separate field." *Young v. Cree Inc.*, 2021 WL 292549, at *13 (N.D. Cal. Jan. 28, 2021). Simply put, Dr. Cantor's expertise in economics does not translate to expertise in survey research. Such an extrapolation of expertise would be akin to treating a heart surgeon like a pharmacist, and *vice versa*. A pharmacist regularly designs and compounds medications that a heart surgeon routinely prescribes to patients. And a heart surgeon regularly consults with a pharmacist about the pharmacological effects and interactions of drugs, as well as places orders for a pharmacist to interpret, fill, and provide patients with directions and contraindications on use. In the same way, a survey expert may frequently design and implement surveys that generate data, which an economist evaluates from an economics standpoint to render opinions about the market. And a survey expert may take input from an economist to improve a survey's design on matters of economic importance or, if they lack the expertise, assist in interpreting the results and expand on conclusions. These professionals may consult one another or operate in tandem to treat patients or evaluate the market. However, nobody hires a pharmacist to perform heart surgery, or asks a heart surgeon to design and compound medication, because each professional simply does not have the expertise to perform the other's job safely or correctly. In the same way, an economist, having little to no understanding of the principles of survey, is no more qualified to design a reliable survey than a pharmacist is qualified to successfully perform heart surgery.

**B. <u>Dr. Cantor's Survey is Unreliable and Does Not Follow Generally Accepted Principles that Govern Survey Research</u>**

Concerns regarding Dr. Cantor's lack of qualifications are compounded by her failure to follow generally accepted principles that govern survey research. Fed. R. Evid. 702 requires the proponent of expert evidence to prove that the opinions are reliable and, in surveys under Ninth Circuit law, designed according to principles that are "generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Grodzitsky*, 957 F. 3d

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

at 985; *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). The court must, as a "prerequisite" to a reliability determination, "assure that the methods are adequately explained" by the proponent of the expert evidence. *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (citations omitted). Defendant fails at every turn to meet its burden.

**1. Perception Survey**

Dr. Cantor fails to adequately prove that she followed generally accepted scientific principles as to Version 2 and Version 3 of her perception survey. Defendant provides long string-cite citations to scientific articles in an attempt to support Dr. Cantor's materiality survey and her DiD model—yet there is a noticeable dearth of any such citations in support of Dr. Cantor's perception survey. Opp. MTE Cantor, ECF 71, at 8-9, 15-17. That is because Defendant cannot meet its burden to prove that Dr. Cantor followed generally accepted scientific principles for the survey.

Defendant and Dr. Cantor radically modified Dr. Dennis's survey to produce unreliable data, hoping that Dr. Dennis will carry their burden to show its reliability. Specifically, Defendant argues that Dr. Cantor's survey follows the same methodology as Dr. Dennis's survey and, therefore, it must be reliable. This is simply illogical and directly contradicted by the only survey expert in this case—Dr. Dennis. First, it is readily apparent that Dr. Cantor's survey questions are not identical to Dr. Dennis's survey questions. Version 2 tests an entirely different interpretation of the Challenged Representation using wording that Dr. Dennis did not draft. Additionally, Version 3 is a "mash[es] together two measurements about separate issues into one survey question," which Dr. Dennis explained fails to follow any generally accepted principles in the field of survey research. Dennis Rebut. Rept., ECF 65-1, at ¶ 22. Dr. Cantor readily admits that she made changes to Dr. Dennis's survey questions, yet confusingly characterizes her survey as a replication of Dr. Dennis's survey. Pltf. Ex. 13 [Cantor Dep.], ECF 67-4, at 87:11-24 ([redacted]); Cantor Supp. Decl., ECF 71-1, at ¶ 11. Common sense dictates that if one makes

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

changes to something it cannot be a replication and, in the field of survey research, wording and question format can render a survey wholly unreliable.

