UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BARILLA AMERICA, INC.,<br><br>  Defendant. | Case No. 22-cv-03460-DMR<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION AND MOTION TO EXCLUDE DEFENDANT'S EXPERT**<br><br>Re: Dkt. Nos. 52, 66 |

Plaintiffs Matthew Sinatro and Jessica Prost filed this putative class action against Defendant Barilla America, Inc. ("Barilla") alleging false, misleading, and deceptive marketing practices with respect to the labeling of Barilla-brand pastas. Plaintiffs now move pursuant to Federal Rule of Civil Procedure 23(b)(3) to certify a class and to exclude defense class certification expert Robin Cantor. [Docket Nos. 52 (Pl.'s Cert. Mot.), 66 (Mot. to Exclude).] These motions are suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion for class certification is granted. The motion to exclude is denied.

## I. BACKGROUND

### A. Factual Background

Plaintiffs challenge the labeling of certain Barilla-brand pastas as "ITALY'S #1 BRAND OF PASTA®." The following allegations are from the first amended complaint ("FAC"), which is the operative complaint. [Docket No. 11 (FAC).] Barilla is a corporation headquartered in Illinois. It originated as a bread and pasta shop in Parma, Italy in the nineteenth century. FAC ¶¶ 11, 14. Plaintiffs allege that "authentic Italian products, including pastas, hold a certain prestige and [are] generally viewed as a higher quality product" and that "the general 'Italianness' of a product influences consumers['] overall evaluation of a product." *Id*. at ¶ 12 (citation omitted). According to Plaintiffs, "consumers willingly pay more for Italian sounding and/or looking

products." *Id*. (citation omitted). Further, they allege, "Italian pasta is one of the best and most sought after products in the global market," and "Italian durum wheat is among some of the 'best varieties[']" of wheat. *Id*. at ¶ 13.

Plaintiffs allege that "[i]n an effort to increase profits and to obtain an unfair competitive advantage . . . [Barilla] falsely and misleadingly labels certain of its Barilla® brand pastas as 'ITALY'S #1 BRAND OF PASTA®,' deliberately leading reasonable consumers, including Plaintiffs, to believe that the Products are made in Italy" from ingredients "sourced in Italy." *Id*. at ¶¶ 2, 22 (emphasis removed). They further allege that Barilla reinforces this representation about the origin of the products by replicating the green, white, and red colors of Italy's flag surrounding the representation, "further perpetuating the notion that the Products are authentic pastas from Italy." *Id*. at ¶ 2. The Challenged Representation[1] is depicted below:



*Id*. According to Plaintiffs, "contrary to this labeling, the Products are not made in Italy" and are not manufactured from ingredients from Italy. *Id*. at ¶ 3. Rather, the products are manufactured in Barilla's plants in Iowa and New York using ingredients sourced from countries other than Italy. *Id*. at ¶¶ 3, 14, 25.

According to Plaintiffs, Barilla "deliberately designed and executed a decades long marketing campaign to identify the Barilla® brand, company, and Products at issue in this case, as authentic, genuine Italian pastas—made from ingredients sources [sic] in Italy (like durum wheat), and manufactured in Italy." FAC ¶ 16. This campaign included websites, a Barilla Historical Archive, a Barilla Pasta Museum, and Barilla Academy, which Plaintiffs allege were "all designed to promote the brand and company's Italian identity" and "convince consumers that Barilla®

---

[1] Although the FAC appears to describe the Challenged Representation as the statement, "Italy's #1 Brand of Pasta®," alone, it identifies the Challenged Representation as it appears on the packaging, surrounded by the green, white, and red colors of Italy's flag. *See* FAC ¶ 2. Further, Plaintiffs' expert's consumer perception survey (discussed below) tested respondents' understanding of the statement "Italy's #1 Brand of Pasta" as it appears surrounded by the colors of Italy's flag. [*See* Docket No. 52-2 (Dennis Decl. Aug. 16, 2023) ¶ 69.] Accordingly, the court construes the "Challenged Representation" to mean the statement "Italy's #1 Brand of Pasta®" as it appears between the colors of the Italian flag.

brand pastas . . . come from Italian ingredients, [are] processed and manufactured in Italian factories, and then exported for sale to various countries," including the United States. *Id*.

