UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO, and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>                              Defendant. | Case No: 4:22-cv-03460 |

Reply Declaration

of

**COLIN B. WEIR**

February 7, 2024

# UNREDACTED – PUBLICLY FILED PURSUANT TO COURT ORDER (ECF 97)

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" OR "HIGHLY

CONFIDENTIAL -- ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am President at Economics and Technology, Inc. ("ETI"), 100 Franklin Street, 6th Floor, Boston, Massachusetts 02110. ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1. I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts. I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio. I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels. I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers. My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1. This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition. Prior to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as a cash department head, grocery/receiving clerk, and price-file maintenance head.

2. Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis. These cases include, but are not limited to *Jones v. Nutiva* (false advertising of coconut oil); *Hunter v. Nature's Way* (false



Reply Declaration of Colin B. Weir
February 7, 2024
Page 2 of 34

advertising of coconut oil); *Looper v. FCA* (vehicle defect); *Sanchez-Knutson v. Ford Motor Company* (vehicle defect); *Belfiore v. Procter and Gamble* (false advertising of flushable wipe products); *Kurtz v. Kimberly Clark* (false advertising of flushable wipe products); *In re Scotts EZ Seed Litigation* (false advertising of turf growth products); *In re: ConAgra Foods* (false advertising of cooking oil); *In re: Arris Cable Modem*; *Hadley vs. Kellogg* (false advertising of health of breakfast cereal); *Allen v. Conagra Foods, Inc.* (false advertising of nutritional content of buttery substitute); *Martinelli v. Johnson & Johnson* (false advertising of health of butter substitute); *Krommenhock v. Post* (false advertising of health of breakfast cereal); *Hudock v. LG* (false advertising of refresh rating for televisions); *Koenig v. Vizio* (false advertising of refresh rating for televisions); *Banh v. American Honda* (vehicle defect); and *Kaupelis v. Harbor Freight* (chainsaw defect).

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.  In addition, I have 15 years of experience using conjoint analysis professionally.

## II. ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Matthew Sinatro and Jessica Prost ("Plaintiffs"), individually and on behalf of all others similarly situated, in the above-captioned action against Barilla America, Inc. ("Barilla" or "Defendant").  I make this declaration based upon my own personal knowledge, background, education, training, experience, and expertise.  If called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    I have been advised by Counsel for Plaintiffs that consumers purchased certain Barilla brand pasta products that were labeled and advertised in a deceptive and misleading manner by the Defendant.  I understand that the Defendant labeled products with a statement that



Reply Declaration of Colin B. Weir
February 7, 2024
Page 3 of 34

Barilla brand pastas (collectively, the "Products")[1] are "ITALY'S #1 BRAND OF PASTA"

("Claim"),[2] and that Plaintiffs allege it misleads consumers, including Plaintiffs, to believe that

the Barilla Products are made in Italy, from ingredients sourced in Italy.  However, with the

exception of non-class products,[3] Barilla's pastas sold in the United States are made in

Defendant's manufacturing plants in Iowa and New York, with ingredients sourced from

countries other than Italy.[4]  Indeed, Defendant admits in discovery that all Products, with the

exception of certain pallets, were made from "one or more ingredients sourced outside of Italy,"

including wheat for the Blue Box, Collectione Artisanal, Veggie, and Whole Grain Products, and

"each stage of the process to manufacture each and every Product…, from sourcing of raw

materials through the packaging of finished Products, did not occur in Italy."[5]

---

[1] The Products at issue include pasta products across Barilla's five product lines (Classic Blue Box, Collezione Artisanal, Gluten Free, Veggie and Whole Wheat.). *See,* First Amended Class Action Complaint, filed July 20, 2022 ("Complaint"), at para 4.

[2] *See*, First Amended Complaint at para 2.

[3] *See,* First Amended Complaint, at para 14.

[4] *See id.* at paras. 3 and 14 (citing Defendant's website, a copy of which is attached to the First Amended Complaint as Exhibit 3f, wherein Defendant admits "Barilla Pasta that is sold in the United States is made in [its] plants in Ames, IA and Avon, NY. . . . Barilla purchases its wheat from around the world").

[5] *See* Defendant's Supplemental Responses to Requests for Admissions, Set One, served on August 15, 2023, at Nos. 21-38 (admitting that each Product, with the exception of Gluten Free Products, "contained wheat grown that was grown outside of Italy"; each Product, including Gluten Free Products, "contained one or more ingredients sourced outside of Italy"; and the Collezione Artisanal, Gluten Free, Veggie, and Whole Grain Products "contained one or more ingredients milled outside of Italy"); Defendant's Supplemental Responses to Requests for Admissions, Set One, served on August 15, 2023, at Nos. 39-62 (admitting that, "for each and every Product," the "dough . . . was prepared outside of Italy," the "dough extrusion . . . occurred outside of Italy," they were "packaged outside of Italy," and "each stage of the process to manufacture [the Products] from sourcing of raw materials through the packaging of finished Products, did not occur in Italy," with the exception of approximately 541 pallets of Blue Box Orcchiette between 2016 and 2017; 4,119 Blue Box Penne Rigati, Farfalle, Rigatoni, Spaghetti, and Linguine in 2023; 309 pallets of Gluten Free Spaghetti, Penne, Rotini, and Elbows in 2016; 4,809 pallets of Gluten Free Spaghetti, Penne, and Elbows between 2020 and 2023, as referenced in BAI-CA_00001066).



Reply Declaration of Colin B. Weir
February 7, 2024
Page 4 of 34

6.     Plaintiffs allege that the challenged Claim has misled consumers, and resulted in, among other things, the payment of an inflated price for the Products at the time and point of purchase.[6]

7.     Among other things, I have been asked by Counsel for Plaintiffs to review and respond to the November 30, 2023 Declaration and Report of Robin Cantor ("Cantor Report").

### III.  RESPONSE TO CANTOR

**Cantor admits the premise of Plaintiffs' case**

8.     Cantor admits that a labeling claim can impact the market price of that product:

Q.   Can a labeling claim on a consumer product sold at retail ever have an influence on the market price paid by a consumer of that product?

…

A.   There is a possibility that it does.[7]

9.     Cantor confirms that, all else equal, consumers are better off paying a lower price rather than a higher price.

Q.   If you hold everything else equal, would you agree that consumers are better off paying less money rather than paying more money for a product?

A.   Are -- just to make sure I understand your question, are you asking whether or not consumers prefer lower prices for a product?  I mean that is a basic principle of economic logic, that they prefer a lower price to a higher price for a product.[8]

---

[6] See, *Id.*, at para 3.

[7] Deposition of Robin Cantor, January 5, 2024 ("Cantor Deposition"), at 217.

[8] Cantor Deposition, at 217-218.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 5 of 34

10.   Cantor admits that the damages framework that I have set forth is the correct
framework for this case.

> Q.   I'm asking you to assume it to be true, that it has been determined that the
> challenged labeling claim is deceptive.  Assume that to be true.
>
> Would the correct measure of damages then be the difference between what
> consumers paid for the class products as they actually existed during the class
> period and what consumers would have paid in a but-for world had defendant
> not used the challenged claim?
>
> A.   That would be consistent with a pricing premium theory of damages… I
> mean you're setting up a counterfactual.  And you're using those methods to
> measure what will happen in the but-for world.  And you're comparing the but-
> for to the actual world.[9]

11.   Cantor agrees that damages in this case must be measured as of the time and point of
first sale.

> Q.   And in this case, would damages occur at the time and point of the sale?
>
> A.   Well, again, that -- that is essentially what -- the way that theory works.[10]

12.   Cantor agrees that there are methods that can be used to calculate damages in these
types of circumstances, including through the use of conjoint analysis, as Dennis and I propose
in this case.

> Q.   Are there methods that can be used to determine class-wide damages for a
> consumer product sold at retail?
>
> A.   Yes.
>
> Q.   What are those methods?

---

[9] Cantor Deposition, at 219-221.

[10] Cantor Deposition, at 220.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 6 of 34

A.  People will use hedonic methods, for example, to make those determinations.  They will do benchmarking, as I have done here.  I've done benchmarking essentially, differences-in-differences benchmarking analysis.  And they will use stated preference methods, and conjoint is part of that.[11]

13.  Cantor similarly agrees that if there is a market wide price premium, it applies equally to all class members.

I'm saying that according to that theory, if there is a price premium embedded at the market level because of this cause, whatever it is, then that is something that all the consumers will pay.[12]

**Cantor does not challenge conjoint methodology**

14.  In the sections below, I will address the specifics of the Cantor Report.  But first, it is notable that Cantor does not suggest that conjoint analysis is an invalid method -- nor could she.  Conjoint analysis is a time-tested, peer-reviewed, well-accepted and widely used method.  Conjoint analysis has long history of use in litigation to determine economic damages, as well as in academia and in industry.[13]  As one textbook on conjoint describes:

---

[11] Cantor Deposition, at 220.

[12] Cantor Deposition, at 240.

[13] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013) http://www.analysisgroup.com/forums/winter-2013/when-all-natural-may-not-be/ (last accessed August 1, 2016); *see, e.g., Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018); *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020); *Koenig v. Vizio, Inc.*, Los Angeles Superior Court case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020); *Banh v. American Honda Motor Co.*, Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020); *Kaupelis v. Harbor Freight Tools, Inc.*, 2020 WL 5901116 (C.D. Cal. Sep. 23, 2020); *McMorrow v. Mondelez*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *de*



Reply Declaration of Colin B. Weir
February 7, 2024
Page 7 of 34

In short, conjoint analysis, as an overall methodology, is tested, used, and relied upon in academia and business.  It has been used in numerous and varied product and service segments.  Because widespread acceptance in the scientific community is an important factor in determining the admissibility of expert evidence, this makes conjoint analysis -- again, as an overall methodology -- appealing for litigators who wish to avoid untested methods with limited applicability.[14]

15.    Cantor offers no criticisms on the use of conjoint generally.  She notes that conjoint is a widely used methodology, and generally accepted in marketing sciences for measuring consumer preferences with respect to product features.[15]  As noted above, Cantor admits that conjoint analysis can be used to calculate damages.[16]

---

*Lacour v. Colgate-Palmolive Co.*, 2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021); *Bailey v. Rite Aid Corp.*, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021) ; *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-567 (2020); *Hudock v. LG Elecs. USA, Inc.*, Civil No. 16-1220 (JRT/KMM), 2020 WL 1515233, at *15 (D. Minn. Mar. 30, 2020); *Banh v. American Honda Motor Co.*, Inc., Case No. 2:19-cv-05984-RGK-AS, 2020 WL 4390371, at *17-*19 (C.D. Cal. Jul. 28, 2020); *Koenig v. Vizio, Inc.*, Case No. BC702266 (Cal. Super. Ct. Cnty. L.A. Aug. 24, 2020); *Kaupelis v. Harbor Freight Tools, Inc.*, Case No. 19-1203-JVS (DFMx), 2020 WL 5901116, at *5-*6 (C.D. Cal. Sep. 23, 2020); *McMorrow v. Mondelez Int'l Inc.*, Case No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *3-*7 (S.D. Cal. Mar. 8, 2021); *Prescod v. Celsius Holdings, Inc.*, Case No. 19STCV09321 (Cal. Super. Ct. Cnty. L.A. Aug. 2, 2021); *Cardenas v. Toyota Motor Corp.*, Case No.: 18-cv-22798, 2021 U.S. Dist. LEXIS 152920, at *21-*23, *52-*65 (S.D. Fla. Aug. 12, 2021); *Bechtel v. Fitness Equipment Svcs., LLC*, No. 1:19-CV-726, 2021 WL 4147766, at *2, *16-*17 (S.D. Ohio Sep. 12, 2021); *Milan v. Clif Bar & Co.*, Case No. 18-cv-02354-JD, 2021 WL 4427427, at *6-*7 (N.D. Cal. Sep. 27, 2021); *Testone v. Barlean's Organic Oils*, Case No. 19-cv-169-JLS (BGS), 2021 WL 4438391, at *5-*6, *15-*17 (S.D. Cal. Sep. 28, 2021); *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2022 U.S. Dist. LEXIS 219297, at *57 (C.D. Cal. Oct. 21, 2022); *Willis v. Colgate Palmolive Co.*, No. CV 19-8542 JGB (RAOx) (C.D. Cal Jan. 5, 2023), ECF No. 105; *Chapman v. General Motors*, Case No. 2:19-CV-12333-TGB-DRG, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023); *Gunaratna v. Dennis Gross Cosmetology LLC*, Case No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023); *Banks v. R.C. Bigalow, Inc.*, No. 20-CV-06208 DDP (RAOx) 2023 U.S. Dist. LEXIS 135167, at *22-23 (C.D. Cal. Jul. 31, 2023).

[14] Handbook of Marketing Analytics, Natalie Mizik, Dominique Hanssens (2018) at 573.

[15] Cantor Deposition, at 211.

[16] Cantor Deposition, at 220.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 8 of 34

16.  Instead, Cantor quibbles about the implementation of conjoint methodology.  These criticisms are speculative at best, because Cantor has not conducted any empirical work related to the conjoint analysis.[17]

17.  Cantor does not dispute that (i) conjoint methods work, and (ii) there are objective, statistical measures that can be used to evaluate the statistical significance of these results.[18]

**My analysis -- and the Dennis Survey -- appropriately control for the supply side**

18.  Cantor's economic criticism of the Dennis conjoint can be distilled to one primary complaint.  She claims that Dennis and I have failed to properly incorporate the supply-side into our analysis.[19]  Cantor does acknowledge that Dennis and I address the supply-side by "using the actual prices paid by consumers, as well as the fixed quantity of Products supplied."[20]  She then goes on to disparage this method and suggest -- in violation of the Reference Manual on Scientific Evidence,[21] which the Supreme Court's decision in *Comcast v. Behrend* adopted[22] -- that Dennis and I should model a but-for world in which more than the harmful conduct can vary, including the very sales of the challenged Products.

