**FAEGRE DRINKER BIDDLE & REATH LLP**
David A. Belcher (SBN 330166)
*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel: (310) 203-4000 | Fax (310) 229-1285

Kevin P. Wagner (*Pro Hac Vice*)
*kevin.wagner@faegredrinker.com*
Aaron D. Van Oort (*Pro Hac Vice*)
*aaron.vanoort@faegredrinker.com*
Tyler A. Young (*Pro Hac Vice)*
*tyler.young@faegredrinker.com*
Berglind H. Birkland (*Pro Hac Vice*)
*berglind.birkland@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000 | Fax (612) 766-1600

David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone: (480) 643-1850

Attorneys for Defendant
BARILLA AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>Defendant. | Case No. 4:22-cv-03460-DMR<br><br>Hon. Donna M. Ryu<br>Courtroom 4<br><br>**DEFENDANT BARILLA AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Aaron Van Oort and Proposed Order filed concurrently herewith]<br><br>Date: November 13, 2025<br>Time: 1:00 p.m.<br>Place: Courtroom 4<br><br>Action Filed: June 11, 2022<br>Trial Date: March 9, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2025, at 1:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Donna M. Ryu, at the United States District Court for the Northern District of California, Oakland Courthouse, in Courtroom 4, 3rd Floor, 1301 Clay Street, Oakland, CA 94612, Defendant Barilla America, Inc. ("Barilla") will and does move the Court for an order granting summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56 because there is no genuine dispute of material fact regarding Plaintiffs' claims and Barilla is entitled to judgment as a matter of law.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Aaron Van Oort and exhibits thereto, the exhibits and evidence, and such other matters and arguments as may be presented to the Court at the time of the hearing.

Dated: October 9, 2025

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ David A. Belcher*
David A. Belcher
Kevin P. Wagner (*Pro Hac Vice*)
Aaron D. Van Oort (*Pro Hac Vice*)
Tyler A. Young (*Pro Hac Vice*)
Berglind H. Birkland (*Pro Hac Vice*)
David J.F. Gross

Attorneys for Defendant
BARILLA AMERICA, INC.

**TABLE OF CONTENTS**


STATEMENT OF ISSUES TO BE DECIDED ........ XI

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Plaintiffs' First Amended Complaint ........ 2

B. The Court's Order on Barilla's Motion to Dismiss ........ 2

C. The Certified Class ........ 3

D. The Record on Summary Judgment ........ 4

1. Barilla made the label statements that it was "Italy's #1 Brand of Pasta" and that the pasta was "Made in the U.S.A. with U.S.A. and Imported Ingredients." ........ 4

2. Barilla is the #1 pasta brand in Italy. ........ 4

3. The pasta is made in the U.S.A. with U.S.A. and imported ingredients. ........ 5

4. The named Plaintiffs' testimony ........ 6

5. Plaintiffs' experts' opinions ........ 7

6. Barilla's experts' opinions ........ 8

LEGAL STANDARD ........ 8

ARGUMENT ........ 9

I. The Court should clear out two categories of claims that Plaintiffs chose not to develop. ........ 9

A. No evidence supports a manufactured-in-Italy claim. ........ 9

B. No evidence supports a claim against any statement other than the #1 Brand statement. ........ 10

II. Plaintiffs' statutory claims fail because the #1 Brand statement is true, and it does not deceive reasonable consumers about the Products' ingredients. ........ 11

A. Label statements are read reasonably, and when reasonable consumers encounter ambiguous statements, they check the whole label to inform them. ........ 12

B. Reasonable consumers understand and are not misled by the #1 Brand statement. ........ 14

1. The #1 Brand statement accurately states that Barilla is the #1 brand of pasta in Italy, and it cannot reasonably be misread to claim something else. ........ 14

2. Even if the #1 Brand statement could be read to make a claim about ingredient origin, any such claim would be ambiguous and subject to clarification. ........ 17

C. If Plaintiffs' consumer perception expert opinions are excluded under *Daubert*, summary judgment is required on Plaintiffs' statutory claims. .......... 20

III. Plaintiffs' common law claims fail as a matter of law. .......... 21

A. Plaintiffs' breach of warranty claims fail for lack of an actionable misrepresentation. .......... 21

B. Plaintiffs' unjust enrichment claim fails because it is not an independent cause of action. .......... 23

IV. Barilla is entitled to judgment against Plaintiffs' claim for punitive damages. .......... 24

CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML132438PSGPLAX, 2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) .......... 18

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 117 Cal. Rptr. 2d 685 (Cal. Ct. App. 2002) .......... 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 9

*Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) .......... 14

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 23

*Balser v. Hain Celestial Grp., Inc.*, 640 Fed. App'x 694 (9th Cir. 2016) .......... 3

*Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) .......... 10, 20

*Beluca Ventures LLC v. Einride Aktiebolag*, No. 21-CV-06992-WHO, 2022 WL 17252589 (N.D. Cal. Nov. 28, 2022) .......... 24

*Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017) .......... 19

*Brockey v. Moore*, 107 Cal. App. 4th 86 (Cal. Ct. App. 2003) .......... 14

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 23

*Brown v. Abbott Lab'ys, Inc.*, No. 10 C 6674, 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) .......... 17

*Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 24

*Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786 (N.D. Cal. 2022) .......... 17

*Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 7206633 (N.D. Cal. Dec. 18, 2014) .......... 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 9

*Corbett v. PharmaCare U.S., Inc.*,
No. 3:21-CV-00137-JES-AHG, 2025 WL 1746308 (S.D. Cal. June 24, 2025) .......... 18, 19, 20

*Cross v. Haleon US, Inc.*,
No. 2:24-CV-09325-MCS-PVC, 2025 WL 2019930 (C.D. Cal. July 11, 2025) .......... 23

*Culver v. Unilever United States, Inc.*,
No. CV 19-9263-GW-RAOX, 2021 WL 2943937 (C.D. Cal. June 14, 2021) .......... 16, 19

*Davidson v. Sprout Foods Inc.*,
No. 22-CV-01050-RS, 2022 WL 13801090 (N.D. Cal. Oct. 21, 2022) .......... 13

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 20

*Dumas v. Diageo PLC*,
No. 15CV1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) .......... 16

*Figy v. Frito-Lay N. Am., Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014) .......... 16

*In re Ford Tailgate Litig.*,
No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .......... 24

*Freund v. HP, Inc.*,
No. 22-CV-03794-BLF, 2023 WL 187506 (N.D. Cal. Jan. 13, 2023) .......... 21

*Gallagher v. Chipotle Mexican Grill, Inc.*,
No. 15-CV-03952-HSG, 2016 WL 454083 (N.D. Cal. Feb. 5, 2016) .......... 14

*Garza v. Spectrum Brands Pet LLC*,
760 F. Supp. 3d 1039 (E.D. Cal. 2024) .......... 13

*Govea v. Gruma Corp.*,
No. CV 20-8585-MWF, 2021 WL 1557748 (C.D. Cal. Mar. 1, 2021) .......... 16

*Hadley v. Kellogg Sales Co.*,
No. 16-CV-04955-LHK, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) .......... 25

*Haskell v. Time, Inc.*,
965 F. Supp. 1398 (E.D. Cal. 1997) .......... 11

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) .......... 24

*Holt v. Noble House Hotels & Resort, Ltd.*,
370 F. Supp. 3d 1158 (S.D. Cal. 2019) .......... 19

*Kennard v. Kellogg Sales Co.*,
No. 21-CV-07211-WHO, 2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) .............................. 22

*Kim v. Blue Triton Brands*,
No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085 (C.D. Cal. Nov. 1, 2022)........................ 22

*Kim v. Bluetriton Brands, Inc.*,
No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024) ..................................................... 21

*Knowles v. Arris Int'l PLC*,
No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019)............................... 12

*Krause-Pettai v. Unilever United States, Inc.*,
696 F. Supp. 3d 916 (S.D. Cal. 2023)..................................................................................... 21

*Krystofiak v. BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024) .................................................................................... 23

*Kwikset Corp. v. Superior Ct.*,
246 P.3d 877 (Cal. 2011) ......................................................................................................... 13

*La Barbera v. Ole Mexican Foods Inc.*,
No. EDCV 20-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ...................................... 16

*Lavie v. Procter & Gamble Co.*,
129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003) ..................................................................... 12, 17

*Maneely v. Gen. Motors Corp.*,
108 F.3d 1176 (9th Cir. 1997)................................................................................................. 23

*Maroney v. Cnty. of Riverside*,
No. 5:21-CV-00497-FWS-SP, 2023 WL 4680322 (C.D. Cal. May 22, 2023).......................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).................................................................................................................. 9

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ........................................................................... 13, 17, 18, 19

*McKinnis v. Kellogg USA*,
No. CV07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)............................................ 22

*McWhorter v. Procter & Gamble Co.*,
No. 24-CV-00806-AMO, 2025 WL 948061 (N.D. Cal. Mar. 28, 2025) .......................... 16, 19

*Miller v. Philips N. Am. LLC*,
No. 24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025).................................. 14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ...................................................................................................... 13

