**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Cassandra Rasmussen (*pro hace vice*)
*crasmussen@clarksonlawfirm.com*
Jiaming Zheng (SBN 363184)
*jzheng@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs and the Certified Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BARILLA AMERICA, INC.,

Defendant.

Case No.: 4:22-cv-03460-DMR

Complaint Filed: June 11, 2022
FAC Filed: July 20, 2022

*Assigned for all purposes to Hon. Donna M. Ryu, United States Magistrate Judge*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS**

Hearing Information:
Date: March 26, 2026
Time: 1:30 p.m.
Ctrm: 4, 3rd Fl

**REDACTED—PUBLICLY FILED**



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

I. STATEMENT OF ISSUES TO BE DECIDED ....................1
II. INTRODUCTION ....................1
III. RELEVANT FACTS ....................3
A. Colin Weir's Expert Opinions ....................3
B. Dr. Michael Dennis's Expert Opinions ....................4
C. Barilla's Expert Opinions ....................5
1. Dr. Robin Cantor ....................5
2. Dr. Andreas Groehn ....................6
3. Dr. Kristina Shampanier ....................7
IV. LEGAL STANDARD ....................8
V. ARGUMENT ....................8
A. Rule 23(a) Requirements Remain Satisfied ....................8
B. Predominance Satisfied Through Common Evidence of Liability and Causation ....10
C. Barilla's Renewed Attacks on Weir's Damages Model Are Unsupported ....................14
1. Plaintiffs' Damages Model Satisfies Comcast ....................16
2. Supply Side Factors Sufficiently Considered ....................19
D. Barilla's Renewed Attacks on Dr. Dennis's Survey Continue to be Meritless .........22
E. Superiority and Manageability Remain Intact ....................23
VI. CONCLUSION ....................25

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## TABLE OF AUTHORITIES


**Cases** **Page No.**

*Banks v. R.C. Bigelow, Inc.*,
No. 2:20-CV-06208-DDP-RAOX,
2024 WL 3330554 (C.D. Cal. July 8, 2024) .......... 4

*Banks v. R.C. Bigelow, Inc.*,
No. 2:20-CV-06208-SVW-RAO,
2025 WL 2671596 (C.D. Cal. Aug. 22, 2025) .......... 15

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 25

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-CV-01027-BLF,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .......... 9, 15

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-CV-01027-BLF,
2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......... 4

*Brown v. Wal-Mart Stores, Inc.*,
No. 09-CV-03339-EJD,
2018 WL 1993434 (C.D. Cal. Apr. 27, 2018) .......... 8, 23

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) .......... 23, 24

*Cadena, et al. v. American Honda Motor Co., Inc.*,
No. CV 18-04007-MWF (MAAx),
2025 WL 3483436 (C.D. Cal. Dec. 3, 2025). .......... 3, 4, 18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... *passim*

*Cormier v. Carrier Corp.*,
No. 218CV07030CASEX,
2019 WL 1398903 (C.D. Cal. Mar. 25, 2019). .......... 14

*Day v. Celadon Trucking Servs., Inc.*,
827 F.3d 817 (8th Cir. 2016) .......... 8

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......... 24

*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015) .......... 9

*Fagan v. Neutrogena Corp.*,
No. 5:13-CV-01316-SVW-OP,
2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) .......... 16, 17

*Fitzhenry–Russell v. Dr. Pepper Snapple Grp.*, 326 F.R.D. 592 (N.D. Cal. 2018) ... 3, 4, 11, 19, 20

*Flodin v. Cent. Garden & Pet Co.*, No. 21-CV-01631-JST, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) ... 16, 17

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010) ... 23

*Gonzalez v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140 (S.D. Cal. 2007) ... 8

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) on reconsideration, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ... 10

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ... 3, 9, 18, 19

*Hawkins v. Kroger Co.*, 337 F.R.D. 518 (S.D. Cal. 2020) ... 12

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ... 10

*Hughes v. Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016) ... 16, 17

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ... 13, 16

*In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) ... 8

*In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ... 17, 18

*In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018) ... 8

*In re Lenovo Adware Litigation*, No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ... 19, 20

*In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018) ... 19, 20

*In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ... 8

*In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-428-JFW (JEMX), 2016 WL 787415 (C.D. Cal. Feb. 2, 2016) .......... 15, 20, 21

*In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 6448192 (N.D. Cal. Dec. 18, 2017) .......... 8

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .......... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940 (N.D. Cal. 2020). .......... 21

*Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015) .......... 13

*Krommenhock v. Post Foods*, 334 F.R.D. 552 (N.D. Cal. 2020) .......... 3, 18

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016). .......... 11, 12

*Kwikset Corp. v. Superior Court,* 246 P.3d 877 (Cal. 2011) .......... 12

*Lytle v. Nutramax Labs, Inc.*, 114 F.4th 1011 (9th Cir. 2024) .......... 15

*McMorrow v. Mondelēz Int'l., Inc.*, No. 17-CV-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) .......... 16

*McMorrow v. Mondelēz Int'l., Inc.*, No. 17-CV-2327-BAS-JLB, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021) .......... 16

*Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2001) .......... 3

*Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) .......... 11, 23

*Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417 (S.D.N.Y. May 2, 2023) .......... 20

*Passman v. Peloton Interactive, Inc.*, No. 19 CIV. 11711 (LGS), 2025 WL 1284718 (S.D.N.Y. May 2, 2025) .......... 21

*Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) .......... 15, 18



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Philips v. Ford Motor Co.*,
No. 14-CV-02989-LHK,
2016 WL 7428810 (N.D. Cal. Dec. 22, 2016). ..... 14

*Saavedra v. Eli Lilly & Co.*,
No. 2:12-CV-9366-SVW,
2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ..... 15, 20, 21

*Smith v. Keurig Green Mountain, Inc.*,
No. 18-CV-06690-HSG,
2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ..... 11, 13, 18

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931) ..... 18

*Townsend v. Monster Bev. Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018). ..... 13

*Vizcarra v. Unilever United States Inc.*,
No. 4:20-CV-02777 YGR,
2023 WL 2364736 (N.D. Cal. Feb. 24, 2023) ..... 25

*Webb v. Carter's Inc.*,
272 F.R.D. 489 (C.D. Cal. 2011) ..... 14

*Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..... 23

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ..... 24

*Young v. Neurobrands*,
No. 18-CV-05907-JSW,
2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) ..... 10

*Zakaria v. Gerber Products Co.*,
No. LACV1500200JAKEX,
2016 WL 6662723 (N.D. Cal. Mar. 23, 2016) ..... 9

*Zakaria v. Gerber Products Co.*,
No. LACV1500200JAKEX,
2017 U.S. WL 9512587 (C.D. Cal. Aug. 9, 2017) ..... 20, 21, 22

**Rules**

Fed. R. Civ. P. 23 ..... *passim*

Fed. R. Evid. 702 ..... 12

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Statutes**

15 U.S.C. § 1125 .......................................................................................................... 11

Cal. Civ. Code 1770 ...................................................................................................... 11, 13

**Other Authorities**

3 Newberg on Class Actions § 7.37 (5th ed.) ............................................................................ 8

