**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Cassandra Rasmussen (*pro hac vice*)
*crasmussen@clarksonlawfirm.com*
Jiaming Zheng (SBN 363184)
*jzheng@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs and the Certified Class*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>BARILLA AMERICA, INC.,<br><br>    Defendant. | Case No.: 4:22-cv-03460-DMR<br><br>Complaint Filed: June 11, 2022<br>FAC Filed: July 20, 2022<br><br>*Assigned for all purposes to Hon. Donna M. Ryu, United States Magistrate Judge*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR**<br><br>Hearing Information:<br>Date:   March 26, 2026<br>Time:   1:30 p.m.<br>Ctrm:   4, 3rd Fl |

# REDACTED—PUBLICLY FILED

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

**TABLE OF CONTENTS**

**Page No.**

I.   STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

II.  INTRODUCTION ...........................................................................................................2

III. FACTS ............................................................................................................................3

    A.   Mr. Weir's Background and Qualifications.................................................................3

    B.   Mr. Weir's Methodology and Results.........................................................................4

        1.   Economic Framework and Product Differentiation.........................................4

        2.   Evaluation of Dr. Dennis's Conjoint Survey from an Economic Perspective.4

        3.   Compilation and Review of Retail Sales Data................................................5

        4.   Calculation of Price Premium Damages .........................................................5

IV.  LEGAL STANDARD........................................................................................................6

V.   ARGUMENT .....................................................................................................................6

    A.   Mr. Weir Is Qualified, His Opinions Relevant, and Fit Plaintiffs' Theory ................6

    B.   Mr. Weir's Conjoint-Related Opinions Provide Helpful Economic Analysis...........11

    C.   The Conjoint Analysis Is Reliable Under Rule 702.....................................................12

    D.   Mr. Weir's Damages Calculations Provide Specialized Assistance To The Jury .....15

    E.   Barilla's Criticisms Go To Weight, Not Admissibility ...............................................17

VI.  CONCLUSION...................................................................................................................18

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page No.**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ...............................................................................6, 14, 17, 18

*Allen v. ConAgra Foods, Inc.*,
   331 F.R.D. 641 (N.D. Cal. 2019)................................................................................3, 12, 14

*Banks v. R.C. Bigelow, Inc.*,
   No. 20-cv-06208 DDP (RAOx),
   2023 U.S. WL 4932894 (C.D. Cal. July 31, 2023)........................................................8, 9, 14

*BillFloat Inc. v. Collins Cash Inc.*,
   105 F.4th 1269 (9th Cir. 2024)...............................................................................................17

*Broomfield v. Craft Brew All., Inc.*,
   No. 17-CV-01027-BLF,
   2018 WL 4952519 (N.D. Cal. Sep. 25, 2018) ......................................................................14

*Cadena v. Am. Honda Motor Co., Inc.*,
   No. CV 18-04007-MWF (MAAX),
   2025 WL 3483436 (C.D. Cal. Dec. 3, 2025) ...................................................................8, 9, 17

*Charles v. Sanchez*,
   No. EP-13-CV-00193-DCG,
   2015 WL 808417 (W.D. Tex. Feb. 24, 2015)........................................................................17

*Cisco Sys. Inc. v. Arista Networks, Inc.*,
   No. 14-CV-05344-BLF,
   2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) ....................................................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...............................................................................................1, 6, 9, 17

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) .............................................................................................6, 14

*Engilis v. Monsanto Co.*,
   151 F.4th 1040 (9th Cir. 2025) ..........................................................................................6, 17

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ..............................................................................................6, 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018).............................................................................................13

*Guillory v. Domtar Indus.*,
   95 F.3d 1320 (5th Cir.1996) ...................................................................................................16

*Gunaratna v. Dennis Gross Cosmetology LLC*,
   No. CV202311MWFGJSX,
   2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)........................................................................14

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018 ...............................................................3, 13

*Hemmings v. Tidyman's Inc.*,
285 F.3d 1174 (9th Cir. 2002) ................................................................................17

*Huawei Techs. Co. v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................11

*In re Enron Corp. Sec., Derivative & "Enrisa" Litigation*,
No. CIV.A. G-02-0299,
2007 WL 5023541 (S.D. Tex. Feb. 1, 2007) .........................................................17

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ...................................................................13

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018) ...................................................................18

*In re Related Asbestos Cases*,
543 F. Supp. 1142 (N.D. Cal. 1982) .........................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
500 F. Supp. 3d 940 (N.D. Cal. 2020),
*aff'd sub nom. Schell v. Volkswagen AG*,
No. 20-17480,
2022 WL 187841 (9th Cir. Jan. 20, 2022) .............................................................14

*In re Toy Asbestos*,
No. 19-CV-00325-HSG,
2021 WL 1111226 (N.D. Cal. Mar. 23, 2021)...........................................................9

*Johnson v. Nissan N. Am., Inc.*,
No. 3:17-cv-00517-WHO,
2022 WL 2869528 (N.D. Cal. July 21, 2022)......................................................9, 14

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)............................................................3, 12, 13, 14

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................................6

*Lytle v. Nutramax Lab'ys, Inc.*,
No. ED CV 19-0835 FMO (SPX),
2022 WL 1600047 (C.D. Cal. May 6, 2022) .........................................................13

*Martinelli v. Johnson & Johnson*,
No. 2: 15-cv-01733-MCE-DB,
2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ..............................................3, 12, 14

*McMorrow v. Mondelēz Int'l, Inc.*,
No. 17-CV-2327-BAS-JLB,
2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ...........................................................14

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
  713 F. Supp. 3d 660 (N.D. Cal. 2024) ..................................................9, 11, 12, 15, 16

*Moussouris v. Microsoft Corp.*,
  311 F. Supp. 3d 1223 (W.D. Wash. 2018)..............................................................10

*Novoa v. GEO Grp., Inc.*,
  No. EDCV 17-2514 JGB (SHKx),
  2020 WL 8514832 (C.D. Cal. Dec. 18, 2020) ..........................................................9

*Pettit v. Procter & Gamble Co.*,
  No. 15-CV-02150-RS,
  2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ...........................................................13

*Powell v. Anheuser-Busch Inc.*,
  No. CV 09-729-JFW (VBKx),
  2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) .......................................................10

