**FAEGRE DRINKER BIDDLE & REATH LLP**
David A. Belcher (SBN 330166)
*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel: (310) 203-4000 | Fax: (310) 229-1285

Kevin P. Wagner (Pro Hac Vice)
*kevin.wagner@faegredrinker.com*
Aaron D. Van Oort (Pro Hac Vice)
*aaron.vanoort@faegredrinker.com*
Tyler A. Young (Pro Hac Vice)
*tyler.young@faegredrinker.com*
Berglind Halldorsdottir Birkland (Pro Hac Vice)
*berglind.birkland@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000 | Fax: (612) 766-1600

David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone: (480) 643-1850

Attorneys for Defendant
BARILLA AMERICA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>BARILLA AMERICA, INC.,<br><br>                Defendant. | Case No. 4:22-cv-03460-ASK<br><br>Hon. Ajay Krishnan<br>Courtroom: TBD<br><br><br>**DEFENDANT BARILLA AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE THE OPINIONS OF DR. J. MICHAEL DENNIS**<br><br>Date:  March 26, 2026<br>Time: 1:00 p.m.<br>Place: TBD |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    I.    Dr. Dennis's Consumer Perception Opinions Should be Excluded. ........................ 2

        A.    Dr. Dennis's consumer perception opinions are unhelpful because they do not evaluate how consumers understand the #1 Brand statement in context. ......................................................................... 3

        B.    Dr. Dennis's consumer perception opinions are unhelpful and unreliable because they are based on an improper, leading survey question. .............................................................................................. 5

    II.    Dr. Dennis's Price Premium Opinions Should be Excluded. ................................. 7

        A.    Dr. Dennis's price premium opinions are unhelpful because his conjoint analysis did not isolate the value of Plaintiffs' misreading of the #1 Brand statement. .............................................................. 7

        B.    Dr. Dennis's price premium opinions are unreliable because they do not account for supply-side factors and consider only consumers' alleged willingness to pay. ........................................................................ 11

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  No. ML 13-2438 PSG, 2017 WL 2559615 (C.D. Cal. June 7, 2017) .......................................... 9

*Base v. FCA US LLC*,
  No. 17-cv-01532-JCS, 2019 WL 1117532 (N.D. Cal. Mar. 11, 2019) ................................. 4, 5, 7

*In re ConAgra Foods*,
  302 F.R.D. 537 (C.D. Cal. 2014) ...................................................................................... 9, 10, 11

*Daubert v. Merrell Dow Pharm.*,
  509 U.S. 579 (1993) .............................................................................................................. 11, 13

*Fagan v. Neutrogena Corp.*,
  No. 5:13-cv-01316-SVW-OP, 2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) ............. 9, 10, 11

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) ................................................................................................. 13

*Flodin v. Cent. Garden & Pet Co.*,
  No. 21-cv-01631-JST, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) .............................. 8, 9, 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ..................................................................................................... 13

*In re Gen. Motors LLC Ignition Switch Litig.*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) ......................................................................................... 12

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................................................... 13

*Hughes v. Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) ................................................................................................... 9

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................................................... 9

*In re KIND LLC "Healthy & All Natural" Litig.*,
  627 F. Supp. 3d 269 (S.D.N.Y. 2022), *aff'd sub nom. Bustamante v. KIND,
  LLC*, 100 F.4th 419 (2d Cir. 2024) ..................................................................................... 1, 6, 7

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................................ 9, 11

*Larsen v. Vizio, Inc.*,
  No. SACV 14-01865-CJC, 2017 WL 11633132 (C.D. Cal. Apr. 27, 2017) ........................... 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

ii

*Lytle v. Nutramax Lab'ys, Inc.*,
   No. ED CV 19-0835 FMO, 2022 WL 1600047 (C.D. Cal. May 6, 2022) ................................. 9

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ......................................................................................... 11

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) .................................................................................. 1, 3, 4, 5

*McMorrow v. Mondelēz Int'l, Inc.*,
   No. 17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ...................... 2, 9, 10

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings*,
   713 F. Supp. 3d 660 (N.D. Cal. 2024) ............................................................................. 2, 9

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) .............................................................................. 12

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. 2023), *vacated on other grounds*, No. 19 Civ.
   11711 (LGS), 2025 WL 1284718 (S.D.N.Y. May 2, 2025) ................................................ 2, 12

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
   655 F. Supp. 3d 1002 (S.D. Cal. 2023) ................................................................................ 4

