**FAEGRE DRINKER BIDDLE & REATH LLP**
David A. Belcher (SBN 330166)
*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel:  (310) 203-4000 | Fax (310) 229-1285

Kevin P. Wagner (Pro Hac Vice)
*kevin.wagner@faegredrinker.com*
Aaron D. Van Oort (Pro Hac Vice)
*aaron.vanoort@faegredrinker.com*
Tyler A. Young (Pro Hac Vice)
*tyler.young@faegredrinker.com*
Berglind H. Birkland (Pro Hac Vice)
*berglind.birkland@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Tel:  (612) 766-7000 | Fax (612) 766-1600

David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone:   (480) 643-1850

Attorneys for Defendant
BARILLA AMERICA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA AMERICA, INC.,<br><br>Defendant. | Case No. 4:22-cv-03460-ASK<br><br>Hon. Ajay Krishnan<br>Courtroom TBD<br><br>**DEFENDANT BARILLA AMERICA, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  March 26, 2026<br>Time: 1:00 p.m.<br>Place: TBD |

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I. Plaintiffs' statutory claims fail because the #1 Brand statement is true and does not deceive reasonable consumers about the Products' ingredients. ................ 3

    A. Label statements are read reasonably, and when reasonable consumers encounter ambiguous statements, they check the whole label to inform them. ...................................................................................... 3

    B. Reasonable consumers understand and are not misled by the #1 Brand statement. ....................................................................................... 5

        1. The #1 Brand statement accurately states that Barilla is the #1 brand of pasta in Italy and cannot reasonably be read to claim something else. ................................................................. 5

        2. Even if the #1 Brand statement could be read to make a claim about ingredient origin, any such claim would be ambiguous at most and subject to clarification. ........................... 7

    C. If Plaintiffs' consumer perception expert opinions are excluded under *Daubert*, summary judgment is required on Plaintiffs' statutory claims. ............................................................................... 10

II. Plaintiffs' common law claims fail as a matter of law. ........................................... 11

    A. Plaintiffs' breach of warranty claims fail for lack of an actionable misrepresentation. ........................................................... 11

    B. Plaintiffs' unjust enrichment claim is not an independent cause of action. ...................................................................................... 12

III. Barilla is entitled to judgment against Plaintiffs' claim for punitive damages. ...................................................................................................................... 12

IV. At minimum, the Court should clear out two categories of claims that Plaintiffs chose not to develop. ................................................................................ 14

    A. No evidence supports a manufactured-in-Italy claim. ................................. 14

    B. No evidence supports a claim against any statement other than the #1 Brand statement. ..................................................................................... 15

CONCLUSION ......................................................................................................................... 15

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:22-CV-03460-ASK

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Bruton v. Gerber Prods. Co.*,
 No. 12-CV-02412-LHK, 2014 WL 7206633 (N.D. Cal. Dec. 18, 2014) ................................. 10

*Bryan v. Del Monte Foods, Inc.*,
 No. 23-3685, 2024 WL 4866952 (9th Cir. Nov. 22, 2024) ............................................................ 4

*Bueno v. Merck & Co.*,
 746 F. Supp. 3d 853 (S.D. Cal. 2024) ................................................................................ 11

*Cheslow v. Ghirardelli Chocolate Co.*,
 445 F. Supp. 3d 8 (N.D. Cal. 2020) .................................................................................. 11

*Corbett v. PharmaCare U.S., Inc.*,
 No. 3:21-CV-00137-JES-AHG, 2025 WL 1746308 (S.D. Cal. June 24, 2025) ................ 4, 7, 9

*Daniels v. Eagle Fam. Foods Grp., LLC*,
 797 F. Supp. 3d 1154 (E.D. Cal. 2025) ....................................................................... 8

*de Dios Rodriguez v. Olé Mexican Foods Inc.*,
 No. EDCV202324, 2021 WL 1731604 (C.D. Cal. Apr. 22, 2021) ..................................... 2

*Gearsource Holdings, LLC v. Google LLC*,
 No. 18-CV-03812-HSG, 2020 WL 3833258 (N.D. Cal. July 8, 2020) ................................... 12

*Golikov v. Walmart Inc.*,
 No. 2:24-CV-08211, 2025 WL 648532 (C.D. Cal. Feb. 27, 2025) ........................................ 13

*Hadley v. Kellogg Sales Co.*,
 No. 16-CV-04955-LHK, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ............................... 13

*hiQ Labs, Inc. v. LinkedIn Corp.*,
 639 F. Supp. 3d 944 (N.D. Cal. 2022) .......................................................................... 11, 13, 15

*Hodges v. King's Hawaiian Bakery West, Inc.*,
 No. 21-CV-04541-PJH, 2021 WL 5178826 (N.D. Cal., Nov. 8, 2021) ................................... 10

*Ivie v. Kraft Foods Glob., Inc.*,
 No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ................................... 12

*Kim v. Blue Triton Brands*,
 No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085 (C.D. Cal. Nov. 1, 2022) ..................... 6, 11

*Krause-Pettai v. Unilever United States, Inc.*,
 696 F. Supp. 3d 916 (S.D. Cal. 2023) ...................................................................................... 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:22-CV-03460-ASK

*Kumar v. Salov N. Am. Corp.*,
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) .................................... 14

*La Barbera v. Ole Mexican Foods Inc.*,
No. EDCV202324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ..............................2, 6, 9, 10

*Martin v. Monsanto Co.*,
No. EDCV16–2168–JFW, 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ........................... 11

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ..................................................................................... 1, 2, 4, 9

*McLeod v. Zero Gravity Mgmt.*,
No. 2:22-CV-01547-FWS-AGR, 2024 WL 2346600 (C.D. Cal. Apr. 26, 2024) ..................... 9

*McWhorter v. Procter & Gamble Co.*,
No. 24-CV-00806-AMO, 2025 WL 948061 (N.D. Cal. Mar. 28, 2025) .................................. 6

