**FAEGRE DRINKER BIDDLE & REATH LLP**
David A. Belcher (SBN 330166)
*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:    (310) 203-4000
Facsimile:    (310) 229-1285

Kevin P. Wagner (*Pro Hac Vice*)
*kevin.wagner@faegredrinker.com*
Aaron D. Van Oort (*Pro Hac Vice*)
*aaron.vanoort@faegredrinker.com*
Tyler A. Young (*Pro Hac Vice*)
*tyler.young@faegredrinker.com*
Berglind Halldorsdottir Birkland (*Pro Hac Vice*)
*berglind.birkland@faegredrinker.com*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Telephone:   (612) 766-7000
Facsimile:   (612) 766-1600

David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone:   (480) 643-1850

Attorneys for Defendant
BARILLA AMERICA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and JESSICA PROST, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>BARILLA AMERICA, INC.,<br><br>    Defendant. | Case No. 4:22-cv-03460-ASK<br><br>Hon. Ajay Krishnan<br>Courtroom TBD<br><br>**DEFENDANT BARILLA AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO DECERTIFY THE CLASS**<br><br>Date:    March 26, 2026<br>Time:    1:00 pm<br>Place:    TBD |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

I.     The Court should decertify the class because there is a fatal mismatch between Plaintiffs' damages model and their theory of liability............................................ 4

II.    The Court should decertify the class because Plaintiffs' damages model does not account for supply-side considerations. ............................................................ 9

III.   The Court should decertify the class because Plaintiffs have still not shown that their misreading of the #1 Brand statement *matters* to consumers. ...................... 11

IV.   The Court should decertify the class because Dr. Dennis's consumer perception opinions should be excluded, and without them, deception is an individual issue. ....................................................................................................................... 15

CONCLUSION ..................................................................................................................... 15

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
No. ML 13-2438 PSG, 2017 WL 2559615 (C.D. Cal. June 7, 2017)................................... 6, 15

*Cadena et al. v. American Honda Motor Co., Inc.*,
2025 WL 3483436 (C.D. Cal. Dec. 3, 2025) ........................................................................ 8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................................... *passim*

*In re ConAgra Foods*,
302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................................... 6, 7

*Fagan v. Neutrogena Corp.*,
No. 5.13-cv-01316-SVW-OP, 2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) .................... 6, 7

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018) ................................................................................... 11, 13

*Flodin v. Cent. Garden & Pet Co.*,
No. 21-cv-01631-JST, 2024 WL 4565340.............................................................................. 6

*Forrett v. Gourmet Nut, Inc.*,
634 F. Supp. 3d 761 (N.D. Cal. 2022) ................................................................................. 15

*Golikov v. Walmart, Inc.*,
No. 2:24-cv-08211-RGK-MAR, 2025 WL 2884728 (C.D. Cal. Aug. 12, 2025) .................... 3

*Gonzalez v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007)................................................................................. 3

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................................ 8, 11

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021) ................................................................................. 13

*Kumar v. Salov N. Am. Corp.*,
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)................................. 15

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011) ....................................................................................................... 15

*Larsen v. Vizio, Inc.*,
No. SACV 14-01865-CJC, 2017 WL 11633132 (C.D. Cal. Apr. 27, 2017) ....................... 6, 8

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)............................. 11

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ..................................................................... 2, 3, 9, 14

*McMorrow v. Mondelēz Int'l, Inc.*,
   No. 17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ............................. 7

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   713 F. Supp. 3d 660 (N.D. Cal. 2024) ....................................................................... 8, 12

*In re Myford Touch Consumer Litig.*,
   2018 WL 3646895 (N.D. Cal. Aug. 1, 2018)................................................................... 3

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   287 F.R.D. 590 (C.D. Cal. 2012) ................................................................................ 3

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..................................................................... 10

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-MD-02143-RS, 2017 WL 6448192 (N.D. Cal. Dec. 18, 2017).................................. 3

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. May 2, 2023) ......................................................... 10, 11, 14

*Saavedra v. Eli Lilly Co.*,
   No. 21:12-cv-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)............................. 10

*Smith v. Keurig Green Mountain, Inc.*,
   2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ............................................................ 8, 15

*Stearns v. Ticketmaster*,
   655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp.*
   *v. Behrend*, 569 U.S. 27 (2013)................................................................................ 12

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ..................................................................... 15

*Vizcarra v. Unilever U.S., Inc.*,
   339 F.R.D. 530 (N.D. Cal. 2021)................................................................................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   500 F. Supp. 3d 940 (N.D. Cal. 2020) ................................................................... 10, 11

*Zakaria v. Gerber Prods. Co.*,
   No. LA CV15-00200 JAK (Ex), 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017),
   *aff'd*, 755 F. App'x 623 (9th Cir. 2018)................................................................... 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW

iii

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 23 .............................................................................................................. 3

Fed. R. Civ. P. 23(c)(1)(C)................................................................................................. 3

## INTRODUCTION

Plaintiffs' opposition briefs confirm that the class should be decertified for multiple independent reasons.

