United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW SINATRO, et al.,
Plaintiffs,

v.

BARILLA AMERICA, INC.,
Defendant.

Case No. 22-cv-03460-ASK

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART AS MOOT A MOTION TO STRIKE; AND DENYING AS MOOT MOTION TO DECERTIFY THE CLASS AND ANOTHER MOTION TO STRIKE**

Re: Dkt. Nos. 150, 151, 152, 153

This class action concerns whether Defendant Barilla America, Inc. ("Defendant" or "Barilla")—when labeling its pasta boxes with the claim "Italy's #1 Brand of Pasta"—is liable for false advertising. Plaintiffs Matthew Sinatro and Jessica Prost ("Plaintiffs") claim that this statement deceived them into believing that the Barilla pasta they bought in California grocery stores was manufactured in Italy from Italian ingredients when, in fact, that pasta was made in the United States from non-Italian ingredients.

Barilla has moved for summary judgment (Dkt. 150, "MSJ"), to decertify the class of California consumers that Plaintiffs represent (Dkt. 151), and to strike the opinions of two experts, J. Michael Dennis (Dkt. 152) and Colin Weir (Dkt. 153). The Court addresses these motions.

## I. BACKGROUND

### A. Factual Background

The Barilla Group—Defendant's parent—is an Italian food company. *See* Dkt. 154, Ex. 29 at GROEHN_00002217–18, 2294. It originated in Parma, Italy, in 1877 when Pietro Barilla opened a bread and pasta shop there, and it is still headquartered in Parma and led by members of the Barilla family today. *See id.* at 2217–18, 2304.

United States District Court
Northern District of California

Around the turn of the twenty-first century, the Barilla Group expanded its production operations into the United States. It opened a pasta-making plant in Ames, Iowa, in 1999 and another in Avon, New York, in 2007. *See* Dkt. 11, Ex. 4 at 25–26. The pasta that Barilla sells in the United States is made at these plants with wheat from around the world. Dkt. 11, Ex. 3 at 15. Defendant Barilla America is headquartered in Northbrook, Illinois. MSJ at 5.

During the class period,[1] the front labels of the boxes of 54 varieties of Barilla pasta sold in the United States (the "Products") included a representation in all-capitalized white text stating "ITALY'S #1 BRAND OF PASTA" (the "Challenged Representation"), with three teardrops of color—green, white, and red—positioned on either side, followed by the registered trademark symbol ("®"). *See* Dkt. 11 ("FAC") at 5–8; *see, e.g.*, Dkt. 154, Ex. 1. As the result of a brand redesign that began before the filing of this lawsuit, the Challenged Representation no longer appears on any Barilla labeling. *See* Dkt. 154, Ex. 18 at 52–55, 79–89; MSJ at 4.




Dkt. 154, Ex. 1.




Detail of Dkt. 154, Ex.1.

---

[1] The class period was defined at class certification as "June 11, 2018, through the present." Dkt. 52 at 2 n.2; Dkt. 78 at 3 n.2.

On each of the relevant boxes, the side label featuring the pasta's nutrition facts included the representation "Made in the U.S.A. with U.S.A. and imported ingredients" in white text. *See* MSJ at 4; *see, e.g.*, Dkt. 154, Ex. 4. This representation appeared directly beneath Barilla's name ("Barilla America, Inc.") and location ("Northbrook, IL 60062"), which are statements required by FDA regulation. *See* MSJ at 4; 21 C.F.R. § 101.5(a); *see, e.g.*, Dkt. 154, Ex. 4.




Dkt. 154, Ex. 4.




Detail of Dkt. 154, Ex.4.

Plaintiff Sinatro bought a box of Barilla angel hair pasta for approximately two dollars at an unknown grocery store in or around San Francisco in the winter of 2021. *See* Dkt. 154, Ex. 17 at 27–30. Sinatro asserts that when he made this purchase, he "was looking for Italian pasta," he saw that the box of Barilla angel hair "said 'Italy's #1 . . . Pasta'" and that "also, there was an Italian flag on it," and he bought it for those reasons. *See id.* at 30 ("So that's why I bought it.").

Plaintiff Prost bought two boxes of Barilla spaghetti for about two dollars a box at an unknown grocery store in Santa Monica or Los Angeles in the fall of 2021. *See* Dkt. 154, Ex. 16 at 11–15. Prost contends that "where it says 'Italy's number one brand of pasta' . . . led me to believe [the spaghetti] was made in Italy." *Id.* at 30.