Despite Defendant's best attempts, it cannot look to Dr. Dennis to demonstrate the reliability of a survey designed by its unqualified "expert." This is particularly true where Dr. Dennis has very clearly explained that Dr. Cantor's modified survey lacks reliability. Dr. Dennis details the biased and leading nature of Dr. Cantor's creation and how her modifications render his original design unreliable. Dennis Rebut., ECF 65-1, at ¶¶ 22-28. Indeed, Dr. Dennis took particular umbrage with Version 3. He emphasized that he has "conducted or reviewed thousands of online surveys in [his] career, and [he has] never seen this question format of collecting two responses about different attitudes in the form of one question." *Id.* at ¶ 22, 28. Ultimately, Dr. Dennis explained, "Version 3 is a format that is not generally accepted in the field of marketing science or survey research." *Id.* Accordingly, Defendant simply cannot expect Dr. Dennis to lay the requisite foundation for Dr. Cantor's survey.

**2. Materiality Survey**

The counter arguments raised by Defendant regarding Dr. Cantor's materiality survey are ill-formed and have little to no persuasive value. *First*, Defendant characterizes Plaintiffs' arguments on the wording of Dr. Cantor's "most important reasons" purchaser driver question as mere quibbling with words. Opp. MTE Cantor, ECF 71, at 13. However, Plaintiffs do not merely quibble with Dr. Cantor's word choice. Rather, Plaintiffs have identified how Dr. Cantor's question leads to biased and skewed results. Plaintiffs' Motion to Exclude Robin Cantor ("MTE Cantor"), ECF 66, at 9-10. Indeed, Dr. Dennis explains that "Dr. Cantor's question fails in its basic survey question construction." Dennis Rebut. Rept., ECF 65-1, at ¶ 31.

To support Dr. Cantor's utterly confusing and contradictory question, Defendant tries to compare Dr. Dennis's qualitative debriefing of survey respondents in focus groups with Dr. Cantor's quantitative online survey. Defendant compare apples and oranges. Dr. Dennis conducted focus groups where he interviewed respondents in depth about their experience, prodded them to explore their impressions, experiences, and underlying reasons, and then used their input to evaluate and perfect the design of his quantitative survey to ensure that it will achieve his goal of reliably

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

measuring whether consumers interpret advertising claims consistent with the alleged theory. Dr. Dennis's online quantitative survey is the result of that interrogation; it's not a replacement for it. Defendant's insinuation that Dr. Dennis somehow endorses the use of Dr. Cantor's question design could not be further from the truth.

Indeed, Dr. Cantor failed to do any qualitative testing of her survey, whether in the form of pretesting, cognitive interviews, or debriefing focus groups, like Dr. Dennis. Dennis Rebut. Rept., ECF 65-1, at ¶¶ 23-26. Such qualitative research is integral in assessing the reliability of a survey's design because "[w]ithout any focus groups or qualitative research in testing her survey questionnaire, she has no evidence that respondents were able to understand her survey question the way she intended." *Id.* at ¶ 26. Dr. Cantor's failure to conduct this critical step further compounds her already egregious shortcomings of proving the reliability of her surveys

*Second*, Defendant misreads *Vizcarra v. Unilever United States*, in a rough attempt to distinguish that case from the present case. 339 F.R.D. 530 (N.D. Cal. 2021). Defendant argues that since *Vizcarra* dealt with a conjoint analysis survey measuring price premium, that it "does not apply" to Dr. Cantor's materiality survey. Opp. MTE Cantor, ECF 71, at 14. While aspects of that opinion do involve a conjoint analysis, the court also found the perception and materiality study failed to determine the effect of the challenged vanilla representations, just as Dr. Cantor did here. *Vizcarra*, 339 F.R.D. at 549-50. Of note, in *Vizcarra*, the court found that the surveys had "no bearing on the question of whether the vanilla representations were material to a reasonable person when purchasing the ice cream at issue" because the materiality survey tested consumers' preference for vanilla flavoring derived from vanilla plants generally rather than testing the exact vanilla representations that the plaintiffs alleged were false and deceptive. *Id. Vizcarra*, therefore, is directly applicable because Dr. Cantor's materiality survey similarly did not use the precise Challenged Representation and instead asked consumers about their preference for pasta products "Made in Italy."[1] Contrary to Defendant's contention, this deficiency in Dr. Cantor's survey warrants

[1] As Plaintiffs and Dr. Dennis previously stated, Dr. Cantor's use of the phrase "Made in Italy" compounds the survey's unreliability because it does not properly represent Plaintiffs' theory of how consumers interpret the Challenged Representation. MTE Cantor, ECF 66, at 10; Dennis Rebut. Rept., ECF 65-1, at ¶ 33.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

exclusion because it simply fails to assess the materiality of the Challenged Representations, in the context of the Products' packaging, to determine whether it impacts consumers' desire to purchase the Products.