      Plaintiffs allege that the Challenged Representation on the boxes of Barilla's products led them to believe that the products were "made in Italy—to wit, the Products' ingredients are from Italy and the Products are manufactured in Italy." *Id*. at ¶¶ 8, 9. They further allege that they would not have purchased or paid more for the products had they known that the Challenged Representation was false. *Id*. Plaintiffs challenge the labels on the following lines of Barilla's pastas: 1) Classic Blue Box Pastas; 2) Collezione Artisanal Pastas; 3) Gluten Free Pastas; 4) Barilla Veggie Pastas; and 5) Whole Grain Pastas (the "Products"). Mot. 1.

### B.     Procedural History

      Plaintiffs filed this putative class action on June 11, 2022. They assert the following claims for relief in the FAC: 1) violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq.; 2) violation of the False Advertising Law ("FAL), California Business & Professions Code section 17500 et seq.; 3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et seq.; 4) breach of warranty; and 5) unjust enrichment/restitution. In October 2022, the court granted in part and denied in part Barilla's motion to dismiss, and dismissed Plaintiffs' claim for injunctive relief with leave to amend. *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 875, 883 (N.D. Cal. 2022). Plaintiffs did not file a second amended complaint.

      Plaintiffs now seek certification of the following class under Federal Rule of Civil Procedure 23(b)(3):

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale.[2]

FAC ¶ 31; Mot. 10.[3] They seek appointment of Matthew Sinatro and Jessica Prost as class

---

[2] Plaintiffs clarify that the class period "is defined as June 11, 2018 through the present." Mot. 2 n.2.

[3] The FAC also asserted a nationwide class of individuals who purchased the products containing

3

representatives and appointment of Clarkson Law Firm, P.C., as class counsel.

## II. PLAINTIFFS' MOTION TO EXCLUDE

In support of the motion for class certification, Plaintiffs offer testimony from J. Michael Dennis, Ph.D., a survey and marketing research expert, and Colin B. Weir, an economist, regarding consumer perception and a proposed conjoint analysis to measure any price premium attributable to the Challenged Representation (discussed below). In opposition, Barilla offers the testimony of Robin Cantor, Ph.D., an economist, on three issues: 1) to support Barilla's contentions about its own interpretation of the meaning of the Challenged Representation; 2) to support the purported lack of materiality of the Challenged Representation; and 3) to challenge Plaintiff's proposed conjoint analysis. [Docket No. 61-1 (Cantor Report Nov. 30, 2023) ¶ 13 (summary of opinions).] *See generally* Opp'n to Mot. for Class Cert.

Plaintiffs move to exclude Dr. Cantor's opinions pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence ("FRE") 702. [Docket No. 66.]

FRE 702 governs testimony by expert witnesses. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. FRE 702 "contemplates a broad conception of expert qualifications" which

---

the Challenged Representation. *See* FAC ¶ 31. Plaintiffs move for certification of the California subclass only. Barilla argues that Plaintiffs have "abandoned" the nationwide class and that the nationwide class should be dismissed. Opp'n 10 n.5. Plaintiffs did not respond to this argument. Accordingly, the parties shall meet and confer regarding Barilla's request to dismiss the nationwide class. **Within 14 days of the date of this Order**, the parties shall file a stipulation or a joint letter that does not exceed two pages setting forth their position(s) on the request.

may be obtained through "knowledge, skill, experience, training, or education." *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994) (emphasis added).

"In *Daubert* the [Supreme] Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony." FRE 702, Advisory Committee Notes, 2000 Amendments (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). The standards outlined in *Daubert* apply to all expert testimony, not just testimony based in science. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156-57 (1999). However, "the rejection of expert testimony is the exception rather than the rule." FRE 702, Advisory Committee Notes, 2000 Amendments (citing cases). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. With respect to challenges to experts in the context of Rule 23 motions, "courts should not even apply the full *Daubert* 'gatekeeper' standard at this stage . . . a lower *Daubert* standard should be employed at [the class certification] stage of the proceedings." *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) (quoting *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, 209 F.R.D. 159, 162-63 (C.D. Cal. 2002)). "[T]he question is whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met." *Id*.