---

[17] Which is no surprise, given that Cantor disclaims expertise in conjoint analysis.  "Q.  Are you an expert in conjoint surveys and analysis? A.  I would not say that I am an expert, no." (Cantor Deposition, at 216.)

[18] "I do believe that it is a very widely used methodology." (Cantor Deposition, at 211.)  *See also*, "And [people calculating class-wide damages for a consumer product sold at retail] will use stated preference methods, and conjoint is part of that." (Cantor Deposition, at 220.)

[19] Cantor Report, at 5, 29 *et seq*.

[20] Cantor Report, at 9.

[21] Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011) ("Reference Manual on Scientific Evidence"), at 432.

[22] I have been advised by counsel that in *Comcast Corp. v. Behrend*, the United States Supreme Court quoted the Reference Manual on Scientific Evidence to explain that "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." 569 U.S. 27, 38 (2013) (quoting Reference Manual on Scientific Evidence at 432).



Reply Declaration of Colin B. Weir
February 7, 2024
Page 9 of 34

19.  This disagreement about how the supply-side should be modeled in this litigation should not be confused for a failure to model the supply-side at all.  I will first reiterate the nature of the supply-side controls present in the Dennis and Weir analyses, and then discuss the but-for world dispute.

20.  I worked closely with Dennis to ensure that his survey was appropriately designed to measure the true overpayment solely attributable to the Claim.

21.  Dennis and I had several discussions concerning the design of his survey where I provided input based upon economic concepts, and sales and market data.  We also had several discussions concerning how the ultimate results of his survey would be interpreted and applied.

22.  One of the most important and most frequent topics of discussion between Dennis and myself was the data on actual sales of the Products in the real-world marketplace during the relevant time period.  These real-world transactions occurred at prices that *already* reflect the supply-side factors then extant in the marketplace.  I understand that Dennis relied upon these historical data in setting the prices to be used in his conjoint survey, and that will be used in his but-for market simulation.  These market prices reflect the range of prices at which both the Products and competing products were available during the class period.

23.  There appears to be no dispute that the prices used in the Dennis survey reflect the prices paid by Class members; at least Cantor does not argue that the range was incorrect.[23]

24.  Dennis and I also discussed the fact that variability in pricing at the retail level showed that retailers' pricing was responsive to changing market forces.

25.  Another important supply-side factor that Dennis and I discussed was that, as I explain in my August 16, 2023 Declaration ("Weir Declaration"), the market for the Products was an "ordinary" market, subject to competitive pressures that both Defendant and retailers identified as risks to their business.

---

[23] *See generally,* Cantor Report (containing no such dispute).



Reply Declaration of Colin B. Weir
February 7, 2024
Page 10 of 34

26.   Many major retailers identify a willingness to adjust prices in response to changing economic conditions and consumer preferences, indicating that there would be a likely response to changing consumer preferences to the presence versus absence of the Claim.

27.   Finally, we discussed that the supply of the Products to the class is fixed as a matter of history.  In other words, the supply that is being modeled by Dennis and myself is that which already existed during the class period.  There is no other sensible measure of the quantity supplied to the class than what the class actually purchased.  Figure 1 on the following page highlights the difference between the Dennis/Weir analysis and Cantor's perspective on the matter.

---

**Dennis/Weir Model**

Uses the same class quantity for all stages of the analysis (apples-to-apples):

| Price | Real-world Price $ | - | But-for Price $ | = | Price Premium $ |
|---|---|---|---|---|---|
| Quantity | Actual Quantity | | Actual Quantity | | Actual Quantity |

**Cantor's view of how Dennis and Weir should model supply**

Uses conflicting/different quantities throughout the analysis (apples-to-oranges):

| Price | Real-world Price $ | - | But-for Price $ | = | Price Premium $ |
|---|---|---|---|---|---|
| Quantity | Actual Quantity | | ???? | | ????  and  Actual Quantity |

**Figure 1.**



Reply Declaration of Colin B. Weir
February 7, 2024
Page 11 of 34

28.   As illustrated in Figure 1, Cantor proposes comparing apples-to-oranges to determine the price premium charged for the challenged Claim -- i.e., comparing the price of Products in the real world (based on the quantities actually sold to class members) with the price of Products in the but for world had Defendant not used the challenged Claim (based on a quantity of supply **other than what was sold to class members**).   In comparison, Dennis' and my proposed analysis compares apples-to-apples to determine the price premium charged for the challenged Claim – i.e., comparing the price of Products bearing the challenged Claim in the real world (based on the actual quantity sold to class members) with the price of Products, which do not bear the challenged Claim, in the but-for world (***also*** based on quantities actually sold to class members).  As discussed below, Cantor's proposal improperly assumes that but for quantities supplied would or should be something other than the amounts actually supplied to class members.

**There is only one sensible but-for construction relevant to this case**

29.   The Reference Manual on Scientific Evidence explains that "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*."[24]

30.   Indeed, when it comes to a but-for analysis, the economic instructions are quite clear: the but-for world is the same as the real world in **every respect but one**: Defendant's allegedly wrongful conduct.  This premise is spelled out in the Reference Manual on Scientific Evidence.

> The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the Plaintiffs' economic

---

[24] Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011) (the "Reference Manual on Scientific Evidence") [emphasis supplied].



Reply Declaration of Colin B. Weir
February 7, 2024
Page 12 of 34

position if the harmful event had not occurred and the Plaintiffs' actual economic position.

In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful. [] The characterization of the harmful event begins with a clear statement of what occurred. The characterization also will include a description of the defendant's proper actions in place of its unlawful actions and a statement about the economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario). Damages measurement then determines the Plaintiffs' hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved.

**Because the but-for scenario differs from what actually happened only with respect to the harmful act**, damages measured in this way isolate the loss of value caused by the harmful act and exclude any change in the Plaintiffs' value arising from other sources.[25]

31.  The Reference Manual makes the steps clear:

- Identify the harmful event;

- Assume that Defendant is liable for the harm;

- Generate a clear statement of what occurred and what should have occurred;

- Analyze a but-for scenario to determine the economic damages; and

  o The but-for world differs from what actually happened only with respect to the harmful act.

32.  In the Weir Declaration, I set forth details of each of these steps.[26]  I noted that Defendant labeled its Products with the Claim (the harmful event).  I assumed for purposes of my research that Plaintiffs would prevail on the merits (assume Defendant is liable).  I noted the specific details of Plaintiffs' allegations that consumers paid too much as a result of Defendant's

---

[25] Reference Manual on Scientific Evidence, at 432. [Emphasis supplied]

[26] *See, e.g.,* Weir Declaration, at paras 5-7, 40 *et seq.*, 66-71.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 13 of 34

conduct (a clear statement of what occurred) and that Defendant should have not used the Claim

(a statement of what should have occurred).  I then set forth a damages framework to isolate the

economic impact of the conduct (analysis of damages) and used a but-for world that was the

same as the real world in every respect except the harmful conduct.

33.   Cantor agrees with the framework set forth in the Reference Manual, and generally

acknowledges the general principle of holding everything constant but-for the harmful conduct.[27]

You have to be able to isolate the impact.  The economic loss you're talking
about has to be isolated to what is being alleged as deceptive and unlawful.[28]

34.   But Cantor then admits that she would be willing to violate this principle, and vary a

myriad of factors in the but-for world.[29]  Cantor notes that "there can be differences in the levels

and conditions between the actual world and the but-for world.  There can be differences."[30]

35.   By changing the supply conditions in the but-for world, Cantor would allow another

major element of the but-for world to change: the very sales of the Products.[31]

36.   One truth about this wrong but-for construction is guaranteed: it will not isolate the

impact of Defendant's harmful conduct.  A but-for market price that is measured, for example, as

a result of the removal of the Claim AND a massive increase in production by competitors would

be unable to identify the economic effect due solely to Defendant's conduct.

37.   Notably, while Cantor speculates about changes in supply, she has not conducted

any empirical analysis of supply that would be relevant to this case.

---

[27] Cantor Deposition, at 242-244.

[28] Cantor Deposition, at 104.

[29] Cantor Deposition, at 249 *et seq*.

[30] Cantor Deposition, at 260.

[31] Cantor Deposition, at 252.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 14 of 34

Q.   Have you calculated the supply curve that you believe is relevant to this case?

A.   I have not calculated the supply curve.

Q.   Have you conducted analysis to determine how many units of the product would have been sold had the challenged claims not been made holding all else equal?

A.   No, I haven't calculated that because I haven't implemented a conjoint analysis.

Q.   Have you determined Barilla's own price elasticity of supply?

A.   I have not determined that.

Q.   What is the price elasticity of supply of the class products, generally?

A.   I -- well, I don't know what a number is.

Q.   Dr. Cantor, I think you indicated that you believe there's likely to be a medium elasticity, price elasticity of the supply of the class products.  Did you empirically test that?

A.   I haven't empirically tested any of this.[32]

**Historic market prices and quantities reflect the then extant supply conditions**

38.   None of the discussion above is to suggest that a calculation of damages based on a but-for market price should not take into account supply-side factors.  Instead, the dispute is about how to account for supply-side factors.  Cantor claims that the use of historical real-world market prices cannot be used to consider the supply conditions in the but-for world.  This is incorrect.  In fact, there is no dispute as to the fact that market prices reflect the historic supply conditions.[33]  Cantor also agrees that "there is a historically fixed number of products purchased" at issue in this case.[34]

---

[32] Cantor Deposition, at 234-235, 270-271.

[33] *See generally*, Cantor Report (containing no such dispute).

[34] Cantor Deposition, at 267.



39.   Despite disparaging the use of price and quantity as methods to integrate the supply side, Cantor acknowledges that the two core elements of a supply curve are price and quantity.

> Q.   Okay.  And in the typical economic depiction of supply and demand curves, the Y axis represents the price and the X axis represents the quantity; is that right?
>
> A.   Yes.[35]

40.   Using a range of historic real-world prices and fixed quantity in the Dennis survey "bakes in" the impact of myriad supply factors as they existed throughout the class period.

41.   As such, for the reasons discussed above, and as I affirm below, Dennis and I propose to model the supply-side in the but-for world as it existed in the real world, using the real-world market-based prices, and the actual quantity supplied to the class.

**The class products must exist in order for class members to receive value in the but-for world**

42.   Yet another reason to use the historic quantity of supply in the analysis is derived from a logical analysis of the concept that Plaintiffs and class members received some sort of value from the Products in the but-for world.  In order to receive value from a unit of the challenged Products in the but-for world, a class member logically must possess the product. And logically, if that person possesses the product in the but-for world, a retailer must have sold it to them.  And if a retailer was able to sell the product to a consumer in the but-for world, Defendant must have manufactured the Products, and (directly or indirectly) sold the Products to retailers.  As a matter of logic, that consumer cannot derive value from a product in the but-for world if that product does not exist, as Cantor concedes.

---

[35] Cantor Deposition, at 269.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 16 of 34

Q.   And do you believe that class members in this case received value from the products in the but-for world?

A.   Well, they will receive, yes, of course.

Q.   But if a consumer received value from a product in the but-for world, they have to actually possess the product; is that right?

A.   They -- well, if they're in the -- if they're in the portion of the demand curve that values the product at least as much as the price, then, yes, they do possess the product because it's -- it's of that value or greater.[36]

43.   If the Products must exist in the but-for world for consumers to derive value from them, it would be entirely illogical -- as Cantor suggests -- to measure the value received and not received in a world where some or all of the Products do not exist.

**Using the supply side factors from the "real" world in the but-for world makes perfect sense, as a change in Defendant's conduct would not change underlying supply-side factors**

44.   As above, the supply side being modeled by Dennis and myself in the but-for world is the same as in the real world. Supply exists in the but-for world as it did in the real world, as reflected by the myriad prices that consumers paid that were set by the then extant forces of both supply and demand, and in our model, we used that information along with a fixed quantity of product that was actually sold to consumers.

45.   As an example, assume that Defendant sells 1-million Products to the class. The analysis I have proposed attempts to determine what is the actual market value of those 1-million Products. It would be inappropriate to try to figure out the value of 900,000 Products or 1.1-million Products. I am trying to figure out the value of the exact 1-million Products sold to the class.

---

[36] Cantor Deposition, at 261-262.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 17 of 34

46.  In this manner, supply conditions vary in the but-for world, in the same manner in which it did in the real world.  There are numerous reasons to use the same supply side factors from the real world in the but-for world.

47.  In the but-for world, where we examine the result of a change in Defendant's harmful conduct (e.g., not using the challenged Claim), one must ask whether the change in conduct would result in any meaningful impact on the underlying supply factors.  The answer is no.  It does not cost more to not use a label claim, so it does not in any way impact the costs of producing the Products.

- The price of materials used in the Products does not change because of the non-use of the Claim;

- The costs of labor to produce the Products does not change because of the non-use of the Claim;

- The costs to ship Products to retailers does not change because of the non-use of the Claim;

- The costs to stock the Products on retail shelves, or to scan the Product at the register does not change because of the non-use of the Claim.

48.  Cantor concedes as much.

Q.  Would the nonuse of the challenged claim affect any of those factors you've listed?

A.  It depends on whether or not the provision of that claim is he -- involves cost.  So for example, if -- if it's very costly to have that claim on a package versus not have the claim on the package, then that could affect the supply curve.

But, you know, I think in general this is -- would be a very trivial or close to zero cost whether or not you have this in the design.[37]

---

[37] Cantor Deposition, at 273.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 18 of 34

49.   Because the underlying supply conditions would not change based upon the challenged conduct, it is reasonable to use the same supply factors in both the real and but-for worlds -- as Dennis and myself have done in this case.