*Nacarino v. KSF Acquisition Corp.*,
642 F. Supp. 3d 1074 (N.D. Cal. 2022) .......... 22

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
210 F.3d 1099 (9th Cir. 2000) .......... 9

*Pac. Gas & Elec. Co. v. Superior Court*,
235 Cal. Rptr. 3d 228 (Cal. Ct. App. 2018) .......... 25

*Peacock v. Pabst Brewing Co., LLC*,
No. 2:18-CV-00568, 2024 WL 1160687 (E.D. Cal. Mar. 18, 2024) .......... 10, 21

*Prescott v. Saraya USA, Inc.*,
No. 23-CV-00017-AJB-MMP, 2023 WL 6120610 (S.D. Cal. Sept. 18, 2023) .......... 16

*Rahman v. Mott's LLP*,
No. CV 13-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) .......... 21

*Ries v. Arizona Beverages USA LLC*,
No. 10-01139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .......... 11, 12

*Robie v. Trader Joe's Co.*,
No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) .......... 12

*Roper v. Big Heart Pet Brands, Inc.*,
510 F. Supp. 3d 903 (E.D. Cal. 2020) .......... 24

*Rugg v. Johnson & Johnson*,
No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) .......... 13

*Sandoval v. PharmaCare US, Inc.*,
730 F. App'x 417 (9th Cir. 2018) .......... 11

*Smith v. Intel Corp.*,
No. 23-CV-05761-HSG, 2025 WL 2381617 (N.D. Cal. Aug. 15, 2025) .......... 23

*Sonner v. Schwabe N. Am., Inc.*,
911 F.3d 989 (9th Cir. 2018) .......... 12

*Stiles v. Trader Joe's Co.*,
No. CV1604318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .......... 24

*Taylor v. First Advantage Background Servs. Corp.*,
207 F. Supp. 3d 1095 (N.D. Cal. 2016) .......... 2, 9, 11

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
No. 24-CV-03567-NW, 2025 WL 2637507 (N.D. Cal. Sept. 12, 2025) .......... 23

*Tovmasyan v. Target Corp.*,
No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020 (C.D. Cal. May 2, 2025) .......... 24

*Tran v. Sioux Honey Ass'n, Coop.*,
471 F. Supp. 3d 1019 (C.D. Cal. 2020) .................................................................. 10, 13, 20

*Valentine v. Crocs, Inc.*,
783 F. Supp. 3d 1204 (N.D. Cal. 2025) ........................................................................... 22

*Victor v. R.C. Bigelow, Inc.*,
No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ............................ 16

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ..................................................................... 14, 22

*Vrugtman v. It's Just Lunch Int'l LLC*,
No. EDCV202352, 2023 WL 6369765 (C.D. Cal. Aug. 25, 2023) ....................................... 12

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ............................................................... 13, 14, 17, 19

*Williams v. Gerber Prods.*,
552 F.3d 934 (9th Cir. 2008) ........................................................................... 3, 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ........................................................................... 25

*Yastrab v. Apple Inc.*,
No. 5:14-CV-01974-EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ............................ 22

*Young v. Cree, Inc.*,
No. 4:17-CV-06252, 2021 WL 4749384 (N.D. Cal. Oct. 12, 2021) ..................................... 24

**Statutes, Rules & Regulations**

21 C.F.R. § 101.5 ............................................................................................... 4

Bus. & Prof. Code § 17500 et seq. ........................................................................... 2

Cal. Bus. & Prof. Code § 17200 et seq. ................................................................... 2

Cal. Civ. Code § 1750 et seq. .................................................................................. 2

Cal. Civ. Code § 1780(a)(4) .................................................................................. 25

Cal. Civ. Code § 3294(a) ...................................................................................... 25

Cal. Com. Code § 2313(1)(a) ................................................................................ 22

Fed. R. Civ. P. 56(a) ............................................................................................... 8

**Other Authorities**

Barilla USA, *Barilla | American Adventure – 20 Years of Passion*, YouTube (Dec. 20, 2019), https://www.youtube.com/watch?v=adwyyP4XTtg ............................................. 6

Barilla Group, *Press Room – Photos and Videos*, https://www.barilla.com/en-us/help-with/our-company/about-barilla ...................................................................... 6

## **STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' theory that reasonable consumers were misled by the label statement "Italy's #1 Brand of Pasta" (the "#1 Brand statement") to understand that the pasta products were *manufactured in Italy* when Plaintiffs failed to produce any evidence supporting that theory.

2. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' claims against advertising and marketing statements *other* than the #1 Brand statement on the product labels when Plaintiffs failed to produce any evidence supporting such a claim.

3. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' claims because the #1 Brand statement is indisputably true when read in its most natural, common-sense way.

4. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' claims when any message about ingredient origin communicated by the #1 Brand statement is, at most, ambiguous and any resulting consumer confusion is eliminated by the label statement that the Products are "Made in the U.S.A. with U.S.A. and imported ingredients."

5. Whether Barilla is entitled to judgment as a matter of law when Plaintiffs' experts' consumer perception opinions should be excluded under *Daubert*, and they lack any other basis to show reasonable consumers would be misled by the #1 Brand statement.

6. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' breach of warranty claims when Plaintiffs have not identified a specific representation that the at-issue pasta products are made exclusively with Italian ingredients.

7. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' unjust enrichment claim because unjust enrichment is not an independent claim under California law.

8. Whether Barilla is entitled to judgment as a matter of law on Plaintiffs' request for punitive damages when the #1 Brand statement is indisputably true, and Plaintiffs have presented no clear and convincing evidence of fraud, oppression, or malice, or any misconduct whatsoever by Barilla's management.

## INTRODUCTION

This case is about the statement "Italy's #1 Brand of Pasta," which Barilla made on certain pasta products it made and sold here in the United States. As discovery has now shown, the statement is completely true. Barilla is in fact Italy's #1 brand of pasta. No one sells more pasta in Italy than Barilla. This is undisputed.

Plaintiffs, instead of disputing the truth that Barilla is "Italy's #1 Brand of Pasta," argue that some consumers could read that statement as representing that the pasta was made with ingredients sourced exclusively from Italy. But the statement does not make that representation. To state the obvious, "Italy's #1 Brand of Pasta" says nothing about ingredients. It instead addresses only the Barilla "Brand." The factual record now shows that 84% of consumers correctly understand the #1 Brand statement to mean that Barilla sells more pasta in Italy than any other brand, which it does.

Plaintiffs' whole case is based on misreading "Italy's #1 Brand of Pasta" to make a representation about the sourcing of ingredients instead of the sales of pasta. On its face, Plaintiffs' misreading is not reasonable. But even if a reasonable consumer could wonder whether the #1 Brand statement might be a claim about ingredients, the consumer would realize that the meaning of any such claim is ambiguous and look elsewhere on the package for clarification. There, the consumer would find the unambiguous statement that the product was "Made in the U.S.A. with U.S.A. and imported ingredients," making things perfectly clear. Under binding Ninth Circuit law, when *reasonable* consumers see an ambiguous statement on a package, they look for information to clarify it elsewhere on the product packaging, and when they find it, they are not confused. Here, no reasonable consumer, reading the whole Barilla package, would be confused into thinking that the pasta was made exclusively with ingredients sourced from Italy. Summary judgment should therefore be entered for Barilla.

Summary judgment should also be entered for Barilla because the only evidence Plaintiffs offer to show that a significant number of consumers would misread the #1 Brand statement is the survey conducted by Dr. Dennis, and his survey should be excluded under *Daubert*. Without the survey, Plaintiffs have no evidence capable of proving consumer deception.

Judgment is also required on Plaintiffs' non-statutory claims. Those claims are all predicated on the same misleading-label theory underpinning their statutory claims and therefore fail for the same reasons summarized above. Plaintiffs' request for punitive damages should be dismissed because Plaintiffs provide no evidence capable of supporting a punitive damages award.

Finally, while the First Amended Complaint ("FAC") mentioned promotional and marketing statements other than the #1 Brand statement, Plaintiffs developed no evidence on those claims and hence abandoned them. Plaintiffs' FAC also alleged that consumers understood the #1 Brand statement to claim not only that the ingredients were from Italy, but also that the product was manufactured in Italy. But Plaintiffs developed no evidence on the manufacturing claim and thus abandoned it, too. Summary judgment should therefore be granted on the entire case.

## BACKGROUND

### A. Plaintiffs' First Amended Complaint

On June 11, 2022, Plaintiffs Matthew Sinatro and Jessica Prost (together, "Plaintiffs") filed a putative class action lawsuit against Barilla America, Inc. ("Barilla" or "Defendant") on behalf of a nationwide class and California subclass. (*See* Dkt. 1.) On July 20, 2022, Plaintiffs filed their FAC, the operative complaint. (*See* Dkt. 11.)

The FAC challenged various Barilla promotional materials, including Barilla's use of "Italy's #1 Brand of Pasta" (the "#1 Brand statement") on the labels of 54 Barilla-brand dried pasta products (the "Products"). (*Id.* at ¶¶ 2, 4.) The FAC asserted that Barilla's promotional materials, including the #1 Brand statement, misled consumers into believing that all Barilla pasta products were made in Italy and/or from ingredients from Italy. (*Id.* at ¶¶ 16-17.) Based on these core allegations, Plaintiffs asserted claims for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; breach of warranty, and unjust enrichment. (*See* Dkt. 11.)