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF REFERENCES

| Court Docket No. | Document | Declarant/Deponent/Expert |
|---|---|---|
| ECF No. 52-1 | Memorandum of Points and Authorities ISO Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel | Plaintiffs Matthew Sinatro and Jessica Prost ("Plaintiffs") |
| ECF No. 52-2 | Declaration and Expert Report of J. Michael Dennis, Ph.D. (dated August 16, 2023) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 52-3 | Declaration and Expert Report of Colin B. Weir (dated August 16, 2023) | Plaintiffs' Economics Expert |
| ECF No. 54-5 | SEALED Exhibit 3 to Plaintiffs' Motion for Class Certification – New Positioning & Visual Identity Marketing Study | Defendant Barilla America, Inc. ("Defendant") |
| ECF No. 54-3 | SEALED Declaration and Expert Report of Colin B. Weir (dated August 16, 2023) | Plaintiffs' Economics Expert |
| ECF No. 54-6 | SEALED Exhibit 4 to Plaintiffs' Motion for Class Certification – Kantar 2021 Study | Defendant |
| ECF No. 61 | Defendant Barilla America, Inc.'s Opposition to Plaintiffs' Motion for Class Certification | Defendant |
| ECF No. 61-1 | Declaration and Expert Report of Robin Cantor (dated November 30, 2023) | Defendant's expert Dr. Cantor |
| ECF No. 61-5 | Exhibit B to Defendant's MCC – Sinatro Depo Transcript | Plaintiff Sinatro |
| ECF No. 62-2 | SEALED Declaration and Expert Report of Robin Cantor (dated November 30, 2023) | Defendant's expert Dr. Cantor |
| ECF No. 65 | Plaintiffs' Reply ISO Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel | Plaintiffs |

| | | |
|---|---|---|
| ECF No. 66 | Plaintiffs' Motion to Exclude Defendant's Class Certification Expert Robin Cantor | Plaintiffs |
| ECF No. 78 | Order Granting Plaintiffs' Motion to Certify Class and Denying Plaintiffs' Motion to Exclude as Moot | Chief Magistrate Judge Donna M. Ryu |
| ECF No. 100-1 | Declaration and Rebuttal Report of J. Michael Dennis, Ph.D. (dated February 6, 2024) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 100-2 | Declaration and Rebuttal Report of Colin B. Weir (dated February 7, 2024) | Plaintiffs' Economics Expert |
| ECF No. 149 | Plaintiffs' Notice of Class Administrator Report pursuant to Order re Notice of Pendency of Class Action | Plaintiffs |
| ECF No. 149-1 | Exhibit 1 – Supplemental Declaration of Sean Hartranft re Class Notice | Class Administrator Sean Hartranft |
| ECF No. 150 | Defendant's Motion for Summary Judgment | Defendant |
| ECF No. 151 | Defendant's Motion to Decertify the Class | Defendant |
| ECF No. 152 | Defendant's Motion to Strike the Opinions of Dr. J. Michael Dennis | Defendant |
| ECF No. 153 | Defendant's Motion to Strike the Opinions of Colin B. Weir | Defendant |
| ECF No. 154-6 | Exhibit 6 – Declaration and Expert Report of J. Michael Dennis, Ph.D. (dated February 7, 2025) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 154-7 | Exhibit 7 – Declaration of Colin B. Weir (dated February 7, 2025) | Plaintiffs' Economics Expert |
| ECF No. 154-8 | Exhibit 8 – Plaintiffs' Experts' Reply Declarations (dated August 19, 2025) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert / Plaintiffs' Economics Expert |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

| | | |
|---|---|---|
| ECF No. 154-10 | Exhibit 10 – Expert Report of Dr. Andreas Groehn (dated May 9, 2025) | Defendant's expert Dr. Groehn |
| ECF No. 154-11 | Exhibit 11 – Expert Rebuttal Report and Declaration of Kristina Shampanier, Ph.D. (dated May 9, 2025) | Defendant's expert Dr. Shampanier |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## I. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Barilla has identified any material change in law, fact, or expert evidence since class certification that would justify disturbing the Court's order granting Rule 23(b)(3) certification.

2. Whether Plaintiffs' classwide damages model, previously found consistent with Plaintiffs' liability theory and *Comcast*, remains capable of measuring damages on a common basis, where Barilla offers no new methodology, data, or authority to find differently.

3. Whether renewed supply-side criticisms of Plaintiffs' damages model, already considered and rejected at class certification as going to weight rather than Rule 23 viability, cannot support decertification absent any new evidence.

4. Whether common issues of consumer deception and materiality continue to predominate where Plaintiffs' consumer perception and conjoint analysis evidence is unchanged and still demonstrates a shared, classwide understanding and measurable price premium harming all consumers in the same way.

5. Whether Barilla may relitigate admissibility and weight of Plaintiffs' expert opinions through a motion to decertify where those opinions were already found sufficient to satisfy Rule 23, and there are no grounds for exclusion under *Daubert* as detailed in Plaintiffs' concurrently-filed oppositions to Barilla's separate motions for exclusion.

6. Whether Rule 23's commonality, predominance, superiority, and manageability requirements remain satisfied where all class members were exposed to the same uniform labeling, liability turns on an objective reasonable consumer standard, and Plaintiffs' experts demonstrate that damages are susceptible to classwide proof.

## II. INTRODUCTION

Barilla's motion is nothing more than an attempt to relitigate issues this Court has already resolved after conducting a rigorous Rule 23 analysis and certifying a Rule 23(b)(3) class. It identifies no change in facts, no new expert opinion, and no intervening legal authority that would justify disturbing the well-reasoned certification order. Instead, Barilla simply repackages the same arguments it presented at class certification, hoping for a different outcome. Rule 23 does not permit

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

this type of do-over. Decertification may be proper only upon a material change in circumstances, not because a defendant wishes to reargue issues previously rejected. No such change exists here.

When the Court certified the class, it concluded that ITALY'S #1 BRAND OF PASTA" displayed with an artistic depiction of the Italian flag ("Challenged Representation") conveys an Italian-origin message capable of being evaluated on a common, classwide basis. The Court relied on substantial evidence, including Dr. J. Michael Dennis's consumer perception survey showing that reasonable consumers understand the representation to mean the pasta products are made from Italian ingredients, and conjoint analysis demonstrating that the misrepresentation carries a measurable price premium. Barilla's motion does not dispute that these analyses remain unchanged. Nor does Barilla identify any new testimony, data, or developments undermining the Court's findings about the uniformity or materiality of the misrepresentation and susceptibility to common evidence and resolution that makes class treatment proper.

Instead, Barilla simply reiterates its rejected claim that Plaintiffs' damages model fails under *Comcast*, even though the Court already found economist Colin B. Weir's model to be methodologically sound, tied to Plaintiffs' theory of liability, and capable of measuring classwide damages. Barilla also renews its argument that supply-side factors defeat predominance, even though the Court already held at class certification, based on Barilla's expert Dr. Robin Cantor, that those critiques go to weight of the evidence, not Rule 23 viability. Barilla offers no new economic analysis or empirical data; it merely recycles assertions the Court has already rejected.

Barilla likewise reasserts that consumer perceptions of the Challenged Representation vary too much for classwide treatment. But the Court already found that Dr. Dennis's survey reliably demonstrates a shared consumer understanding. That evidence is unchanged and continues to show what Barilla's false origin scheme intended and achieved: a consistent Italian-origin message across the Class. In short, Barilla identifies no new development that would justify revisiting class certification. Because the Rule 23 requirements the Court already found satisfied remain intact, Barilla's motion for decertification should be denied.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## III. RELEVANT FACTS

The Court granted class certification under Rule 23(b)(3) on May 28, 2024, after conducting a detailed and rigorous Rule 23 analysis. ECF 78. In certifying the class, the Court relied on substantial expert evidence from economist Mr. Weir and consumer survey expert Dr. Dennis, whose reports demonstrated that Barilla's "ITALY'S #1 BRAND OF PASTA" claim deceives reasonable consumers and that the resulting price premium and damages can be measured on a classwide basis using common proof. ECF 52-2 ¶ 37; ECF 154-6 ¶¶ 23–24; ECF 154-7 ¶ 80. Following class certification, Class Notice was disseminated consistent with the court approved notice plan. ECF 149, ECF 149-1. Barilla's present motion for decertification renews its attacks on Plaintiffs' experts and repeats arguments, often verbatim, that the Court rejected at class certification. ECF 151.