*Prescod v. Celsius Holdings, Inc.*,
  No. 19STCV09321,
  2021 WL 5234499 (Cal. Super. Ct., Aug. 2, 2021) ................................................8, 9

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ...................................................................................18

*Scott Lumber Co. v. United States*,
  390 F.2d 388 (9th Cir. 1968) ...................................................................................16

*Sonneveldt v. Mazda Motor of Am.*, Inc.,
  No. 819CV01298JLSKES,
  2022 WL 17357780 (C.D. Cal. Oct. 21, 2022).........................................................14

*Sullivan v. Costco Wholesale Corp.*,
  No. 117CV00959LJOEPG,
  2018 WL 4057447 (E.D. Cal. Aug. 23, 2018).............................................................7

*Thomas v. Newton Int'l Enters.*,
  42 F.3d 1266 (9th Cir. 1994) .....................................................................................7

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) .................................................................................15

*United States v. Gadson*,
  763 F.3d 1189 (9th Cir. 2014) .................................................................................15

*United States v. Ruvalcaba-Garcia*,
  923 F.3d 1183 (9th Cir. 2019) ...................................................................................6

*Waine-Golston v. Time Warner Ent.-Adv./New House P'ship*,
  No. 11CV1057-GPB RBB,
  2013 WL 1285535 (S.D. Cal. Mar. 27, 2013) ..........................................................16

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA,
  2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ...........................................................15

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Wendell v. GlaxoSmithKline LLC,*
    858 F.3d 1227 (9th Cir. 2017) ...................................................................................................6, 18

**<u>Rules</u>**

16 C.F.R. § 323. ...........................................................................................................................9

Fed. R. Civ. P. 26 ........................................................................................................................17

Fed. R. Evid. 702 ................................................................................................................ *passim*

**TABLE OF REFERENCES**

| Court Docket No. | Document | Declarant/Deponent/Expert |
|---|---|---|
| ECF No. 1 | Class Action Complaint | Plaintiffs Matthew Sinatro and Jessica Prost ("Plaintiffs") |
| ECF No. 11 | First Amended Class Action Complaint | Plaintiffs |
| ECF No. 11-8 | Exhibit 8 to First Amended Complaint – Second Pre-Suit Demand Letter (dated June 11, 2022) | Plaintiffs |
| ECF No. 52-1 | Memorandum of Points and Authorities ISO Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel | Plaintiffs |
| ECF No. 52-2 | Declaration and Expert Report of J. Michael Dennis, Ph.D. (dated August 16, 2023) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 52-3 | Declaration and Expert Report of Colin B. Weir (dated August 16, 2023) | Plaintiffs' Economics Expert |
| ECF No. 52-15 | Exhibit 5 to Plaintiffs' Motion for Class Certification – Defendant's First Supplemental Objections and Responses to Plaintiffs' Requests for Admission, Set One | Defendant Barilla America, Inc. ("Defendant" or "Barilla") |
| ECF No. 78 | Order Granting Plaintiffs' Motion to Certify Class and Denying Plaintiffs' Motion to Exclude as Moot | Chief Magistrate Judge Donna M. Ryu |
| ECF No. 153 | Defendant Barilla America, Inc.'s Motion to Strike the Opinions of Colin Weir | Defendant |
| ECF No. 154-6 | Exhibit 6 – Declaration and Expert Report of J. Michael Dennis, Ph.D. (dated February 7, 2025) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 154-7 | Exhibit 7 – Declaration of Colin B. Weir (dated February 7, 2025) | Plaintiffs' Economics Expert |

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Case No. 4:22-cv-03460-DMR                    -vi-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

| ECF No. 154-9 | Exhibit 9 – Rebuttal Expert Report of Robin Cantor, Ph.D. | Defendant's Expert |
|---|---|---|
| ECF No. 157-8 | Exhibit 8 – Plaintiffs' Experts Reply Declarations | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert Dr. Michael Dennis, and Economics Expert Colin Weir |
| ECF No. 154-13 | Exhibit 13 – Deposition Transcript of J. Michael Dennis, Ph.D. (April 29, 2025) | Plaintiffs' Consumer Perception Survey and Conjoint Analysis Expert |
| ECF No. 154-19 | Exhibit 19 – First Deposition Transcript of Colin B. Weir (April 30, 2025) | Plaintiffs' Economics Expert |
| ECF No. 154-20 | Exhibit 20 – Second Deposition Transcript of Colin B. Weir (September 22, 2025) | Plaintiffs' Economics Expert |
| Sodaify Decl. | Omnibus Declaration of Bahar Sodaify in Support of Plaintiffs' Oppositions to Defendant's Motion for Summary Judgment, Motion to Decertify the Class, Motion to Strike the Opinions of Colin B. Weir, and Motion to Strike the Opinions of Dr. J. Michael Dennis | Plaintiffs' Counsel |
| Sodaify Decl., Ex. 1 | Defendant's Third Supplemental Objections and Responses to Plaintiffs' Interrogatories, Set 1 | Defendant |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether expert Colin Weir is qualified under Rule 702 to offer opinions on product differentiation, damages, and classwide restitution for Barilla's false Italian Origin Representation, given his training and extensive experience as an economist and damages expert.

2.    Whether Mr. Weir's opinions sufficiently "fit" Plaintiffs' theory of liability, where Plaintiffs have consistently alleged that the Italian Origin Representation misleads consumers into believing the Products are authentic Italian pasta made in Italy from Italian-sourced ingredients, and where Mr. Weir expressly grounded his analysis in that theory.

3.    Whether Mr. Weir may properly rely on Dr. Michael Dennis's conjoint survey under Rules 702 and 703, where Dr. Dennis, as the survey expert, designed and implemented the conjoint, and Mr. Weir evaluated its economic suitability, replicated its results, and used the measured premium as an input into his damages model.

4.    Whether Mr. Weir's conjoint-based damages framework is sufficiently reliable under Rule 702 and *Daubert*, including his use of accepted economic principles, real-world prices, fixed historical quantities, and Barilla's own sales and packaging data to isolate and quantify the price premium attributable to the Italian Origin Representation on a classwide basis.

5.    Whether Mr. Weir's damages calculations will assist the trier of fact, where he synthesized tens of thousands of transaction records, identified the appropriate sales base, applied the conjoint-derived premium, and produced a coherent, classwide damages estimate that cannot reasonably be characterized as "simple arithmetic."