*Pettit v. Procter & Gamble Co.*,
   No. 15-cv-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) ................................. 9, 11

*Saavedra v. Eli Lilly Co.*,
   No. 21:12-cv-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ............................ 12

*Scotts Co. v. United Indus. Corp.*,
   315 F.3d 264 (4th Cir. 2002) ............................................................................................... 5

*Sensoren GmbH v. NVIDIA Corp.*,
   No. 23-cv-05721-NW, 2025 WL 3500726 (N.D. Cal. Sept. 26, 2025) ................................... 4

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ........................................................................................... 13

*Strumlauf v. Starbucks Corp.*,
   No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ...................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   500 F. Supp. 3d 940 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen
   AG*, No. 20-17480, 2022 WL 187841 (9th Cir. Jan. 20, 2022) ................................... 2, 12, 13

*Zakaria v. Gerber Prods. Co.*,
   No. LA CV15-00200 JAK (Ex), 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017),
   *aff'd*, 755 F. App'x 623 (9th Cir. 2018) ........................................................................... 12

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

iii

**Statutes, Rules & Regulations**

F.R.E. 702 ...........................................................................................................4, 7, 11, 13

**INTRODUCTION**

Plaintiffs' opposition confirms that Dr. Dennis's consumer perception and price premium opinions should both be excluded as unhelpful and unreliable.

Dr. Dennis's consumer perception opinions should be excluded for two independent reasons. *First*, his consumer survey and resulting opinions do not "fit" the relevant legal question because he did not test how consumers understand the challenged statement "Italy's #1 Brand of Pasta" (the "#1 Brand statement") *in the context of the product label*. (ECF 152 ("Mem.") at 2, 10–12.) Plaintiffs have now conceded that the #1 Brand statement is subject to multiple reasonable interpretations. (*See* ECF 163 ("MSJ Opp.") at 14 (conceding that the #1 Brand statement "can reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing").) Under *McGinity v. Procter & Gamble Co.*, this means that the #1 Brand statement *must* be read with the clarifying side label representation that the Products are "Made in the U.S.A. with U.S.A. and imported ingredients." 69 F.4th 1093, 1098–99 (9th Cir. 2023). But Dr. Dennis's consumer perception survey instructed consumers to consider *only* the #1 Brand statement (and, by necessary implication, to disregard the clarifying side label). Thus, his survey and resulting opinions are not helpful because they do not "fit" the *McGinity* standard.

*Second*, Dr. Dennis's consumer perception opinions turn on a single, leading question that injects the concept of "ingredients" into the psyche of survey participants. (Mem. at 12–14.) Plaintiffs largely ignore this argument and instead wrongly suggest that Barilla's only criticism was Dr. Dennis's use of closed-ended questions. (*See* ECF 165 ("Opp.") at 12.) They offer the Court no reasoned argument against the conclusion that "Dr. Dennis's perception survey does not assist the trier of fact because it is biased, leading, and to the extent it provides any insight, cannot provide the objective standard necessary to answer the key question in this case." *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 292 (S.D.N.Y. 2022) ("*In re KIND*"), *aff'd sub nom. Bustamante v. KIND, LLC*, 100 F.4th 419 (2d Cir. 2024).

Dr. Dennis's price premium opinions should also be excluded for two independent reasons. *First*, his damages model is unhelpful because it values the *entire* #1 Brand statement, rather than

isolating Plaintiffs' specific misreading: *i.e.*, the #1 Brand statement means the Products are made with ingredients sourced from Italy (the "Sourcing Interpretation").[1] Plaintiffs concede that the #1 Brand statement can reasonably be read to convey the true and accurate statement that Barilla is the most popular and best-selling brand of pasta in Italy (the "Selling Interpretation"). Yet they admittedly seek damages for the ***full value*** of the #1 Brand statement, including the value of the true meaning. Dr. Dennis's price premium opinions do not match Plaintiffs' liability theory and are thus unhelpful to the factfinder. *See, e.g.*, *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2020 WL 1157191, at *1 n.2, *9 (S.D. Cal. Mar. 9, 2020); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings*, 713 F. Supp. 3d 660, 679 (N.D. Cal. 2024).