*Mier v. CVS Pharmacy, Inc.*,
No. 8:20-cv-01979-DOC-ADS, 2024 WL 121880 (C.D. Cal. Jan. 10, 2024) ......................... 8

*Moore v. Trader Joe's*,
4 F.4th 874 (9th Cir. 2021) ..................................................................................................*passim*

*Nacarino v. KSF Acquisition Corp.*,
642 F. Supp. 3d 1074 (N.D. Cal. 2022) .............................................................................. 12

*Peacock v. Pabst Brewing Co., LLC*,
No. 2:18-CV-00568, 2024 WL 1160687 (E.D. Cal. Mar. 18, 2024) ...................................... 10

*Peacock v. Pabst Brewing Co.*,
No. 24-2494, 2025 WL 1189562 (9th Cir. Apr. 24, 2025) ..................................................... 15

*Perkins v. Procter & Gamble Co.*,
801 F. Supp. 3d 1141 (S.D. Cal. 2025) .................................................................................. 8

*Rahman v. Mott's LLP*,
No. CV 13-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ............................................ 10

*Ries v. Arizona Beverages USA LLC*,
No. 10-01139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ................................................. 4

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*,
No. 14-CV-00362-BLF, 2014 WL 3705350 (N.D. Cal. July 24, 2014) .................................. 13

*Tran v. Sioux Honey Ass'n, Coop.*,
471 F. Supp. 3d 1019 (C.D. Cal. 2020) ............................................................................. 4, 10

*Victor v. R.C. Bigelow, Inc.*,
No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ............................ 4, 5

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

iv

*Walker v. Signal Co., Inc.*,
   84 Cal. App. 3d 982 (1978) ................................................................................................ 13

*Whiteside v. Kimberly Clark Corp.*,
   108 F.4th 771 (9th Cir. 2024) ....................................................................................*passim*

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................................... 4

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

v

**<u>INTRODUCTION</u>**

Under Ninth Circuit law and the undisputed factual record, Plaintiffs' claims against the label statement "Italy's #1 Brand of Pasta" (the "#1 Brand statement") fail for several reasons. As Barilla demonstrated, the most natural reading of the statement is true: Barilla sells more pasta in Italy than any other brand (the "Selling Interpretation"). Plaintiffs' misreading of the statement— that the Product's ingredients are exclusively sourced from Italy (the "Sourcing Interpretation")[1]— is unreasonable and inconsistent with the statement's actual language. And even if the #1 Brand statement could be understood to say anything about ingredient origin, any such message is at most *ambiguous*, and therefore reasonable consumers would seek out more information on the product label and find the statement "Made in the U.S.A. and with U.S.A. and imported ingredients," (the "Origin Disclosure") which would eliminate any confusion.

In response to all this, Plaintiffs offer nothing capable of saving their claims. They do not meaningfully dispute that the Selling Interpretation is true or that it is the most common understanding of the #1 Brand statement. Plaintiffs do not explain how the Sourcing Interpretation is a natural or reasonable reading of the statement's actual language. Nor do they assert that the #1 Brand statement *unambiguously* conveys that the Product's ingredients are exclusively sourced from Italy. Finally, Plaintiffs do not explain how consumers could read the Origin Disclosure and still *reasonably* hold the Sourcing Interpretation.

Instead, Plaintiffs ignore how a trifecta of recent Ninth Circuit decisions has developed the law. *See Moore v. Trader Joe's*, 4 F.4th 874, 882-83 (9th Cir. 2021); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780-81 (9th Cir. 2024). These decisions established the rule that reasonable consumers, faced with an ambiguous statement, will consult the rest of the product packaging to find clarity. Plaintiffs ignore both these decisions and the rule they announced because they are dispositive of their claims.

Finally, Plaintiffs argue that earlier proceedings in this case preclude the Court from granting summary judgment. (*See* ECF 163 (Opposition to Motion for Summary Judgment

---

[1] Plaintiffs also alleged that consumers understand the #1 Brand statement to mean the pasta is *manufactured* in Italy, but as shown below, summary judgment should be entered on that claim because Plaintiffs failed to develop evidence to support it. (*See infra* at 3, 14-15.)

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

1

("Opp.") at 4, 19 n.1.).) This argument fails on many levels. For one thing, the law has significantly evolved since the Court denied Barilla's motion to dismiss. (*See infra* at p. 10.) For another, while the Court could well conclude based on the pleadings alone that Plaintiffs' claims fail under Ninth Circuit law, Barilla has also shown as an evidentiary matter that their claims fail on summary judgment. Finally, in granting class certification, the Court did not engage in detail with Barilla's *McGinity* arguments, which the Court concluded had not been raised in a direct manner. (ECF 103 (Order on Motion for Leave to File Motion for Reconsideration) at 6:5-15.) The Court should now apply the governing law to the undisputed facts and grant summary judgment.

In doing so, the Court should consider *La Barbera v. Ole Mexican Foods Inc.*, which addressed claims that consumers believed tortilla products were made in Mexico because the labels included the phrase, "El Sabor de Mexico!" or "A Taste of Mexico!," the brand name "La Banderita," and a "highly stylized" Mexican flag adopting the Mexican tricolor. No. EDCV202324, 2023 WL 4162348, at *2, *15 (C.D. Cal. May 18, 2023). The court denied an initial motion to dismiss in 2021, finding that the labels could plausibly mislead reasonable consumers and refusing to consider the "Made in U.S.A." disclosure on the back label. *de Dios Rodriguez v. Olé Mexican Foods Inc.*, No. EDCV202324, 2021 WL 1731604, at *5 (C.D. Cal. Apr. 22, 2021). Notably, Judge Ryu relied on that initial decision in denying Barilla's motion to dismiss. (ECF 30 (Order on Motion to Dismiss First Amended Complaint) at 22:14-21.) Two years later, however, after a new plaintiff was substituted, the court granted with prejudice a motion to dismiss a substantially identical amended complaint. *La Barbera*, 2023 WL 4162348, at *1, *21. The *La Barbera* court, recognizing that the Ninth Circuit's decision in *Moore* "materially altered the state of the law," reconsidered its holding and concluded that "Plaintiff's reading of the Products' labels are likely in the first category of plainly unreasonable interpretations. But even if it is not, the Products are at worst in the *Moore* category of 'ambiguous front-label claims that are consistent with back-label claims,' in which all available context definitively shows that the Products are not made in Mexico." *Id*. at *8, *12. *La Barbera*'s thorough application of the law to a similar label shows that, after *Moore*, Plaintiffs' claims in this case cannot survive summary judgment. *Id.* at *8-17.