*First*, Plaintiffs' briefs show that their damages model cannot support a classwide damages award because it does not isolate the value of Plaintiffs' misreading of the statement "Italy's #1 Brand of Pasta" (the "#1 Brand statement"). Plaintiffs admit that the #1 Brand statement "can reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing." (ECF 163 ("MSJ Opp.") at 14.) The first interpretation—that Barilla is the best-selling pasta brand in Italy (the "Selling Interpretation")—is undisputedly *true*. Plaintiffs' challenge only the second interpretation—that the pasta's ingredients are sourced from Italy (the "Sourcing Interpretation")— as misleading.[1] Yet their damages model seeks damages for all interpretations of the #1 Brand statement, including the true one. The law does not allow this, and Plaintiffs fail to distinguish the consistent line of cases showing it is improper under *Comcast*. (ECF 151 ("Mem.") at 10–14.)

*Second*, Plaintiffs' damages experts failed to account for supply-side factors in calculating the but-for price (or price premium), thereby overstating Plaintiffs' damages in a second fashion. (*Id.* at 14–18.) Plaintiffs argue their experts properly accounted for supply-side factors by using a fixed historical quantity of sales in the second step of their damages analysis. But this misses the point: the methodological problem comes in the first step (price premium calculation), not in the second step (multiplying price premium by units sold). Many courts have rejected class certification for this very reason (*see infra* at 10 n.7), and this Court should do the same.

*Third*, Plaintiffs failed to prove through common evidence that their misreading of the #1 Brand statement was material to consumers. (*Id.* at 18–22.) Plaintiffs' primary response is to point to Dr. Dennis's price premium analysis. (ECF 165 ("Opp.") at 10:11–14, 11:26–12:19.) But Dr. Dennis's conjoint analysis calculated the *total value* of the #1 Brand statement, not the amount driven by Plaintiffs' misreading of it. The only *actual* materiality evidence in the record—

---

[1] Plaintiffs also *allege* that the #1 Brand statement misleads consumers to believe that the pasta is *manufactured* in Italy. But Plaintiffs did not seek class certification on a manufactured-in-Italy claim, (*see infra* 5 & n.3) and summary judgment should be entered on that claim because Plaintiffs failed to develop evidence to support it. (*See* ECF 150 (Motion for Summary Judgment) at 9–10.)

Dr. Cantor's survey and the real-world sales data following Barilla's removal of the #1 Brand statement—conclusively establishes that the #1 Brand statement was not material to consumers.

*Finally*, Plaintiffs do not deny that if Dr. Dennis's survey evidence is excluded, they have no classwide evidence of deception. Thus, if the Court strikes Dr. Dennis's opinions, the class must be decertified for this reason as well.

Seeking to avoid the substance, Plaintiffs argue throughout their brief that the class is immune from scrutiny because the Court conclusively addressed Barilla's arguments when it initially certified the class. (*See, e.g.*, *id.* at 1 (Barilla "identifies no change in facts, no new expert opinion, and no intervening legal authority that would justify disturbing the well-reasoned certification order").) In fact, Plaintiffs go so far as to claim that "[w]hen the Court certified the class" it "relied on substantial evidence, including Dr. J. Michael Dennis's … conjoint analysis demonstrating that the misrepresentation carries a measurable price premium." (*Id.* at 2; *see also id.* at 3:3–7 (arguing that the Court's class certification order "relied" on expert reports filed *after* the order was issued).) This is simply incorrect. When the Court issued its class certification order, Dr. Dennis's conjoint analysis and Mr. Weir's price premium calculation ***had not been performed***. In granting class certification, the Court held only that the unperformed damages model proposed by Plaintiffs cleared the low bar set by *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011 (9th Cir. 2024), and explicitly recognized that "[o]nce the analysis has been performed, Barilla may challenge its results." (ECF 78 (Class Certification Order) at 18.) Now that Plaintiffs' experts have conducted their analyses and been deposed, Barilla is raising the challenge the Court authorized.

Plaintiffs also spend large portions of their brief rebutting arguments Barilla never made, such as arguments about a failure to "isolate[e] the text from the flag imagery," (Opp. at 5:13-15; *see also id.* at 16:17–19, 22:19–22) a *per se* "disagreement with conjoint methodology," (*id.* at 18:22–19:6) and an objection to particular survey participants (*id.* at 23:1–2). Perhaps most perplexingly, Plaintiffs devote an entire subsection to superiority and manageability—issues entirely absent from Barilla's decertification motion—in which they repeatedly attribute to Barilla (with quotation marks but no citations) statements they appear to have invented. (*See generally id.* at 23–25; *see also id.* at 23:23–25, 24:7–9, 24:21–22, 24:26–27 (misquoting Barilla).) Worse yet,

Plaintiffs misquote the Court's class certification order, (*see, e.g.*, *id.* at 6:13–14, 19:9–11) as well as key case law (*see, e.g.*, *id.* at 18:15–17 (misquoting *Comcast*).).

Once these distractions and misstatements are set aside, the record is clear that Plaintiffs have not carried their burden under Rule 23, and the Court should thus decertify the class.