The record on summary judgement includes various expert reports. Plaintiffs have two experts, J. Michael Dennis and Colin Weir. Dennis conducted a consumer perception survey that gave respondents the "ability to view [and] enlarge" digital images of each panel of packaging and then presented them with the following question:



This question is about your understanding of this statement on the packaging:

ITALY'S #1 BRAND OF PASTA ®

Do you or do you not believe this statement communicates the following meaning, or do you not have an opinion?

<u>**The product's ingredients are sourced from Italy.**</u>

Please select one.

- The statement <u>does not</u> communicate this
- The statement <u>does</u> communicate this
- Don't know / not sure

Dkt. 154, Ex. 5 at 19, 21–23 ("Dennis Report"). Of 582 respondents, 57 percent indicated that the statement "<u>does</u> communicate" that "[t]he product's ingredients are sourced from Italy," 32.3 percent indicated that the statement "<u>does not</u> communicate this," and 10.7 percent selected the "Don't know / not sure" option. *Id.* at 11. Dennis also conducted a separate conjoint survey that found a 9.9% price premium associated with the Challenged Representation. Dkt. 154, Ex. 6 at 9. Weir multiplied this price premium by Product revenue to generate a proposed damages figure of over $39 million. *See* Dkt. 154, Ex. 7 at 23–24.

Barilla disclosed three experts, including Andreas Groehn, who conducted a consumer perception survey that replicated Dr. Dennis's but included five—instead of just one—possible interpretations, as follows:

ITALY'S #1 BRAND OF PASTA ®

Does the statement communicate or does it not communicate...

| | Yes | No | Don't know |
|---|---|---|---|
| The product's ingredients are sourced from Italy. | | | |
| The brand is the largest selling pasta in Italy. | | | |
| The brand is the best known pasta in Italy. | | | |
| The brand is the most popular pasta brand in Italy. | | | |
| The brand is the oldest producer of pasta in Italy. | | | |

Is there any other interpretation not listed?

Dkt. 154, Ex. 10 at 33, 45 ("Groehn Survey"). In response, 84.0 percent of respondents answered affirmatively for "[t]he brand is the most popular pasta brand in Italy," while 42.3 percent did so for "[t]he product's ingredients are sourced from Italy." *Id.* at 41. When certain "inattentive" or "confused" respondents were removed from the sample, the 42.3 percent figure was reduced (to either 34.2 or 27.5 percent), whereas the 84.0 percent figure remained nearly unchanged (dropping only to 83.5%).[2] *Id.* at 43–44.

The record also includes documents pertaining to Barilla's websites, *see, e.g.*, Dkt. 11, Ex. 5; brand perception, *see, e.g.*, Dkt. 54, Ex. 4; and design strategy, *see, e.g.*, Dkt. 54, Ex. 3. Finally, the record includes consumer and market surveys and other forms of evidence that shed light on Barilla's popularity in Italy. *See* MSJ at 5; *see, e.g.*, Dkt. 154, Ex. 21 (a NielsenIQ letter

[2] The 34.2 percent figure is the result of eliminating respondents who indicated that a "[n]on-GMO" label means that the product is gluten free. Groehn Survey at 41–44. The 27.5 percent figure is the result of eliminating these same respondents and also those who indicated that the Challenged Representation means that "[t]he brand is the oldest producer of pasta in Italy." *Id.* Under both approaches, the proportion indicating "[t]he brand is the most popular pasta brand in Italy" remained nearly unchanged, at 83.5 percent instead of 84.0 percent. *Id.*

confirming that Barilla had the largest share of Italy's dry pasta market by volume and revenue based on data from 2021 to 2022); Dkt. 154, Ex. 30 at 24 (a 2024 MarketLine market research report calling Barilla "the leading player [and] the most popular brand in the Italian pasta & noodles market").

**B. Procedural History**

Plaintiffs filed a putative class action against Barilla in June 2022, alleging that the Challenged Representation was misleading to reasonable consumers. *See* Dkt. 1. Such labeling, combined with an Italy-centric marketing campaign and brand strategy, was deceptive, Plaintiffs alleged, because it "led [them] to believe that the Products are made in Italy, i.e., their ingredients are sourced in Italy and the finished Products are manufactured in Italy," when in fact the pasta was "made and manufactured in Iowa and New York, with ingredients (such as the main ingredient, durum wheat) sourced in countries other than Italy." *Id.* at 22, 5. Plaintiffs soon after filed their First Amended Complaint, which Barilla moved to dismiss for lack of Article III standing and for failure to state a claim upon which relief may be granted. *See* Dkt. 15.