*Third*, Defendant fails to address how asking consumers about the *most* important purchase driver demonstrates materiality. Under the law, Plaintiffs need not prove that the Challenged Representation was the "only cause, or even the *predominant* or decisive factor influencing [their] conduct." *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 529-30 (N.D. Cal. 2012) (emphasis added). Dr. Cantor's survey simply does nothing to measure materiality under the law.

*Fourth*, the constant sum question format employed by Dr. Cantor is an antiquated methodology that is not used to research perceptions and preferences with respect to ordinary consumer goods. Dennis Rebut. Rept., ECF 65-1, at ¶¶ 38-42. One of the key drawbacks of the constant sum design is that it is cognitively demanding for respondents to consider multiple "dimensions or subjects (items) at the same time." Mario Callegaro, et al., *Web Survey Methodology* 84-85 (2015); Alexander Buoye et al., *WAR: What Else is it Good for? A Comparison of Maximum Difference Scaling, Adaptive Choice-Based Conjoint, Constant Sum Scaling and Wallet Allocation Rule Utilities*, 4 J. Creating Value 61, 72 (2018) (noting "increased cognitive demands" as a drawback of constant sum questioning). The very nature of the constant sum question design is disfavored because "the requirement that the distributed points must add up to a particular sum may get in the way of respondents expressing their true preferences." Bryan K. Orne, *Getting Started with Conjoint Analysis* 144 (2d ed. 2010). Such "allocation-based responses are less accurate and useful" than alternative methods. *Id.* Dr. Dennis detailed how the cognitive demands of constant sum questioning often causes respondents to "take mental short-cuts by placing most of the points on one or two attributes (e.g., price), and not make the effort to enter in points for less important attributes." Dennis Rebut., ECF 65-1, at ¶ 38. It is for these reasons that survey experts no longer employ this methodology in consumer surveys—i.e., they are no longer generally accepted in the scientific field.

*Fifth*, Defendant fails to address Plaintiffs' argument that the purchaser driver question taints the constant sum question that follows. MTE Cantor, ECF 66, at 11. Since the constant sum question

builds on respondents' answers to the materiality question, the issues plaguing the purchaser driver question parlay into the constant sum question, further compounding its unreliability. As Dr. Dennis pointedly found, "[e]ven if [the constant sum] question were viewed as acceptable according to antiquated methodologies, its results hinge on the preceding purchase driver question, which is fatally flawed." Dennis Rebut., ECF 65-1, at ¶ 39.

### C. <u>Dr. Cantor's DiD Model is Unreliable and Irrelevant</u>

Defendant fails to carry it burden to demonstrate the relevance and reliability of Dr. Cantor's DiD Model. In the context of a DiD Model, and as Plaintiffs explained in their motion to exclude, Dr. Cantor must "provide a clearly defined list of variables;" explain how she "determine[d] whether the data related to any or all of the proposed control variables actually exists;" and further explain how she "how [s]he determined what competing and complementary products [s]he used." MTE Cantor, ECF 66, at 14 (quoting *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, *20 (N.D. Cal. June 13, 2014)). Nonetheless, Defendant and Dr. Cantor have failed to make such a showing. *First*, Defendant proffers a straw man argument that Plaintiffs are challenging the general use of DiD models. Opp. MTE Cantor, ECF 71, at 16. Plaintiffs do not challenge the general use of DiD models. MTE Cantor, ECF 66, at 11-15. Rather, Plaintiffs argue that Dr. Cantor did not design her DiD Model in a reliable manner. *Id.* And, after taking a second opportunity to explain herself, she yet again has utterly failed to identify all variables, how she controlled each confounding variable, why none of the confounding variables that Plaintiffs and Mr. Weir identified impacted the comparison products' pricing; and, likewise, why it is that any differences between the comparison products do not influence their pricing, including her analysis based upon actual data and not mere assumptions. *Id.*