Plaintiffs move to exclude two of Dr. Cantor's three perception survey questions; her materiality survey; and her "Difference-in-Difference" ("DiD") damages model to compare pricing for the Products. Mot. to Exclude. They argue that Dr. Cantor is not a survey expert and lacks the requisite background, education, training, and experience to design surveys. Plaintiffs further argue that Dr. Cantor's surveys lack reliability and suffer from design and methodological flaws. Finally, Plaintiffs argue that Dr. Cantor's DiD damages model is "deeply flawed and unreliable" because it does not account for important variables.

At the class certification stage, Plaintiffs "bear[ ] the burden of affirmatively demonstrating through evidentiary proof that the class meets the prerequisites of Rule 23(a)," *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1003–04 (9th Cir. 2018), and the "facts necessary for certifying a

5

1  class under Rule 23(b)(3)." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31
2  F.4th 651, 665 (9th Cir. 2022).  In determining whether the Rule 23 requirements for class
3  certification are satisfied, the court may consider the merits of the underlying claims "to the
4  extent—but only to the extent—that they are relevant to determining whether the Rule
5  23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr.*
6  *Funds*, 568 U.S. 455, 466 (2013).  Courts have "no license to engage in free-ranging merits
7  inquiries at the certification stage." *Id*.

8        Here, Dr. Cantor's opinions regarding her perception survey, materiality survey, and
9  damages model all speak to the merits of Plaintiffs' claims, and her criticism of Plaintiffs'
10 proposed conjoint analysis goes to the weight to be given to Plaintiffs' experts' opinions.  Dr.
11 Cantor's opinions do not bear on whether Plaintiffs have satisfied the Rule 23 factors, as they do
12 not challenge whether the meaning and materiality of the Challenged Representation and proposed
13 damages analysis are susceptible to common proof.  Accordingly, the court does not rely on Dr.
14 Cantor's opinions in ruling on this motion, as discussed below where relevant.  Plaintiffs' motion
15 to exclude Dr. Cantor's opinions is denied as moot.

### III. MOTION FOR CLASS CERTIFICATION

#### A. Legal Standard

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  A plaintiff seeking class certification bears the burden of demonstrating that he or she has met each of the four requirements of Rule 23(a), and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001)); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.

23(a).

In addition to establishing numerosity, commonality, typicality, and adequacy, a plaintiff must establish one or more of the following grounds for maintaining the suit as a class action: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate, and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek certification under Rule 23(b)(3). Mot. 18. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 296–97 (N.D. Cal. 2020) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). District courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). While this analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465-66 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. Thus, "[i]n determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666-67 (emphasis in original). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the

7

1    evidence." *Id*. at 665.  The decision to certify a class is committed to the discretion of the district

2    court.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

**B.     Discussion**

Plaintiffs seek certification under Rule 23(b)(3) of the following class:

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale.

Mot. 10.

As an initial matter, Barilla argues that the class "is inadequately defined and not ascertainable," citing evidence that it updated its packaging and removed the Challenged Representation from the labels of 34 of the 54 products at issue starting in October 2022.  Opp'n 3-4.  According to Barilla, these label changes make it impossible to determine "who (if anyone) was injured by exposure to purported misrepresentations," citing cases where courts concluded that proposed classes were not sufficiently ascertainable.  *Id*. at 9-11 (citing *Kosta v. Del Monte Foods*, 308 F.R.D. 217, 227-29 (N.D. Cal. 2015), and *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *11 (N.D. Cal. June 13, 2014)).  Barilla's argument is meritless.  Barilla fails to cite controlling law, namely *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123, 1133 (9th Cir. 2017), which was decided after Barilla's cited cases.  In *Briseno*, the Ninth Circuit held that there is no separate "administrative feasibility" requirement for class certification, using that term to refer to what the defendant and district court called "ascertainability."  *Id*. at 1124 n.3; *see In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 969-71 (C.D. Cal. 2015) (discussing defendant's "ascertainability" objections); *see also Samet v. Proctor & Gamble Co.*, No. 12-CV-01891-RS, 2019 WL 13167115, at *4 n.3 (N.D. Cal. Jan. 15, 2019) (holding that "Defendants' contentions regarding ascertainability are foreclosed by" *Briseno*).