**The Dennis conjoint analysis does not calculate "Willingness to Pay"**

50.   Cantor asserts that conjoint analysis can only calculate "Willingness to Pay" and cannot estimate a marketplace outcome.  She asserts that "Willingness to Pay" cannot be used to determine a market price overpayment.  Cantor is wrong.

51.   I define "Willingness to Pay" as the maximum amount someone would pay for a particular product or feature.

52.   While conjoint analysis can be used in certain circumstances to calculate "Willingness to Pay," that is not the only output of conjoint analysis.  As per the Weir Declaration, I propose to use calculations of a market outcome.  I often illustrate the difference between these concepts using the example of Gilligan's Island.[38]

53.   The concept of willingness to pay is akin to asking the wealthy couple, the Howells, "How much would you be willing to pay to get off the island right now, you never have to see Gilligan again, a nice boat ride home to safety?"  They would probably give an answer like "untold millions."  And that value in and of itself is not particularly useful in determining a market valuation.

54.   If you were to say to the Howells, "There is a boat coming in half an hour and the price of that boat is $5,000, will you purchase that boat ride home?"  That begins to tell you something about what will take place in the marketplace.

55.   Now, if you interview the Howells alone, that may not help you establish the market price.  But if you interview the Howells, Ginger, Mary Ann and the Professor, then suddenly

---

[38] A version of this illustration was originally used in "Getting Started With Conjoint" by Bryan Orme.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 19 of 34

now you understand the market value for a boat ride off Gilligan's Island, which might be less than the Howells would pay, but might be more than Ginger would pay.

56.   When a conjoint survey contains information about market prices, or proxies therefore, the survey can calculate a marketplace outcome (e.g., the Howells will purchase the boat ride for $5,000) rather than "Willingness to Pay" (e.g., the Howells would pay untold millions to get off of the island).

57.   The Dennis conjoint analysis is designed to determine a marketplace overpayment attributable to the Claim and not "Willingness to Pay."  The Dennis survey includes market-based price points and alternative product selections to simulate a marketplace outcome, including an outside, no-buy option.  The Dennis survey simply asks people to choose a product at a particular price and whether or not they would buy that product.

58.   The Dennis survey is taking information about the marketplace transactions, and then through the market simulator determining whether the market would purchase or not purchase at various price points.  In the aggregate, this simulation results in the calculation of a marketplace overpayment measurement.

59.   We know the market prices that consumers have already paid for the Products, and the conjoint is determining the likely market price without the use of the Claim (holding all else equal).

60.   Cantor references the concept of "willingness to pay" in her report, but that term can be used in different ways to mean different things.  There is a concept in economics called the *willingness to pay of the marginal consumer*, the price point at which the marginal consumer is indifferent as between buying the product or forgoing the purchase altogether.  This is the same as the <u>market price</u>, and is fully consistent with the accepted use of conjoint in the academic literature.

61.   A relevant court order certified a class based upon a price premium damages theory and a conjoint methodology utilizing calculations of "Willingness to Pay" to measure the market



Reply Declaration of Colin B. Weir
February 7, 2024
Page 20 of 34

price premium.  The order summarizes the defendant's position (which parallels Cantor's position

in this litigation) and dismisses those arguments while explaining how "Willingness to Pay" can

be used to determine a market price premium:

> Dial argues that Boedeker's model does not actually measure a market-
> determined price premium.  The price of a product in a competitive market,
> Dial says, is determined by the intersection of market demand and market
> supply for a particular transaction at a particular time.  Boedeker's model,
> however, measures only a difference in consumer "willingness to pay" for the
> challenged attribute, failing to take into consideration any market conditions or
> other factors that would affect the supply side curve and so influence product
> price in the market. [...]

> Dial's experts' criticism of Boedeker's model perhaps rests on a
> misunderstanding of what it purports to do.  The model does not, as Dial
> contends, seek to determine an "average" or a "median" expression of
> consumer "willingness to pay" for the Dial Complete product without the
> claimed feature, unconnected to supply side market forces.  Rather, Boedeker's
> model purports to calculate the "Marginal Consumer's Willingness to Pay" for
> that product in the actual market in which the products with the allegedly false
> claims were sold.  The distinction is important, for, as explained in a brief
> paper co-authored by Lisa Cameron, Michael Craig, and Nobel Laureate in
> Economics Daniel McFadden:

> *Defendants have argued that WTP ["willingness to pay"] results emerging
> from the conjoint analysis do not directly address the value of the patents in
> question.  However it is important to note that different research questions
> require different information about WTP.  For example, if the researcher seeks
> qualitative information about how much consumers value the infringing
> level(s) of the attribute at issue, he can develop a conjoint survey that provides
> that average or median consumer WTP . . . .*

> *On the other hand, if the researcher wants to assess the price premium
> associated with the infringing feature, then he will need to develop a conjoint
> survey that assesses the WTP of the marginal consumer - i.e. the consumer
> who is indifferent between buying and not buying the infringing product.  It is
> the WTP of the marginal consumer that is equivalent to the price premium
> associated with the infringing level of the attribute; this marginal consumer
> can be identified by offering respondents a "no buy" option.  (Lisa Cameron,
> Michael Cragg, & Daniel McFadden, "The Role of Conjoint Surveys in
> Reasonable Royalty Cases," LAW360 (Oct. 16, 2013),*



Reply Declaration of Colin B. Weir
February 7, 2024
Page 21 of 34

> *http://www.law360.com/articles/475390/the-role-of- conjoint-surveys-in-reasonable-royalty-cases) (last visited Mar. 24, 2017) (emphasis supplied).*
>
> In the example given, it was appropriate for the authors to directly equate the marginal consumer's "willingness to pay" with the price premium associated with a patented feature of a product, because in such cases it is the value added to the product that is of interest. In this case, however, another step is required to determine a price premium associated with the misrepresented product feature. ***The marginal consumer's willingness to pay for the product without the feature is equivalent to the market price of that product in the actual market into which the set quantity of offending products was sold***, which price must then be subtracted from the market price actually paid for the product with the claimed feature. That calculation will yield the price premium associated with the "Kills 99.99% of Germs" claim.[39]

62.    As is made plain by the *In re: Dial* order, that output can still be used to determine the price premium attributable to the Claim.  Dennis does offer consumers a "no buy" option in his survey, and as such, can identify the marginal consumer -- and the overpayment due to the Claim -- in the market simulator.

63.    Cantor's criticisms as to "willingness to pay" are inapposite here because these criticisms center on the concept of *maximum* "willingness to pay," while Dennis calculates something entirely different -- the *willingness to pay of the marginal consumer*.

64.    Cantor hints at the importance of studying the marginal consumer, when she (erroneously) contends that Dennis and I propose no method to "investigate product pricing aimed at the consumers who are at the cusp of purchasing any of the Products (i.e., the *marginal consumers*)."[40]  Of course, as above, we do propose such a method.

---

[39] *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326, 333-36 (D.N.H. 2017).  [emphasis supplied].

[40] Cantor Report, at 5.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 22 of 34

**Individual interpretation of the Claim does not prevent the existence of, or calculation of, a price premium**

65.  Cantor argues that some consumers are not misled by the Claim, or might not care about it--and therefore damages cannot be calculated in this matter.

66.  But Cantor admits that not everyone needs to care about the Claim for there to be a price premium, and that if it is determined that there is a premium solely attributable to the Claim in this case, that it applies to all consumers marketwide.  Specifically, Cantor notes that "it doesn't have to be 100 percent" of consumers that care about a particular feature of a product for that feature to impact the market price of that product.[41]

67.  This is because individual consumers cannot negotiate the price of the Products based upon their affinity for (or against) the Claim, and that everyone pays the market price for the Products.

> Q.  [… W]e don't find people at your local Albertsons or Von's negotiating the price of their Barilla pasta at the register; is that right?
>
> A.   Yes, I would say that that does not happen.
>
> Q.   Somebody that has an affinity for the products with the claims, the challenged claims, versus somebody who doesn't have an affinity for that product, they both pay the same price regardless; is that right?
>
> A.   If they are buying the product, yes.[42]

68.  Cantor acknowledges that if the market price is inflated, everyone is harmed because everyone would pay the embedded price premium.

---

[41] Cantor Deposition, at 238-239.

[42] Cantor Deposition, at 237.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 23 of 34

I'm saying that according to that theory, if there is a price premium embedded at the market level because of this cause, whatever it is, then that is something that all the consumers will pay.[43]

**Cantor's before-and-after, difference-in-difference methodology is incapable of calculating any relevant price premium at issue in this case**

69.    Cantor presents a series of product comparisons that she claims shows that there is no premium associated with the challenged Claim.  This analysis relies on a technique called "difference-in-difference" to compare prices before-and-after a change in the product labeling, with the goal of determining whether the addition or removal of a challenged claim has an impact on the price of a product.  Cantor agrees that isolating the impact of a challenged statement is important to calculating damages.

You have to be able to isolate the impact.  The economic loss you're talking about has to be isolated to what is being alleged as deceptive and unlawful.[44]

70.    Before-and-after analyses are notoriously poor at determining whether, in isolation, any one feature or attribute of a product has an impact on a product's price, because there are too many variables that would confound the ability of a simple side-by-side comparison of price to "hold everything else constant."  In other words, it is virtually impossible to isolate the impact of the challenged Claim using the method employed by Cantor.

71.    One of the reasons that conjoint analysis is well suited for calculating the price premium in this case is the ability to use the conjoint survey and market simulation to hold many factors across the analysis constant, thereby allowing for the isolation of the economic impact of the challenged Claim -- and to do so without the need for a comparison product (and without the need for all of the products included in the conjoint to be perfectly comparable).  Cantor ignores

---

[43] Cantor Deposition, at 240.

[44] Cantor Deposition, at 104.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 24 of 34

this decided advantage of conjoint, and forges ahead with her analyses using difference-in-difference, which does not directly control for the effect of many other individual variables, or to broadly hold factors constant in the way that conjoint analysis can.

72.   Cantor attempts to remedy this problem by comparing the change in one product with a label change with another product that does not have the same label change.  This method is sometimes called "difference-in-difference."  The method could be described as follows:

> And so that's the basic idea of a difference-in-difference analysis -- is that **if you have products for which you would expect a similar price trend in the absence of the treatment** -- in this case, the removal of the challenged claims from one set of products -- then you can use the difference between the treatment and control products' prices -- the difference between those two differences, as -- **as a control mechanism to provide a valid comparison** and evaluate the impact of removal of the Challenged Statements.[45]

73.   One problem with Cantor's method is that her approach does not include explicit explanatory variables for the myriad confounding factors.[46]  Instead, as noted by Cantor, the difference-in-difference, before-and-after method relies on a critical assumption: that the comparison product used in the analysis would respond to all possible variables that could impact price in exactly the same fashion.  If the prices of the comparison products would respond differently to various confounding factors, the difference-in-difference method cannot isolate the impact of any factor at all.  While not impossible, it is challenging to find such an appropriate comparison.

74.   Cantor's difference-in-difference analysis cannot determine whether there is a price premium attributable to the challenged Claim in this case because the product she uses as a comparison are decidedly non-comparable for purposes of a difference-in-differences analysis.

---

[45] Testimony of Bruce Strombom, Senior Advisor, Analysis Group, December 21, 2022. [Emphasis supplied.]

[46] Cantor Deposition, at 276, 278, 282-283.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 25 of 34

And Cantor would not know this, because she did not perform any due diligence necessary to know if the products were indeed comparable or not. She simply assumed it to be true without any analysis or consideration of evidence to support that assumption.

75. For example, Cantor notes that her model does not include controls for Barilla's advertising spend.

> Q. Does your DID model include controls for Barilla's advertising spend?
>
> A. It doesn't.[47]

76. Cantor notes that the model generally may omit relevant control variables, admitting: "Now it is true that there could be some omitted variables."[48]

77. As to many of these factors, Cantor further admits that she simply didn't have data to study the issue.

> A. But I didn't have information on these other things.[49]
>
> Q. I didn't see any other data at all about, you know, advertising spends or competitor conduct.
>
> A. No.
>
> Q. Do you have any data like that that was factored into your analysis?
>
> A. Well, one, I don't have that data.[50]

---

[47] Cantor Deposition, at 276.

[48] Cantor Deposition, at 278.

[49] Cantor Deposition, at 280.

[50] Cantor Deposition, at 282.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 26 of 34

78.  As a result, Cantor's analysis is based upon the heroic assumption that the structure

of the model automatically controls for external factors, or that such factors are simply assumed

to have no impact.

> Q.   You're saying that your DID model controls for each of those factors and rules them out, or are you just assuming that they don't have an impact?
>
> A.   I'm assuming that the way that I have structured the fixed effect here, and the comparison between the Whole Grain and the -- and the Classic Blue Box products, so this treatment group and control group.
>
> I'm assuming that these measures either incorporate those effects already or those effects are not -- they wouldn't -- adding them in wouldn't change the results.[51]

79.  In summary, any one of these omitted factors, and especially in combination,

undermines the reliability of Cantor's analysis.  It is noteworthy that Cantor did not do any work

to support her contention that the comparison product chosen for the analysis was indeed suitable

for purposes of her analysis.

**Cantor's "comparison" product is not actually comparable**

80.  As noted above, the difference-in-difference method attempts to isolate the impact of

one change through the use of a comparison product.  The comparison product is only suitable if,

as Cantor notes, "they do have to be affected by trends in a similar way" for the comparison

product and the product of interest.[52]  This comparison product is intended as a control

mechanism to provide a valid comparison for the product at interest.