### B. The Court's Order on Barilla's Motion to Dismiss

On October 17, 2022, the Court granted in part and denied in part Barilla's motion to dismiss. (*See* Dkt. 30 ("Motion to Dismiss Order").) In particular, the Court rejected Barilla's

argument that Plaintiffs had "not plausibly alleged that the Challenged Representation would mislead a reasonable consumer," finding that the FAC adequately alleged a "reasonable inference" that a significant portion of consumers acting reasonably could be misled by the #1 Brand statement. (*Id.* at pp. 20-22.) The Court also rejected Barilla's argument that "no reasonable consumer could be deceived by the Challenged Representation since all 54 products at issue 'are conspicuously marked 'Made in the USA' with the location of Barilla's headquarters in Illinois,'" because "the Ninth Circuit has held that reasonable consumers should not be 'expected to look beyond misleading representations on the front of the box to discover the truth … in small print on the side of the box.'" (*Id.* at p. 23 (quoting *Williams v. Gerber Prods*., 552 F.3d 934, 939 (9th Cir. 2008).) The Court also noted that the effect of the ingredient-origin statement on the Product "is a factual issue," not properly addressed at the pleadings stage. (*Id.* (citing *Balser v. Hain Celestial Grp., Inc.*, 640 Fed. App'x 694, 696 (9th Cir. 2016)).) Finally, the Court dismissed Plaintiffs' request for injunctive relief. (*See id.* at pp. 16-17.)

**C. The Certified Class**

On May 28, 2024, the Court granted Plaintiffs' motion for class certification and certified a class of "[a]ll residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale." (the "Class") (*See* Dkt. 78 ("Class Cert. Order").)

In certifying the Class, the Court relied on, inter alia, a consumer perception survey offered by Plaintiffs' expert Dr. Dennis, which showed that "57% of respondents 'perceived the Challenged Representation to mean that the Product's ingredients are solely sourced from Italy.' 32.3% of respondents did not perceive the Challenged Representation to have this meaning and 10.7% did not have an opinion." (*Id*. at p. 11.)

On June 12, 2024, the Court granted the Parties' stipulation to dismiss Plaintiffs' claims on behalf of the nationwide class. (*See* Dkt. 81.) As a result, Plaintiffs bring their claims on behalf of a class of California consumers who bought the Products between June 11, 2018, and June 11, 2022. (Class Cert. Order at 3 n.2; *see* FAC ¶ 31.)

### D. The Record on Summary Judgment

Discovery is now closed, and the record is ripe for summary judgment (*See* Dkt. 120 at 2.)

#### 1. Barilla made the label statements that it was "Italy's #1 Brand of Pasta" and that the pasta was "Made in the U.S.A. with U.S.A. and Imported Ingredients."

When Plaintiffs allegedly purchased the Products in late 2021, Barilla stated that it was "Italy's #1 Brand of Pasta" in the lower quadrant of the Products' label, nonbolded, and in the same capitalized font as the rest of the labeling claims. (*See* Decl. of Aaron Van Oort ("Van Oort Decl.") Ex. 1.) Barilla also stated on the Products' side panel that the Products were "Made in the U.S.A. with U.S.A. and imported ingredients." (*See* Van Oort Decl. Ex. 4.) This disclosure appears directly under the name ("Barilla America Inc.") and location ("Northbrook, IL 60052") of the Products' manufacturer, as required by FDA regulations. *See* 21 C.F.R. § 101.5.




In early 2020, Barilla began exploring revisions to its Blue Box line of pastas. (Van Oort Decl. Ex. 18 ("Waldin Dep.") at 88:1-12.) The goal of revising the label was to bring "a more modern look and feel to the box." (*Id*. at 55:16-17.) This refresh required multiple design iterations consisting of "removing elements for the clean look." (*Id*. at 55:17-18, 88:8-9.) In 2021, Barilla landed on an iteration that did not contain the #1 Brand statement. (*Id*. at 55:10-12; 88:16.) The #1 Brand statement no longer appears on any of the Products at issue. (*Id*. at 79:19-80:13.)

#### 2. Barilla is the #1 pasta brand in Italy.

Barilla said it was "Italy's #1 Brand of Pasta" because it is true, and Barilla is proud of it. In 1877, Pietro Barilla opened a small bread and pasta shop in the center of Parma, Italy. (Van Oort Decl. Ex. 29, *Barilla Annual Report 2019*, GROEHN_00002219, 228.) Over the next century, that shop expanded into multiple food production facilities, including the largest pasta production plant in the world, and evolved into the company known today as the Barilla Group. (*Id.* at

GROEHN_00002219.) Around 2000, the Barilla Group expanded its presence in the US market, opening its first US production facility in Ames, Iowa, in 1999 and another facility in Avon, New York, in 2007. (*See* Dkt. 11-4 pp. 25, 26.) Despite its expansion, the Barilla Group has always remained a private company led by the Barilla family. (*Barilla Annual Report 2019*, GROEHN_00002219.) Today, the Barilla Group is chaired by Pietro's great-grandsons Guido, Luca, and Paolo Barilla from its corporate headquarters in Parma, Italy. (*Id*.) Barilla America, a subsidiary of the Barilla Group, is headquartered in Northbrook, Illinois.

The undisputed data shows that Barilla is, in fact, the #1 pasta brand in Italy, selling more pasta than any other brand. (Waldin Dep. at 123:12-124:3.) (*See e.g.*, Van Oort Decl. Ex. 28, *Agricultural Economics Review*, CANTOR_00000833-34 (indicating that Barilla's market share in 2006 and 2007 was far greater than any other Italian pasta company).) From 2021 to 2024, Nielsen data showed that Barilla had the highest market share—both in volume and value—of dry pasta in Italy. (*See* Van Oort Decl. Ex. 21, *2021-22 NielsenIQ Retail Index: Barilla Dry Pasta*, BAI-CA_00001485-86; Ex. 22 *2023 NielsenIQ Market Data: Total Dry Pasta in Italy*, BAI-CA_00002031-32; Ex. 23 *2023-24 NielsenIQ Market Data: Total Dry Pasta in Italy*, BAI-CA_00002291-92.) Two reports published by Marketline in 2022 and 2024 named "Italy-based multinational Barilla G. e R. Fratelli S.p.A [as] the leading player in the Italian pasta & noodles market, accounting for 17.5% of the market value in 2023 and [is] expected to retain its lead position in the coming years." (Van Oort Decl. Ex. 30, *2024 Marketline Industry Profile–Pasta & Noodles in Italy*, GROEHN_00003517; Ex. 27 *2022 Marketline Industry Profile–Pasta & Noodles in Italy*, CANTOR_00000516.) The European Supermarket Magazine listed Barilla first in its "Top 5 Most Popular Pasta Brands in Italy" (Van Oort Decl. Ex. 9, ("Cantor Merits Rpt.") p. 13 n.36 (May 9, 2025)), as did 6Wresearch in its "List of Leading Companies in the Italy Pasta Market" published earlier this year. (*Id*. at n.37.) And in a 2023 survey of over 1,000 Italians, the greatest share of participants said that Barilla was their favorite brand of pasta. (*Id*. at p. 12 n.35.)

**3. The pasta is made in the U.S.A. with U.S.A. and imported ingredients.**

On the Products at issue, Barilla also said that the pasta is "Made in the U.S.A. with U.S.A.

and imported ingredients" because that is also true, and Barilla is proud of that, too. On the Barilla Group's website, its history section highlights the openings of its Ames, Iowa and Avon, New York plants. (*See* Dkt. 11-4 pp. 25, 26.) As the FAC also notes, the "About Barilla" section of Barilla's website states, "Barilla Pasta that is sold in the United States is made in our plants in Ames, IA and Avon, NY," and also, Barilla "purchases its wheat from around the world, ending up with the best wheat available." (*See* Dkt. 11-3, at p. 15.) Similarly, the Barilla Group's website celebrates its US Team, noting that "we have been producing pasta in this country since 1999," and praises the Wheat Procurement Manager for Barilla America, who "is responsible for procuring the best possible wheat[.]" (Van Oort Decl. Ex. 24, *Meet the US Team! Our US experts explain what makes Barilla different*, BAI-CA_00006420-21.)[1] Also on the Barilla Group's website, the "Press Room" features a video celebrating the tenth anniversary of Barilla's plant in Avon, NY.[2]

**4. The named Plaintiffs' testimony**

Plaintiff Sinatro testified that he read "Italy's #1 Brand of Pasta" to mean that "the pasta literally comes from Italy, as well as the ingredients are from, yeah, Italy." (Van Oort Decl. Ex. 17 ("Sinatro Dep.") at 14:3-6.) But Sinatro agreed that "Made in the U.S.A. with U.S.A. and imported ingredients" means that "it's made in the U.S. with ingredients" and concedes that if he had read this disclosure, he would have known that the Products are made in the U.S. (*Id*. at 44:17-18, 45:2-7.) Sinatro also testified that when the front label of a product "doesn't say something clearly," he's inclined to look at the back of the label. (*Id*. at p. 72:17-20.) Plaintiff Prost testified that her complaint was that some consumers interpret the #1 Brand statement to mean the Products are made in Italy. (Van Oort Decl. Ex. 16, ("Prost Dep.") at 32:2-5, 39:2-5.) But she personally reads the #1 Brand statement to mean that "the pasta is made in Italy and that it has Italian ingredients in it." (*Id*. at 36:5-7.) Like Sinatro, Prost understands "Made in the U.S.A. with U.S.A. and imported ingredients" to mean "the pasta was made in the U.S.A." (*Id.* at 49:1-3.) Prost also testified to her experience of looking to the back label of a product if the front label is "not super straightforward."