### A. Colin Weir's Expert Opinions

Colin Weir is a well-established economist who specializes in market-based damages models in consumer class actions. ECF 54-3 ¶ 1. He has been retained as an expert in more than ninety matters in the past four years, including food-labeling and consumer deception cases in federal courts. ECF 154-7, Ex. 1 at 3–15. His conjoint-based price-premium damages models have repeatedly been accepted as reliable under *Comcast* by courts in the Ninth Circuit and nationwide, including in *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018); *Fitzhenry–Russell v. Dr. Pepper Snapple Group*, 326 F.R.D. 592 (N.D. Cal. 2018); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2001); *Krommenhock v. Post Foods*, 334 F.R.D. 552 (N.D. Cal. 2020) (ECF 54-3 ¶ 2), and most recently in *Cadena et al. v. American Honda Motor Co., Inc.*, 2025 WL 3483436 (C.D. Cal. Dec. 3, 2025). This Court recognized Mr. Weir's extensive experience when it credited his methodology in granting certification. ECF 78 at 14:2–9.

Mr. Weir's task in this case was to determine whether damages could be measured on a classwide basis using common evidence, and if so, to provide an economically sound framework for calculating damages attributable solely to Barilla's misrepresentation of Italian origin. ECF 54-3 ¶ 7. Working in coordination with Dr. Dennis, Mr. Weir evaluated the economic suitability of a conjoint design that isolates the market value consumers place on the Challenged Representation,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

separate and apart from all other product attributes. *Id.* ¶ 8. His damages framework incorporated supply-side considerations consistent with economic literature and Ninth Circuit precedent. ECF 54-3 ¶¶ 49–65. As he explained, in a consumer deception class action the number of units sold is fixed because it is defined by the actual purchases of class members, making supply-side speculation unnecessary for calculating damages. *Id.* ¶ 50. He further found that Barilla operates in a highly competitive market where demand-side effects drive pricing, supporting the use of conjoint analysis. *Id.* ¶¶ 58–65. His model yields classwide damages aligned with Plaintiffs' liability theory under *Comcast* and supported by uniform transactional data. ECF 54-3 ¶ 71; ECF 154-7 ¶ 80.

The Court has already accepted the validity of this approach. In its Class Certification Order, the Court found that it meets the legal requirements of *Comcast*, and "meets the legal requirements for class-based damages." ECF 78 at 18:8–13, 19:16–23. The Court also rejected Barilla's supply-side criticisms as speculative and inappropriate at the certification stage, noting that such arguments go to weight of the evidence for trial, not admissibility or Rule 23 viability. *Id.* at 6. Mr. Weir's damages model remains legally and economically sound and capable of reliably establishing classwide damages consistent with Ninth Circuit authority.

**B. Dr. Michael Dennis's Expert Opinions**

Dr. Michael Dennis is a nationally recognized expert in survey and market research methodology with more than 25 years of experience. ECF 52-2 ¶¶ 4–6. He has authored over 60 publications and has designed hundreds of quantitative consumer surveys, including the type conducted here. *Id.* His surveys have repeatedly been accepted to support class certification in consumer deception cases, including *Banks v. R.C. Bigelow, Inc.*, 2024 WL 3330554 (C.D. Cal. July 8, 2024); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, 326 F.R.D. 592 (N.D. Cal. 2018); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (*Id.* ¶ 6); and most recently in *Cadena et al. v. American Honda Motor Co., Inc.,* 2025 WL 3483436 (C.D. Cal. Dec. 3, 2025).

To test consumer perception here, and to ensure accuracy, he showed respondents the Challenged Representation, including the artistic depiction of Italian flags and white text against a deep blue background, exactly as Barilla presents it. ECF 52-2 ¶ 35. He also gave respondents the

opportunity to view labels on all panels of the package, as they would in a grocery store. *Id.* ¶ 68. Dr. Dennis also used accepted survey methods, including randomized control groups, non-leading questions, statistically significant sampling, and instructions directing respondents to consider only the packaging shown. *Id.* ¶¶ 59–68. Respondents were then asked whether the representation communicates that "The product's ingredients are sourced from Italy"—directly addressing Plaintiffs' theory of deception and the reasonable consumer test. *Id.* ¶¶ 69–71. The results were clear: **57% of respondents** (a majority) interpreted the label to mean that the product's ingredients are sourced solely from Italy. *Id.* ¶ 37. Dr. Dennis employed sampling methods ensuring the results were representative of and projectable to the proposed Class. *Id.* ¶¶ 45–50. To calculate the price premium, Dr. Dennis used well-accepted conjoint analysis to measure the percentage of the purchase price attributable to the Challenged Representation. ECF 52-2 ¶¶ 90–100; ECF 154-6 ¶¶ 23–24.

Barilla again attacks Dr. Dennis's survey as subjective and faults him for not isolating the text from the flag imagery. ECF 151 at 1:17–2:11. But these are the same arguments it raised—and lost—at certification. ECF 78 at 11:27–12:18. The Court explicitly held that the Challenged Representation includes both the statement and the Italian flag colors and rejected Barilla's attempt to isolate the text. ECF 78 at 2 n 1. Because Dr. Dennis tested the representation exactly as the Court defined it, his survey remains methodologically sound, admissible, and supports the Court's prior finding that class treatment under Rule 23 is proper.

### C. Barilla's Expert Opinions

#### *1. Dr. Robin Cantor*

Barilla's motion relies heavily on the same opinions and criticisms previously offered by its economist, Dr. Robin Cantor, in opposition to class certification. Dr. Cantor conducted three versions of a consumer perception survey. ECF 62-2 ¶ 37. Each presented consumers with the "ITALY'S #1 BRAND OF PASTA" label claim. *Id.* One recreated the Dennis survey and asked if the label communicated that "The product's ingredients are sourced from Italy." *Id.* The second asked consumers whether the label communicates that "The brand is the largest selling pasta in Italy." *Id.* The third asked consumers whether they believed the label communicated "The product's

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

ingredients are sourced from Italy" and/or "the brand is the largest selling pasta in Italy." *Id.* Cantor's survey found that 49.2% of consumers interpreted the label as communicating that the products are sourced from Italy. *Id.* ¶ 38.

Barilla identifies no new empirical data, no supplemental analysis, and no methodological revision to Dr. Cantor's prior opinions. She again asserts that Mr. Dennis's conjoint model is inconsistent with *Comcast*, that it lacks supply-side adjustments, and that it allegedly inflates the price premium. ECF 151 at 16:20–17:4. These are identical arguments the Court already considered and rejected when evaluating Barilla's opposition to certification, and they fail for the same reasons now. ECF 78 at 19:16–23.

The Court expressly held that Dr. Cantor's critiques "do not bear on whether Plaintiffs have satisfied the Rule 23 factors," because they do not undermine the *common* nature of Plaintiffs' evidence—either as to consumer deception or damages. ECF 78 at 6:10–13. The Court further found that her opinions "go to the weight of the evidence, not whether the Rule 23 requirements are met," and therefore declined to rely on them in granting certification. *Id*. at 19. Barilla cites no change in circumstances that would transform previously insufficient critiques into grounds for decertification. Moreover, Plaintiffs' certification motion highlighted numerous flaws in Dr. Cantor's analysis, including her reliance on selective document excerpts and her economically incorrect assumptions about supply-side conditions in a fixed-quantity consumer class action. ECF 65, at 7–8. The Court agreed, rejecting Barilla's supply-side objections as speculative and inappropriate at the Rule 23 stage. ECF 78 at 19:16–23. Dr. Cantor's recycled criticisms do not supply any new basis for disturbing the Court's certification order.

#### ***2. Dr. Andreas Groehn***

Barilla also relies on the critiques offered by Dr. Andreas Groehn, who was retained solely to attack Dr. Dennis's consumer perception survey and to implement an "understanding survey." ECF 154-10 ¶ 9. Dr. Groehn asserts that the survey questions are "leading," that respondents allegedly interpreted the "ITALY'S #1 BRAND OF PASTA" statement as a popularity slogan, and that the survey purportedly fails to replicate "real-world" conditions. Dr. Groehn's opinions ignore the methodological safeguards built into Dr. Dennis's survey, including randomized controls,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

statistically significant sampling, and presentation of the label exactly as it appears on Barilla's packaging. ECF 52-2 ¶¶ 33, 68, 99.