6.    Whether Barilla's criticisms of Mr. Weir's opinions—including its attacks on his discussion of consumer literature, his product-differentiation analysis, his treatment of supply-side factors, and his use of IRI/Circana data and "release dates"—raise, at most, issues of weight rather than admissibility, to be addressed through cross-examination and competing expert testimony rather than exclusion.

## II.    INTRODUCTION

Barilla's motion rests on a mischaracterization of Mr. Weir's work and a disregard for the standards governing expert testimony under Rule 702. Mr. Weir is a highly qualified economist and statistician whose opinions have been repeatedly accepted in consumer-protection matters, including by this Court. His assignment here was straightforward: to determine whether damages resulting from Barilla's misleading "ITALY'S #1 BRAND OF PASTA" representation can be measured on a classwide basis using common evidence and, if so, to provide a reliable economic framework for calculating those damages. He did exactly that.

Mr. Weir's opinions are grounded in accepted economic principles, peer-reviewed literature, market data, and a conjoint survey specifically designed to isolate the price premium attributable to the challenged representation. He evaluated the survey's economic suitability, confirmed the consistency of its results, replicated its findings, and applied the resulting premium to Barilla's sales data to calculate total classwide damages. This is a well-established and judicially endorsed methodology in false advertising and labeling cases.

Barilla's challenges do not undermine admissibility. Its criticism of Mr. Weir's brief discussion of consumer literature invents a role he never claimed to serve. Mr. Weir does not purport to offer a materiality opinion and does not present himself as a consumer psychologist. His economic analysis appropriately relies on the conjoint survey conducted by survey expert Dr. Michael Dennis and applies economic tools that fall squarely within his expertise. Federal Rules of Evidence Rule 703 permits economists to rely on survey data generated by survey experts, and nothing in Barilla's motion suggests any departure from that rule. Mr. Weir's work also extends far beyond "simple arithmetic." He evaluated and verified tens of thousands of input data, assessed the economic rigor of the conjoint model, considered supply-side factors, and applied the measured premium across extensive sales records. This is precisely the type of expert analysis that assists the trier of fact under Rule 702.

Barilla's remaining arguments, including its objections to literature, its complaints about Dr. Dennis's survey design, and its assertions of arithmetic errors, all concern issues of weight rather

Case No. 4:22-cv-03460-DMR                    -2-
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

than admissibility. Courts routinely reject identical attacks on conjoint-based damages models, and Barilla has not come close to making the showing required for exclusion under Rule 702.

Because Mr. Weir applied well-established economic methods to reliable data in a manner routinely approved by courts and directly tied to Plaintiffs' theory of liability, his testimony will assist the trier of fact. Barilla's motion is without merit and should be denied.

## III.    FACTS

### A.    Mr. Weir's Background and Qualifications

Mr. Colin B. Weir is the President of Economics and Technology, Inc., a firm specializing in forensic economics, statistical analysis, and damages modeling. ECF No. 154-7, Exhibit 1 at 1. Mr. Weir holds a Master of Business Administration with honors from Northeastern University and a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster. *Id.*

Mr. Weir's professional work includes econometric and statistical modeling, multiple regression analysis, survey-related evaluations, statistical sampling, economic forecasting, and market-structure assessment. *Id.* His work regularly involves the analysis of retail markets and the calculation of damages for consumer products, including food products. *Id.* He has provided expert testimony in federal and state courts across the country, before federal agencies including the Federal Communications Commission, and before numerous state regulatory commissions. ECF No. 154-7 ¶ 1. Over the past four years, he has served as an expert in more than ninety matters. ECF No. 154-7, Exhibit 1 at 3–15, His qualifications have been recognized by courts in consumer, antitrust, telecommunications, and food-labeling matters, including in cases involving conjoint analysis. ECF No. 154-7 ¶ 2 (collecting cases, including, but not limited to *Jones v. Nutiva* (false advertising of coconut oil); *Hunter v. Nature's Way* (false advertising of coconut oil); *Looper v. FCA; Sanchez-Knutson v. Ford Motor Company*; *In re: ConAgra Foods* (false advertising of cooking oil); *In re: Arris Cable Modem*; *Hadley vs. Kellogg* (false advertising of health of breakfast cereal); *Allen v. Conagra Foods, Inc.* (nutritional content of buttery substitute); *Martinelli v. Johnson & Johnson* (false advertising of health of butter substitute); *Krommenhock v. Post* (false advertising of health of breakfast cereal).

In this case, Plaintiffs informed Mr. Weir of their theory of liability that Barilla's "Italy's #1 Brand of Pasta" representation ("Italian Origin Representation") leads consumers to believe the Products are authentic Italian pastas made in Italy with Italian-sourced ingredients, even though the Products are made with ingredients from countries other than Italy, at factories in Iowa and New York. *Id.* ¶ 5. Based on these facts, Plaintiffs asked Mr. Weir to determine whether the challenged representation's economic impact could be measured on a classwide basis using common evidence and, if so, to design an economic framework for quantifying the resulting damages. *Id.* ¶ 7.

**B.     Mr. Weir's Methodology and Results**

*1.     Economic Framework and Product Differentiation*

As a starting point for his economic analysis, Mr. Weir described the concept of product differentiation, an established economic principle referring to attributes that allow consumers to distinguish among similar products and that have the potential to influence demand and price. ECF No. 154-7 ¶ 12. Based on this underlying economic principle, Mr. Weir evaluated whether Barilla's Italian Origin Representation functioned as a product attribute capable of influencing market outcomes. Based on the record provided to him, he identified the representation as an attribute suitable for empirical measurement. *Id.* ¶ 23; ECF No. 154-19 at 85:13–18.

*2.     Evaluation of Dr. Dennis's Conjoint Survey from an Economic Perspective*

Mr. Weir's assignment included determining whether conjoint analysis could be used to measure any price premium associated with the Italian Origin Representation, and he ultimately concluded that it was suitable. ECF No. 154-7 ¶¶ 24–39. Dr. Dennis designed and implemented the conjoint survey. ECF No. 154-19 at 37:3–7. While Dr. Dennis focused on survey design and execution, Mr. Weir provided input on topics at the intersection of survey design and economics, including market conditions, the relationship between survey attributes and real-world product characteristics, the handling of retail prices, and the structure necessary for damage calculations. ECF No. 154-7 ¶ 42; ECF No. 154-19 at 37:3–7, 18–23, 58:21–59:5.