*Second*, Dr. Dennis's price premium opinions failed to account for supply-side factors in calculating the but-for price (or price premium). Plaintiffs do not dispute that Dr. Dennis used a fixed (or inelastic) supply when estimating the price premium, which causes the price movement to be exaggerated. And they offer no meaningful response to the numerous cases in which courts have disregarded or rejected price premium opinions—including those authored by Dr. Dennis—for doing this. *See, e.g.*, *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 464 (S.D.N.Y. 2023), *vacated on other grounds*, No. 19 Civ. 11711 (LGS), 2025 WL 1284718 (S.D.N.Y. May 2, 2025); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen AG*, No. 20-17480, 2022 WL 187841 (9th Cir. Jan. 20, 2022). This Court should do the same.

## **ARGUMENT**

### I.    Dr. Dennis's Consumer Perception Opinions Should be Excluded.

Dr. Dennis's consumer perception opinions—summarized in his conclusion that "a majority of consumers perceived the Challenged Representation to mean that the Product's ingredients are solely sourced from Italy" (ECF 52-2 ("Dennis Cert. Report") ¶ 36)—should be excluded for two

---

[1] Plaintiffs also *alleged* that the #1 Brand statement misleads consumers to believe that the pastas are *manufactured* in Italy. But Plaintiffs failed to develop evidence supporting this manufactured-in-Italy theory, and summary judgment should therefore be entered on it. (*See* Barilla's Motion for Summary Judgment.)

reasons.

### A. Dr. Dennis's consumer perception opinions are unhelpful because they do not evaluate how consumers understand the #1 Brand statement in context.

*First,* the survey did not comply with the legal requirement to test how consumers understand the #1 Brand statement *in the context of the product label.* (Mem. at 11–12.)

Under Ninth Circuit law, when reasonable consumers encounter an ambiguous label statement, they seek out other information, including information on the rest of the label, to clarify the statement's meaning. *See McGinity*, 69 F.4th at 1098–99. Barilla established this legal point (Mem. at 11), and Plaintiffs do not dispute it (Opp. at 10–12).

The *McGinity* context rule applies in this case because Plaintiffs have now conceded that, to the extent the #1 Brand statement says *anything* about ingredient origin, it does so only ambiguously, because it can also "reasonably reflect … brand popularity in Italy." (*See* MSJ Opp. 14.) Hence, to determine whether reasonable consumers would understand the statement "Italy's #1 Brand of Pasta" to mean that the pasta's ingredients all came from Italy, Dr. Dennis needed to test the statement in the context of the other label statement that the products are "Made in the U.S.A. with U.S.A. and imported ingredients." (Mem. at 11–12.) Plaintiffs do not dispute that this is what Dr. Dennis needed to do.

The only question is whether his survey did it. Plaintiffs argue that it did because at the beginning of the survey, respondents "were shown every panel of the Product packaging," "were able to enlarge each image for closer inspection," and "were also required to confirm that they 'were able to examine the product' before proceeding." (Opp. at 10.) But it is undisputed that survey respondents were *not* able to view the full product packaging *when answering the survey's sole substantive question.* (*See* Mem. at 6.) And *the question itself* directed respondents to focus exclusively on the #1 Brand statement: "This question is about your understanding of this statement on the packaging: Italy's #1 Brand of Pasta." (Mem. at 6, 11–12; *see also* Dennis Cert. Rpt., Attach. C at 20.) The question did not ask about respondents' understanding of the statement in the context of the full packaging. It therefore failed to ask the only legally relevant question.

Plaintiffs' attempts to defend this error fall flat.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

REPLY IN SUPPORT OF BARILLA'S MOTION TO STRIKE OPINIONS OF DR. DENNIS
CASE NO. 4:22-CV-03460-ASK

Plaintiffs say the Court already "rejected" the argument that Dr. Dennis's consumer interpretation question lacks appropriate context when it ruled on class certification. (*See* Opp. at 10 (citing ECF 78 at 12).) That is incorrect. In the class certification order, the Court addressed the argument that "Dr. Dennis's survey provided only a single interpretation of the Challenged Representation that was consistent with Plaintiffs' theory of liability." (ECF 78 at 11–12.) It did not address the legal error of failing to measure understanding in the context of the whole label.

Next, Plaintiffs assert that Dr. Dennis's error goes to weight, not admissibility. (Opp. at 10.) Not so. As many courts have held, this kind of deviation from the appropriate legal standard warrants exclusion. *See, e.g., Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, No. 23-cv-05721-NW, 2025 WL 3500726, at *5 (N.D. Cal. Sept. 26, 2025) ("Expert testimony that is based on an erroneous understanding or application of the law cannot meet the requirements of Rule 702 because it cannot logically assist the trier of fact.") (quotation omitted); *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1023 (S.D. Cal. 2023) (striking expert opinions because expert had "failed to apply the proper legal test," rendering her opinions "irrelevant, unreliable, and [misleading]") (quotation omitted).