Because summary judgment is appropriate on Plaintiffs' statutory claims, it is also

appropriate on their common law claims. Plaintiffs do not dispute this principle. In addition, Plaintiffs' breach of warranty claims fail because the #1 Brand statement is not a specific and unequivocal representation of ingredient origin. Plaintiffs' unjust enrichment claim fails because it is a remedy, not a cause of action, and Plaintiffs provide no good reason why the Court should construe it as a quasi-contract claim seeking restitution at this stage of the case.

Barilla is also entitled to summary judgment on punitive damages because Plaintiffs provide no evidence (much less clear and convincing evidence) indicating fraud and do not identify any member of Barilla's management who committed a punishable act.

At a minimum, the Court should clear out two categories of unsupported claims: (1) the claim that the #1 Brand statement misleads reasonable consumers to believe the Products are *manufactured* in Italy (the "Manufacturing Interpretation"), and (2) claims against any statement other than the #1 Brand statement. While Plaintiffs emphasize that they continue to assert these claims, they failed to adduce evidence to support them, and summary judgment is thus required.

## ARGUMENT

### I.    Plaintiffs' statutory claims fail because the #1 Brand statement is true and does not deceive reasonable consumers about the Products' ingredients.

Barilla demonstrated in its opening brief that (1) the #1 Brand statement is true, and reasonable consumers would not misread it in the atextual way Plaintiffs do, and (2) even if the #1 Brand statement could be read to make a claim about ingredient origin (or manufacturing location), such a claim would be at most ambiguous and thus subject to clarification by the unambiguous statement that the Products are manufactured "in the U.S.A. with U.S.A. and imported ingredients." Plaintiffs fail to refute any of these points, and thus Barilla is entitled to summary judgment.

#### A.   Label statements are read reasonably, and when reasonable consumers encounter ambiguous statements, they check the whole label to inform them.

As Barilla established, Plaintiffs' statutory claims require proof that a significant portion of the consuming public, acting reasonably, would be misled by the #1 Brand statement. (ECF 150 (Notice of Motion and Motion for Summary Judgment ("Mem.") at 12.).) Plaintiffs agree. (*See* Opp. at 4-5 ("The relevant inquiry is not whether [a party] can identify some consumers who

understood the statement differently; it is whether Plaintiffs have produced evidence from which a reasonable jury could conclude that a significant portion of consumers were misled[.]").) But that is where the Parties' agreement on the law ends.

Plaintiffs insist, without citation, that "settled Ninth Circuit authority" makes the reasonable consumer standard exclusively "a factual question for the jury." (Opp. at 3.) This is simply wrong. Barilla cited a series of cases in which Ninth Circuit courts have applied the reasonable consumer standard to dismiss unsupported consumer protection claims as a matter of law.[2] Plaintiffs cite no contrary authority.

Furthermore, under Ninth Circuit law, reasonable consumers are not deceived by a label statement that might be ambiguous in isolation but is clear in context, because the ambiguity will cause them to seek out clarifying information. (*See* Mem. at 13-14 (discussing *Moore*, 4 F.4th at 882-83; *McGinity*, 69 F.4th at 1098-99; *Whiteside*, 108 F.4th at 780-81).) Plaintiffs do not engage with these recent, controlling cases, but instead rely on outdated case law to insist that "[t]he Ninth Circuit has held that it is improper to find as a matter of law that back or side-label language necessarily cure a misleading front-label."[3] (Opp. at 4.) This is not the law. The court may decide, as a matter of law, that an ambiguous front-label claim is not deceptive when viewed in the context of the entire label. *See McGinity*, 69 F.4th at 1099 ("We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label."). Only where a front-label claim conveys an "unambiguously deceptive" message is the back label not to be considered. *Bryan v. Del Monte Foods, Inc*., No. 23-3685, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024).

---

[2] *See, e.g.*, *Corbett v. PharmaCare U.S., Inc*., No. 3:21-CV-00137-JES-AHG, 2025 WL 1746308, at *4-6 (S.D. Cal. June 24, 2025) (granting summary judgment because "[a]s a matter of law, the Challenged Misrepresentations are ambiguous, not deceptive, and are not misleading to a reasonable consumer."); *Tran v. Sioux Honey Ass'n, Coop*., 471 F. Supp. 3d 1019, 1026-29 (C.D. Cal. 2020); *Ries v. Arizona Beverages USA LLC*, No. 10-01139, 2013 WL 1287416, at *3-7 (N.D. Cal. Mar. 28, 2013); *Victor v. R.C. Bigelow, Inc*., No. 13-CV-02976-WHO, 2016 WL 4502528, at *2-4 (N.D. Cal. Aug. 29, 2016), *aff'd*, 708 F. App'x 333 (9th Cir. 2017).

[3] Plaintiffs rely on *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). (Opp. at 18.) *Williams* predates *Moore*, *McGinity*, and *Whiteside* (*see* Mem. at 13) and does not reflect the current state of Ninth Circuit law. *See Whiteside*, 108 F.4th at 778 (explaining that since *Williams*, the Ninth Circuit has refined its analysis in false advertising cases such that the court may consider additional context, such as the back label, when the front label is ambiguous).