## **LEGAL STANDARD**

Plaintiffs do not dispute—and therefore concede—most of what Barilla said about the governing legal standard, including that the Court must resolve merits disputes necessary to decide certification and in doing so must consider evidence submitted by both parties. (*Compare* Mem. at 8–9, *with* Opp. at 8.) But throughout their brief, Plaintiffs assert that the standard is different now than it was when class certification was originally briefed. (*See, e.g.*, Opp. at 8 (arguing a party seeking decertification bears a "heavy burden").) This is wrong as a matter of law. The standard for decertification is the same as for class certification in the first instance: "A party seeking class certification bears the burden of demonstrating compliance with the class action requirements of numerosity, commonality, typicality, and adequate representation of the class interest, ***even on a motion to decertify a class***." *Golikov v. Walmart, Inc.*, No. 2:24-cv-08211-RGK-MAR, 2025 WL 2884728, at *1 (C.D. Cal. Aug. 12, 2025) (emphasis added).

The primary case Plaintiffs rely on is *In re Optical Disk*, quoting *Gonzalez v. Arrow Fin. Servs.* (Opp. at 8.) But *Gonzalez*'s description of the burden on decertification, including its assertion that the defendant bears the burden of demonstrating that Rule 23 has not been satisfied, is no longer good law. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 598 n.1 (C.D. Cal. 2012) (recognizing abrogation). Plaintiffs other case did not resolve the question of the burden on decertification either because it did "not affect the outcome of the motion." *In re Myford Touch Consumer Litig.*, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018). Nor do these cases support— at all—the (incorrect) proposition for which Plaintiffs cite them (*i.e.*, that "Rule 23(c)(1)(C) allows decertification only where materially changed circumstances undermine compliance with Rule 23's requirements of numerosity, adequacy, typicality, and commonality").[2] (Opp. at 8.)

---

[2] To the extent Plaintiffs' cases *ever* supported the rule Plaintiffs suggest, they cannot be reconciled with the Ninth Circuit's decision in *Lytle*, which allowed class certification before expert opinions had been submitted. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024–25 (9th Cir. 2024).

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

## ARGUMENT

### I.  The Court should decertify the class because there is a fatal mismatch between Plaintiffs' damages model and their theory of liability.

Barilla demonstrated that Plaintiffs are seeking damages for all interpretations of the #1 Brand statement—even truthful ones—in violation of *Comcast*. (Mem. at 10–14.) In response, Plaintiffs concede or ignore each element of Barilla's argument, leaving it effectively undisputed.

*First*, Plaintiffs admit—as they must—that *Comcast* requires a match between their liability and damages theories. (*See* Opp. at 14:27–28 (admitting *Comcast* requires that a damages model be "consistent with [plaintiffs'] liability case.") (quotation omitted); *id.* at 18:14–16 (same).)

*Second*, in opposition to Barilla's motion for summary judgment, Plaintiffs concede that consumers interpret the #1 Brand statement in different ways: "The label claim can reasonably reflect both brand popularity in Italy and Italian manufacturing or sourcing." (MSJ Opp. at 14.)

*Third*, the first interpretation that Plaintiffs concede is reasonable, the Selling Interpretation, is undisputedly true: Barilla is in fact the most popular and best-selling brand of pasta in Italy. (Mem. at 12 (citing evidence).) Plaintiffs do not dispute Barilla's evidence that it is the best-selling and most popular brand of pasta in Italy. (*See generally* Opp.) Not only is this interpretation true, but it is the one that most consumers understand the #1 Brand statement to convey. This, too, is undisputed, because while Plaintiffs offer passing criticisms of Dr. Groehn's survey, (*see* Opp. at 6) they never dispute that most consumers hold the Selling Interpretation of the #1 Brand statement. (*See, e.g.*, MSJ Opp. at 12 ("Even if Groehn's results are accepted as true, . . . evidence that some consumers interpret the statement as referring to brand popularity in Italy does not foreclose a simultaneous interpretation that the Products are made with Italian ingredients.").)

*Fourth*, Plaintiffs admit that their liability theory is based exclusively on a *different* interpretation of the #1 Brand statement: that the "product's ingredients are sourced from Italy." (Opp. at 5; *see also id.* at 16 (explaining that "the exact deceptive message at issue" is that "Barilla pasta is made from ingredients sourced from Italy").). This is the "Sourcing Interpretation."

*Finally*, Plaintiffs' experts' damages model calculates an alleged "price premium" for ***all*** interpretations of the #1 Brand statement, including the undisputedly true Selling Interpretation,

not just the Sourcing Interpretation. (Mem. at 13–14 (citing testimony from Dr. Dennis and Mr. Weir).) Plaintiffs concede the point, explaining that Dr. Dennis measured "the percentage of the purchase price attributable to the Challenged Representation," and Mr. Weir likewise "isolated the economic value attributable to the Challenged Representation." (Opp. at 5, 16.) And Plaintiffs define the term "Challenged Representation" to mean "'ITALY'S #1 BRAND OF PASTA' displayed with an artistic depiction of the Italian flag." (*Id.* at 2.) It is thus undisputed that Plaintiffs' damages model does not isolate the value associated with the Sourcing Interpretation of the #1 Brand statement.[3] Relatedly, Barilla also demonstrated—and Plaintiffs nowhere dispute—that Plaintiffs' experts *could* have isolated the value of the Sourcing Interpretation but instead assessed the value of the entire #1 Brand statement. (*Compare* Mem. at 13–14, *with* Opp. at 14–19.)

These concessions compel decertification, and Plaintiffs' contrary arguments are meritless.