In October 2022, the Court granted dismissal on standing grounds with respect to injunctive relief that Plaintiffs had sought but otherwise denied dismissal, allowing the following claims to proceed: (1) violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq., *see* FAC at 35–41; (2) violation of the False Advertising Law ("FAL"), California Business & Professions Code section 17500 et seq., *see* FAC at 41–43; (3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et seq., *see* FAC at 43–46; (4) breach of warranty, *see* FAC at 47–48; and (5) unjust enrichment, *see* FAC at 48–50. *See generally* Dkt. 30. The FAC remains operative.

In May 2024, the Court certified a class consisting of "[a]ll residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representation on the Products' front packaging, for purposes other than resale." *See* Dkt. 78 at 8 (quoting Dkt. 52 at 10). The parties stipulated to dismissing the nationwide claims, *see* Dkt. 79, which the Court granted, *see* Dkt. 81, leaving in place only the five claims on behalf of the California class. In October 2025, Barilla filed its motions for summary judgment, class



United States District Court
Northern District of California

United States District Court
Northern District of California

decertification, and to strike the opinions of Dennis and Weir. Associated briefing followed.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In determining whether a dispute is genuine, the Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). As the moving party, Barilla "bears the burden of showing there is no material factual dispute." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010).

### B. False Advertising

The UCL prohibits any "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. and Prof. Code § 17200; *see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The FAL prohibits "untrue or misleading" advertising. Cal. Bus. and Prof. Code § 17500; *see* Williams, 552 F.3d at 938. The CLRA "prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Williams*, 552 F.3d at 938 (quoting Cal. Civ. Code § 1770).

Claims under all three statutes "are governed by the 'reasonable consumer' test." *Id.* (citations omitted). This standard requires Plaintiffs to "show that 'members of the public are likely to be deceived.'" *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)). "The California Supreme Court has recognized 'that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (quoting *Kasky v. Nike, Inc.* 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)) (further citations and quotation marks omitted) (cleaned up). "[A] mere possibility that [the] label 'might conceivably be

misunderstood by some few consumers viewing it in an unreasonable manner'" is not enough. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 129 Cal.Rptr.2d 486, 495 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal.App.4th at 508, 129 Cal.Rptr.2d at 495). Additionally, "an implied representation is actionable only if a reasonable consumer is likely to infer that representation from the label's affirmative content." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1138, 258 Cal. Rptr. 3d 270, 279 (2020).

"[T]he primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003); *see also Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 885–86 (C.D. Cal. 2013) ("In evaluating whether a statement is misleading, the court looks primarily to the words of the statement itself, and compares those words to the actual facts." (citation omitted)). But the Ninth Circuit has also provided instruction on how to consider "qualifiers in packaging, usually on the back of a label or in its ingredient lists." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). Namely, such qualifiers "can ameliorate any tendency of the label to mislead," but when they "conflict[] with, rather than confirm[], a front label claim, the plaintiff's claim is not defeated." *Id.* (quoting *Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 237 Cal. Rptr. 3d 683, 691–93 (2018)) (quotation marks omitted) (cleaned up). "In other words, if a defendant *does* commit an act of deception on the front of a product, then 'the presence of fine print revealing the truth is insufficient to dispel that deception.'" *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) (quoting *Ebner*, 838 F.3d at 966). "However, the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label." *Id.* (citation omitted).

This Circuit's seminal case concerning a deceptive act on a front label that cannot be saved by a qualifier elsewhere is *Williams*. 552 F.3d. There, plaintiffs brought deceptive advertising claims against the maker of "Fruit Juice Snacks," a food product for toddlers made with corn syrup, sugar, and white grape juice from concentrate but depicting a variety of fruits on its front

label. *Id.* at 936. Defendants moved for dismissal, and the district court granted it, concluding that such packaging would be unlikely to mislead a reasonable consumer given the presence of an ingredient list on the side panel. *See id.* at 936–37. The Ninth Circuit reversed on appeal, noting that the product name and the accompanying depiction of various fruits could give consumers the false impression "that those fruits or their juices are contained in the product." *Id.* at 939. The Court of Appeals reasoned that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* The purpose of such FDA-required ingredient lists is not, the Court of Appeals explained, "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id.* "Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id.* at 939–40.