*Second*, Defendant points to Plaintiffs' Opposition to Defendant's Motion to Dismiss the First Amended Complaint (ECF 20), where Plaintiffs argued that the Products are substantially similar, as though it is a concession that the Classic Blue Box and Whole Grain are sufficiently similar for purposes of comparing their pricing in a DiD model. Opp. MTE Cantor, ECF 71, at 17. That is wrong. Again, Defendant compares apples with oranges. Plaintiffs argued that the Products are substantially similar under the substantially similarity test that assesses standing. Under this test,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

courts "consider 'whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." Plaintiffs' Opposition to Defendant's Motion to Dismiss the FAC, ECF 20, at 18 (quoting *Morales v. Unilever U.S. Inc.*, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014)). This test does not entail the complex market analysis and accounting for various factors influencing price that are integral to determining if two products are virtually the same and therefore can be used in a DiD Model. *See* Weir Rebut. Rept., ECF 65-2, at ¶¶ 80-82. Put simply, the substantial similarity test for Plaintiffs' standing for unpurchased products concerns whether the general product attributes and mislabeling are sufficiently similar across different products to find that a real case or controversy exists—i.e., to determine whether a plaintiff has an actual stake in the case to prevent courts from rendering mere advisory opinions. A DiD model, on the other hand, requires that the products being compared "would respond to all possible variables that could impact price in exactly the same fashion" to ensure that the measured difference in pricing truly and solely reflects the presence or absence of the Challenged Representations. *See* Weir Rebut., ECF 65-2, at ¶ 73. The two inquiries entail vastly different analyses and therefore, Defendant's inability to show that the Classic Blue Box and Whole Grain products are virtually identical for purposes of comparing them in a DiD model simply does not vitiate Plaintiffs' standing.

*Third*, Defendant and Dr. Cantor utterly fail to show that important variables were accounted for in the DiD Model. A DiD model inherently entails a myriad of factors that must be accounted for and controlled in order to ensure the model's reliability. Weir Rebut., ECF 65-2, at ¶ 93. Mr. Weir explained how failing to account for "supply-side factors, such as advertising costs, marketing costs, or competitive response" is a "fatal mistake." Weir Rebut., ECF 65-2, at ¶¶ 93, 96. Mr. Weir also explains "the very fact that Barilla produces two different product lines, with drastically different levels of demand, selling for different prices, comprised of different ingredients, produced with different manufacturing costs, is evidence enough these products are not comparable for difference-in-difference." Weir Rebut., ECF 65-2, at ¶¶ 83-84.

In response, both Defendant and Dr. Cantor fail, once again, to identify the variables that the DiD Model took into account to ensure reliable results. Defendant maintains its theme of passing



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

the buck by arguing that it is somehow Plaintiffs' burden to identify what variables Dr. Cantor accounted for, specifically stating that "Plaintiffs' experts merely speculate that there are missing factors in Dr. Cantor's model, but they perform no empirical testing of these claims." Opp. MTE Cantor, ECF 71, at 19. It is not Plaintiffs' burden to prove Dr. Cantor's DiD model lacks reliability. It is Defendant's burden to demonstrate that it does. Plaintiffs' expert Mr. Weir did not speculate as to what variables Dr. Cantor ignored. Rather, he reviewed Dr. Cantor's report, which should have contained all opinions and the basis for her opinions, alongside Dr. Cantor's working papers, data, and deposition testimony. He found a number of pertinent confounding factors with no explanation or suggestion from Dr. Cantor that she analyzed, controlled, or determined that those factors have no bearing on pricing based on actual data.

Dr. Cantor attempts to cover up the DiD Model's rampant deficiencies by stating that her use of fixed effects cures all. Opp. MTE Cantor, ECF 71, at 19; Cantor Supp. Decl., ECF 71-1, at ¶¶ 31-39. Defendant simply regurgitates this stance in response to Plaintiffs' motion and fails to address Plaintiffs' arguments discussing how fixed effects cannot be a "cure-all for the DiD model's shortcomings." MTE Cantor, ECF 66, at 13. Dr. Cantor's use of fixed effects has its limitations and they simply fail to control for the myriad of confounding factors at play in a DiD model. Weir Rebut. Rept., ECF 65-2, at ¶¶ 97-104. Indeed, Dr. Cantor provides no data or explanation in response to the numerous variables that Mr. Weir identified, even after being given a second chance to explain herself. *See* Cantor Supp. Rept., ECF 71-1. Defendant certainly does not attempt to explain it in its opposition. *See* Opp. MTE Cantor, ECF 71.