To the extent Barilla's "ascertainability" objection is based on the overbreadth of the class definition, the argument is unpersuasive.  The class definition is not overbroad because it is limited to those persons who purchased "the Products . . . containing the Challenged Representation."  *See, e.g., Samet*, 2019 WL 13167115, at *7 (holding that issues with overbreadth

of proposed class could be remedied by narrowing it to persons who purchased the product displaying the challenged statement during the relevant period of time); *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779, at *5 (N.D. Cal. Dec. 3, 2014), *aff'd,* 693 F. App'x 578 (9th Cir. 2017) (where proposed class definition included "include long stretches of time when the challenged statement did not appear on the label," holding that "issues can be cured by redefining the class to exclude any individuals who purchased" the product during dates when the statement did not appear on the label "and by defining the class as only those persons who bought the juice with the challenged statement."). Additionally, the Ninth Circuit has observed that "even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct," but this fact does not defeat class certification. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (citations omitted).

The court now turns to Rule 23's enumerated criteria.

### 1.   Rule 23(a) Requirements

#### a.   Numerosity

Plaintiffs must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (citation omitted). Barilla does not dispute that numerosity of the class is established.

#### b.   Commonality

Commonality requires that there be "questions of fact or law which are common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Commonality exists "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v.*

9

*Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation and internal quotation marks omitted).

Plaintiffs argue that whether the Challenged Representation "is false, misleading, or deceptive" will resolve "in one stroke" an issue that is central to the claims that the Products were falsely and unlawfully labeled under California's consumer protection laws. Mot. 13. "Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer." *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) (collecting cases).

"In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666-67. The court will analyze commonality for each of Plaintiffs' claims for relief.

### i. UCL and FAL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. False advertising claims under the FAL and the fraudulent prong of the UCL are governed by the reasonable consumer standard. *Williams v. Gerber Prods. Co*, 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (courts must evaluate whether a label is misleading "from the vantage of a reasonable consumer" (quotation omitted)). Under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived. *Id.* (citation omitted). "This requires more than a mere possibility that [a defendant's] label might conceivably be

10

1   misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh,*
2   *Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted). "Rather, the reasonable consumer
3   standard requires a probability that a significant portion of the general consuming public or of
4   targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation
5   omitted). A plaintiff suing under these statutes "need not show actual falsity of the alleged
6   misrepresentations or reliance by the plaintiff." *Vizcarra v. Unilever United States, Inc.*, No. 4:20-
7   cv-02777 YGR, 2023 WL 2364736, at *9 (N.D. Cal. Feb. 24, 2023) (citing *Pulaski & Middleman,*
8   *LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015)). "That the UCL and FAL do not require a
9   showing of actual falsity or reliance by the plaintiff is important in the class certification context,
10  because 'concerns about [individual] reliance and causation' that a defendant may raise at the class
11  certification stage do not defeat class certification where the members of the proposed class were
12  exposed to the same allegedly misleading representations and there is evidence that it is probable
13  that a significant portion of the viewing public could be misled by the alleged misrepresentations."
14  *Id.* (citation omitted).

15   Plaintiffs argue that Dr. Dennis's opinions constitute common evidence that demonstrates
16  consumer deception. Mot. 9, 22. Dr. Dennis conducted a consumer perception survey to assess
17  survey respondents' understanding of the Products' packaging; specifically, to determine whether
18  and to what extent the Challenged Representation causes reasonable consumers "to perceive that
19  the Products were made in Italy—meaning, the Products were made from ingredients sourced
20  solely from Italy." [Docket No. 52-2 (Dennis Decl. Aug. 13, 2023) ¶ 20.] Dr. Dennis surveyed
21  California residents who purchased dried pasta products in the past 12 months. *Id.* at ¶ 42. Of the
22  nearly 600 individuals surveyed, 57% of respondents "perceived the Challenged Representation to
23  mean that the Product's ingredients are solely sourced from Italy." *Id.* at ¶ 37. 32.3% of
24  respondents did not perceive the Challenged Representation to have this meaning and 10.7% did
25  not have an opinion. *Id.* Dr. Dennis states that these results "are generalizable to class members
26  that make up the proposed Class, based on [his] expert judgment." *Id.* at ¶ 45.