81.  The first error in Cantor's analysis is that she relies on a comparison of the average

prices and price changes in two product lines, Barilla Classic Blue Box ("Blue Box") and Barilla

---

[51] Cantor Deposition, at 279.

[52] Cantor Deposition, at 282.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 27 of 34

Whole Grain ("Whole Grain") that occurred before and after October 2022 and February 2023 label changes that removed the Claim from some, but not all, Blue Box products.

82.   The two products used in a difference-in-difference analysis do in fact need to be comparable, and Cantor has not provided the evidence to demonstrate that Blue Box Products and Whole Grain Products are comparable and meet the requirements for a difference-in-difference analysis.  Indeed, the results of a difference-in-difference analysis become more unreliable for every degree that the products used in that analysis are not comparable.

83.   Cantor argues that the products in her analysis have similar pricing trends.  But a shared history of a similar price trend does not itself make two different products candidates for a difference-in-difference price comparison.  It is not hard to imagine a box of pasta that would have a similar historic price trend with a carton of rice.  For Cantor, that similar pricing trend would be sufficient to make rice a comparator product for Barilla pasta.  But the two products are obviously different products and would be inappropriately paired in a difference-in-difference analysis -- they have different ingredients, cost structures, advertising, response to macro-economic factors, and appeal to consumers.

84.   The very fact that Barilla produces two different product lines, with drastically different levels of demand, selling for different prices, comprised of different ingredients, produced with different manufacturing costs, is evidence enough that these two products are not comparable for difference-in-difference, or appropriately paired in Cantor's analysis.

85.   In addition, Cantor's analysis is marred by the fact that her dates of measurement -- October 2022 and February 2023 -- do not mark clean cut removals of the Claim from the marketplace.  Instead they represent a range during which some, but not all, of the products were engaged in a transition away from use of the Claim.[53]  As such, at best, Cantor is comparing some Blue Box products with and without the Claim against the Whole Grain Products.

---

[53] Cantor's choice of dates is based upon Defendant Barilla America, Inc.'s Supplemental Objections and Responses to Plaintiffs' Interrogatories, Set One, served on August 15, 2023, and verified on August 30, 2023, which notes in Defendant's First Supplemental Response to Interrogatory No. 2, at pages 14-16, that "Barilla estimates that the



Reply Declaration of Colin B. Weir
February 7, 2024
Page 28 of 34

86.    It remains that Cantor fails to provide any evidence, and has not conducted any empirical analysis, to support the comparison of the two product lines in a difference-in-difference analysis.

**Cantor's analysis does not take account of other label claims and packaging designs that may impact price**

87.    As above, Blue Box versus Whole Grain is an inappropriate comparison just due to the differences in the formulations of the two products.  But there are other reasons why the two product lines are not appropriate to compare for purposes of a difference-in-differences analysis.  The products have several uniquely different label claims.

88.    For example, the Whole Grain pasta literally claims to be "WHOLE GRAIN" whereas Blue Box does not.

89.    Whole Grain products also make additional claims not found on Blue Box, such as "Excellent Source of Fiber," "One Simple Ingredient," and "Whole Wheat Pasta."  Blue Box uses the claim "Enriched Macaroni Product" which Whole Grain does not.  Whole Grain pastas have different cooking times from Blue Box.  Whole Grain pasta used the Whole Grains Council logo while Blue Box does not.  Blue Box pastas frequently use a numbering scheme (e.g. Penne No. 72) that Whole Grain pasta does not.[54]

90.    Although these are not challenged claims, they are label claims that may impact the price that consumers pay for the Class Products, and may do so differently.

91.    Contrary to Cantor's position that these two products are comparable, any label claim, such as "Excellent Source of Fiber" that has the potential to impact demand or price for

---

New Visual Identity PRODUCTS started becoming available to consumers in October 2022 and that 80% of the New Visual Identity products were available for sale to consumers at retailers by February 2023."

[54] See, e.g., BAI-CA_81-84, 193-196.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 29 of 34

the two products differently, needs to be considered and controlled for in a difference-in-difference analysis that attempts to measure class-wide damages, to ensure that the impact of the Product Claim are isolated. Cantor's failure to execute any such control renders her analysis useless.

92.    As noted above in paragraph 70, the conjoint methodology sponsored by Dennis and I does not suffer from these same frailties, as it does not rely on a comparison product, and can hold constant other differing features not expressly included in the model.

**Cantor fails to take account of other supply-side factors that impact the price of the Class Products**

93.    Cantor's difference-in-difference approach to measuring the economic impact of the Claim does not consider other supply-side factors, such as advertising costs, marketing costs, or competitive response -- such factors need to be considered and controlled for with careful research and the choice of comparable products to successfully execute a difference-in-difference analysis. It is particularly surprising that Cantor does not perform any such analysis, since Cantor argues in her Report that supply-side factors should be considered in the model sponsored by Dennis and myself. Dennis and I isolate and hold constant such factors in our analysis, while Cantor fails to do so in hers.

94.    If the price of the Blue Box Products decreased due to the discontinued use of the label Claim, Cantor's analysis would not have isolated the change simply because there were other confounding factors in the marketplace influencing consumers and impacting the price of the two product lines. For example, if Barilla spent more on advertising Blue Box Products after the label change, or if a competitor spent less on advertising, or if competitors changed their product offerings, prices for the Blue Box Products may increase, offsetting any price decrease resulting from the removal of the Claim.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 30 of 34

95.  Advertising and marketing costs, both supply-side factors, were not controlled in
Cantor's analysis.

> Q.  Does your DID model include controls for Barilla's advertising spend?
>
> A.  It doesn't.[55]

96.  It appears that Cantor does not think it is necessary to control for any such factors in
her analysis.  This is a fatal mistake.  Without the necessary controls in place, Cantor's analysis is
rendered unreliable in estimating -- and isolating -- the impact of the challenged Claim, holding
all else equal.

**Fixed effect controls are not sufficient to overcome these and other deficiencies**

97.  Cantor, at deposition, when pressed on whether her model could control for factors
that were obviously omitted from her analysis defaulted to referring to so-called "fixed effects"
variables as a band-aid to deal with all other possible confounding factors.  In lay terms, a fixed
effect "variable" is a control variable in a model that actually doesn't vary.  For example, price is
a non-fixed effect variable in Cantor's model which can change over time -- in effect, price can
vary.  The same goes for the challenged Claim -- in Cantor's model, the Claim is present at some
periods and not for others.  A fixed effect control is something that does not vary, and can
capture the effects of that unvarying element.  For example, Cantor includes fixed effects
controls for pasta type (e.g., spaghetti, lasagna, etc.) as well as year (e.g., 2020, 2021, etc).
While each product can have a different type of pasta coded for its fixed effect, spaghetti is
always spaghetti, so this control would never vary for an individual product.  The "year"
variables are specific to each year -- e.g., all products are coded as either being in year 2020 or
not -- and each year gets its own variable.  So even though it seems like the years can vary, in the

---

[55] Cantor Deposition, at 276.

ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 31 of 34

fixed effects construct, each year does not vary relative to itself, and the data is coded
accordingly.  Data from 2020 will always be coded as being from year 2020, and will not vary.

98.   While there is nothing wrong with using fixed effects controls, there are limitations
as to how substitutable they can be for other control variables in Cantor's difference-in-difference
model.  Because, as the name implies, a fixed effect control is "fixed," it can only serve as an
appropriate control for factors that are fixed.  For example, Cantor uses a collection of yearly
fixed effects variables, each one "picking up what are differences in the prices that are time
variant."[56]  In this instance, Cantor notes "So in effect for the course of the year that -- that is for
the full course of the year."[57]  In other words, Cantor's yearly fixed effect might control for
annual effects, but because of the "fixed" nature of the control, it does not control for variations
that might occur across other time periods, such as months.

99.   At deposition, Cantor was asked about whether she had included any controls for
seasonality -- which would be effects that would vary within a particular year, and thus are not
captured by the annual fixed effect control.  But as Cantor herself notes: "Remember, this is a
monthly model."[58]  As such, factors such as competitor behavior, or advertising (whether from
Barilla itself or competitors) or even just seasonal trends (e.g., major food holidays such as
Easter and Thanksgiving) which would not be static for the totality of a particular year, would
not be controlled for by the fixed effects model.

100.  Cantor also has product specific fixed effects, such as for spaghetti versus lasagna.
But as Cantor notes:

---

[56] Cantor Deposition, at 274.

[57] Cantor Deposition, at 274.

[58] Cantor Deposition, at 274.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 32 of 34

> So for example, a lasagna product might be higher priced per unit than a spaghetti product. And that -- that higher price will be accounted for in a fixed effect. **That's something that doesn't change over time.**[59]

101. While Cantor is correct about capturing differences as between spaghetti and lasagna, she affirms the limitation as to that specific control -- it only applies to factors that do not change over time (and also that are uniquely specific to spaghetti or lasagna but not broader categories or subcategories). Cantor suggests that such fixed effects could control for, for example, how competitors behave.

> Q. Does your DID model control for other actions by competitors such as how they price their products?
>
> A. It can. Again, I have a fixed effect in there for the products at the product level. And so to the extent that there might be more aggressive competition for spaghetti products than other products, that will be picked up by that fixed effect.[60]

102. But Cantor again notes the limitation of the fixed effects controls. If the competitor behavior is precisely specific to spaghetti and not other products, her fixed effects controls might help. But if the competition is not specific to the product, or as noted above, the competitive behavior changes over time, the fixed effects controls are no longer able to prevent her difference-in-difference model from being confounded.

103. When asked about a myriad of potential confounding factors -- including competitor actions, the introduction of new products (and the removal of products from the market), how competitors price their products, the quantity of products that was supplied, what label claims competitors used and how those labels may have changed -- Cantor candidly admitted that she is simply assuming they would have no impact on her model.

---

[59] Cantor Deposition, at 275. [Emphasis supplied].

[60] Cantor Deposition, at 277-278.

ETi ECONOMICS AND
TECHNOLOGY, INC.

Reply Declaration of Colin B. Weir
February 7, 2024
Page 33 of 34

> I'm assuming that the way that I have structured the fixed effect here, and the comparison between the Whole Grain and the -- and the Classic Blue Box products, so this treatment group and control group.
>
> I'm assuming that these measures either incorporate those effects already or those effects are not -- they wouldn't -- adding them in wouldn't change the results.[61]

104. When pressed as to whether she performed any empirical work to test these assumptions, Cantor admitted: "I didn't have information on these other things"[62] that would permit any such tests.

**Summary conclusions regarding the inability of Cantor's difference-in-difference model to determine the existence of a price premium, and if so, the magnitude thereof**

105. Thus, Cantor's comparison of Blue Box pastas (purportedly without the Claim) and Whole Grain pastas (with the Claim) fails to control for confounding factors that may explain any variance or lack of variance in the market price or sales between the two product lines. These confounding factors include, for example, the introduction or discontinuance of whole grain or refined grain competitive products; Defendant or competitor marketing and advertising of class, non-class, or competitive products; seasonality; the differences between the two product lines including other labeling differences; and a myriad of supply and demand factors that may impact one product line, but not the other, or both product line disproportionately.

106. Indeed, Cantor did not perform any analysis to evaluate and rule out the impact of these confounding factors, which is critical to designing a reliable difference-in-difference model and necessary to support the reliability of results derived from this model. As such, she cannot conclude that the removal or addition of the Claim resulted in a price premium (and if so, how much) because of the impact of confounding factors that either drove down the price for the

---

[61] Cantor Deposition, at 279.

[62] Cantor Deposition, at 280.



Reply Declaration of Colin B. Weir
February 7, 2024
Page 34 of 34

Whole Grain pastas (with the Claim) or drove up the price up for the Blue Box pastas (purportedly without the Claim).

107. The use of fixed effects, as Cantor acknowledges in deposition, simply do not and cannot control for these confounding variables.

**No tacit agreement**

108. There are elements of the Cantor Report to which I do not respond in this Reply. My silence on these matters should not be taken for tacit agreement or endorsement of those portions of Cantor's Report.

## IV. RESERVATION OF RIGHTS

109. My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial. I therefore reserve the right to amend or modify my testimony.

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts, this 7th day of February, 2024.

_____
Colin B. Weir

ECONOMICS AND
TECHNOLOGY, INC.

**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

**Statement of Qualifications**

**COLIN B. WEIR**


Colin B. Weir is President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, and a business member of the Boston Bar Association.  Mr. Weir has served on the Board of Trustees of the Waring School, and served as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony during the last four years:

**United States District Court, Southern District of California,** *Heather Turrey, Oliver Fiaty, Jordan Hernandez, and Jeffrey Sazon, individually, and on behalf of all others similarly situated, v. Vervent, Inc. fka First Associates Loan Servicing, LLC; Activate Financial, LLC; David Johnson; and Laurence Chiavaro*, Case No. 3:20-cv-00697-DMS-AHG, on behalf of Blood, Hurst, & O'Reardon, LLP, Declaration submitted on February 2, 2024.

**United States District Court, Southern District of California,** *William Lessin and Carol Smalley et al, on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 19-cv-1082-AJB-WVG , on behalf of McCune Law Group, Declaration submitted on December 1, 2023; Deposition on January 19, 2024.

**United States District Court, Northern District of California,** *Thomas Iglesias, David Salazar, Olivia Thurman, and Bethany Torbert, individually and on behalf of all others similarly situated, v. For Life Products, LLC*, Case No. 3:21-cv-01147-TSH, on behalf of Clarkson Law Firm, Declaration submitted on November 29, 2023; Deposition on January 4, 2024.

**United States District Court, Northern District of California,** *Matthew Sinatro and Shane Winkelbauer, individually and on behalf of all others similarly situated, v. Welch Foods Inc., A Cooperative and Promotion in Motion, Inc.*, Case No. 22-cv-07028-JD, on behalf of Clarkson Law Firm, Declaration submitted on November 20, 2023; Reply Declaration submitted on December 14, 2023; Deposition on December 20, 2023.