---

[1] *See* Barilla USA, *Barilla | American Adventure – 20 Years of Passion*, YouTube (Dec. 20, 2019), https://www.youtube.com/watch?v=adwyyP4XTtg (showcasing Barilla America's production facilities and explaining how Barilla America uses "the best North American Durham wheat").

[2] Barilla Group, *Press Room – Photos and Videos*, https://www.barilla.com/en-us/help-with/our-company/about-barilla (last accessed Sept. 13, 2025).

(*Id*. at 87:19-20.)

**5. Plaintiffs' experts' opinions**

Plaintiffs disclosed two experts: Dr. J. Michael Dennis and Mr. Colin Weir. Only Dr. Dennis's work attempted to show that consumers might be misled. Specifically, Dr. Dennis conducted a consumer perception survey in which he showed participants the #1 Brand statement and asked, "Do you or do you not believe this statement communicates the following meaning, or do you not have any opinion? **The product's ingredients are sourced from Italy**." (Van Oort Decl. Ex. 5, ("Dennis Cert. Rpt.") ¶ 69 (Aug. 16, 2023).)

Dr. Dennis did not show the participants, or ask about, any Barilla promotional materials other than the #1 Brand statement on the product packaging. (*Id*. at ¶ 65.) He also did not test whether participants read the #1 Brand statement to mean that the Products are made in Italy or any other alternative interpretations. (Van Oort Decl. Ex. 13 ("Dennis First Dep.") at 77:7-80:1, 83:10-24; Van Oort Decl. Ex. 14 ("Dennis Second Dep.") at 50:15-16, 52:8-11.) His only question gauging consumer perception, which openly suggested his desired answer, was whether the #1 Brand statement could be read to communicate that the Products' ingredients are sourced from Italy. (Dennis Cert. Rpt., ¶ 71; Dennis First Dep. at 74:19-75:21.)

Dr. Dennis subsequently submitted a merits report that included a conjoint analysis. (Van Oort Decl. Ex. 6 ("Dennis Merits Rpt.") (Feb. 7, 2025).) Although Dr. Dennis acknowledged "it's possible that [consumers] could have more than one belief on what that challenged representation is," his conjoint analysis disregarded consumers' interpretation of the #1 Brand statement. (Dennis First Dep. at 149:14-20.) Instead, Dr. Dennis attempted to measure whether the blanket *inclusion* of the #1 Brand statement affected consumers' willingness to pay for Barilla's pasta—regardless of how the participants understood the #1 Brand statement. (Dennis Merits Rpt., ¶¶ 19, 61-91.) Dr. Dennis offered no opinion on what share of the price premium, if any, is attributable "to the misleading perception of the challenged representation as opposed to alternative interpretations." (Dennis First Dep. at 169:7-19.) Based on his conjoint analysis, Dr. Dennis calculated a 9.9% price premium associated with the #1 Brand statement as a whole. (Dennis Merits Rpt., ¶ 23.)

Mr. Weir then multiplied Dr. Dennis's price premium by Barilla's at-issue revenue to

determine an asserted damages figure of $39,507,423.07. (Van Oort Decl. Ex. 7, ("Weir Merits Rpt.") ¶ 80 (Feb. 7, 2025).) As a result, Plaintiffs' proposed damages encompass all value derived from the #1 Brand statement, including the truth that Barilla sells more pasta in Italy than any other brand. (*See* Van Oort Decl. Ex. 19 ("Weir First Dep.") at 125:11-16.)

**6. Barilla's experts' opinions**

Barilla disclosed three experts: Dr. Andreas Groehn, Dr. Robin Cantor, and Dr. Kristina Shampanier. Dr. Groehn conducted a consumer perception survey that replicated much of Dr. Dennis' survey design. (Van Oort Decl. Ex. 10 ("Groehn Merits Rpt.") (May 9, 2025).) But unlike Dr. Dennis, Dr. Groehn provided respondents with multiple potential interpretations of the #1 Brand statement, not simply Barilla's preferred interpretation. (*Id*. at ¶¶ 93, 96; *see* Van Oort Decl. Ex. 15 ("Groehn Dep.") at 125:8-19.) By far the most popular interpretation of the #1 Brand statement, shared by 84% of respondents, was that the #1 Brand statement communicates "[t]he brand is the most popular pasta brand in Italy." (Groehn Merits Rpt. ¶ 121.)

Because a proper damages model should consider the "multiple interpretations" of the #1 Brand statement and then isolate the alleged deceptive interpretation, Dr. Cantor conducted her own consumer perception survey. (*See* Van Oort Decl. Ex. 12 ("Cantor Dep.") at 18:23-19:4.) Dr. Cantor's survey tested Plaintiffs' preferred reading of the #1 Brand statement and the reading that "The brand is the largest selling pasta in Italy." (Dkt. 62-2 ("Cantor Cert. Rpt.") Ex. 4.)[3] Dr. Cantor found that approximately 80% of respondents understood the #1 Brand statement to mean the latter. (*Id*. at ¶ 39.) Dr. Cantor also submitted a merits report, reiterating many of her initial concerns about Plaintiffs' experts' limited analyses because "the evidence that we have now, is even stronger about multiple interpretations of the label, and plaintiffs' experts didn't do anything within their methodology to address that issue." (Cantor Dep. at 20:22-21:7; Cantor Merits Rpt., ¶¶ 27-33.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes that "there is no

---

[3] In the interest of judicial efficiency and to prevent unnecessary duplicative efforts, Barilla is citing to the sealed version of the Declaration and Expert Report of Robin Cantor, dated November 30, 2023, that Barilla previously filed with an Administrative Motion to File Under Seal (*see* Dkt. 62), which this Court granted. (*See* Dkt. 91.)

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). When the moving party will not bear the burden of proof at trial, it may satisfy its burden on summary judgment either by "produc[ing] evidence negating an essential element of the nonmoving party's claim" or "show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). To defeat summary judgment, the nonmoving party must set forth "specific facts" showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence" in support of the nonmoving party's position does not suffice. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

## ARGUMENT

### I. The Court should clear out two categories of claims that Plaintiffs chose not to develop.

At the outset, the Court should clear away two categories of claims that Plaintiffs asserted in their FAC but did not support in discovery: (1) the claim that the Products were manufactured in Italy (FAC ¶¶ 2, 17), and (2) claims against Barilla advertisements and promotional materials other than the #1 Brand statement on the Products' labels. (*See, e.g.*, *id.*, ¶¶ 18-20.) A court may grant summary judgment on particular theories of liability advanced by a plaintiff where the record does not support those theories. *See Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1100 (N.D. Cal. 2016) (Ryu, J.) ("Where there is no genuine dispute of material fact as to only a single claim or defense…, the district court may enter partial summary judgment."); *see also Maroney v. Cnty. of Riverside*, No. 5:21-CV-00497-FWS-SP, 2023 WL 4680322, at *6-9 (C.D. Cal. May 22, 2023) (granting summary judgment as to three of the plaintiff's theories because the plaintiff "has not produced sufficient evidence to create a genuine issue").

#### A. No evidence supports a manufactured-in-Italy claim.

First, Plaintiffs developed no evidence showing that reasonable consumers misread the #1 Brand statement to assert that the Products were *manufactured* in Italy.

Plaintiffs' sole evidence of consumer perception is Dr. Dennis's survey, and Dr. Dennis did not ask about manufacturing. He asked survey participants only whether they interpreted the #1 Brand statement to mean that the Products' ingredients are sourced from Italy, nothing else. (*See* Dennis Cert. Rpt. ¶¶ 69-71 ("The survey question itself is worded to evaluate the Plaintiffs' allegations that the Challenged Representation conveys an understanding that the product's ingredients are solely sourced from Italy."); Dennis First Dep. at 77:2-78:3 (explaining that his consumer survey measures whether consumers understand the #1 Brand statement to address "the source of ingredients," not whether the Products were "made in Italy"); Dennis Second Dep. at 52:8-11) ("I measured the plaintiffs' theory and evaluated plaintiffs' theory of liability. I did not test alternative theories.").)