His critique that the survey tested the entire front-of-package representation (text plus Italian flag imagery) conflicts with the Court's own definition of the "Challenged Representation," which expressly includes the flag colors. ECF 78 at 2 n. 1. The Court rejected Barilla's attempt to isolate the text alone, making Dr. Groehn's position legally irrelevant. *Id*. Consistent with this, the Court has already held that disputes about survey phrasing, interpretation, or "marketplace realism" go to weight, not to whether Rule 23 is satisfied. *Id.* at 6, 12. Because Dr. Groehn's criticisms reprise those already considered and rejected, they provide no basis for decertification.

***3. Dr. Kristina Shampanier***

Barilla also cites the opinions of Dr. Kristina Shampanier, who critiques Dr. Dennis's conjoint model from a behavioral-economics perspective. Dr. Shampanier asserts that survey-based preferences may not fully reflect real-world purchasing behavior and that Dr. Dennis purportedly did not isolate the true incremental value of the Italian-origin claim. ECF 154-11 ¶ 83. But she offers *no alternative damages model*, no quantitative testing, and no empirical evidence, only theoretical speculation. *See generally id.* She does not challenge conjoint analysis as a methodology, but "simply speculates about the ramifications of Dennis's design choices, having conducted no empirical work to prove her speculations." ECF 154-8 ¶ 10. Dr. Shampanier's opinions duplicate Dr. Cantor's criticisms, and are likewise merit-based challenges to the *weight* of Plaintiffs' damages model, not the type of evidence that can defeat a finding that class treatment is proper under Rule 23. ECF 154-8 ¶ 9–12. Even her claim of a "zero price premium" is simply a repetition of Dr. Cantor's flawed opinion, as she "has not done any work to measure the price premium herself." *Id.* ¶ 10. Dr. Shampanier shares Dr. Cantor's "faulty view of supply side" and "faulty understanding of the but-for world construct where she would inappropriately allow many factors to change instead of just the allegedly harmful conduct." ECF 154-8 ¶ 10. Dr. Shampanier's speculation does nothing to change the Court's finding that experts' conjoint and damages models remains "consistent with Plaintiffs' liability theory" and capable of measuring classwide damages.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## IV. LEGAL STANDARD

Decertification is a "'drastic step,' not to be taken lightly," 3 Newberg on Class Actions § 7.37 (5th ed.). Courts in this District therefore hold that the moving party bears a "heavy burden" to show that subsequent developments warrant reconsideration of an initial certification decision. *See, e.g., In re Optical Disk Drive Antitrust Litig.*, 2017 WL 6448192, at *1 (N.D. Cal. Dec. 18, 2017) ("To prevail on its decertification motion, defendant[s] face[ ] a heavy burden because 'doubts regarding the propriety of class certification should be resolved in favor of certification.'") (quoting *Gonzalez v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)). Decertification or modification is appropriate only after "some change, unforeseen at the time of the class certification," that makes alteration necessary, *In re MyFord Touch Consumer Litig.*, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018), and the movant must identify "a subsequent development in the law or evidence to justify revisiting class certification on its merits," *Brown v. Wal-Mart Stores, Inc.*, 2018 WL 1993434, at *2 (C.D. Cal. Apr. 27, 2018). A motion to decertify does not permit re-argument of facts or law available at the time of certification, *In re Korean Ramen Antitrust Litig.*, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018) (citing *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016)), and Rule 23(c)(1)(C) allows decertification only where materially changed circumstances undermine compliance with Rule 23's requirements of numerosity, adequacy, typicality, and commonality, *In re MyFord Touch Consumer Litig.*, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018). Courts further recognize that eve-of-trial decertification may unfairly prejudice absent class members unable to protect their own interests. *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014).

## V. ARGUMENT

### A. Rule 23(a) Requirements Remain Satisfied

The Rule 23(a) requirements remain satisfied. Numerosity is undisputed, and Barilla does not meaningfully challenge adequacy or typicality. Its sole focus on commonality merely repeats arguments the Court has already rejected. ECF 61, ECF 78. The Court has already found that Rule 23(a) is met because the core question, whether the Challenged Representation is likely to deceive a reasonable consumer, is common and capable of classwide resolution. ECF 78 at 17:11–19:23.

Barilla's attempt to create individualized issues does not justify revisiting the Court's ruling. Defendant concurrently moved to strike the expert reports of Dr. Dennis (ECF 152) and Mr. Weir (ECF 153) in addition to its Motion for Summary Judgment (ECF 150) and its Motion for Decertification (ECF 151). Plaintiffs robustly oppose all four motions. But Barilla's argument that classwide adjudication fails without consumer perception surveys assume the exclusion of Dr. Dennis's survey even though the Court has already deemed it probative and admissible. ECF 78 at 12:7–18. Moreover, the challenged label, "ITALY'S #1 BRAND OF PASTA," appeared identically on all Products throughout the class period. ECF 52-1 at 10. Courts in this District hold that when every class member is exposed to the same allegedly misleading label, commonality can be satisfied even without survey evidence. *See, e.g.*, *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018); *Hadley*, 324 F. Supp. 3d at 1098; *Zakaria v. Gerber Products Co.*, 2016 WL 6662723, at *8 (C.D. Cal. Mar. 23, 2016); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015). The fact that admissible survey evidence demonstrating a common deceptive understanding exists here further supports class treatment.

Dr. Dennis's consumer perception survey simply confirms what the uniform label already conveys. His survey tested the full front-of-package Challenged Representation exactly as it appears on Barilla's products and found that most consumers understood it to mean that "The product's ingredients are sourced from Italy." ECF 52-2 ¶¶ 37, 69. Before fielding the survey, Dr. Dennis conducted qualitative testing through a focus group to ensure clarity and to confirm that the questions could accurately assess whether consumers perceived the representation to convey exclusive Italian sourcing. *Id.* ¶ 80. Using randomized controls, statistically significant sampling, and standard methodology, the survey showed that the Italian-origin message is communicated consistently across the Class. *Id.* ¶ 37. Barilla's speculation that some consumers may have interpreted the statement differently does not defeat commonality. ECF 151 at 14:6–8. The UCL, FAL, and CLRA apply an objective reasonable-consumer standard, not a "some consumers" standard. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320–21 (2009).

As numerous courts in this Circuit have held, the central question in mislabeling cases, whether the challenged representation would mislead a reasonable consumer, is inherently common.

*See Young v. Neurobrands*, 2020 WL 11762212, *4 (N.D. Cal. Oct. 15, 2020); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012), on reconsideration solely on typicality, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ("Because [the product] was packaged and sold uniformly across the nation, resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each class member's claims. . . . Defendants' argument that commonality is not satisfied because class members may have purchased [the product] for a variety of reasons is unpersuasive.").

**B. Predominance Satisfied Through Common Evidence of Liability and Causation**

Plaintiffs have already established that materiality is a common question, and the Court has confirmed as much. At certification, the Court rejected the contention that Plaintiffs were required to prove materiality at that stage, explaining that the proper inquiry is whether materiality is susceptible to common proof, and it is. ECF 78 at 14:24–26. That remains true. Materiality will be shown at trial through evidence applicable to the entire Class, including, for example, Dr. Dennis's 9.9% price premium calculation and class representative testimony stating that the Italian-origin messaging influenced their purchases. *See, e.g.*, ECF 154-6 ¶ 23; ECF 61-5 at 15:22–16:4, 18:17–18, 19:3–9. [redacted] ECF 54-6 Ex. 4, at BAI-CA_320–322.