Mr. Weir reviewed Dr. Dennis's February 7, 2025 declaration and expert report (ECF No. 154-6). ECF No. 154-7 ¶ 40. After this review, he conducted an independent economic assessment of the conjoint survey. ECF No. 154-7 ¶¶ 41–46. This assessment included an evaluation of supply-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

side factors relevant to both the conjoint model and the damages framework, including the fact that the Products' supply quantities during the class period were fixed as a matter of historical record. *Id.* ¶¶ 49–50, 53–65. Based on this evaluation, Mr. Weir concluded that the conjoint was suitable for measuring any price premium attributable to the representation. *Id.* ¶ 45. Mr. Weir also replicated the conjoint survey's statistical results by re-running the calculations using Dr. Dennis's data and analytical steps. ECF No. 154-7 ¶¶ 68–69; ECF No. 154-19 at 67:22–68:3.

### 3. *Compilation and Review of Retail Sales Data*

To translate the measured price premium into total classwide damages, Mr. Weir reviewed retail sales data for the Products from two separate productions provided by IRI and its successor, Circana, comprising tens of thousands of individual sales records. ECF No. 154-7 ¶ 72. He combined the two datasets into a unified database and examined the time periods covered to ensure that sales were not double counted. ECF No. 154-7 ¶ 73.

To determine the appropriate time period for damages, Plaintiffs and Mr. Weir relied on the "release dates" provided in discovery. ECF No. 154-20 at 99:19–21 ("I relied on representations from counsel as to which products were in or out, and so I would also just need to verify, . . . ."); *see* Sodaify Decl., Ex. 1, at Nos. 1–2; These release dates identify when Barilla uploaded updated packaging without the Italian Origin Representation to its printer. *Id.* Using these dates, Mr. Weir excluded sales occurring after the packaging no longer displayed the representation. ECF No. 154-7 ¶ 73; ECF No. 154-19 at 187:20–188:13.

### 4. *Calculation of Price Premium Damages*

After completing the analyses described above, and incorporating Dr. Dennis's percentage estimate of the price difference attributable to the Italian Origin Representation, Mr. Weir determined that classwide damages can be reliably calculated using the following formula: "% Price Premium Factor × Units Sold = Damages." ECF No. 154-7 ¶¶ 78–79. Applying this methodology to the sales data identified above, Mr. Weir concluded that the Italian Origin Representation resulted in ███████████ in price premium damages to the Class. *Id.* at 80.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

## IV.    LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may be qualified by "knowledge, skill, experience, training, or education," and may testify if the proponent shows by a preponderance of the evidence that the testimony (a) will assist the trier of fact, (b) is based on sufficient facts or data, (c) is the product of reliable principles and methods, and (d) reflects a reliable application of those methods. Fed. R. Evid. 702; *Engilis v. Monsanto Co.,* 151 F.4th 1040, 1050 (9th Cir. 2025); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993). The Ninth Circuit has explained that the court's gatekeeping role under Rule 702 is to ensure that expert testimony is both "relevant" and "reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). Evidence is relevant if it "logically advance[s] a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463 (9th Cir. 2014).

Reliability turns on whether the expert's knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592. The Supreme Court identified several non-exclusive factors: testability, peer review, known or potential error rate, and general acceptance. *Id*. at 593–94; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

The court does not decide whether the expert is "right or wrong," only whether the testimony has sufficient substance to assist the jury. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc*., 738 F.3d 960, 969–70 (9th Cir. 2013). The focus is on methodology, not the correctness of conclusions. *Engilis*, 151 F.4th at 1050; *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Even "[s]haky but admissible evidence" is to be challenged through cross-examination and competing proof, not exclusion. *Daubert*, 509 U.S. at 564; *Alaska Rent-A-Car*, 738 F.3d at 969.

## V.    ARGUMENT

### A.    Mr. Weir Is Qualified, His Opinions Relevant, and Fit Plaintiffs' Theory

Barilla's claim that Mr. Weir is unqualified to opine on consumer preferences and that his "product differentiation" analysis falls outside his expertise mischaracterizes both his assignment and his opinions. ECF No. 153 at 3, 7–8. Plaintiffs retained Mr. Weir not to assess consumer preferences, but to determine whether damages resulting from Barilla's Italian Origin

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Representation can be measured on a classwide basis using common evidence and to develop a reliable framework for calculating those damages, which he did. ECF No. 154-7 ¶ 7.

Mr. Weir began by grounding his analysis in the well-established economic principle of product differentiation, which explains how specific product attributes enable consumers to distinguish among otherwise similar products and can thereby drive sales and profitability. ECF No. 154-7 ¶ 12; ECF No. 154-19 at 95:7–17. Applying this principle to Dr. Dennis's survey findings, he concluded that Barilla's Italian Origin Representation functions as a differentiating attribute that influences market price and can be empirically measured, making it an appropriate basis for a price-premium damages model. ECF No. 154-7 ¶¶ 12, 23–24; ECF No. 154-19 at 85:13–18. He then identified conjoint analysis as a reliable method for quantifying that premium. ECF No. 154-7 ¶ 24.

Mr. Weir repeatedly testified that he is not offering any opinion on whether consumers prefer U.S.-made versus Italian-made pasta, nor is he offering an opinion on materiality. ECF No. 154-19 at 83:24–84:10, 85:13–18. His report likewise does not state that all or most consumers value Italian origin in any particular way. *See* ECF No. 154-7 ¶¶ 12–22. Instead, he cites country of origin literature to illustrate that origin claims can affect willingness to pay and price for some consumers, which is sufficient to justify treating the Italian Origin Representation as an economically relevant product attribute. *Id.* His opinion is that country of origin claims are capable of moving price and that there is a recognized economic mechanism by which they do so, not that one hundred percent of consumers interpret Barilla's claim in any particular way. *See* ECF No. 154-7 ¶ 12; ECF No. 154-19 at 95:7–17.