Finally, Plaintiffs' attempts to distinguish Barilla's cases are meaningless. Plaintiffs say that *Base* is inapposite because in that case "the expert's opinions were excluded because they were conclusory, extremely vague, speculative, and offered without any explanation of how the expert reached his conclusions." (Opp. at 11 (citing *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 1117532, at *5, *7 (N.D. Cal. Mar. 11, 2019)).) But they do not dispute that *Base* stands for the proposition for which Barilla cites it: expert testimony should be excluded for lack of "fit" if it does not "speak 'clearly and directly' to an issue in dispute" in the case. (Mem. at 9 (quoting *Base*, 2019 WL 1117532, at *5).)

Plaintiffs also claim that *McGinity* and *Broussard* are distinguishable. (Opp. at 11.) But again, they do not dispute the fundamental (and uncontroversial) propositions for which Barilla cited them: (1) In evaluating claims of misleading labeling, courts apply the reasonable consumer standard, and reasonable consumers interpret label statements in context (Mem. at 11 (citing

*Broussard*)), and (2) when reasonable consumers evaluate an ambiguous front-of-package label statement, they consult the rest of the label to understand it. (*Id.* (citing *McGinity*).)

Dr. Dennis's consumer survey did not test how consumers understand the #1 Brand statement in context (including the statement "Made in the U.S.A. with U.S.A. and imported ingredients"). Thus, it does not "speak[] clearly and directly to an issue in dispute in the case" and should be excluded for lack of "fit." *Base*, 2019 WL 1117532, at *5 (quotation omitted).

### B. Dr. Dennis's consumer perception opinions are unhelpful and unreliable because they are based on an improper, leading survey question.

*Second*, Dr. Dennis's consumer perception opinions should also be excluded because they are unreliable, being based *entirely* on a single, leading survey question that presented Plaintiffs' theory of the case and then asked participants to agree or disagree with it. (Mem. at 12–14.)

In response, Plaintiffs do not dispute that the #1 Brand statement itself says nothing about *ingredients*, and thus the survey question injected a concept that might not otherwise occur to respondents. (*Compare* Mem. at 12 *with* Opp. at 12–16.) Nor do they dispute that Dr. Dennis's consumer perception survey presented participants with a single possible interpretation of the #1 Brand statement: that "[t]he product's ingredients are sourced from Italy." (*Id.*; *see* Dennis Cert. Rpt., Attach. C at 20.) Nor do they dispute that "when survey questions are leading and suggestive," the "relevance and credibility of the survey evidence" is "weaken[ed]," *Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-YGR, 2018 WL 306715, at *6 (N.D. Cal. Jan. 5, 2018) (quotations omitted), or that survey questions can be so "leading and suggestive," *id.*, so poorly constructed, that the resulting opinions should be excluded because they "shed no light on the critical question," *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 279 (4th Cir. 2002).

Rather than engage with Barilla's argument, Plaintiffs attack arguments Barilla did not make. For example, Plaintiffs argue that "Barilla identifies only one design feature to attack: Dr. Dennis's use of closed-ended questions." (Opp. at 12.) Plaintiffs also argue that consumer surveys can be a "reliable method" for measuring how consumers interpret challenged statements and defend their use of ancillary distractions as a means of combating "focalism bias." (*Id.* at 12, 15–16.) None of these arguments responds to Barilla's point. The problem is not Dr. Dennis's use of a

closed-ended question in a vacuum, his decision to use a survey, or his use of distraction questions.[2] Rather, the problem is that his consumer perception opinions are based *entirely* on a single, improperly leading survey question. (Mem. at 12.)

Finally, Plaintiffs suggest that Dr. Dennis's survey should be admitted because, despite his leading question, he provided a "don't know/not sure" option. (Opp. at 13.) But the case law is clear that the inclusion of this option cannot redeem an otherwise leading survey. For example, in *In re KIND*, Dr. Dennis used a biased and misleading survey question that provided only "finite choices," did not test other "potential definition[s]," "improperly direct[ed] survey participants to the 'correct' answer," and was "plainly designed to validate plaintiffs' theory." 627 F. Supp. 3d at 288. And the court did not conclude that the inclusion of a "not sure" or "no expectation" option cured those problems. *Id.*

Plaintiffs argue that *In re KIND* is distinguishable because it turned on a combined "All Natural/Non GMO" representation and the plaintiffs' subsequent abandonment of the "Non GMO" portion of the claim. (Opp. at 14.) This distinction makes no difference: while the *In re KIND* court did address the plaintiffs' abandonment of the "Non GMO" portion of their "All Natural/Non GMO" claim, that discussion was not part of the court's criticism of Dr. Dennis's opinions that Barilla cited.