**B. Reasonable consumers understand and are not misled by the #1 Brand statement.**

Under this law, Barilla is entitled to summary judgment because reasonable consumers understand "Italy's #1 Brand of Pasta" to mean what it plainly says and what is undisputedly true, and any misreading of the statement would be clarified by the rest of the label.

**1. The #1 Brand statement accurately states that Barilla is the #1 brand of pasta in Italy and cannot reasonably be read to claim something else.**

The most natural reading of the #1 Brand statement—that Barilla sells more pasta in Italy than any other brand—is true. (Mem. at 4-5, 14-15.) Plaintiffs do not dispute this.[4] (*See* Opp. at 6 (recognizing "[q]uantitative studies" showing "Barilla ranks as the 'best Italian pasta brand'"); *id.* at 12-13 ("even if Barilla is in fact the leading pasta brand in Italy . . .").) Nor do they meaningfully dispute that this is the most common interpretation of the #1 Brand statement.[5] (*See id.* at 12 ("[A] belief that Barilla is the number one brand in Italy may reinforce, rather than displace, the belief that the pasta itself is made in Italy with Italian ingredients.").)

Instead, Plaintiffs argue that literal truth is not a defense. (*Id.*) But the Ninth Circuit has recognized that "other contextual factors aside from the back label can defeat claims that a product's label is misleading." *Whiteside*, 108 F.4th at 779. Thus, the truth of a challenged statement is a factor the court may consider under the reasonable consumer standard. *See Victor*, 2016 WL 4502528, at *3 ("While [the defendant] does not have the burden of proving its statements are accurate, it has presented evidence that its label statements are true and, therefore, unlikely to

---

[4] In opposing Barilla's Motion to Strike the Opinions of Dr. J. Michael Dennis, Plaintiffs contend that "Barilla holds only a 17.8% market share in Italy, with 59.8% of the marketplace composed of firms each holding less than 6.7%[.]" (ECF 165 (Opposition to Motion to Strike the Opinions of Dr. J. Michael Dennis at 17).) The referenced data plainly demonstrates Barilla holds the largest share of the Italian pasta market, commanding nearly 9% more of the market in 2023 than the next leading brand. (*See* ECF 154-9 (Cantor Rebuttal Rpt. Exh. 2).) That 59.8% of the market is held by companies individually holding less than 6.7% of the market is entirely consistent with Barilla's market leading position.

[5] Plaintiffs take a cursory swipe at alleged "methodological flaws" in Dr. Andreas Groehn's survey (*see* Opp. at 11-12), which captured a more objective consumer understanding of the #1 Brand statement by presenting respondents with the choice of five possible interpretations. Crucially, Plaintiffs admit that this survey shows most consumers understand the #1 Brand statement to convey the factually accurate Selling Interpretation. (*See, e.g.*, *id.* at 12 ("Even if Groehn's results are accepted as true, . . . evidence that some consumers interpret the statement as referring to brand popularity in Italy does not foreclose a simultaneous interpretation that the Products are made with Italian ingredients; the two are not mutually exclusive.").)

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:22-CV-03460-ASK

mislead or deceive reasonable consumers."). Here, that the most natural reading of the #1 Brand statement is true further undermines Plaintiffs' claim that it would mislead reasonable consumers.

Barilla also demonstrated that Plaintiffs' misreading of the #1 Brand statement is unreasonable. (*See* Mem. at 15-16.) Plaintiffs' misreading effectively adds words that do not appear in the statement and ignores those—like "Brand"—that do. *See McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061, at *7 (N.D. Cal. Mar. 28, 2025) ("A reasonable consumer may not ignore the labels' actual wording or substitute another claim that the Product labels never made."). Plaintiffs assert, "[t]he label affirmatively states that the pasta Product is 'ITALY'S,'" (Opp. at 19) but the label Barilla submitted shows that the #1 Brand statement says nothing about ingredient origin. (*See* ECF 154-1.) It speaks only to the Barilla **brand**. *See Kim v. Blue Triton Brands*, No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085, at *4 (C.D. Cal. Nov. 1, 2022) (reasoning that consumers would understand "Brand" appearing beside the word "Arrowhead" to mean Arrowhead is the brand of water, not that the water is from Arrowhead Mountain). Plaintiffs do not address the cases Barilla cited where Ninth Circuit courts dismissed theories premised on unreasonable interpretations of truthful labeling claims. (*See* Mem. at 16 n.6.)

Plaintiffs assert that "cultural context reinforces" the Sourcing Interpretation because "American consumers reasonably associate pasta with Italy and would not expect the purportedly most popular pasta in Italy to be made from non-Italian ingredients[.]" (Opp. at 16.) But Barilla cited caselaw recognizing the "inherently unreasonable assumption that just because a food clearly originates from a foreign country, whether it is pasta or tortillas, that *ipso facto* it must be made in that country." (Mem. at 16 (citing *La Barbera*, 2023 WL 4162348, at *14).) What's more, in making this argument Plaintiffs rely on the opinion of Colin Weir, who "does not present himself as a consumer psychologist." (ECF 166 (Opposition to Motion to Strike the Opinions of Colin Weir) at 2); *see also id.* at 6 ("Plaintiffs retained Mr. Weir not to assess consumer preferences").)

In sum, summary judgment is appropriate because the #1 Brand statement is true and Plaintiffs' misinterpretation is unreasonable.