Plaintiffs' primary argument in opposition is that their damages model appropriately matches their theory of liability because both focus on the Challenged Representation. (*See, e.g.*, Opp. at 16 ("Because the misrepresentation is communicated through the combined wording and imagery, testing that full representation, exactly as consumers encounter it, properly isolates the alleged deception.").) But this argument ducks the issue. Barilla's argument is not—despite Plaintiffs' claims to the contrary[4]—that Plaintiffs' experts tested more of the product label than they should have. Barilla's argument is that they attempted to calculate the entire value of the #1 Brand statement, including interpretations of it that are true and unchallenged. (Mem. at 10–14.)

---

[3] In two isolated sentences, Plaintiffs assert that "the measured premium used in the damages calculation is tied to the specific deceptive message conveyed by the Challenged Representation" and "Dr. Dennis's and Mr. Weir's analyses isolate the exact deceptive message at issue: that Barilla pasta is made from ingredients sourced from Italy." (Opp. at 14, 16.) To the extent these statements represent an argument that Plaintiffs' damages model isolates the value of the Sourcing Interpretation, the evidence they cite does not support it, and it is belied by Plaintiffs' experts' testimony, which goes unmentioned in Plaintiffs' brief. (*See* Mem. at 13–14.)

[4] *See, e.g.*, Opp. at 5:13–14 ("Barilla again attacks Dr. Dennis's survey . . . for not isolating the text from the flag imagery."); *id.* at 16:17–19 ("Because the misrepresentation is communicated through the combined wording and imagery, testing that full representation, exactly as consumers encounter it, properly isolates the alleged deception."); *id.* at 22:19–20 ("Barilla's argument that Dr. Dennis should have isolated the text from the Italian flag colors is directly foreclosed by the Court's certification order."). Barilla made no such argument.

Barilla cited several cases establishing the rule that when the challenged label statement is subject to multiple interpretations only one of which is alleged to be misleading, the damages model *must* isolate the value associated with the allegedly misleading interpretation. *See, e.g.*, *Larsen v. Vizio, Inc.*, No. SACV 14-01865-CJC (JCGx), 2017 WL 11633132, at *9 (C.D. Cal. Apr. 27, 2017) (holding plaintiff "must be able to isolate the price premium associated with misleading consumers in that particular fashion") (quotation omitted); *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2024 WL 4565340, at *9 ("By aiming to measure the price premium attributable to the products being 'Made with Avocado' generally, [plaintiffs'] proposed model fails to 'measure only those damages attributable to' the alleged misrepresentations about the *amount* of avocado."); *In re ConAgra Foods*, 302 F.R.D. 537, 578–79 (C.D. Cal. 2014) (denying class certification because Mr. Weir measured "*all of the meanings* consumers ascribe to" the term "100% Natural," even though only some interpretations of that statement were alleged to be misleading) (emphasis added); *Fagan v. Neutrogena Corp.*, No. 5.13-cv-01316-SVW-OP, 2017 WL 11418358, at *3–4 (C.D. Cal. Oct. 24, 2017) (denying class certification because Mr. Weir measured the entirety of the label statement "100% naturally sourced sunscreen ingredients," even though plaintiffs admitted that "the ingredients that provide protection from the sun are naturally sourced"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *10–12 (C.D. Cal. June 7, 2017) (denying certification because Mr. Weir's price premium included the value provided through caffeine, even though plaintiffs challenged only lack of caloric energy).

Plaintiffs do not cite a single case that considered and rejected this principle, and Plaintiffs' attempts to distinguish the cases Barilla cited are utterly unpersuasive. *Larsen*, the lead case Barilla cited, goes entirely unmentioned in Plaintiffs' brief.[5] (*Compare* Mem. at 1, 10 (citing *Larsen*, 2017 WL 11633132, at *9), *with* Opp.) Plaintiffs say that *Flodin* involved a "mismatch between the liability theory (insufficient avocado to justify the marketing) and the survey question (whether *any* avocado was present)." (Opp. at 17.) The same mismatch exists here: There is a mismatch between the narrow liability theory (consumers understand the #1 Brand statement to mean the product's

---

[5] Plaintiffs mention *In re 5-Hour Energy* in passing, (Opp. at 16) but make no attempt to explain why its reasoning does not apply here.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

ingredients are exclusively from Italy) and the broader price premium measured by the conjoint analysis (whether consumers pay a premium for the #1 Brand statement in its entirety).

Plaintiffs' discussion of *In re ConAgra* proves Barilla's point most directly.[6] Plaintiffs say that "the trouble" in that case was that there were "so many meanings to the phrase '100% Natural,'" and it was "unclear" which of the "myriad [of] interpretations" was measured by Mr. Weir's proposed price premium. (*Id.* at 17:21–28.) Again, that same "trouble" exists here: because there are multiple interpretations of the #1 Brand statement, it is unclear whether consumers who valued the #1 Brand statement valued it because of a Sourcing Interpretation or "one of a myriad other interpretations." (*Id.*) As the *ConAgra* court explained, experts "must be able to isolate the price premium associated with *misleading* customers." *ConAgra*, 302 F.R.D. at 579 (emphasis added). Because Mr. Weir "intend[ed]…to calculate the price premium attributable to use of the term '100% Natural' and all of the meanings consumers ascribe to it"—deceptive or not—his model did "not suffice under Comcast." *Id.* Just so here.