More recent Ninth Circuit cases provide instruction on how to evaluate labeling that is not, like that at issue in *Williams*, "unambiguously deceptive." *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–85 (9th Cir. 2021); *McGinity*, 69 F.4th at 1097–99. *Trader Joe's* concerned a false advertising challenge to a honey label promoting its contents as "100% New Zealand Manuka Honey." *See Trader Joe's Co.*, 4 F.4th at 881. Plaintiffs claimed that because the honey in question consisted of approximately 60% honey derived from Manuka flower nectar, the "100%" representation was misleading. *See id.* at 879–80. The District Court granted dismissal, relying on FDA guidelines that allow for naming honey after its "chief floral source." *See id.* (citation omitted). On appeal, the Ninth Circuit noted that "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source." *Id.* at 882. Such other "information available to a consumer," the Court of Appeals explained, includes "contextual inferences regarding the product itself and its packaging." *Id.* (citations omitted). Taking account of such information with respect to the "100% Manuka" honey product—including the impossibility of sourcing honey exclusively from one type of plant, the product's low price relative to other Manuka honey products, and a

United States District Court
Northern District of California

part of the front label indicating a low purity rating—would, the Court of Appeals reasoned, leave a reasonable consumer no other interpretation aside from "100% honey whose chief floral source is the Manuka plant," which was accurate. *See id.* at 883–85. The Ninth Circuit affirmed the District Court's dismissal, finding on the foregoing reasoning that the label was not misleading to a reasonable consumer as a matter of law. *Id.* at 886.

*McGinity* concerned shampoo and conditioner whose front labels included the words "Nature Fusion" and an image of an avocado on a green leaf. *McGinity*, 69 F.4th at 1096. The plaintiff, McGinity, brought false advertising claims on the basis that this packaging communicated that the products were natural when in fact they contained non-natural and synthetic ingredients and were "substantially unnatural." *Id.* (citation omitted). The District Court dismissed, and McGinnity appealed. *Id.* The Ninth Circuit affirmed, likening the facts to those in *Trader Joe's*. *See id.* at 1097–98. The Court of Appeals observed "some ambiguity as to what 'Nature Fusion' means in the context of its packaging," *id.* at 1097, with the result that, "like in *Trader Joe's*, we must consider what additional information other than the front label was available to consumers of the . . . products," *id.* at 1098 (citation omitted). "Nature Fusion," the Court noted, does not "make any affirmative promise about what proportion of the ingredients are natural" and instead "could mean any number of things." *Id.* at 1098. The Court then held that when "a front label is ambiguous, the ambiguity can be resolved by reference to the back label," which on the instant shampoo and conditioner bottles contained statements, including ingredient lists, making clear that the products contained both natural and synthetic ingredients. *Id.* at 1099. The Court also considered a consumer survey in which respondents had been exposed to just the front label and had been split roughly in half as to whether "Nature Fusion" meant exclusively natural ingredients or a mix of natural and non-natural ones. *See id.* Noting that the survey did not expose respondents to the entire product, the Court concluded that no reasonable consumer "with the entire product in hand" would be misled. *Id.*

The Ninth Circuit added nuance to the *McGinity* analysis—and its standard for determining front-label ambiguity at the pleadings stage—in *Whiteside v. Kimberly Clark Corp*. *See* 108 F.4th 771, 779–81 (9th Cir. 2024). It explained there that "our cases affirm that a front

label is not ambiguous simply because it is susceptible to two possible meanings" but rather "when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Id.* at 781 (footnote omitted). The Ninth Circuit used *Brady v. Bayer Corp.*, a California Court of Appeal case, to demonstrate the distinction between these definitions. *See id.* at 780–81 (citing 26 Cal. App. 5th at 1172, 1174–75). There, the representation at issue was the name of "One A Day"-branded vitamins, which the Ninth Circuit observed was susceptible to more than one meaning. *See id.* (citation omitted). One such meaning—that a user need only take one of the enclosed vitamins each day—was refuted by back label instructions to "[c]hew: two gummies daily." *See Brady*, 26 Cal. App. 5th at 1172. The Ninth Circuit noted that despite the multiple possible meanings, the California court nonetheless "ruled that the defendant was precluded from relying on the back label because the plaintiff had plausibly alleged that reasonable customers would see the front label as making an unambiguous representation." *Whiteside*, 108 F.4th at 781. "Put another way," the *Whiteside* Court concluded, "reasonable consumers would not necessarily require more information before concluding that they needed to take only one vitamin daily." *Id.*

*Whiteside*'s facts involved baby wipes marked on their front labels with statements including "[p]lant-based wipes" and "natural care," some marked with asterisks and some not, and accompanied on their back labels with ingredient lists indicating the presence of non-plant-based ingredients. *Id.* at 774–76. Plaintiff Whiteside brought false advertising claims on the theory that the front-label statements would mislead reasonable consumers into believing that the wipes were wholly plant-based, when in fact they were only 70% plant-based by weight. *See id.* The District Court granted dismissal of these claims. *See id.* at 777. The Ninth Circuit reversed the dismissal of the non-asterisked products, rejecting that the front labels were ambiguous, *see id.* at 781–83, and rejecting also that such labels, standing alone, were not misleading, *see id.* at 783–84. "Although 'plant-based' could be interpreted in different ways," the Court reasoned, "it plausibly conveys a concrete and unambiguous meaning to a reasonable customer: that the product is entirely plant-based and exclusively contains 'natural' materials." *Id.* at 782.