*Fourth*, Defendant's cursory rejection of Plaintiffs' cited authority regarding before and after models glosses over how illustrative the cases are of Dr. Cantor's deficiencies in her DiD Model. The cases cited by Plaintiffs illustrate how courts will reject regression models when they fail to account for important confounding variables. *Stein v. Pac. Bell*, 2007 WL 831750, at *12 (N.D. Cal. Mar. 19, 2007); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir. 1999); *In re Aluminum Phosphine Antitrust Litig.*, 893 F. Supp. 1497, 1504 (D. Kan. 1995). The same applies to Dr. Cantor's DiD Model because, like the models in *Stein*, *Blue Dane Simmental*, and *In re Aluminum Phosphine Antitrust*, Dr. Cantor's DiD Model is a regression model that fails

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

to account for confounding factors, thus vitiating its reliability and undermining any attempt to attribute the results merely to the presence or absence of the Challenged Claims. *Stein*, *Blue Dane Simmental*, and *In re Aluminum Phosphine Antitrust* stand for this undeniable proposition in a closely analogous economic regression analysis.

*Fifth*, Defendant attempts to argue that Dr. Cantor's DiD Model is relevant. Defendant proffers Dr. Cantor's DiD Model to show that Plaintiffs cannot demonstrate class wide damages because the price of the Products purportedly did not change following the removal of the Challenged Representation. MTE Cantor, ECF 66, at 14. In order for Dr. Cantor's DiD Model to be relevant—i.e., show no price premium for the Challenged Representation exists because the representation does not impact price—Defendant must necessarily admit that class-wide evidence can prove or disprove a critical issue in this case: damages. Thus, Defendant repeatedly denies that Dr. Cantor's DiD Model calculates damages. Opp. MTE Cantor, ECF 71, at 20; Pltf. Ex. 13 [Cantor Dep.] at 275:9-25. But, if that were true, Dr. Cantor's model would be wholly irrelevant. Simply put, Defendant cannot have its cake and it too.

Defendant also argues that *Townsend*, 303 F. Supp. 3d 1010 "is instructive" because the court found some unexplained price analysis was relevant to evaluate or refute damages. Opp. MTE Cantor, ECF 71, at 20. Setting aside the fact that it is wholly unclear from the opinion what type of price analysis the expert performed, Defendant forgets that Plaintiffs in this case argue, based on Defendant and Dr. Cantor's own admission, that a model that does not assess damages is irrelevant to the question of whether Defendant's misleading use of the Challenged Representations resulted in economic losses to the putative Class. Moreover, unlike the expert in *Townsend*, who attempted to determine damages, here, Dr. Cantor and Defendant expressly deny any such attempt. *Townsend*, 303 F. Supp. 3d at 1036.

Dr. Cantor's DiD Model further lacks relevance as courts have repeatedly found that the absence of a price change following a change in the challenged labeling claim does not refute the existence of a price premium. *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018); *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *9 (N.D. Cal. Sept. 21, 2020). Thus, even if Dr. Cantor's DiD Model was properly designed, its conclusion has no bearing

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

on Plaintiffs' ability to prove a price premium associated with the Challenged Representation. Defendant's meager attempts to distinguish *Schneider* and *Smith v. Keurig*, fall short. Defendant does not dispute that, in both cases, the courts found that the lack of a price change does not prove that no price premium exists. That the plaintiffs did not, also, seek exclusion of the defense experts' opinions does not, somehow, make those opinions relevant or admissible. In the end, Dr. Cantor's DiD Model has no bearing on Plaintiffs' ability to prove a price premium and it is therefore irrelevant.

## III. <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Plaintiffs' motion and exclude Dr. Cantor's unqualified, irrelevant, unsupported, and unreliable opinions, including her: (1) Perception Survey Questions Version 2 and Version 3; (2) Materiality Survey; (3) criticisms of the methodology of Dr. Dennis's perception and conjoint surveys; and (4) Difference-in-Difference Model.

Dated: March 14, 2024

**CLARKSON LAW FIRM, P.C.**

By: <u>*/s/ Katherine A. Bruce*</u>
Ryan J. Clarkson
Katherine A. Bruce
Alan Gudino

*Attorneys for Plaintiffs*