27   Barilla criticizes Dr. Dennis's survey as "flawed." Opp'n 12. In particular, it notes that
28  Dr. Dennis's survey provided only a single interpretation of the Challenged Representation that

11

1  was consistent with Plaintiffs' theory of liability and argues that "this is not the basis of a
2  competent study." *Id*. Barilla also argues that Dr. Dennis's survey is biased because it asked
3  about only Plaintiffs' preferred definition of the Challenged Representation. *Id*. at 11. Barilla
4  points to the survey conducted by Dr. Cantor in which over 80% of those surveyed responded that
5  the Challenged Representation means that Barilla is "the largest selling pasta in Italy," compared
6  to the 57% of respondents who chose Plaintiffs' definition. Cantor Decl. ¶¶ 37-40.

7  Barilla's merits-based arguments do not undermine Plaintiffs' showing that common
8  evidence can be used to demonstrate consumer deception. Barilla's challenge to Dr. Dennis's
9  survey "boils down to a disagreement as to Dr. Dennis's survey design choices, which go to the
10 weight to be accorded to Dr. Dennis's survey results and opinions when determining the merits of
11 [Plaintiffs'] claims at trial. That merits determination is not one for this Court at the class
12 certification stage." *Vizcarra*, 2023 WL 2364736, at *11. *See also Moore v. GlaxoSmithKline
13 Consumer Healthcare Holdings*, No. 4:20-cv-09077-JSW, ---F. Supp. 3d---, 2024 WL 348821, at
14 *6 (N. D. Cal. Jan. 30, 2024) (rejecting challenge to Dr. Dennis's consumer perception survey on
15 the same grounds as articulated in *Vizcarra*).[4] The parties may cross examine the experts on their
16 methods and approaches to surveying consumers at trial. The court concludes that Plaintiffs have
17 demonstrated that the common question of likelihood of deception is capable of class-wide
18 resolution. Commonality is satisfied as to the UCL and FAL claims.

### ii. CLRA and Breach of Warranty

20 The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or
21 practices." Cal. Civ. Code § 1770. "To bring a CLRA claim, a plaintiff must show (1) the
22 defendant engaged in deceptive conduct and (2) the deception caused plaintiff harm." *Lytle v.
23 Nutramax Lab'ys, Inc.*, 99 F.4th 557, 580 (9th Cir. 2024) (citation omitted). "[U]nder the CLRA,
24 causation, on a classwide basis, may be established by materiality. If the trial court finds that
25 material misrepresentations have been made to the entire class, an inference of reliance arises as to
26 the class." *Id*. (citation omitted). "A misrepresentation is judged to be 'material' if a reasonable

---

[4] In fact, Barilla's reliance on its own expert's survey buttresses Plaintiffs' point: that the issue of deception is susceptible of common proof.

12

1  [person] would attach importance to its existence or nonexistence in determining his choice of
2  action in the transaction in question[.]" *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332 (2011)
3  (quotation marks and citation omitted). "Because materiality (and, hence, in this case reliance)
4  may be proved by reference to an objective, reasonable consumer standard, reliance under the
5  CLRA is generally susceptible to common proof." *Lytle*, 99 F.4th at 580.

6  Similarly, courts have found that breach of warranty claims "are appropriate for class
7  treatment where the question of whether defendant misrepresented its product and whether such
8  misrepresentation breached warranties are issues common to members of the putative class." *See*
9  *Moore*, 2024 WL. 348821, at *5 (citing *In re ConAgra*, 90 F. Supp. 3d at 985). "Class treatment
10 of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the
11 alleged misrepresentation would have been material to a reasonable consumer." *Id*.