**United States District Court, Northern District of California,** *David Swartz, as an individual, on behalf of himself, the general public and those similarly situated, v. Dave's Killer Bread, Inc., and Flowers Foods, Inc.*, Case No.: 4:21-cv-10053-YGR, on behalf of Gutride Safier, LLP, Declaration submitted on November 17, 2023; Deposition on January 23, 2024.

**United States District Court, District of New Jersey,** *Thomas Niemczyk, individually, and on behalf of a class of similarly situated individuals, Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:19-cv-07846-ES-MAH; *Herbert Walters, Rick Hill, and Barry Wolford, individually, and on behalf of a class of similarly situated individuals, v. Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:22-cv-00247-ES-MAH, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 16, 2023.



**United States District Court, Northern District of California,** *Steven C. Johnson, an individual, on behalf of himself and all others similarly situated, v. GLOCK, INC., a Georgia Corporation; Glock Ges.m.b.H, an Austrian entity; John and Jane Does I through V; ABC Corporations I-X, XYZ Partnerships, Sole Proprietorships and/or Joint Ventures I-X, Gun Component Manufacturers I-V*, CASE NO.: 3:20-cv-08807-WHO, on behalf of Lewis and Lewis Trial Lawyers, PLC, Declaration submitted October 12, 2023.

**United States District Court, Northern District of California,** *Kenneth Glassman, individually and on behalf of all others similarly situated, v. Edgewell Personal Care, LLC*, Case No. 3:21-cv-07669-RS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 14, 2023; Deposition on November 8, 2023.

**United States District Court, for the Northern District of California, San Francisco,** *Tracy Howard, Adina Ringler, and Trecee Artis on behalf of themselves and those similarly situated, v. Hain Celestial Group, Inc., d/b/a Earth's Best*, Case No. 3:22-cv-00527-VC, on behalf of Gutride Safier LLP, Declaration submitted on September 5, 2023; Deposition on October 12, 2023; Reply Declaration submitted on December 13, 2023.

**Superior Court of the State of California, for the County of Alameda, Northern Division,** *Patricia Bland and Edward White, individually and on behalf of all others similarly situated, v. Premier Nutrition Corporation; and DOES 1-25, inclusive*, Case No. RG19002714, on behalf of Blood, Hurst, & O'Reardon, LLP, Deposition on September 1, 2023.

**United States District Court, Northern District of California,** *Antonio Mckinney, Clint Sundeen, and Joseph Alcantara, each individually and on behalf of all others similarly situated, v. Corsair Gaming, Inc.*, Case No. 3:22-cv-00312-CRB, on behalf of Dovel & Luner, LLP, Declaration submitted on September 1, 2023; Deposition on January 9, 2024.

**United States District Court, Northern District of California,** *Matthew Sinatro, and Jessica Prost, individually and on behalf of all others similarly situated, v. Barilla America, Inc*., Case No: 4:22-cv-03460, on behalf of Clarkson Law Firm, Declaration submitted on August 30, 2023.

**United States District Court, for the Central District of California,** *Kathleen Cadena, et al., v. American Honda Motor Company, Inc.*, Case No. 2:18-cv-04007-MWF-MAA, on behalf of Gibbs Law Group, LLP, Declaration submitted on August 11, 2023; Deposition on September 27, 2023.

**United States District Court, for the Eastern District of Michigan,** *Edward Pistorio, Paul Murdock, Daniel Przekop, Hasan Aktulga, Sandra and Thomas Kloszewski, Randall Courtney, Corey Gerritsen, Sara Elice, Justin Bagley and Elizabeth Bagley, and Marcus Swindle on behalf of themselves and all others similarly situated, v. FCA US LLC*, Case No.: 2:20-cv-11838-SFC-RSW, on behalf of Capstone Law APC, Declaration submitted on July 31, 2023; Deposition on September 13, 2023.



**United States District Court, District of Minnesota,** *Teeda Barclay, Jay Ovsak, and Nicole Nordick, individually, and on behalf of others similarly situated, v. iFIT Health & Fitness, Inc. f/k/a Icon Health & Fitness, Inc., and Nordictrack, Inc.*, Case No. 0:19-cv-02970-ECT-DTS, on behalf of Markovits, Stock & DeMarco, LLC, Declaration submitted on July 14, 2023; Deposition on August 9, 2023; Declaration submitted on January 2, 2024.

**United States District Court, Eastern District of Michigan, Southern Division,** *Bobby Roe, et al., individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:18-cv-12528-LGM-APP, on behalf of Kessler Topaz Meltzer & Check LLP, Declaration submitted on June 28, 2023.

**United States District Court, for the Central District of California, Eastern Division**, *Sarah McCracken, Individually and on behalf of all others similarly situated, v. KSF Acquisition Corporation*, Case No. 5:22-cv-01666, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on May 24, 2023.

**United States District Court, Northern District of California, Oakland Division,** *Jonathan Rusoff and Joseph Gambino, on behalf of themselves and all others similarly situated, v. The Happy Group, Inc., a corporation; and DOES 1 through 10, inclusive*, Case No. : 4: 21-cv-08084-YGR, on behalf of The Wand Law Firm, Declaration submitted on April 11, 2023; Deposition on May 10, 2023; Reply Declaration submitted on July 18, 2023.

**United States District Court, Northern District of Illinois,** *Justin O'Connor, Stanislaw Zielinski, Daniel Fair, Bryan Smith, Jason Steen, William Fiedler, Michael Barcelona, Robert Marino, Brian Dougherty, Susan Heller, Victor M. Orndorff, and Michael McDonald on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 1:19-cv-05045, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on March 30, 2023; Reply Declaration submitted on June 1, 2023; Deposition on June 15, 2023.

**United States District Court, Northern District of California, Oakland Division,** *In re: Plum Baby Food Litigation*, Case No. 21-cv-00913-YGR, on behalf of Lockridge Grindal Nauen P.L.L.P., Declaration submitted on December 20, 2022; Deposition on February 27, 2023; Declaration submitted on September 29, 2023.

**United States District Court, Northern District of California,** *Lisa M. Moore, individually and on behalf of all others similarly situated, v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC; Pfizer Inc.*, Case No. : 4:20-cv-09077-JSW, on behalf of Clarkson Law Firm and Moon Law APC, Declaration submitted on December 7, 2022; Deposition on April 13, 2023.

**United States District Court, Southern District of California,** *Montiqueno Corbett, Damaris Luciano, and Rob Dobbs, individually and on behalf of all others similarly situated, v. Pharmacare U.S., Inc.*, Case No.: 3:21-cv-00137-GPC-AG, on behalf of Milberg LLC, Declaration submitted on September 30, 2022; Declaration submitted on March 22, 2023; Deposition on April 10, 2023; Supplemental Declaration submitted on April 24, 2023.

5



**In the United States District Court, for the Eastern District of Texas, Sherman Division,** *William Squires, Jesse Badke, Ahmed Khalil, Michelle Nidever, John Murphy, Kevin Neuer, Nicholas Williams and Donna Sue Scott, on behalf of themselves and all others similarly situated, v. Toyota Motor Corp, Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc.*, Case No.: 4:18-cv-00138, on behalf of Berger Montague, P.C., Declaration submitted September 29, 2022; Deposition on October 27, 2022; Reply Declaration submitted December 21, 2022.

**United States District Court, Northern District of California,** *Anthony Bush, individually and on behalf of all others similarly situated, v. Rust-Oleum Corporation* Case No.: 3:20-cv-03268-LB, on behalf of Clarkson Law Firm and Moon Law, Declaration submitted on September 27, 2022; Deposition on February 8, 2023.

**United States District Court, Southern District of California,** *William D. Petterson, individually and on behalf of all others similarly situated, v. Circle K Stores Inc.*, Case No. 3:21-cv-00237-RBM-BGS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 22, 2022; Deposition on October 11, 2022.

**Superior Court of the State of California, For the County Of Santa Clara,** *Elizabeth J. VanCleave, and Katherine Hassan, individually and on behalf of a class of similarly situated individuals, v. Abbott Laboratories*, Case No. 19CV345045, on behalf of Goldstein, Borgen, Dardarian & Ho, Declaration submitted on September 19, 2022; Reply Declaration submitted on January 10, 2023; Deposition on February 1, 2023.

**United States District Court, Southern District of New York,** *Asher Haft, Robert Fisher, and Cheryl Jones, individually and on behalf of all others similarly situated, v. Haier US Appliance Solutions, Inc. d/b/a GE Appliances*, Case No.: 1:21-cv-00506-GHW, on behalf of Milberg LLC, Declaration submitted on August 12, 2022.

**United States District Court for the District of Delaware,** *Michael Ninivaggi, Jake Mickey and Cailin Nigrelli, individually and on behalf of all others similarly situated, v. University of Delaware,* Case No. 20-cv-1478-SB, and *Hannah Russo, individually and on behalf of all others similarly situated, v. University of Delaware*, Case No. 20-cv-1693-SB, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 1, 2022; Declaration submitted on August 1, 2022; Deposition on August 19, 2022; Reply Declaration submitted September 30, 2022.

**United States District Court, Central District of California,** *Kimberly Banks and Carol Cantwell, on behalf of themselves and all others similarly situated, v. R.C. Bigelow, Inc., a corporation; and DOES 1 through 10, inclusive,* Case No.: 20-cv-06208-DDP (RAOx), on behalf of The Wand Law Firm, Declaration submitted on June 17, 2022; Rebuttal Declaration submitted October 3, 2022.



**United States District Court, Central District of California,** *Mocha Gunaratna and Renee Camenforte, individually and on behalf of all others similarly situated, v. Dr. Dennis Gross Skincare, LLC, a New York Limited Liability Company*, Case No. 2:20-cv-02311-MWF-GJS, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on March 30, 2022; Deposition on May 20, 2022; Reply Declaration submitted on September 22, 2022.

**Superior Court of the State of California, County of Santa Clara,** *Lance Dutcher, individually and on behalf of all others similarly situated, v. Google LLC, d/b/a YouTube, and YouTube LLC,* Case No. 20CV366905, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2022; Deposition on May 17, 2022; Reply Declaration submitted on August 2, 2022; Declaration submitted on May 2, 2023.

**United States District Court, Middle District of Tennessee, Nashville Division,** *In re Nissan North America, Inc. Litigation; Lakeita Kemp, individually and on, behalf of all others similarly situated v. Nissan North America, Inc., and Nissan Motor Co., Ltd.*, Cases Nos. 3:19-cv-00843, Case No. 3:19-cv-00854, on behalf of DiCello Levitt Gutzler, Declaration submitted February 28, 2022; Deposition on August 25, 2022; Reply Declaration submitted on November 15, 2022.

**In the Court of Claims, for the State of Ohio,** *Autumn Adams, individually and on behalf of all others similarly situated v. University of Cincinnati*, Case No. 2021-00458JD, on behalf of Bursor & Fisher, P.A., Declaration submitted February 11, 2022; Deposition on August 10, 2022; Reply Declaration submitted on November 16, 2022.

**United States District Court, Northern District of California, San Francisco Division,** *Eric Fishon, individually and on behalf, of all others similarly situated, v. Premier Nutrition Corporation f/k/a Joint Juice, Inc.*, Case No. 3:16-cv-06980-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Expert Report submitted January 24, 2022; Deposition on March 11, 2022; Oral Testimony and Cross Examination on May 31, 2022.

**Superior Court for the State of California, for the County of Alameda,** *Michelle Moran, an individual on behalf of herself and all others similarly situated, v. S.C. Johnson & Son, Inc.*, Case No.: RG20067897, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on November 12, 2021.

**United States District Court, Eastern District of Michigan,** *Chapman, et al., v. General Motors, LLC*, Case No. 2:19-cv-12333-TGB-DRG, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on November 10, 2021; Declaration submitted on March 1, 2022; Deposition on April 13, 2022; Reply Declaration submitted on June 16, 2022.



**United States District Court, Central District of California,** *Terry Sonneveldt, Esther Wright Schneider, Michael Bibbo, Alan Meshberg, Brian Hume, Amie Levasseur, Jean Levasseur, Christopher Lacasse, Beth Pickerd, Dan Pickerd, Tim Halwas, Erin Matheny, Lewis Delvecchio, Jon Sowards, Lawrence Bohana, Monika Bohana, David Dennis, Jacqueline S. Aslan, Michael Gilreath, and Renatta Gilreath, individually and on behalf of all others similarly situated, v. Mazda Motor of America, Inc. D/B/A Mazda North American Operations and Mazda Motor Corporation*, Case No.: 8:19-cv-01298-JLS-KES, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on November 3, 2021; Declaration submitted on March 11, 2022; Deposition on April 4, 2022; Declaration submitted July 26, 2022.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Tyler Allen Click, Troy Bowen, Bailey Henderson, Ethan Galan, Luis G. Ochoa Cabrera, Homero Medina, Michael Guidroz, Scott A. Hines, Bryan J. Tomlin, Quentin Alexander, and Jacqueline Bargstedt, individually and on behalf of all others similarly situated, v. General Motors LLC*, Case No. 2:18-cv-00455-NGR, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on October 12, 2021.

**In the Court of Claims, for the State of Ohio,** *Lawrence Keba, individually and on behalf of all others similarly situated v. Bowling Green University*, Case No. 2020-00639JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 26, 2021; Declaration submitted on March 31, 2023.

**In the Court of Claims, for the State of Ohio,** *Mackenzie Weiman and Sarah Baumgartner, on behalf of themselves and all others similarly situated v. Miami University*, Case Nos. 2020-00614JD and 2020-00644JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 10, 2021.