The only evidence addressing a manufactured-in-Italy claim is Plaintiff Prost's deposition testimony. (Prost Dep. at 38:15-24 ("I agree that it doesn't say, like with the words 'made in Italy,' but I think that 'Italy's number one brand of pasta' leads consumers to believe that it was literally made in Italy.") But *one* consumer's interpretation does not create a triable issue as to whether a significant portion of consumers, acting reasonably, would interpret the #1 Brand statement in the same way. *See Peacock v. Pabst Brewing Co., LLC*, No. 2:18-CV-00568, 2024 WL 1160687, at *4 (E.D. Cal. Mar. 18, 2024) ("Plaintiff's testimony cannot meet the reasonable consumer standard on its own as it only represents an isolated example of a consumer being deceived.").

Because Plaintiffs chose not to develop evidence regarding a manufactured-in-Italy claim, summary judgment must be granted on that claim. *See Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1028 (C.D. Cal. 2020) (granting summary judgment where plaintiff's expert survey "avoided the relevant question"); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (a consumer survey cited in the complaint "cannot, on its own, salvage [the plaintiff's] claim" where the survey "does not address [the relevant] understanding," and thus "does not shift the prevailing reasonable understanding of what reasonable consumers understand").

**B. No evidence supports a claim against any statement other than the #1 Brand statement.**

Plaintiffs also developed no evidence about how reasonable consumers would understand

advertising and marketing statements other than the #1 Brand statement. Any claims against those other statements (*see* FAC ¶¶ 18-20) accordingly fail for two independent reasons.

First, the named Plaintiffs expressly disclaimed ever seeing a Barilla advertisement, viewing Barilla's website, hearing about Academic Barilla, or visiting Barilla's Archivio Storico or Museum. (Sinatro Dep. at 25:7-8, 46:2-8; Prost Dep. at 69:10 ("No. It's cool they have [a museum].").) Thus, they have no claims against those statements. *See Sandoval v. PharmaCare US, Inc.*, 730 F. App'x 417, 419 (9th Cir. 2018) (affirming summary judgment against the plaintiffs' theories based on the defendant's website where one plaintiff testified the website did not affect his purchasing decision and the other plaintiff had never viewed the website).

Second, Plaintiffs have no evidence that reasonable consumers rely on, care about, or are deceived by these materials. Dr. Dennis's consumer perception survey expressly directed participants to consider *only* the Barilla packaging, excluding its websites, social media, and museum (*See* Dennis Cert. Rpt. ¶ 65 ("It is also important that you base your answers <u>only</u> on the packaging that we show you.")). Similarly, Plaintiffs' damages model is limited to calculating damages attributable to the #1 Brand statement and does not calculate any damages related to other marketing or advertising statements. (*See* Weir Merits Rpt. ¶ 25; Weir First Dep. at 125:14-15.)

Because Plaintiffs chose not to develop evidence supporting a claim against any advertising and marketing materials other than the #1 Brand statement, the Court should grant summary judgment on all such claims. *See Ries v. Arizona Beverages USA LLC*, No. 10-01139, 2013 WL 1287416, at *6 (N.D. Cal. Mar. 28, 2013) (granting summary judgment where plaintiffs introduced no "extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers" (quoting *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997)).

**II. Plaintiffs' statutory claims fail because the #1 Brand statement is true, and it does not deceive reasonable consumers about the Products' ingredients.**

Turning to the #1 Brand statement, the Court should grant summary judgment to Barilla for two reasons.

***First***, the statement is undisputedly true. Barilla is in fact "Italy's #1 Brand of Pasta" because it sells more pasta in Italy than any other brand. Moreover, reasonable consumers would

not misread the #1 Brand statement as making an incorrect claim about ingredient source because the statement does not make that claim. Any implicit message from the #1 Brand statement about the origin of the Products' ingredients is, at most, ambiguous, and thus, consumers would check elsewhere on the label to confirm the meaning. There they would find the unambiguous statement that the Products are manufactured "in the U.S.A. with U.S.A. and imported ingredients." Under recent, controlling Ninth Circuit law, Barilla's label is therefore valid and not misleading.

***Second***, Plaintiffs' only class-wide evidence about consumers' understanding of the #1 Brand statement is Dr. Dennis's survey. As explained in Barilla's Motion to Strike, that survey is inadmissible under *Daubert*, and Plaintiffs thus have no admissible evidence that reasonable consumers are misled by the #1 Brand statement.

**A. Label statements are read reasonably, and when reasonable consumers encounter ambiguous statements, they check the whole label to inform them.**

The CLRA, FAL, and UCL protect reasonable consumers, and reasonable consumers are not deceived by label statements that are clear in context.

The CLRA, FAL, and UCL all require a plaintiff to prove by a preponderance of the evidence that a challenged statement is false or misleading. *Vrugtman v. It's Just Lunch Int'l LLC*, No. EDCV202352, 2023 WL 6369765, at *15 (C.D. Cal. Aug. 25, 2023) (quoting *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018)); *see also Ries*, 2013 WL 1287416, at *7 (plaintiffs did not satisfy their "evidentiary burden" of demonstrating "that it is probable that a significant portion of the consuming public could be confused" by the labeling).

An advertisement is false or misleading only if it is likely to deceive a "reasonable consumer." *Williams*, 552 F.3d at 938. "'Likely to deceive' implies more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021); *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003). It must be likely that a "significant portion of the general consuming public…acting reasonably in the circumstances, could be misled." *Id.* at 508. Thus, "a plaintiff must produce evidence showing a likelihood of confounding an appreciable number of reasonably prudent

purchasers exercising ordinary care." *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *11 (N.D. Cal. Aug. 20, 2019) (cleaned up).

There is obvious value in allowing companies to say—and consumers to receive—truthful information, and therefore "[t]he California Court of Appeal has cautioned against permitting food labeling claims that rely on inferential leaps and which could ultimately 'place almost any advertisement truthfully touting a product's attributes at issue for litigation.'" *Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090 at *3 (N.D. Cal. Oct. 21, 2022) (citation omitted), *aff'd in relevant part*, 106 F.4th 842 (9th Cir. 2024); *see also Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 889 (Cal. 2011) ("The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.").

The reasonable-consumer standard is an objective standard that the Court may decide as a matter of law. *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (citation omitted). And it is appropriate to resolve on summary judgment. *See, e.g.*, *Tran*, 471 F. Supp. 3d at 1025 (granting summary judgment where plaintiff "fails to offer evidence that would allow a reasonable factfinder to conclude that the labels were deceptive to the reasonable consumer").

In three recent decisions, the Ninth Circuit has made it clear that reasonable consumers are not deceived by a label statement that might be ambiguous in isolation but is clear in context, because the ambiguity will cause them to seek out the clarifying information. First, in *Moore v. Trader Joe's Co.*, the Ninth Circuit held that when reasonable consumers evaluate an "ambiguous" label statement, they "would necessarily require more information before they could reasonably conclude" what the statement means. 4 F.4th 874, 882-83 (9th Cir. 2021). They would therefore consult additional available information, including the entire product packaging. *Id.* Second, in *McGinity v. Procter & Gamble Co.*, the Ninth Circuit clarified that ambiguity of a front-label claim can be resolved by reference to the back label. 69 F.4th 1093, 1098-99 (9th Cir. 2023); *see also Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1048 (E.D. Cal. 2024) ("[T]he front label must convey a concrete and unambiguous meaning to a reasonable consumer to foreclose

consideration of the back label." (quotation and citation omitted)). Finally, in *Whiteside v. Kimberly Clark Corp.*, the Ninth Circuit reiterated that "a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." 108 F.4th 771, 780-81 (9th Cir. 2024).

**B. Reasonable consumers understand and are not misled by the #1 Brand statement.**

Under controlling Ninth Circuit law and the developed factual record, there is no claim against Barilla's pasta labels because reasonable consumers understand "Italy's #1 Brand of Pasta" to mean what it plainly says and what is undisputedly true—that Barilla sells more pasta in Italy than any other brand. In addition, any ambiguous misreading of the #1 Brand statement that took it to address ingredient source would immediately be clarified by the unambiguous statement that the pasta is "Made in the U.S.A. with U.S.A. and imported ingredients."

**1. The #1 Brand statement accurately states that Barilla is the #1 brand of pasta in Italy, and it cannot reasonably be misread to claim something else.**

One way to resolve this case would be to hold that the #1 Brand statement can *only* be reasonably read to make a claim about brand and dismiss the claims because the #1 Brand statement is undisputedly true. The law and undisputed evidence both compel this holding.

As to the law, the "primary evidence in a false advertising case is the advertising itself." *Gallagher v. Chipotle Mexican Grill, Inc*., No. 15-CV-03952-HSG, 2016 WL 454083, at *3 (N.D. Cal. Feb. 5, 2016) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal. Ct. App. 2003)). And challenged statements "must be analyzed according to what they actually say, and not based on their implied meaning." *Miller v. Philips N. Am. LLC*, No. 24-CV-03781-RFL, 2025 WL 582160, at *2 (N.D. Cal. Feb. 20, 2025); *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019); *see also Viggiano v. Hansen Nat. Corp*., 944 F. Supp. 2d 877, 865-65 (C.D. Cal. 2013) (Under the FAL, "[i]n evaluating whether a statement is misleading, the court looks primarily to the words of the statement itself, and compares those words to the actual facts.").