A representation is material "if a reasonable consumer would attach importance to it or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citations and quotations omitted) (emphasis added). The record confirms materiality here, as well as the common nature of the evidence that will establish it at trial. Barilla invested in a massive, decades-long marketing campaign that includes 60,000 characteristically Italian media ads, as well as constructing and operating a museum and academy and maintaining a historical archive, all to promote the company, brand, and Products as authentically Italian. ECF 52-1 at 3–4. The scale and consistency of this campaign show Barilla's intent to tie the Products inextricably to their purported Italian origin to drive sales. Barilla even promotes Italian durum wheat or semolina as superior to the non-Italian ingredients actually used in its U.S. pastas. ECF 52-1 at 6.



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

[redacted] That alone is sufficient to demonstrate materiality. *See Fitzhenry-Russell*, 326 F.R.D. 592 at 614 ("Clearly, if a quarter of Canada Dry consumers were listing the ginger claim as a top five reason why they bought the product, the claim is material.") (emphasis added). Certainly, no company invests in a decades-long effort to portray its products as genuine Italian pastas through marketing and prominent product representations unless it knows, or has reason to know, that consumers value Italian origin. Mr. Weir further confirmed that [redacted] aligns with peer-reviewed literature showing that consumers pay a premium for country-of-origin claims and for pastas that are Italian-made. ECF 54-3, ¶¶ 14–16.

Additionally, the "California Supreme Court has recognized that statutory recognition of materiality is highly persuasive." *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020); *see also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016). Materiality is therefore bolstered by the categorical bans on false origin advertising enacted by California and Congress. *See* Cal. Civ. Code 1770(a)(4) (making "deceptive representations or designations of geographic origin in connection with goods" unlawful); Lanham Act, 15 U.S.C. § 1125(a) (making false designations of origin in packaging or advertising unlawful).

Barilla's central argument that Plaintiffs cannot establish deception or causation on a classwide basis misstates both the governing legal standard and the record. ECF 151 at 9:14–19. The liability question in this case is whether the uniform "ITALY'S #1 BRAND OF PASTA" representation is likely to deceive a reasonable consumer. This is an objective, classwide inquiry that does not turn on the subjective perceptions of individual purchasers. The question can be resolved with common evidence, including class representative testimony and Dr. Dennis's survey findings and analysis. *See Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, *13 (N.D. Cal.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Apr. 26, 2022) ("This Court's previous orders on class certification and summary judgment detail common evidence about Premier's advertising and marketing").

Barilla again repeats the same critique it raised at class certification—that Dr. Dennis's survey is purportedly invalid because it allegedly presented only a single interpretation of the Challenged Representation. ECF 61 at 6; ECF 151 at 5:22–6:2. The Court has already rejected this argument, finding that "Barilla's merits-based arguments do not undermine Plaintiffs' showing that common evidence can be used to demonstrate consumer deception." ECF 78 at 12:7–8. In any event, Dr. Dennis randomized controls and conducted qualitative testing through a focus group to ensure respondents understood the questions. ECF 52-2 ¶ 80. His survey therefore directly measures how reasonable consumers interpret the representation at issue.

Unable to meaningfully challenge Dr. Dennis's methodology, Barilla turns to its economist Dr. Cantor's unreliable materiality survey. Dr. Cantor is not a qualified survey expert, and her survey suffers from fundamental methodological flaws, as previously explained in Plaintiffs' motion to exclude. *See* ECF 66 ("Dr. Robin Cantor, PhD, repeatedly runs afoul of Fed. R. Evid. 702 by rendering unqualified, unreliable, unsupported, and irrelevant opinions."). Regardless, Barilla's reliance on its own consumer survey supports the critical point here—that materiality can and will be determined by a jury based on common evidence. Barilla also misrepresents the results: 12%, not 2.2%, of consumers in Dr. Cantor's survey identified "Made In Italy" as one of the "most important" reasons for purchasing pastas. ECF 61-1 ¶¶ 13c, 44–45.

As the Court has already recognized, proving materiality for an origin claim is hardly speculative, and courts routinely find such origin representations material without requiring individualized proof. *See, e.g.*, *Kumar*, 2016 WL 3844334, at *7 (false Italian origin claim material); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (Cal. 2011) (false US origin claim material). This is precisely the type of claim that consumers reasonably rely upon, and for which California law applies an objective reasonable-consumer standard. *See Hawkins v. Kroger Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("California consumer protection laws take an objective approach of the reasonable consumer[.]"). Barilla's suggestion that "some" consumers might have interpreted the



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

label differently is legally irrelevant; individualized reliance is not required, *id,* and all consumers were harmed in the same way by paying nearly 10% more based on Barilla's misleading claim.

Barilla's reliance on cases where materiality was deemed unprovable is misplaced, because those decisions involved evidentiary defects not present here. In *Kosta*, plaintiffs offered "no method of classwide proof," including no survey tied to the challenged label. *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015). The expert there did not review the labels, survey consumers, or test whether the attributes were relevant to consumers. *Id.* In contrast, Dr. Dennis used industry-standard methodologies to survey consumers with the full Challenged Representation as it appears on industry packaging, and also conducted a conjoint analysis to calculate the premium that consumers paid due to the Challenged Representation—a monetary reflection of the relevance of this claim to consumers. ECF 52-2 ¶ 68; ECF 154-6 ¶¶ 23–24.

*Townsend* is likewise distinguishable because there the expert offered no price-premium analysis or other evidence tied to consumer purchasing decisions and did not necessarily survey consumers of the product at issue, leading the court to conclude the report "does not provide insight into consumers' purchasing decisions." *Townsend v. Monster Bev. Corp*., 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018). Here, by contrast, Dr. Dennis both screened his survey to include purchasers of Barilla and other dry pasta products and conducted a conjoint analysis that quantified a 9.9% price premium attributable to the Challenged Representation, demonstrating materiality. ECF 52-2 ¶ 77; ECF 154-6 ¶¶ 23–24. And in *5-Hour Energy,* plaintiffs relied almost entirely on a marketing witness who could speak only to corporate intent, not consumer perception. *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, *7 (C.D. Cal. June 7, 2017). Here, Dr. Dennis tested the actual Barilla label at issue as it appears on the Products, among consumers who purchased Barilla or comparable pasta products. ECF 52-2 ¶¶ 35, 42–43. Finally, none of these cases involved a claim of false origin, which has been specifically and categorically prohibited by the California legislature. *See* Cal. Civ. Code 1770(a)(4) (categorizing "deceptive representations or designations of geographic origin in connection with goods" as unlawful); *see also Smith,* 2020 WL 5630051 at *6 ("The California Supreme Court has found that statutory recognition of materiality is highly persuasive.")

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Barilla's additional cases are likewise inapposite. *Cormier* involved typicality failures because class members were exposed to different representations, creating individualized materiality issues. *Cormier v. Carrier Corp.*, 2019 WL 1398903, at *14 (C.D. Cal. Mar. 25, 2019). *Philips* turned on widely varying disclosures, undermining any presumption of reliance. *Philips v. Ford Motor Co.*, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016). *Webb* similarly involved disparate disclosures that defeated commonality. *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011).

None of these cases resemble this one. Here, all class members encountered the same uniform Barilla label, presenting the same misrepresentation throughout the class period. The Court already recognized this uniformity when certifying the class, and Barilla's recycled attempts to manufacture individualized issues, without any new evidence, cannot disturb that finding.

### C. Barilla's Renewed Attacks on Weir's Damages Model Are Unsupported

The Court has already considered and rejected Barilla's attacks on Mr. Weir's damages model, finding that it "meets the legal requirements for class-based damages." ECF 78 at 11–12, 19:21–23. Barilla offers no new evidence, no methodological change, and no intervening authority to revisit that conclusion. Barilla again asserts that Dr. Dennis failed to isolate the deceptive component, and that that leads to Mr. Weir calculating overstated damages, but these are the same arguments raised at certification that failed. The Court already held that such critiques "do not bear on whether Plaintiffs have satisfied the Rule 23 factors" because they go only to weight, not admissibility. ECF 78 at 6:8–15. Nothing in Barilla's decertification motion alters that analysis.