Barilla's argument that Mr. Weir is unqualified to discuss product differentiation because his "training is in economics, not consumer perception or preference" misunderstands Rule 702. ECF No. 153 at 8. Product differentiation is an economic concept, and Mr. Weir has a degree in economics, an MBA, and more than twenty years of experience analyzing the behavior of firms and consumers in product markets. *See* Exhibit 1, ECF No. 154-7. Rule 702 does not require that an expert's qualifications be narrowly defined. It contemplates a "broad conception of expert qualifications." *Sullivan v. Costco Wholesale Corp.*, 2018 WL 4057447, at *3 (E.D. Cal. Aug. 23, 2018) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Courts have

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

repeatedly accepted Mr. Weir's opinions on product differentiation and price premiums and his conjoint-based damages models in consumer and food labeling cases. *See Prescod v. Celsius Holdings, Inc.*, 2021 WL 5234499, at *20, *24 (Cal. Super. Ct., Aug. 2, 2021); *Banks v. R.C. Bigelow, Inc.*, 2023 WL 4932894, at *7–9 (C.D. Cal. July 31, 2023); *Cadena v. Am. Honda Motor Co., Inc.*, 2025 WL 3483436, at *13 (C.D. Cal. Dec. 3, 2025) (denying motion to exclude Mr. Weir's opinions on conjoint survey and analysis); *see also* ECF No. 154-7 ¶ 2; ECF No. 154-7, Exhibit 1. Barilla does not challenge his qualifications as an economist. ECF No. 153 at 8.

Barilla also argues that Mr. Weir's opinions do not "fit" Plaintiffs' liability theory because Plaintiffs supposedly abandoned any interpretation related to manufacturing location. ECF No. 153 at 9–10. The record squarely refutes that claim. From the outset, Plaintiffs consistently alleged that Barilla's Italian Origin Representation misleads consumers into believing the Products are authentic Italian pasta made in Italy from Italian ingredients. *See* ECF Nos. 1, 11, 11-8, 52-1. Plaintiffs developed and presented evidence supporting both the sourcing and manufacturing interpretations at class certification. *See* ECF No. 52-1 at 3 (citing Barilla's Group Family Company webpage, Barilla's official Twitter biography, and Barilla's historical archive webpages, showing that Barilla repeatedly noted its first pasta shop in Italy, the construction of multiple factories and a wheat transportation system in Italy, and each of its company's leaders' Italian birth); ECF No. 52-15 at Nos. 57–62 (Defendant's supplemental admissions confirming that "each stage of the [manufacturing] process," from sourcing of raw materials through packaging actually "did not occur in Italy").

Both Mr. Weir and Dr. Dennis expressly grounded their analyses in Plaintiffs' theory of liability, which has always encompassed both the sourcing and manufacturing interpretations of the Italian Origin Representation. ECF No. 154-7 ¶ 5; ECF No. 154-19 at 52:9–12; ECF No. 52-3 ¶ 5; ECF No. 154-13 at 78:6–11. Dr. Dennis further explained that he operationalized the Italian Origin Representation in his survey to capture the heart of Plaintiffs' theory—whether Barilla's use of the representation led reasonable consumers to believe that the Products were made in Italy using ingredients sourced exclusively from Italy. ECF No. 52-2 ¶ 20; ECF No. 154-13 at 79:23–80:1. Regardless, Barilla's argument presupposes without evidence that origin as influencing market

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

prices can relate only to manufacturing locale, which is at odds with law and logic dictating that origin encompasses ingredient sourcing. *See, e.g.,* 16 C.F.R. § 323.2 (providing requirements for ingredient and product component sourcing to claim US origin). While Barilla will be free to offer its more narrow, contradictory view at trial if it wishes (even though it admits the Class Products are not physically made in Italy), Weir's analysis "fits" for purposes of *Daubert.*

The cases Barilla cites on qualifications and fit also do not support its argument. In *Novoa v. GEO Grp., Inc.,* the court found a psychological expert unqualified because he lacked experience with the specific subject of his proposed testimony. 2020 WL 8514832, at *2-3 (C.D. Cal. Dec. 18, 2020). Yet in the same decision, the court upheld the qualifications of a damages expert whose opinions fell squarely within her established expertise and who had been accepted repeatedly in similar roles. *Id*. at *4. Mr. Weir plainly belongs in this latter category. He is not advancing a novel theory outside his discipline; he is offering a standard economic analysis of pricing and damages in a consumer market, which is the precise work for which courts have recognized his expertise time and again. *See*, *e.g.*, *Cadena*, 2025 WL 3483436, at *13; *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 670 (N.D. Cal. 2024) (finding Mr. Weir qualified to opine on market research); *Banks v. R.C. Bigelow, Inc.,* 2023 WL 4932894, at *7–9 (C.D. Cal. July 31, 2023); *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022) (denying motion to exclude Mr. Weir's opinions on conjoint survey and analysis); *Prescod v. Celsius Holdings, Inc.*, 2021 WL 5234499, at *20, 24 (Cal. Super. Ct., Aug. 2, 2021) (adopting Mr. Weir's opinions regarding the concept of product differentiation); *see also* ECF No. 154-7 ¶ 2 (listing additional cases in which courts found Mr. Weir qualified to offer similar opinions); ECF No. 154-7, Exhibit 1 (same).

Likewise distinguishable is *In re Toy Asbestos*, 2021 WL 1111226, at *2–3 (N.D. Cal. Mar. 23, 2021), and *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1149 (N.D. Cal. 1982), where the challenged experts were essentially acting as conduits for literature: they summarized and relayed articles in a field where they did not themselves possess specialized training or substantial experience. Here, Mr. Weir is not simply reciting academic studies about product differentiation or country of origin. He is an economist applying those concepts, along with conjoint results

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

determined by Dr. Dennis, and Barilla's own data, to construct a damages model in a retail packaged food market. *See* ECF No. 154-7. That is work squarely within his training and experience, and it is precisely the type of applied economic testimony Rule 702 permits. *See*, ECF No. 154-7, Exhibit 1.

*Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223 (W.D. Wash. 2018), and *Powell v. Anheuser-Busch Inc.*, 2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) are also far afield from the present circumstances. In *Moussouris*, the expert's methodology was deficient because he drew sweeping conclusions about a company's internal discrimination processes from an exceedingly small, nonrepresentative sample of 18 complaints out of 231. 311 F. Supp. 3d at 1233, 1244–45. The problem was the expert's reliance on a sliver of incomplete information that bore no reasonable relationship to the full evidentiary record. *Powell* involved a similar flaw: the expert formed broad opinions about the employer's termination decision while relying almost exclusively on the deposition testimony of a single individual who played little role in the underlying employment action. 2012 WL 12953439, at *6-7.