Plaintiffs' other efforts to distinguish *In re KIND* prove Barilla's point. Plaintiffs admit that the court also "criticized" Dr. Dennis's survey because its response options used terms like "hexane," and so, "risk[ed] the injection of contested meanings directly into the answer choices" asking about the interpretation of the phrase "All Natural." (Opp. at 14.) So too here. Just as Dr. Dennis "inject[ed]" the term "hexane," in his *In re KIND* consumer perception survey, *see id.* at 286, he has "inject[ed]" the term "ingredient" here. Plaintiffs are also wrong that the *In re KIND* court's criticism of this kind of leading question turned on whether the injected term was

---

[2] Barilla did note Dr. Dennis's (undisputed) failure to ask *any* open-ended questions (*see* Mem. at 12), but that was to underscore the point that Dr. Dennis had done nothing to confirm that the origin of the ingredients would have even occurred to respondents without his prompting.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

6

"alarming," "substantive," or "technical." (Opp. at 14.) Instead, it turned on the fact that Dr. Dennis had improperly "prompted" survey participants with plaintiffs' preferred concept and thus "manipulate[d] consumers into selecting the answer that plaintiffs preferred." *In re KIND*, 627 F. Supp. 3d at 288–89. The very same problem exists here. *Id.* As the court explained, "[a]ll plaintiffs have done here is show that consumers, when provided with the definition of 'All Natural' that plaintiffs' counsel constructed for this litigation, will click a check box saying that they agree to it." *Id.* at 290–91. But "this is not evidence that the 'All Natural' label would deceive 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.'" *Id.* at 291.

After the 2023 amendments to Federal Rule of Evidence 702, these criticisms do not go only to "weight," as Plaintiffs contend. Courts have excluded Dr. Dennis's opinions for these kinds of flaws even under the pre-2023 Rule 702 standard. *Id.* at 291–92 (rejecting plaintiffs' argument that criticisms go to weight, rather than admissibility, and finding Dr. Dennis's consumer-perception opinion "inadmissible"). Under the new Rule 702 standard, the need for exclusion is all the more apparent.

## II.   Dr. Dennis's Price Premium Opinions Should be Excluded.

Dr. Dennis's price premium opinions—summarized in his conclusion that the #1 Brand statement led consumers to pay a 9.9% price premium for the Products (ECF 154-6 (Dennis Merits Rpt.) ¶ 23)—should be excluded because, for two reasons, it fails to meet Rule 702's requirements of relevance and reliability.

### A.   Dr. Dennis's price premium opinions are unhelpful because his conjoint analysis did not isolate the value of Plaintiffs' misreading of the #1 Brand statement.

Plaintiffs now admit that Dr. Dennis's price premium opinions do not isolate the value attributable to Plaintiffs' theory of liability. As such, they lack "relevance" or "fit." *Base*, 2019 WL 1117532, at *5 (quotations omitted). Specifically, Dr. Dennis assessed the value of the #1 Brand statement as a whole, rather than the discrete value of the Sourcing Interpretation in isolation. (Mem. at 15–17.)

Plaintiffs now concede that the #1 Brand statement can be interpreted in different ways by

different consumers. (Opp. at 16 (arguing they need not show a "uniform" interpretation of the #1 Brand statement); MSJ Opp. at 14 ("The label claim can reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing")).) They also concede that one of the interpretations—about the popularity of the Barilla brand in Italy—is true. (*See* Opp. at 17 (admitting that Barilla holds a 17.8% market share and not contending that another brand captures a higher share).) Finally, Plaintiffs do not dispute that Dr. Dennis's conjoint analysis assessed the value of the #1 Brand statement as a whole, including the interpretation that is entirely true, rather than just the discrete value of the Sourcing Interpretation. (*Compare* Mem. at 15 *with* Opp. at 16–18 (admitting that Dr. Dennis's conjoint analysis tested "use versus non-use of the Claim")).) And finally, Plaintiffs admit that their damages theory must match their liability theory. (Opp. at 18 (admitting that courts have required that expert opinions "align[] with plaintiffs' theory"); Decert. Opp. at 14 (admitting *Comcast* requires that a damages model be "consistent with [plaintiffs'] liability case").)