**2. Even if the #1 Brand statement could be read to make a claim about ingredient origin, any such claim would be ambiguous at most and subject to clarification.**

If the #1 Brand statement could be read at all to make a claim about ingredient origin, Plaintiffs' claims would still fail because the meaning behind any such claim would be ambiguous at most, and the rest of the label would clarify it. (*See* Mem. at 17-19.) Critically, Plaintiffs never assert that the #1 Brand statement *unambiguously* represents that all the pasta's ingredients are sourced from Italy. Nor could they credibly do so. (*See id.*) Instead, Plaintiffs make a series of concessions that confirm the #1 Brand statement is at most ambiguous. (*See, e.g.*, Opp. at 12 ("evidence that some consumers interpret the statement as referring to brand popularity in Italy does not foreclose a simultaneous interpretation that the Products are made with Italian ingredients; the two are not mutually exclusive"); *id.* at 13 (implying this case involves "advertising [that] conveys more than one reasonable meaning"); *id.* at 14 (the #1 Brand statement can "reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing"); *id.* at 21 ("interpretations of origin and interpretations of brand popularity are not mutually exclusive").)

The closest Plaintiffs come to challenging ambiguity is when they argue that Dr. Dennis's consumer survey included a "Don't know / not sure" option, and therefore "the 57% figure reflects only those consumers who affirmatively and confidently understood the claim to mean the pasta's ingredients were sourced solely from Italy."[6] (*Compare* Mem. at 18 *with* Opp. at 15.) Plaintiffs overstate what Dr. Dennis's survey did, claiming that it "expressly instructed" respondents to choose the "Don't know / not sure" option "if they lacked confidence or had no opinion." (Opp. at 15.) This is wrong. The survey instructed respondents to choose that option *only* if they "do not have an opinion." (ECF 154-5 (Dennis Cert. Rpt. ¶¶ 65, 67).) To state the obvious, a respondent agreeing (when the concept is suggested to them) that the #1 Brand statement "communicates" that the "product's ingredients are sourced from Italy" (*id.* ¶ 69) is a far cry from a respondent indicating

---

[6] Plaintiffs attempt to distinguish *Whiteside* and *Corbett* because "[t]here is no asterisk, qualifier, or contextual cue suggesting that consumers should search another panel for clarification." (Opp. at 19 (citing *Whiteside*, 108 F.4th at 781); *id.* at 15 (citing *Corbett*, 2025 WL 1746308, at *5).) That is not the test for ambiguity—certainly there is no requirement that a statement be marked by an asterisk to be ambiguous. *See, e.g.*, *Moore*, 4 F.4th at 881 (holding "100% New Zealand Manuka Honey," with no asterisk, was not misleading as a matter of law).

that they can reasonably conclude, without further information, that the label is making that specific representation. And the latter is the governing legal standard. *See Whiteside*, 108 F.4th at 781 ("[A] front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation.").

Thus, the #1 Brand statement is, at most, ambiguous, and the Court may consider the rest of the label—just as a reasonable consumer would. *See Perkins v. Procter & Gamble Co.*, 801 F. Supp. 3d 1141, 1147 (S.D. Cal. 2025) ("If the front label is ambiguous, the court can consider additional context available to the consumer—such as the back-label ingredient list—to determine whether the label could plausibly deceive a reasonable consumer.").

This is game over for Plaintiffs' claims. (*See* Mem. at 19.) The side labels of the Products clearly state, "Made in the U.S.A. with U.S.A. and imported ingredients," (*id*. at 4) and thus any ambiguity is dispelled. *See Daniels v. Eagle Fam. Foods Grp., LLC*, 797 F. Supp. 3d 1154, 1163 (E.D. Cal. 2025) ("If an ambiguity on the front packaging…matters to a consumer…and the back packaging resolves that ambiguity, the consumer cannot claim to have been misled.").

Seeking to avoid this result, Plaintiffs make a series of arguments challenging the effect of the Product's Origin Disclosure. None is persuasive.

*First*, Plaintiffs say Barilla did not prove that consumers notice the Origin Disclosure or how they interpret it. (*See* Opp. at 18.) This argument misunderstands the law and the facts. On the law, there is no separate requirement to prove consumers notice the clarifying information. If a label claim is ambiguous, then reasonable consumers *seek out* more information before interpreting it to make a particular representation. *See Moore*, 4 F.4th at 882. Thus, the only question is whether the Origin Disclosure is available to anyone seeking to clarify the #1 Brand statement. It is. On the facts, Plaintiffs do not dispute that the meaning of the Origin Disclosure is perfectly clear. (*See* Mem. at 19.) Nor do they propose any plausible way for a consumer to hold the Sourcing Interpretation after reading the Origin Disclosure. This is fatal. *See Mier v. CVS Pharmacy, Inc.*, No. 8:20-cv-01979-DOC-ADS, 2024 WL 121880, at *8 (C.D. Cal. Jan. 10, 2024) ("Plaintiff['s] misunderstanding of the label only makes sense if the Court or a consumer were to ignore the statement on the back label."), *aff'd*, No. 24-482, 2025 WL 1905109 (9th Cir. July 10, 2025).

*Second*, Plaintiffs say, "Consumers in Dr. Dennis's survey were exposed to the entire box, including the 'Made in the U.S.A. with U.S.A. and imported ingredients' language, yet 57% still were misled by the Challenged Representation."[7] (Opp. at 18.) Not so. There is a reason Plaintiffs chose the awkward word "exposed" in this sentence. Respondents were only "exposed" to the full product label early in the survey; they were *unable to view it* when answering the critical question on the meaning of the #1 Brand statement.[8] What's more, when answering that question, respondents were directed to focus only on "this statement" (*i.e.*, the #1 Brand statement). (ECF 154-5 (Dennis Cert. Rpt. ¶ 69).) They were *not* asked to assess the meaning of the Origin Disclosure or the entire label. *See McLeod v. Zero Gravity Mgmt.*, No. 2:22-CV-01547-FWS-AGR, 2024 WL 2346600, at *2 (C.D. Cal. Apr. 26, 2024) ("'the court is not required to defer to the contrary opinion of an expert' where the underlying evidence is sufficiently clear" (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989))). As a result, Plaintiffs did not test consumer understanding of the #1 Brand statement in conjunction with the Origin Disclosure, and therefore failed to meet their burden of showing the ambiguous #1 Brand statement is deceptive in context.