Next, Plaintiffs say *Fagan* is inapposite because the damages model "did not distinguish between consumers who believed *all ingredients* were natural versus whether *the sun-blocking ingredients* were natural, the key distinction in that case." (Opp. at 17.) In fact, *Fagan* rejected Mr. Weir's model because a portion of the price premium "may be attributable to the literally truthful message conveyed by the Claims; namely, that the ingredients that provide protection from the sun are naturally sourced" or to "other misunderstandings consumers had, rather than the specific misunderstanding that is Plaintiffs' theory of liability in this case." *Fagan*, 2017 WL 11418358, at *3. The same is true here. A portion of the price premium may be attributable to the literally truthful message that Barilla is the most popular brand of pasta in Italy.

Plaintiffs also attempt to distinguish a few cases Barilla cited on the basis that they involved failure to isolate the value of the challenged label statement itself. (*See* Opp. at 16–17.) For example, Plaintiffs say certification was originally denied in *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2020 WL 1157191, at *6–9 (S.D. Cal. Mar. 9, 2020), "because the

---

[6] Plaintiffs' assertion that *ConAgra* is "an extreme outlier that conflicts with the Reference Manual on Scientific Evidence" (Opp. at 18) is wrong for the reasons explained in Barilla's Reply on its Motion to Strike Dr. Dennis. *See* Dennis MTS Reply, at 10-11.

survey tested a combined claim ('nutritious steady energy') instead of isolating the term 'nutritious,' which was the *only* challenged term." (Opp. at 16.) Plaintiffs say the "same distinction applies to *Moore*": "'extraneous words' such as 'argan oil' and 'lip butter' confounded the survey because those unchallenged features independently influenced consumer perception, making it impossible to determine whether the '100% natural' claim alone was driving decisions." (*Id.* at 16–17.) But here too, truthful interpretations of the #1 Brand statement "confound[] the survey because those unchallenged features . . . influenced consumer perception," independent of the allegedly misleading Sourcing Interpretation. (*Id.*) While there may be a difference in the level of abstraction at which plaintiffs failed to isolate—*i.e.*, failure to isolate the statement from the rest of the label versus failure to isolate the misleading interpretation of the statement—these cases support the proposition that plaintiffs "must be able to isolate the price premium associated with misleading consumers in that particular fashion." *Larsen*, 2017 WL 11633132, at *9 (quotation omitted).

Finally, Plaintiffs cite a series of cases to rebut an argument Barilla did not make, that conjoint surveys are never permissible. (*See* Opp. at 18:22 (characterizing Barilla's *Comcast* arguments as a "disagreement with conjoint methodology") But Barilla's argument is much narrower: that conjoint surveys must be rejected *when they fail to isolate* the sole allegedly misleading interpretation. None of Plaintiffs' cases involved such a failure to isolate and are thus inapposite. (*See* Opp. at 18 (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1107 (N.D. Cal. 2018) (silent on whether a damages opinion can support certification, or be credited, where it fails to isolate the alleged misinterpretation in a challenged representation subject to multiple interpretations); *Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *9–10 (N.D. Cal. Sept. 21, 2020) (same); *Cadena et al. v. American Honda Motor Co., Inc.*, 2025 WL 3483436, at *10–11 (C.D. Cal. Dec. 3, 2025) (same).)

Zooming out from individual cases, what is most striking about Plaintiffs' argument is their utter failure to explain why the entire value of the #1 Brand statement ***should*** be included in their claimed damages. Plaintiffs do not claim the #1 Brand statement has only one meaning. They do not dispute that consumers may value aspects of the #1 Brand statement other than the Sourcing Interpretation. They do not dispute that some of those interpretations are true. Yet they simply

assert that they should capture as damages the *entire* value of the #1 Brand statement. This is an improper windfall, disconnected from their liability case, and *Comcast* forbids it.

## II.    The Court should decertify the class because Plaintiffs' damages model does not account for supply-side considerations.

Plaintiffs' damages model also has another independently fatal error. This error occurs in the first step of Plaintiffs' model, during which Dr. Dennis attempts to calculate what the pasta prices would have been without the #1 Brand statement. (*See* Mem. at 14.) In calculating that but-for price, Dr. Dennis makes the economically and factually incorrect assumption that, if consumer demand dropped, Barilla would have insisted on selling the same volume of pasta and would have lowered its price as much as necessary to do so. (*Id.* at 14–18.) This disregard for supply-side factors has the predictable—and intentional—effect of overstating the claimed price premium. (*Id.* at 16.)

Notably, Plaintiffs do not dispute that Dr. Dennis's price premium calculation holds the supply of pasta constant. (*Compare* Mem. at 15:22–17:4, *with* Opp. at 4:3–5, 19:16–18, 20:20–26.) Nor do Plaintiffs dispute that a class damages model must account for supply-side factors. (*Compare* Mem. at 17:5–24, *with* Opp. at 15:2–4, 19:14–16, 19:26–27, 22:3–5.) Instead, Plaintiffs assert that their experts "incorporated" supply-side considerations because the damages model is based on historical sales transactions. (*See* Opp. at 19.) Plaintiffs' arguments in defense of their damages model fail across the board.