## III. DISCUSSION

### A. Dennis's Consumer Perception Opinions

Under Federal Rule of Evidence 702, an expert may testify if the proponent of such testimony demonstrates to the Court by a preponderance of the evidence that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993).

In its "gatekeeping role," the Court assesses whether an expert's conclusions meet three core restrictions on expert testimony: qualification, reliability, and fit. *Daubert*, 509 U.S. at 597; *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092 (D. Or. 2010) (citation omitted). The reliability inquiry "asks whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *United States v. Wells*, 879 F.3d 900, 933–34 (9th Cir. 2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). Under the fit prong, the Court should exclude expert testimony unless "convinced that it speaks clearly and directly to an issue in dispute in the case." *Base v. FCA US LLC*, No. 17-CV-01532-JCS, 2019 WL 1117532, at *5 (N.D. Cal. Mar. 11, 2019) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n. 17 (9th Cir. 1995)). *Daubert* motions can be dispositive at summary judgment. *See Nixon-Egli Equip. Co. v. John A. Alexander Co.*, 949 F. Supp. 1435, 1447 (C.D. Cal. 1996).

The consumer perception opinions of Plaintiffs' expert, Dennis, fail *Daubert*'s reliability prong because his survey is biased.[3] With respect to the Challenged Representation, the survey asks only whether it conveys that "[t]he product's ingredients are sourced from Italy," and

---

[3] The Court addresses only the *Daubert* challenge to Dennis's consumer perception opinions, as that is the only challenge that is material to the decision in this opinion. The Court notes, however, that Dennis's conjoint analysis also appears unreliable under *Daubert*, because such testimony impermissibly measures the undifferentiated impact of *all interpretations* of the Challenged Representation without isolating the impact attributable to only *misleading interpretations*. *See* Dkt. 154, Ex. 6 at 9–10; *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-2327-BAS-JLB, 2020 WL 1157191, at *6–*9 (S.D. Cal. Mar. 9, 2020) (discrediting and rejecting another of Dennis's conjoint survey analyses at class certification where, as here, he failed to calculate a price premium solely attributable to the plaintiffs' theory).

provides only three possible responses: an affirmative answer, a negative answer, and "[d]on't know / not sure." Dennis Report at 22. This question is biased because in asking respondents whether the statement means that "[t]he product's ingredients are sourced from Italy," and only that, it steers them to that very meaning and gives them no opportunity to indicate other meanings. The survey also fails to capture the possibility that respondents understand the Challenged Representation to have multiple meanings. This type of biased survey cannot assist a trier of fact. *See In re KIND LLC "Healthy and All Natural" Litigation*, 627 F.Supp.3d 269, 287 (S.D.N.Y., 2022) (citations omitted) (excluding another of Dennis's consumer perception surveys that was structured similarly—by, for example, asking whether "all natural" means the labeled product does or does not "contain artificial and synthetic ingredients" and providing no other possible interpretations—and reasoning that "Dr. Dennis's survey improperly directs survey participants to the 'correct' answer"); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112 (2d Cir. 1984) ("A survey question which begs its answer cannot be a true indicator of the likelihood of consumer confusion." (footnote omitted)).

Plaintiffs argue in opposition that Dennis's purported "safeguards" of neutrality, like providing a "[d]on't know / not sure" option, insulate his question from reliability concerns. Dkt. 165 at 13. But such arguments miss—and Dennis's supposed "safeguards" fail to remedy—what is fatally problematic about Dennis's survey design: that it "bias[es] the survey by suggesting to respondents, at least implicitly, that they should believe there is at least some sort of relationship between the different items when the possibility might not even have occurred to the vast majority of consumers who see the items." *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 104 F.Supp.2d 1033, 1048 (S.D. Ind. 2000); *see Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465 (E.D. Va. 2017) (explaining that such survey designs create demand effects whereby respondents infer the purpose of the survey and identify the association intended by the survey designer). Survey respondents who answered Dennis's question affirmatively might have never made an association with Italian ingredient sourcing had the survey not fed it to them. And respondents who normally would think the statement means something else entirely may have abandoned that opinion upon intuiting from the survey itself what they should take the Challenged Representation to mean. A "[d]on't know /

United States District Court
Northern District of California

not sure" option does not negate such effects, because the question by its design elicits them before respondents even go to choose an answer.