12 Here, Plaintiffs state that they read and relied on the Challenged Representation and
13 understood it to mean the Products are authentic Italian pastas made in Italy from ingredients
14 sourced there. [*See* Docket Nos. 52-4 (Prost Decl. Aug. 30, 2023) ¶ 5; 52-5 (Sinatro Decl. Aug.
15 30, 2023) ¶ 5.] Plaintiffs further state that had they known the Products were not made in Italy
16 from ingredients sourced in Italy, they would not have purchased them. *Id*. They also contend
17 that materiality may be proved by common evidence. Plaintiffs submit evidence of Barilla's
18 marketing campaign, including the "Barilla Quality Manifesto" which declares that the "precious
19 ingredient" in pasta comes from "the highest quality durum wheat," which creates the "perfect
20 semolina blend" and provides "an authentic full taste," so that families can enjoy Barilla's
21 "flavorful and genuine pasta." FAC ¶ 19d, Ex. 4 at ECF p. 6. According to Barilla's "We use
22 only quality wheats" webpage, Barilla states that it "select[s] only the best quality durum wheat in
23 the world" and emphasizes its "commit[ment] to . . . purchas[e] . . . Italian durum" and
24 manufacture "classic pasta formats . . . us[ing] 100% Italian wheats," but only for products
25 "destined to the Italian market." FAC ¶ 19d, Ex. 4f at ECF p. 34. Plaintiffs contend that Barilla
26 used this marketing campaign to identify the brand, company, and Products as "authentically
27 Italian," with the understanding that the Italian connection to its products would be a material
28 consideration to potential purchasers. *See* Reply 9. In fact, Plaintiffs present evidence that

13

1   Barilla is aware of the value consumers place on products associated with Italy.  *See* Weir Decl. ¶
2   20.
3           Finally, according to Plaintiffs' expert Colin Weir, "the economic literature suggests that
4   consumers do in fact pay a premium for country of origin claims."  [Docket No. 54-3 (Weir Decl.
5   Aug. 16, 2023) ¶ 13.]  Weir discusses a recent study examining consumers' perceived value of
6   pastas' Italian origin and Italian "allure," which found "pasta products made in Italy were more
7   favorable to consumers than pasta products not made in Italy."  *Id.* ¶¶ 15-16.  Researchers
8   concluded that "the extent to which food is perceived to be Italian increases consumers'
9   [willingness to pay] for that product."  *Id.* ¶ 16.
10          Again, Barilla disputes Plaintiffs' evidence of materiality on the merits.  It argues that
11  Prost and Sinatro never saw Barilla's marketing campaign via advertisements or its website, and
12  that its marketing materials disclose that products sold in the United States are manufactured in the
13  United States.  Opp'n 14-15.  It also disputes Weir's characterization of Barilla's internal study
14  about "Italianity."  *Id.* at 16 (emphasis removed).
15          Although Barilla contends that Plaintiffs "submit absolutely no evidence evaluating the
16  materiality of the Challenged Representation specifically," (*id.* at 17 (emphasis removed)),
17  Plaintiffs are not required to prove materiality at this stage.  Instead, the question is "whether the
18  materiality inquiry is a common question susceptible to common proof."  *Broomfield*, 2018 WL
19  4952519, at *11.  In a case like this, "[b]ecause materiality is an objective question based on the
20  reasonable consumer, it is common to the class and 'ideal for certification.'"  *Id.*; *see also Astiana
21  v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) ("The ultimate question of whether the
22  [allegedly misleading] information [is] material [is] a common question of fact suitable for
23  treatment in a class action." (alterations in original) (quotation marks and citation omitted)).
24  Having considered Plaintiffs' testimony, evidence of Barilla's marketing campaign and internal
25  study, and Weir's opinions, the court concludes that the question of materiality of the Challenged
26  Representation may be demonstrated by common proof.

### iii.  Unjust Enrichment

28          Finally, unjust enrichment claims "are appropriate for class certification as they require

14

common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana*, 291 F.R.D. at 505. "Determinations of whether [Barilla] misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment." *Id*. Accordingly, the court concludes that commonality is satisfied as to Plaintiffs' unjust enrichment claim. *See Broomfield*, 2018 WL 4952519, at *13 (holding that "for the same reasons that" the plaintiffs' "common law and consumer law causes of action . . . meet the predominance standard, so too does" the plaintiffs' quasi contract/unjust enrichment/restitution claim).

### c. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is "'permissive' and requires only that the representatives' claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (cleaned up). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation omitted).

Here, Plaintiffs' claims are typical because they, like the putative class members, seek relief for buying products that they allege were falsely and misleadingly labeled. They contend that they reviewed and relied on the Challenged Representation in deciding to purchase the products, and that had they known the products were not made in Italy from ingredients sourced in Italy, they would not have purchased them. Prost Decl. ¶ 5; Sinatro Decl. ¶ 5. The nature of their claims is thus typical of the putative class members' claims. *See Broomfield*, 2018 WL 4952519, at *6 (plaintiff's "allegations as to deception, materiality, and harm are all typical of the class as a whole.").