**United States District Court, Southern District of New York,** *Eric Fishon and Alicia Pearlman, individually and on behalf of all others similarly situated, v. Peloton Interactive, Inc.*, Case No. 1:19-cv-11711-LJL, on behalf of DiCello Levitt Gutzler and Keller Lenkner, Declaration submitted September 15, 2021; Deposition on October 12, 2021; Reply Declaration submitted on November 1, 2021; Declaration submitted on October 17, 2022; Reply Declaration submitted on November 30, 2022.

**In the Court of Claims, for the State of Ohio,** *Caitlyn Waitt and Jordan Worrell v. Kent State University*, Case No. 2020-00392JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 15, 2021; Reply Declaration submitted on November 11, 2021.

**United States District Court, Northern District of California,** *Christopher Julian, Mark Pacana, Paul Fiskratti, and Wayne Lewald, on behalf of themselves and all others similarly situated, v. TTE Technology, Inc., dba TCL North America*, Case No. 3:20-cv-02857-EMC, on behalf of Milberg LLC, Declaration submitted on August 27, 2021; Deposition on October 2, 2021.



**United States District Court for the Northern District of California,** *Sherris Minor, as an individual, on beha1f of herself, the general public and those similarly situated, v. Baker Mills, Inc.; and Kodiak Cakes, LLC*, Case No. 20-cv-02901-RS, on behalf of Gutride Safier, LLP, Declaration submitted August 2, 2021; Deposition on September 2, 2021; Reply Declaration submitted on October 18, 2021.

**In the Court of Claims, for the State of Ohio,** *Lily Zahn v. Ohio University*, Case No. 2020-00371JD, and *Gila Duke, individually and on behalf of all others similarly situated, v. Ohio University*, Case No. 2021-00036JD, on behalf of Bursor & Fisher, P.A., Declaration submitted July 30, 2021; Deposition on October 6, 2021; Reply Declaration submitted on December 2, 2021; Oral Testimony and Cross Examination on January 18, 2022.

**In the Court of Claims, for the State of Ohio,** *Brooke Smith, individually and on behalf of all others similarly situated, v. The Ohio State University*, Case No. 2020-00321JD, on behalf of Bursor & Fisher, P.A., Declaration submitted June 24, 2021; Deposition on August 26, 2021; Reply Declaration submitted on September 29, 2021.

**United States District Court, Eastern District of California,** *Felix Obertman, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 2:19-cv-02487-KJM-AC, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 14, 2021; Reply Declaration submitted on November 18, 2021.

**United States District Court, Central District of California,** *Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated, v. GT's Living Foods, LLC*, Case No. 2:19-cv-10920-FMO-GJS, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 2, 2021; Deposition on June 30, 2021.

**United States District Court, Southern District of New York,** *In re: Elysium Health - ChromaDex Litigation*, Case No. 1:17-cv-07394-LJL, on behalf of Frankfurt Kurnit Klein & Selz PC, Declaration submitted on April 20, 2021; Deposition, on April 26, 2021; Declaration submitted on June 4, 2021.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Darren Fulton and Craig Jude Broussard, each plaintiff is a citizen of the State of Texas, and each plaintiff individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:18-cv-00456, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 15, 2021; Deposition on April 16, 2021; Reply Declaration submitted on July 21, 2021.

**United States District Court, Southern District of California,** *Michael Testone, Collin Shanks, and Lamartine Pierre, on behalf of themselves, all others similarly situated, and the general public, v. Barlean's Organic Oils, LLC,* Case No. 3:19-cv-00169-JLS-BGS, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on March 1, 2021; Reply Declaration submitted on May 27, 2021; Declaration submitted on February 11, 2022; Deposition on March 25, 2022.



*Statement of Qualifications – Colin B. Weir*

**In The United States District Court, For the District of New Hampshire,** *Derick Ortiz, individually and on behalf of all others similarly situated, v. Sig Sauer, Inc.*, Case No.: 1:19-cv-01025-JL, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 26, 2021; Rebuttal Declaration submitted on July 28, 2021; Supplemental Declaration submitted on August 6, 2021; Declaration submitted on August 13, 2021; Oral Testimony and Cross Examination on May 4, 2022.

**United States District Court, Western District of Washington,** *Tamara Lohr and Ravikiran Sindogi, on behalf of themselves and all others similarly situated, v. Nissan North America, Inc., and Nissan Motor Co., LTD.*, Case No.: 2:16-cv-01023-RSM and United States District Court, Northern District of California, San Francisco Division, *Sherida Johnson, Subrina Seenarain, Chad Loury, Linda Spry, Lisa Sullivan, and April Ahrens on behalf of themselves and all others similarly situated, v. Nissan North America, Inc.*, Case No.: 3:17-cv-00517-WHO, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 16, 2021; Deposition on May 5, 2021; Reply Declaration submitted on August 13, 2021.

**Superior Court of the State of California, County of Alameda,** *Donna Connary, Zoriana Pawluk-Florio, Adrienne Andry, and Paul Terrecillas, on behalf of themselves and all others similarly situated, v. S.C. Johnson & Son, Inc.*, Case No. RG20061675, on behalf of Feinstein Doyle Payne & Kravec, LLC; Settlement Declaration submitted on February 16, 2021.

**United States District Court, Western District of New York,** *In re: Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, Case MDL No. 1:19-md-2903, on behalf of Beasley Allen Law Firm, Declaration submitted on February 8, 2021; Deposition on March 11, 2021; Brief Reply Declaration submitted on September 24, 2021; Oral Testimony and Cross Examination on September 27, 2021; Reply Declaration submitted on October 13, 2021.

**Superior Court for The State of California, County of Los Angeles,** *Daniel Prescod, individually and on behalf of all others similarly situated, v. Celsius Holdings, Inc. and Does 1 through 10, inclusive*, Case No. 19STCV09321, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on December 23, 2020; Deposition on April 14, 2021; Reply Declaration submitted on July 1, 2021.

**United States District Court, Central District of California,** *Sharon Willis, individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 2:19-cv-08542-JGB-RAOx, on behalf of Bursor & Fisher, P.A.; Declaration submitted on December 17, 2020; Deposition on March 30, 2021; Reply Declaration submitted on July 15, 2021.

**United States District Court, Northern District of California,** *Gordon Noboru Yamagata, and Stamatis F. Pelardis, individually and on behalf of all others similarly situated, v. Reckitt Benckiser LLC*, Case No. 3:17-cv-03529-VC, on behalf of Blood, Hurst, & O'Reardon, LLP, Expert Report submitted December 4, 2020; Expert Report submitted December 15, 2020; Deposition on January 19, 2021.



**In the United States Court of Federal Claims,** *Bryndon Fisher, individually and on behalf of all others similarly situated, v. The United States of America,* Case No. 15-1575C, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on December 3, 2020; Reply Declaration submitted on October 29, 2021.

**United States District Court, for the Southern District of Ohio, Western Division,** *Laura Bechtel and Troy Thoennes, on behalf of themselves and all others similarly situated, v. Fitness Equipment Services, LLC, dba SOLE Fitness*, Case No. 1:19-cv-00726-MRB, on behalf of Markovits, Stock & DeMarco, LLC, Declaration submitted on December 2, 2020; Reply Declaration submitted on June 14, 2021.

**United States District Court, Northern District of California,** *Thomas Bailey, on beha1f of himself and all others similarly situated, v. Rite Aid Corporation*, Case No. 4:18-cv-06926-YGR, on behalf of Greg Coleman Law, Declaration submitted October 19, 2020; Deposition on December 10, 2020; Reply Declaration submitted on March 16, 2021; Declaration submitted on May 3, 2022.

**United States District Court, Northern District of California,** *Jeremiah Revitch, individually and on behalf of all others similarly situated, v. New Moosejaw, LLC and Navistone, Inc.*, Case No. 3:18-cv-06827-VC, on behalf of Bursor & Fisher P.A., Declaration submitted on September 28, 2020, Deposition on November 20, 2020.

**United States District Court, Southern District of Florida,** *Javier Cardenas, Rodney and Pamela Baker, Michelle Monge, and Kurt Kirton, individually and on behalf of all others similarly situated, v. Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Southeast Toyota Distributors, LLC*, Case No.: 18-cv-22798-CIV-FAM, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on September 17, 2020; Declaration submitted on October 20, 2020; Deposition on November 12, 2020; Rebuttal Declaration submitted on November 24, 2020; Supplemental Declaration submitted on December 8, 2020; Rebuttal Declaration filed on December 9, 2020; Supplemental Declaration submitted on February 17, 2023; Oral Testimony and Cross Examination on March 7, 2023.

**United States District Court, Northern District of California,** *Ralph Milan, Sarah Aquino, and Elizabeth Arnold, on behalf of themselves, those similarly situated and the general public, v. Clif Bar & Company,* Case No. 3:18-CV-02354-JD, on behalf of Law Office of Paul K. Joseph, PC, Declaration submitted on September 17, 2020; Deposition on October 23, 2020; Reply Declaration submitted on November 27, 2020; Declaration submitted on March 2, 2021; Declaration submitted on April 9, 2021; Deposition on May 7, 2021.



*Statement of Qualifications – Colin B. Weir*

**Superior Court of The State of California, County of Orange,** *William Brady, on behalf of himself and all others similarly situated, v. Bayer AG; Bayer Corporation; Bayer Healthcare LLC; and Does 1 through 10, inclusive*, Case No. 0-2016-00839608-CU-MC-CXC, on behalf of Wolf Haldenstein Adler Freeman & Herz LLP, Declaration submitted on September 9, 2020; Deposition on December 4, 2020.

**United States District Court, for the Southern District of New York,** *Matthew Chamlin, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:19-cv-03852-AJN-DCF, on behalf of Bursor & Fisher P.A., Declaration submitted on August 14, 2020.

**United States District Court, Northern District of California, San Francisco Division,** *Daniel Zeiger, Individually, and on Behalf of All Others Similarly Situated, v. Wellpet LLC, A Delaware Corporation*, Case No. 3:17-CV-04056-WHO, on behalf of Gustafson Gluek PLLC, Declaration submitted on June 29, 2020.

**United States District Court, Central District of California, Western Division,** *Roberta Bilbrey, Jimmy Banh, Lawrence Goldman, Mark Peoples, Jamal Samaha, George Quinlan, Kara Drath, Gary Hanna, Sarah Gravlin, Caitlin Kremer, Cindy Ortiz, Alexis Chisari, Robert Moss, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Kayce Kleehamer, Mark Klein, Brian Klein, Charles Denaro, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, Hamilton Hines, And Kristen Gratton, on behalf of themselves and all others similarly situated, v. American Honda Motor Co., Inc., a California Corporation*, Case No.: 2:19-cv-05984 RGK (ASx), on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on April 9, 2020; Reply Declaration submitted on May 18, 2020; Deposition on June 12, 2020; Declaration submitted July 24, 2020.

**United States District Court, Central District of California,** *Will Kaupelis and Frank Ortega, individually and on behalf of all others similarly situated, v. Harbor Freight Tools, Inc.*, Case No. 8:19-cv-1203-JVS-DFM, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2020; Deposition on May 28, 2020; Reply Declaration submitted on September 8, 2020.

**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc*., Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted February 27, 2020; Deposition on April 30, 2020; Reply Declaration submitted on July 13, 2020; Declaration submitted on August 31, 2021; Deposition on October 15, 2021; Supplemental Declaration submitted on May 2, 2022; Deposition on May 12, 2022; Supplemental Declaration submitted January 16, 2023; Deposition on February 13, 2023.

**United States District Court, Northern District of California, San Francisco Division,** *Kym Pardini and Carrie Wood, on behalf of themselves and all others similarly situated, v. Unilever United States, Inc., a Delaware corporation*, Case No. 3:13-cv-01675-SC, on behalf of the Eureka Law Firm, Declaration submitted on February 21, 2020.



**United States District Court, Northern District of California, San Francisco Division,** *Jennifer Nemet, Norbert Kahlert, Angela Matt Architect, Inc., Eddie Field, Tonya Dreher, Adam Schell, Bryan Sheffield, Darryl Lecours, Gisbel De La Cruz, Derek Winebaugh, Michael Skena, Melissa St. Croix, Andrew Olson, John Kubala, Brendan Daly, Steven Ferdinand, Ken Galluccio, Steven Rawczak, Mark Miller, Sven Hofmann, Thomas Siehl, III, Adam Schell, Bradley Conner, Benjamin Tyler Dunn, Ingrid Salgado, Michael Bowman, and Jon Mosley, on behalf of themselves and all others similarly situated, v. Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America, LLC, Robert Bosch Gmbh, Robert Bosch LLC, Richard Dorenkamp, Heinz-Jakob Neusser, Jens Hadler, Bernd Gottweis, Oliver Schmidt, and Jurgen Peter,* Case No. 3:17-cv-04372-CRB, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 14, 2020; Reply Declaration submitted on April 30, 2020; Deposition on July 22, 2020.

**United States District Court, Norther District of California, San Francisco Division,** *Vicky Maldonado and Justin Carter, individually and on behalf of themselves and all others similarly situated, v. Apple Inc., Applecare Service Company, Inc., and Apple CSC, Inc.,* Case No. 3:16-cv-04067-WHO, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on February 11, 2020; Deposition on March 12, 2020; Supplemental Declaration submitted on September 14, 2020; Deposition on November 17, 2020.

**United States District Court, District of New Jersey,** *Brian Gozdenovich, on behalf of himself and all others similarly situated, v. AARP, Inc., AARP Services Inc., AARP Insurance Plan, Unitedhealth Group, Inc., and Unitedhealthcare Insurance Company,* Case No. 9:18-cv-81258-DMM, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 26, 2020; Deposition on July 1, 2020; Rebuttal Declaration submitted on July 9, 2020.