As to the facts, the statement "Italy's #1 Brand of Pasta" is unambiguously a claim about a "brand," not about ingredients. As even Plaintiffs acknowledge, the "brand" in question is Barilla.

(Prost Dep. at 36:9-20 ("The brand would be I guess, like, Barilla, I assume.").) In addition, the evidence shows that most consumers read the #1 Brand statement as a statement about the brand. Dr. Groehn's consumer perception survey found that **83.5% of respondents** understood the #1 Brand statement to mean the brand is the most popular brand in Italy. (Groehn Merits Rpt. ¶ 132.). Similarly, Dr. Cantor's consumer perception survey found that over **80% of respondents** understood the #1 Brand statement to mean that Barilla is the largest selling pasta in Italy. (Cantor Cert. Rpt. ¶ 39, Ex. 6.) There is no contrary evidence about what most consumers understood. Plaintiffs' only evidence on consumer perception is Dr. Dennis's survey, but that survey tested *only* whether respondents understood the #1 Brand statement to mean that the Products' ingredients were sourced from Italy; it did not allow participants to indicate other readings or interpretations they had of the #1 Brand statement. (*See* Dennis Cert. Rpt. ¶¶ 69-71 ("The survey question itself is worded to evaluate the Plaintiffs' allegations that the Challenged Representation conveys an understanding that the product's ingredients are solely sourced from Italy."); Dennis Second Dep. at 50:15-16 ("I did not test alternative interpretations. My reports very clear on that.").)[4]

After discovery, it is now undisputed that the #1 Brand statement, understood as a statement about the brand, is entirely true. Independent research companies, trade magazines, and Italians all agree—Barilla *is* "Italy's #1 Brand of Pasta." It has the greatest market share in the Italian pasta market. (*See e.g.*, *2023-24 NielsenIQ Market Data: Total Dry Pasta in Italy*, BAI-CA_00002291-92; *2024 Marketline Industry Profile–Pasta & Noodles in Italy*, GROEHN_00003517.) It is the leading brand of pasta in Italy. (*See e.g.*, Cantor Merits Rpt., p. 13 n.36, 37.) And it is the brand of choice for Italian consumers. (*Id.* at p. 12 n.35.) The named Plaintiffs do not dispute that Barilla is the best-selling brand of pasta in Italy. (Sinatro Dep. at 48:19-25; 49:1-21). Plaintiffs' experts offer no opinion on whether Barilla is the best-selling brand of pasta in Italy. (Weir Second Dep. 51:11-52:8; Dennis Second Dep. 73:18-75:15.) This fact is thus undisputed on summary judgment.

Plaintiffs' claims are based on misreading the #1 Brand statement as making a claim it does not make: that the pasta's ingredients are sourced exclusively from Italy. Plaintiffs admit that the

[4] Dr. Dennis *could* have tested alternative interpretations of the #1 Brand statement (Dennis Second Dep. at 50:14-17), but he cannot recall ever in his career as an expert witness testing an alternative interpretation to the one proposed by the plaintiff (*id.* at 47:5-13; 54:3-14).

#1 Brand statement does not say this. (Prost Dep. at 30:14-25, 33:3-4; Sinatro Dep. at 39:12-14; 50:2-4.) And as a matter of law, based on the undisputed facts, Plaintiffs' attempt to read such a meaning into the #1 Brand statement is unreasonable and therefore does not support a claim. *See La Barbera v. Ole Mexican Foods Inc.*, No. EDCV 20-2324, 2023 WL 4162348, at *10 (C.D. Cal. May 18, 2023) ("[I]t is an inherently unreasonable assumption that just because a food clearly originates from a foreign country, whether it is pasta or tortillas, that *ipso facto* it must be made in that country."); *Dumas v. Diageo PLC*, No. 15CV1681, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) ("The mere fact that the word "Jamaica" and "Jamaican" appear on the packaging is not sufficient to support a conclusion that consumers would be confused regarding the origin and ingredients of the beer."); *Culver v. Unilever United States, Inc.*, No. CV 19-9263-GW-RAOX, 2021 WL 2943937, at *8 (C.D. Cal. June 14, 2021) ("[T]he allegedly misleading words do not by themselves actually indicate the country where the Products are manufactured.").[5]

To advance their misreading, Plaintiffs have to read the word "brand" out of "Italy's #1 Brand of Pasta." But "Plaintiffs are not free to excise or ignore words on the label to manufacture customer confusion." *See McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025).

Hence, because the plain meaning of the #1 Brand statement is undisputedly true and Plaintiffs' attempted misreading is unreasonable, the Court can grant summary judgment for those reasons alone.[6] *See Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2016 WL 4502528, at

---

[5] The inclusion of red, white, and green droplets next to the #1 Brand statement does not alter this analysis. These depictions are simply a tribute to Barilla's Italian history and heritage, and reasonable consumers would not extrapolate small dots the colors of Italy's flag to mean that the Products' ingredients are solely sourced from Italy. *See La Barbera*, 2023 WL 4162348, at *15 (finding that "highly stylized 'flags'" adopting the Mexican tricolor "evokes Mexican heritage, which is true, rather than misleading" and "do[ ] not purport to convey the products are Mexican in an official sense"); *Govea v. Gruma Corp.*, No. CV 20-8585-MWF, 2021 WL 1557748, at *4 (C.D. Cal. Mar. 1, 2021) ("packaging [that] merely evokes the spirit of a generalized location or culture in a vague and non-specific manner" is not actionable).

[6] At even earlier stages in litigation, Ninth Circuit district courts have rejected attempts by plaintiffs to fabricate allegations of deception despite the plain meaning of a truthful labeling claim. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("[I]it is implausible that a reasonable consumer would interpret an objectively true statement like 'FAT FREE' as also communicating that the product contains low amounts of sodium or is otherwise healthful.");

*3-4 (N.D. Cal. Aug. 29, 2016) (granting summary judgment for defendant where "it has presented evidence that its label statements are true, and therefore, unlikely to mislead or deceive reasonable consumers"); *see also Brown v. Abbott Lab'ys, Inc.*, No. 10 C 6674, 2011 WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) ("Some of the other representations that [plaintiff] cites are not even arguably misleading: [defendant's product] is the '# 1 brand fed in hospitals[.]'").

**2. Even if the #1 Brand statement could be read to make a claim about ingredient origin, any such claim would be ambiguous and subject to clarification.**

If, however, the #1 Brand statement can be read at all to make a claim about ingredient origin, the meaning behind any such claim would be at most ambiguous and hence subject to clarification elsewhere on the label, which of course it was.

To repeat Ninth Circuit law, "the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *McGinity*, 69 F.4th at 1098. And a front label is not unambiguously deceptive but is instead "ambiguous if 'reasonable consumers would necessarily require more information before they could reasonably conclude' that the front label was making a specific representation." *Whiteside*, 108 F.4th at 780 (quoting *McGinity*, 69 F.4th at 1097).

Whatever else one might say about Barilla's front-label statement that it is "Italy's #1 Brand of Pasta," one cannot say that it *unambiguously* claims that all the pasta's ingredients are sourced from Italy. Any such claim would require consumers to make ambiguous inferences. This is plain from the language itself. But the discovery record now shows it as well, proving that consumers draw any number of inferences from the #1 Brand statement, only one of which relates to ingredient source. In particular, the consumer perception survey conducted by Barilla's expert, Dr. Groehn,

---

*Prescott v. Saraya USA, Inc.*, No. 23-CV-00017-AJB-MMP, 2023 WL 6120610, at *3 (S.D. Cal. Sept. 18, 2023) (granting dismissal where plaintiff interpreted labeling claims to mean the product was a "substitute sweetener without side effects of weight gain, diabetes, or diabetes aggravation" but "the Products' packaging says nothing about diabetes or weight loss"); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 802 (N.D. Cal. 2022) ("As in other cases involving factually true statements, [the] statements would not cause a reasonable consumer to believe that [defendant's] products are healthier or safer than others, let alone a significant portion of the general public or targeted consumers."); *Lavie*, 129 Cal. Rptr. 2d at 489 (affirming trial court's ruling that the phrase "Aleve is gentler to your stomach lining than aspirin" was a true statement and advertisements containing it were unlikely to deceive reasonable consumers).

showed that

> [w]hen presented with other interpretations, 84% of respondents selected that the Label "Italy's #1 Brand of Pasta" means that The Brand is the Most Popular Pasta Brand in Italy. 69.4% of respondents believed that the Label means that The Brand is the Best Known Pasta in Italy. 66.2% of respondents believe that the Label means that The Brand is the Largest Selling Pasta in Italy. 42.3% of respondents believe that the Label means that The Product's Ingredients are Sourced from Italy. A further 19.8% of respondents believe that The Brand is the Oldest Producer of Pasta in Italy.