Mr. Weir's damages calculation is based on accepted economic and survey methods. *See* ECF 54-3 ¶¶ 7–8, 49–68. Working with Dr. Dennis, he helped design (from an economic perspective) a conjoint survey that isolates the market value of the Challenged Representation and quantifies the resulting price premium, from which he calculated damages directly aligning with Plaintiffs' liability theory. *Id.* ¶ 71. Barilla repeatedly mischaracterizes the damages model as failing to isolate a "misreading," but the measured premium used in the damages calculation is tied to the specific deceptive message conveyed by the Challenged Representation. ECF 154-7 ¶ 80; ECF 154-6 ¶¶ 23–24; 52-2 ¶ 35. This approach squarely satisfies Comcast's requirement that a damages model be "consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Barilla's assertion that the conjoint analysis and damages calculation fails because it allegedly does not incorporate supply-side considerations is also incorrect. As Mr. Weir explained in detail, supply-side factors were expressly considered, and Dr. Dennis's conjoint analysis reflects the realities of the competitive and stable dry pasta market. ECF 54-3 ¶¶ 49–65. Barilla's suggestion that it would have manipulated supply to avoid a price premium is precisely the type of speculative, litigation-driven argument Mr. Weir identified as economically improper. *Id.* ¶ 52. The Court already rejected Barilla's supply-side critique as speculative and inappropriate at class certification. ECF 78 at 19:26–23.

Barilla's attempt to revive its supply-side arguments through inapposite case citations also fails, as those cases involved immature markets, atypical pricing structures, or methodological flaws not present here. For example, *NJOY* involved an unstable market that lacked a competitive equilibrium, and *Saavedra* involved the complex and opaque pricing of prescription drugs. *See In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *8-9 (C.D. Cal. Feb. 2, 2016); *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014). Here, by contrast, the boxed pasta market is "highly competitive and ordinary," governed by traditional supply and demand, and therefore suited to conjoint analysis. ECF 54-3 ¶ 58.

Courts across the Ninth Circuit and beyond have repeatedly upheld conjoint-based price-premium damages models in consumer deception cases. *See e.g. Banks v. R.C. Bigelow, Inc.,* 2025 WL 2671596 (C.D. Cal. Aug. 22, 2025); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018); *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017). "Conjoint analysis is a well-accepted technique that is frequently used to establish damages in CLRA actions." *Lytle v. Nutramax Labs, Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024).

Barilla's criticisms are instead classic merits arguments about how much weight the factfinder should give Plaintiffs' expert evidence; they are not grounds for decertification. Rule 23(c)(1)(C) requires a material change in circumstances to revisit a certification order, and Barilla offers none. Every aspect of Mr. Weir's methodology remains unchanged, and the Court has already held those methods sufficient.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### 1. *Plaintiffs' Damages Model Satisfies Comcast*

Barilla again argues that Plaintiffs' damages model fails under *Comcast* because it supposedly does not isolate the "value of Plaintiffs' specific misreading." ECF 151 at 10:1–2. This repeats an argument the Court has already rejected. As Mr. Weir's report shows, and as the Court previously found, he isolated the economic value attributable to the Challenged Representation, and Barilla identifies no new evidence to dispute that. *See* ECF 54-3 ¶¶ 8, 24–25. In certifying the class, the Court held that Mr. Weir's model "meets the legal requirements for class-based damages." ECF 78 at 19:21–23.

Barilla then devotes pages to cases where courts faulted surveys for failing to isolate the precise deceptive element: *Flodin*, *McMorrow*, *ConAgra*, *Fagan*, *Moore*, *5-Hour Energy*, and *Hughes*. ECF 151 at 2:4–11, 18:4–19:5. But those cases underscore why Plaintiffs' evidence *does* satisfy *Comcast*. Unlike the surveys in those decisions, Dr. Dennis's and Mr. Weir's analyses isolate the exact deceptive message at issue: that Barilla pasta is made from ingredients sourced from Italy. ECF 52-2 ¶ 35, 69. Plaintiffs' deception theory rests on a unified visual-and-textual claim—the phrase "ITALY'S #1 BRAND OF PASTA" presented between the artistic representation of Italian flags—which, as the Court has already recognized, must be evaluated as a single, integrated representation. ECF 78 at 2 n.1. Because the misrepresentation is communicated through the combined wording and imagery, testing that full representation, exactly as consumers encounter it, properly isolates the alleged deception. ECF 52-2 ¶¶ 8, 24, 43–48

Barilla's cited cases confirm this. In *McMorrow*, certification was initially denied because the survey tested a combined claim ("nutritious steady energy") instead of isolating the term "nutritious," which was the *only* challenged term. *McMorrow v. Mondelēz Int'l., Inc.*, 2020 WL 1157191, at *6–9 (S.D. Cal. Mar. 9, 2020). Certification was granted once the survey was corrected to isolate that specific deceptive element. *McMorrow v. Mondelēz Int'l., Inc.*, 2021 WL 859137, at *8 (S.D. Cal. Mar. 8, 2021). Here, by contrast, Plaintiffs *are* testing the specific deceptive element: the Challenge Representation, including flag imagery. There is nothing extraneous to isolate out.

The same distinction applies to *Moore*. There, "extraneous words" such as "argan oil" and "lip butter" confounded the survey because those unchallenged features independently influenced

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

consumer perception, making it impossible to determine whether the "100% natural" claim alone was driving decisions. *Moore*, 713 F. Supp. 660, 674. Here, no such extraneous features exist. All components of Barilla's challenged label contribute to the *same* deceptive message, and thus Dr. Dennis's survey accurately isolates the feature that Plaintiffs challenge.

Barilla's reliance on *Flodin* and *Fagan* is likewise misplaced. *Flodin* involved a mismatch between the liability theory (insufficient avocado to justify the marketing) and the survey question (whether *any* avocado was present). *Flodin v. Cent. Garden & Pet Co.*, 2024 WL 4565340, at *8-10 (N.D. Cal. Oct. 23, 2024). In *Fagan*, the survey failed because it did not distinguish between consumers who believed *all ingredients* were natural versus whether *the sun-blocking ingredients* were natural, the key distinction in that case. *Fagan v. Neutrogena Corp.*, 2017 WL 11418358, at *2–3 (C.D. Cal. Oct. 24, 2017). By contrast, Plaintiffs' liability theory here is binary and directly measured: whether reasonable consumers believe Barilla's pasta is made from Italian-sourced ingredients. ECF 52-2 ¶ 69. Dr. Dennis's survey captures precisely that distinction, and the conjoint analysis measures the economic value of that belief. Similarly, the Eastern District of New York found in *Hughes* that the word "better" in the "better vitamin C" claim had too many different meanings to have been isolated and measured in the consumer survey in that case. *Hughes v. Ester C Co.*, 317 F.R.D. 333, 355–56 (E.D.N.Y. 2016). In contrast, the phrase "The product's ingredients are sourced from Italy" has a straight-forward meaning, and Dr. Dennis engaged in qualitative testing to ensure that the question communicated what it was meant to communicate. ECF 52-2 ¶ 69, 74–80.