Mr. Weir's work bears no resemblance to the deficiencies in *Moussouris* or *Powell*. He did not extrapolate from a narrow or unrepresentative subset of data, nor did he rely on a single witness or isolated document. Instead, he applied a standard economic framework—product differentiation—to the full evidentiary record. ECF No. 154-7 ¶¶ 12–22. He examined the challenged Italian Origin Representation, Dr. Dennis' conjoint survey, supply-side factors, Barilla's own verified interrogatory responses, and market conditions in the pasta category. *Id.* ¶¶ 40–73. His use of recognized economic principles to analyze how an origin claim can influence market price is the opposite of the unsupported, data-thin opinions rejected in *Moussouris* and *Powell*.

Because Mr. Weir's product differentiation analysis identifies the economic mechanism through which Barilla's Italian Origin Representation can affect price and directly supports the conjoint-based price premium model, it advances a material aspect of Plaintiffs' case and readily satisfies Rule 702's relevance requirement. *Estate of Barabin*, 740 F.3d at 463 (finding "relevancy simply requires that '[t]he evidence logically advance a material aspect of the party's case'") (citation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

### B.   Mr. Weir's Conjoint-Related Opinions Provide Helpful Economic Analysis

Barilla next wrongly asserts that Mr. Weir's conjoint-related opinions merely duplicate Dr. Dennis's work. ECF No. 153 at 9–11. The record shows otherwise. Mr. Weir played a distinct and essential role: while Dr. Dennis served as the survey expert and primary author of the conjoint instrument, Mr. Weir helped shape the survey at the crucial intersection of economics and survey methodology and then performed an independent economic evaluation of its appropriateness and results. ECF No. 154-7 ¶ 42; ECF No. 154-19 at 37:4–7, 18–23, 58:21–59:5.

This Court has also already rejected the very same "cumulative" argument that Barilla asserts here. In *Moore*, the defendant claimed that Mr. Weir's economic analysis merely parroted Dr. Dennis's conjoint survey. 713 F. Supp. 3d at 670. The Court disagreed. *Id.* It recognized that Mr. Weir contributed independent economic insight by explaining how sellers use product attributes to differentiate products, by applying those principles to the defendant's own documents and testimony to support the existence of a price premium, and by evaluating Dr. Dennis's attribute selection and supply side treatment from an economist's perspective. *Id.* The Court also expressly held that Mr. Weir's opinions "provide[d] new information" and were not duplicative of Dr. Dennis's work. *Id.* Here, similar to *Moore*, Mr. Weir advised Dr. Dennis on the correct "but for" world construct, on how to incorporate supply side considerations, and on how to measure a change in equilibrium price. *See* ECF No. 154-7 ¶¶ 43–65; ECF No. 154-19 at 58:21–59:5. After Dr. Dennis completed his work, Mr. Weir also conducted a separate, rigorous review grounded in economic theory. Mr. Weir concluded that the conjoint survey was properly designed from an economic perspective, including that it used real world prices and took into account the fixed supply of Products during the class period. ECF No. 154-7 ¶¶ 40–46, 49–50, 53–65; ECF No. 100-2 ¶¶ 18–28. He then replicated Dr. Dennis's conjoint results to confirm the accuracy of the price premium. ECF No. 154-7 ¶¶ 68–69; ECF No. 154-19 at 67:22–68:3.

The cases Barilla cites also do not support exclusion. In *Huawei Techs. Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 993–94 (N.D. Cal. 2018), the expert served as little more than a mouthpiece for another expert's conclusions, offering no independent analysis within his own discipline. Similarly, in *Cisco Sys. Inc. v. Arista Networks, Inc.*, 2016 WL 11752975, at *3–5 (N.D.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Cal. Nov. 16, 2016), the expert merely adopted another expert's opinions rather than applying any methodology of his own. Mr. Weir's work is fundamentally different. He applied the tools of his economics discipline to help shape the conjoint survey, evaluate its structure, incorporate supply side considerations, and verify its results through replication. ECF No. 154-7 ¶¶ 40–69; ECF No. 154-19 at 58:21–59:5, 67:22–68:3. These contributions are grounded in the economic principles and expertise that Dr. Dennis, as a survey methodologist, does not supply.

This type of expert collaboration is exactly what Rule 703 contemplates. Economists routinely rely on conjoint experts for data inputs and then apply economic theory to assess market impact and damages. *See*, *e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576–77 (N.D. Cal. 2020); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 671–74 (N.D. Cal. 2019); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019). The roles played by Dr. Dennis and Mr. Weir reflect a standard, accepted division of labor: the survey expert measures consumer preference, and the economist evaluates the economic consequences of those measurements. Rather than creating redundancy, this methodology provides the trier of fact with distinct expertise. *Moore*, 713 F. Supp. 3d at 670.

### C.    The Conjoint Analysis Is Reliable Under Rule 702

Barilla's reliability challenge fails because the conjoint analysis here follows well established economic principles, measures the marketwide price impact of the Italian Origin Representation, and fully accounts for both consumer interpretation and supply side factors, consistent with controlling precedent in this Circuit.

First, a damages model is not required to show that every consumer interprets a challenged statement identically. In its Motion to Strike, Barilla repackages arguments that this Court has already rejected at class certification. The Court held that Barilla's "multiple interpretations" challenge to the consumer perception survey and its "value isolation" and "supply-side factor" critiques of the conjoint analysis "go to the weight of the evidence and not the admissibility." ECF No. 78 at 12, 19. The Court further instructed that the Parties may address these methodological disagreements through cross-examination at trial. *Id*. at 12. Other courts in this District have similarly long recognized that a price premium arising from a misleading representation affects all

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

purchasers in the market, regardless of individual interpretation. *See*, *e.g.*, *Krommenhock*, 334 F.R.D. at 575; *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at \*3 (N.D. Cal. Aug. 3, 2017). Mr. Weir explains that once liability is established, it is appropriate to assume deception for purposes of calculating damages, because the market price reflects the aggregate effect of the misrepresentation, not individual beliefs. Dennis Reply Decl. ¶ 14 (v), ECF No. 154-8 (citing Reference Manual on Scientific Evidence); Weir Reply Decl. ¶¶ 17–21, ECF No. 154-8 (same).