These undisputed facts show that Plaintiffs' liability theory (consumers understand the #1 Brand statement to mean the ingredients are from Italy) does not match their damages theory (consumers are entitled to recover the entire value of the #1 Brand statement). Thus, Dr. Dennis's price premium opinions do not "fit" the legal standard and are not helpful to the trier of fact.

Plaintiffs' primary response is to attack an argument Barilla did not make: "that a plaintiff must prove a single 'uniform' interpretation to support a price-premium model." (Opp. at 16; *see also id.* ("Plaintiffs are not required to show that 100% of consumers interpret the Italian Origin Representation the same way.").) Barilla made no such argument. (*See* Mem. at 15–17.) Rather, Barilla's argument is that Dr. Dennis's price premium analysis should have valued only the Sourcing Interpretation of the #1 Brand statement, as that is the only interpretation Plaintiffs claim is misleading. *See Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2024 WL 4565340, at *8 (N.D. Cal. Oct. 23, 2024) (rejecting plaintiffs' misreading of the fit argument as requiring proof that all consumers were misled the same way, noting that, "even assuming that Plaintiffs prove Defendants are liable" for the alleged misrepresentation, the damages model still must fit the plaintiffs' theory of liability).

Plaintiffs attack this strawman because they have no meaningful response to Barilla's actual argument. Notably, Plaintiffs fail to identify a single case where a court has accepted the argument that they advance here: that a price premium can include the entire value of a label statement when only one interpretation of that statement is alleged to be misleading. (*See* Opp. at 16–17 (citing *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020) (addressing a *Comcast* challenge about an alleged failure to isolate the challenged statements from other unchallenged statements on packaging, not different interpretations of a *single* challenged statement); *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150-RS, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) (silent on whether a damages opinion can be credited where it fails to isolate the alleged misinterpretation in a single challenged representation subject to multiple interpretations); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 995 (N.D. Cal. 2022) (same); *Lytle v. Nutramax Lab'ys, Inc.*, No. ED CV 19-0835 FMO (Spx), 2022 WL 1600047, at *15 (C.D. Cal. May 6, 2022) (same)).) These cases lend no support to Plaintiffs' argument.

By contrast, Barilla has identified over a half dozen cases where a court decertified a class, or denied certification, based on this precise failure-to-isolate issue. *See McMorrow*, 2020 WL 1157191, at *6–9; *Flodin*, 2024 WL 4565340, at *8–10; *In re ConAgra Foods*, 302 F.R.D. 537, 578–579 (C.D. Cal. 2014); *Fagan v. Neutrogena Corp.*, No. 5:13-cv-01316-SVW-OP, 2017 WL 11418358, at *3 (C.D. Cal. Oct. 24, 2017); *Moore*, 713 F. Supp. 3d at 679; *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *10–12 (C.D. Cal. June 7, 2017); *Hughes v. Ester C Co.*, 317 F.R.D. 333, 355–56 (E.D.N.Y. 2016). These cases establish the rule that Plaintiffs cannot claim the entire value of a statement, including the value of uncontested and true interpretations, when they challenge only one interpretation of it.[3] *See Flodin*, 2024 WL 4565340, at *8 (holding that "even assuming that Plaintiffs prove Defendants are liable"

---

[3] Plaintiffs argue none of this matters because every consumer "paid the same inflated price regardless of their individual interpretation." (Opp. at 17.) But the "inflated price" is only actionable if it was caused by misleading consumers in the way that Plaintiffs allege. *ConAgra*, 302 F.R.D. at 579.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

9

for misleading consumers, the damages model must still "fit" the liability theory).