Third, Plaintiffs say, "Consumers are not expected to 'cure' deception by scouring the side of a package when the front label delivers a deceptive message." (Opp. at 18.) But the cases Plaintiffs cite for this proposition all predate, and were clarified by, *Moore*, *McGinity*, and *Whiteside*, which hold that when a challenged statement is *ambiguous*, reasonable consumers *do* seek out further information. (*See* Mem. at 13-14; *supra* at p. 4.)

Finally, Plaintiffs' various attempts to distinguish or avoid the cases Barilla cited utterly fail. On this point, *La Barbera* is most instructive. Plaintiffs argue that *La Barbera* is distinguishable because "this Court has already found that Barilla 'explicitly connects their Italian

---

[7] Barilla cited cases where a near half split in consumer survey respondents indicated ambiguity, and Plaintiffs' attempts to distinguish those cases on irrelevant grounds fail. (*Compare* Mem. at 18 (citing *McGinity*, 69 F.4th at 1097; *Corbett*, 2025 WL 1746308, at *5) *with* Opp. at 15.)

[8] In support of its Motion to Strike the Opinions of Dr. J. Michael Dennis, Barilla demonstrated that survey respondents could not revisit the product packaging. (*See* ECF 152 (Motion to Strike Opinions of J. Michael Dennis at 6 (noting that "the question…does not provide the remainder of the product packaging")).) Plaintiffs did not dispute this. (*See* ECF 165 (Opposition to Motion to Strike the Opinions of Dr. J. Michael Dennis at 10 (explaining how respondents were "required to confirm that they *were* able to examine the product *before proceeding*" (emphasis added))).)

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

origin to present day' and that its labels operate 'against the backdrop of a long-standing marketing strategy expressly connected to a particular geographic location.'" (Opp. at 17 (quoting ECF 30 at 22:22–23:8 (addressing *Hodges v. King's Hawaiian Bakery West, Inc.*, No. 21-CV-04541-PJH, 2021 WL 5178826 (N.D. Cal., Nov. 8, 2021))).) This attempted distinction is meaningless.

*La Barbera* concerns highly aligned facts, including label claims that reference "Mexico," together with a similar Origin Disclosure ("Made in U.S.A."). 2023 WL 4162348, at *2. After initially denying a pre-*Moore* motion to dismiss, the Court later recognized that *Moore* "materially altered the state of the law" and dismissed the claims because "the Products are at worst in the *Moore* category of 'ambiguous front-label claims that are consistent with back-label claims,' in which all available context definitively shows that the Products are not made in Mexico." *Id*. at *8, *12. The same reasoning applies with full force here.

### C. If Plaintiffs' consumer perception expert opinions are excluded under *Daubert*, summary judgment is required on Plaintiffs' statutory claims.

Barilla also established that the Court should enter summary judgment on Plaintiffs' statutory claims for the separate reason that Dr. Dennis's consumer perception opinions should be excluded under *Daubert*, and without those opinions Plaintiffs cannot prove that reasonable consumers would be misled by the #1 Brand statement. (*See* Mem. at 20-21.)

Plaintiffs do not dispute that their only evidence of consumer perception is Dr. Dennis's consumer survey. Nor do they address the numerous cases Barilla cited holding that a plaintiff's own testimony is insufficient to create a genuine issue under the reasonable consumer standard.[9]

Instead, Plaintiffs argue that, even if Dr. Dennis's opinions are excluded, "ample additional evidence independently establishes economic injury: Barilla's pervasive Italian-identity marketing, packaging, website claims, and social-media content, all reinforcing the false impression of authentic Italian origin." (Opp. at 23.) But Barilla's argument is about Plaintiffs' inability to prove consumer deception, not economic injury. (*See* Mem. at 20-21.) Plaintiffs cite no authority

---

[9] *See* Mem. at 20-21 (citing *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019 (C.D. Cal. 2020); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 7206633 (N.D. Cal. Dec. 18, 2014); *Peacock v. Pabst Brewing Co., LLC*, No. 2:18-CV-00568, 2024 WL 1160687 (E.D. Cal. Mar. 18, 2024); *Krause-Pettai v. Unilever United States, Inc.*, 696 F. Supp. 3d 916 (S.D. Cal. 2023); *Rahman v. Mott's LLP*, No. CV 13-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014)).

indicating a plaintiff can show a challenged statement is deceptive by pointing to unrelated marketing materials that (1) do not address the challenged statement, (2) Plaintiffs did not see or rely on, and (3) Plaintiffs' experts did not study. They cannot. *See Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020) ("Even if the court were to consider the website as part of defendant's overall advertising," the challenged portion "is not connected" to the product).

## II. Plaintiffs' common law claims fail as a matter of law.

Plaintiffs do not dispute that, if their statutory claims fail, their common law claims fail for the same reasons. (*Compare* Mem. at 21 *with* Opp. at 23-25 (discussing common law claims).) That issue is thus waived. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 964 (N.D. Cal. 2022) (finding waiver when the non-moving party "does not oppose in its response brief"); *Bueno v. Merck & Co.*, 746 F. Supp. 3d 853, 872 (S.D. Cal. 2024) (granting summary judgment "because Plaintiff does not address [the issue] in his opposition"). Plaintiffs' common law claims also fail for independent reasons. (*See* Mem. at 22-24.)

### A. Plaintiffs' breach of warranty claims fail for lack of an actionable misrepresentation.

Plaintiffs do not dispute that their breach of warranty claim requires them to identify a "specific and unequivocal" statement that the Products were made exclusively with Italian ingredients. (*Compare* Mem. at 22 *with* Opp. at 23.) The #1 Brand statement does not qualify.