*First*, Plaintiffs assert that Barilla's supply-side argument is "recycled." (*Id.*) But when the Court certified the class, Dr. Dennis had not performed his conjoint analysis, nor had Mr. Weir calculated Plaintiffs' alleged price premium damages. (*See supra* at 2.) And in holding that Plaintiffs' unperformed damages model supported certification under *Lytle*, the Court explicitly recognized that "[o]nce [Plaintiffs' experts'] analysis has been performed, Barilla may challenge its results." (ECF 78 at 18.) Barilla properly does so now.[7]

*Second*, Plaintiffs assert it would be improper to make supply-side adjustments because their damages model "is tied to actual retail transactions." (Opp. at 19.) But this relates only to the

---

[7] Plaintiffs argue in passing that the "proper focus is consumer demand … not Barilla's costs." (Opp. at 19.) This misunderstands the issue. Barilla nowhere asserted that Plaintiffs' model failed to account for supply-side factors because it did not assess Barilla's costs. (*See* Mem. at 14–18.)

*second step* of Plaintiffs' model: multiplying the alleged price premium by the quantity of goods sold. It does not address the *first step*, determining the "but-for" price, which can be assessed only by considering a hypothetical world that includes both supply and demand factors. (Mem. at 18.) On that point, Plaintiffs say it would be "an economic perversion for a defendant engaged in litigation (with an obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough to meet demand." (Opp. 19:18–21 (quotation omitted).) But that is no answer. The "economic perversion" is for Plaintiffs—who have an equally "obvious conflict of interest"—to insist that Barilla would not have adjusted supply in the face of reduced demand.

*Third*, Plaintiffs argue that accepting Barilla's argument would allow any defendant to "postulate its way out of economic damages." (*Id.* at 19 (quotation omitted).) Not so. Certainly, accounting for supply-side factors would reduce Plaintiffs' *overstatement* of the alleged price premium, but it would not reduce it to zero, as illustrated vividly by a chart in Barilla's opening brief. (Mem. at 16.)

*Fourth*, Plaintiffs attempt to distinguish the cases Barilla cited in which courts denied class certification because plaintiffs' experts failed to account for supply-side factors.[8] (*See* Opp. at 20–22.) None of these superficial distinctions undermines the basic rule that damages models must consider both supply-side and demand-side factors and that failure to do so can defeat certification. For example, the fact that *Saavedra* "involved the complex and opaque pricing of prescription drugs," (Opp. at 15:12) is irrelevant because the court considered the inefficiencies of the prescription drug market as a flaw separate and independent from Plaintiffs' failure to consider supply-side factors. *See Saavedra*, 2014 WL 7338930, at *5. It is similarly irrelevant that *Volkswagen* involved four bellwether plaintiffs or that the product at issue in *Passman* was "a high-cost, luxury item." (Opp. at 21:1; *id.* at 21:8–12.) What matters is that the damages models had

---

[8] *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020); *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2017 WL 9512587, at *20 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015); *Saavedra v. Eli Lilly Co.*, No. 21:12-cv-9366-SVW (MANx), 2014 WL 7338930, at *5, *7 (C.D. Cal. Dec. 18, 2014); *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 464 (S.D.N.Y. May 2, 2023).

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

precisely the same flaw as Plaintiffs' model in this case: They measured only "the putative class members' willingness to pay, not Defendant's willingness to sell." *Passman*, 671 F. Supp. 3d at 465. As the court in *Volkswagen* explained, "presuming that Defendants would have sold the same number of [products], at the exact price that consumers would have been willing to pay, is not a way to reliably incorporate supply-side considerations." 500 F. Supp. 3d at 949.

As for the cases Plaintiffs cite, they show, at most, a split among courts about ***how*** (not ***whether***) supply-side factors should be incorporated into price premium analysis. (*See* Opp. at 19–20.) In deciding which side of that split to follow, this Court should take the economically sound approach and hold that any price premium determination must be based on the intersection between the supply and demand curves. The analysis in Plaintiffs' cases is, with respect, plainly wrong. Faced with plaintiffs' experts' trite observation that supply is fixed as a historical matter in the real world, those courts concluded that supply must also be held constant in the but-for world. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 605 (N.D. Cal. 2018) (concluding it was appropriate for plaintiffs' expert to "h[o]ld the quantity of product sold constant . . . because a known quantity of the product had been sold in real life"); *Hadley*, 324 F. Supp. 3d at 1106 (N.D. Cal. 2018) (concluding that "proposed conjoint analysis adequately account[ed] for supply-side factors" because the number of products sold is "a matter of historical fact") (quotation omitted); *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (relying on plaintiffs' expert's assertion that "all sales of the laptop models at issue have occurred in the past") (quotation omitted). These decisions are wrong because they conflate the first and second step in the damages analysis. Historical sales are, of course, important in the *second step*, during which the price premium is multiplied by units sold. But to use historical sales in the *first step*—to create a hypothetical world where the *price* fluctuates but the supply cannot move—ignores basic principles of economics and should be rejected.

### III.   The Court should decertify the class because Plaintiffs have still not shown that their misreading of the #1 Brand statement *matters* to consumers.