Without Dennis's consumer perception testimony in the record, no reasonable juror could conclude on the remaining record evidence that "members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (citation omitted). Indeed, to survive summary judgment a plaintiff must produce evidence showing "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (quoting *Brockey v. Moore*, 107 Cal.App.4th 86, 99, 131 Cal.Rptr.2d 746 (2003)). "Although surveys and expert testimony regarding consumer expectations are not required, a few isolated examples of actual deception are insufficient." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 7206633, at *5 (N.D. Cal. Dec. 18, 2014), *rev'd on other grounds*, 703 F. App'x 468 (9th Cir. 2017). Here, all Plaintiffs can offer regarding consumer confusion aside from their excluded expert survey is their own testimony. *See* Dkt. 154, Ex. 17 at 27–30; Dkt. 154, Ex. 16 at 30. Even assuming such evidence is probative of deception at all, it is insufficient to survive summary judgment. *See Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020) (granting summary judgment because no reasonable factfinder could conclude deception based only on the plaintiff's personal opinions). The Motion to Strike (Dkt. 152) is granted with respect to Dennis's consumer perception opinions, and Barilla is entitled to summary judgment as a result.

**B. The Statutory Claims**

Barilla contends that the Challenged Representation "can *only* be read to make a claim about brand," and that insofar as it is understood as such it is "entirely true" and "undisputed on summary judgment." *See* MSJ at 14–15. Plaintiffs counter that the Challenged Representation "can reasonably reflect both brand popularity in Italy and Italian . . . sourcing" and that the "substantial evidence" in the record that California consumers interpret the label in the latter sense creates a triable issue. *See* Dkt. 163 ("Opp'n to MSJ") at 14. Barilla maintains that to the extent the statement can be interpreted to make a claim about ingredient sourcing at all, "the meaning behind any such claim would be at most ambiguous and hence subject to clarification elsewhere

on the label," which is provided by the statement, "Made in the U.S.A. with U.S.A. and imported ingredients." *See* MSJ at 17. On the contrary, Plaintiffs argue, reasonable consumers need not look beyond the front panel to make sense of—and be misled by—the Challenged Representation. *See* Opp'n to MSJ at 18–19.

As an initial matter, to the extent that the words "Italy's #1 Brand of Pasta" make a claim about brand—namely, that Barilla is the foremost brand of pasta in Italy—those words, on this record, are true. Undisputed record evidence establishes that Barilla has leading market share in Italy, *see, e.g.*, Dkt. 154, Ex. 21, and that it is the most popular pasta brand in Italy, *see, e.g.*, Dkt. 154, Ex. 30 at 24. Accordingly, the Court finds the Challenged Representation's brand-related meaning—which, incidentally, strikes the Court as the most plausible meaning—to be accurate.

The viability of Plaintiffs' false advertising claims depends, then, on the extent to which a reasonable consumer would understand the Challenged Representation to convey unambiguously that the pasta was made in Italy from Italian ingredients. *See* FAC at 22. The Court first evaluates whether the Challenged Representation is ambiguous—such that a reasonable consumer would necessarily look to the side label to make sense of it—and then considers whether Barilla's labeling is not misleading as a matter of law. *See Whiteside*, 108 F.4th at 781–84.

**a. Determining Front-Label Ambiguity**

The question at this stage of the analysis is whether reasonable consumers, when confronted with the Challenged Representation and the tricolor drops of color flanking it, would "necessarily require more information before reasonably concluding that the label is making a . . . representation" to the effect that the pasta was made in Italy from Italian ingredients. *See id.* at 781 (footnote omitted). The outcome of this inquiry hinges on how to interpret and apply the Ninth Circuit's ambiguity standard, as most recently articulated in *Whiteside*.

The most plaintiff-friendly reading of *Whiteside* would produce an ambiguity standard that can be satisfied by *only* those labels that "ma[k]e *no representation at all*" or, like that in "*McGinity*—featuring 'Nature Fusion'—[are] so devoid of any concrete meaning that there [is] nothing from which *any* inference could be drawn or on which *any* reasonable belief could be based." *Id.* at 780 (citation and quotation marks omitted). In other words, under such an

United States District Court
Northern District of California

interpretation of *Whiteside*, a product manufacturer would only be able to defend itself by referencing clarifying language on the back or side of a product's packaging if the front-label claim being challenged in the lawsuit was devoid of any concrete meaning. If that is how we are to understand *Whiteside*, then the Challenged Representation would not be ambiguous because it is at least amenable to the (undisputedly false) meaning that the Plaintiffs here advance—*i.e.*, that the pasta is made in Italy with Italian-sourced ingredients.