15

Barilla argues that Plaintiffs' claims are atypical because they did not read other information on the products' labels stating that the products were made in the United States. Barilla explains it will argue that unlike Prost and Sinatro, putative class members did not notice the Challenged Representation and/or reviewed the country-of-origin information on the labels and so were not mislead by the Challenged Representation. Opp'n 24. This does not defeat typicality; "individual experience with a product is irrelevant because the injury under the UCL, FAL and CLRA is established by an objective test." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (cleaned up); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 539 (N.D. Cal. 2012) (rejecting argument that class representatives' claims were not typical because members of the class may have "relied to greater or lesser extents" on challenged representation; noting that "the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular state of mind.").

Barilla also argues that Prost and Sinatro "are not typical consumers, but instead frequent filer class action plaintiffs that have filed numerous deceptive labeling cases[.]" Opp'n 25 (listing cases). However, "being a serial plaintiff is not a basis for finding that a plaintiff is atypical," *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011), and Barilla offers no compelling reason why Plaintiffs' experience with deceptive labeling cases precludes finding their claims typical in this case. The court concludes that the typicality requirement is satisfied.

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted).

Barilla does not contend that Prost and Sinatro have conflicts of interests with putative

16

class members. It also does not dispute that they and their counsel will prosecute the case vigorously. Instead, it argues that "Plaintiff Prost's relationship with Clarkson Law Firm . . . makes her an inadequate representative" because she "testified that she knows someone that works at Clarkson Law Firm and contacted Clarkson about this case as a result of that relationship." Opp'n 25 n.20. Barilla does not explain how these circumstances implicate a conflict of interest between Prost and the putative class members.

In sum, there is no evidence of a conflict of interest between Prost, Sinatro, and the class members, and the court is satisfied that class counsel will fairly and adequately protect the interests of the class and will prosecute the action vigorously on behalf of the class. The adequacy requirement is satisfied.

### 2. Rule 23(b) Requirements

Rule 23(b)(3) requires a plaintiff to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds, Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (quotation omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). "The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a): the plaintiffs must prove that there are 'questions of law or fact common to class members' that can be determined in one stroke, in order to prove that such common questions predominate over individualized ones[.]" *Olean*, 31 F.4th at 664 (internal citations omitted).

Where, as here, plaintiffs have shown that the questions of likelihood of deception and

1  materiality can be resolved with common proof, "courts routinely find that common questions
2  predominate over individual ones as to" misrepresentation claims. *See Vizcarra*, 2023 WL
3  2364736, at *18 (collecting cases); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520,
4  539-40 (N.D. Cal. 2018) ("In cases alleging misrepresentation, 'common issues predominate when
5  plaintiffs are exposed to [a] common set of representations about a product.'" (quoting *Butler v.
6  Porsche Cars N. Am., Inc.*, No. 16-CV-2042-LHK, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19,
7  2017))).

8       A plaintiff seeking certification under Rule 23(b)(3) must also show that damages are
9  capable of measurement on a class-wide basis. *Comcast Corp. v. Behrand*, 569 U.S. 27, 35
10 (2013). "[C]lass action plaintiffs may rely on an unexecuted damages model to demonstrate that
11 damages are susceptible to common proof so long as the district court finds, by a preponderance of
12 the evidence, that the model will be able to reliably calculate damages in a manner common to the
13 class at trial." *Lytle*, 99 F.4th at 570.

14      "The damages owed to a plaintiff under the CLRA, and UCL and FAL, respectively, are
15 based on the difference between the price the consumer paid and the price a consumer would have
16 been willing to pay for the product had it been labeled accurately." *Vizcarra*, 2023 WL 2364736,
17 at *15 (citing *Pulaski*, 802 F.3d at 988-89). Therefore, "the focus is on the difference between
18 what was paid and what a reasonable consumer would have paid at the time of purchase without
19 the fraudulent or omitted information." *Id*. (citations omitted). The Ninth Circuit has held that
20 "conjoint analysis is a well-accepted technique that is frequently used to establish damages in
21 CLRA actions." *Lytle*, 99 F.4th at 579 (collecting cases). "[A] conjoint survey allows a
22 researcher to test the economic value a consumer places on a given product feature, such as a
23 particular statement on a package, by showing the product to individual survey participants with
24 and without certain features, and then using survey responses to calculate the economic value
25 consumers place upon the feature." *Id*. at 567.