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc*., Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Reply Declaration submitted on February 27, 2020; Reply Declaration submitted on June 28, 2021.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc*., Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on May 4, 2020; Omnibus Declaration submitted on August 28, 2020; Declaration submitted on May 14, 2021; Rebuttal Declaration submitted on July 2, 2021.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Supplemental Declaration submitted on July 6, 2020.



**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Supplemental Declaration submitted on November 16, 2020; Declaration submitted on January 18, 2021.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.,* Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 21, 2020; Reply Declaration submitted April 9, 2020; Declaration submitted on July 22, 2022; Deposition on September 9, 2022.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted on July 16, 2020; Declaration submitted on March 10, 2021.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya and Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Deposition on October 16, 2019.

Mr. Weir has provided expert testimony since 2007, served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional projects, publications and testimony at the state, federal, and international levels.



**Exhibit 2**

**Documents Reviewed**

- First Amended Class Action Complaint, filed July 20, 2022.

- Declaration and Expert Report of J. Michael Dennis, Ph.D., August 16, 2023.

- November 30, 2023 Declaration and Report of Robin Cantor and supporting documents

- Deposition of Robin Cantor, January 5, 2024

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009.

- Sawtooth Software technical papers, available online at

http://www.sawtoothsoftware.com/support/technical-papers.

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013).

https://www.analysisgroup.com/Insights/ag-feature/analysis-group-forum/winter-2013-

forum/when-all-natural-may-not-be/

- *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*

- Khoday v. Symantec Corp., No. 11-180 (JRT/TNL), (2014 WL 1281600, at *10 (D. Minn.

March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- In re: Lenovo Adware Litigation, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- Guido v. L'Oreal, USA, Inc., 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- Brown v. Hain Celestial Group, Inc., 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- Microsoft v. Motorola, Inc., 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- Dzielak v. Maytag, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- Dei Rossi v. Whirlpool Corp., No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574

(E.D. Cal. Apr. 27, 2015)

- TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017)

- Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc., 2018 WL 3126385 (N.D. Cal. June 26,

2018)

- In Re Arris Cable Modem Consumer Litig., 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- Hadley v. Kellogg Sales Co., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- Martinelli v. Johnson & Johnson, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- Dei Rossi v. Whirlpool Corp., No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574 (E.D. Cal. Apr. 27, 2015)

- Krommenhock v. Post Foods, LLC, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020)

- Hudock v. LG Elecs. USA, Inc., 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020)

- Koenig v. Vizio, Inc., Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020)

- Banh v. American Honda Motor Co., Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020)

- Kaupelis v. Harbor Freight Tools, Inc., 2020 WL 5901116 (C.D. Cal. Sep. 23, 2020)

- McMorrow v. Mondelez Int'l Inc., Case No. 17-cv-2327-BAS-JLB, 2021 WL 859137, (S.D. Cal. Mar. 8, 2021)

- Prescod v. Celsius Holdings, Inc., Case No. 19STCV09321 (Cal. Super. Ct. Cnty. L.A. Aug. 2, 2021)

- Cardenas v. Toyota Motor Corp., Case No.: 18-cv-22798, 2021 U.S. Dist. LEXIS 152920 (S.D. Fla. Aug. 12, 2021)

- Bechtel v. Fitness Equipment Svcs., LLC, No. 1:19-CV-726, 2021 WL 4147766, at (S.D. Ohio Sep. 12, 2021)

- Milan v. Clif Bar & Co., Case No. 18-cv-02354-JD, 2021 WL 4427427, (N.D. Cal. Sep. 27, 2021)

- Testone v. Barlean's Organic Oils, Case No. 19-cv-169-JLS (BGS), 2021 WL 4438391, (S.D. Cal. Sep. 28, 2021)

- Johnson v. Nissan N. Am., Inc., 2022 WL 2869528, (N.D. Cal. July 21, 2022)

- Sonneveldt v. Mazada, 2022 WL 17357780, Order Granting-in-Part Def's Mot. to Exclude (C.D. Cal. Oct. 21, 2022)

- Willis v. Colgate Palmolive Co., No. CV 19-8542 JGB (RAOx), ECF No. 105 (C.D. Cal Jan. 5, 2023)

- Chapman v. General Motors, Case No. 2:19-CV-12333-TGB-DRG, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023)

- Gunaratna v. Dennis Gross Cosmetology LLC, Case No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)

- Banks v. R.C. Bigalow, Inc., No. 20-CV-06208 DDP (RAOx) (C.D. Cal. Jul. 31, 2023)

- Comcast v. Behrend, 569 U.S. 27, 38 (2013)

- In re: Dial Complete Marketing and Sales Practices Litigation, MDL Case No. 11-md-2263-SM, Opinion No. 2017 DNH 051

- *Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2020.

- *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al*., Public Health Nutrition: 13(5), 688–694

- *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65

- *How does origin labelling on food packaging influence consumer product evaluation and choices? A systematic literature review,* John Thøgersen, Food Policy, Volume 119 (2023) 102503, https://doi.org/10.1016/j.foodpol.2023.102503.

- *Estimating Consumer Willingness to Pay for Country-of-Origin Labeling*, Maria L. Loureiro and Wendy J. Umberger, Journal of Agricultural and Resource Economics 28(2):287-301 (2003).

- *Italian Food? Sounds Good! Made in Italy and Italian Sounding Effects on Food Products' - Assessment by Consumers*., Bonaiuto F, De Dominicis S, Ganucci Cancellieri U, Crano WD, Ma J and Bonaiuto M Front. Psychol. (2021) 12:581492.

- Declaration of Eric K. Swanholt, filed August 18. 2022, Exhibit C (Trademark Docs).

- Handbook of Marketing Analytics, Natalie Mizik, Dominique Hanssens (2018)

- Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011)

-

- BarillaGroup.com

- Barilla.com

- Winlandfoods.com

- TreeHouse Foods, 10-K Annual Report

- Target Corporation, 10-K Annual Report

- Walmart, Inc., 10-K Annual Report

- Kroger Co.,, 10-K Annual Report

-Publix Super Markets, 10-K Annual Report

- IRI data

- Defendant's Response to RFAs 1

- Defendant's Response to RFPs 1

- Defendant's Response to RFPs 2

- Defendant's Response to Interrogatories 1

- BB (01) Angel_2021.07.30_1 Front (00076808501063) [BAI-CA_2]

- BB (01) Angel_2021.07.30_2 Back (00076808501063) [BAI-CA_4]

- BB (01) Angel_2021.07.30_3 Side-Cook (00076808501063) [BAI-CA_3]

- BB (01) Angel_2021.07.30_4 Side-Nutri (00076808501063) [BAI-CA_1]

- BB (02) Campanelle_2020.12.02_1 Front (00076808514339) [BAI-CA_5]

- BB (02) Campanelle_2020.12.02_2 Back (00076808514339) [BAI-CA_7]

- BB (02) Campanelle_2020.12.02_3 Side-Cook (00076808514339) [BAI-CA_6]

- BB (02) Campanelle_2020.12.02_4 Side-Nutri (00076808514339) [BAI-CA_8]

- BB (04) Ditalini_2021.06.09_2 Back (00076808280456) [BAI-CA_11]

- BB (04) Ditalini_2021.06.09_3 Side-Cook (00076808280456) [BAI-CA_10]

- BB (04) Ditalini_2021.06.09_4 Side-Nutri (00076808280456) [BAI-CA_12]

- BB (04) Ditalini_2021.07.30_1 Front (00076808280456) [BAI-CA_9]

- BB (05) Elbows_2021.06.09_1 Front (00076808516135) [BAI-CA_13]

- BB (05) Elbows_2021.06.09_2 Back (00076808516135) [BAI-CA_15]

- BB (05) Elbows_2021.06.09_3 Side-Cook (00076808516135) [BAI-CA_14]

- BB (05) Elbows_2021.06.09_4 Side-Nutri (00076808516135) [BAI-CA_16]

- BB (06) Farfalle_2021.05.25_1 Front (00076808501087) [BAI-CA_17]

- BB (06) Farfalle_2021.05.25_2 Back (00076808501087) [BAI-CA_19]

- BB (06) Farfalle_2021.05.25_3 Side-Cook (00076808501087) [BAI-CA_18]

- BB (06) Farfalle_2021.05.25_4 Side-Nutri (00076808501087) [BAI-CA_20]

- BB (08) Fideo_2021.06.09_2 Back (00076808000733) [BAI-CA_23]

- BB (08) Fideo_2021.06.09_3 Side-Cook (00076808000733) [BAI-CA_22]

- BB (08) Fideo_2021.06.09_4 Side-Nutri (00076808000733) [BAI-CA_24]

- BB (08) Fideo_2021.07.30_1 Front (00076808000733) [BAI-CA_21]

- BB (09) Gemelli_2021.06.09_2 Back (00076808506433) [BAI-CA_27]

- BB (09) Gemelli_2021.06.09_3 Side-Cook (00076808506433) [BAI-CA_26]

- BB (09) Gemelli_2021.06.09_4 Side-Nutri (00076808506433) [BAI-CA_28]

- BB (09) Gemelli_2021.07.30_1 Front (00076808506433) [BAI-CA_25]

- BB (10) JumboShells_2021.04.08_1 Front (00076808517088) [BAI-CA_29]

- BB (10) JumboShells_2021.04.08_2 Back (00076808517088) [BAI-CA_31]

- BB (10) JumboShells_2021.04.08_3 Side-Cook (00076808517088) [BAI-CA_30]

- BB (10) JumboShells_2021.04.08_4 Side-Nutri (00076808517088) [BAI-CA_32]

- BB (11) LargeShells_2021.05.25_1 Front (00076808501124) [BAI-CA_33]

- BB (11) LargeShells_2021.05.25_2 Back (00076808501124) [BAI-CA_35]

- BB (11) LargeShells_2021.05.25_3 Side-Cook (00076808501124) [BAI-CA_34]

- BB (11) LargeShells_2021.05.25_4 Side-Nutri (00076808501124) [BAI-CA_36]

- BB (12) Linguine_2020.12.02_1 Front (00076808280173) [BAI-CA_41]

- BB (12) Linguine_2020.12.02_2 Back (00076808280173) [BAI-CA_43]

- BB (12) Linguine_2020.12.02_3 Side-Cook (00076808280173) [BAI-CA_42]

- BB (12) Linguine_2020.12.02_4 Side-Nutri (00076808280173) [BAI-CA_44]

- BB (13) LinguineFini_2020.12.02_1 Front (00076808280180) [BAI-CA_37]

- BB (13) LinguineFini_2020.12.02_2 Back (00076808280180) [BAI-CA_39]

- BB (13) LinguineFini_2020.12.02_3 Side-Cook (00076808280180) [BAI-CA_38]

- BB (13) LinguineFini_2020.12.02_4 Side-Nutri (00076808280180) [BAI-CA_40]

- BB (14) Manicotti_2020.12.02_1 Front (00076808517095) [BAI-CA_45]

- BB (14) Manicotti_2020.12.02_2 Back (00076808517095) [BAI-CA_47]

- BB (14) Manicotti_2020.12.02_3 Side-Cook (00076808517095) [BAI-CA_46]

- BB (14) Manicotti_2020.12.02_4 Side-Nutri (00076808517095) [BAI-CA_48]

- BB (15) MediumShells_2021.06.09_2 Back (00076808517989) [BAI-CA_51]

- BB (15) MediumShells_2021.06.09_3 Side-Cook (00076808517989) [BAI-CA_50]

- BB (15) MediumShells_2021.06.09_4 Side-Nutri (00076808517989) [BAI-CA_52]

- BB (15) MediumShells_2021.07.30_1 Front (00076808517989) [BAI-CA_49]

- BB (16) MezziRigatoni_2021.06.09_2 Back (00076808280838) [BAI-CA_55]

- BB (16) MezziRigatoni_2021.06.09_3 Side-Cook (00076808280838) [BAI-CA_54]

- BB (16) MezziRigatoni_2021.06.09_4 Side-Nutri (00076808280838) [BAI-CA_56]

- BB (16) MezziRigatoni_2021.07.30_1 Front (00076808280838) [BAI-CA_53]

- BB (17) MiniFarfalle_2021.06.09_2 Back (00076808535570) [BAI-CA_59]

- BB (17) MiniFarfalle_2021.06.09_3 Side-Cook (00076808535570) [BAI-CA_58]

- BB (17) MiniFarfalle_2021.06.09_4 Side-Nutri (00076808535570) [BAI-CA_60]

- BB (17) MiniFarfalle_2021.07.30_1 Front (00076808535570) [BAI-CA_57]

- BB (18) MiniPenne_2020.12.02_1 Front (00076808535600) [BAI-CA_61]

- BB (18) MiniPenne_2020.12.02_2 Back (00076808535600) [BAI-CA_63]

- BB (18) MiniPenne_2020.12.02_3 Side-Cook (00076808535600) [BAI-CA_62]

- BB (18) MiniPenne_2020.12.02_4 Side-Nutri (00076808535600) [BAI-CA_64]

- BB (19) MiniWheels_2020.12.02_1 Front (00076808535594) [BAI-CA_65]

- BB (19) MiniWheels_2020.12.02_2 Back (00076808535594) [BAI-CA_67]

- BB (19) MiniWheels_2020.12.02_3 Side-Cook (00076808535594) [BAI-CA_66]

- BB (19) MiniWheels_2020.12.02_4 Side-Nutri (00076808535594) [BAI-CA_68]

- BB (20) Mostaccioli_2021.06.09_2 Back (00076808280715) [BAI-CA_71]

- BB (20) Mostaccioli_2021.06.09_3 Side-Cook (00076808280715) [BAI-CA_70]

- BB (20) Mostaccioli_2021.06.09_4 Side-Nutri (00076808280715) [BAI-CA_72]