(Groehn Merits Rpt. ¶ 132.) When survey responses show a wide variety in potential interpretations, they demonstrate ambiguity. *See McGinity*, 69 F.4th at 1097. ("The ambiguity of the phrase is further shown by the nearly 50/50 split in survey responses interpreting whether the phrase means that the products are all-natural and lack synthetic ingredients."); *Corbett v. PharmaCare U.S., Inc*., No. 3:21-CV-00137-JES-AHG, 2025 WL 1746308, at *5 (S.D. Cal. June 24, 2025) (granting summary judgment where the "results evidence ambiguity, not deception" because "[c]ombined, only 51.9% of the Test Group indicated the Challenged Misrepresentations implicitly claim the Products treat or prevent disease"), *appeal docketed*, No. 25-4419 (9th Cir. July 7, 2025). And here, Plaintiffs themselves cannot even agree on how consumers read the #1 Brand statement. (*Compare* Sinatro Dep. at 12:2-23 *with* Prost Dep. at 39:2-5.)

There is no genuine dispute of fact on this point. Plaintiffs' experts made no attempt to discern whether the #1 Brand statement could be understood to communicate a range of potential messages to consumers. (*See* Dennis Cert. Rpt. ¶ 71; Weir Second Dep. 69:6-70:23.) Dr. Dennis's perception survey gave respondents no chance to indicate that they understood the #1 Brand statement to communicate anything other than an ingredient-origin message.[7] (Dennis Cert. Rpt. ¶ 69-71.) Even as to the one message he force fed them, Dr. Dennis did not ask respondents whether they were confident or sure that the #1 Brand statement meant that the Products' ingredients were from Italy. (*See id.*) Nor did he ask respondents whether they needed more information before determining that the #1 Brand statement conveyed a message about ingredient origin. (*See id.*)

[7] In fact, Dr. Dennis's survey did not even ask respondents the relevant question: how they understood the Product label as a whole. *See In re 5-Hour Energy Mktg. & Sales Pracs. Litig*., No. ML132438PSGPLAX, 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018) (Dr. Dennis's survey did not create a triable issue as to consumer perception because the survey's "very question answers itself" and focused the survey taker's attention to one word on the label).

Thus, the only evidence Plaintiffs have even adjacent to the ambiguity issue is Dr. Dennis's "finding that **57.0%** of consumers perceived the Challenged Representation to mean that the Product's ingredients are solely sourced from Italy. **32.3%** of surveyed respondents did not perceive the Challenged Representation to have this meaning, and **10.7%** did not have an opinion." (*Id*. at ¶ 37.) Dr. Dennis frankly conceded the existence of ambiguity in his deposition, stating "we don't have a hundred percent of consumers being misled in the way alleged by plaintiffs, and so there's 43 percent that are not, and the data indicates that there is room for consumers potentially to have another interpretation." (Dennis Second Dep. at 44:12-16.) If anything, "the[se] results evidence ambiguity, not deception." *See Corbett*, 2025 WL 1746308, *5 (combined response rate of 51.9% indicated ambiguity); *see also* Dennis Second Dep. at 38:4-6 ("just looking at my own survey there is evidence that there could be potentially other interpretations.").

In sum, the very most one could say about the #1 Brand statement is that it could ambiguously convey some message about ingredient origin. But of course, reasonable consumers who encounter ambiguity turn to the rest of the package to dispel it. *McGinity*, 69 F.4th 1093, 1098-99 (9th Cir. 2023); *Whiteside*, 108 F.4th at 781; *McWhorter*, 2025 WL 948061, at *6 ("[A]mbiguity triggers a consumer's obligation to search a back label."). And here, those reasonable consumers would immediately see the statement: "***Made in the U.S.A. with U.S.A. and imported ingredients***." (*See supra* at p. 4 (emphasis added).) Any ambiguity is dispelled! Plaintiffs themselves admit that they understand perfectly clearly what "Made in the U.S.A. with U.S.A. and imported ingredients" means. (Sinatro Dep. at 44:17-18; Prost Dep. at 49:1-6.) But admitted or not, the message is clear to a reasonable consumer, and hence there is no deception as a matter of law.

"With the entire product in hand, we conclude, no reasonable consumer would" be misled. *McGinity*, 69 F.4th at 1099. On the undisputed factual record and controlling Ninth Circuit law, this Court should enter summary judgment for Barilla on Plaintiffs' statutory claims.[8] *See Holt v.*

[8] Summary judgment on Plaintiffs' manufactured-in-Italy theory is also appropriate because, to the extent the #1 Brand statement conveys that the Products are manufactured in Italy, it is at most ambiguous, and any ambiguity is dispelled by the side-label statement, "Made in the U.S.A. with U.S.A. and imported ingredients." *See Culver*, 2021 WL 10382839, at *9 ("Product of Canada" on rear label dispelled any ambiguity as to origin created by use of "Paris," a "Paris emblem" and French words on the product's front label); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386,

*Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1167-68 (S.D. Cal. 2019) (granting summary judgment and recognizing that "[u]nder Ninth Circuit precedent, district courts have found that a reasonable consumer would not be misled when 'statements, in context, are not misleading,' or where 'any ambiguity that reasonable consumers would read into any particular statement is dispelled by the promotion as a whole.'"(citation omitted)); *Corbett*, 2025 WL 1746308, at *4-6.

**C. If Plaintiffs' consumer perception expert opinions are excluded under *Daubert*, summary judgment is required on Plaintiffs' statutory claims.**

This Court should also enter summary judgment on Plaintiffs' statutory claims for the separate reason that their sole expert evidence on consumer perception is unhelpful and unreliable. At summary judgment, "it is incumbent upon [a plaintiff] to introduce evidence that could support a finding that reasonable consumers believe" the challenged statement means what the plaintiff alleges. *Tran*, 471 F. Supp. 3d at 1026. But as shown in Barilla's Motions to Strike, Dr. Dennis's consumer perception opinions fail under *Daubert* and should be excluded.

Without Dr. Dennis's opinions, the named Plaintiffs have only their personal interpretations, which are insufficient to create a genuine issue of material fact because Plaintiffs "offer nothing to show that [their] view of the labels equates to that of the reasonable consumer." *Tran*, 471 F. Supp. 3d at 1029; *see also Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 7206633, at *5 (N.D. Cal. Dec. 18, 2014), *aff'd in relevant part*, 703 F. App'x 468 (9th Cir. 2017) ("Although surveys and expert testimony regarding consumer expectations are not required, a few isolated examples of actual deception are insufficient" (quotation and citation omitted)); *see also Becerra*, 945 F.3d at 1230 ("And even if *some* consumers would make that assumption, the packaging was not deceptive just because some consumers could unreasonably misunderstand the product.")); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom

---

391 (E.D.N.Y. 2017) (no deception where "[t]he use of a trademarked star symbol and allusion to the company's historic roots in Japan are eclipsed by the accurate disclosure statement" indicating where the products were manufactured).

the representation is addressed.”).[9]

In sum, once Dr. Dennis’s consumer perception opinions are excluded, Plaintiffs cannot prove that a significant portion of consumers, acting reasonably under the circumstances, would be misled. Summary judgment therefore follows. *See Krause-Pettai v. Unilever United States, Inc.*, 696 F. Supp. 3d 916, 928 (S.D. Cal. 2023) (granting summary judgment where plaintiffs had no surveys or expert testimony and distinguishing cases involving “patently false marketing” and cases where plaintiffs had “marketing research surveys or other evidence to corroborate their anecdotal claims”); *Peacock*, 2024 WL 1160687, at *6 (granting summary judgment in a UCL action where “Plaintiff’s testimony alone would already be insufficient to meet his burden and the sufficiency of that evidence is even further degraded by the evidence presented by Defendant, such that no reasonable trier of fact could reach a contrary conclusion.”); *Rahman v. Mott’s LLP*, No. CV 13-3482, 2014 WL 5282106, at *10 (N.D. Cal. Oct. 15, 2014) (similar).

## III. Plaintiffs’ common law claims fail as a matter of law.

Plaintiffs assert two common-law claims: breach of warranty (both express warranty and implied warranty of merchantability) and unjust enrichment. (FAC Counts IV-V). These common law claims fail for the same reasons discussed above, *see Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) (affirming dismissal of breach of warranty and unjust enrichment claims because “they presume the success of her consumer deception and fraud claims,” which were properly dismissed), and for other independent reasons.

### A. Plaintiffs’ breach of warranty claims fail for lack of an actionable misrepresentation.

For the same reasons their statutory consumer fraud claims fail, Plaintiffs’ breach of warranty claims fail: the #1 Brand statement is not an actionable misrepresentation. (*See supra* at pp. 11-20.) To state a claim for breach of express warranty, a plaintiff “must allege the exact terms of the warranty, plaintiff’s reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury.” *Freund v. HP, Inc.*, No. 22-CV-03794-BLF, 2023 WL 187506,

---

[9] Plaintiff Prost’s testimony does not support Plaintiffs’ theory for the additional reason that she challenges the use of the #1 Brand statement to mean the Products were made in Italy—not that the Products’ ingredients are sourced from Italy. (*See* Prost Dep. at 32:2-5; 39:2-5.)

at *5 (N.D. Cal. Jan. 13, 2023) (citation omitted); *see Kennard v. Kellogg Sales Co*., No. 21-CV-07211-WHO, 2022 WL 4241659, at *8 (N.D. Cal. Sept. 14, 2022) (implied warranty claims premised on a theory that the products do not conform to promises on the label "rise[] and fall[] with [the plaintiff's] express warranty claims"). In doing so, the plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Yastrab v. Apple Inc*., No. 5:14-CV-01974-EJD, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (quotation and citation omitted); *see* Cal. Com. Code § 2313(1)(a) (express warranty created by an "affirmation of fact or promise made by the seller to the buyer").