*ConAgra* is methodologically distinguishable from this case. The core claim there was that consumers saw the "100% Natural" label and were misled into believing the product had no GMO ingredients, when in fact it did. *In re ConAgra Foods*, 302 F.R.D. 537, 579 (C.D. Cal. 2014). Mr. Weir set out to calculate a price premium associated with the challenged phrase "100% Natural." *Id.* at 578. The trouble was that, because there are so many meanings to the phrase "100% Natural," it was unclear whether consumers who valued the product due to the "100% Natural" label (as would be calculated by Weir's price premium analysis) valued it because of a Non-GMO interpretation, or one of a myriad other interpretations. *Id.* at 578–579. In contrast, Dr. Dennis's consumer perception

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

survey demonstrates that a majority of consumer interpreted "ITALY'S #1 BRAND OF PASTA" to mean that the ingredients were sourced solely from Italy (in line with Plaintiffs' theory of liability). ECF 52-2 ¶ 37. Therefore, the 9.9% price premium and classwide damage calculations based on it are in accordance with Plaintiffs' theory of the case that the Challenged Representation is a deceptive Italian origin claim. ECF 154-6 ¶ 23; ECF 154-7 ¶ 80. Furthermore, *In re ConAgra Foods, Inc.*, is an extreme outlier that conflicts with the Reference Manual on Scientific Evidence and has not been followed by other courts, including those in this District. *See* ECF No. 154-8, Dennis Reply Decl. ¶ 14(v) (citing Reference Manual); *see, e.g., Krommenhock*, 334 F.R.D. at 575; *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017). Dr. Dennis tested the exact messaging that Plaintiffs challenge, using the real-world label and giving respondents the opportunity to view all sides of the package, among purchasers of Barilla products. ECF 52-2 ¶¶ 35, 42–43, 68. And consistent with the liability theory certified by the Court, he then measured the price increase attributable to the "ITALY'S #1 BRAND OF PASTA" representation as it appears on the packaging. ECF 154-6 ¶¶ 23–24. *Comcast* requires only that "any model supporting a plaintiff's damages case must be consistent with its liability case," not that it "prove damages with mathematical precision." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931)). Dr. Dennis's 9.9% price premium estimate meets that standard easily. ECF 154-6 ¶¶ 7–8, 12. The Court already found that Mr. Weir's damages model based on this price-premium "meets the legal requirements for class-based damages," and Barilla offers no new facts to disturb that conclusion. ECF 78 at 19:21–23.

Barilla's disagreement with conjoint methodology goes to weight, not admissibility or class certification, a point courts repeatedly affirm. *See Hadley*, 324 F. Supp. 3d at 1107 ("the Ninth Circuit has stated that as a general matter, [c]hallenges to survey methodology go to the weight given the survey, not its admissibility."); *Smith*, 2020 WL 5630051, at *9 ("[t]he fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium"); *see also Cadena*, 2025 WL 3483436, at *20 ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert,

critique of conclusions, and the like go to the weight of the survey rather than admissibility."). Conjoint surveys are specifically designed to isolate the economic value of misrepresentations, and "conjoint analysis is a generally accepted method for valuing the individual characteristics of a product." *Hadley*, 324 F. Supp 3d. at 1107. Thus, Plaintiffs' damages model not only satisfies *Comcast*, but it fits squarely within the well-established framework courts endorse for mislabeling class actions.

***2. Supply Side Factors Sufficiently Considered***

Barilla's "supply-side" criticism is no more persuasive now than at class certification, when the Court rejected it. ECF 78 at 19:18–23. As the Court has recognized, the proper focus is consumer demand and the price premium caused by the misrepresentation, not Barilla's costs or hypothetical supply scenarios. ECF 78 at 14:15–26. The relevant measure is the premium consumers paid because of the deceptive claim, not what it cost Barilla to make pasta. ECF 100-2 ¶ 10. Barilla's recycled supply-side argument therefore does not fit the governing legal standard or the record.

Barilla's claim that Mr. Weir failed to consider supply-side factors is also refuted by the detailed discussion in his expert reports addressing how he and Dr. Dennis incorporated those considerations into the conjoint design. *See* ECF 54-3 ¶¶ 49–65. Mr. Weir explained that because the damages model is tied to actual retail transactions in an established packaged food market, speculative supply adjustments are neither economically sound nor relevant to restitution. *Id*. As he observed, "It is also an economic perversion for a defendant engaged in litigation (with an obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough so as to meet demand, and therefore damages should be set at zero or something less than actual economic damages. If that were permitted, any defendant could simply postulate its way out of economic damages." *Id*. ¶ 52. Barilla's suggestion that it would have deliberately reduced supply to maintain its price falls within the scenario Mr. Weir identified as economically improper. ECF 151 at 16:20–17:10.

Consistent with *Hadley*, *MyFord*, *Fitzhenry-Russell*, and *Lenovo*, Plaintiffs' experts properly controlled for supply-side factors. *See Hadley v. Kellogg Sales Co.,* 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018) ("conjoint analyses can adequately account for supply-side factors—and can



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

therefore be utilized to estimate price premia without running afoul of Comcast—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period."); *In re MyFord Touch Consumer Litig*., 291 F. Supp. 3d 936, 971 (N.D. Cal. 2018) ("[T]hat a fixed number of vehicles were in fact sold . . . merits assuming that the size of the class is the same in both the hypothetical and real worlds and assessing damages on that basis.").

Plaintiffs' case is also comparable to *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) (declining to exclude Dr. Dennis's survey and damages model, which were very similar to the ones in this case) and to *In re Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) ("Plaintiffs' survey expert "consulted pricing of the Lenovo models at issue, as well as comparable PC laptops" to ensure that the results would "reflect the market," and addressed "the supply side" of the market, determining that it was not at issue "because all sales of the laptop models at issue have occurred in the past.""). Plaintiffs' experts similarly used "data on actual sales of the Products in the real-world marketplace during the relevant time period," which "'bakes in' the impact of myriad supply factors as they existed throughout the class period," and they used quantities that reflect the actual quantities sold during the class period. ECF 100-2 ¶¶ 22-22, 27-28, 38, 40 (Mr. Weir further noting Dr. Cantor does not dispute whether the prices used in Dr. Dennis's conjoint survey accurately reflect the market, or that the prices reflect the historic supply conditions); ECF 100-1 ¶¶ 43-45. Indeed, supply conditions in the real and but-for worlds, wherein Products sold with and without the Challenged Representation, would not be meaningfully different because it does not cost more to not use the Challenged Representation on the Products' labels. ECF 100-2 ¶¶ 37, 47-48 (Mr. Weir further noting that Dr. Cantor concedes as much, and that Dr. Cantor merely speculates about any change in supply). Thus, it is reasonable to use real-world pricing, which reflects supply-side factors, in the but-for world without the Challenged Representation. *Id*. ¶ 49.

Barilla's reliance on cases such as *Volkswagen, Passman, In re NJOY, Zakaria*, and *Saavedra* does not advance its argument. *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

(S.D.N.Y. May 2, 2023) is inapposite, as Pelotons represent a high-cost, luxury item whose production is more variable based on the price consumers are willing to pay; in contrast, pasta is a lower-cost item in an "ordinary market" for which Dr. Dennis's methods of accounting for supply-side factors were appropriate. Furthermore, *Passman* is outside this jurisdiction and, because it was later determined the issuing judge should have recused himself due to a significant conflict of interest, the decision has been vacated in its entirety. *See Passman v. Peloton Interactive, Inc.*, 2025 WL 1284718 (S.D.N.Y. May 2, 2025) (vacating the case).

*Volkswagen* was an unusual case involving an idiosyncratic damages model based on only the transactions of four individuals rather than the classwide market evidence typically relied upon in consumer cases. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020). The limited, individualized scope of the model drove the outcome, not any principle applicable here. *Id*. *In re NJOY* demonstrates why Plaintiffs' model is appropriate. The court there rejected a conjoint analysis because the e-cigarette market was "unstable" and "immature," and therefore lacked the "stable market where the price of a product is set by a competitive equilibrium" required for such an analysis. *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *8 (C.D. Cal. Feb. 2, 2016). Here, the boxed pasta market is stable, mature, and price competitive. As Mr. Weir noted, Barilla's products operate within an "ordinary," highly competitive market where consumer demand affects price. ECF 54-3 ¶ 58. This is precisely the type of market in which conjoint analysis is reliable.