The premium is baked into the price all consumers pay. Dennis Reply Decl. ¶ 22, ECF No. 154-8; Weir Reply Decl. ¶ 21, ECF No. 154-8. That is why courts routinely admit conjoint based damages models that assume the challenged statement is deceptive and focus on the resulting price premium. *Krommenhock*, 334 F.R.D. at 574–75 (rejecting the argument that the damages model was unreliable because it did not isolate values attributable to truthful portions of the label, given that the relevant inquiry under California law is whether the challenged statement is misleading, and that a damages model may assume that to be true); *Pettit*, 2017 WL 3310692, at \*3 (N.D. Cal. Aug. 3, 2017) (holding that plaintiffs "ha[ve] no burden to establish that there is a uniform understanding among putative class members"); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 995 (N.D. Cal. 2022) (same); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at \*14-15 (C.D. Cal. May 6, 2022) (same). Here, the conjoint results and Mr. Weir's application of them show that all purchasers paid the same marketwide overcharge traced directly to the Italian Origin Representation. Weir Reply Decl. ¶ 21, ECF No. 154-8.

Second, the conjoint analysis here fully accounts for supply side factors, in accordance with the prevailing law in this Circuit. This Court has explicitly recognized that "conjoint analysis is a well-accepted economic methodology" for calculating classwide price premiums in consumer labeling cases. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105, 1107 (N.D. Cal. 2018) (collecting cases). It is also widely recognized that conjoint analysis can reliably capture supply-side effects when based on real-world prices and a fixed quantity of products sold. Indeed, numerous courts in this Circuit have endorsed this same approach, holding that such conjoint models measure the actual market premium, not a theoretical willingness to pay. *See, e.g., Krommenhock*, 334 F.R.D. at 576; *Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 605–06 (N.D. Cal.

Case No. 4:22-cv-03460-DMR                    -13-
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2018); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at \*19 (N.D. Cal. Sep. 25, 2018); *Martinelli*, 2019 WL 1429653, at \*4.

Mr. Weir and Dr. Dennis applied this same framework. They used actual historical prices, real world sales data, and the fixed supply of Barilla Products during the class period as the foundation for the conjoint survey and damages model. ECF No. 154-7 ¶¶ 49–65. Courts have repeatedly approved Mr. Weir's conjoint-based damages models on this basis, including in cases involving similar product labeling theories. *See, e.g.*, *McMorrow v. Mondelēz Int'l, Inc.*, 2021 WL 859137, at \*3-4 (S.D. Cal. Mar. 8, 2021); *Krommenhock*, 334 F.R.D. at 576–77 (N.D. Cal. 2020); *Allen*, 331 F.R.D. at 671–74 ; *Martinelli*, 2019 WL 1429653, at \*4; ECF No. 154-8 ¶ 2 (collecting more cases).

Barilla's reliance on *In re Volkswagen "Clean Diesel"* is misplaced. That case is an outlier involving unique facts, including four individual car owners who no longer possessed the durable goods at issue and extreme conjoint outputs ranging from 8.5 percent to 60.5 percent, which was "facially unrealistic." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 949–50 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022).  It further differs from a typical class action case because the experts there were asked to calculate damages for four individual consumers, rather than an entire class, who had not settled in an earlier proceeding involving the same fraud. *Id.* at 943. The majority of courts in this Circuit have repeatedly accepted Mr. Weir's conjoint analyses and damage models similar to the one proposed in this case, rather than applying *Volkswagen* to consumer mislabeling cases involving low cost, frequently purchased products with robust market data. *See, e.g.*, *Banks*, 2023 WL 4932894, at \*8-9; *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at \*18–20 (C.D. Cal. Mar. 15, 2023); *Sonneveldt v. Mazda Motor of Am.*, Inc., 2022 WL 17357780, at \*16 (C.D. Cal. Oct. 21, 2022); *Johnson*, 2022 WL 2869528, at \*8–9.

At bottom, Barilla's supply-side challenge reflects a mere disagreement over how supply should be modeled. Such disputes go to the weight of the experts' testimony, not admissibility. *Elosu*, 26 F.4th at 1024; *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70. The conjoint model here is

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

grounded in accepted economic principles, relies on real-world data, and directly addresses Plaintiffs' theory of liability, satisfying Rule 702.

### D.     Mr. Weir's Damages Calculations Provide Specialized Assistance To The Jury

Barilla's characterization of Mr. Weir's damages analysis as mere arithmetic is unsupported. ECF No. 153 at 11–12. In order to determine the sales of the Products, Mr. Weir performed extensive economic and data analysis on tens of thousands of IRI and Circana transactions, including identifying the relevant sales base, applying the appropriate cutoffs, and reconciling overlapping datasets. ECF No. 154-7 ¶¶ 72–75. In addition, he determined the correct framework for damages, the correct but for world to use, that conjoint would be economically appropriate given the circumstance, and participated in the conjoint design as to economic issues. *See Id.* Without all of that additional work, one would never get to the final calculation, or even know that it was appropriate. This work goes well beyond basic calculations and reflects the type of specialized economic expertise that Rule 702 squarely contemplates.

To determine the relevant sales base, Mr. Weir examined two productions of IRI and Circana retail sales data, which together contained tens of thousands of entries, and identified the sales of Products within the scope of Plaintiffs' claims. ECF No. 154-7 ¶ 72. He then combined the two datasets in a way that avoided double counting overlapping time periods. *Id.* ¶ 73. To exclude sales occurring after Barilla ceased using the Italian Origin Representation, Plaintiffs and Mr. Weir relied on the "release dates" for updated packaging provided in discovery, and removed sales after those dates. *Id.* ; ECF No. 154-19 at 187:20–188:13; ECF No. 154-20 at 99:17–25; Sodaify Decl., Ex. 1, at Nos. 1–2. Only after completing that detailed work did Mr. Weir apply Dr. Dennis's price premium to the resulting sales base. ECF No. 154-7 ¶ 80. Court in this District has already recognized that such analysis is far more than simple "arithmetic." In *Moore*, the court rejected an identical "grade school arithmetic" argument and held that Mr. Weir's work interpreting and summarizing transaction data provides specialized assistance to the jury. *Moore*, 713 F. Supp. 3d at 670.