Plaintiffs' only response to these cases is to point to meaningless (or incorrect) distinctions. For example, Plaintiffs say that *Flodin* is "inapposite because that case involved a net-impression theory rather than an express claim; the survey there tested 'Made with Avocado' because no specific claim appeared on the packaging." (Opp. at 18.) That is just wrong. The case never uses the term "net-impression" and *it did* involve specific claims that appeared on the packaging: "(1) the use of avocado as part of the 'AvoDerm' name; (2) the use of an avocado to represent the 'o' in the AvoDerm logo; (3) statements that the products are made 'with avocados' accompanied by images of avocados; and (4) the display of an avocado grove image across the top of the packaging (collectively, the 'Avocado Representations')." *Flodin*, 2024 WL 4565340, at *1, *7. Perhaps Plaintiffs meant to say that in *Flodin* the theory of deception turned on an *interpretation* of label statements (as opposed to an affirmatively, expressly false statement). But that would not help them, because as Plaintiffs concede, the #1 Brand Statement makes no *express* representation about ingredients. (*See* MSJ Opp. at 14 (conceding that the #1 Brand statement "can reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing").) Thus, here as in *Flodin*, Plaintiffs' claims turn on an *implied* reading of the statement, not an affirmative and unambiguous express misrepresentation.

Next, Plaintiffs say that *McMorrow* is inapposite because "Barilla has not identified any portion of the Italian Origin Representation that is improper to test." (Opp. at 18.) To the contrary, Barilla's argument is that it is improper to "test" (and therefore include in the price premium) the interpretations of the #1 Brand statement that Plaintiffs do not challenge as misleading. In other words, the expert in *McMorrow* failed to isolate at a different level of abstraction—*i.e.*, failure to isolate the challenged statement from the rest of the label versus failure to isolate the misleading interpretation of the challenged statement. But that does not undermine the proposition that class plaintiffs "must be able to isolate the price premium associated with misleading consumers in that particular fashion." *Larsen v. Vizio, Inc.*, No. SACV 14-01865-CJC (JCGx), 2017 WL 11633132, at *9 (C.D. Cal. Apr. 27, 2017) (quotation omitted).

Plaintiffs also say that *In re ConAgra* and *Fagan* are "extreme outlier[s] that conflict[] with

the Reference Manual on Scientific Evidence and ha[ve] not been followed by other courts, including those in this District." (Opp. at 18.) This is pure invention. The section of the Reference Manual Plaintiffs cited in Dr. Dennis's reply declaration (*see id.*) discusses isolating the effect of the harmful act by using a hypothetical "but-for" scenario. That is entirely consistent with *ConAgra*, *Fagan*, and Barilla's argument here. The cases Plaintiffs cite for this argument do not help them either. Neither *Krommenhock* nor *Pettit* mention the *ConAgra* decision, much less assert it is bad law. *Krommenhock*, 334 F.R.D. at 575; *Pettit*, 2017 WL 3310692, at *3.

Finally, Plaintiffs contend that the Court has already resolved these issues. (*See* Opp. at 16.) There are several problems with this argument. Barilla has not previously moved to exclude Dr. Dennis or Mr. Weir. In granting class certification, the Court held only that the unperformed damages model proposed by Plaintiffs cleared the low bar set by *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011 (9th Cir. 2024), and explicitly recognized that "[o]nce the analysis has been performed, Barilla may challenge its results." (ECF 78 at 18.) Now that Plaintiffs' experts have conducted their analyses and been deposed, Barilla is raising the challenge the Court authorized.

Dr. Dennis's price premium opinions, and the conjoint analysis on which they are based, fail to distinguish between those damages attributable to the alleged misrepresentation and the several "literally truthful" ones. *Fagan*, 2017 WL 11418358, at *3. Plaintiffs offer no justification for this mismatch. This flaw warrants decertification, (Decert. Reply, Arg. I), as well as exclusion of Dr. Dennis under Rule 702. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

**B.    Dr. Dennis's price premium opinions are unreliable because they do not account for supply-side factors and consider only consumers' alleged willingness to pay.**

Dr. Dennis's price premium opinions should also be excluded for another, independent reason: Plaintiffs concede that Dr. Dennis, when calculating the price premium, held the supply of pasta constant (or inelastic) and only allowed the price to change. (*Compare* Mem. at 17–18 *with* Opp. at 20.) This violation of basic economic principles warrants decertification, (Decert. Reply, Arg. II), as well as exclusion under Rule 702 and *Daubert*. (Mem. at 17–20.)

Plaintiffs' contrary arguments do not hold water. *First,* Plaintiffs argue that Barilla "is not

entitled to pretend that the purchases made by the Class are not fixed as a matter of history." (Opp. at 20.) Barilla does no such thing. Barilla agrees that the historical sales of the products are relevant to the *second step* in Dr. Dennis's damages analysis, in which the price premium is multiplied by units sold. But the flaw in Dr. Dennis's methodology comes in the first step, in which the price premium is calculated by simulating a hypothetical but-for world in which the #1 Brand statement was not used. The problem is that, in this first step, Dr. Dennis makes the illogical and unsupported assumption that, no matter how much price changed, Barilla would insist on selling the same amount of pasta. (*See* Mem. at 17–18.)