Plaintiffs say they "consistently alleged" that the #1 Brand statement "affirmatively communicates that the Products are authentic Italian pastas made in Italy with Italian-sourced ingredients."[10] (Opp. at 23.) But this simply restates Plaintiffs' *interpretation* of the #1 Brand statement. (*See id.* (Dr. Dennis's survey shows how consumers "*understand*" the #1 Brand statement (emphasis added)).) Plaintiffs cannot claim that the #1 Brand statement communicates any such message *specifically* and *unequivocally*—because it doesn't. *See Kim*, 2022 WL 17061085, at *6 (Arrowhead brand name and imagery of a mountain was not an "unequivocal

---

[10] Plaintiffs cite *Martin v. Monsanto Co.*, 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) for the proposition that an "affirmation of fact" or "description of the food" like the #1 Brand statement can create an express warranty. *Martin* does not involve a food product and does not contain the latter phrase Plaintiffs quote. 2017 WL 1115167, at *6-7 (involving herbicide "prominently" labeled "Makes Up to [ ] Gallons").

statement" that the water was from Arrowhead Mountain); *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022) ("20g HIGH PROTEIN" was not an "express statement" that the amount of protein is per serving/scoop alone). Barilla cited these cases in its opening brief, and Plaintiffs ignore them. (*See* Mem. at 22.) Thus, summary judgment is required.[11]

### B.    Plaintiffs' unjust enrichment claim is not an independent cause of action.

Barilla demonstrated that Plaintiffs' unjust enrichment claim is a remedy, not a standalone cause of action. (*See* Mem. at 23.) As expected, Plaintiffs respond by arguing that some courts have construed an unjust enrichment claim as a quasi-contract claim seeking restitution. (*See* Opp. at 25.) But Plaintiffs do not respond to Barilla's point that—even if these cases were rightly decided— it makes little sense to *construe* Plaintiffs' unjust enrichment claim, which they had the opportunity to amend, as a quasi-contract claim at summary judgment. (*See* Mem. at 23.) Nor do Plaintiffs engage with the better reasoned, more recent cases Barilla cited where courts dismissed standalone unjust enrichment claims because unjust enrichment is not an independent cause of action. (*See id.*)

Even if the Court construed Plaintiffs' claim as a quasi-contract claim, it would fail, as confirmed by the cases Plaintiffs cite. For example, *Ivie v. Kraft Foods Glob., Inc.* dismissed an unjust enrichment claim with prejudice because the "Plaintiff cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims." No. C-12-02554-RMW, 2013 WL 685372, at *13 (N.D. Cal. Feb. 25, 2013) (quotation omitted).[12] Here, as in *Ivie*, Plaintiffs' unjust enrichment claim "is simply a reformulation of [their] UCL, FAL, and CLRA claims." 2013 WL 685372 at *13; (*See* Opp. at 25 (describing Plaintiffs' unjust enrichment claim).) Thus, Plaintiffs' unjust enrichment claim, to the extent it is a claim at all, fails on the law.

### III.    Barilla is entitled to judgment against Plaintiffs' claim for punitive damages.

Barilla established that Plaintiffs' claims for punitive damages in connection with their

---

[11] Plaintiffs do not dispute that their claim for breach of implied warranty hinges on the success of their claim for breach of express warranty. (*See* Mem. at 22.)

[12] Plaintiffs also cite *Gearsource Holdings, LLC v. Google LLC*, where the court granted summary judgment for the defendant because the plaintiff's unjust enrichment claim was premised on the same insufficient facts as their failed trademark infringement and false advertising claims and there was no evidence that the plaintiff conferred a benefit on the defendant. No. 18-CV-03812-HSG, 2020 WL 3833258, at *13 (N.D. Cal. July 8, 2020).

FAL, UCL, warranty, and unjust enrichment claims should be dismissed because none of those claims provides for punitive damages. (*See* Mem. at 24.) Plaintiffs do not dispute the point, and it is therefore waived. *See hiQ Labs*, 639 F. Supp. 3d at 964.

Barilla also established, and Plaintiffs again failed to dispute, that punitive damages under the CLRA require (1) clear and convincing evidence of oppression, fraud, or malice, and (2) an action by a company officer, director, or managing agent. (*See* Mem. at 25.) Plaintiffs fail both elements. The simplest way to dispose of Plaintiffs' request for punitive damages is to hold that they failed to produce evidence of a punishable action by an agent, director, or officer of the company. In fact, Plaintiffs do not even *identify* an agent, director, or officer. (*See* Opp. at 24.) Thus, summary judgment is required. *See Golikov v. Walmart Inc*., No. 2:24-CV-08211, 2025 WL 648532, at *5 (C.D. Cal. Feb. 27, 2025) ("Plaintiff's prayer for punitive damages merely rests on her consumer protection claims," and while "these allegations are sufficient to state her claims, they are insufficient for punitive damages, as Plaintiff makes no reference to any officer, director, or managing agent whatsoever."); *see also Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc*., No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("a company simply cannot commit willful and malicious conduct—only an individual can.").

Plaintiffs also failed to identify evidence that comes close to satisfying the CLRA's requirement of clear and convincing evidence of oppression, fraud, or malice. Plaintiffs argue that their "fraud-based claims" support punitive damages. (Opp. at 24.) But Plaintiffs do not have an actual fraud claim, and their statutory claims do not include many of the requirements of fraud, like intent to deceive. Plaintiffs also cite a 1978 fraudulent inducement case to argue that "fraud alone" can support punitive damages. (*See id*. (citing *Walker v. Signal Co., Inc.*, 84 Cal. App. 3d 982, 996 (1978)).) But there is nothing *fraudulent* about Barilla's use of the #1 Brand statement to describe its true market position. Ultimately, Plaintiffs have no response to the core point that even a misleading label (which is not present here) does not meet the "high standard" for punitive damages. (*See* Mem. at 25 (citing *Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2019 WL 3804661, at *16-17 (N.D. Cal. Aug. 13, 2019) (granting summary judgment on punitive damages after previously finding defendant's labels plausibly misleading)).)