Barilla demonstrated that Plaintiffs cannot prove materiality through common evidence and are thus not entitled to a classwide inference of reliance and causation. (Mem. at 18–22.) Barilla

also established—and Plaintiffs do not dispute—that absent such an inference, individual issues predominate, requiring decertification. (*Compare* Mem. at 18–19, *with* Opp. at 10.)

Plaintiffs claim they will prove materiality through "Dr. Dennis's 9.9% price premium calculation," "class representative testimony," and "Barilla's internal documents" that "demonstrate the high value that consumers place on the 'Italianity' of pasta." (Opp. at 10.) But as Barilla explained, this evidence cannot show materiality on a classwide basis. (Mem. at 20–22.)

Starting with Dr. Dennis, his opinions should be excluded under *Daubert* and thus cannot establish materiality. (*See* ECF 152 (Motion to Strike Opinions of Dr. J. Michael Dennis).) But even if admitted, Dr. Dennis's conjoint analysis cannot show materiality because it did not address whether reasonable consumers care about the Sourcing Interpretation of the #1 Brand statement, as opposed to the obvious, true claim that Barilla is the best-selling, most popular pasta brand in Italy. (*See* Mem. at 21.) In its opening brief, (*see id.* at 21:10–21) Barilla cited cases from this district holding that when an expert fails to isolate the alleged misrepresentation, that expert's opinions are "not capable of answering the question of whether a reasonable consumer would find the [alleged misrepresentation] material when purchasing the product at issue." *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 549 (N.D. Cal. 2021); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 674 (N.D. Cal. 2024) (because "the survey on its face does not isolate the challenged language . . . . the consumer perception survey cannot demonstrate materiality through common evidence"). These cases go unaddressed in Plaintiffs' materiality argument—because Plaintiffs have no response to them. (*See* Opp. at 10–14.)

Instead of responding to Barilla's argument, Plaintiffs mischaracterize it, saying that "Barilla again repeats the same critique it raised at class certification—that Dr. Dennis's survey is purportedly invalid because it allegedly presented only a single interpretation of the Challenged Representation." (*Id.* at 12.) Plaintiffs say this argument is wrong because Dr. Dennis's survey "measures how reasonable consumers interpret the representation at issue" and "can be used to demonstrate consumer deception." (*Id.*) But **deception** is a separate legal question from **materiality**: a consumer may find a statement misleading but not care about it. *See, e.g.*, *Stearns v. Ticketmaster*, 655 F.3d 1013, 1022 (9th Cir. 2011) (explaining that CLRA plaintiffs must "show not only that a

defendant's conduct was deceptive but that the deception caused them harm," *i.e.*, that the deception was material), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Plaintiffs' various arguments about deception simply miss the point.

As for the named plaintiffs' testimony, Barilla explained that their individual alleged reliance is irrelevant to whether *reasonable consumers* would consider the #1 Brand statement material. (Mem. at 21.) Plaintiffs do not respond to this argument, and it is therefore waived. *See, e.g.*, *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) (holding failure to address argument in opposition brief results in waiver).

As for the Barilla company documents, those documents say nothing about the #1 Brand statement and show, at most, that *some* consumers value the Barilla **brand's** connection to Italy. (*See* Mem. at 20.) Plaintiffs effectively admit as much. Plaintiffs do not dispute that none of the company documents address the #1 Brand statement; Plaintiffs argue instead that they show that consumers care about "'Italianity' of pasta." (Opp. at 10.) But the vague concept of "Italianity" is a far cry from the Sourcing Interpretation. Italianity could refer to the undisputed facts that Barilla is an Italian company, founded more than a century ago in Parma, Italy. A case Plaintiffs cite in their opposition, *Fitzhenry-Russell*, makes this point elegantly. Plaintiffs quote the court's statement that "[c]learly, if a quarter of Canada Dry consumers were listing the ginger claim as a top five reason why they bought the product, the claim is material." (*Id.* at 11 (quoting *Fitzhenry-Russell*, 326 F.R.D. at 614) (quotation omitted).) But in that case the consumers identified **the challenged statement itself**—not some vague concept adjacent to it—as important to their purchasing decisions. *See Fitzhenry-Russell*, 326 F.R.D. at 614. The Barilla documents at issue do no such thing. Nor do these documents show, as Plaintiffs allege, that "Barilla . . . promotes Italian durum wheat or semolina as superior to the non-Italian ingredients actually used in its U.S. pastas." (Opp. at 10:26–28 (citing ECF 52-1 (Memorandum In Support of Class Certification) at 6).) Plaintiffs cite only their class certification briefing, and that briefing, in turn, cites to documents that simply confirm Barilla's commitment to using high-quality durum wheat in its pastas— regardless of origin. (*See, e.g.*, ECF 11 (First Amended Class Action Complaint), Ex. 4 at 36.)

As shown above, the Court can resolve the materiality question by holding that none of

Plaintiffs' evidence is sufficient to prove materiality on a classwide basis. But Barilla also submitted its own evidence that materiality is an individual question, evidence that Plaintiffs failed to rebut and that the Court must consider in evaluating class certification. (*See* Mem. at 22:4–21.)