But the Court does not read *Whiteside* to so hold. Interpreting *Whiteside* this way would effectively mean that *any* label susceptible to at least one concrete false meaning would be actionable. Such a rule would render the legal standard on ambiguity inconsistent with the Ninth Circuit's *Trader Joe's* analysis, which the *Whiteside* Court made clear it was not overruling. *See id.* at 782. In *Trader Joe's*, the Ninth Circuit itself observed that "100% New Zealand Manuka Honey" supported multiple meanings, including such false meanings as "that its contents were 100% derived from the Manuka flower." *Trader Joe's*, 4 F.4th at 882. Accordingly, the Court does not read *Whiteside* to hold that ambiguity only exists in those representations that are devoid of concrete meaning.

Instead, the Court reads *Whiteside* to mean what it says: that "a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781 (footnote omitted). Applying this standard to Barilla's front label requires a finding of ambiguity.

As a threshold matter, without the Dennis consumer perception survey, Plaintiffs lack an adequate evidentiary basis to contend that the Challenged Representation is unambiguously deceptive per the *Whiteside* formulation. Nor would the Dennis survey have helped Plaintiffs on this issue because, as explained above, that survey does not even address the question of ambiguity. *See* Section III(A), *supra*.

To the extent admissible survey evidence exists, it is Barilla's consumer survey, which buttresses a finding of ambiguity. Indeed, among attentive respondents to the only open-ended survey question in the record, more than 80 percent interpreted the Challenged Representation to mean something about brand popularity, while only approximately 30 percent interpreted it to

mean something about ingredient sourcing. Groehn Survey at 41–44; *see* Section I(A), *supra*. Such results are probative of ambiguity. *See McGinity*, 69 F.4th at 1096, 1099 (finding that survey results confirmed ambiguity where approximately 70 percent of respondents indicated a non-deceptive meaning and approximately 50 percent indicated a deceptive meaning). More specifically, the Groehn survey supports either a finding that the Challenged Representation that is unambiguously non-deceptive, or, more charitably to the Plaintiffs, a finding that the Challenged Representation is ambiguous as between deceptive and non-deceptive meanings.

Absent survey evidence suggesting an unambiguously deceptive meaning, on this record, with a Challenged Representation that has a literal interpretation (about brand popularity) that is plausible and true, and where even Plaintiffs concede that the Challenged Representation has that non-deceptive meaning (*see* Dkt. 163 at 14), a reasonable consumer would necessarily require more information before concluding that the statement should instead be understood to mean something else entirely. Accordingly, Barilla has made no "unambiguously deceptive" claim. *McGinity*, 69 F.4th at 1098.

**b. Whether the Labels Are Not Misleading as a Matter of Law**

The presence of ambiguity means that the Court "must consider what additional information other than the front label was available to consumers of the [Barilla] products." *Id.* at 1098 (citation omitted). Here, that includes the side label statement "Made in the U.S.A. with U.S.A. and imported ingredients." "Upon seeing the [side] labels, it would be clear to a reasonable consumer" that the pasta was not made in Italy with Italian ingredients. *Id.* at 1099. Accordingly, the Challenged Representation is not misleading as a matter of law.[4]

Plaintiffs also imply, incorrectly, that there is something misleading about Barilla

---

[4] This analysis demonstrates the virtue of *McGinity*'s holding. That holding—"that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the [side] label"—provides an easily administrable rule to lower courts like this one. *McGinity*, 69 F.4th at 1099. It also supplies clear guidance to sellers of retail goods as to how to structure their product labels to avoid false advertising liability. *McGinity*'s doctrinal clarity means that sellers may have confidence that so long as they do not make "unambiguously deceptive" statements on their front labels, they may rely on their back and side labels to clear up misunderstandings. *See id.* at 1098. Although the Court has excluded the Dennis consumer perception survey on *Daubert* grounds, *see* Section III(A), *supra*, the Court has real concerns about Plaintiffs' contention, articulated at the hearing, that *Whiteside* permits a party to employ a consumer survey to circumvent the rule set out in *McGinity*.

associating itself with Italy. *See, e.g.*, Dkt. 163 at 16 (framing as indicative of deception Barilla's "explicit[] use [of] the word 'Italy,' along with additional Italianity cues"). But it is undisputed that the company was founded there, is still based there, and is the most popular pasta brand there. *See* Dkt. 154, Ex. 29 at GROEHN_00002217–18, 2304; Ex. 21; Ex. 30 at 24; *see also* Sections I(A), III(B), *supra*. Accordingly, Barilla's Italy-based brand identity is not deceptive.

For the separate and independent grounds (1) that no reasonable jury could find for Plaintiffs in light of the exclusion of Dennis's consumer perception testimony and (2) that Barilla's labeling is not misleading as a matter of law, the Court grants summary judgment in Barilla's favor with respect to Plaintiffs' statutory claims.

**C. The Common Law Claims**

**1. The Breach of Warranty Claim**

Plaintiffs assert that the Challenged Representation constitutes an express warranty "that the Products are authentic Italian pastas made in Italy with Italian-sourced ingredients," such that the pasta's purported non-conformity gives rise to breach of the express warranty and of the implied warranty of merchantability that flows from it. *See* Dkt. 163 at 23; FAC at 47. Express warranties are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313(1)(a). Claims for breach of such warranties "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142, 229 Cal. Rptr. 605, 608 (Ct. App. 1986) (citations omitted). For the claim to be viable, the plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Yastrab v. Apple Inc.*, No. 5:14-CV-01974-EJD, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (citations and quotation marks omitted).

The Challenged Representation does not "explicitly guarantee" anything about the manufacturing or ingredient sourcing of the pasta. Nor have Plaintiffs identified any other "specific and unequivocal" statement with respect to any of the pasta's characteristics. Their claim for express warranty therefore fails. *See* FAC at 47–48; Dkt. 163 at 23–24; *see also Kim v. Blue*

*Triton Brands*, No. 2:22-CV-01907-JLS-KS, 2022 WL 17061085 (C.D. Cal. Nov. 1, 2022), *aff'd sub nom. Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024) (finding "Arrowhead" brand name not an express warranty of advertised water's geographic source). Because Plaintiffs' implied warranty claim "rises and falls with [their] express warranty claim[]," it, too, is defeated. *See Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659, at *8 (N.D. Cal. Sept. 14, 2022) (finding that where an implied warranty of merchantability claim was predicated on a good not conforming to its container's promises, such implied warranty claim must fail where an express warranty claim with respect to such promises also fails). Accordingly, the Court grants summary judgment in Barilla's favor with respect to Plaintiffs' breach of warranty claim.

**2. The Unjust Enrichment Claim**

In California, there is no standalone cause of action for unjust enrichment, which is also known as restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation and quotation marks omitted). Common law restitution principles "require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient." *Id.* (quoting *Munoz v. MacMillan*, 195 Cal.App.4th 648, 124 Cal.Rptr.3d 664, 675 (2011)). To effectuate such principles, courts sometimes construe claims of unjust enrichment as quasi-contract causes of action seeking restitution. *See id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014)).

Plaintiffs urge the Court to construe its claim this way, on the theory that Defendant has been unjustly enriched by the price premium that class members supposedly paid as the result of Barilla's purported deception. *See* Dkt. 163 at 25. The Court's finding that Barilla has not acted deceptively, however, implies that no benefit has been unjustly conferred. *See Young v. Cree, Inc.*, No. 4:17-CV-06252 YGR, 2021 WL 4749384, at *10 (N.D. Cal. Oct. 12, 2021) (finding that an unjust enrichment claim is defeated where the fraudulent misrepresentation claim on which it is predicated fails); *Stiles v. Trader Joe's Co.*, No. CV1604318TJHKSX, 2017 WL 3084267, at *6 (C.D. Cal. Apr. 4, 2017) ("There being no actionable wrong, there is no basis for the relief." (quoting *Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1307, 128 Cal. Rptr. 3d 109, 118

(2011))). The Court accordingly grants summary judgment in Barilla's favor with respect to Plaintiffs' unjust enrichment claim.

**IV. CONCLUSION**

For the reasons set forth above, the Court GRANTS Barilla's MSJ and the Motion to Strike Dennis's opinions with respect to his consumer perception opinions. In light of such rulings, the Court DENIES AS MOOT the remainder of the Motion to Strike Dennis's opinions, the Motion to Strike Weir's opinions, and the Motion to Decertify the Class.

The Court will enter judgment by separate order.

**IT IS SO ORDERED.**

Dated: September 30, 2026

AJAY KRISHNAN
United States Magistrate Judge

United States District Court
Northern District of California