26      Here, Dr. Dennis states that he has designed and will conduct a conjoint analysis to isolate
27 and quantify the market price premium associated with the Challenged Representation, which can
28 then be used to calculate the amount of restitution and damages owed to the Class. *See* Dennis

18

1  Decl. ¶¶ 88, 101-129 (explaining nature of conjoint surveys, summarizing the steps he will follow
2  to implement the conjoint survey and analysis, and obtaining an appropriate sample of
3  respondents). Dr. Dennis also identifies the product attributes that will be included in the survey,
4  including brand; label claims, including the precise Challenged Representation; and price, as well
5  as the reasons for selecting these attributes. *Id*. at ¶¶ 98, 100, 109, 111, 112, 114, 119, 121. In
6  addition to following accepted conjoint survey design principles, Dr. Dennis states that he will
7  account for supply-side factors both in the survey and in his market simulation. *Id*. at ¶¶ 90, 92-
8  95, 107, 132. Plaintiffs contend that "[b]ecause Dr. Dennis's survey incorporates real market
9  prices and uses the same quantity of products in his market simulation as were sold in the real
10 world (i.e., holding quantity fixed), his survey properly accounts for supply-side factors." Mot.
11 24. Plaintiffs explain that once the conjoint analysis reveals the price premia attributable to the
12 Challenged Representation, those premia "can then be multiplied by the number of units
13 purchased by each class member to determine both total and individual damages." *Id*. (quoting
14 *Zakaria v. Gerber Prod. Co.*, No. LA CV15-00200 JAK (EX), 2016 WL 6662723, at *16 (C.D.
15 Cal. Mar. 23, 2016)); Weir Decl. ¶¶ 41-47, 68, 69.
16      Barilla does not dispute that a conjoint analysis is capable of measuring classwide
17 damages, but challenges Plaintiffs' experts' ability to apply the method to the facts of this case.
18 Opp'n 20-23. It also challenges alleged flaws in the survey design. *See id*. These challenges go
19 to the weight of the evidence and not the admissibility. Once the analysis has been performed,
20 Barilla may challenge its results and if appropriate, seek to exclude them before trial. At this
21 stage, however, Plaintiffs must show that their proposed damages model meets the legal
22 requirements for class-based damages. *See Johnson v. Nissan N. Am., Inc.*, No. 3:17-CV-00517-
23 WHO, 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022). Plaintiffs have done so.

24                              **b.     Superiority**
25      Finally, Rule 23(b)(3) requires a court to consider whether a class action would be a
26 superior method of litigating the claims of the proposed class members by taking into account
27 "(A) the class members' interests in individually controlling the prosecution or defense of separate
28 actions; (B) the extent and nature of any litigation concerning the controversy already begun by or

1  against class members; (C) the desirability or undesirability of concentrating the litigation of the
2  claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R.
3  Civ. P. 23(b)(3).

4  Here, Barilla's sole argument against a finding that a class action would be a superior
5  method to litigate the proposed class members' claims is issues with "ascertainability." Opp'n 24.
6  As discussed above, this argument lacks merit. The court finds that the superiority requirement is
7  satisfied here, where "(1) the amounts that each proposed class member can recover are not
8  significant and are small relative to the high costs of individual litigation; (2) judicial economy
9  would be promoted and the litigation of the claims would be made more efficient and practical;
10 and (3) the prosecution of individual claims could establish inconsistent standards of conduct for
11 defendant." *See Vizcarra*, 2023 WL 2364736, at \*18.

## IV. CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motion for class certification and certifies the proposed class under Rule 23(b)(3). The court appoints Matthew Sinatro and Jessica Prost as class representatives and Clarkson Law Firm, P.C., as class counsel. Plaintiffs' motion to exclude Dr. Cantor is denied as moot.

The parties shall immediately meet and confer regarding Barilla's request to dismiss the nationwide class, and file a stipulation or joint letter that does not exceed two pages setting forth their position(s) on the request within 14 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: May 28, 2024



Donna M. Ryu
Chief Magistrate Judge