- BB (20) Mostaccioli_2021.07.30_1 Front (00076808280715) [BAI-CA_69]

- BB (21) Orzo_2021.07.30_1 Front (00076808513981) [BAI-CA_73]

- BB (21) Orzo_2021.11.03_2 Back (00076808513981) [BAI-CA_75]

- BB (21) Orzo_2021.11.03_3 Side-Cook (00076808513981) [BAI-CA_74]

- BB (21) Orzo_2021.11.03_4 Side-Nutri (00076808513981) [BAI-CA_76]

- BB (22) Pastina_2021.06.09_2 Back (00076808000474) [BAI-CA_79]

- BB (22) Pastina_2021.06.09_3 Side-Cook (00076808000474) [BAI-CA_78]

- BB (22) Pastina_2021.06.09_4 Side-Nutri (00076808000474) [BAI-CA_80]

- BB (22) Pastina_2021.07.30_1 Front (00076808000474) [BAI-CA_77]

- BB (23) Penne_2021.11.03_1 Front (00076808280739) [BAI-CA_81]

- BB (23) Penne_2021.11.03_2 Back (00076808280739) [BAI-CA_83]

- BB (23) Penne_2021.11.03_3 Side-Cook (00076808280739) [BAI-CA_82]

- BB (23) Penne_2021.11.03_4 Side-Nutri (00076808280739) [BAI-CA_84]

- BB (24) Pipette_2020.12.02_2 Back (00076808520071) [BAI-CA_87]

- BB (24) Pipette_2020.12.02_3 Side-Cook (00076808520071) [BAI-CA_86]

- BB (24) Pipette_2020.12.02_4 Side-Nutri (00076808520071) [BAI-CA_88]

- BB (24) Pipette_2021.07.30_1 Front (00076808520071) [BAI-CA_85]

- BB (25) Rigatoni_2021.05.27_1 Front (00076808502947) [BAI-CA_89]

- BB (25) Rigatoni_2021.05.27_2 Back (00076808502947) [BAI-CA_91]

- BB (25) Rigatoni_2021.05.27_4 Side-Nutri (00076808502947) [BAI-CA_92]

- BB (25) Rigatoni_2021.07.30_3 Side-Cook (00076808502947) [BAI-CA_90]

- BB (26) Rotini_2021.06.09_1 Front (00076808280982) [BAI-CA_93]

- BB (26) Rotini_2021.06.09_2 Back (00076808280982) [BAI-CA_95]

- BB (26) Rotini_2021.06.09_3 Side-Cook (00076808280982) [BAI-CA_94]

- BB (26) Rotini_2021.06.09_4 Side-Nutri (00076808280982) [BAI-CA_96]

- BB (27) Spaghetti_2020.12.02_1 Front (00076808280081) [BAI-CA_101]

- BB (27) Spaghetti_2020.12.02_2 Back (00076808280081) [BAI-CA_103]

- BB (27) Spaghetti_2020.12.02_3 Side-Cook (00076808280081) [BAI-CA_102]

- BB (27) Spaghetti_2020.12.02_4 Side-Nutri (00076808280081) [BAI-CA_104]

- BB (28) SpaghettiRigati_2020.12.02_1 Front (00076808521801) [BAI-CA_97]

- BB (28) SpaghettiRigati_2020.12.02_2 Back (00076808521801) [BAI-CA_99]

- BB (28) SpaghettiRigati_2020.12.02_3 Side-Cook (00076808521801) [BAI-CA_98]

- BB (28) SpaghettiRigati_2020.12.02_4 Side-Nutri (00076808521801) [BAI-CA_100]

- BB (29) ThickSpaghetti_2020.12.02_1 Front (00076808515046) [BAI-CA_105]

- BB (29) ThickSpaghetti_2020.12.02_2 Back (00076808515046) [BAI-CA_107]

- BB (29) ThickSpaghetti_2020.12.02_3 Side-Cook (00076808515046) [BAI-CA_106]

- BB (29) ThickSpaghetti_2020.12.02_4 Side-Nutri (00076808515046) [BAI-CA_108]

- BB (30) ThinSpaghetti_2020.12.02_1 Front (00076808280098) [BAI-CA_109]

- BB (30) ThinSpaghetti_2020.12.02_2 Back (00076808280098) [BAI-CA_111]

- BB (30) ThinSpaghetti_2020.12.02_3 Side-Cook (00076808280098) [BAI-CA_110]

- BB (30) ThinSpaghetti_2020.12.02_4 Side-Nutri (00076808280098) [BAI-CA_112]

- BB (31) Tri-ColorPenne_2020.12.02_1 Front (00076808002157) [BAI-CA_113]

- BB (31) Tri-ColorPenne_2020.12.02_2 Back (00076808002157) [BAI-CA_115]

- BB (31) Tri-ColorPenne_2020.12.02_3 Side-Cook (00076808002157) [BAI-CA_114]

- BB (31) Tri-ColorPenne_2020.12.02_4 Side-Nutri (00076808002157) [BAI-CA_116]

- BB (32) Tri-ColorRotini_2020.12.02_1 Front (00076808518290) [BAI-CA_117]

- BB (32) Tri-ColorRotini_2020.12.02_2 Back (00076808518290) [BAI-CA_119]

- BB (32) Tri-ColorRotini_2020.12.02_3 Side-Cook (00076808518290) [BAI-CA_118]

- BB (32) Tri-ColorRotini_2020.12.02_4 Side-Nutri (00076808518290) [BAI-CA_120]

- BB (33) Lasagne_2021.06.09_1 Front (00895059000619) [BAI-CA_121]

- BB (33) Lasagne_2021.06.09_2 Back (00895059000619) [BAI-CA_123]

- BB (33) Lasagne_2021.07.30_3 Side-Cook (00895059000619) [BAI-CA_122]

- BB (33) Lasagne_2021.07.30_4 Side-Nutri (00895059000619) [BAI-CA_124]

- BB (34) Ziti_2021.06.09_1 Front (00076808280746) [BAI-CA_125]

- BB (34) Ziti_2021.06.09_2 Back (00076808280746) [BAI-CA_127]

- BB (34) Ziti_2021.06.09_3 Side-Cook (00076808280746) [BAI-CA_126]

- BB (34) Ziti_2021.06.09_4 Side-Nutri (00076808280746) [BAI-CA_128]

- CA (35) Bucatini_1 Front (00076808004618) [BAI-CA_129]

- CA (35) Bucatini_2 Back (00076808004618) [BAI-CA_131]

- CA (35) Bucatini_3 Side-Cook (00076808004618) [BAI-CA_130]

- CA (35) Bucatini_4 Side-Nutri (00076808004618) [BAI-CA_132]

- CA (36) Casarecce_1 Front (00076808004601) [BAI-CA_133]

- CA (36) Casarecce_2 Back (00076808004601) [BAI-CA_135]

- CA (36) Casarecce_3 Side-Cook (00076808004601) [BAI-CA_134]

- CA (36) Casarecce_4 Side-Nutri (00076808004601) [BAI-CA_136]

- CA (37) Orecchiette_1 Front (00076808004625) [BAI-CA_137]

- CA (37) Orecchiette_2 Back (00076808004625) [BAI-CA_139]

- CA (37) Orecchiette_3 Side-Cook (00076808004625) [BAI-CA_138]

- CA (37) Orecchiette_4 Side-Nutri (00076808004625) [BAI-CA_140]

- CA (38) Penne_1 Front (00076808006278) [BAI-CA_141]

- CA (38) Penne_2 Back (00076808006278) [BAI-CA_143]

- CA (38) Penne_3 Side-Cook (00076808006278) [BAI-CA_142]

- CA (38) Penne_4 Side-Nutri (00076808006278) [BAI-CA_144]

- CA (39) Rigatoni_1 Front (00076808006285) [BAI-CA_145]

- CA (39) Rigatoni_2 Back (00076808006285) [BAI-CA_147]

- CA (39) Rigatoni_3 Side-Cook (00076808006285) [BAI-CA_146]

- CA (39) Rigatoni_4 Side-Nutri (00076808006285) [BAI-CA_148]

- CA (40) Spaghetti_1 Front (00076808004649) [BAI-CA_149]

- CA (40) Spaghetti_2 Back (00076808004649) [BAI-CA_151]

- CA (40) Spaghetti_3 Side-Cook (00076808004649) [BAI-CA_150]

- CA (40) Spaghetti_4 Side-Nutri (00076808004649) [BAI-CA_152]

- GF (41) Elbows_1 Front (00076808003918) [BAI-CA_153]

- GF (41) Elbows_2 Back (00076808003918) [BAI-CA_155]

- GF (41) Elbows_3 Side-Cook (00076808003918) [BAI-CA_154]

- GF (41) Elbows_4 Side-Nutri (00076808003918) [BAI-CA_156]

- GF (42) Fettuccine_1 Front (00076808006254) [BAI-CA_157]

- GF (42) Fettuccine_2 Back (00076808006254) [BAI-CA_159]

- GF (42) Fettuccine_3 Side-Cook (00076808006254) [BAI-CA_158]

- GF (42) Fettuccine_4 Side-Nutri (00076808006254) [BAI-CA_160]

- GF (43) Penne_1 Front (00076808003895) [BAI-CA_161]

- GF (43) Penne_2 Back (00076808003895) [BAI-CA_163]

- GF (43) Penne_3 Side-Cook (00076808003895) [BAI-CA_162]

- GF (43) Penne_4 Side-Nutri (00076808003895) [BAI-CA_164]

- GF (44) Rotini_1 Front (00076808003901) [BAI-CA_165]

- GF (44) Rotini_2 Back (00076808003901) [BAI-CA_167]

- GF (44) Rotini_3 Side-Cook (00076808003901) [BAI-CA_166]

- GF (44) Rotini_4 Side-Nutri (00076808003901) [BAI-CA_168]

- GF (45) Spaghetti_1 Front (00076808003888) [BAI-CA_169]

- GF (45) Spaghetti_2 Back (00076808003888) [BAI-CA_171]

- GF (45) Spaghetti_3 Side-Cook (00076808003888) [BAI-CA_170]

- GF (45) Spaghetti_4 Side-Nutri (00076808003888) [BAI-CA_172]

- VV (46) Rotini_1 Front (00076808002409) [BAI-CA_173]

- VV (46) Rotini_2 Back (00076808002409) [BAI-CA_175]

- VV (46) Rotini_3 Side-Cook (00076808002409) [BAI-CA_174]

- VV (46) Rotini_4 Side-Nutri (00076808002409) [BAI-CA_176]

- VV (47) Spaghetti_1 Front (00076808004120) [BAI-CA_177]

- VV (47) Spaghetti_2 Back (00076808004120) [BAI-CA_179]

- VV (47) Spaghetti_3 Side-Cook (00076808004120) [BAI-CA_178]

- VV (47) Spaghetti_4 Side-Nutri (00076808004120) [BAI-CA_180]

- WG (48) Elbows_1 Front (00076808006520) [BAI-CA_181]

- WG (48) Elbows_2 Back (00076808006520) [BAI-CA_183]

- WG (48) Elbows_3 Side-Cook (00076808006520) [BAI-CA_182]

- WG (48) Elbows_4 Side-Nutri (00076808006520) [BAI-CA_184]

- WG (49) Lasagne_1 Front (00076808004984) [BAI-CA_185]

- WG (49) Lasagne_2 Back (00076808004984) [BAI-CA_187]

- WG (49) Lasagne_3 Side-Cook (00076808004984) [BAI-CA_186]

- WG (49) Lasagne_4 Side-Nutri (00076808004984) [BAI-CA_188]

- WG (50) Linguine_1 Front (00076808006506) [BAI-CA_189]

- WG (50) Linguine_2 Back (00076808006506) [BAI-CA_191]

- WG (50) Linguine_3 Side-Cook (00076808006506) [BAI-CA_190]

- WG (50) Linguine_4 Side-Nutri (00076808006506) [BAI-CA_192]

- WG (51) Penne_1 Front (00076808005851) [BAI-CA_193]

- WG (51) Penne_2 Back (00076808005851) [BAI-CA_195]

- WG (51) Penne_3 Side-Cook (00076808005851) [BAI-CA_194]

- WG (51) Penne_4 Side-Nutri (00076808005851) [BAI-CA_196]

- WG (52) Rotini_1 Front (00076808006537) [BAI-CA_197]

- WG (52) Rotini_2 Back (00076808006537) [BAI-CA_199]

- WG (52) Rotini_3 Side-Cook (00076808006537) [BAI-CA_198]

- WG (52) Rotini_4 Side-Nutri (00076808006537) [BAI-CA_200]

- WG (53) Spaghetti_1 Front (00076808005844) [BAI-CA_201]

- WG (53) Spaghetti_2 Back (00076808005844) [BAI-CA_203]

- WG (53) Spaghetti_3 Side-Cook (00076808005844) [BAI-CA_202]

- WG (53) Spaghetti_4 Side-Nutri (00076808005844) [BAI-CA_204]

- WG (54) ThinSpaghetti_1 Front (00076808006490) [BAI-CA_205]

- WG (54) ThinSpaghetti_2 Back (00076808006490) [BAI-CA_207]

- WG (54) ThinSpaghetti_3 Side-Cook (00076808006) [BAI-CA_206]

- WG (54) ThinSpaghetti_4 Side-Nutri (00076808006490) [BAI-CA_208]

- KANTAR-0001-0048

- Global Barilla Update 2020 (BAI-CA_379-393)

- Blue Box Pkg 2021 (BAI-CA_357-378)

- Kantar Study May 2021 (BAI-CA_307-356)

- RCS Study (Al Bronzo) 2021 (BAI-CA_394)

- BAI-CA_00000209-218

- BAI-CA_00000307-356