Plaintiffs have not identified a "specific and unequivocal" statement that the pasta was made with exclusively Italian ingredients. In their warranty claims, Plaintiffs allege that Barilla "made promises and affirmations of fact on the Products' packaging and labeling," which constituted "express warranties and became part of the basis of the bargain." (FAC ¶ 107.) But the #1 Brand statement made no references, let alone promises, as to the origin of the Products' ingredients. *See Kim v. Blue Triton Brands*, No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085, at *6 (C.D. Cal. Nov. 1, 2022) (dismissing breach of warranty claims where "there was no unequivocal statement here that the [product] was sourced from a spring on 'Arrowhead Mountain' and such a conclusion is not a reasonable interpretation of the label"); *see also Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022) (dismissing express warranty claim because "[a]lthough the Court has found the Protein Representation could mislead a reasonable consumer, the Court agrees that the representation does not constitute an express statement that the amount of protein is per serving/scoop alone"). Indeed, courts reject breach of warranty claims where, as here, the challenged statement is accurate. *See, e.g.*, *Viggiano*, 944 F. Supp. 2d at 893–94 (dismissing breach of warranty claim premised on term "all natural flavors" because this phrase "accurately describes the product"); *McKinnis v. Kellogg USA*, No. CV07-2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (similar).

Accordingly, summary judgment is appropriate on Plaintiffs' breach of warranty claims for lack of an actionable misrepresentation. *See Valentine v. Crocs, Inc*., 783 F. Supp. 3d 1204, 1211-12 (N.D. Cal. 2025) (granting summary judgment where "Defendant produced thousands of pages

of marketing material…[y]et Plaintiff has not identified any express promise made by Defendant" that the shoes are shrink resistant when subjected to extreme heat); *see also Maneely v. Gen. Motors Corp*., 108 F.3d 1176, 1181-82 (9th Cir. 1997) (affirming summary judgment where plaintiff "failed to raise a genuine factual dispute as to whether [the defendant's] advertising created an affirmation of fact or promise about the safety of riding in a cargo bed").

**B. Plaintiffs' unjust enrichment claim fails because it is not an independent cause of action.**

Barilla is also entitled to summary judgment on Plaintiffs' unjust enrichment claim because it is a remedy, not a standalone cause of action. *See Brodsky v. Apple Inc*., 445 F .Supp. 3d 110, 132 (N.D. Cal. 2020) ("Courts have consistently dismissed standalone claims for unjust enrichment."); *Cross v. Haleon US, Inc*., No. 2:24-CV-09325-MCS-PVC, 2025 WL 2019930, at *5 (C.D. Cal. July 11, 2025) (California law "describe[s] unjust enrichment as a remedy, not as a standalone cause of action."); *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution'" (citations omitted)). The Court should follow these cases and dismiss Plaintiffs' unjust enrichment claim. *See Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc*., No. 24-CV-03567-NW, 2025 WL 2637507, at *18 (N.D. Cal. Sept. 12, 2025).

Some courts, however, have recently *construed* unjust enrichment claims at the motion to dismiss stage as "quasi-contract claims, seeking restitution for benefit conferred through mistake, fraud, coercion, or request." *Krystofiak v. BellRing Brands, Inc*., 737 F. Supp. 3d 782, 806 (N.D. Cal. 2024); *Smith v. Intel Corp*., No. 23-CV-05761-HSG, 2025 WL 2381617, at *9 (N.D. Cal. Aug. 15, 2025) ("Although there is no standalone cause of action in California for 'unjust enrichment,' courts may 'construe a claim for unjust enrichment as a quasi-contract claim seeking restitution.'" (citation omitted)). Barilla respectfully suggests that—even if these cases are rightly decided—it makes little sense to *construe* Plaintiffs' unjust enrichment claim, which they had the opportunity to amend, as a quasi-contract claim at summary judgment.[10]

Even if an unjust enrichment claim could stand as a separate claim, it would fail here

[10] Barilla expressly preserves for appeal the argument that these cases are wrongly decided.

because Plaintiffs simply repackage their statutory claims, alleging they "conferred a benefit on Defendant in the form of the purchase price of the Products," which they claim it is inequitable for Barilla to retain "because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions." (FAC ¶¶ 114, 116.) Accordingly, Plaintiffs' unjust enrichment claim, to the extent it is not simply a remedy, fails with the statutory claims upon which it is predicated. *See Young v. Cree, Inc*., No. 4:17-CV-06252, 2021 WL 4749384, at *10 (N.D. Cal. Oct. 12, 2021) (granting summary judgment on unjust enrichment claim where underlying fraudulent misrepresentation claim was unsupported by the evidence); *Stiles v. Trader Joe's Co*., No. CV1604318, 2017 WL 3084267, at *6 (C.D. Cal. Apr. 4, 2017) ("There being no actionable wrong, there is no basis for the relief." (quotation and citation omitted)); *see also In re Ford Tailgate Litig*., No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("To the extent unjust enrichment is available as an independent claim, and not merely a remedy, it will not stand where the claim simply mirrors other statutory or tort claims.").

## IV. Barilla is entitled to judgment against Plaintiffs' claim for punitive damages.

This is in no way a punitive-damages case, and the Court should so hold.

At the outset, Plaintiffs' claims for punitive damages in connection with their FAL, UCL, warranty, and unjust enrichment claims should be dismissed because none of those claims provides for punitive damages. *See Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal. 2020) (dismissing without leave to amend plaintiff's claim for punitive damages under the UCL, FAL, and breach of express and implied warranty); *Tovmasyan v. Target Corp*., No. 2:25-CV-02314-MRA-KS, 2025 WL 1288020, at *6-7 (C.D. Cal. May 2, 2025) (dismissing without leave to amend plaintiff's claims for punitive damages under the UCL, FAL, breach of warranty, and unjust enrichment); *see also Brown v. Food for Life Baking Co*., 658 F. Supp. 3d 732, 743 (N.D. Cal. 2023) ("Punitive damages are not available under the UCL and FAL."); *Hawkins v. Kroger Co*., 337 F.R.D. 518, 530 n.8 (S.D. Cal. 2020) ("Punitive damages are also unavailable in claims for breach of express warranty."); *Beluca Ventures LLC v. Einride Aktiebolag*, No. 21-CV-06992-WHO, 2022 WL 17252589, at *5 (N.D. Cal. Nov. 28, 2022) ("Punitive damages are not available for breach of contract or quasi-contract claims.").

The CLRA provides for punitive damages, but only upon "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code §§ 1780(a)(4), 3294(a). This is a "stringent" standard, *Pac. Gas & Elec. Co. v. Superior Court*, 235 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2018), and it must be applied on summary judgment. *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2019 WL 3804661, at *16-17 (N.D. Cal. Aug. 13, 2019). A plaintiff seeking punitive damages against a business must show that "an officer, director, or managing agent" had "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147-48 (N.D. Cal. 2018).

Plaintiffs put forth no evidence, let alone clear and convincing evidence, to meet the stringent CLRA standard. Barilla made an undisputedly true statement: it is the #1 brand of pasta in Italy. No reasonable consumer could misread that statement as making a claim about ingredient origin, and even if some ambiguous message could be inferred, Barilla immediately dispelled it by stating that the pasta was "Made in the U.S.A. with U.S.A. and imported ingredients." Plaintiffs never claim that Barilla *intended* to deceive anyone. (*See* Weir Second Dep. at 19:16-20:15.) And they provide **no** evidence of misconduct by any member of Barilla's management. Even proving the bare fact of a misleading label is not enough to support a claim for punitive damages. *See Hadley*, 2019 WL 3804661, at *17 (entering summary judgment for defendant in misleading labeling case against cereal product). And Plaintiffs have not even proven that.

Thus, Barilla is entitled to summary judgment on Plaintiffs' claim for punitive damages. *See Pac. Gas & Elec. Co.*, 235 Cal. Rptr. 3d at 249 (affirming summary judgment where plaintiffs failed to present sufficient evidence to raise a triable issue of fact as to punitive damages); *see also Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 117 Cal. Rptr. 2d 685, 711 (Cal. Ct. App. 2002) (affirming summary judgment on punitive damages when defendant "did not willfully and deliberately fail to avoid" harmful consequences).

## CONCLUSION

The Court should grant Barilla's motion for summary judgment in its entirety.

Dated: October 9, 2025

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ David A. Belcher*
David A. Belcher
Kevin P. Wagner (*Pro Hac Vice*)
Aaron D. Van Oort (*Pro Hac Vice*)
Tyler A. Young (*Pro Hac Vice*)
Berglind H. Birkland (*Pro Hac Vice*)
David J.F. Gross

Attorneys for Defendant
BARILLA AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ David A. Belcher*
David A. Belcher