*Saavedra* is even further afield. The court characterized the prescription drug market as one in which prices are determined by a "complex array of contracts between such entities as health plan sponsors, third-party payers, pharmacy benefit managers, retail pharmacy chains, and the drug manufacturer." *Saavedra*, 2014 WL 7338930, at *5. In the prescription drug market, price cannot even serve as a proxy for value. *Id*. In contrast, the market for dry supermarket goods is as "ordinary" as it gets. As Mr. Weir explained, Barilla operates in a highly competitive, ordinary market governed by typical supply-and-demand dynamics, where consumer demand directly influences price. ECF 54-3 ¶ 58. *Zakaria* rejected a damages analysis not because conjoint analysis is improper, but because the specific model there was "not sufficiently tethered to actual market conditions,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

including pricing and premiums," and because it "did not consider the actual prices paid by consumers for the product" or competitor products. *Zakaria v. Gerber Products Co*., 2017 U.S. WL 9512587, at *20 (C.D. Cal. Aug. 9, 2017). Here, Dr. Dennis and Mr. Weir did take such factors into account; their analyses used real-world pricing data, competitor information, and supply-side considerations. ECF 54-3 ¶¶ 49–65.

**D. Barilla's Renewed Attacks on Dr. Dennis's Survey Continue to be Meritless**

Barilla seeks to exclude Dr. Dennis's consumer perception survey, recycling the same arguments it made at class certification. *See* ECF 78 at 19:16–23. The Court has already rejected these challenges, found no methodological flaw that undermines Rule 23, and expressly declined to rely on Barilla's survey criticisms in certifying the class. *Id*. Barilla identifies no new facts, no new expert analysis, and no intervening law that would justify revisiting that ruling.

Dr. Dennis's methodology easily meets accepted standards in survey research and marketing science. His survey used random sampling, control stimuli, statistically significant testing, and standard consumer-perception protocols. ECF 52-2 ¶ 33–39, 48–50. Far from "leading," he provided a "don't know/not sure" option to avoid bias. ECF 52-2 ¶¶ 59–68. Barilla repeatedly mischaracterizes the survey as "providing a single interpretation of the Challenged Representation," but the Court already rejected this argument, noting that these merits-based critiques do not undermine the ability of common evidence to prove deception. ECF 78 at 12:7–19.

Barilla's argument that Dr. Dennis should have isolated the text from the Italian flag colors is directly foreclosed by the Court's certification order, which held that the "Challenged Representation" includes the phrase "ITALY'S #1 BRAND OF PASTA" *and* the surrounding Italian flag imagery. ECF 78 at 2 n.1. Dr. Dennis tested the representation exactly as consumers encounter it on Barilla's packaging. *Id*. ¶ 35. The uniformity of this labeling is precisely why the liability question is common.

Barilla's criticism that the survey "does not replicate real-world conditions" is likewise unfounded. Survey respondents could view each panel of the package and instructed respondents to evaluate the packaging as presented, a method routinely accepted by courts in consumer deception cases. ECF 52-2 ¶¶ 44 n 10 (citing best practice standards in making versions of the label available),

65–68. Barilla's complaint that the survey population included people who would not purchase Barilla pasta is also wrong. Dr. Dennis used sampling criteria ensuring that respondents were purchasers of Barilla or other dry pasta products, including a screening protocol involving a series of exactly the population relevant to assessing reasonable consumer perception. *Id*. ¶¶ 45–50.

The survey results themselves were clear and statistically robust: *57%* of respondents interpreted the Challenged Representation to mean the pasta was made in Italy from ingredients solely sourced from Italy. *Id*. ¶ 37. This more than satisfies the evidentiary standard for class certification and provides powerful, representative evidence of deception and materiality. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022) (a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution.). Barilla's speculation that some consumers may have reached a different interpretation is irrelevant because deception and materiality are assessed under the objective reasonable consumer standard, not subjective individual perceptions. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011).

Barilla's renewed attacks improperly attempt to relitigate a *Daubert* motion under the guise of decertification. But at this stage, survey criticisms go to weight, not admissibility. "As long as [the survey] is conducted according to accepted principles and is relevant," any "technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Montera v. Premier Nutrition Corp*., 2022 WL 1225031, *4 (N.D. Cal. Apr. 26, 2022) (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1036 (9th Cir. 2010)).

### E. Superiority and Manageability Remain Intact

Barilla's argument that the class has somehow become "unmanageable" is not only legally incorrect but fundamentally inconsistent with the record. Barilla offers no new facts or evidence and simply repackages the same manageability arguments the Court already rejected at certification. ECF 78; *Brown v. Wal-Mart Stores, Inc.*, 2018 WL 1993434, at *2 (C.D. Cal. Apr. 27, 2018) (rejecting a motion for class decertification that "simply rehashes arguments already addressed by this Court and affirmed on appeal."). Barilla claims individualized inquiries will overwhelm the



Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

case. But Barilla never identifies a *single* individualized question that did not already exist—and was already resolved—in the certification order. The core issues remain the same: every class member purchased Barilla pasta with the same front-of-package misrepresentation, and the economic impact of that misrepresentation is measured using the same classwide conjoint model the Court found consistent with Plaintiffs' liability theory. ECF 78 at 12:16–18, 19:20–23. Barilla's motion fails to point to any new individualized issue that would impede adjudication.

Barilla's argument that superiority fails because of "individualized consumer understanding" ignores the settled law that deception and materiality are evaluated under the reasonable consumer standard, not a consumer-by-consumer inquiry. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (emphasis added). "The advertising need not be actually false, as long as it is misleading or has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quotations omitted). "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted; emphasis added). Barilla's insistence on probing subjective motivations (who bought pasta for what reason, who read what words, who cared about Italian origin) is not only legally irrelevant, but also precisely the argument the Court rejected when it held that the misrepresentation presents a common, objective issue susceptible to classwide proof. ECF 78 at 14:24–26; *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("the injury under the UCL, FAL, and CLRA is established by an objective test.").

Barilla also asserts that the class would be unmanageable because of "individualized damages determinations." This is flatly contradicted by the record. The Court has already held that Plaintiffs' price-premium damages model satisfies *Comcast* and can measure restitution on a classwide basis. ECF 78 at 19:21–23. Standard claims-administration practices can be used to distribute damages based on uniform per-unit overcharges. There is no individualized damages inquiry to manage. Barilla incorrectly suggests that Rule 23 requires Plaintiffs to demonstrate "administrative feasibility" or some heightened showing of individualized claim verification. The Ninth Circuit has repeatedly rejected any "administrative feasibility" requirement. *Briseno v.*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (rejecting the defendant's argument that "there would be no administratively feasible way to identify members of the proposed classes because consumers would not be able to reliably identify themselves as class members" in false advertising case). And nothing in Rule 23 demands that Plaintiffs prove the mechanics of claims processing at certification or decertification. *Id.* at 1131–32. Established claims procedures are routinely used to allocate small-value consumer restitution. *Id.* at 1129–30. This case is no different.

Barilla's argument that individual lawsuits would be preferable is equally unsupported. The class mechanism remains not just adequate, but the only realistic method for resolving thousands of consumer claims involving modest price premiums. While consumers in the aggregate have been duped out of approximately [redacted] based on Barilla's false origin scheme, no rational consumer would pursue an individual action for just their damages, and Barilla knows it. That is precisely why the class action mechanism exists, and superiority cannot be seriously challenged here. *See Vizcarra v. Unilever United States Inc.*, 2023 WL 2364736, at *18 (N.D. Cal. Feb. 24, k2023) ("a class action is superior to other available methods of litigating the claims of the proposed class members because . . . the amounts that each proposed class member can recover are . . . small relative to the high costs of individual litigation . . . .").

## VI. CONCLUSION

For all these reasons, Plaintiffs request that the Court deny Defendant's Motion to Decertify the Class.

Date: December 10, 2025

**CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
Ryan J. Clarkson
Bahar Sodaify
Cassandra Rasmussen
Jiaming Zheng

*Attorneys for Plaintiffs and the Certified Class*