The cases Barilla cites are not comparable. In *United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014), *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002), *Waymo LLC v. Uber*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Techs., Inc.*, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017), and *Waine-Golston v. Time Warner Ent.-Adv./New House P'ship*, 2013 WL 1285535 (S.D. Cal. Mar. 27, 2013), the so-called "expert" testimony involved little more than performing basic arithmetic that any juror could replicate. Mr. Weir's work bears no resemblance to that. He analyzed large, complex transaction datasets, evaluated the reliability and scope of IRI and Circana data, identified the specific UPCs and date ranges corresponding to Products bearing the challenged label, and addressed the practical data limitations inherent in retail sales tracking. ECF No. 154-7 ¶¶ 72–73; ECF No. 154-19 at 187:20–188:13. This is precisely the kind of specialized, technical work that requires expert assistance and falls well outside the capacity of a lay jury. *Moore*, 713 F. Supp. 3d at 670.

Barilla also argues, relying on Dr. Cantor's rebuttal report, that Mr. Weir improperly included sales occurring after the Italian Origin Representation was removed. ECF No. 153 at 11–12; ECF No. 154-9 ¶ 60. The record shows otherwise. Mr. Weir relied on Barilla's own release dates (information solely within Barilla's control) as the cutoff for identifying which sales to include in the damages calculation. ECF No. 154-7 ¶ 73; ECF No. 154-19 at 187:20–188:13; Sodaify Decl., Ex. 1, Nos. 1–2. A straightforward comparison of Barilla's release date chart with Dr. Cantor's Exhibit 7 confirms that four of the five Products she identifies do not appear anywhere in Barilla's chart with precise matching UPCs. Sodaify Decl., Ex. 1, No. 2 ("New Visual Identity" Release Date Chart); ECF No. 154-9 ¶ 60, Ex. 7. Because Barilla never provided release dates for those Products, Plaintiffs' experts had no basis to apply any cutoff to them. Therefore, unlike the experts in *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir.1996) and *Scott Lumber Co. v. United States*, 390 F.2d 388, 399 (9th Cir. 1968), who disregarded the record and based their opinions on totally incorrect assumptions and speculations, here, Mr. Weir relied on actual data provided by Barilla.

For the one Product that does match a provided release date, Rotini Corkscrew Regular Cut 16 oz, Mr. Weir's use of the release date was conservative. ECF No. 154-7 ¶ 73; ECF No. 154-19 at 188:18–189:10. Given that IRI and Circana do not capture all retail sales, and the precise date when updated packaging reaches shelves is inherently uncertain, any argument regarding inappropriate inclusion would not affect the reliability of his calculation because of such conservatism built in. *Id.*

Case No. 4:22-cv-03460-DMR                     -16-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE OPINIONS OF COLIN WEIR

Furthermore, Dr. Cantor's opinion relies on a "fuzzy matching" technique that alters UPC codes by dropping leading zeros and the final digit before attempting to match products in the Circana data. Data Appendix at 2, ECF No. 154-9. Even if one accepted this unconventional approach, it would actually enlarge the dataset by adding seven additional Products not included in Mr. Weir's calculation, as confirmed by Dr. Cantor's own Data Appendix. *Id*. at 3. At most, Barilla identifies a dispute about data scope, a disagreement between experts that goes to weight, not admissibility, particularly where the underlying methodology is sound and any adjustments are readily addressable within the existing model. *Alaska Rent A Car*, 738 F.3d at 969–70; *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002); *see also* ECF No. 154-20 at 100:15–19 ("[I]f I've made any sort of error, then I would, of course, want to correct it and get it right, and if Dr. Cantor was correct that these numbers could be used, along with the Dennis percentage.").

Even if any adjustment were warranted, Rule 26(e) provides a straightforward avenue for supplementation. Fed. R. Civ. P. 26(e)(1). Courts routinely allow experts to supplement in response to opposing challenges when doing so corrects inaccuracies or fills gaps based on information not previously available. *See Charles v. Sanchez*, 2015 WL 808417, at *8-9 (W.D. Tex. Feb. 24, 2015); *In re Enron Corp. Sec., Derivative & "Enrisa" Litigation*, 2007 WL 5023541, at *8 (S.D. Tex. Feb. 1, 2007). Nothing in Rule 702 or *Daubert* supports exclusion where any concern can be addressed with modest data correction.

### E.     Barilla's Criticisms Go To Weight, Not Admissibility

Every objection Barilla raises concerns the persuasiveness of Mr. Weir's conclusions, not whether his opinions satisfy Rule 702's standards of qualification, reliability, and fit. The Ninth Circuit has made clear that such issues are for cross examination and competing expert testimony, not exclusion. *Cadena*, 2025 WL 3483436, at  *10 ("[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." (citing *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275 (9th Cir. 2024)); *Engilis*, 151 F.4th at 1050 (noting that where experts' opinions are not the "junk science" Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

attack "shaky but admissible evidence.") (citation omitted); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."); *Alaska Rent-A-Car*, 738 F.3d at 969–70 (noting Rule 702 is concerned with "the soundness of [the expert's] methodology," rather than "the correctness of the expert's conclusions."); *Wendell*, 858 F.3d at 1232 (same); *see*, *e.g.*, *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 970 (N.D. Cal. 2018) ("The [c]ourt cannot conclude at this stage that [the expert's] assumption that the supply would have been the same regardless of the change of price within the range of his survey is indisputably wrong." (internal quotation marks omitted)).

Mr. Weir's opinions rest on accepted economic principles, rely on sufficient data, apply reliable methods, and address the precise damages question presented by Plaintiffs' theory of liability. That is all Rule 702 requires, and Barilla's disagreements go to weight, not admissibility.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Strike the Opinions of Colin B. Weir.

Date: December 10, 2025                                  **CLARKSON LAW FIRM, P.C.**

By:  */s/ Bahar Sodaify*
        Ryan J. Clarkson
        Bahar Sodaify
        Cassandra Rasmussen
        Jiaming Zheng

        *Attorneys for Plaintiffs and the Certified Class*