*Second*, Plaintiffs argue that this is a mere "methodological disagreement" that can be addressed only through cross-examination, not exclusion. (Opp. at 18.) That is not the law. Barilla cited cases (Mem. at 4, 18–19) in which courts excluded conjoint opinions—or denied certification—based on an expert's failure to account for supply side factors. *See, e.g.*, *Volkswagen*, 500 F. Supp. 3d at 949; *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2017 WL 9512587, at *20 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015); *Saavedra v. Eli Lilly Co.*, No. 21:12-cv-9366-SVW (MANx), 2014 WL 7338930, at *5, *7 (C.D. Cal. Dec. 18, 2014); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 237 (S.D.N.Y. 2019); *Passman*, 671 F. Supp. 3d at 464–65.

Plaintiffs' attempts to distinguish these cases are entirely unpersuasive and do not undermine the core principle for which Barilla cited them: damages models must consider both supply-side and demand-side factors. (Mem. at 18–20.) For example, Plaintiffs say that *Zakaria* involved "hypothetical product packages and hypothetical prices," (Opp. at 21) and that *Volkswagen* involved four bellwether plaintiffs who "no longer possessed the durable goods at issue." (*See* Opp. at 21.) But none of that affects the conclusion that damages models in those cases had the same flaw as Dr. Dennis's model here: they measured only "the putative class members' willingness to pay, not Defendant's willingness to sell." *Passman*, 671 F. Supp. 3d at 465. As the court in *Volkswagen* explained, "presuming that Defendants would have sold the same number of cars, at the exact price that consumers would have been willing to pay, is not a way to reliably

incorporate supply-side considerations." *Volkswagen*, 500 F. Supp. 3d at 949.

As for the cases Plaintiffs cite, they show, at most, a split among courts about **how** (not **whether**) supply-side factors should be incorporated into price premium analysis. (*See* Opp. at 21–22.) In deciding which side of that split to follow, this Court should take the economically sound approach and hold that any price premium determination must be based on the intersection between the supply and demand curves. The analysis in Plaintiffs' cases is, with respect, plainly wrong. Faced with plaintiffs' experts' trite observation that supply is fixed as a historical matter in the real world, those courts concluded that supply must also be held constant in the but-for world. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 605 (N.D. Cal. 2018) (concluding it was appropriate for plaintiffs' expert to "h[o]ld the quantity of product sold constant . . . because a known quantity of the product had been sold in real life"); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018) (concluding that "proposed conjoint analysis adequately account[ed] for supply-side factors" because the number of products sold is "a matter of historical fact") (quotation omitted). These decisions conflate the first and second step in the damages analysis. Historical sales are, of course, used in the second step of the damages analysis, during which the price premium is multiplied by units sold. But to use historical sales in the first step—to imagine a hypothetical world where only the *price* can fluctuate but the supply cannot—ignores basic principles of economics and should be rejected.

Finally, Plaintiffs incorrectly claim that "[u]nder controlling Ninth Circuit precedent, supply-side criticisms go to the weight of the analysis, not its admissibility." (Opp. at 19 (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010), and *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997)).) The cases Plaintiffs cite do not remotely support this sweeping proposition. *Fortunate Dynamic* and *Southland Sod Farms* address challenges to the design of consumer surveys; those cases do not even mention supply side criticisms, much less the specific criticism raised here.

## CONCLUSION

Under Rule 702 and *Daubert*, the touchstones of admissibility are "reliability" and "relevance." Neither Dr. Dennis's consumer perception opinions nor his price premium opinions

meet this standard. Both opinions should therefore be excluded.

Dated:  February 4, 2026                    FAEGRE DRINKER BIDDLE & REATH LLP

By:  */s/ David A. Belcher*
David A. Belcher
Kevin P. Wagner (Pro Hac Vice)
Aaron D. Van Oort (Pro Hac Vice)
Tyler A. Young (Pro Hac Vice)
Berglind H. Birkland (Pro Hac Vice)
David J.F. Gross

Attorneys for Defendant
BARILLA AMERICA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David A. Belcher
David A. Belcher

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

REPLY IN SUPPORT OF BARILLA'S MOTION TO STRIKE OPINIONS OF DR. DENNIS
CASE NO. 4:22-CV-03460-ASK