Accordingly, summary judgment is appropriate on Plaintiffs' request for punitive damages.

**IV.   At minimum, the Court should clear out two categories of claims that Plaintiffs chose not to develop.**

As Barilla demonstrated, (*see* Mem. at 9) and Plaintiffs do not dispute, a court may grant summary judgment on theories of liability the record does not support. Plaintiffs produced no evidence capable of supporting claims (1) that the Products were manufactured in Italy, and (2) against advertisements other than the #1 Brand statement on the Products' labels.

**A.   No evidence supports a manufactured-in-Italy claim.**

Barilla demonstrated that Plaintiffs (1) have no expert evidence supporting a manufactured-in-Italy theory and (2) rely exclusively on their own individual testimony, which is insufficient to create a triable issue on whether a significant portion of consumers, acting reasonably, share Plaintiffs' misreading of the #1 Brand statement. (*See* Mem. at 9-10.) Plaintiffs' arguments to the contrary do not hold water. (*See* Opp. at 10-11.)

On the expert issue, Plaintiffs do not meaningfully dispute that their sole evidence of consumer perception is Dr. Dennis's survey and that this survey did not ask about manufacturing.[13] (*See* Mem. at 10.) In fact, Plaintiffs say that this survey "shows that 57% of consumers understand it to mean the Products are made *with Italian ingredients*." (Opp. at 11 (emphasis added).)

Plaintiffs argue that the named Plaintiffs understood the #1 Brand statement to mean the Product was "made in Italy." (*See* Opp. at 11.) But Plaintiffs ignore the cases Barilla cited showing that a plaintiff's individual testimony *alone* is insufficient to create a fact dispute about how *reasonable consumers* understand the challenged statement. (*See* Mem. at 10.) The case Plaintiffs cite does not hold otherwise. (*See* Opp. at 12.) In *Kumar v. Salov N. Am. Corp.*, a decision on class certification, the court recognized that anecdotal evidence alone is insufficient under the reasonable consumer standard. No. 14-CV-2411-YGR, 2016 WL 3844334, at *7-8 (N.D. Cal. July 15, 2016).

Finally, Plaintiffs emphasize how they "alleged" or "pursued" the Manufacturing

---

[13] Plaintiffs assert in conclusory fashion that Dr. Dennis's consumer survey supports a manufactured-in-Italy theory (*see* Opp. at 4), but they never explain how this could be true, given that the survey asked only about the origin of ingredients and Dr. Dennis testified that the survey did not measure a manufactured-in-Italy theory. (*See* Mem. at 10.)

Faegre Drinker Biddle & Reath LLP
Attorneys at Law

Interpretation. (Opp. at 10.) But this is summary judgment, and evidence, not allegation, is required. The only evidence Plaintiffs offer is their "own personal experience and assumptions," which are "insufficient on their own to meet the reasonable consumer standard." *Peacock v. Pabst Brewing Co.*, No. 24-2494, 2025 WL 1189562, at *1 (9th Cir. Apr. 24, 2025).

### B. No evidence supports a claim against any statement other than the #1 Brand statement.

Barilla also demonstrated that Plaintiffs have no evidence regarding statements other than the #1 Brand statement on the product labels because (1) Plaintiffs never viewed or relied on any other materials, and (2) Plaintiffs' experts did not test any materials other than the #1 Brand statement. (*See* Mem. at 11.) Plaintiffs do not confront these points and thus concede them.

Plaintiffs do not dispute that they never saw or relied on a Barilla advertisement, website, the Academia Barilla, or its Archivio Storico or Museum.[14] (*See id*.) Nor do they respond to Barilla's caselaw showing that they cannot assert claims against statements they did not see or rely on. (*See id*.) Those arguments are thus waived. *See hiQ Labs, Inc*., 639 F. Supp. 3d at 964.

Plaintiffs likewise identify no evidence that consumers care about or are deceived by these materials. (*See* Mem. at 11.) In fact, Plaintiffs concede in various ways that Dr. Dennis's consumer survey focused exclusively on the #1 Brand statement. (*See* Opp. at 7 ("Dr. Dennis tested consumer understanding of the phrase 'Italy's #1 Brand of Pasta'"); *id.* at 8 (survey "limit[ed] respondents to the packaging shown").) Similarly, Plaintiffs concede their damages model was "structured to measure any price premium attributable *solely to the representation*." (Opp. at 9 (emphasis added).)

Because Plaintiffs chose not to develop evidence supporting a claim against any statement other than the #1 Brand statement, the Court should grant summary judgment on all such claims.

### CONCLUSION

The Court should grant Barilla's motion for summary judgment in its entirety.

---

[14] Plaintiffs also misrepresent the content of these materials. For example, Plaintiffs claim, "Barilla's 'We use only quality wheats' webpage emphasizes its 'commitment to purchase Italian durum' and produce 'classic pasta formats' using '100% Italian wheats.'" (Opp. at 7.) Plaintiffs later recognize that this webpage clearly addresses only local sourcing for pasta sold in Italy: "*For classic pasta formats destined for the Italian market*, we use 100% Italian wheats." (*See id*. at 16.)

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

Dated:  February 4, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

By:  */s/ David A. Belcher*
David A. Belcher
Kevin P. Wagner (Pro Hac Vice)
Aaron D. Van Oort (Pro Hac Vice)
Tyler A. Young (Pro Hac Vice)
Berglind H. Birkland (Pro Hac Vice)
David J.F. Gross

Attorneys for Defendant
BARILLA AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David A. Belcher
David A. Belcher