*First*, Dr. Cantor's consumer survey—the only survey to assess what matters to consumers purchasing pasta—found that only 12% of consumers think "Made in Italy" is an important product attribute, while more than 60% listed price and quality as important factors.[9] (*Id.* at 22.) Plaintiffs make a single-sentence attack on Dr. Cantor's qualifications, referring to their prior unsuccessful motion to exclude her, (Opp. at 12) but they do not dispute her fundamental finding: very few consumers care where pasta is made. Plaintiffs' conclusory assertion that Dr. Cantor's survey shows that "materiality can and will . . . be determined . . . based on common evidence," (*id.*) is self-evidently wrong: Dr. Cantor's survey show that Plaintiffs cannot prove the Sourcing Interpretation of the #1 Brand statement is material to consumers on a classwide basis.

*Second*, Barilla demonstrated that the selling price of Barilla pasta did not change after the #1 Brand statement was removed from the label. (Mem. at 22.) Amazingly, Plaintiffs say nothing in response. This real-life data is powerful, unrebutted evidence that the #1 Brand statement (even in its entirety) was not material to consumers' purchasing decisions. *See, e.g.*, *Passman*, 671 F. Supp. 3d at 457 (fact that price did not decrease after defendant ceased making challenged statement is "strongly suggestive of the conclusion that there was no price impact").

Plaintiffs' remaining materiality arguments are equally unpersuasive. Plaintiffs argue that "materiality can and will be determined by a jury based on common evidence." (Opp. at 12.) Not on this record. As the Ninth Circuit explained in *Lytle*, "[i]f the misrepresentation or omission is not material as to all class members . . . the class should not be certified." *Lytle*, 114 F.4th at 1035 (quotation omitted). Here, only a small fraction of consumers reported that national origin was important to their purchases. Thus, individual issues of reliance and causation predominate.

Plaintiffs' attempt to distinguish Barilla's cases because some involved "varying

___

[9] Plaintiffs accuse Barilla of misquoting the number of consumers in Dr. Cantor's survey who identified "Made in Italy" as an important reason for purchasing pastas as being 2.2% instead of 12%. (Opp. at 12:17–19.) As with so much else in Plaintiffs' Opposition, this allegation is demonstrably wrong. *See* Mem. 22:5–6 (accurately citing the number as 12%).)

disclosures" is likewise misplaced. (Opp. at 14:1–6.) It is undisputed that the #1 Brand statement is subject to multiple interpretations. Thus, "[w]ithout a common definition or common understanding of the term, the Court cannot conclude that materiality is susceptible to common proof." *See, e.g.*, *In re 5-Hour Energy*, 2017 WL 2559615, at *9. And even if the #1 Brand statement had only one meaning (the Sourcing Interpretation), Plaintiffs have not adduced evidence that the alleged misrepresentation was "a factor in consumers' purchasing decision[s]." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018).

Finally, Plaintiffs' reliance on case law about California's statutory ban on national origin misrepresentations is a red herring.[10] Barilla never misrepresented the origins of its pastas' ingredients. To the contrary, Barilla's packaging clearly states that the products are made in the USA with domestic and imported ingredients. (*See* ECF 150 at 4:8–16.) And, tellingly, Plaintiffs never alleged that Barilla breached California's statutory ban. There is thus no "statutory recognition of materiality" that Plaintiffs can claim. *Smith*, 2020 WL 5630051, at *6.

Because Plaintiffs cannot show that the #1 Brand statement is material to reasonable consumers, their statutory claims must be decertified. (*See* Mem. at 22.)

### IV.    The Court should decertify the class because Dr. Dennis's consumer perception opinions should be excluded, and without them, deception is an individual issue.

Barilla established—and Plaintiffs do not dispute—that once Dr. Dennis's consumer survey is excluded, the class must be decertified for lack of classwide evidence of deception. (*Compare* Mem. at 22:24–23:6, *with* Opp. at 23:15–21.) The issue is therefore waived. *See Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 766 (N.D. Cal. 2022) (holding unaddressed argument waived). Thus, if the Court strikes Dr. Dennis's testimony, as it should, it must likewise decertify the class.

### CONCLUSION

For the reasons stated above, Barilla respectfully requests that the Court decertify the Class.

---

[10] (*See* Opp. at 12:20–25) (citing *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016), and *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011), for proposition that "courts routinely find [national] origin representations material without requiring individualized proof"); *see also id.* at 13:23–28 (citing *Smith*, 2020 WL 5630051, at *6, for proposition that "[t]he California Supreme Court has found that statutory recognition of materiality is highly persuasive").)

Dated:  February 4, 2026                    FAEGRE DRINKER BIDDLE & REATH LLP


                                  By:   */s/ David A. Belcher*
                                        David A. Belcher
                                        Kevin P. Wagner (*Pro Hac Vice*)
                                        Aaron D. Van Oort (*Pro Hac Vice*)
                                        Tyler A. Young (*Pro Hac Vice*)
                                        Berglind H. Birkland (*Pro Hac Vice*)
                                        David J.F. Gross

                                        Attorneys for Defendant
                                        BARILLA AMERICA, INC.

16
REPLY BRIEF IN SUPPORT OF BARILLA'S MOTION TO DECERTIFY THE CLASS
CASE NO. 4:22-CV-03460-ASK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ David A. Belcher*
David A. Belcher

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW